Timothy R. Titolo, Esq.
Nevada Bar No. 003617
TITOLO LAW OFFICE
9950 West Cheyenne Ave.
Las Vegas, Nevada 89129
(702) 869-5100
tim@titololaw.com
**Attorney for Plaintiff(s)**

## UNITED STATES DISTRICT COURT
## STATE OF NEVADA

PETER DELVECCHIA, individually and as
next friend of A.D., a Minor

                  Plaintiff(s),

vs.

FRONTIER AIRLINES, INC. and
JOHN DOES 1 through 5,
inclusive,

                  Defendant(s).

CASE NO. :
DEPT NO. :

FILED _____  RECEIVED _____
ENTERED _____  SERVED ON _____
COUNSEL/PARTIES OF RECORD

AUG - 1 2019

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY:_____DEPUTY

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

For their Complaint against Defendants, FRONTIER AIRLINES, INC. ("Frontier") and JOHN DOES 1 through 5, Plaintiffs, PETER DELVECCHIA and A. D. (a minor suing by and through his next friend, Peter DelVecchia), allege the following:

### Jurisdiction

This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. §1331 because it arises under a statute of the United States, specifically 42 U.S.C. §1981, which forbids racial discrimination against any person in the "making,

performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

Plaintiffs further invoke this Court's diversity jurisdiction pursuant to 28 U.S.C. §1332, and/or its supplemental jurisdiction pursuant to 28 U.S.C. §1367(a), over all state law claims also set forth herein, as the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and are between citizens of different states, and the state law claims derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally-based claims and causes of action.

This Court has both special and general personal jurisdiction over Frontier because Frontier operates an airline that makes daily scheduled flights into and out of McCarran International Airport in this District, employs hundreds of employees within this District, routinely advertises its services to the citizens of Nevada through a variety of media, owns or leases property within Nevada, has sued and been sued in Nevada courts without contesting personal jurisdiction, and maintains offices and a Registered Agent within Nevada. Moreover, the claims set forth herein all arise out of a scheduled flight operated by Frontier from Raleigh-Durham International Airport in North Carolina to McCarran International Airport in Nevada, on which both Plaintiffs were passengers after contracting for carriage to Nevada with Frontier.

This Court has both special and general personal jurisdiction over the individual Defendants because, upon information and belief, all of them reside in Nevada, and because the actions complained of herein were undertaken at least partially within Nevada.

<u>Venue</u>

Venue is proper in this District pursuant to 28 U.S.C. §1391, subsections (b)(1), (b)(2), and (c)(2) because the individual Doe Defendants reside in Nevada, because Frontier is subject to this Court's personal jurisdiction and is deemed by Section 1391(c)(2) to reside in any judicial district in which it is subject to the Court's personal jurisdiction with respect to this civil action, and because a substantial part of the events or omissions giving rise to the claims occurred in this District, at the McCarran International Airport in Las Vegas, Nevada and *en route* thereto over land contained in this District.

<u>The Parties</u>

1.      Plaintiff Peter DelVecchia ("Peter") is an individual citizen of Hillsborough, North Carolina. He is a widower and a single parent. At the time of the events described herein, Peter was 55 years old. His race is Caucasian.

2.      Plaintiff A. D. ("A. D.") is also an individual citizen of Hillsborough, North Carolina. He is the adopted son of Peter, and has lived with Peter and Peter's late wife for most of his life. At the time of the events described herein, A. D. was 12 years old. His race is African-American.

3.      Frontier is a Colorado corporation that has its principal place of business in Denver, Colorado. Frontier operates a low-cost airline that, according to its website, conducts scheduled passenger flights between several cities in the United States, as well as to and from the countries of Canada, Mexico, Dominican

Republic and Jamaica. *See,* https://flights.flyfrontier.com/en/sitemap/flights-from-country/page-1.[1]

4.      Defendant John Doe Number 1 ("Doe No. 1") is a male individual who was, at the time of the events described herein, employed as a flight attendant by Frontier. He worked as a flight attendant on the flight that is the subject of this Complaint. He identified himself to Plaintiffs only as "Kevin," refusing to provide his surname to them. Upon information and belief, he provided his full name and place of residence to the law enforcement officials that he and other members of the flight crew summoned to meet the flight, but his name was redacted from records those law enforcement officials provided to Plaintiffs' attorney. He indicated in those records that he is a resident of Las Vegas, Nevada. Plaintiffs anticipate obtaining his full identity through Defendants' Rule 26 Initial Disclosures and will seek to amend this Complaint to include his true identity following receipt of those Disclosures.

5.      Defendant John Doe Number 2 ("Doe No. 2") is an individual who was, at the time of the events described herein, employed as a flight attendant by Frontier. [He/She] worked as a flight attendant on the flight that is the subject of this Complaint. Upon information and belief, [he/she] provided [his/her] full name and place of residence to the law enforcement officials that were summoned to meet the flight, but [his/her] name was redacted from records those law enforcement officials provided to Plaintiffs' attorney. [He/She] indicated in those records that [he/she] is a resident of Las Vegas, Nevada. Plaintiffs anticipate obtaining [his/her]

---

[1] Frontier's website also lists Puerto Rico a "country" that the airline flies to and from. The Commonwealth of Puerto Rico has been a territory of the United States since the Treaty of Paris came into effect on April 11, 1899.

full identity through Defendants' Rule 26 Initial Disclosures and will seek to amend this Complaint to include [his/her] true identity following receipt of those Disclosures.

6.     Defendant John Doe Number 3 ("Doe No. 3") is an individual who was, at the time of the events described herein, employed as a flight attendant by Frontier. [He/She] worked as a flight attendant on the flight that is the subject of this Complaint. Upon information and belief, [he/she] provided [his/her] full name and place of residence to the law enforcement officials that were summoned to meet the flight, but [his/her] name was redacted from records those law enforcement officials provided to Plaintiffs' attorney. [He/She] indicated in those records that [he/she] is a resident of Las Vegas, Nevada. Plaintiffs anticipate obtaining [his/her] full identity through Defendants' Rule 26 Initial Disclosures and will seek to amend this Complaint to include [his/her] true identity following receipt of those Disclosures.

7.     Defendant John Doe Number 4 ("Doe No. 4") is an individual who was, at the time of the events described herein, employed as a flight attendant by Frontier. [He/She] worked as a flight attendant on the flight that is the subject of this Complaint. Upon information and belief, [he/she] provided [his/her] full name and place of residence to the law enforcement officials that were summoned to meet the flight, but [his/her] name was redacted from records those law enforcement officials provided to Plaintiffs' attorney. [He/She] indicated in those records that [he/she] is a resident of Las Vegas, Nevada. Plaintiffs anticipate obtaining [his/her] full identity through Defendants' Rule 26 Initial Disclosures and will seek to amend

this Complaint to include [his/her] true identity following receipt of those Disclosures.

8.     Defendant John Doe Number 5 ("Doe No. 5") is an individual who was, at the time of the events described herein, employed as a pilot by Frontier. [He/She] worked as the Captain on the flight that is the subject of this Complaint. Upon information and belief, [he/she] is a resident of Las Vegas, Nevada.

<u>Particulars of the Claim</u>

9.     On March 28, 2019, Plaintiffs were passengers aboard Frontier's Flight 2067 from Raleigh-Durham International Airport in North Carolina to McCarran International Airport in Las Vegas, Nevada. Peter had purchased the tickets for both Plaintiffs from Frontier, for the purpose of taking A. D. on a recreational vehicle and hiking trip in Death Valley National Park during A. D.'s spring break from school. Plaintiffs were seated in adjacent seats on the aircraft.

10.     During the nearly 4.5-hour flight, Peter fell asleep with his head resting on the back of the seat in the row ahead of his. He was abruptly awakened when Doe No. 1 struck him violently at the base of his skull and on the back of his neck. The blow was so forceful that it caused a concussion.

11.     Doe No. 1 then made false accusations against Peter including accusations that Peter was engaging in illegal human trafficking and illegal sexual assault. The aforesaid physical violence and accusations were based on Doe No. 1's belief that Peter, who is white, should not be traveling with A. D., who is black.

12.     Doe No. 1 then forced A. D. to leave his seat and the company of his father, and took him against his will to the rear of the aircraft, where he forced him to sit in a seat in the back row of the aircraft and refused to allow him to return to

his father for the remainder of the flight. A. D. asked repeatedly to be allowed to return to the seat beside his father, but Doe No. 1 and Does No. 2 through 4 would not allow A. D. to leave the seat in which Doe No. 1 had placed him. In fact, Does No. 1 through 4, acting at all times in the course of their employment by Frontier, arranged for a male Frontier employee to occupy the aisle seat between A. D. and the aisle of the aircraft, effectively blocking his ability to enter the aisle for the duration of the flight. After the flight landed, Does No. 1 through 4 continued to detain A. D. and would not allow him to return to his father, despite requests by A. D. and Peter.

13.     Defendants' detention of A. D. in the last row of the aircraft was intentional, or, in the alternative, was done with reckless disregard for Plaintiffs' rights. In addition, it was not consented to by A. D. or Peter, but was instead against their wills, was unlawful, and was without any legitimate basis in aircraft safety or any other purpose recognized in the Federal Aviation Regulations. It amounted to false imprisonment of A. D. for several hours.

14.     Upon information and belief, Doe No. 5, the Captain on the flight, also participated in the unlawful removal of A. D. from his father and his unlawful detention in the rear of the aircraft, by suggesting and authorizing those actions. At all times, Doe No. 5 was acting within the scope of Doe No. 5's employment with Frontier, and Frontier sanctioned Doe No. 5's conduct.

15.     While he and the other Frontier employees were in the course of detaining A. D., Doe No. 1 intentionally and/or recklessly touched A. D. without A. D.'s or Peter's consent in an offensive manner, by placing his hand on A. D.'s body

in the close vicinity of A. D.'s genital area, causing A. D. and Peter to suffer great fear, anxiety, mental anguish and embarrassment.

16.     Does No. 1 through 5 collaboratively decided that the false accusations made by Doe No. 1 needed to be relayed to law enforcement officials in Las Vegas, including the Las Vegas Metropolitan Police Department ("LVMPD") and the Federal Bureau of Investigation ("FBI"). As a group Does No. 1 through 5 had no basis on which to suggest that Peter was engaging in human trafficking or unlawful sexual activities other than their shared belief that Peter, a white adult man, should not be traveling in the company of A. D., a black male child. They refused to believe that Peter and A. D. are father and son, despite being told so by both Peter and A. D. Doe No. 5 arranged for representatives of the LVMPD and the FBI to meet the flight at its arrival gate at McCarran Airport.

17.     As Peter was deplaning, Doe No. 1 said to him in a loud voice and mocking tone, within the earshot of several other passengers who were also deplaning at the time, that the FBI is "waiting for your ass." That comment was meant to suggest, and did falsely suggest, that Peter had committed a federal crime onboard the flight.

18.     All of the actions by Does No. 1 through 5 described herein were conducted by them while they were under the control of Frontier and in the scope of their employment by Frontier, and Frontier's managerial staff  has sanctioned and ratified their actions. Frontier is liable for the acts of its employees under the doctrine of *respondeat superior*.

19.     Defendants' actions described herein amounted to willful and wanton and malicious conduct sufficient to impose punitive damages on all Defendants, jointly and severally.

20.     As the result of all Defendants' actions, Plaintiffs suffered serious physical and mental injuries including, but not limited to, a concussion, other violations of the person, invasions of their privacy, mental anguish and anxiety, extreme emotional distress, cognitive loss, and damage to their reputations. All of those were foreseeable consequences of Defendants' actions.

**COUNT I: COMPENSATORY AND PUNITIVE DAMAGES
AND ATTORNEYS' FEES PURSUANT TO 42 U.S.C. §1981**

21.     Plaintiffs repeat, reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 20 of this Complaint as though such allegations were fully set forth herein.

22.     Plaintiffs had the right under 42 U.S.C. §1981 to be free from discrimination based on their races in the "making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship," including their contractual relationship with Frontier as passengers aboard its Flight 2067 on March 28, 2019.

23.     Does No. 1 through 5 and Frontier acted out of racial animus in concluding that Plaintiffs should not be travelling together, in concluding that their joint travel must be evidence of human trafficking or sexual deviance, in striking Peter and detaining A. D., in making false accusations against them, and in denying Plaintiffs their federally-protected right to enjoy the benefits and privileges of their contractual relationship with Frontier during the flight. Their discriminatory and humiliating treatment of Plaintiffs was utterly unacceptable in civilized society and

was an affront to the values that society expects in the equal treatment of all persons, especially those who travel aboard common carriers that are licensed by the United States government and that enjoy the privileges of operating commercial flights in federal airspace.

24.     Does No. 1 through 5 and Frontier are liable to Plaintiffs, jointly and severally, for compensatory damages under 42 U.S.C. §1981 for their intentional acts and omissions that caused Plaintiffs to sustain and endure severe emotional distress, serious physical injuries, shock and utter humiliation.

25.     Does No. 1 through 5 and Frontier are also liable to Plaintiffs, jointly and severally, for punitive damages under 42 U.S.C. §1981 because their conduct was based on malice and/or reckless indifference to Plaintiffs' legal rights.

26.     Defendants' conduct as described hereinabove has caused Plaintiffs to incur attorneys' fees and costs, and will continue to cause them to incur such fees and costs until this action has been resolved, and Plaintiff is entitled to recover those attorneys' fees and costs in accordance with applicable federal laws and rules of procedure following a judgment on the merits.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages in an amount to be determined by the jury at trial, for punitive damages in an amount to be determined by the jury at trial, and for their attorneys' fees, costs, pre-judgment and post-judgment interest and such other and further relief as the Court shall deem just and proper.

**COUNT II: COMPENSATORY AND PUNITIVE DAMAGES
PURSUANT TO STATE LAW FOR INTENTIONAL
INFLICTION OF EMOTIONAL DISTRESS**

27.     Plaintiffs repeat, reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 20 of this Complaint as though such allegations were fully set forth herein.

28.     The aforesaid acts and omissions of Defendants were outrageous and utterly intolerable in civilized society, were malicious and/or were conducted with reckless indifference to the likelihood that emotional distress would result, and were intentional toward Plaintiffs and intended to cause them emotional distress. They therefore constitute the tort of intentional infliction of emotional distress.

29.     Defendants are liable to Plaintiffs, jointly and severally, for compensatory damages under applicable state laws for their intentional acts and omissions that caused Plaintiffs to sustain and endure severe emotional distress.

30.     Defendants are also liable to Plaintiffs, jointly and severally, for punitive damages under applicable state laws because their conduct was based on malice and/or reckless indifference to Plaintiffs' legal rights.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages in an amount to be determined by the jury at trial, for punitive damages in an amount to be determined by the jury at trial, and for their costs, pre-judgment and post-judgment interest and such other and further relief as the Court shall deem just and proper.

### COUNT III: COMPENSATORY AND PUNITIVE DAMAGES PURSUANT TO STATE LAW FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

31.     Plaintiffs repeat, reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 20 of this Complaint as though such allegations were fully set forth herein.

32.    The aforesaid acts and omissions of Defendants were outrageous and utterly intolerable in civilized society, were malicious and/or were conducted with reckless indifference to the likelihood that emotional distress would result, and were negligent toward Plaintiffs and foreseeably caused them emotional distress. They therefore constitute the tort of negligent infliction of emotional distress.

33.    Defendants are liable to Plaintiffs, jointly and severally, for compensatory damages under applicable state laws for their negligent acts and omissions that caused Plaintiffs to sustain and endure severe emotional distress.

34.    Defendants are also liable to Plaintiffs, jointly and severally, for punitive damages under applicable state laws because their conduct was based on malice and/or reckless indifference to Plaintiffs' legal rights.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages in an amount to be determined by the jury at trial, for punitive damages in an amount to be determined by the jury at trial, and for their costs, pre-judgment and post-judgment interest and such other and further relief as the Court shall deem just and proper.

## COUNT IV: COMPENSATORY AND PUNITIVE DAMAGES PURSUANT TO STATE LAW FOR FALSE IMPRISONMENT/UNLAWFUL DETENTION

35.    Plaintiffs repeat, reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 20 of this Complaint as though such allegations were fully set forth herein.

36.    The aforesaid acts of Defendants constituted false imprisonment and/or unlawful detention of A. D., which caused mental anguish to both A. D. and Peter.

37.     Defendants are liable to Plaintiffs, jointly and severally, for compensatory damages under applicable state laws for their intentional acts and omissions that falsely imprisoned and unlawfully detained A. D., and that caused Plaintiffs to sustain and endure severe emotional distress.

38.     Defendants are also liable to Plaintiffs, jointly and severally, for punitive damages under applicable state laws because their conduct was based on malice and/or reckless indifference to Plaintiffs' legal rights.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages in an amount to be determined by the jury at trial, for punitive damages in an amount to be determined by the jury at trial, and for their costs, pre-judgment and post-judgment interest and such other and further relief as the Court shall deem just and proper.

## COUNT V: COMPENSATORY AND PUNITIVE DAMAGES PURSUANT TO STATE LAW FOR BATTERY

39.     Plaintiffs repeat, reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 20 of this Complaint as though such allegations were fully set forth herein.

40.     The aforesaid acts of Defendant Doe No. 1 constituted the tort of battery upon both Peter and A. D., were malicious and/or were conducted with reckless indifference to the likelihood that physical injury and emotional distress would result, and were intentional toward Plaintiffs and intended to cause them physical injury emotional distress. They were done while Doe No. 1 was under the control of Frontier and within the scope of Doe No. 1's employment with Frontier.

41.     Defendants Doe No. 1 and Frontier are liable to Plaintiffs, jointly and severally, for compensatory damages under applicable state laws for their intentional acts and omissions that caused Plaintiffs to sustain and endure physical injuries and severe emotional distress.

42.     Defendants Doe No. 1 and Frontier are also liable to Plaintiffs, jointly and severally, for punitive damages under applicable state laws because their conduct was based on malice and/or reckless indifference to Plaintiffs' legal rights.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages in an amount to be determined by the jury at trial, for punitive damages in an amount to be determined by the jury at trial, and for their costs, pre-judgment and post-judgment interest and such other and further relief as the Court shall deem just and proper.

### COUNT VI: COMPENSATORY AND PUNITIVE DAMAGES PURSUANT TO STATE LAW FOR DEFAMATION AND FALSE LIGHT INVASION OF PRIVACY

43.     Plaintiffs repeat, reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 20 of this Complaint as though such allegations were fully set forth herein.

44.     The aforesaid acts of Defendant Doe No. 1 resulted in the unauthorized publication to third parties (other passengers of the flight) of false and defamatory accusations that Peter had committed various crimes and unlawful sexually deviant acts, with the result that they caused presumed injury to Peter's reputation and constituted defamation *per se*. They also invaded Peter's privacy and cast him in a false light, constituting the tort of false light invasion of privacy. In addition, they

were malicious and/or were conducted with reckless indifference to the likelihood that emotional distress and damage to reputation would result, and were intentional toward Peter and intended to cause him emotional distress and damage to reputation. They were done while Doe No. 1 was under the control of Frontier and within the scope of Doe No. 1's employment with Frontier.

45.     Defendants Doe No. 1 and Frontier are liable to Peter, jointly and severally, for compensatory damages under applicable state laws for their intentional acts and omissions that caused Peter to sustain and endure severe emotional distress, damage to his reputation, and invasion of his privacy.

42.     Defendants Doe No. 1 and Frontier are also liable to Peter, jointly and severally, for punitive damages under applicable state laws because their conduct was based on malice and/or reckless indifference to Peter's legal rights.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages in an amount to be determined by the jury at trial, for punitive damages in an amount to be determined by the jury at trial, and for their costs, pre-judgment and post-judgment interest and such other and further relief as the Court shall deem just and proper.

PLAINTIFFS DEMAND TRIAL BY JURY.

DATED this 1 day of August, 2019.

TITOLO LAW OFFICE

Timothy R. Titolo, Esq.
Nevada Bar No. 003617
9950 West Cheyenne Ave.
Las Vegas, Nevada 89129
tim@titololaw.com
***ATTORNEY FOR PLAINTIFF(S)***