Timothy R. Titolo, Esq.
Nevada Bar No. 003617
TITOLO LAW OFFICE
9950 West Cheyenne Ave.
Las Vegas, NV 89129
(702) 869-5100
tim@titololaw.com

John D. McKay, Esq. (*pro hac vice application pending*)
PARK AVENUE LAW LLC
127 West Fairbanks Avenue
Suite 519
Winter Park, FL 32789
(800) 391-3654
johndmckayatty@gmail.com

**Attorneys for Plaintiffs**

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| PETER DELVECCHIA, *et al.*, | Case No. 2:19-cv-01322-KJD-NJK |
| Plaintiffs, | |
| vs. | **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS [D.E. 10]** |
| FRONTIER AIRLINES, INC., *et al.*, | Date: |
| Defendants. | Time: |
| | Courtroom: |
| | Action Filed: August 1, 2019 |

Plaintiffs, PETER DELVECCHIA individually and PETER DELVECCHIA as next friend of A.D., a minor, through their counsel, hereby file this Memorandum of Points and Authorities in Opposition to Defendants' Partial Motion to Dismiss Counts I, II, III and VI of the Complaint [D.E. 10]. For the reasons set forth herein, the motion should be denied.

1

## FACTS AND PROCEDURAL HISTORY

As pleaded in their Complaint, Plaintiffs Peter Delvecchia ("Peter") and his son, A.D., were traveling as ticketed passengers aboard a flight operated by Defendant Frontier Airlines, Inc. ("Frontier") on March 28, 2019, from Raleigh-Durham International Airport in North Carolina to McCarran International Airport in Las Vegas. Complaint and Demand for Jury Trial [D.E. 1], at ¶ 9. The purpose of their trip was to enjoy a father/son recreational vacation in Death Valley National Park during A.D.'s spring break from his middle school in North Carolina. *Id.* Peter is 55 years old, Caucasian, and a widower. *Id.*, at ¶ 1. A.D. is 12 years old, African-American, and was adopted as an infant by Peter and his late wife. *Id.*, at ¶ 2. They live in Hillsborough, North Carolina. *Id.*, at ¶¶ 1-2. They were seated next to each other on the flight, and Peter had fallen asleep during the long nighttime flight, with his forehead resting against the back of the seat in the row ahead of him. *Id.*, at ¶¶ 9-10. He was rudely awakened by a hard blow to the base of his skull and back of his neck, delivered by a male flight attendant who identified himself only as "Kevin."[1] *Id.*, at ¶¶ 4, 10. "Kevin's" assault on Peter was so forceful that it gave Peter a concussion. *Id.*, at ¶ 10.

After awakening Peter, "Kevin" proceeded to falsely accuse him of human trafficking and of sexually molesting A.D. *Id.*, at ¶ 11. "Kevin's" motivation for his attack on Peter was that Peter is white, while A.D. is black, and "Kevin" felt that they should not be traveling together because of the disparity in their races. *Id.* In other words, "Kevin" expressed through words and deeds that if an African American teenager is traveling with a middle-aged white man, something nefarious and probably illegal must be occurring. After making the false accusations, "Kevin" grabbed A.D. out of his seat against the will of both Peter and A.D., and took A.D. to the rear of the plane where "Kevin"

---

[1] "Kevin" is identified in the Complaint as Defendant John Doe Number 1. D.E. 1, at ¶ 4. Plaintiffs expect to obtain his full identity through Defendants' Initial Disclosures.

touched A.D. inappropriately near his genitals and forced him to sit in a seat away from his father. *Id.*, at ¶¶ 12, 15. "Kevin" conspired with other Frontier employees, Defendants John Doe Numbers 2 through 4, to detain A.D. against his and Peter's wills, even arranging for a Frontier employee to sit in the same row as A.D., effectively blocking his exit from the row for the remainder of the flight and after it landed at McCarran. *Id.*, at ¶ 12. "Kevin" and Does 2 through 4 ignored A.D.'s repeated requests to be allowed to return to his father. *Id.* The Captain of the flight, Defendant John Doe Number 5, participated in the unlawful detention of A.D. and, following communications with the other Doe Defendants, made arrangements for law enforcement personnel to detain Peter and A.D. when the flight landed at McCarran. *Id.*, at ¶¶ 14, 16. As Peter was leaving the plane, without A.D. because the Doe Defendants would not allow him to retrieve A.D. from the seat at the back of the plane, "Kevin" announced to him in a loud voice and mocking tone, in the presence of other passengers who were deplaning at the same time, that the FBI is "waiting for your ass" outside the plane. *Id.*, at ¶ 17. His comment was intended to announce to the other passengers that Peter had committed a federal crime aboard the flight (and was about to be apprehended for it). *Id.* Indeed, due to the arrangements and false accusations that had been made by the Doe Defendants with Frontier's authorization, Peter and A.D. were subjected to detention and separate questioning by Las Vegas Municipal Police and agents of the Federal Bureau of Investigation for the next several hours, well into the early morning hours. In contrast to the Defendants who refused to believe that Peter and A.D. were father and son, the law enforcement officers who questioned them acknowledged that they were father and son and that Peter had done nothing illegal in traveling with his 12-year-old son during a school vacation. The experience ruined their vacation and left both Peter and A.D. suffering from severe emotional distress, and Peter suffering in addition from severe physical injuries to his head and neck. *Id.*, at ¶¶ 20, 24, 32, 33, 36, 37, 41, 45.

Peter and A.D., through Peter acting as A.D.'s next friend, have commenced this action against Frontier and Does 1 through 5 (whose identities are expected to be learned from Defendants' Initial Disclosures under Fed. R. Civ. P. 26(a)(1)(A)) seeking compensatory and punitive damages for violations of the Civil Rights Act of 1866, codified at 42 U.S.C. §1981, *id.,* at Count I, intentional infliction of emotional distress (Count II), negligent infliction of emotional distress (Count III), false imprisonment/unlawful detention (Count IV), battery (Count V), defamation and false light invasion of privacy (Count VI). They have demanded trial by jury. *Id.,* at 15.

Defendant Frontier[1] has moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Counts I, II, III and VI. Defendant Frontier Airlines, Inc.'s Partial Motion to Dismiss [D.E. 10].

## ARGUMENT

### I.   Legal standard spplicable to a motion under Rule 12(b)(6)

Section A of Frontier's motion accurately states the recent cases on the standards for motions to dismiss, including the holdings of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). However, like many defendants seeking dismissals in the post-*Iqbal/Twombly* landscape, Frontier proceeds to spin selected quotations from those cases into an argument for the type of Field Code-style fact pleading that the Supreme Court abolished decades ago. Such an argument is not supported by the Supreme Court's holdings, however. As the Seventh Circuit noted in an opinion decided shortly after *Iqbal*:

> Critically, in none of the three recent decisions- *Twombly, Erickson,* or *Iqbal*-did the Court cast any doubt on the validity of Rule 8 of the Federal Rules of Civil Procedure. To the contrary: at all times it has said that it is interpreting Rule 8, not tossing it out the window. It is therefore useful to begin with a look at the language of the rule:

---

[1] The motion was filed solely by Frontier, and not on behalf of any of the five Doe Defendants. Thus, in the event it is granted, any relief should apply only to Defendant Frontier.

> (a) Claim for Relief. A pleading that states a claim for relief must contain:
>
> \* \* \*
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief....

Fed.R.Civ.P. 8(a)(2). As one respected treatise put it in 2004,

> all that is necessary is that the claim for relief be stated with brevity, conciseness, and clarity.... [T]his portion of Rule 8 indicates that a basic objective of the rules is to avoid civil cases turning on technicalities and to require that the pleading discharge the function of giving the opposing party fair notice of the nature and basis or grounds of the pleader's claim and a general indication of the type of litigation that is involved....

5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1215 at 165-173 (3d ed. 2004).

> Nothing in the recent trio of cases has undermined these broad principles. As *Erickson* underscored, "[s]pecific facts are not necessary." 551 U.S. at 93, 127 S.Ct. 2197. The Court was not engaged in a *sub rosa* campaign to reinstate the old fact-pleading system called for by the Field Code or even more modern codes. We know that because it said so in *Erickson:* "the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Id.* Instead, the Court has called for more careful attention to be given to several key questions: what, exactly, does it take to give the opposing party "fair notice"; how much detail realistically can be given, and should be given, about the nature and basis or grounds of the claim; and in what way is the pleader expected to signal the type of litigation that is being put before the court?
>
> This is the light in which the Court's references in *Twombly,* repeated in *Iqbal,* to the pleader's responsibility to "state a claim to relief that is plausible on its face" must be understood. See *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955; *Iqbal,* 129 S.Ct. at 1949. "Plausibility" in this context does not imply that the district court should decide whose version to believe, or which version is more likely than not. Indeed, the Court expressly distanced itself from the latter approach in *Iqbal,* "the plausibility standard is not akin to a probability requirement." 129 S.Ct. at 1949 (quotation marks omitted). As we understand it, the Court is saying instead that the plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen. For cases governed only by Rule 8, it is not necessary to stack up inferences side by side and allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing inferences.

*Swanson v. Citibank, NA,* 614 F.3d 400, 403-4 (7th Cir. 2010). Based on those principles, Plaintiffs'

detailed allegations (most of which are not discussed in Frontier's motion) amply support a plausible

claim in each of the challenged Counts.

## II. Count I states a claim under 42 U.S.C. §1981

Count I alleges a violation of both Plaintiffs' rights under the Civil Rights Act of 1866, codified at 42 U.S.C. §1981, a statute that "has roots in both the Thirteenth and Fourteenth Amendments" to the Constitution. *Doe v. Kamehameha Schools,* 470 F.3d 827, 836 (9th Cir. 2006). The statute provides, in relevant part:

> **(a) Statement of equal rights**
>
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> **(b) ''Make and enforce contracts'' defined**
>
> For purposes of this section, the term ''make and enforce contracts'' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. §1981(a) and (b). The Supreme Court has held, despite its textual reference to the same rights "enjoyed by white citizens," that Section 1981 "prohibits discrimination against white people as well as against non-whites." 470 F.3d, at 837 (citing *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 296, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976)).

Frontier's motion to dismiss cherry-picks only a few of Plaintiffs' allegations about their trip, creating the false impression that Plaintiffs have alleged merely that they purchased tickets for the flight, boarded the aircraft, and were successfully transported to Las Vegas. *See,* D.E. 10, at 4. Frontier ignores all of the factual allegations in Paragraphs 1 through 20 of the Complaint that were incorporated by reference into Count I through Paragraph 21. *See,* D.E. 1, at ¶ 21. Prior to analyzing

the plausibility of Plaintiffs' claim, it is necessary to look at those other allegations. After they were both seated together and several hours into the flight, Peter fell asleep with his head against the back of the seat in front of him. D.E. 1, at ¶ 10. He was rudely awakened when a Frontier flight attendant (Defendant John Doe Number 1) struck him so violently on the back of his head and neck that he suffered a concussion. *Id.* The flight attendant, acting within the scope of his employment with Frontier, *see id.*, at ¶ 18, made it clear to Peter and A.D. that he believed a white man should not be traveling in the company of a black teenager. *Id.*, at ¶¶ 11, 16. Based on that belief, he then accused Peter of human trafficking and sexual molestation of A.D., *id.*, at ¶ 11, took A.D. against his and Peter's wills to the rear of the aircraft, *id.*, at ¶¶ 12-13, where he installed another willing employee of Frontier to physically block A.D.'s return to his father, *id.*, refused to allow Peter to have access to his son, *id.*, refused to believe Peter and A.D. when they both informed him that they were father and son, *id.*, at ¶ 16, not persons engaged in human trafficking or illicit sexual activities, arranged with the other Doe Defendants (all of whom were employees of Frontier acting within the scope of their employment) to have federal and state law enforcement personnel meet the flight in Las Vegas to interrogate Peter and A.D., *id.*, and declared in a loud and mocking tone as Peter was exiting the aircraft, within earshot of other exiting passengers, that the FBI was "waiting for your ass" outside of the plane. *Id.*, at ¶ 17.

Section 1981 makes clear that both Peter and A.D. are entitled to the protection of "all laws . . . for the security of persons" as all other citizens, as well as "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship" that they had established with Frontier by purchasing tickets for the flight. Frontier's sole argument in support of dismissal of Count I, that Plaintiffs have no claim under §1981 because they ultimately got what they purchased a ticket for, *i.e.*, transportation by jet to Las Vegas, is identical to an argument that American Airlines

recently made (twice) in a §1981 case in the Northern District of Texas and which that court held "unavailing as a matter of law" (twice) based on the language of the statute and Supreme Court precedent interpreting §1981. In *Madison v. Courtney*, 365 F.Supp.3d 768 (N.D. Tex. 2019), the plaintiff, an African American, purchased a ticket for a flight from Dallas to Atlanta, and was, indeed, transported to Atlanta on that flight. 365 F.3d, at 770. He was even upgraded to First Class at no additional charge based on his status with the airline's frequent flyer program. *Id.* He alleged, however, that the flight attendant serving the First Class cabin spat in his drink and otherwise treated him with hostility by addressing him in a sarcastic tone and ignoring him during certain aspects of service. *Id.* American's motion to dismiss and subsequent motion for summary judgment[1] relied on the same argument that Frontier makes in the instant case, that the passenger ultimately received the transportation that he paid for. *See id.,* at 772-73. Like Frontier in the instant case, American relied on holdings in §1981 cases where the relevant contracts were of a "retail" nature, that "implicate only a transaction" such as being admitted to a club or purchasing an item in a department store. *Id.,* at 773. The court distinguished those cases from the contract involved in a ticket for carriage by an airline, which, like the contractual relationship at a restaurant, "generally involves a contractual relationship that … entitles the customer to [additional] benefits" beyond the bare transportation or meal purchased. *Id.* As passengers aboard an airliner, Plaintiffs were entitled not only to bare transportation, but also to the services of flight attendants who would ensure their comfort and safety during the trip. Plaintiffs instead received, according to their allegations (which must be accepted as true and viewed in the light most favorable to them for purposes of deciding the instant motion, *Winn v. Arizona Christian School Tuition Org.,* 562 F.3d 1002, 1007 (9th Cir. 2009)), the services of a flight attendant who delivered a blow to the back of Peter's head and neck sufficient to cause a

---

[1] The reported decision cited here is the denial of American's motion for summary judgment, but it references and quotes from the court's earlier—and unreported—denial of its motion for summary judgment, *see* 365 F.3d, at 772.

concussion, separation of father and son against their will, accusations of deplorable activities such as human trafficking and sexual molestation, imprisonment of A.D. in a back row by another employee, another battery by touching A.D. near his genital area without his or his father's consent, a mocking threat concerning the FBI, and delivery to the FBI and law enforcement for questioning about the false accusations of illegal activity, all because Peter is white and A.D. is black. Assuming the truth of those allegations, they clearly were singled out for discrimination based on their races, and they clearly did not receive the "enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship" as a result. Such a conclusion is entirely in line with the Supreme Court's holding in 2006 regarding §1981: "We have never retreated from what should be obvious from reading the text of the statute: Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination *impairs an existing contractual relationship*, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Domino's Pizza, Inc. v. McDonald,* 546 U.S. 470, 476 (2006)(emphasis added). Frontier's motion to dismiss Count I must therefore be denied.

### III. **Count II states a claim for intentional infliction of emotional distress**

Similar to its argument as to Count I, Frontier argues that Count II should be dismissed based on a "singular allegation," D.E. 10, at 5, that it has chosen from the Count while wholly ignoring the rest of Plaintiffs' factual allegations that were incorporated by reference into the Count. *See,* D.E. 1, at ¶ 27. It ignores, for instance, that a Frontier flight attendant whacked Peter so hard on the back of his head and neck—*while he was asleep*—that he caused a concussion. Certainly, that is conduct that is outrageous coming from a flight attendant who is supposed to be ensuring a passenger's comfort and safety, and something that no person would be expected to tolerate. *See, Maduike v. Agency Rent-A-Car,* 953 P.2d 24, 26 (Nev. 1998)(extreme and outrageous conduct is that which is "outside

all possible bounds of decency" and is regarded as "utterly intolerable in a civilized community.") Frontier also strategically ignores the fact that the false allegations of human trafficking and sexual misconduct were made to Peter at the time he was suffering from that concussion and had just been awakened—when the flight attendant should have known that he would be particularly susceptible to emotional distress. *See, Banerjee v. Continental, Inc.,* 2016 U.S. Dist. LEXIS 141891 (D. Nev. October 11, 2016)("Extreme and outrageous conduct may arise 'from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity,'" quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. f). It ignores the allegation that Peter's son was taken away from him, fondled and entrapped by strangers at the rear of the plane while he was in that susceptible condition. It ignores the allegations that A.D., a *twelve-year-old child* who was anticipating a holiday with his dad, was ripped away from his father by a stranger, touched inappropriately by an adult flight attendant, and imprisoned in the rear of the plane by another stranger. Certainly, Frontier's employees should have recognized his susceptibility to emotional distress given his tender age. Under the particular circumstances where the very agents of a common carrier who are entrusted with passengers' comfort and safety instead commit acts of battery on them, imprison them, and accuse them of despicable acts, when one is of a tender age and the other has just suffered a concussion that was delivered by one of those employees, and where it is alleged that those actions caused severe emotional distress to the Plaintiffs, they constitute allegations that meet the Restatement standards for IIED.

As the Court noted in *Banerjee*, the Court must consider the "totality of the circumstances" in deciding whether the conduct was sufficiently extreme and outrageous. *See also, Chehade Refai v. Lazaro,* 614 F. Supp. 2d 1103, 1121 (D. Nev. 2009); *Norman v. Gen. Motors Corp.,* 628 F. Supp. 702, 704-05 (D. Nev. 1986). In the instant case, the totality of the circumstances establishes extreme

and outrageous behavior by Frontier and its employees that warrants submitting Plaintiffs' IIED claim to the jury.

### IV.     Count III states a claim for negligent infliction of emotional distress

Once again, in its argument that Count III should be dismissed, Frontier presents only a portion of Plaintiffs' allegations and then argues that Plaintiffs are guilty of presenting a "lone, scant contention," D.E. 10, at 8, that lacks allegations of physical impact. Once again, Frontier should have read the full Complaint. As with the other Counts, Count III incorporates the factual allegations of Paragraphs 1 through 20. *See,* D.E. 1, at ¶ 31. Those allegations include the physical impact of Peter's concussion, *see id.*, at ¶ 10, and the physical impact of A.D.'s being dragged to the rear of the plane, fondled near his genital area, and physically restrained from returning to his father. *See, id.* at ¶¶ 12 and 15. As the Nevada Supreme Court recognized in *Chowdry v. NLVH, Inc.*, 851 P.2d 459 (Nev. 1993) and *Nelson v. City of Los Angeles*, 665 P.2d 1141 (Nev. 1983), the impact requirement serves a verification function that operates on a sliding scale relative to the degree of outrageousness of the conduct. Where the outrage is more extreme, the need for the impact is lessened. *See,* 665 P.2d, at 1145. In the instant case, there was both extreme impact (Peter's concussion, A.D.'s molestation and imprisonment) and extreme outrage, as evidenced by the allegations of the Complaint that Frontier chose not to mention. Frontier's motion to dismiss Count III should therefore be denied.

### V.     Count VI states a claim for both defamation and false light invasion of privacy

In its argument in favor of dismissing Count IV, Frontier repeats its strategy of ignoring critical allegations of the Complaint, but compounds the impropriety by arguing unsupported facts that are not contained in the Complaint. Arguments based on facts outside the complaint may not be considered on a motion to dismiss. *See, Moss v. U.S. Secret Serv.*, 675 F.3d 1213, 1255 (9th Cir.

2012), *amended*, 711 F.3d 941 (9th Cir. 2013), *rev'd sub nom on other grounds, Wood v. Moss*, 134 S.Ct. 2056 (2014). Therefore, Frontier's attempt to explain why its employees did what they did, in support of its claim of qualified immunity (an affirmative defense that it has not yet raised in a pleading) cannot be considered in support of its motion. Moreover, the Court cannot weigh in Frontier's favor evidence of malice that Plaintiffs have not yet presented in defense of an affirmative defense that has not yet been pleaded. Frontier's sole argument on the defamation claim puts multiple carts before multiple horses and must therefore be denied.

By alleging that Frontier's employee, acting within the scope of his employment, intentionally or at least recklessly made false accusations that Peter had committed despicable crimes of human trafficking and sexual molestation of a minor in front of other passengers on the flight, discussed the same allegations with other Frontier employees on the flight, and caused those other employees to discuss them with ground personnel and law enforcement agencies, causing damage to Peter, Plaintiffs have clearly stated a plausible claim of defamation (even defamation *per se*). See, *Switzer v. Rivera,* 174 F.Supp.2d 1097, 1110 (D. Nev. 2001); *see also Humphries v. City of Los Angeles,* 554 F.3d 1170, 1186 (9th Cir. 2008)("Indeed, to be accused of child abuse may be our generation's contribution to defamation per se, a kind of moral leprosy.")

Those same allegations state a plausible claim of false light invasion of privacy. As the Nevada Supreme Court noted in *Franchise Tax Bd. of Cal. v. Hyatt*, 407 P.3d 717, 735 (Nev. 2017):

> false light invasion of privacy protects one's subjective interest in freedom from injury to the person's right to be left alone. Therefore, according to these courts there are situations (being falsely portrayed as a victim of a crime, such as sexual assault, or being falsely identified as having a serious illness, or being portrayed as destitute) in which a person may be placed in a harmful false light even though it does not rise to the level of defamation.

Frontier's employees accused Peter of deeds that would be highly offensive to a reasonable person, and they did so with knowledge of, or reckless disregard of, the falsity of those claims. *See id.*

### VI. In the alternative, Plaintiffs should be given leave to amend

To the extent the Court finds any deficiencies in their Complaint as currently pleaded, Plaintiffs should be granted leave to amend to add additional facts. In light of the passage of time since the filing of the Complaint, they are in a position now to add further details of their emotional distress and its adverse effects on their lives. Also, once Frontier serves its Initial Disclosures required by Fed. R. Civ. P. 26(a)(1)(A), Plaintiffs will know the identities of the Doe Defendants and other passengers on the flight who will be contacted to provide additional details. When the Complaint was filed, all of that relevant information was in Frontier's hands and could not be obtained by Plaintiffs. "Leave to amend shall be freely given where justice so requires, and it should be granted unless the pleading could not possibly be cured by the allegation of other facts." *Lacey v. Maricopa County,* 693 F.3d 896, 939 (9th Cir. 2012).

### CONCLUSION

For all of the reasons set forth above, Plaintiffs respectfully submit that Frontier's Partial Motion to Dismiss should be denied. In the event that it granted in whole or in part, Plaintiffs respectfully move in the alternative for leave to amend their Complaint to correct any pleading omissions.

Dated: September 11, 2019

                                          TITOLO LAW OFFICE

                                          By: /s/ Timothy R. Titolo
                                                Timothy R. Titolo
                                                Nevada Bar No. 003617

                                          PARK AVENUE LAW LLC

                                          By: /s/ John D. McKay
                                                John D. McKay
                                                (*pro hac vice application pending*)
                                          *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

Pursuant to LR I 4-1, I hereby certify that I am an employee of Titolo Law Office, and on the 11th day of September, 2019, a true and correct copy of the foregoing **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS [D.E. 10]** was electronically filed with the Clerk of the Court for the United States District of Nevada using the CM/ECF system. The foregoing document was served upon the Following counsel of record as indicated below:

CHARLES A. MICHALEK, ESQ.
ROGERS, MASTRANGELO, CARVALHO & MITCHELL
700 South Third Street
Las Vegas, Nevada 89101

By: /s/ Debbie Fowler
An Employee of Titolo Law Office