Timothy R. Titolo, Esq.
Nevada Bar No. 003617
TITOLO LAW OFFICE
9950 West Cheyenne Ave.
Las Vegas, Nevada 89129
(702) 869-5100
tim@titololaw.com

John D. McKay, Esq.
*Admitted pro hac vice*
PARK AVENUE LAW LLC
127 W. Fairbanks Ave. No. 519
Winter Park, Florida 32789
(800) 391-3654
johndmckayatty@gmail.com

***Attorneys for Plaintiffs***

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| PETER DELVECCHIA, et al., ) | **Case No: 2:19-CV-01322-KJD-NJK** |
| ) | |
| Plaintiffs, ) | |
| ) | |
| ) | **PLAINTIFFS' MOTION TO COMPEL** |
| vs. ) | **ANSWERS TO INTERROGATORIES** |
| ) | **AND DOCUMENTS/ESI, AND TO** |
| ) | **REMOVE IMPROPER DESIGNATIONS** |
| FRONTIER AIRLINES, INC., et al., ) | **UNDER THE PROTECTIVE ORDER** |
| Defendants. ) | **Fed. R. Civ. P. 37, LR 26-7** |
| ) | |

Plaintiffs, Peter DelVecchia individually and as next friend of A. D., a minor, pursuant to

Federal Rule of Civil Procedure 37, Local Rule 26-7 and the terms of this Court's Protective Order

(ECF No. 37), by counsel, hereby move to compel answers to interrogatories and complete responses

to Plaintiffs' Requests for Production from Defendant Frontier Airlines, Inc. ("Frontier"), overruling

Frontier's numerous unspecific and unfounded objections. In addition, Plaintiffs move to

undesignated the names of certain passengers on the subject flight from the terms of the Protective

Order entered in this case (ECF No. 37), as Frontier's designation of the individuals' names as confidential is baseless.

## Factual Background

This is a civil case alleging tortious, malicious, racist, offensive and permanently harmful conduct that Defendant Frontier Airlines, Inc. ("Frontier") and six of its employees who were in charge of its Flight 2067 on March 28, 2019 inflicted upon Plaintiffs, who were paying and ticketed passengers aboard that flight. Plaintiff has sued Frontier and its employees for discrimination under the Civil Rights Act of 1866, codified at 42 U.S.C. §1981, as well as under state law for intentional and negligent infliction of emotional distress, false imprisonment/unlawful detention, battery, sexual assault, defamation and false light invasion of privacy.

Unfortunately, Frontier and its employees have been actively engaged in hiding relevant information from Plaintiffs from the date of the subject flight to the present. For example, while he was still aboard the flight, Plaintiff Peter DelVecchia asked one of the flight attendants involved in the harmful conduct for his name multiple times, so that Peter could file a report with his employer. The flight attendant refused to provide his surname, and identified himself only as "Kevin." According to documents provided by Frontier in discovery, that employee's name is Scott Warren.

Plaintiffs served sets of Interrogatories and Requests for Production on Frontier's counsel on October 7, 2019, the responses to which were due under Rules 33 and 34 on November 6, 2019. On the afternoon of that due date, Frontier's counsel emailed Plaintiffs' counsel stating, "We require additional time to prepare our responses, and would like an extension until Friday, Nov. 15, 2019." *Email from Tara Shelke, Esq. to John McKay, Esq., Wednesday, November 6, 2019.* Plaintiffs' counsel agreed to the requested extension within a few minutes of receiving the email request. Shortly before the extended due date, Frontier's counsel again requested more time to prepare

responses, and sought an extension to November 18 for the document/ESI response and November 22 for the answers to interrogatories. When Frontier's responses to the interrogatories were finally served, Frontier *objected to every interrogatory but one*, and for that one provided no answer, stating only that, "Frontier continues its investigation for responsive materials." Frontier's "Answers" to Interrogatories at 5, ¶11. This was after having the interrogatories for 46 days.

Similarly, Frontier responded to over half of Plaintiffs' Requests for Production with a mixture of baseless objections and statements that, "Frontier continues its investigation for responsive materials." In response to a request seeking the entire passenger manifest (*i.e.,* the formal list of passengers aboard the flight), Frontier objected on several grounds including claims that the names of passengers are protected from disclosure by 14 C.F.R. Part 243 and the Privacy Act of 1974, codified at 5 U.S.C. §552a. Nevertheless, Frontier revealed in its written responses to the Requests to Produce the names and seat assignments of 16 passengers. However, it designated the names as confidential under the Court's Protective Order (ECF No. 37), presumably based on the same legal authority. Plaintiffs seek removal of that designation because the authority is inapposite.

### Legal Authority

Federal Rule of Civil Procedure 37 and Local Rule 26-7 provide the authority and framework for a motion to compel discovery. Rule 37(a)(3)(B)(iii) and (iv) authorize Plaintiffs to move for, and the Court to grant, an order compelling discovery where Frontier has failed or refused to provide answers to interrogatories and requests for production. The Ninth Circuit has noted that Rule 37 "broadly empowers the district court to issue orders enforcing a party's discovery obligations," *see Sali v. Corona Regional Medical Center,* 884 F.3d 1218, 1223 (9th Cir. 2018). Local Rule 26-7(b) states, in relevant part, "All motions to compel discovery . . . must set forth in full the text of the

discovery sought and any response to it."[1] The Local Rule also requires a good faith effort to meet and confer prior to filing the motion to compel, and a declaration of such an effort. LR 26-7(c). The Court's October 8, 2019 Order in this case (ECF No. 35) imposes the additional requirements of a substantial pre-filing conference of counsel and an expedited briefing schedule.

### Declaration of Pre-Filing Conference

Lead counsel for Plaintiffs, John McKay, held a conference call at 2:00 p.m. on November 26, 2019 with counsel for Defendant Frontier, Tara Shelke, to attempt to resolve at least some of the issues. Counsel agreed on several outstanding items, but the requests listed below could not be resolved.

### Specific Requests, Objections and Argument

### I.   REQUESTS FOR PRODUCTION

**RFP No. 40: The complete passenger manifest for *Flight 2067*,[2] including seat assignments.**

Frontier's Response:   Frontier objects to Request for Production No. 40 on the grounds that it is overly broad and seeks information that is not relevant to any party's claim or defense and/or not proportional to the needs of the case. Frontier also objects to Request for Production No. 40 because it seeks private, personal, and confidential information not subject to disclosure. *See* 14 C.F.R. Part 243 and Privacy Act of 1974, 5 U.S.C. § 552a. Subject to and without waiving such objections, the following passengers were seated in rows 16, 17, and 18 onboard Flight 2067: [Frontier then named 16 passengers and seat assignments in those selected rows, designating all of the names as confidential under the Court's Protective Order].

---

[1] For that reason, Plaintiffs have not filed the entire sets of responses. *See also* LR 26-8. However, they will provide them to the Court if requested.
[2] Italicized terms were defined in the requests. "Flight 2067" was defined as the flight at issue in this litigation.

ARGUMENT:  The request is not "overly broad." Nor does it seek irrelevant evidence or evidence that is not proportional to the needs of the case. It seeks a limited number of names of persons who may have been witnesses to the events alleged in the Complaint, and the positions where they were seated inside the aircraft. As described in the Complaint, the events covered the length of the aircraft: Plaintiffs were seated near the middle of the cabin, in seats 17E and 17F. Flight attendants met at the rear of the cabin to discuss "the situation" of Plaintiff Peter DelVecchia sitting with his adopted African-American son. Passengers seated at the rear of the cabin could well have heard their discussions. Peter was struck in the back of the head in his mid-cabin seat, and then his son was forcibly taken to the rear of the aircraft. Peter tried to walk back to where his son had been placed, and was confronted and turned back by one of the flight attendants. Anyone seated between the last row of the aircraft and Peter's seat could have witnessed that. Anyone seated closer to the front who happened to be going to, or coming from, the aircraft's lavatories could have witnessed the events. Some of the flight attendants have provided statements saying that they brought "the situation" and the fact that they "felt uncomfortable" to the attention of the pilots. Passengers anywhere on the aircraft could have seen or heard a call to the cockpit, or related conversations between the flight attendants. As Peter was leaving the aircraft, the male flight attendant loudly mocked him and cast him in a false light. Any passenger could have witnessed that, and such facts are critical to the claims of defamation and false light invasion of privacy. Plaintiffs should therefore be allowed to conduct discovery of all of the passengers aboard the subject flight, and they can only do that if they know who they are. Frontier's withholding this information from Plaintiffs creates an unfair advantage, because Frontier knows who the witnesses to the events are.

Nor are the witnesses' names "private, personal, and confidential information not subject to disclosure." There is no law that makes the identities of passengers aboard an airline flight

confidential. The section of the Code of Federal Regulations and the Privacy Act statute cited by Frontier are inapposite. 14 CFR Part 243, which is part of the Federal Aviation Regulations, concerns aviation disasters. As the first section states, "The purpose of this part is to ensure that the U.S. government has prompt and adequate information in case of an aviation disaster on covered flight segments." 14 CFR §243.1. The only portion that makes any information confidential is §243.9(c), which explicitly applies solely to "[t]he contact information collected pursuant to section 243.7(a)(2) of this part." That section requires each covered airline to solicit "a name and telephone number of a contact from each passenger who is a U.S. citizen" so that government authorities will have next-of-kin or other contact information for each passenger in the event of an aviation disaster. Section 243.9 ensures that information may only be distributed to certain government agencies after such a disaster. Frontier's argument fails because the information that is required to be kept confidential does not apply to the passengers themselves, but instead to the "contacts" they have provided to the airline in the event of an emergency. Section 243.3, the definitions section, defines "contact" as "a person not on the covered flight or an entity that should be contacted in case of an aviation disaster." Thus, by its own terms, the regulation cited by Frontier does not apply to the names of passengers.

Similarly, Frontier's citation of 5 U.S.C. § 552a, part of the Privacy Act of 1974, provides no support for its objection. The statute, by its terms, applies only to certain government agencies that are named in §552(f)(1). *See* §552a(a)(1).[3] Frontier, a private corporation, is not one of them.

Frontier seeks to be the only holder of information relating to potential witnesses who were aboard the aircraft. The fact that it selectively named 16 of its passengers belies its argument that it is unable to disclose the rest. No legal authority exists for its position that the names must be held

---

[3] Although the text of the statute says "552(e)", that section was redesignated 552(f) by section 1802(b) by Pub. L. 99-570. *See* n.1 to §552a(1)(a).

confidential. All of the passenger names and seat assignments should be disclosed so that Plaintiffs can contact the passengers to see which ones witnessed the relevant events. Moreover, the names of the 16 disclosed passengers, as well as the names of the remaining passengers on the passenger manifest, should be ordered unsuitable for designation under the Court's Protective Order since they do not meet the stated criteria for protection under that Order, and Frontier's improper designation of them as protected under the Order should be rescinded.

**RFP No. 42:**   **All Documents/ESI containing *PNR*[4] data for passengers on *Flight 2067*.**

Frontier's Response:   Frontier objects to Request for Production No. 42 on the grounds that it is overly broad and seeks information that is not relevant to any party's claim or defense and/or not proportional to the needs of the case. Frontier also objects to Request for Production No. 42 because it seeks private, personal, and confidential information not subject to disclosure. *See* 14 C.F.R. Part 243 and Privacy Act of 1974, 5 U.S.C. § 552a. Subject to and without waiving such objections, *see* 19AZF0229 DELVECCHIA FRONTIER 0144-0196 produced herewith.

ARGUMENT: These are essentially the same objections asserted to RFP 40, and they should be overruled for the same reasons. Plaintiffs need the more detailed contact information contained in the PNR records to locate and contact the other passengers. At this point, Frontier holds a monopoly on being able to communicate with potential witnesses who could have information vital to Plaintiffs' claims. By refusing to disclose the contact information, it has the ability to prevent Plaintiffs from speaking with them. The only PNR data that Frontier has produced (over its objections) are the documents mentioned in the last sentence of its response, 19AZF0229 DELVECCHIA FRONTIER 0144-0196. Those documents contain the PNR data for Plaintiffs themselves, which obviously does

---

[4] "PNR" is a term used in the airline industry to mean Passenger Name Record. It typically includes contact information for the passengers such as addresses, telephone numbers and email addresses.

not help them get in contact with other witnesses. Frontier should be ordered to produce the full PNR data, including any and all contact information that Frontier holds for the passengers of Flight 2067.

**RFP No. 45:   All Documents/ESI containing and/or describing any training or education on the subject of preventing racial discrimination in dealings with passengers or customers that was given to any member(s) of the flight crew or cabin crew of *Flight 2067* on or before the date of *Flight 2067*, including, without limitation, the content of such training, attendance and/or online viewing confirmation records, dates given or otherwise provided to the crew members, quiz and/or test results, and the name(s) and address(es) of persons providing such training or education.**

Frontier's Response:   Frontier continues its investigation for responsive materials.

ARGUMENT:   "We're looking for that" is not a permitted response under Rule 34. It is neither a response nor an objection—it is simply a roadblock. After holding the requests for 42 days, Frontier should know whether or not it has an anti-discrimination policy applicable to passengers. The request is appropriate and necessary to the case, since one of the counts of the Complaint is for racial discrimination in violation of the Civil Rights Act of 1866, codified at 42 U.S.C. §1981. If Frontier has a program for training its flight attendants to avoid racial discrimination, then Plaintiffs should be permitted to see what it contains. They should also be permitted to look at any attendance and grading records to see whether the particular flight attendants involved in Flight 2067 attended the training and whether they required remedial education on the subject. If Frontier does not have a policy or training program, it should say so. These issues are relevant to Frontier's corporate responsibility for fostering an environment in which racial discrimination of passengers is possible. Frontier should be ordered to produce whatever materials it has, prior to its corporate depositions scheduled for the week of January 6.

**RFP No. 45:**   All Documents/ESI containing and/or describing any complaint(s) received by Frontier since January 1, 2009 that allege any act of discrimination on the basis of race conducted or condoned by a Frontier employee, including, without limitation, a copy of each complaint and any Documents/ESI containing or describing actions taken by Frontier's management in response to each complaint.

Frontier's Response:   Frontier objects to Request for Production No. 47 on the grounds that it is overly broad and seeks information that is not relevant to any party's claim or defense and/or not proportional to the needs of the case.

ARGUMENT:   The request is not overly broad, nor does it seek information that is irrelevant or out of proportion to the needs of the case. Plaintiffs have sued Frontier, as well as its crew members, for discriminating against them on the basis of their races. If it has been previously sued for similar conduct, that fact is relevant to Plaintiffs' claims if the claims in the prior suit(s) were valid. If Frontier has a documented history of condoning racial discrimination in any context, that is relevant to Plaintiffs' claims against Frontier. The request is limited to 10 years, as well as being limited to one specific type of lawsuit. Frontier should be able to find such records easily, and it should be ordered to produce them before its corporate depositions commence on January 6, 2020.

## II.    INTERROGATORIES

**Int. No. 5: Does Frontier consider it appropriate for one of its Flight Attendants to strike a passenger, and if so, under what circumstance(s)?**

Frontier's Response:   Frontier objects to Interrogatory No. 5 because it is overly broad and not proportional to the needs of the case. Subject to and without waiving such objection, as relevant to the events alleged in Plaintiffs' Complaint and Demand for Jury Trial (ECF No. 1), Frontier trains its flight attendants to defuse situations using conflict management techniques, to use separation

techniques, to use necessary resources to protect passengers, and to use Able Bodied Passengers ("ABPs") as appropriate. Further answering, Frontier trains its flight attendants to treat passengers with dignity and respect, and to handle events with discretion.

ARGUMENT:  The request is not overly broad—this is a case in which one of Frontier's flight attendants physically struck a (sleeping) passenger. Plaintiffs have a right to know whether Frontier's flight attendants are trained about physical assaults on passengers or are told that physical contact of this type is sometimes permissible. That inquiry is clearly proportional to the needs of this case. Frontier's answer "subject to" its invalid objections avoids the question entirely. It should be ordered to answer the question asked.

**Int. No. 6:     How does Frontier convey its position on striking (or not striking) passengers to its Flight Attendants?**

Frontier's Response:   Frontier objects to Interrogatory No. 6 because it is overly broad and not proportional to the needs of the case. Subject to and without waiving such objection, as relevant to the events alleged in Plaintiffs' Complaint and Demand for Jury Trial (ECF No. 1), Frontier trains its flight attendants to defuse situations using conflict management techniques, to use separation techniques, to use necessary resources to protect passengers, and to use Able Bodied Passengers ("ABPs") as appropriate. Further answering, Frontier trains its flight attendants to treat passengers with dignity and respect, and to handle events with discretion.

ARGUMENT:  Same arguments as for Interrogatory No. 5.

**Int. No. 7:**     Does Frontier consider it appropriate for one of its Flight Attendants to forcibly separate a minor child from his or her parent during a flight, after the child and parent have been seated together, and if so, under what circumstances?

Frontier's Response:   Frontier objects to Interrogatory No. 7 because it is overly broad and not proportional to the needs of the case. Subject to and without waiving such objection, as relevant to the events alleged in Plaintiffs' Complaint and Demand for Jury Trial (ECF No. 1), Frontier trains its flight attendants to defuse situations using conflict management techniques, to use separation techniques, to use necessary resources to protect passengers, and to use Able Bodied Passengers ("ABPs") as appropriate. Further answering, Frontier trains its flight attendants to treat passengers with dignity and respect, and to handle events with discretion.

ARGUMENT:   Clearly, this is a cut-and-paste objection, and it misses the mark everywhere that Frontier applies it. It does not respond the question asked, and the objection is baseless because the inquiry is about an event that even Frontier's employees admit happened. Plaintiffs have a right to inquire into any policies behind the action. Frontier should be ordered to answer the question.

**Int. No. 8:        How does Frontier convey its position on separating (or not separating) children from parents to its Flight Attendants?**

Frontier's Response:   Frontier objects to Interrogatory No. 8 because it is overly broad and not proportional to the needs of the case. Subject to and without waiving such objection, as relevant to the events alleged in Plaintiffs' Complaint and Demand for Jury Trial (ECF No. 1), Frontier trains its flight attendants to defuse situations using conflict management techniques, to use separation techniques, to use necessary resources to protect passengers, and to use Able Bodied Passengers ("ABPs") as appropriate. Further answering, Frontier trains its flight attendants to treat passengers with dignity and respect, and to handle events with discretion.

ARGUMENT:   Same arguments as above.

**Int. No. 9:        Does Frontier consider it appropriate for one of its Flight Attendants to touch a minor child in the vicinity of his or her genitalia, and if so, under what circumstances?**

<u>Frontier's Response</u>:   Frontier objects to Interrogatory No. 9 because it is overly broad and not proportional to the needs of the case. Subject to and without waiving such objection, as relevant to the events alleged in Plaintiffs' Complaint and Demand for Jury Trial (ECF No. 1), Frontier trains its flight attendants to defuse situations using conflict management techniques, to use separation techniques, to use necessary resources to protect passengers, and to use Able Bodied Passengers ("ABPs") as appropriate. Further answering, Frontier trains its flight attendants to treat passengers with dignity and respect, and to handle events with discretion.

<u>ARGUMENT</u>:   The current version of the Complaint alleges that the male flight attendant touched the minor Plaintiff in his groin area while demonstrating his claim that Peter had touched the minor inappropriately. Plaintiffs certainly have the right to inquire into any policy that Frontier may have that would either allow or discourage such an action. In fairness, some question has arisen in discovery as to whether the flight attendant's hand actually made contact with the minor's groin or hovered closely above it. Appropriate revisions have been made in the Amended Complaint, for which a motion for leave to amend is pending. In either circumstance, the flight attendant's actions were immensely traumatic to the minor, who was 12 years old at the time. The subject matter of the Interrogatory is relevant and proportional, and Frontier should be ordered to answer it.

**<u>Int. No. 10</u>:   How does Frontier convey its position on touching minor children in the vicinity of their genitalia to its Flight Attendants?**

<u>Frontier's Response</u>:   Frontier objects to Interrogatory No. 10 because it is overly broad and not proportional to the needs of the case. Subject to and without waiving such objection, as relevant to the events alleged in Plaintiffs' Complaint and Demand for Jury Trial (ECF No. 1), Frontier trains its flight attendants to defuse situations using conflict management techniques, to use separation techniques, to use necessary resources to protect passengers, and to use Able Bodied Passengers

("ABPs") as appropriate. Further answering, Frontier trains its flight attendants to treat passengers with dignity and respect, and to handle events with discretion.

ARGUMENT:  Again, not only is the existence of a policy relevant and discoverable, but the manner in which it is (or is not) conveyed to Frontier's employees is equally relevant and discoverable. Frontier should be required to answer the Interrogatory.

**Int. No. 13:    If the original Cockpit Voice Recorder recording for Flight 2067 or a transcript thereof does not still exist, please state the date(s) of destruction, the reason for destruction, the mode of destruction, and the names of all persons who listened to the recording or read the transcript before it was destroyed.**

Frontier's Response:  Frontier objects to Interrogatory No. 13 because it is overly broad and seeks information that is not relevant to any party's claim or defense, and is not proportional to the needs of the case. Subject to and without waiving such objection, if a request to preserve the CVR data is not made immediately after a flight, the data is not preserved.

ARGUMENT:  The Interrogatory is neither overly broad nor irrelevant or out of proportion with the needs of the case. The Cockpit Voice Recorder records all sounds heard in the cockpit during a flight. The flight attendants of Flight 2067 gave statements to the local police and FBI, as well as to Frontier, stating that they conveyed certain feelings of being "uncomfortable" to the pilots in the cockpit, and asked them to arrange for Peter to be detained by the police when the flight landed. Their exact words are relevant to the case, and if there was any transcript made of the Cockpit Voice Recorder, or copy of its tape, then the details of what happened to the record are relevant, and if there is someone who recalls listening to the tape or reading the transcript, Plaintiffs should have the ability to discover the details. The answer given by Frontier "subject to" its objections does not

respond to the precise questions asked. Frontier should be ordered to respond to the specific language of the Interrogatory.

**Int. No. 14:**   **What is Frontier's net worth as of the most recently closed accounting period?**

Frontier's Response:   Frontier objects to Interrogatory No. 14 because it is overly broad, seeks information that is not relevant to any party's claim or defense, and is not proportional to the needs of the case. Specifically, Frontier's net worth is not relevant to whether Frontier properly responded to a perceived threat to the safety of one of its passengers, or whether Frontier could satisfy any potential judgment.

ARGUMENT:   The Interrogatory is not overly broad or out of proportion with the needs of the case, because it seeks only the information for the most recently closed accounting period. The requested information is relevant because all of Plaintiffs' counts seek punitive damages, which are authorized by the underlying federal and state law. In order for Plaintiffs to ask the jury for an appropriate amount of punitive damages from Frontier, they need to know the net worth of the company. Although it is not dispositive, the ability of the Defendant to pay an award of punitive damages is of some importance, under federal law, to assessing the propriety of the award. *Rodriguez v. County of Los Angeles,* 891 F.3d 776, 806 (9th Cir. 2018). Net worth discovery is appropriate in federal court when punitive damages are sought in the complaint. *See, e.g., Searcy v. Esurance Ins. Co.*, 2015 WL 9216573, at *1 (D.Nev. Dec.16, 2015); *Momot v. Mastro*, 2011 WL 1833349, at *3 (D.Nev. May 13, 2011); *Allstate Ins. Co. v. Nassiri*, 2011 WL 318101, at *3 (D.Nev. Jan. 21, 2011). Frontier should be ordered to answer this Interrogatory.

**Int. No. 15:**   **Has Frontier ever been a party to any other lawsuit? This Interrogatory includes all lawsuits that Frontier, or anyone acting on its behalf, may have filed or that may**

**have been filed against Frontier, of any nature whatsoever, including, without limitation, personal injury, racial discrimination, false imprisonment, defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, battery, defamation, and invasion of privacy. If yes, state the nature of the allegations of each lawsuit, the court in which each lawsuit was filed, the caption of each lawsuit, and the year and docket number of each lawsuit.**

      <u>Frontier's Response</u>:   Frontier objects to Interrogatory No. 15 because it is overly broad, unduly burdensome, seeks information that is not relevant to any party's claim or defense, and is not proportional to the needs of the case. Specifically, whether Frontier has been a party to another lawsuit is not relevant to whether Frontier properly responded to a perceived threat to the safety of one of its passengers.

      <u>ARGUMENT</u>:   Remarkably, this Interrogatory is based directly on an Interrogatory that Frontier served on Peter, and which Peter answered under oath, without objection. Frontier's Interrogatory 14, which it served on Peter on October 4, 2019, read as follows:

> Have you ever been a party to any other lawsuit? This Interrogatory includes all lawsuits that you, or anyone acting on your behalf, may have filed or that may have been filed against you, of any nature whatsoever, including personal injury, divorce, and bankruptcy. If yes, state the nature of the allegations of each lawsuit, the court in which each lawsuit was filed, the caption of each lawsuit, and the year and docket number of each lawsuit.

If the Interrogatory was appropriate for Frontier to serve on Peter, then it should be appropriate for Frontier to answer without objection as well. Nevertheless, Plaintiffs have agreed to limit the Interrogatory to Frontier to lawsuits that alleged any of the claims that Plaintiffs have alleged in the Complaint. This essentially removes the "without limitation" clause from Plaintiffs' Interrogatory No. 15. If required by the Court, Plaintiffs would also be willing to put a reasonable time restriction on the request, such as 15 years.

**Int. No. 16:**    **Has Frontier had any conversations with any person at any time regarding the manner in which the incidents alleged in Plaintiffs' Complaint and Demand for Jury Trial occurred? If yes, state the date(s) on which such conversation(s) occurred, the place where the conversation(s) occurred, all persons present for the conversation(s), the matters and things stated by each person present for the conversation(s), whether the conversation was oral, written, or recorded, and who has possession of the writing or recording if written or recorded.**

Frontier's Response:   Frontier objects to Interrogatory No. 16 to the extent it seeks information protected by the attorney-client privilege or work-product doctrine. Subject to and without waiving such objection, see 19AZF0229 DELVECCHIA FRONTIER 0085-0099 and 0104-0105, the November 18, 2019 depositions of Gayle DelVecchia and Amanda DelVecchia, and the November 19, 2019 deposition of Plaintiff Peter DelVecchia to the extent they contain responsive information.

ARGUMENT:   Frontier objects on attorney-client privilege and work product grounds, but it has not provided a privilege log. Its "subject to" response allows it to selectively produce documents without disclosing what it is holding back. If Frontier or its attorneys have witness statements that Plaintiffs cannot otherwise obtain, Plaintiffs have a right to know what statements exist. At the very least, Frontier should be ordered to provide a privilege log.

CONCLUSION

For all of the reasons set forth above, Plaintiffs respectfully request an Order requiring Frontier to respond to the discovery requests noted above. In addition, Plaintiffs respectfully request an award of their attorneys' fees incurred in seeking the Order compelling discovery, as permitted by Fed. R. Civ. P. 37.

DATED this 2nd day of December, 2019.

/s/ John D. McKay
John D. McKay (admitted *pro hac vice*)
PARK AVENUE LAW LLC
127 W. Fairbanks Ave., No. 519
Winter Park, FL 32789
johndmckayatty@gmail.com
(800) 391-3654

Timothy R. Titolo (Nev. Bar. No. 3617)
TITOLO LAW OFFICE
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 869-5100
tim@titololaw.com

***Attorneys for Plaintiffs Peter DelVecchia
And A.D., a Minor***