Timothy R. Titolo, Esq.
Nevada Bar No. 003617
TITOLO LAW OFFICE
9950 West Cheyenne Ave.
Las Vegas, Nevada 89129
(702) 869-5100
tim@titololaw.com

John D. McKay, Esq.
*Admitted pro hac vice*
PARK AVENUE LAW LLC
127 W. Fairbanks Ave. No. 519
Winter Park, Florida 32789
(800) 391-3654
johndmckayatty@gmail.com

***Attorneys for Plaintiffs***

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| PETER DELVECCHIA, et al., | ) | **Case No: 2:19-CV-01322-KJD-NJK** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | **PLAINTIFFS' <u>AMENDED</u>** |
| vs. | ) | **MOTION TO COMPEL** |
| | ) | **ANSWERS TO INTERROGATORIES** |
| | ) | **AND DOCUMENTS/ESI, AND TO** |
| FRONTIER AIRLINES, INC., et al., | ) | **REMOVE IMPROPER DESIGNATIONS** |
| Defendants. | ) | **UNDER THE PROTECTIVE ORDER** |
| | ) | **Fed. R. Civ. P. 37, LR 26-7** |

Plaintiffs, Peter DelVecchia ("Peter") individually and as next friend of A. D., a minor,

pursuant to Federal Rule of Civil Procedure 37, Local Rule 26-7 and the terms of this Court's

Protective Order (Docket No. 37), by counsel, hereby file this amended motion to compel answers to

interrogatories and complete responses to Plaintiffs' Requests for Production from Defendant

Frontier Airlines, Inc. ("Frontier"), overruling Frontier's numerous unspecific and unfounded

objections. In addition, Plaintiffs move to rescind Frontier's designation of the names of certain

passengers on the subject flight from the terms of the Protective Order entered in this case (Docket

No. 37), as Frontier's designation of the individuals' names as confidential is baseless. This amended

motion responds to the Court's Order dated December 3, 2019 (Docket No. 47) that denied Plaintiffs'

original motion (Docket No. 45) without prejudice for failing to include sufficient citations to

authority.

## Factual Background

This is a civil case alleging tortious, malicious, racist, offensive and permanently harmful

conduct that Frontier and six of its employees inflicted upon Plaintiffs, who were paying and ticketed

passengers aboard Frontier's Flight 2067 on March 28, 2019. Plaintiffs have sued Frontier and its

employees for discrimination under the Civil Rights Act of 1866, codified at 42 U.S.C. §1981, as

well as under state laws for intentional and negligent infliction of emotional distress, false

imprisonment/unlawful detention, battery, sexual assault, defamation and false light invasion of

privacy.

Unfortunately, Frontier and its employees have been actively engaged in hiding relevant

information from Plaintiffs from the date of the subject flight to the present. For example, while he

was still aboard the flight, Plaintiff Peter DelVecchia asked one of the flight attendants involved in

the harmful conduct for his name multiple times, so that Peter could file a report with his employer.

The flight attendant refused to provide his surname, and identified himself only as "Kevin."

According to documents provided by Frontier in discovery, that employee's name is Scott Warren.

Plaintiffs served sets of Interrogatories and Requests for Production on Frontier's counsel on

October 7, 2019, the responses to which were due under Rules 33 and 34 on November 6, 2019. On

the afternoon of that due date, Frontier's counsel emailed Plaintiffs' counsel stating, "We require

additional time to prepare our responses, and would like an extension until Friday, Nov. 15, 2019."

*See emails between Tara Shelke, Esq. and John McKay, Esq., Wednesday, November 6, 2019,*

attached hereto as **Exhibit A**. Plaintiffs' counsel agreed to the requested extension within a few

minutes of receiving the email request. *See id.* Shortly before the extended due date, Frontier's

counsel again requested more time to prepare responses, and sought an extension to November 18 for

the document/ESI response and November 22 for the answers to interrogatories. When Frontier's

responses to the interrogatories were finally served, Frontier *objected to every interrogatory but one*,

and for that one provided no answer, stating only that, "Frontier continues its investigation for

responsive materials." Frontier's "Answers" to Interrogatories at 5, ¶11. This was after having the

interrogatories for 46 days.

Similarly, Frontier responded to over half of Plaintiffs' Requests for Production with a

mixture of baseless objections and statements that, "Frontier continues its investigation for responsive

materials." In response to a request seeking the entire passenger manifest (*i.e.,* the formal list of

passengers aboard the flight), Frontier objected on several grounds including claims that the names of

passengers are protected from disclosure by 14 C.F.R. Part 243 and the Privacy Act of 1974, codified

at 5 U.S.C. §552a. Nevertheless, Frontier revealed in its written responses to the Requests to Produce

the names and seat assignments of 16 of the 177 total passengers. However, it designated the names

of those passengers as confidential under the Court's Protective Order (Docket No. 37), presumably

based on the same legal authority. Plaintiffs seek removal of that designation because the authority is

inapposite.

### General Legal Authority

Federal Rule of Civil Procedure 37 and Local Rule 26-7 provide the authority and framework

for a motion to compel discovery. Rule 37(a)(3)(B)(iii) and (iv) authorize Plaintiffs to move for, and

the Court to grant, an order compelling discovery where Frontier has failed or refused to provide

answers to interrogatories and requests for production. The Ninth Circuit has noted that Rule 37

"broadly empowers the district court to issue orders enforcing a party's discovery obligations," *see*

*Sali v. Corona Regional Medical Center,* 884 F.3d 1218, 1223 (9th Cir. 2018); *see also, Hallett v.*

*Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)("broad discretion is vested in the trial court to permit or

deny discovery.")

Local Rule 26-7(b) states, in relevant part, "All motions to compel discovery . . . must set

forth in full the text of the discovery sought and any response to it."[1] The Local Rule also requires a

good faith effort to meet and confer prior to filing the motion to compel, and a declaration of such an

effort. LR 26-7(c). The Court's October 8, 2019 Order in this case (ECF No. 35) imposes the

additional requirements of a substantial pre-filing conference of counsel and an expedited briefing

schedule.

As this Court noted in an Order entered in a different case last week, it is the party opposing

discovery that bears the burden of establishing why it should not be had:

> The party seeking to avoid discovery bears the burden of showing why that discovery
> should not be permitted. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir.
> 1975); *see also Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 469 (N.D. Tex.
> 2015) (addressing burdens following 2015 amendments to discovery rules). The party
> resisting discovery must specifically detail the reasons why each request is irrelevant or
> otherwise objectionable, and may not rely on boilerplate, generalized, conclusory, or
> speculative arguments. *F.T.C. v. AMG Servs., Inc.*, 291 F.R.D. 544, 553 (D. Nev. 2013).
> Arguments against discovery must be supported by "specific examples and articulated
> reasoning." *U.S. E.E.O.C. v. Caesars Ent.*, 237 F.R.D. 428, 432 (D. Nev. 2006).

*Reno v. Western Cab Co.*, Case No.: 2:18-cv-00840-APG-NJK, slip. op. at 2 (D. Nev. Nov. 25,

2019). In the instant case, that party is Frontier. Plaintiffs' burden in filing the motion is to "show that

the [sought] information is [both] relevant to the subject matter of the lawsuit and [] necessary to

prepare the case for trial." *Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256

---

[1] For that reason, Plaintiffs have not filed the entire sets of responses. *See also* LR 26-8. However, they will provide them
to the Court if requested.

F.R.D. 678, 681 (C.D. Cal. 2009) (quoting *In re Remington Arms Co., Inc.*, 952 F.2d 1029, 1032 (8th Cir. 1991)).

### Declaration of Pre-Filing Conference

Lead counsel for Plaintiffs, John McKay, held a conference call at 2:00 p.m. on November 26, 2019 with counsel for Defendant Frontier, Tara Shelke, and her colleague, Matthew Martin, to "personally engage in two-way communication with the nonresponding party to meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention." *ShuffleMaster, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 171 (D. Nev. 1996). The telephone conference lasted one hour and seven minutes, during which Plaintiffs' counsel also emailed Frontier's counsel copies of several cases that support Plaintiffs' position that the items requested are discoverable. Counsel did agree on several outstanding items, but the requests listed below could not be resolved during the call.[2]

### Specific Unresolved Requests, Objections and Argument

**I.    REQUESTS FOR PRODUCTION**

**RFP No. 40:** The complete passenger manifest for *Flight 2067*,[3] including seat assignments.

**Frontier's Response:** Frontier objects to Request for Production No. 40 on the grounds that it is overly broad and seeks information that is not relevant to any party's claim or defense and/or not proportional to the needs of the case. Frontier also objects to Request for Production No. 40 because it seeks private, personal, and confidential information not subject to disclosure. *See* 14 C.F.R. Part 243 and Privacy Act of 1974, 5 U.S.C. § 552a. Subject to and without

---

[2] The copies of authority that Plaintiffs' counsel emailed to Frontier's counsel applied to the unresolved requests discussed below. Frontier offered no authority in support of its objections to those requests.

[3] Italicized terms were defined in the requests. "Flight 2067" was defined as the flight at issue in this litigation.

**waiving such objections, the following passengers were seated in rows 16, 17, and 18 onboard Flight 2067: [Frontier then named 16 passengers and seat assignments in those selected rows, designating all of the names as confidential under the Court's Protective Order].**

ARGUMENT: The request is not "overly broad." Nor does it seek irrelevant evidence or evidence that is not proportional to the needs of the case. It seeks a limited number (159, excluding the 16 named and Plaintiffs themselves) of names of persons who may have been witnesses to the events alleged in the Complaint, and the positions where they were seated inside the aircraft. As described in the Complaint, the events covered the length of the aircraft: Plaintiffs were seated near the middle of the cabin, in seats 17E and 17F. *See* seating chart obtained at www.seatguru.com attached hereto as **Exhibit B** (witnesses have testified that every seat was filled with the exception of three seats in the last row that were intentionally left unfilled). Flight attendants met at the rear of the cabin to discuss "the situation" of Plaintiff Peter DelVecchia sitting with his adopted African-American son. Passengers seated near the rear of the cabin could well have heard their discussions. Peter was struck in the back of the head in his mid-cabin seat, and then his son was forcibly taken to the rear of the aircraft. Other passengers in the middle of the cabin may have been witnesses to those events. Peter tried to walk back to where his son had been placed, and was confronted and turned back by one of the flight attendants. Anyone seated between the last row of the aircraft and Peter's seat in mid-cabin could have witnessed that. Anyone seated closer to the front who happened to be going to, or coming from, the aircraft's rear lavatories could have witnessed the events. One of the flight attendants testified that all four flight attendants met at the front of the aircraft to discuss "the situation" and whether they tell the Captain that they "felt uncomfortable" by Peter and his son. Passengers near the front of the aircraft could have seen or heard a call to the cockpit, or related conversations between the flight attendants. As Peter was leaving the aircraft, the male flight

attendant loudly mocked him and cast him in a false light. Any passenger who was deplaning at the time could have witnessed that, and such facts are critical to the claims of defamation and false light invasion of privacy. In short, there is a limited pool of persons who might have been eyewitnesses to the events alleged in the Complaint. Presumably, a large number of them were asleep at the time, listening to music, or otherwise distracted. Therefore, it is necessary to contact all other passengers to determine which ones have knowledge that would be helpful to Plaintiffs' case. Knowing what the eyewitnesses saw is critical to Plaintiffs' ability to prepare for trial.[4] Plaintiffs should therefore be allowed to conduct discovery of all of the passengers aboard the subject flight, and they can only do that if they know who they are. Frontier's withholding this information from Plaintiffs creates an unfair advantage, because Frontier knows who the witnesses to the events are and can keep Plaintiffs from learning what the witnesses saw or heard simply by continuing to withhold their names and contact information.

Nor are the witnesses' names "private, personal, and confidential information not subject to disclosure." There is no law that makes the identities of passengers aboard an airline flight confidential. Plaintiffs' counsel has spent many hours researching this issue, not only on behalf of plaintiffs, but also in prior roles as an aviation defense attorney and as a claims attorney for a major aviation insurance company. There is simply no statutory or case law to be found that supports Frontier's position that the names of passengers are protected from disclosure. In fact, the world's largest airline sold the names of over a million of its passengers to a third-party vendor that provided them to market research firms, and class action claims against the parties involved in that transaction

---

[4] The Court previously faulted Plaintiffs for not providing sufficient citations to authority in their original Motion to Compel, *see* Order (Docket No. 45). However, some of these concepts are so basic as to defy any effort to find citations on point. The relevance and proportionality of being able to locate and interview potential eyewitnesses prior to the expiration of the discovery deadline is axiomatic. Currently, only Frontier knows who they were and where they can be contacted. Moreover, as noted above, it is Frontier's burden to establish why the requested information is beyond the scope of discovery. *Blankenship*, 519 F.2d at 429.

went nowhere. *See In re American Airlines, Inc. Privacy Litigation*, 370 F.Supp.2d 552 (N.D. Tex. 2005) and unpublished final judgment order dated December 7, 2005 attached hereto as **Exhibit C**. Some of the claims were based on privacy terms contained in American's Contract of Carriage, *see* 370 F.Supp.2d at 556. The word "privacy" does not even appear in Frontier's Contract of Carriage. *See* www.flyfrontier.com/legal/contract-of-carriage (last accessed December 5, 2019). A separate "Privacy Policy" found on Frontier's website and attached hereto as **Exhibit D** specifically discloses that passengers' personal information may be disclosed "in connection with legal requests from (i) government authorities or (ii) third parties pursuant to a subpoena or other legal process." Therefore, no Frontier passenger could expect a right to have his or her name protected from disclosure in response to a properly served discovery request in a civil action.

The section of the Code of Federal Regulations and the Privacy Act statute cited by Frontier are inapposite authority for Frontier's objections. 14 CFR Part 243, which is part of the Federal Aviation Regulations, concerns aviation disasters. As the first section states, "The purpose of this part is to ensure that the U.S. government has prompt and adequate information in case of an aviation disaster on covered flight segments." 14 CFR §243.1. The only portion of those regulations that makes any information confidential is §243.9(c), which explicitly applies solely to "[t]he *contact information* collected pursuant to section 243.7(a)(2) of this part." (Emphasis added). That section requires each covered airline to solicit "a name and telephone number of a contact from each passenger who is a U.S. citizen" so that government authorities will have next-of-kin or other contact information for each passenger in the event of an aviation disaster. Section 243.9 ensures that the contact information may only be distributed to certain government agencies after such a disaster. The obvious reason is to protect surviving family members from being besieged by the press and/or plaintiff's attorneys in their time of grief. *Cf.* 49 U.S.C. § 1136(g)(2)(prohibiting unsolicited contacts

by attorneys to family members of victims of aviation accidents). Frontier's argument fails because the information that is required to be kept confidential does not apply to the passengers themselves, but instead to the "contacts" they have provided to the airline in the event of an emergency. Section 243.3, the definitions section, defines "contact" as "a person *not on the covered flight* or an entity that should be contacted in case of an aviation disaster." (Emphasis added). Thus, by its own terms, the regulation cited by Frontier does not apply to the names of passengers on the flight.

Similarly, Frontier's citation of 5 U.S.C. § 552a, part of the Privacy Act of 1974, provides no support for its objection. The statute, by its terms, applies only to certain government agencies that are named in §552(f)(1). *See* §552a(a)(1).[5] Frontier, a private corporation, is not one of them.

Frontier seeks to be the only party in this litigation holding information relating to potential witnesses who were aboard the aircraft. The fact that it selectively named 16 of its passengers belies its argument that it is unable to disclose the rest. No legal authority exists for its position that the names must be held confidential. All of the passenger names and seat assignments should be disclosed so that Plaintiffs can contact the passengers to see which ones witnessed the relevant events. Moreover, the names of the 16 disclosed passengers, as well as the names of the remaining passengers on the passenger manifest, should be ordered unsuitable for designation under the Court's Protective Order since they do not meet the stated criteria for protection under that Order, and Frontier's improper designation of them as protected under the Order should be rescinded. Absent "compelling reasons," information produced in discovery should not be sealed from public view. *Kamakana v. City and County of Honolulu,* 447 F.3d 1172, 1177 (9th Cir. 2006). No "compelling reasons" have been cited by Frontier in this case, and the cited terms of its own "Privacy Policy" clearly belie the existence of any. "[T]he names of eyewitnesses to the occurrence, even if obtained

---

[5] Although the text of the statute says "552(e)", that section was redesignated 552(f) by section 1802(b) by Pub. L. 99-570. *See* n.1 to §552a(1)(a).

by investigation made after the occurrence, are discoverable if they are material and necessary to the prosecution or defense of the action." *Zellman v. Metropolitan Transp. Auth.,* 339 N.Y.S.2d 255, 258 (N.Y. App. Div. 1973).

**RFP No. 42:   All Documents/ESI containing *PNR[6]* data for passengers on *Flight 2067.***

**Frontier's Response:** **Frontier objects to Request for Production No. 42 on the grounds that it is overly broad and seeks information that is not relevant to any party's claim or defense and/or not proportional to the needs of the case. Frontier also objects to Request for Production No. 42 because it seeks private, personal, and confidential information not subject to disclosure. *See* 14 C.F.R. Part 243 and Privacy Act of 1974, 5 U.S.C. § 552a. Subject to and without waiving such objections, *see* 19AZF0229 DELVECCHIA FRONTIER 0144-0196 produced herewith.**

ARGUMENT:  These are essentially the same objections asserted to RFP 40, and they should be overruled for the same reasons. PNR data is more useful than simply the passengers' names, because it contains location information, telephone numbers and often email addresses. To the extent that it includes credit card information, Plaintiffs have no objection to the payment information being redacted. Plaintiffs need the more detailed contact information contained in the PNR records to locate and contact the other passengers. At this point, Frontier holds a monopoly on being able to communicate with potential witnesses who could have information vital to Plaintiffs' claims. By refusing to disclose the contact information, it has the ability to prevent Plaintiffs from speaking with them. The only PNR data that Frontier has produced (over its objections) are the documents mentioned in the last sentence of its response, 19AZF0229 DELVECCHIA FRONTIER 0144-0196. Those documents contain the PNR data for Plaintiffs themselves, which obviously does not help them

---

[6] "PNR" is a term used in the airline industry to mean Passenger Name Record. It typically includes contact information for the passengers such as addresses, telephone numbers and email addresses.

get in contact with other witnesses. Frontier should be ordered to produce the full PNR data,

including any and all contact information that Frontier holds for the passengers of Flight 2067.

**RFP No. 45:   All Documents/ESI containing and/or describing any training or education on the subject of preventing racial discrimination in dealings with passengers or customers that was given to any member(s) of the flight crew or cabin crew of *Flight 2067* on or before the date of *Flight 2067*, including, without limitation, the content of such training, attendance and/or online viewing confirmation records, dates given or otherwise provided to the crew members, quiz and/or test results, and the name(s) and address(es) of persons providing such training or education.**

**Frontier's Response: Frontier continues its investigation for responsive materials.**

ARGUMENT:   "We're looking for that" is not a permitted response under Rule 34. It is

neither a response nor an objection—it is simply a roadblock. As this Court has said:

> "[A] party responding to a Rule 34 production request is under an affirmative duty to seek that information reasonably available to it from its employees, agents, or others subject to its control." *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006) (internal quotations and citations omitted). When a party asserts that he does not have responsive documents, **he must come forward with an explanation of the search conducted "with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence**." *Rogers v. Giurbino*, 288 F.R.D. 469, 485 (S.D. Cal. 2012).

*On Demand Direct Response, LLC v. McCart-Pollak,* 2018 WL 2014067 (D. Nev. Apr. 30,

2018)(emphasis by the Court). After holding the requests for 42 days, Frontier should know whether

or not it has an anti-discrimination policy applicable to passengers. The request is appropriate and

necessary to the case, since one of the counts of the Complaint is for racial discrimination in violation

of the Civil Rights Act of 1866, codified at 42 U.S.C. §1981. If Frontier has a program for training its

flight attendants to avoid racial discrimination, then Plaintiffs should be permitted to see what it

contains. They should also be permitted to look at any attendance and grading records to see whether

the particular flight attendants involved in Flight 2067 attended the training and whether they required remedial education on the subject. If Frontier does not have a policy or training program, it should say so. These issues are relevant to Frontier's corporate responsibility for fostering an environment in which racial discrimination of passengers is possible. Frontier should be ordered to produce whatever materials it has, prior to its corporate depositions scheduled for the week of January 6.

**RFP No. 45:**   **All Documents/ESI containing and/or describing any complaint(s) received by Frontier since January 1, 2009 that allege any act of discrimination on the basis of race conducted or condoned by a Frontier employee, including, without limitation, a copy of each complaint and any Documents/ESI containing or describing actions taken by Frontier's management in response to each complaint.**

**Frontier's Response:** **Frontier objects to Request for Production No. 47 on the grounds that it is overly broad and seeks information that is not relevant to any party's claim or defense and/or not proportional to the needs of the case.**

ARGUMENT:   The request is not overly broad, nor does it seek information that is irrelevant or out of proportion to the needs of the case. Plaintiffs have sued Frontier, as well as its crew members, for discriminating against them on the basis of their races. If it has been previously sued for similar conduct, that fact is relevant to Plaintiffs' claims if the claims in the prior suit(s) were valid. If Frontier has a documented history of condoning racial discrimination in any context, that is relevant to Plaintiffs' claims against Frontier. Actionable conduct under §1981 can include racial profiling, *see Giron v. City of Alexander*, 693 F.Supp.2d 904 (W.D. Ark. 2010), battery, *see Mendez v. Rutherford,* 687 F. Supp. 412 (N.D. Ill. 1988), and even reverse discrimination, *see Donald v. Santa Fe Trail Trans. Co.,* 427 U.S. 273 (1976); *Holland/Blue Streak v. Barthelemy,* 849 F.2d 987, 989 (5th

Cir. 1988). The request is limited to 10 years, as well as being limited to one specific type of lawsuit. Frontier should be able to find such records easily, and it should be ordered to produce them before its corporate depositions commence on January 6, 2020.

## II.   INTERROGATORIES

**Int. No. 5: Does Frontier consider it appropriate for one of its Flight Attendants to strike a passenger, and if so, under what circumstance(s)?**

**Frontier's Response:** **Frontier objects to Interrogatory No. 5 because it is overly broad and not proportional to the needs of the case. Subject to and without waiving such objection, as relevant to the events alleged in Plaintiffs' Complaint and Demand for Jury Trial (ECF No. 1), Frontier trains its flight attendants to defuse situations using conflict management techniques, to use separation techniques, to use necessary resources to protect passengers, and to use Able Bodied Passengers ("ABPs") as appropriate. Further answering, Frontier trains its flight attendants to treat passengers with dignity and respect, and to handle events with discretion.**

ARGUMENT:   As this Court recently noted:

> "An interrogatory may relate to any matter that may be inquired into under Rule 26(b)." Fed.R.Civ.P. 33(a)(2). Interrogatories are intended "to enable a party to prepare for trial, to narrow the issues and thus help determine what evidence will be needed at the trial, and to reduce the possibility of surprise at the trial." 8B FED. PRAC. & PROC. CIV. § 2162 (3d ed.). "Toward [those ends], Rule 26(b) is liberally interpreted to permit wide-ranging discovery of information even [if] the information may not be admissible at the trial." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 635 (C.D. Cal. 2005).

*Johnson v. Intu Corp.*, Case No.: 2:18-cv-02361-MMD-NJK, slip op. at 2 (D. Nev. Nov. 5, 2019). The request is not overly broad—this is a case in which one of Frontier's male flight attendants physically struck a (sleeping) passenger. Plaintiffs have a right to know whether Frontier's flight attendants are trained about physical assaults on passengers or are told that physical contact of this type is sometimes permissible. That inquiry is clearly proportional to the needs of this case. Frontier's

answer "subject to" its invalid objections avoids the question entirely. The objection should be overruled and it should be ordered to answer the question asked.

**Int. No. 6:**     **How does Frontier convey its position on striking (or not striking) passengers to its Flight Attendants?**

**Frontier's Response:** **Frontier objects to Interrogatory No. 6 because it is overly broad and not proportional to the needs of the case. Subject to and without waiving such objection, as relevant to the events alleged in Plaintiffs' Complaint and Demand for Jury Trial (ECF No. 1), Frontier trains its flight attendants to defuse situations using conflict management techniques, to use separation techniques, to use necessary resources to protect passengers, and to use Able Bodied Passengers ("ABPs") as appropriate. Further answering, Frontier trains its flight attendants to treat passengers with dignity and respect, and to handle events with discretion.**

ARGUMENT:  Same arguments as for Interrogatory No. 5.

**Int. No. 7:**     **Does Frontier consider it appropriate for one of its Flight Attendants to forcibly separate a minor child from his or her parent during a flight, after the child and parent have been seated together, and if so, under what circumstances?**

**Frontier's Response:** **Frontier objects to Interrogatory No. 7 because it is overly broad and not proportional to the needs of the case. Subject to and without waiving such objection, as relevant to the events alleged in Plaintiffs' Complaint and Demand for Jury Trial (ECF No. 1), Frontier trains its flight attendants to defuse situations using conflict management techniques, to use separation techniques, to use necessary resources to protect passengers, and to use Able Bodied Passengers ("ABPs") as appropriate. Further answering, Frontier trains its flight attendants to treat passengers with dignity and respect, and to handle events with discretion.**

ARGUMENT:  Clearly, Frontier's objection is of the "cut-and-paste" variety, and it misses the mark everywhere that Frontier pastes it. It does not respond the question asked, and the objection is baseless because the inquiry is about an event that even Frontier's employees admit happened. They have testified that, at the suggestion of the flight attendants and order of the Captain, Plaintiff A.D., the 12-year-old minor child, was physically separated from his father, Peter, and was confined to a rear row of seats where Defendants blocked his exit with the placement of an "Able Bodied Passenger." A.D. sat in the seat afraid, barefoot, cold and crying for hours. When Peter tried to reach him to comfort him, the male flight attendant who had previously struck Peter physically blocked his path. Plaintiffs have pleaded claims in false imprisonment and intentional and negligent emotional distress, as well as their federal §1981 claims. Plaintiffs have a right to inquire into any Frontier policies behind the action. Frontier should be ordered to answer the question prior to its corporate deposition.

**Int. No. 8:**     **How does Frontier convey its position on separating (or not separating) children from parents to its Flight Attendants?**

**Frontier's Response:** **Frontier objects to Interrogatory No. 8 because it is overly broad and not proportional to the needs of the case. Subject to and without waiving such objection, as relevant to the events alleged in Plaintiffs' Complaint and Demand for Jury Trial (ECF No. 1), Frontier trains its flight attendants to defuse situations using conflict management techniques, to use separation techniques, to use necessary resources to protect passengers, and to use Able Bodied Passengers ("ABPs") as appropriate. Further answering, Frontier trains its flight attendants to treat passengers with dignity and respect, and to handle events with discretion.**

ARGUMENT:  Same arguments as above.

**Int. No. 9:** **Does Frontier consider it appropriate for one of its Flight Attendants to touch a minor child in the vicinity of his or her genitalia, and if so, under what circumstances?**

**Frontier's Response:** **Frontier objects to Interrogatory No. 9 because it is overly broad and not proportional to the needs of the case. Subject to and without waiving such objection, as relevant to the events alleged in Plaintiffs' Complaint and Demand for Jury Trial (ECF No. 1), Frontier trains its flight attendants to defuse situations using conflict management techniques, to use separation techniques, to use necessary resources to protect passengers, and to use Able Bodied Passengers ("ABPs") as appropriate. Further answering, Frontier trains its flight attendants to treat passengers with dignity and respect, and to handle events with discretion.**

ARGUMENT:  The current version of the Complaint contains a battery count that alleges that the male flight attendant touched the minor Plaintiff in his groin area while demonstrating the flight attendant's outrageous claim that Peter had touched the minor inappropriately while both the minor and Peter were asleep. Plaintiffs certainly have the right to inquire into any policy that Frontier may have that would either allow or discourage such conduct by one of its flight attendants. In fairness, some question has arisen in discovery as to whether the flight attendant's hand actually made contact with the minor's groin or hovered closely above it. Appropriate revisions have been made in the proposed Amended Complaint, including a new count for sexual assault, for which a motion for leave to amend is pending. In either circumstance, the flight attendant's actions were immensely traumatic to the minor, who was 12 years old at the time. The subject matter of the Interrogatory is relevant and proportional, and Frontier should be ordered to answer it. The answer would "enable a party to prepare for trial, to narrow the issues and thus help determine what evidence will be needed at the trial, and to reduce the possibility of surprise at the trial." *Johnson, supra.*

**Int. No. 10:**    How does Frontier convey its position on touching minor children in the vicinity of their genitalia to its Flight Attendants?

**Frontier's Response:** Frontier objects to Interrogatory No. 10 because it is overly broad and not proportional to the needs of the case. Subject to and without waiving such objection, as relevant to the events alleged in Plaintiffs' Complaint and Demand for Jury Trial (ECF No. 1), Frontier trains its flight attendants to defuse situations using conflict management techniques, to use separation techniques, to use necessary resources to protect passengers, and to use Able Bodied Passengers ("ABPs") as appropriate. Further answering, Frontier trains its flight attendants to treat passengers with dignity and respect, and to handle events with discretion.

ARGUMENT:  Again, not only is the existence of a policy relevant and discoverable, but the manner in which it is (or is not) conveyed to Frontier's employees is equally relevant and discoverable. The answer would "enable a party to prepare for trial, to narrow the issues and thus help determine what evidence will be needed at the trial, and to reduce the possibility of surprise at the trial." *Johnson, supra.* Frontier should be required to answer the Interrogatory.

**Int. No. 13:**    If the original Cockpit Voice Recorder recording for Flight 2067 or a transcript thereof does not still exist, please state the date(s) of destruction, the reason for destruction, the mode of destruction, and the names of all persons who listened to the recording or read the transcript before it was destroyed.

**Frontier's Response:** Frontier objects to Interrogatory No. 13 because it is overly broad and seeks information that is not relevant to any party's claim or defense, and is not proportional to the needs of the case. Subject to and without waiving such objection, if a request to preserve the CVR data is not made immediately after a flight, the data is not preserved.

ARGUMENT:   The Interrogatory is neither overly broad nor irrelevant or out of proportion with the needs of the case. The Cockpit Voice Recorder records all sounds heard in the cockpit during a flight. *See, Pan American World Airways, Inc. v. Port Auth. Of N.Y. and N.J.,* 787 F. Supp. 312, 315 (E.D. N.Y. 1992), *rev'd on other grounds,* 995 F.2d 5 (2d Cir. 1993)("The CVR records all flight crew conversations or radio communications as well as all incoming radio communications…") The flight attendants of Flight 2067 gave statements to the local police and FBI, as well as to Frontier, stating that they conveyed certain feelings of being "uncomfortable" to the pilots in the cockpit, and asked them to arrange for Peter to be detained by the police when the flight landed. The Captain and one of the flight attendants have testified at their depositions that they do not recall the exact words of their conversations. Their exact words are relevant to the case, and if there was any transcript made of the Cockpit Voice Recorder, or copy of its tape, then the details of what happened to the record are relevant, and if there is someone who recalls listening to the tape or reading the transcript, Plaintiffs should have the ability to discover the details. The answer given by Frontier "subject to" its objections does not respond to the precise questions asked. Frontier should be ordered to respond to the specific language of the Interrogatory. This is necessary for Plaintiffs to be able to prepare for trial. *See Johnson, supra.*

**Int. No. 14**:   **What is Frontier's net worth as of the most recently closed accounting period?**

**Frontier's Response:** **Frontier objects to Interrogatory No. 14 because it is overly broad, seeks information that is not relevant to any party's claim or defense, and is not proportional to the needs of the case. Specifically, Frontier's net worth is not relevant to whether Frontier properly responded to a perceived threat to the safety of one of its passengers, or whether Frontier could satisfy any potential judgment.**

ARGUMENT:  The Interrogatory is not overly broad or out of proportion with the needs of the case, because it seeks only the information for the most recently closed accounting period. *Compare, Bartech Sys. Int'l, Inc. v. Mobile Simple Sols., Inc.*, Case No. 2:15-cv-02422-MMD-NJK (D. Nev. Feb. 12, 2018)(finding request for three years of financial records including tax returns, business plans and operating budgets overbroad but allowing one year). The requested information is relevant because all of Plaintiffs' counts seek punitive damages, which are authorized by the underlying federal and state law. In order for Plaintiffs to ask the jury for an appropriate amount of punitive damages from Frontier, they need to know the net worth of the company. Although it is not dispositive, the ability of the Defendant to pay an award of punitive damages is of some importance, under federal law, to assessing the propriety of the award. *Rodriguez v. County of Los Angeles,* 891 F.3d 776, 806 (9th Cir. 2018). Net worth discovery is appropriate in federal court when punitive damages are sought in the complaint. *See, e.g., Searcy v. Esurance Ins. Co.*, 2015 WL 9216573, at *1 (D. Nev. Dec.16, 2015); *Momot v. Mastro*, 2011 WL 1833349, at *3 (D.Nev. May 13, 2011); *Allstate Ins. Co. v. Nassiri*, 2011 WL 318101, at *3 (D.Nev. Jan. 21, 2011); *see also Bartech Sys. Int'l, Inc., supra* at *5-6 (collecting additional cases). Frontier should be ordered to answer this limited Interrogatory.

**Int. No. 15:    Has Frontier ever been a party to any other lawsuit? This Interrogatory includes all lawsuits that Frontier, or anyone acting on its behalf, may have filed or that may have been filed against Frontier, of any nature whatsoever, including, without limitation, personal injury, racial discrimination, false imprisonment, defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, battery, defamation, and invasion of privacy. If yes, state the nature of the allegations of each lawsuit, the court in which each lawsuit was filed, the caption of each lawsuit, and the year and docket number of each lawsuit.**

**Frontier's Response:** **Frontier objects to Interrogatory No. 15 because it is overly broad, unduly burdensome, seeks information that is not relevant to any party's claim or defense, and is not proportional to the needs of the case. Specifically, whether Frontier has been a party to another lawsuit is not relevant to whether Frontier properly responded to a perceived threat to the safety of one of its passengers.**

ARGUMENT:   Remarkably, Frontier objects to the propriety of this Interrogatory even though it is based directly on an Interrogatory that Frontier served on Peter, and which Peter answered under oath, without objection. Frontier's Interrogatory 14, which it served on Peter on October 4, 2019, read as follows:

> Have you ever been a party to any other lawsuit? This Interrogatory includes all lawsuits that you, or anyone acting on your behalf, may have filed or that may have been filed against you, of any nature whatsoever, including personal injury, divorce, and bankruptcy. If yes, state the nature of the allegations of each lawsuit, the court in which each lawsuit was filed, the caption of each lawsuit, and the year and docket number of each lawsuit.

If the Interrogatory was appropriate for Frontier to serve on Peter, then it should be appropriate for Frontier to answer without objection as well. Nevertheless, Plaintiffs have agreed to limit the Interrogatory to Frontier to lawsuits that alleged any of the claims that Plaintiffs have alleged in the Complaint. This essentially removes the "without limitation" clause from Plaintiffs' Interrogatory No. 15, and could discover other instances in which Frontier has condoned similar tortious acts by its employees, which would be relevant to Plaintiffs' claims for punitive damages. If required by the Court, Plaintiffs would also be willing to put a reasonable time restriction on the request, such as 10 years.

**Int. No. 16:**   **Has Frontier had any conversations with any person at any time regarding the manner in which the incidents alleged in Plaintiffs' Complaint and Demand for Jury Trial occurred? If yes, state the date(s) on which such conversation(s) occurred, the place**

**where the conversation(s) occurred, all persons present for the conversation(s), the matters and things stated by each person present for the conversation(s), whether the conversation was oral, written, or recorded, and who has possession of the writing or recording if written or recorded.**

**Frontier's Response:** **Frontier objects to Interrogatory No. 16 to the extent it seeks information protected by the attorney-client privilege or work-product doctrine. Subject to and without waiving such objection, see 19AZF0229 DELVECCHIA FRONTIER 0085-0099 and 0104-0105, the November 18, 2019 depositions of Gayle DelVecchia and Amanda DelVecchia, and the November 19, 2019 deposition of Plaintiff Peter DelVecchia to the extent they contain responsive information.**

ARGUMENT:   Frontier objects on attorney-client privilege and work product grounds, but it has not provided a privilege log as required by Fed. R. Civ. P. 26(b)(5). *See Morrocco v. Hill,* Case No. 2:12-cv-00028-JCM-NJK, slip op. at *4-5 (D. Nev. Jan. 24, 2013)(discussing requirement of privilege log). Its "subject to" response allows it to selectively produce documents without disclosing what it is holding back. If Frontier or its attorneys have witness statements that Plaintiffs cannot otherwise obtain, Plaintiffs have a right to know what statements exist. *See Morrocco.* At the very least, Frontier should be ordered to provide a privilege log.

CONCLUSION

For all of the reasons set forth above, Plaintiffs respectfully request an Order requiring Frontier to respond to the discovery requests noted above. In addition, Plaintiffs respectfully request an award of their attorneys' fees incurred in seeking the Order compelling discovery, as permitted by Fed. R. Civ. P. 37.

DATED this 5th day of December, 2019.

/s/ John D. McKay
John D. McKay (admitted *pro hac vice*)
PARK AVENUE LAW LLC
127 W. Fairbanks Ave., No. 519
Winter Park, FL 32789
johndmckayatty@gmail.com
(800) 391-3654

Timothy R. Titolo (Nev. Bar. No. 3617)
TITOLO LAW OFFICE
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 869-5100
tim@titololaw.com

***Attorneys for Plaintiffs Peter DelVecchia
And A.D., a Minor***