Timothy R. Titolo, Esq.
Nevada Bar No. 003617
TITOLO LAW OFFICE
9950 West Cheyenne Ave.
Las Vegas, Nevada 89129
(702) 869-5100
tim@titololaw.com

John D. McKay, Esq.
*Admitted pro hac vice*
PARK AVENUE LAW LLC
127 W. Fairbanks Ave. No. 519
Winter Park, Florida 32789
(800) 391-3654
johndmckayatty@gmail.com

**Attorneys for Plaintiffs**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| PETER DELVECCHIA, et al.,     ) | **Case No: 2:19-CV-01322-KJD-NJK** |
|     ) | |
|     Plaintiffs,     ) | |
|     ) | **MOTION OF PLAINTIFF PETER** |
|     ) | **DELVECCHIA FOR DESIGNATION AS** |
| vs.     ) | **"COVERED PERSONS" UNDER** |
|     ) | **49 CFR §1520.7** |
|     ) | |
| FRONTIER AIRLINES, INC., et al.,     ) | |
|     Defendants.     ) | |
|     ) | |

      Plaintiff Peter DelVecchia ("Peter"), by counsel, hereby moves for an Order designating him

and his counsel as "covered persons" under 49 CFR §1520.7 so that they can have access to relevant

documents and other relevant information necessary for Plaintiffs' case that Defendant Frontier

Airlines, Inc. ("Frontier") has withheld from production in response to discovery requests on the

grounds that it been stamped as "Sensitive Security Information" (SSI).[1] The grounds for this Motion are: (1) the documents and information are relevant and necessary to Plaintiffs' case, as discussed in more detail below and as supported by the holding of *McSwain v. United States*, Case No. 2:15-cv-01321-GMN-GWF, 2016 WL 4530461 (D. Nev. Aug. 30, 2016); (2) the regular SSI disclosure process that defense counsel assert is being undertaken is creating substantial delays with no guarantee that the documents and information will be disclosed prior to the discovery deadline and in time for depositions, if at all; (3) designating Peter and his counsel as "covered persons" but requiring that the information be designated "Confidential" under the existing Confidentiality Order [Doc. 37], and disclosable only pursuant to the terms of that Order—*e.g.,* only to legal support staff, Court personnel, and consultants and experts who have agreed to be bound by the Order—would eliminate those uncertainties and delays, while still protecting the contents from public disclosure, *see McSwain*; (4) Peter has substantial need of the information and documents, as discussed below, and he is unable without substantial hardship to obtain the substantial equivalent of the information by other means; and (5) federal law, specifically, Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Pub. L. No. 109-295, 120 Stat. 1355, 1382 (October 4, 2006), cited and explained by *McSwain* and *Ibrahim v. Department of Homeland Sec.*, 669 F.3d 983, 998-99 (9th Cir. 2012), provides that a party who has substantial need of SSI information who cannot, without substantial hardship, obtain the substantial equivalent of the information by other means, "shall be designated as a covered person under 49 CFR Part 1520.7 in order to have access to the SSI

---

[1] SSI is defined by 49 CFR §1520.5 as "information obtained or developed in the conduct of security activities, including research and development, the disclosure of which TSA has determined would (1) Constitute an unwarranted invasion of privacy (including, but not limited to, information contained in any personnel, medical, or similar file); (2) Reveal trade secrets or privileged or confidential information obtained from any person; or (3) Be detrimental to the security of transportation." In meet-and-confer discussions, Frontier's counsel have been unable to explain whether the stamps designating the material as SSI were applied based on an actual determination by the TSA that the material is SSI, or based on a belief by Frontier or one of its employees that it should be.

at issue in the case, provided the overseeing judge enters an order that protects the SSI from unauthorized or unnecessary disclosure and specifies the terms and conditions of access," a directive that is subject only to the limitation that the information should not be provided if the TSA or DHS demonstrates, based on a background check or the sensitivity of the information, that doing so would present a risk to the nation. Peter and his counsel are willing to submit to such background checks if the Court deems that necessary.[2]

### Factual Background

This is a civil case alleging tortious, malicious, racist, offensive and permanently harmful conduct that Defendant Frontier Airlines, Inc. ("Frontier") and six of its employees who were in charge of its Flight 2067 on March 28, 2019 from Raleigh-Durham International Airport to Las Vegas McCarran International Airport inflicted upon Plaintiffs, who were ticketed passengers aboard that flight. Plaintiffs allege that a flight attendant struck Peter violently on the back of his head when he was asleep, causing him to suffer a concussion, physically separated his son from him with the aid and consent of other members of the crew, falsely imprisoned and sexually assaulted his son, and falsely accused Peter in front of other passengers of sexually molesting his son. Plaintiffs have alleged that Defendants' conduct was based on the fact that Peter is white and his son, who was adopted from Ethiopia as a toddler by Peter and his late wife, is black. They have sued Frontier and its crew members for compensatory and punitive damages for violations of 42 U.S.C. §1981, IIED, NIED, false imprisonment/unlawful detention, battery, sexual assault, defamation and false light invasion of privacy. Defendants have claimed that their actions were in accordance with Frontier's

---

[2] Peter has been engaged in the business of forensic accounting, including ethics investigations, for several decades and has considerable experience handling confidential materials. His lead counsel previously owned two companies that constructed and managed 29 airplane hangars at an airport serviced by major airlines and he passed background checks for the issuance of SIDA (Security Identification Display Area) badges for access to the secured areas of that airport pursuant to 49 CFR §1542.205. He also holds a Commercial Pilot certificate issued by the FAA and has passed numerous background checks for 8 state bars and 2 international bars.

policies and training regarding suspected human trafficking, alleged sexual misconduct and the use of physical force on passengers, **but Frontier has refused to produce documents that contain or describe those policies, and information on Frontier's training concerning those policies, because the information has been marked (apparently by unknown persons) as SSI**. Frontier's counsel have represented that the relevant documents have been submitted to the TSA in accordance with the regular procedure for disclosure of SSI, but they have been unable to estimate when the TSA will complete its review of the documents, what sections of the documents might be redacted by the TSA, or whether the TSA will render any decision on them prior to the end of the discovery period in this case or in time to depose any of Frontier's employees about the information.[3] Peter and his counsel seek the designations permitted under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007 as a more reasonable and workable alternative to obtain production of the relevant materials.

## **ARGUMENT**

**I.**     **The requested documents and other information are relevant and discoverable and Peter and his counsel have substantial need of it.**

The specific requests that Plaintiffs made to Frontier on October 7, 2019 for the documents and information were as follows:

> **Request for Production 7: All Documents/ESI containing and/or describing any training or education on the subject of Human Trafficking and/or Sex Trafficking that was given to any member(s) of the flight crew or cabin crew of Flight 2067 on or before the date of Flight 2067, including, without limitation, the content of such training, attendance and/or online viewing confirmation records, dates given or otherwise provided to the crew members, quiz and/or test results, and the name(s) and address(es) of persons providing such training or education.**

---

[3] During a pre-filing meet-and-confer telephone conference held on February 14, 2020 between John McKay, lead counsel for Plaintiffs, and Matthew Martin, counsel for Defendant, Mr. Martin stated that his office had received word from a "contact within TSA" that the agency would begin producing documents "on a rolling basis in the next week or two." Plaintiffs deferred filing the motion on the strength of that representation, however more than two weeks have since passed without any documents being produced.

**Frontier's 11/18/2019 Response**: **[In addition to producing some training records, Frontier stated the following:]** *"Frontier has withheld certain training materials marked Sensitive Security Information (SSI) pending written permission from the administrator of the Transportation Security Administration (TSA) authorizing release of these materials. Frontier continues its investigation for additional responsive materials."*

**Request for Production 45**: All Documents/ESI containing and/or describing any training or education on the subject of preventing racial discrimination in dealings with passengers or customers that was given to any member(s) of the flight crew or cabin crew of Flight 2067 on or before the date of Flight 2067, including, without limitation, the content of such training, attendance and/or online viewing confirmation records, dates given or otherwise provided to the crew members, quiz and/or test results, and the name(s) and address(es) of persons providing such training or education.

**Frontier's 11/18/2019 Response**: *"Frontier continues its investigation for additional responsive materials."* **[See discussion below. Frontier did not produce any documents at all, so its reference to "additional" responsive materials is misleading. Despite this vague non-objection/non-production response, its counsel have alluded in telephone conversations to certain responsive documents being submitted to TSA for review as SSI.]**

**Request for Production 46**: All Documents/ESI containing and/or describing any policy or policies that Frontier published to its employees prior to March 28, 2019 on avoiding racial discrimination in dealing with passengers or customers.

**Frontier's 11/18/2019 Response**: *"Frontier continues its investigation for additional responsive materials."* **[See discussion below; same as RFP 45]**

**Interrogatory 5**: Does Frontier consider it appropriate for one of its Flight Attendants to strike a passenger, and if so, under what circumstance(s)?

*Frontier's 11/22/2019 Response: "Frontier objects to Interrogatory No. 5 because it is overly broad and not proportional to the needs of the case. Subject to and without waiving such objection, as relevant to the events alleged in Plaintiffs' Complaint and Demand for Jury Trial (ECF No. 1), Frontier trains its flight attendants to defuse situations using conflict management techniques, to use separation techniques, to use necessary resources to protect passengers, and to use Able Bodied Passengers ("ABPs") as appropriate. Further answering, Frontier trains its flight attendants to treat passengers with dignity and respect, and to handle events with discretion."* **[See discussion below. Although this combined objection and evasive "answer" does not mention any particular policy, Frontier's counsel have alluded in telephone conversations to certain policy materials being submitted to TSA for review as SSI.]**

**Interrogatory 7**: Does Frontier consider it appropriate for one of its Flight Attendants to forcibly separate a minor child from his or her parent during a flight, after the child and parent have been seated together, and if so, under what circumstances?

*Frontier's 11/22/2019 Response: "Frontier objects to Interrogatory No. 7 because it is overly broad and not proportional to the needs of the case. Subject to and without waiving such objection, as relevant to the events alleged in Plaintiffs' Complaint and Demand for Jury Trial (ECF No. 1), Frontier trains its flight attendants to defuse situations using conflict management techniques, to use separation techniques, to use necessary resources to protect passengers, and to use ABPs as appropriate. Further answering, Frontier trains its flight attendants to treat passengers with dignity and respect, and to handle events with discretion."* [See discussion below; same as Int. 5]

**Interrogatory 9**: Does Frontier consider it appropriate for one of its Flight Attendants to touch a minor child in the vicinity of his or her genitalia, and if so, under what circumstances?

*Frontier's 11/22/2019 Response: "Frontier objects to Interrogatory No. 9 because it is overly broad and not proportional to the needs of the case. Subject to and without waiving such objection, as relevant to the events alleged in Plaintiffs' Complaint and Demand for Jury Trial (ECF No. 1), Frontier trains its flight attendants to defuse situations using conflict management techniques, to use separation techniques, to use necessary resources to protect passengers, and to use ABPs as appropriate. Further answering, Frontier trains its flight attendants to treat passengers with dignity and respect, and to handle events with discretion."* [See discussion below; same as Int. 5]

Frontier did not object to the Requests for Production, but it did not produce any responsive documents. It did object to the Interrogatories on breadth and proportionality grounds (despite the fact that the Interrogatories are quite specific and correspond to actions that Plaintiffs alleged in the Amended Complaint), and attached to the objections guarded and evasive responses that mentioned no specific policies. However, its counsel have stated in meet-and-confer telephone discussions that there are, in fact, policy and training documents and other information responsive to both the Requests for Production and the Interrogatories that they have submitted to TSA for review and permission to produce. Frontier's counsel have not explained why an airline's policies regarding suspected human and/or sex trafficking, or policies concerning the avoidance of racial discrimination concerning its passengers, have been marked as "information obtained or developed in the conduct of

security activities" worthy of the interest of the TSA. *See,* 49 CFR §1520.5(a)(defining SSI); *see also, Mclean v. Dept. of Homeland Security,* 543 F.3d 1145 (9th Cir. 2008)(discussing the TSA's authority to designate certain materials as SSI).

Over three months have passed since the first representation was made by defense counsel that the materials were submitted to the TSA, and neither they nor the TSA have provided any further information concerning the responsive materials

Federal Rule of Civil Procedure 26(b)(1) defines the scope of discovery as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

As Magistrate Judge Foley noted in *McSwain*, discovery of a defendant's own rules is permissible and within the scope of discovery defined by Rule 26(b)(1) because numerous courts have held that the applicable standard of care applicable to a defendant's actions, and the defendant's breach of that standard of care, may be proven by the defendant's own rules and by showing that the defendant departed from them. *See, McSwain,* slip op. at 7-8; *see also, Wickliffe v. Sunrise Hospital, Inc.,* 766 P.2d 1322, 1325 (Nev. 1989)(jury "may consider the defendant's own standards and whether or not the defendant conformed to its own standards"); *Ponce v. Parker Fire Dist.,* 322 P.3d 197, 201 (Ariz. App. 2014) ("when a defendant has departed from rules of its own making governing the conduct of its employees, a plaintiff may thereby demonstrate breach of an appropriate standard of care"); *Roddey v. Wal-Mart Stores East, LP,* 784 S.E.2d 670, 675 (S.C. 2016)("Evidence of a company's deviation from its own internal policies is relevant to show the company deviated from the standard of care, and is properly admitted to show the element of breach"); *Steinberg v. Lomenick,* 531 So.2d

199, 200 (Fla.App.3 Dist. 1988)(rules made by a defendant to govern the conduct of employees are relevant evidence of the standard of care); *Babcock v. The Chesapeake and Ohio Railway*, 404 N.E.2d 265, 275 (Ill.App. 1980)(defendant's own rules governing the operation of its trains were admissible to prove the standard of care). Thus, Frontier's own rules and policies on the subjects of suspected human trafficking, suspected sex trafficking, avoidance of racial discrimination involving passengers, and physical contact with passengers are relevant to the applicable standards of care applicable to its employees, and necessary to prove the departures from those standards of care by the flight attendants and pilots of Flight 2067.

Peter and his counsel have substantial need to obtain that relevant information because there is no way to obtain it or its substantial equivalent by any other means. During depositions of Frontier's flight attendants and pilots, its counsel have not permitted the employees to testify as to any matters which are labeled as SSI in Frontier's manuals. The only way for Peter and his counsel to find out what the policies are is to obtain the pertinent sections of Frontier's employee manuals in which the policies are stated, and any related training materials as requested by Plaintiffs' Requests to Produce and Interrogatories quoted above.

**II.      Federal law specifically permits the Court to make the designations requested.**

Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Pub. L. No. 109-295, 120 Stat. 1355, 1382 (October 4, 2006), cited and explained by *McSwain* and *Ibrahim v. Department of Homeland Sec.*, 669 F.3d 983, 998-99 (9th Cir. 2012), provides that a party who has substantial need of SSI information who cannot, without substantial hardship, obtain the substantial equivalent of the information by other means, shall be designated as a covered person under 49 CFR Part 1520.7 in order to have access to the SSI at issue in the case, provided the overseeing judge

enters an order that protects the SSI from unauthorized or unnecessary disclosure and specifies the terms and conditions of access.

Frontier has claimed that the holdings of *McSwain* and *Ibrahim* apply only when the Department of Homeland Security is a party to the litigation, but there is nothing in the reasoning of either case that supports its position. The language of the law itself, Section 525(d), does not include any such limitation. It speaks only of a "party" involved "in civil proceedings in United States District Courts," *see McSwain*, at \*9. In fact, Magistrate Judge Foley noted in that decision that

> The language of Section 525(d) mirrors that of Rule 26(b)(3)(A)(ii) which provides that a party may discover relevant documents protected from disclosure by the work product doctrine if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."

*Id.* The application of Rule 26, of course, is not restricted to cases in which an agency of the federal government is the defendant. Certainly, Congress had the means and authority to impose such a restriction in the language of Section 525(d) had it intended one to exist, and it did not do so. The law should apply to all parties involved in proceedings in a federal district court.

### III.   The parties and the Court cannot afford the delays caused by the TSA review process.

The TSA review process is the equivalent of a black hole. Nobody outside of the TSA knows when it will complete its review of the submitted materials, or whether it will authorize Frontier to produce the materials at all. Its alleged statement to defense counsel regarding production "on a rolling basis" to commence "in a week or two" has proven to be misleading at best and false at worst. Moreover, only Frontier and the TSA know what Frontier has sent to TSA for review. Most importantly, the parties are under a pretrial order to make expert disclosures by March 25 and to complete discovery by May 25, *see* Doc. 46, and the TSA has given the parties no assurance that the materials will be reviewed and authorized for production in sufficient time to allow for depositions of

Frontier about the policies and training, and review by Plaintiffs' experts, prior to that deadline. In fact, a joint email sent to the TSA on January 10 asking for information relative to the review process has not been responded to, as far as Plaintiffs' counsel are aware. It appears likely that the TSA will conduct its review on its own schedule, without considering the needs of the parties or the Court's pretrial deadlines. Thus, the current process is likely to create delays that the Court and the parties can ill afford.

Given that significant questions exist whether the materials are even properly designated as SSI under the language of 49 CFR §1520.5, the Court should assume oversight of this matter and designate Peter and his counsel as "covered parties" so that they and the Court can review the needed materials on a schedule that will not disrupt the pretrial schedule established in this case.

IV.     **The existing Protective Order will protect against public disclosure of the materials.**

On October 10, 2019, the Court, by Magistrate Judge Koppe, entered onto the docket of this case the parties' Agreed Protective Order [Doc. 37], which remains in effect. Its terms restrict disclosure of any material marked "CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER" to: (a) the parties and their insurers; (b) members of the legal and support staff of the parties' attorneys' offices; (c) consultants retained in the case by a party or a party's attorney, but only after the consultant has signed the Nondisclosure Agreement that is Exhibit A to the Order; (d) the Court, Court personnel and Court reporters retained for proceedings relating to the case; and (e) such other persons as the parties may agree to in writing or are ordered by the Court. Doc. 37 at ¶ 4. That Order requires that materials so marked will only be used for purposes of the case and may not be disclosed outside of case-related official proceedings.

In *McSwain*, Magistrate Judge Foley stated:

Section 525(d) also requires that the court enter an order that protects the SSI from unauthorized or unnecessary disclosure and specifies the terms and conditions of access. Consistent with Section 525(d), the Court will enter a protective order providing that disclosure of the documents is restricted to plaintiff and/or plaintiff's counsel and plaintiff's liability expert witness (if one is designated in this case), and may only be used for purposes of this case. Production shall also be subject to any necessary prior background check that the TSA reasonably believes is necessary. The Court directs the parties to meet and confer regarding the submission of a stipulated protective order governing the production and use of SSI in this litigation.

2016 WL 4530461, at *9-10. In the instant case, the parties have already met, conferred and submitted a stipulated Protective Order that is sufficient to "protect[ ] the SSI from unauthorized or unnecessary disclosure and specifies the terms and conditions of access." Frontier has previously designated most of its internal documents as protected by that Order, and none of those documents have been disclosed by Plaintiffs outside of the sphere of persons authorized by the Order. To the extent the Court deems that a more restrictive Protective Order is necessary for the SSI, or that any background checks are necessary, Peter and his counsel are amenable to such additional requirements although they respectfully suggest that the Court should examine the materials to determine whether they are, in fact, SSI under the authority of 49 CFR §1520.5 prior to ordering such additional restrictions imposed.

## CONCLUSION

For all of the reasons set forth herein, Plaintiff Peter DelVecchia respectfully moves for an Order pursuant to Section 525(d) designating him and his counsel as "covered persons" under 49 CFR §1520.7 and ordering Frontier to produce the documents and information that it has withheld as SSI to them.

## DECLARATION OF PRE-FILING CONFERENCE

Lead counsel for Plaintiffs, John McKay, held a conference call at approximately 3:30 p.m. CST on February 14, 2020 with counsel for Defendant Frontier, Matthew Martin, to attempt to

resolve the issues of this Motion without the need for Court intervention. As indicated in the

applicable law, Court intervention is required in order to make the necessary designations. However,

as reflected in footnote 3, above, Mr. Martin requested that Plaintiff defer the filing of this Motion

based on an alleged representation that TSA would begin allowing production of the requested

materials "in the next week or two." Plaintiff's counsel agreed to a two-week deferral to see what

TSA would allow to be produced, but it has produced nothing at all in more than two weeks since

that conversation. The Motion has therefore been filed seeking intervention by the Court in this

important and time-sensitive issue.


DATED this 2nd day of March, 2020.

                                        _____
                                        /s/ John D. McKay
                                        John D. McKay (admitted *pro hac vice*)
                                        PARK AVENUE LAW LLC
                                        127 W. Fairbanks Ave., No. 519
                                        Winter Park, FL 32789
                                        johndmckayatty@gmail.com
                                        (800) 391-3654

                                        Timothy R. Titolo (Nev. Bar. No. 3617)
                                        TITOLO LAW OFFICE
                                        9950 West Cheyenne Avenue
                                        Las Vegas, Nevada 89129
                                        (702) 869-5100
                                        tim@titololaw.com

                                        *Attorneys for Plaintiffs Peter DelVecchia*
                                        *And A.D., a Minor*