UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

PETER DELVECCHIA, *et al.*,

Plaintiffs,

v.

FRONTIER AIRLINES, Inc., *et al.*,

Defendants.

Case No. 2:19-cv-01322-KJD-NJK

ORDER

Presently before the Court are Defendants' Motions to Dismiss and Strike (#6/10/11). Plaintiffs filed responses in opposition (#19/20) to which Defendants replied (#22/23). Also, before the Court is Plaintiffs' Motion to Amend (#39). Defendants filed a response in opposition (#49) to which Plaintiffs replied (#51).

I. Background

According to the allegations of the amended complaint, Plaintiff Peter DelVecchia ("Peter") and his twelve-year old son, Plaintiff A.D., contracted with Defendant Frontier Airlines to fly from North Carolina to Las Vegas to explore the western United States during Spring Break on or about March 28, 2019. Plaintiff Peter is Caucasian and his son, A.D. is African-American.

Accepting the allegations of the complaint as true, as the Court must, Plaintiffs were seated next to each other on the flight. Peter fell asleep with his head resting on the back of the seat in front of him. He was abruptly awakened when Defendant Warren, an employee of Frontier airlines, violently struck him at the base of his neck. The blow was forceful enough to cause a concussion.

Defendant Warren then falsely accused Peter of engaging in illegal human trafficking and sexual assault. Based upon the allegations of the complaint, the assault and the accusations were

based on Warren's belief that an older white man should not be traveling with a younger black child. Warren had discussed these beliefs with the rest of the flight crew, the other defendants. They concurred in his belief that the situation was "improper" and that Peter showed inappropriate affection to A.D.

Warren then forced A.D. to leave his seat and father. He was forced to sit in the rear of the plane where an adult male sat between A.D. and the aisle. The father and the son were not allowed to reunite for the duration of the flight. The captain on the flight, Defendant Shupe, and first officer, Defendant Mullin, condoned and authorized the separation of the Plaintiffs and authorized the calling of the police and FBI to meet the plane when it landed in Las Vegas.

In the presence of other passengers that were deplaning, Warren said loudly to Peter "Go on outside, the FBI is waiting for your ass." Previously, Warren had yelled on the plane that Peter had touched his son inappropriately. When Peter protested, Warren said, "Well we're going to have let the police sort that out."

Plaintiffs then brought the present action alleging: (1) violations of 42 U.S.C. § 1981; (2) intentional infliction of emotional distress; (3) negligent infliction of emotional distress; (4) false imprisonment; (5) battery and assault against Warren and Frontier; and (6) defamation and false light invasion of privacy against Warren and Frontier. Defendants have moved to dismiss all claims. Plaintiffs have moved to amend the complaint to name the individual flight crew defendants.

II. Standard for a Motion to Dismiss and for a Motion to Amend

The Court may dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, the complaint must provide enough facts to state a plausible claim for relief on its face. Id. at 678.

Iqbal laid out a two-step approach to evaluate a motion to dismiss under Rule 12(b)(6). First, the Court accepts as true all well-pleaded factual allegations in the complaint. However, legal conclusion or mere recitations of the elements of a cause of action—supported only by conclusory statements—do not deserve the assumption of truth. Id. at 678. Second, the Court must consider whether the factual allegations in the complaint allege a plausible claim for relief. Id. at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. Id. at 678. Further, where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged–but it has not show[n]–that the pleader is entitled to relief." Id. at 679 (internal quotation marks omitted). Thus, when the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. Twombly, 550 U.S. at 570.

Under Federal Rule of Civil Procedure Rule 15(a), a party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served. Otherwise, a party may amend only by leave of court or by written consent of the adverse party, and leave shall be freely given when justice so requires. Fed. R. Civ. P. 15(a). Although Rule 15(a) is very liberal, courts may deny a proposed amendment which would be "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in the litigation; or (4) is futile." Amerisource Bergen Corp. v. Dialysis West, Inc., 445 F.3d 1132, 1136 (9th Cir. 2006) (quoting Fed. R. Civ. P. 15(a)).

III. Analysis

A. Claims arising under 42 U.S.C. § 1981

42 U.S.C. § 1981 guarantees "[a]ll persons . . . the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The Civil Rights Act of 1991 amended § 1981 to protect "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." Id. at § 1981(b); see also Comcast Corp. v. Nat'l Assoc. of African American-Owned Media, No. 18-1171, slip op. at 10 (S.Ct. 2020). Here, Defendants seek dismissal of

1    Plaintiffs' claim asserting that they were never denied "the actual loss of a contract interest."

2    citing <u>Childs v. Boyd Gaming Corp.</u>, 2018 WL 4333945 *4 (D. Nev. September 11, 2018).

3    Defendant asserts that since there is no dispute that Plaintiffs purchased airfare, boarded the

4    plane and arrived at their destination Plaintiffs have no claim.

5        However, § 1981(b) protects parties in the "performance" and the "enjoyment of all

6    benefits, privileges, terms and conditions" of the contract. Based on the allegations of the

7    complaint, that Plaintiffs were assaulted, accused of being involved in human and/or sexual

8    trafficking, separated, and reported to the authorities based solely on their race, is enough to

9    satisfy the requirement that Plaintiffs initially plead "that, but for race, [they] would not have

10   suffered the loss of a legally protected right." <u>African American-Owned Media</u>, No. 18-1171 at

11   13. Therefore, Defendants' motion to dismiss this claim is denied.

12       <u>B. Intentional Infliction of Emotional Distress</u>

13       To state a claim for intentional infliction of emotional distress under Nevada law, a

14   plaintiff must allege "(1) extreme and outrageous conduct with either the intention of, or reckless

15   disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme

16   emotional distress, and (3) actual or proximate causation." <u>Welder v. Univ. of S. Nevada</u>, 833

17   F.Supp.2d 1240, 1245 (D. Nev. 2011) (quoting <u>Dillard Dep't Stores, Inc. v. Beckwith</u>, 989 P.2d

18   882, 886 (Nev. 1999)).

19       "[E]xtreme and outrageous conduct is that which is outside all possible bounds of

20   decency and is regarded as utterly intolerable in a civilized community." <u>Maduike v. Agency</u>

21   <u>Rent–A–Car</u>, 953 P.2d 24, 26 (Nev. 1998) (internal quotations omitted). "Extreme and

22   outrageous conduct also may arise from an abuse by the actor of a position, or a relation with the

23   other, which gives him actual or apparent authority over the other, or power to affect his

24   interests." <u>Chehade Refai v. Lazaro</u>, 614 F.Supp.2d 1103, 1122 (D. Nev. 2009) (internal

25   quotations omitted). When considering whether a plaintiff has sufficiently stated a claim upon

26   which relief can be granted, "The court determines whether the defendant's conduct may be

27   regarded as extreme and outrageous so as to permit recovery, but, where reasonable people may

28   differ, the jury [must determine] whether the conduct was extreme and outrageous enough to

result in liability." Id. at 1121. Certainly, at the initial pleading stage, Plaintiffs have met their burden in alleging extreme and outrageous conduct with a disregard for emotional distress, resulting emotional distress and causation. Therefore, the Court denies Defendants' motion to dismiss this claim.

### C. Negligent Infliction of Emotional Distress

To recover for negligent infliction of emotional distress under Nevada law, Plaintiffs must likewise establish that they either suffered a physical impact or "serious emotional distress" causing physical injury or illness. Barmettler v. Reno Air, Inc., 956 P.2d 1382, 1387 (Nev. 1998) ("We ... hold that, in cases where emotional distress damages are not secondary to physical injuries, but rather, precipitate physical symptoms, either a physical impact must have occurred or, in the absence of physical impact, proof of "serious emotional distress" causing physical injury or illness must be presented."). Here, Plaintiffs have failed to adduce the necessary allegations of negligence, and a causative link between a physical impact or serious emotional distress and injury. Further, all of Plaintiffs' factual allegations assert that Defendants' conduct was intentional. While the Court appreciates that claims may be plead as alternatives, the claim in this instance contains mere mechanical recitations of elements too attenuated from facts. Accordingly, this claim is dismissed with leave to amend.

### D. Defamation

To show defamation a plaintiff must prove four elements: "(1) a false and defamatory statement ...; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." Clark Cty. Sch. Dist. v. Virtual Educ. Software, Inc., 213 P.3d 496, 503–04 (Nev. 2009) (quotations and citations omitted). Defendants asserts that the alleged false and defamatory statements are protected because they were privileged communications to law enforcement. See Pope v. Motel 6, 114 P.3d 277, 317-18 (Nev. 2005). They are correct. However, Plaintiffs' amended complaint asserts that the publication was to other passengers, not the police. Accordingly, the Court denies the motion to dismiss the claim for defamation.

E. False Light Invasion of Privacy

A false light claim may be maintained only where there is some false statement of objective fact and actual malice. <u>Flowers v. Carville</u>, 266 F. Supp. 2d 1245, 1252 (D. Nev. 2003). A false light claim differs from a defamation claim because the alleged injury is from mental distress resulting from exposure to public views whereas a defamation claim concerns reputational harm. <u>Id.</u> "Public" disclosure means "that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Restatement (Second) of Torts § 652D cmt. a (1977). The communication "may be oral, written or by any other means," but it must be "a communication that reaches, or is sure to reach, the public." <u>Id.</u> "[I]t is not an invasion of the right of privacy, within the rule stated in [§ 652D], to communicate a fact concerning the plaintiff's private life to a single person or even a small group of persons." <u>Id.</u>

Here, the allegations are that the false light statements were made only in the presence of a small group of passengers. Such a limited group does not mee the requirement of public disclosure. <u>See</u>, e.g., <u>Kuhn v. Acct. Control Tech., Inc.</u>, 865 F. Supp. 1443, 1448 (D. Nev. 1994) (publicity requires that the "matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge"). In fact, it appears that Defendants' on-board allegations were only publicized by Plaintiffs or their agents. Accordingly, the Court grants the motion to dismiss the claim for false light invasion of privacy.

F. Motion to Strike Punitive Damages

Under Nevada law, punitive damages may be "awarded in addition to compensatory damages as a means of punishing the tortfeasor and deterring the tortfeasor and others from engaging in similar conduct." <u>Siggelkow v. Phoenix Ins. Co.</u>, 846 P.2d 303, 304–05 (Nev. 1993). Such damages are available "in an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied...." NRS 42.005. "Malice, express or implied," is defined as "conduct which is intended to injure a person or despicable conduct which is

engaged in with a conscious disregard of the rights or safety of others." NRS 42.001(3).

"Conscious disregard," in turn, "means the knowledge of the probable harmful consequences of a wrongful act and a willful and deliberate failure to act to avoid those consequences." NRS 42.001(1).

Based solely on the motion to dismiss and Plaintiffs' proposed amended complaint, Defendants have not satisfied the Court that Plaintiffs are categorically foreclosed from recovering punitive damages. Plaintiffs' amended complaint adequately marshals facts to support an award of punitive damages. Therefore, dismissal of Plaintiff's request for punitive damages would be premature. Defendants may renew their arguments in a future motion. See, e.g., AC Media Grp., LLC v. Sprocket Media, Inc., No. 2:16-cv-02145-APG-GWF, 2017 WL 1458198, at *4 (D. Nev. Apr. 24, 2017) ("Whether the plaintiffs will be able to develop facts to support a punitive damages award by clear and convincing evidence is not suitable for resolution at this stage of the proceedings."); Mitschke v. Gosal Trucking, LDS., No. 2:14-cv-1099-JCM-VCF, 2014 WL 5307950, at *4 (D. Nev. Oct. 16, 2014) ("Because any damages dispute is currently premature, the court will address the issue of damages if and when plaintiff succeeds on any of her remaining claims."). Accordingly, the motion to strike is denied.

G. Motion to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure permits courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit has "repeatedly held that 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.' " Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995)). Defendant seeks leave to amend the original complaint to name the Doe defendants who were previously unknown. The Court finds no sufficient bar to the proposed amendment. However, the Court notes that failure to find individual liability may result in an award of attorney's fees to the prevailing party. The motion to amend is granted.

IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that Plaintiffs' Motion to Amend (#39) is

**GRANTED**;

IT IS FURTHER ORDERED that Defendants' Motions to Dismiss (#6/10) is **GRANTED in part and DENIED in part**;

IT IS FURTHER ORDERED that Plaintiffs' claims for negligent infliction of emotional distress and false light invasion of privacy are **DISMISSED**;

IT IS FINALLY ORDERED that Defendants' Motion to Strike (#11) is **DENIED**.

Dated this 24th day of March, 2020.

Kent J. Dawson
United States District Judge