Timothy R. Titolo, Esq.
Nevada Bar No. 003617
TITOLO LAW OFFICE
9950 West Cheyenne Ave.
Las Vegas, Nevada 89129
(702) 869-5100
tim@titololaw.com

John D. McKay, Esq.
*Admitted pro hac vice*
PARK AVENUE LAW LLC
127 W. Fairbanks Ave. No. 519
Winter Park, Florida 32789
(800) 391-3654
johndmckayatty@gmail.com

**Attorneys for Plaintiffs**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| PETER DELVECCHIA, individually and as next friend of A.D., a Minor, )<br><br>Plaintiffs, )<br><br>vs. )<br><br>FRONTIER AIRLINES, INC., )<br>SCOTT WARREN, CHELSIE BRIGHT )<br>SAKURADA, ANNA BOND, AMANDA )<br>NICKEL, REX SHUPE and SHAWN )<br>MULLIN, )<br>Defendants. ) | **Case No: 2:19-CV-01322-KJD-DJA**<br><br><br>**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

For their First Amended Complaint against Defendants, FRONTIER AIRLINES, INC. ("Frontier"), SCOTT WARREN ("Warren"), CHELSIE BRIGHT SAKURADA ("Bright"), ANNA BOND ("Bond"), AMANDA NICKEL ("Nickel"), REX SHUPE ("Shupe") and SHAWN MULLIN ("Mullin"), Plaintiffs, PETER DELVECCHIA and A. D. (a minor suing by and through his next friend, Peter DelVecchia), allege the following:

Jurisdiction

This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. §1331 because it arises under a statute of the United States, specifically 42 U.S.C. §1981, which forbids racial discrimination against any person in the "making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

Plaintiffs further invoke this Court's diversity jurisdiction pursuant to 28 U.S.C. §1332, and/or its supplemental jurisdiction pursuant to 28 U.S.C. §1367(a), over all state law claims also set forth herein, as the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different states, and the state law claims derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally-based claims and causes of action.

This Court has both special and general personal jurisdiction over Frontier because Frontier operates an airline that makes daily scheduled flights into and out of McCarran International Airport in this District, employs hundreds of employees within this District, routinely advertises its services to the citizens of Nevada through a variety of media, owns or leases property within Nevada, has sued and been sued in Nevada courts without contesting personal jurisdiction, and maintains offices and a Registered Agent within Nevada. Moreover, the claims set forth herein all arise out of a scheduled flight operated by Frontier from Raleigh-Durham International Airport in North Carolina to McCarran International Airport in Nevada, on which both Plaintiffs were passengers after contracting for carriage to Nevada with Frontier.

This Court has both special and general personal jurisdiction over the individual Defendants because, upon information and belief, all of them reside in, or are based by

Frontier in, Nevada, and because the actions complained of herein were undertaken at least partially within Nevada.

Venue

Venue is proper in this District pursuant to 28 U.S.C. §1391, subsections (b)(1), (b)(2), and (c)(2) because the individual Defendants reside in, or are based by Frontier in, Nevada, because Frontier is subject to this Court's personal jurisdiction and is deemed by Section 1391(c)(2) to reside in any judicial district in which it is subject to the Court's personal jurisdiction with respect to this civil action, and because a substantial part of the events or omissions giving rise to the claims occurred in this District, at the McCarran International Airport in Las Vegas, Nevada and *en route* thereto over land contained in this District.

The Parties

1.      Plaintiff Peter DelVecchia ("Peter") is an individual citizen of Hillsborough, North Carolina. He is a widower and a single parent. At the time of the events described herein, Peter was 55 years old. His race is Caucasian.

2.      Plaintiff A. D. ("A. D.") is also an individual citizen of Hillsborough, North Carolina. He is the adopted son of Peter, and has lived with Peter and Peter's late wife for most of his life. At the time of the events described herein, A. D. was 12 years old. His race is African-American.

3.      Frontier is a Colorado corporation that has its principal place of business in Denver, Colorado. Frontier operates a low-cost airline that, according to its website, conducts scheduled passenger flights between several cities in the United States, as well as

to and from the countries of Canada, Mexico, Dominican Republic and Jamaica. *See,* https://flights.flyfrontier.com/en/sitemap/country-to-country-flights/page-1.[1]

4.      Defendant Warren is a male individual who was, at the time of the events described herein, employed as a flight attendant by Frontier. He worked as a flight attendant on the flight that is the subject of this Complaint. He falsely identified himself to Plaintiffs only as "Kevin," refusing to provide his surname to them. He is a resident of Las Vegas, Nevada.

5.      Defendant Bright is a female individual who was, at the time of the events described herein, employed as a flight attendant by Frontier. She worked as a flight attendant on the flight that is the subject of this Complaint. Upon information and belief, she told the law enforcement officials that were summoned to meet the flight that she is based by Frontier in Las Vegas, Nevada. She is a resident of Roy, Utah.

6.      Defendant Bond is a female individual who was, at the time of the events described herein, employed as a flight attendant by Frontier. She worked as a flight attendant on the flight that is the subject of this Complaint. She is a resident of Henderson, Nevada.

7.      Defendant Nickel is a female individual who was, at the time of the events described herein, employed as a flight attendant by Frontier. She worked as a flight attendant on the flight that is the subject of this Complaint. She is a resident of Las Vegas, Nevada.

8.      Defendant Shupe is a male individual who was, at the time of the events described herein, employed as a pilot by Frontier. He worked as the Captain on the flight

---

[1] Frontier's website also lists Puerto Rico as a "country" that the airline flies to and from. The Commonwealth of Puerto Rico has been a territory of the United States since the Treaty of Paris came into effect on April 11, 1899.

that is the subject of this Complaint. Upon information and belief, he is based by Frontier in Las Vegas, Nevada. He is a resident of Kaysville, Utah.

9.    Defendant Mullin is a male individual who was, at the time of the events described herein, employed as a pilot by Frontier. He worked as the First Officer on the flight that is the subject of this Complaint. He is a resident of, and is based by Frontier in, Las Vegas, Nevada.

Particulars of the Claim

10.    On March 28, 2019, Plaintiffs were passengers aboard Frontier's Flight 2067 from Raleigh-Durham International Airport in North Carolina to McCarran International Airport in Las Vegas, Nevada. Peter had purchased the tickets for both Plaintiffs from Frontier, for the purpose of taking A. D. on a recreational vehicle and hiking trip in Death Valley National Park during A.D.'s spring break from school. Plaintiffs were seated in adjacent seats on the aircraft. A.D. removed his shoes, and proceeded to fall asleep.

11.    During the nearly 4.5-hour flight, Peter fell asleep with his head resting on the back of the seat in the row ahead of his. He was abruptly awakened when Warren punched him violently at the base of his skull and on the back of his neck. The blow was, or blows were, so forceful as to cause a concussion.

12.    Warren then made false accusations against Peter including accusations that Peter was engaging in illegal human trafficking and illegal sexual assault. The aforesaid physical violence and accusations were based on Warren's belief that Peter, who is white, should not be traveling with A. D., who is black. Upon information and belief, Warren had discussed such beliefs previously with Bond, Bright, Nickel and Shupe, and all of them concurred in his belief that Peter traveling with A.D. and showing affection toward A.D. constituted an improper "situation" that made them all "feel uncomfortable."

First Amended Complaint and Demand for Jury Trial

13.     Warren then forced A. D. to leave his seat and the company of his father, without permitting him to put his shoes back on, and took him against his will to the rear of the aircraft, where he forced him to sit in a seat in the back row of the aircraft without his shoes and refused to allow him to return to his father for the remainder of the flight. A. D. asked repeatedly to be allowed to return to the seat beside his father, but Warren, acting in concert with, and with the knowledge and approval of, Bright, Bond, Nickel, Shupe and Mullin, would not allow A. D. to leave the seat in which Warren had placed him. In fact, Warren, acting in concert with, and with the knowledge and approval of, Bright, Bond, Nickel, Shupe and Mullin, all of whom were acting in the course of their employment by Frontier, arranged for a male "able-bodied passenger" to occupy the aisle seat between A. D. and the aisle of the aircraft, effectively blocking his ability to enter the aisle for the duration of the flight. Warren also blocked Peter from walking back to speak with A.D., and laughed mockingly at his inability to reach his son. After the flight landed, Defendants continued to detain A. D. and would not allow him to return to his father, despite requests by A. D. and Peter. Defendants ensured that A.D. was the last passenger to exit the aircraft, after they had ensured that Peter had been placed into police custody and escorted from the aircraft. They did not return A.D.'s shoes to him until after he exited the aircraft, forcing him to walk off the aircraft barefoot.

14.     Defendants' detention of A. D. in the last row of the aircraft, without his shoes and separated from his father, was intentional, or, in the alternative, was done with reckless disregard for Plaintiffs' rights. In addition, it was not consented to by A. D. or Peter, but was instead against their wills, was unlawful, and was without any legitimate basis in aircraft safety or any other purpose recognized in the Federal Aviation Regulations. It amounted to false imprisonment of A. D. for several hours.

15.     Upon information and belief, Shupe, the Captain on the flight, and Mullin, the First Officer on the flight, also participated in the unlawful removal of A. D. from his father and his unlawful detention in the rear of the aircraft, by suggesting, authorizing and arranging for those actions. At all times, Shupe and Mullin were acting within the scope of their employment with Frontier, and Frontier's management sanctioned their conduct.

16.     While he and the other Frontier employees were in the course of detaining A. D., Warren intentionally and/or recklessly sexually assaulted A. D. without A. D.'s or Peter's consent in an offensive manner, by placing his hand over A. D.'s body in the close vicinity of A. D.'s genital area, causing A. D. (and later, Peter) to suffer great fear, anxiety, mental anguish and embarrassment which has continued beyond the date of the occurrence.

17.     Defendants collaboratively decided that their false accusations needed to be relayed to law enforcement officials in Las Vegas, including the Las Vegas Metropolitan Police Department ("LVMPD") and the Federal Bureau of Investigation ("FBI"). As a group, Defendants had no basis on which to suggest that Peter was engaging in human trafficking or unlawful sexual activities other than their shared belief that Peter, a white adult man, should not be traveling in the company of A. D., a black male child, because it made them "feel uncomfortable." They refused to acknowledge that Peter and A. D. are father and son, despite being told so by both Peter and A. D.  Shupe and/or Mullin, with the assistance of other employees of Frontier, arranged for representatives of the LVMPD and the FBI to meet the flight at its arrival gate at McCarran Airport.

18.     As Peter was deplaning, Warren said to him in a loud voice and mocking tone, within the earshot of several other passengers who were also deplaning at the time, to "Go on outside, the FBI is waiting for your ass." That comment was meant to suggest, and did falsely suggest, that Peter had committed a federal crime onboard the flight and that A.D.

had been either a willing or unwilling participant in such a crime. Warren had previously yelled on the crowded plane, also within earshot of other passengers, that Peter had touched his son inappropriately, to which Peter had responded that he (Peter) had been asleep and could not have done so. Warren had responded, in a voice loud enough for other passengers to hear, "Well we're going to have to let the police sort that out." That comment, together with Warren's physical separation of Peter from A.D., strongly suggested to the rest of the passengers in the cabin that Peter had committed a despicable crime in which A.D. had been a participant. Warren also laughed mockingly at Peter, also in the plain view and earshot of other passengers, causing distress to Peter during an already highly stressful situation caused by Defendants.

19.    All of the actions by the individual Defendants described herein were conducted by them while they were under the control of Frontier and in the scope of their employment by Frontier, and Frontier's managerial staff has sanctioned and ratified their actions. Frontier is liable for the acts of its employees under the doctrine of *respondeat superior*.

20.    Defendants' actions described herein amounted to willful and wanton and malicious conduct sufficient to impose punitive damages on all Defendants, jointly and severally.

21.    As the result of all Defendants' actions, Plaintiffs suffered serious physical and mental injuries including, but not limited to, a concussion, other violations of the person, invasions of their privacy, mental anguish and anxiety, extreme emotional distress, cognitive loss, and damage to their reputations. All of those were foreseeable consequences of Defendants' actions.

## COUNT I: COMPENSATORY AND PUNITIVE DAMAGES
## AND ATTORNEYS' FEES PURSUANT TO 42 U.S.C. §1981

22.     Plaintiffs repeat, reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 21 of this First Amended Complaint as though such allegations were fully set forth herein.

23.     Plaintiffs had the right under 42 U.S.C. §1981 to be free from discrimination based on their races in the "making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship," including their contractual relationship with Frontier as passengers aboard its Flight 2067 on March 28, 2019.

24.     The individual Defendants and Frontier acted out of racial animus in concluding that Plaintiffs should not be travelling together, in concluding that their joint travel and father-son expressions of affection must be evidence of human trafficking or sexual deviance, in striking Peter and detaining and assaulting A. D., in making false accusations against them, and in denying Plaintiffs their federally-protected right to enjoy the benefits and privileges of their contractual relationship with Frontier during the flight. Their discriminatory and humiliating treatment of Plaintiffs was utterly unacceptable in civilized society and was an affront to the values that society expects in the equal treatment of all persons, especially those who travel aboard common carriers that are licensed by the United States government and that enjoy the privileges of operating commercial flights in federal airspace.

25.     Defendants are liable to Plaintiffs, jointly and severally, for compensatory damages under 42 U.S.C. §1981 for their intentional acts and omissions that caused Plaintiffs to sustain and endure severe emotional distress, serious physical injuries, shock, embarrassment and utter humiliation.

First Amended Complaint and Demand for Jury Trial

26.     Defendants are also liable to Plaintiffs, jointly and severally, for punitive damages under 42 U.S.C. §1981 because their conduct was based on malice and/or reckless indifference to Plaintiffs' legal rights.

27.     Defendants' conduct as described hereinabove has caused Plaintiffs to incur attorneys' fees and costs, and will continue to cause them to incur such fees and costs until this action has been resolved, and Plaintiffs are entitled to recover those attorneys' fees and costs in accordance with applicable federal laws and rules of procedure following a judgment on the merits.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages in an amount to be determined by the jury at trial, for punitive damages in an amount to be determined by the jury at trial, and for their attorneys' fees, costs, pre-judgment and post-judgment interest and such other and further relief as the Court shall deem just and proper.

### COUNT II: COMPENSATORY AND PUNITIVE DAMAGES PURSUANT TO STATE LAW FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

28.     Plaintiffs repeat, reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 21 of this First Amended Complaint as though such allegations were fully set forth herein.

29.     The aforesaid acts and omissions of Defendants were outrageous and utterly intolerable in civilized society, were malicious and/or were conducted with reckless indifference to the likelihood that emotional distress would result, and were intentional toward Plaintiffs and intended to cause them emotional distress. They therefore constitute the tort of intentional infliction of emotional distress.

30.     Defendants are liable to Plaintiffs, jointly and severally, for compensatory damages under applicable state laws for their intentional acts and omissions that caused Plaintiffs to sustain and endure severe emotional distress.

31.     Defendants are also liable to Plaintiffs, jointly and severally, for punitive damages under applicable state laws because their conduct was based on malice and/or reckless indifference to Plaintiffs' legal rights.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages in an amount to be determined by the jury at trial, for punitive damages in an amount to be determined by the jury at trial, and for their costs, pre-judgment and post-judgment interest and such other and further relief as the Court shall deem just and proper.

### COUNT III: COMPENSATORY AND PUNITIVE DAMAGES PURSUANT TO STATE LAW FOR FALSE IMPRISONMENT/UNLAWFUL DETENTION

32.     Plaintiffs repeat, reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 21 of this First Amended Complaint as though such allegations were fully set forth herein.

33.     The aforesaid acts of Defendants constituted false imprisonment and/or unlawful detention of A. D., which caused mental anguish to both A. D. and Peter.

34.     Defendants are liable to Plaintiffs, jointly and severally, for compensatory damages under applicable state laws for their intentional acts and omissions that falsely imprisoned and unlawfully detained A. D., and that caused Plaintiffs to sustain and endure severe emotional distress.

35.     Defendants are also liable to Plaintiffs, jointly and severally, for punitive damages under applicable state laws because their conduct was based on malice and/or reckless indifference to Plaintiffs' legal rights.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages in an amount to be determined by the jury at trial, for punitive damages in an amount to be determined by the jury at trial, and for their costs, pre-judgment and post-judgment interest and such other and further relief as the Court shall deem just and proper.

### COUNT IV: COMPENSATORY AND PUNITIVE DAMAGES
### PURSUANT TO STATE LAW FOR BATTERY AND SEXUAL ASSAULT

36.     Plaintiffs repeat, reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 21 of this First Amended Complaint as though such allegations were fully set forth herein.

37.     The aforesaid acts of Warren constituted the tort of battery upon Peter and sexual assault upon A. D., were malicious and/or were conducted with reckless indifference to the likelihood that physical injury and emotional distress would result, and were intentional toward Plaintiffs and intended to cause them physical injury and severe emotional distress. They were done while Warren was under the control of Frontier and within the scope of Warren's employment with Frontier. Frontier hired Warren and trained him for his duties. Frontier is therefore liable for the acts of Warren under the doctrine of *respondeat superior*.

38.     Defendants Warren and Frontier are liable to Plaintiffs, jointly and severally, for compensatory damages under applicable state laws for their intentional acts and omissions that caused Plaintiffs to sustain and endure physical injuries and severe emotional distress.

39.     Defendants Warren and Frontier are also liable to Plaintiffs, jointly and severally, for punitive damages under applicable state laws because their conduct was based on malice and/or reckless indifference to Plaintiffs' legal rights.

**WHEREFORE**, Plaintiffs demand judgment against Defendants Warren and Frontier, jointly and severally, for compensatory damages in an amount to be determined by the jury at trial, for punitive damages in an amount to be determined by the jury at trial, and for their costs, pre-judgment and post-judgment interest and such other and further relief as the Court shall deem just and proper.

### COUNT V: COMPENSATORY AND PUNITIVE DAMAGES
### PURSUANT TO STATE LAW FOR DEFAMATION

40.     Plaintiffs repeat, reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 21 of this First Amended Complaint as though such allegations were fully set forth herein.

41.     The aforesaid acts of Defendant Warren resulted in the unauthorized publication to third parties (other passengers of the flight) of false and defamatory accusations that Peter had committed various crimes and unlawful sexually deviant acts, and that A.D. was a participant in, or victim of, sexual deviance, human trafficking and/or sex trafficking, with the result that they caused presumed injury to Peter's and A.D's reputations and constituted defamation *per se*. In addition, they were malicious and/or were conducted with reckless indifference to the likelihood that emotional distress and damage to reputation would result, and were intentional toward Peter and A.D. and intended to cause them severe emotional distress and damage to reputation. They were done while Warren was under the control of Frontier and within the scope of Warren's employment with Frontier. Frontier hired Warren and trained him for his duties. Frontier is therefore liable for the acts of Warren under the doctrine of *respondeat superior*.

First Amended Complaint and Demand for Jury Trial

42.     Defendants Warren and Frontier are liable, jointly and severally, to Peter and A.D. for compensatory damages under applicable state laws for their intentional acts and omissions that caused Peter and A.D. to sustain and endure severe emotional distress and damage to their reputations.

43.     Defendants Warren and Frontier are also liable to Peter, jointly and severally, for punitive damages under applicable state laws because their conduct was based on malice and/or reckless indifference to Peter's legal rights.

**WHEREFORE**, Plaintiffs demand judgment against Defendants Warren and Frontier, jointly and severally, for compensatory damages in an amount to be determined by the jury at trial, for punitive damages in an amount to be determined by the jury at trial, and for their costs, pre-judgment and post-judgment interest and such other and further relief as the Court shall deem just and proper.

**PLAINTIFFS DEMAND TRIAL BY JURY.**

DATED this 30th day of March, 2020.

PARK AVENUE LAW LLC

*s/ John D. McKay*_____
John D. McKay, Esq.
*Admitted pro hac vice*
127 W. Fairbanks Ave. No. 519
Winter Park, Florida 32789
(800) 391-3654
johndmckayatty@gmail.com

TITOLO LAW OFFICE
Timothy R. Titolo, Esq.
Nevada Bar No. 003617
9950 West Cheyenne Ave.
Las Vegas, Nevada 89129
(702) 869-5100
tim@titololaw.com

***Attorneys for Plaintiffs***