Timothy R. Titolo, Esq.
Nevada Bar No. 003617
TITOLO LAW OFFICE
9950 West Cheyenne Ave.
Las Vegas, Nevada 89129
(702) 869-5100
tim@titololaw.com

John D. McKay, Esq.
*Admitted pro hac vice*
PARK AVENUE LAW LLC
127 W. Fairbanks Ave. No. 519
Winter Park, Florida 32789
(800) 391-3654
johndmckayatty@gmail.com

**Attorneys for Plaintiffs**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| PETER DELVECCHIA, *et al.*, | Case No: **2:19-CV-01322-KJD-DJA** |
| Plaintiffs, | **PLAINTIFFS' SECOND AMENDED MOTION TO COMPEL ANSWERS TO INTERROGATORIES, PRODUCTION OF DOCUMENTS/ESI, AND RULE 30(b)(6) DEPOSITION TESTIMONY** |
| vs. | |
| FRONTIER AIRLINES, INC., *et al.*, | |
| Defendants. | **Fed. R. Civ. P. 37, LR 26-7** |

Plaintiffs, Peter DelVecchia ("Peter") individually and as next friend of A. D., a minor,

pursuant to Federal Rule of Civil Procedure 37 and Local Rule 26-7, by counsel, hereby file this

Second Amended Motion to Compel seeking an Order compelling Defendant Frontier Airlines, Inc.

("Frontier") to provide complete answers to interrogatories, documents and electronically stored

information (ESI) in response to Plaintiffs' Requests for Production, and deposition testimony

pursuant to Rule 30(b)(6), overruling Frontier's numerous boilerplate, unspecific and unfounded

objections, and its preemptive refusal to designate a representative or representatives to testify at its Rule 30(b)(6) deposition noticed by Plaintiffs.[1]

## Factual Background

This is a civil case alleging tortious, malicious, racist, offensive and permanently harmful conduct that Frontier and six of its employees inflicted upon Plaintiffs, who were ticketed passengers aboard Frontier's Flight 2067 on March 28, 2019. Plaintiffs have sued Frontier and its employees for discrimination under the Civil Rights Act of 1866, codified at 42 U.S.C. §1981, as well as under state laws for intentional infliction of emotional distress, false imprisonment/unlawful detention, battery, sexual assault, and defamation.

Unfortunately, Frontier and its employees have been actively engaged in hiding relevant information from Plaintiffs from the date of the subject flight to the present. As just one example, while he was still aboard the flight, Plaintiff Peter DelVecchia asked one of the flight attendants involved in the harmful conduct for his name multiple times, so that Peter could file a report with Frontier and, more importantly, so that Peter and his son could ensure that they would not end up trapped in an airplane with the same flight attendant on their return flight to North Carolina several days later. The flight attendant refused to provide his surname, and identified himself only as "Kevin." According to documents subsequently provided by Frontier in discovery, that employee's name is Scott Warren. He testified in his deposition that he has never been known by any name other than Scott Warren. Thus, his use of the name "Kevin" was an outright fabrication intended to withhold relevant information from Plaintiffs.

---

[1] After receiving the Rule 30(b)(6) notice with list of subject matters on which the deposition would be conducted, Frontier declared through its counsel that it refused to provide representatives to testify on several of the enumerated matters. *See* emails attached hereto as **Exhibit A,** and Section III, *infra*. Even though it never moved for a protective order on those matters, Frontier announced that if the deposition proceeded, none of its representatives would appear at it to testify on the disputed subjects. As a result, and to avoid incurring substantial travel costs in vain, Plaintiffs have postponed the Rule (30)(b)(6) deposition until the Court rules on this Motion. They do so under protest, as the Federal Rules of Civil Procedure place the burden of obtaining a protective order squarely on Frontier in these circumstances.

Plaintiffs properly served sets of Interrogatories and Requests for Production on Frontier's counsel on October 7, 2019, the responses to which were due pursuant to Rules 33 and 34 on November 6, 2019. On the afternoon of that due date, Frontier's counsel emailed Plaintiffs' counsel stating, "We require additional time to prepare our responses, and would like an extension until Friday, Nov. 15, 2019." *See emails between Tara Shelke, Esq. and John McKay, Esq., Wednesday, November 6, 2019,* attached hereto as **Exhibit B**. Plaintiffs' counsel agreed to the requested extension within a few minutes of receiving the email request. *See id.*  Shortly before the extended due date, Frontier's counsel again requested more time to prepare responses, and sought an extension to November 18 for the document/ESI response and November 22 for the answers to interrogatories. When Frontier's responses to the interrogatories were finally served, following the agreed extensions, Frontier ***objected to every interrogatory but one***, and for that one interrogatory provided no specific answer, stating only that, "Frontier continues its investigation for responsive materials." Frontier's "Answers" to Interrogatories at 5, ¶11. This was after having the interrogatories for 46 days.

Similarly, Frontier responded to over half of Plaintiffs' Requests for Production on November 18, 2019 with a mixture of baseless objections and evasive assertions that "Frontier continues its investigation for responsive materials."

Frontier steadfastly refuses to provide any requested information on its net worth, despite the fact that all of the Counts of the Amended Complaint seek punitive damages and despite the fact that Frontier has already sought and obtained a Protective Order in this case that, if invoked as to the net worth information, would shield it from public disclosure. Frontier also refuses to present witnesses to testify on that issue, as well as several more issues, at its corporate deposition without a Court order requiring it to do so.

## General Legal Authority

Federal Rule of Civil Procedure 37 and Local Rule 26-7 provide the authority and framework for a motion to compel discovery. Rule 37(a)(3)(B)(iii) and (iv) authorizes Plaintiffs to move for, and the Court to grant, an order compelling discovery where Frontier has failed or refused to provide responses to discovery requests. The Ninth Circuit has noted that Rule 37 "broadly empowers the district court to issue orders enforcing a party's discovery obligations," *see Sali v. Corona Regional Medical Center,* 884 F.3d 1218, 1223 (9th Cir. 2018); *see also, Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)("broad discretion is vested in the trial court to permit or deny discovery.") As noted in the Ninth Circuit's *Sali* holding, the emphasis is on the responding party's "discovery obligations." Responding to discovery in the manner contemplated by the drafters of the Federal Rules of Civil Procedure is not the voluntary and selective process that Frontier seems to think that it is.

Local Rule 26-7(b) states, in relevant part, "All motions to compel discovery . . . must set forth in full the text of the discovery sought and any response to it."[2] The Local Rule also requires a good faith effort to meet and confer prior to filing the motion to compel, and a declaration of such an effort. LR 26-7(c). The Court's October 8, 2019 Order in this case (ECF No. 35) imposes the additional requirements of a substantial pre-filing conference of counsel and an expedited briefing schedule.

As this Court noted in an Order entered in a different case recently, it is the party opposing discovery that bears the burden of establishing why it should not be had:

> The party seeking to avoid discovery bears the burden of showing why that discovery should not be permitted. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); *see also Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 469 (N.D. Tex. 2015) (addressing burdens following 2015 amendments to discovery rules). **The party resisting discovery must specifically detail the reasons why each request is irrelevant or otherwise objectionable, and may not rely on boilerplate, generalized,**

---

[2] For that reason, Plaintiffs have not filed the entire sets of responses. *See also* LR 26-8. However, they will provide them to the Court if requested.

**conclusory, or speculative arguments.** *F.T.C. v. AMG Servs., Inc.*, 291 F.R.D. 544, 553 (D. Nev. 2013). Arguments against discovery must be supported by "specific examples and articulated reasoning." *U.S. E.E.O.C. v. Caesars Ent.*, 237 F.R.D. 428, 432 (D. Nev. 2006).

*Reno v. Western Cab Co.*, Case No.: 2:18-cv-00840-APG-NJK, slip. op. at 2 (D. Nev., Nov. 25, 2019)(emphasis added). In the instant case, that party is Frontier. Plaintiffs' burden in filing the motion is to "show that the [sought] information is [both] relevant to the subject matter of the lawsuit and [] necessary to prepare the case for trial." *Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 681 (C.D. Cal. 2009) (quoting *In re Remington Arms Co., Inc.*, 952 F.2d 1029, 1032 (8th Cir. 1991)).

### Declaration of Pre-Filing Conference

Lead counsel for Plaintiffs, John McKay, has held several conference calls and face-to-face meetings with Frontier's defense counsel concerning its responses to discovery detailed in this Motion. In addition to face-to-face meetings conducted between depositions, he met at 2:00 p.m. on November 26, 2019 with counsel for Defendant Frontier, Tara Shelke, and her colleague, Matthew Martin, by telephone to "personally engage in two-way communication with the nonresponding party to meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention." *ShuffleMaster, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 171 (D. Nev. 1996). That telephone conference lasted one hour and seven minutes, during which Plaintiffs' counsel also emailed Frontier's counsel copies of several cases that support Plaintiffs' position that the items requested are discoverable. Attorneys McKay, Titolo, Maye and Martin met again by telephone for a prefiling conference on outstanding discovery responses on January 8, 2020. Additionally, Attorneys McKay and Martin conducted another meet-and-confer prefiling conference by telephone on January 29, 2020 at 3:00 p.m. to discuss, *inter alia*, outstanding discovery responses and the Rule 30(b)(6)

deposition of Frontier that was noticed to occur in Denver on the 6th and 7th of February. The discovery responses listed below were not able to be resolved in those multiple prefiling conferences.

### Specific Unresolved Requests, Objections and Argument

### I.    REQUESTS FOR PRODUCTION

**First RFP No. 45:**    **All Documents/ESI containing and/or describing any training or education on the subject of preventing racial discrimination in dealings with passengers or customers that was given to any member(s) of the flight crew or cabin crew of *Flight 2067* on or before the date of *Flight 2067*, including, without limitation, the content of such training, attendance and/or online viewing confirmation records, dates given or otherwise provided to the crew members, quiz and/or test results, and the name(s) and address(es) of persons providing such training or education.**

**Frontier's Response:** **Frontier continues its investigation for responsive materials.**

ARGUMENT:  "We're looking for that" is not a permitted response under Rule 34. It is neither a response nor an objection—it is simply a roadblock. As this Court has said:

> "[A] party responding to a Rule 34 production request is under an affirmative duty to seek that information reasonably available to it from its employees, agents, or others subject to its control." *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006) (internal quotations and citations omitted). When a party asserts that he does not have responsive documents, **he must come forward with an explanation of the search conducted "with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence."** *Rogers v. Giurbino*, 288 F.R.D. 469, 485 (S.D. Cal. 2012).

*On Demand Direct Response, LLC v. McCart-Pollak,* 2018 WL 2014067 (D. Nev. Apr. 30, 2018)(emphasis by the Court). After holding the requests for 42 days before serving its response, Frontier should know whether or not it has an anti-discrimination policy applicable to passengers.[3] The request is appropriate and necessary to the case, since one of the counts of the Complaint is for

---

[3] In fact, it has now been an additional 142 days with no substantive response.

racial discrimination in violation of the Civil Rights Act of 1866, codified at 42 U.S.C. §1981. If Frontier has a program for training its flight attendants to avoid racial discrimination, then Plaintiffs should be permitted to see what it contains and to determine whether it fails to provide meaningful guidance to its employees and/or any repercussions for any failure by them to abide by it. Plaintiffs should also be permitted to look at any attendance and grading records to see whether the particular flight attendants involved in Flight 2067 attended the training and whether they required remedial education on the subject. If Frontier does not have a policy or training program, it should say so. These issues are relevant to Frontier's corporate responsibility for fostering an environment in which racial discrimination of passengers is possible and probable. Frontier should be ordered to produce whatever materials it has, prior to its corporate deposition so that its representatives can be examined about them.

**First RFP No. 45:**     **All Documents/ESI containing and/or describing any complaint(s) received by Frontier since January 1, 2009 that allege any act of discrimination on the basis of race conducted or condoned by a Frontier employee, including, without limitation, a copy of each complaint and any Documents/ESI containing or describing actions taken by Frontier's management in response to each complaint.**

**Frontier's Response:** **Frontier objects to Request for Production No. 47 on the grounds that it is overly broad and seeks information that is not relevant to any party's claim or defense and/or not proportional to the needs of the case.**

ARGUMENT:  The request is not overly broad, nor does it seek information that is irrelevant or out of proportion to the needs of the case. Plaintiffs have sued Frontier, as well as its crew members, for discriminating against them on the basis of their races. If it has been previously sued for similar conduct, that fact is relevant to Plaintiffs' claims if the claims in the prior suit(s) were valid,

because it would demonstrate Frontier's corporate responsibility for fostering a working environment in which racial discrimination of passengers is permitted and employees are not disciplined for committing acts of discrimination. Moreover, the information is relevant to the issue of liability for punitive damages if Frontier as an employer did nothing to alter its employees' behavior through enforcement of an anti-discrimination policy after receiving notice that its employees were discriminating against passengers based on race. If Frontier has a documented history of condoning racial discrimination in any context, that is relevant to Plaintiffs' claims against Frontier. Actionable conduct under §1981 can include racial profiling, *see Giron v. City of Alexander*, 693 F.Supp.2d 904 (W.D. Ark. 2010), battery, *see Mendez v. Rutherford,* 687 F. Supp. 412 (N.D. Ill. 1988), and even reverse discrimination, *see Donald v. Santa Fe Trail Trans. Co.,* 427 U.S. 273 (1976); *Holland/Blue Streak v. Barthelemy,* 849 F.2d 987, 989 (5th Cir. 1988). The request is limited to 10 years, as well as being limited to one specific type of lawsuit. Contrary to assertions made by Frontier's counsel during prefiling conferences, this request does not seek documents relating to every time that Frontier has been sued for any reason. Instead, it seeks documents relating to every time it has been sued for a very specific (and hopefully rare) type of illegal conduct. Cases that Frontier's counsel have cited in those prefiling conferences as support for its objection are inapposite. In *Sattari v. Citi Mortgage,* 2010 WL 4782133, Case No. 2:09-cv-00769-RLH-GWF (D. Nev., Nov. 16, 2010), for example, the Court sustained the defendant's objection to an interrogatory seeking the number of times it had been sued over a four-year period and a similar objection to an interrogatory seeking the details of all foreclosures filed by the defendant against homeowners during the same period. The Court held that the interrogatories were overbroad and imposed too high a burden on the defendant because they were not limited by geography or subject matter and the plaintiff had failed to establish how they were relevant to any party's claims or defenses in the suit in which they were propounded. Given the

nature of Frontier's business, any geographical limitation in the instant case would be nonsensical, but presumably Frontier has had far fewer discrimination complaints than Citimortgage has had foreclosure actions (especially during a time period that included the home mortgage-driven financial crisis of 2008 and the years on each side of it). Moreover, as noted above, document requests pertaining to race discrimination complaints and Frontier's responses to them are highly relevant to the issue of whether Frontier, as a corporate employer, fosters an environment in which race discrimination by its employees against airline passengers is condoned and/or goes unaddressed. Those issues are relevant to its liability for compensatory and punitive damages under §1981. In *Caballero v. Bodega Latina Corp.,* 2017 WL 3174931, Case No. 2:17-cv-00236-JAD-VCF (D. Nev., July 24, 2017), another case raised by Frontier, the plaintiff in a grocery store slip and fall case served discovery requests seeking information and documents concerning all other slip and fall cases against the defendant at its numerous stores for a five-year period, arguing that the prior lawsuits would reveal that the defendant had notice that its floors "are overly slick when wet." The Court in that case sustained the defendant's objection based on the holding of the Nevada Supreme Court in *Eldorado Club, Inc. v. Graff,* 377 P.2d 174, 176 (Nev. 1962), that "where a slip and fall is caused by the temporary presence of debris or foreign substance on a surface, which is not shown to be continuing, it is error to receive 'notice evidence' [of other slip and fall incidents]." There is no similar rule of law that renders the information requested by Plaintiffs in the instant case irrelevant. Frontier should be able to find records of its past race discrimination complaints easily, and it should be ordered to produce them before its corporate depositions commence.

**Second RFP No. 2:** **All Documents/ESI consisting of, or containing reports of, or describing in any way, every instance from January 1, 1999 to the Present in which Frontier**

suspected a passenger to be involved as a perpetrator in Human Trafficking and/or Sex Trafficking.

**Frontier's Response:** Frontier objects to Plaintiffs' Second Request for Production No. 2 on the grounds that it seeks information that is not relevant to any party's claim or defense and/or not proportional to the needs of the case. Specifically, there are no facts suggesting that Frontier employees suspected Plaintiff was involved in human trafficking and/or sex trafficking. Additionally, the information sought has no relevance to the unique facts of this case.

ARGUMENT: The "specific[ ]" relevance and proportionality objection, claiming that "there are no facts suggesting that Frontier employees suspected Plaintiff [*sic*][4] was involved in human trafficking and/or sex trafficking," is based on a fallacy. In fact, Defendant Chelsie Bright Sakurada, one of Frontier's flight attendants on the flight in question, specifically defended her actions in her deposition by reference to Frontier's distributed policies on "trafficking." During her deposition taken in Salt Lake City, Utah on December 3, 2019, she testified:

```
Pg. 61

10    Q.   Well, now we've gone from there wasn't a risk to
11 safety, it wasn't all that concerning, to trafficking.
12 So let's talk about that.
13         Why -- first of all, does the company instruct
14 you to look for trafficking?
15    A.   We have topics about it.  I mean, there's --
16 sometimes there's newsletters that are sent out, or just
17 topics that are sent out in email about the subject.  And
18 we're all aware of it as flight attendants.
19    Q.   All right.  When you say "are sent out," you
20 mean sent out by Frontier to its employees?
21    A.   Yes.
22    Q.   And how often have you received these things?
23    A.   Only a handful of times, maybe two, three.
24    Q.   Two times you received emails and/or newsletters
25 about trafficking?
```

---
[4] There are two Plaintiffs.

**Pg. 62**

```
 1      A.   Yes.
 2      Q.   And when you say "trafficking," what
 3 specifically do you mean?
 4      A.   It's mostly newsletters about other instances
 5 that have happened, like, on different flights and what
 6 to look out for.  And one of the things to look out for
 7 is a kid that doesn't answer for himself.
 8      Q.   And does that specifically include a child
 9 traveling with his parent --
10      A.   Umm-hmm, yes.
11      Q.   -- who doesn't answer for himself?
12      A.   Correct.
13      Q.   And this is because of what Frontier has told
14 you?
15      A.   Yes.
16      Q.   Okay.  So you felt that by labeling Peter and
17 A.D. as a situation to keep an eye on that you were
18 following Frontier's policies?
19      A.   Absolutely.
20      Q.   Okay.  Now, again, these couple of items that
21 you've received from your employer about trafficking,
22 what did you understand "trafficking" to mean?
23      A.   To me, it is some child that is with an adult
24 that they're not -- that they're not supposed to be with.
25 They're not their parents.  They're not their person
```

**Pg. 63**

```
 1 that's over them, the guardian.  That they are kept
 2 silent from this person that is taking them from one
 3 place to another, and -- and they're not supposed to be.
 4      Q.   And you believe, based on what Anna Bond told
 5 you, that Peter was keeping A.D. silent?
 6      A.   Yes.
 7      Q.   And you believe that Peter took the middle seat
 8 specifically so that A.D. couldn't interact with someone
 9 seated beside him?
10      A.   Yes.  It was something to continue looking out
11 for, yes.
```

*See,* Transcript excerpt attached hereto as **Exhibit C**. Her testimony quite clearly establishes her

claim that she, a Frontier employee, suspected that both Plaintiffs were involved in trafficking. At a

subsequent point in her deposition, she testified that all of the flight attendants agreed with her

suspicion:

**Pg. 68**

```
 7      Q.   All right.  What was the next thing that you
 8 recall occurring?  And I -- I'll remind you that we're up
 9 to the point where you have seen Peter touching A.D.'s
10 face.
11      A.   I went up to the front, and then all of us
12 congregated to the front to talk about this situation.
13 And we all equally felt that it was just something we
14 needed to bring up to the captain's attention.
15      Q.   So, and when you say "we all," you mean A, B, C,
16 and D?
17      A.   Correct.
18      Q.   Okay.
19      A.   We -- yes.  We don't usually go up to the
20 captain unless we are all on the same page.
21      Q.   All right.  So that is yourself and Anna Bond?
22      A.   (No audible response.)
23      Q.   You have to say "yes."
24      A.   Oh, yes.
25      Q.   Yes?  Okay.
```

**Pg. 69**

```
 1      A.   Yes.
 2      Q.   And Amanda Nichol?
 3      A.   Yes.
 4      Q.   And Scott Warren?
 5      A.   Correct.
```

*See id.* Her fellow flight attendant Amanda Nickel testified that she considered A. D. to be "a

victim." *See,* **Exhibit D** at 41. In light of the deposition testimony of its own employees, it is baseless

for Frontier to argue that "there are no facts suggesting that Frontier employees suspected Plaintiff

was involved in human trafficking and/or sex trafficking." Plaintiffs' counsel reminded Frontier's

counsel of Ms. Sakurada's testimony immediately upon receiving the objection, and even provided

them with the same excerpt attached hereto as Exhibit C. Nonetheless, Frontier has continued its

refusal to produce the documents. Its relevance argument, that other instances of falsely accusing

passengers of being involved in trafficking "has no relevance to the unique facts of this case," is

equally baseless. The objection appears to be based on the reasoning of this Court in *Caballero,* but

that case is inapposite authority because of the specific relevancy rule that the Nevada Supreme Court

announced in *Eldorado Club,* which has no application outside of slip and fall cases. If Frontier is

providing its flight attendants with instructions to report suspected cases of trafficking and telling them to make decisions based on seeing a child with an adult "they are not supposed to be with," without giving them any training on the avoidance of racial discrimination, then it is setting them up to falsely accuse mixed race families of committing a federal crime, and as a result to deny them the benefits of the contract of transportation that other passengers enjoy—precisely the type of conduct that Section 1981 addresses. Mixed race families will be singled out for disparate treatment while families who are all of the same race will not face similar accusations. Evidence of prior or subsequent incidents of similar accusations would be highly relevant to the issues of race discrimination alleged in Count I of the Amended Complaint, because they would establish that Frontier has created an environment and set of circumstances wherein its flight attendants are instructed to accuse mixed race families of criminal behavior when they are trying to enjoy their rights under their flight tickets.

**Second RFP No. 3**: **All Documents/ESI that identify each passenger accused or suspected by Frontier of being involved in human trafficking and/or sex trafficking between January 1, 1999 and the Present, including, without limitation, the PNR for each such passenger.**

**Frontier's Response:  Frontier objects to Plaintiffs' Second Request for Production No. 3 on the grounds that it seeks information that is not relevant to any party's claim or defense and/or not proportional to the needs of the case. Specifically, there are no facts suggesting that Frontier employees suspected Plaintiff was involved in human trafficking and/or sex trafficking. Additionally, the information sought has no relevance to the unique facts of this case.**

ARGUMENT: Frontier asserts the same objection to Request No. 3 that it does for Request No. 2, and it is equally baseless in this application. As noted above, there are indeed "facts suggesting that Frontier employees suspected [Plaintiffs were] involved in human trafficking and/or sex trafficking." Disclosure of the PNR ("Passenger Name Record") information for other passengers who have been accused of trafficking would permit Plaintiffs to investigate whether those passengers were also victims of racial discrimination because of Frontier's failure to train its employees in the avoidance of race discrimination while enforcing its vague instructions to look out for trafficking. Based on the circumstances in the instant case, it appears that Frontier has instructed its employees to act as enforcers of anti-trafficking laws, but has failed to give them any clear policy or training on how to follow its instructions in a race-neutral manner. That situation is the private corporation analog to the police force situation addressed by the District of Arizona and the Ninth Circuit in the Sheriff Joe Arpaio litigation. *See, Melendres v. Arpaio,* 695 F.3d 990 (9th Cir. 2012), and 784 F.3d 1254 (9th Cir. 2014). The documents requested are relevant to Frontier's liability for fostering an environment that encourages race discrimination and it also relevant to its liability for punitive damages.

**Second RFP No. 4: All Documents/ESI that identify each passenger accused or suspected by Frontier of being a victim of human trafficking and/or sex trafficking between January 1, 1999 and the Present, including, without limitation, the PNR for each such passenger.**

**Frontier's Response:  Frontier objects to Plaintiffs' Second Request for Production No. 4 on the grounds that it seeks information that is not relevant to any party's claim or defense and/or not proportional to the needs of the case. Specifically, there are no facts suggesting that Frontier employees suspected Plaintiff was involved in human trafficking and/or sex**

**trafficking. Additionally, the information sought has no relevance to the unique facts of this case.**

ARGUMENT: Request No. 4 differs from Request No. 3 in that it seeks the identities of suspected victims of trafficking, rather than suspected perpetrators. Frontier has asserted the same boilerplate objection which, as noted above, is baseless. Although Frontier does not assert privacy as a basis for objecting, it should be noted that its prior arguments claiming a legal right to keep other passengers' names confidential were based on an incorrect reading of federal law. There is no federal law that protects the confidentiality of passenger names and contact information. The regulation and statute previously cited by Frontier are inapposite—14 CFR §243.9(c) applies solely to the next-of-kin contact information required by §243.7(a)(2) to be kept confidential and only transmitted to certain governmental agencies in the event of an airliner crash, and 5 U.S.C. §552a, the codification of the Privacy Act of 1974, protects information held by governmental agencies and does not apply to private corporations such as Frontier. Again, it is vital for Frontier to disclose the names and contact information of others whom it has falsely accused of being victims of human or sexual trafficking so that it can be determined whether it has set in motion certain instructions that result in race discrimination by its employees of passengers on a broad basis.

**Second RFP No. 5: All Documents/ESI that state the race and/or ethnicity (including, without limitation, any opinions about race or ethnicity) of each passenger accused or suspected by Frontier of being involved as a perpetrator in Human Trafficking and/or Sex Trafficking between January 1, 1999 and the Present.**

**Frontier's Response:   Frontier objects to Plaintiffs' Second Request for Production No. 5 on the grounds that it seeks information that is not relevant to any party's claim or defense and/or not proportional to the needs of the case. Specifically, there are no facts suggesting that**

**Frontier employees suspected Plaintiff was involved in human trafficking and/or sex trafficking. Additionally, the information sought has no relevance to the unique facts of this case.**

ARGUMENT: As noted above, the boilerplate objection is baseless. This request is necessary because the PNR data will not reveal the race or ethnicity of the persons that Frontier has accused of being involved in human or sex trafficking, but other documents relating to the accusations might. If Frontier has any such documents, it should produce them.

**Second RFP No. 6: All Documents/ESI that state the race and/or ethnicity (including, without limitation, any opinions about race or ethnicity) of each passenger accused or suspected by Frontier of being a victim of human trafficking and/or sex trafficking between January 1, 1999 and the Present.**

**Frontier's Response:   Frontier objects to Plaintiffs' Second Request for Production No. 6 on the grounds that it seeks information that is not relevant to any party's claim or defense and/or not proportional to the needs of the case. Specifically, there are no facts suggesting that Frontier employees suspected Plaintiff was involved in human trafficking and/or sex trafficking. Additionally, the information sought has no relevance to the unique facts of this case.**

ARGUMENT: Same as Request No. 5, as applied to suspected victims.

**Second RFP No. 7: All Documents/ESI that describe any complaint filed with Frontier, the Federal Aviation Administration, the United States Department of Transportation, or with any other regulatory agency, that alleges racial profiling by Frontier at any time between January 1, 1999 and the Present.**

**Frontier's Response:** Frontier objects to Plaintiffs' Second Request for Production No. 7 on the grounds that it seeks information that is not relevant to any party's claim or defense and/or not proportional to the needs of the case. Specifically, there are no claims or evidence that Frontier racially profiled Plaintiffs in this case. Additionally, the information sought has no relevance to the unique facts of this case.

ARGUMENT: Frontier's objection claims that "there are no claims or evidence that Frontier racially profiled Plaintiffs in this case." However, Paragraph 12 of the First Amended Complaint alleges, in relevant part:

> The aforesaid physical violence and accusations were based on Warren's belief that Peter, who is white, should not be traveling with A. D., who is black. Upon information and belief, Warren had discussed such beliefs previously with Bond, Bright, Nickel and Shupe, and all of them concurred in his belief that Peter traveling with A.D. and showing affection toward A.D. constituted an improper "situation" that made them all "feel uncomfortable."

Paragraph 17 alleges, in relevant part:

> As a group, Defendants had no basis on which to suggest that Peter was engaging in human trafficking or unlawful sexual activities other than their shared belief that Peter, a white adult man, should not be traveling in the company of A. D., a black male child, because it made them "feel uncomfortable."

*See,* ECF No. 68, ¶¶ 12 & 17. "When a person is subjected to a higher level of scrutiny or surveillance by law enforcement officers, merchants, landlords, or employers, because of the person's race, that is … 'racial profiling.'" *Anderson v. Neb. Med. Ctr.,* 989 F. Supp. 2d 793, 798 (D. Neb. 2013); *see also, Melendres v. Arpaio*, 989 F. Supp. 2d 822 (D. Ariz. 2013)(defining and enjoining racial profiling in law enforcement context). And, although Defendant Nickel strenuously avoided allowing any racial reasons to be attributed to her decision to place increased surveillance on Plaintiffs after deciding that they made her "uneasy," there is no other explanation for her actions. *See,* Exhibit D at 59-64. Thus, once again, Frontier's objection ignores the pleadings and the evidence in the case. Racial profiling is squarely in the instant case, and prior incidents of profiling are relevant

to proving that Frontier has either ignored or fostered a system that makes it possible and probable. That evidence is relevant to its liability for compensatory and punitive damages.

## II.    INTERROGATORIES

**Int. No. 5: Does Frontier consider it appropriate for one of its Flight Attendants to strike a passenger, and if so, under what circumstance(s)?**

**Frontier's Response: Frontier objects to Interrogatory No. 5 because it is overly broad and not proportional to the needs of the case. Subject to and without waiving such objection, as relevant to the events alleged in Plaintiffs' Complaint and Demand for Jury Trial (ECF No. 1), Frontier trains its flight attendants to defuse situations using conflict management techniques, to use separation techniques, to use necessary resources to protect passengers, and to use Able Bodied Passengers ("ABPs") as appropriate. Further answering, Frontier trains its flight attendants to treat passengers with dignity and respect, and to handle events with discretion.**

ARGUMENT:  As this Court recently noted:

> "An interrogatory may relate to any matter that may be inquired into under Rule 26(b)." Fed.R.Civ.P. 33(a)(2). Interrogatories are intended "to enable a party to prepare for trial, to narrow the issues and thus help determine what evidence will be needed at the trial, and to reduce the possibility of surprise at the trial." 8B FED. PRAC. & PROC. CIV. § 2162 (3d ed.). "Toward [those ends], Rule 26(b) is liberally interpreted to permit wide-ranging discovery of information even [if] the information may not be admissible at the trial." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 635 (C.D. Cal. 2005).

*Johnson v. Intu Corp.*, Case No.: 2:18-cv-02361-MMD-NJK, slip op. at 2 (D. Nev. Nov. 5, 2019). The request is not overly broad or disproportional—this is a case in which one of Frontier's male flight attendants physically struck a sleeping passenger on the head. Plaintiffs have a right to know whether Frontier's flight attendants are trained about physical assaults on passengers or are told that physical contact of this type is sometimes permissible. That inquiry is clearly proportional to the needs of this case. Frontier's answer "subject to" its invalid objections is a lesson in techniques of evasion. *See Queensridge Towers LLC v. Allianz Global Risks US Ins. Co.,* Case No. 2:13-cv-00197-

JCM-PAL (D. Nev., Feb. 4, 2014) ("The general objections, reservations, and boilerplate objections look like a form provided to the firm's most junior attorney thirty years ago to teach new lawyers how to obstruct discovery.") It does not even attempt to answer the question asked, which is "Under what circumstances does Frontier consider it appropriate to strike a passenger?" It speaks of "protect[ing] passengers" (not at all what was asked), and "defus[ing] situations" without even specifying what types of "situations" it is speaking about. Evasive answers are improper and violate the requirements of Rule 33. *See, Henry v. Rizzolo,* Case No. 2:08-cv-00635-PMP-GWF (D. Nev., March 20, 2012). The objection should be overruled and Frontier should be ordered to answer precisely what the Interrogatory asks. Frontier should also be ordered to answer the question prior to its corporate deposition.

**Int. No. 6:**     **How does Frontier convey its position on striking (or not striking) passengers to its Flight Attendants?**

**Frontier's Response:** **Frontier objects to Interrogatory No. 6 because it is overly broad and not proportional to the needs of the case. Subject to and without waiving such objection, as relevant to the events alleged in Plaintiffs' Complaint and Demand for Jury Trial (ECF No. 1), Frontier trains its flight attendants to defuse situations using conflict management techniques, to use separation techniques, to use necessary resources to protect passengers, and to use Able Bodied Passengers ("ABPs") as appropriate. Further answering, Frontier trains its flight attendants to treat passengers with dignity and respect, and to handle events with discretion.**

ARGUMENT:  This is the same boilerplate objection coupled with an evasive answer that Frontier used to respond to Interrogatory No. 5. It states absolutely nothing about conveying a policy on striking—or not striking—passengers, which was what the Interrogatory asks. The objection

should be overruled and Frontier should be ordered to answer precisely what the Interrogatory asks. It should be required to do so before its corporate deposition takes place.

**Int. No. 7:**     **Does Frontier consider it appropriate for one of its Flight Attendants to forcibly separate a minor child from his or her parent during a flight, after the child and parent have been seated together, and if so, under what circumstances?**

**Frontier's Response:** **Frontier objects to Interrogatory No. 7 because it is overly broad and not proportional to the needs of the case. Subject to and without waiving such objection, as relevant to the events alleged in Plaintiffs' Complaint and Demand for Jury Trial (ECF No. 1), Frontier trains its flight attendants to defuse situations using conflict management techniques, to use separation techniques, to use necessary resources to protect passengers, and to use Able Bodied Passengers ("ABPs") as appropriate. Further answering, Frontier trains its flight attendants to treat passengers with dignity and respect, and to handle events with discretion.**

ARGUMENT:  This is the same boilerplate objection coupled with an evasive answer that Frontier used to respond to Interrogatory No. 5. It states absolutely nothing about the subject of the Interrogatory, which is the separation of children from a parent. The objection should be overruled and Frontier should be ordered to answer precisely what the Interrogatory asks. The objection is baseless because the inquiry is about an event that even Frontier's employees admit happened. They have testified that, at the suggestion of the flight attendants and order of the Captain, Plaintiff A.D., the 12-year-old minor child, was physically separated from his father, Peter, and was confined to a rear row of seats where Defendants blocked his exit with the placement of an "Able Bodied Passenger." A.D. sat in the seat afraid, barefoot, cold and crying for hours. When Peter tried to reach him to comfort him, the male flight attendant who had previously struck Peter physically blocked his path. Plaintiffs have pleaded claims in false imprisonment and intentional and negligent emotional

distress, as well as their federal §1981 claims. Plaintiffs have a right to inquire into any Frontier policies behind the action. Frontier should be ordered to answer the question prior to its corporate deposition.

**Int. No. 8:**      **How does Frontier convey its position on separating (or not separating) children from parents to its Flight Attendants?**

**Frontier's Response:** **Frontier objects to Interrogatory No. 8 because it is overly broad and not proportional to the needs of the case. Subject to and without waiving such objection, as relevant to the events alleged in Plaintiffs' Complaint and Demand for Jury Trial (ECF No. 1), Frontier trains its flight attendants to defuse situations using conflict management techniques, to use separation techniques, to use necessary resources to protect passengers, and to use Able Bodied Passengers ("ABPs") as appropriate. Further answering, Frontier trains its flight attendants to treat passengers with dignity and respect, and to handle events with discretion.**

ARGUMENT:  Again, the objection is invalid because the First Amended Complaint alleges that Plaintiffs were separated against their will, and all of the Defendants have admitted that the separation occurred. Again, the boilerplate "answer" made subject to the objection states nothing about how Frontier conveys its policies on separating children from their parents.

**Int. No. 9:**      **Does Frontier consider it appropriate for one of its Flight Attendants to touch a minor child in the vicinity of his or her genitalia, and if so, under what circumstances?**

**Frontier's Response:** **Frontier objects to Interrogatory No. 9 because it is overly broad and not proportional to the needs of the case. Subject to and without waiving such objection, as relevant to the events alleged in Plaintiffs' Complaint and Demand for Jury Trial (ECF No. 1), Frontier trains its flight attendants to defuse situations using conflict management techniques, to use separation techniques, to use necessary resources to protect passengers, and to use Able**

**Bodied Passengers ("ABPs") as appropriate. Further answering, Frontier trains its flight attendants to treat passengers with dignity and respect, and to handle events with discretion.**

ARGUMENT:   The First Amended Complaint contains a civil sexual assault count (Count IV) that alleges that the male flight attendant placed his hand near the minor Plaintiff's groin area, looking like he was going to fondle it, while demonstrating the flight attendant's outrageous claim that Peter had touched the minor inappropriately while both the minor and Peter were asleep. Plaintiffs certainly have the right to inquire into any policy that Frontier may have that would either allow or discourage such conduct by one of its flight attendants. The flight attendant's actions were immensely traumatic to the minor, who was 12 years old at the time. The answer states absolutely nothing about what was asked—whether Frontier considers it appropriate for its Flight Attendants to touch children's genitals. The subject matter of the Interrogatory is relevant and proportional, and Frontier should be ordered to answer it. The answer would "enable a party to prepare for trial, to narrow the issues and thus help determine what evidence will be needed at the trial, and to reduce the possibility of surprise at the trial." *Johnson, supra.*

**Int. No. 10:**    **How does Frontier convey its position on touching minor children in the vicinity of their genitalia to its Flight Attendants?**

**Frontier's Response:** **Frontier objects to Interrogatory No. 10 because it is overly broad and not proportional to the needs of the case. Subject to and without waiving such objection, as relevant to the events alleged in Plaintiffs' Complaint and Demand for Jury Trial (ECF No. 1), Frontier trains its flight attendants to defuse situations using conflict management techniques, to use separation techniques, to use necessary resources to protect passengers, and to use Able Bodied Passengers ("ABPs") as appropriate. Further answering, Frontier trains its flight attendants to treat passengers with dignity and respect, and to handle events with discretion.**

ARGUMENT:   Again, not only is the existence of a policy relevant and discoverable, but the manner in which it is (or is not) conveyed to Frontier's employees is equally relevant and discoverable. The answer would "enable a party to prepare for trial, to narrow the issues and thus help determine what evidence will be needed at the trial, and to reduce the possibility of surprise at the trial." *Johnson, supra.* Frontier should be required to answer the Interrogatory, prior to its deposition.

**Int. No. 14:    What is Frontier's net worth as of the most recently closed accounting period?**

**Frontier's Response:Frontier objects to Interrogatory No. 14 because it is overly broad, seeks information that is not relevant to any party's claim or defense, and is not proportional to the needs of the case. Specifically, Frontier's net worth is not relevant to whether Frontier properly responded to a perceived threat to the safety of one of its passengers, or whether Frontier could satisfy any potential judgment.**

ARGUMENT:   The Interrogatory is not overly broad or out of proportion with the needs of the case, because it seeks only the information for the most recently closed accounting period. *Compare, Bartech Sys. Int'l, Inc. v. Mobile Simple Sols., Inc.*, Case No. 2:15-cv-02422-MMD-NJK (D. Nev. Feb. 12, 2018)(finding request for three years of financial records including tax returns, business plans and operating budgets overbroad but allowing one year). The requested information is relevant because all of Plaintiffs' counts seek punitive damages, which are authorized by the underlying federal and state law. In order for Plaintiffs to ask the jury for an appropriate amount of punitive damages from Frontier, they need to know the net worth of the company. There is no room to question this under established Nevada law, *see Hetter v. Eighth Judicial Dist. Court of State In and For County of Clark,* 874 P.2d 762, 765 (Nev. 1994). A similar rule applies in federal law.

Although it is not dispositive, the ability of the Defendant to pay an award of punitive damages is of some importance, under federal law, to assessing the propriety of the award. *Rodriguez v. County of Los Angeles,* 891 F.3d 776, 806 (9th Cir. 2018). Net worth discovery is appropriate in federal court when punitive damages are sought in the complaint. *See, e.g., Searcy v. Esurance Ins. Co.*, 2015 WL 9216573, at *1 (D. Nev. Dec.16, 2015); *Momot v. Mastro*, 2011 WL 1833349, at *3 (D.Nev. May 13, 2011); *Allstate Ins. Co. v. Nassiri*, 2011 WL 318101, at *3 (D.Nev. Jan. 21, 2011); *see also Bartech Sys. Int'l, Inc., supra* at *5-6 (collecting additional cases). Frontier should be ordered to answer this limited Interrogatory prior to its deposition.

**Int. No. 16:     Has Frontier had any conversations with any person at any time regarding the manner in which the incidents alleged in Plaintiffs' Complaint and Demand for Jury Trial occurred? If yes, state the date(s) on which such conversation(s) occurred, the place where the conversation(s) occurred, all persons present for the conversation(s), the matters and things stated by each person present for the conversation(s), whether the conversation was oral, written, or recorded, and who has possession of the writing or recording if written or recorded.**

**Frontier's Response:** **Frontier objects to Interrogatory No. 16 to the extent it seeks information protected by the attorney-client privilege or work-product doctrine. Subject to and without waiving such objection, see 19AZF0229 DELVECCHIA FRONTIER 0085-0099 and 0104-0105, the November 18, 2019 depositions of Gayle DelVecchia and Amanda DelVecchia, and the November 19, 2019 deposition of Plaintiff Peter DelVecchia to the extent they contain responsive information.**

ARGUMENT:  Frontier objects on attorney-client privilege and work product grounds, but it has not provided a detailed privilege log as required by Fed. R. Civ. P. 26(b)(5). *See Morrocco v. Hill,* Case No. 2:12-cv-00028-JCM-NJK, slip op. at *4-5 (D. Nev. Jan. 24, 2013)(discussing

requirement of privilege log). It has merely provided the names of two passengers with whom its

attorneys have spoken, with no other information such as whether any form of recording was made.

Its "subject to" response allows it to selectively produce documents without disclosing what it is

holding back. *See, Queensridge Towers.* If Frontier or its attorneys have witness statements that

Plaintiffs cannot otherwise obtain, Plaintiffs have a right to know what statements exist. *See

Morrocco.*

### III.    FRONTIER'S RULE 30(b)(6) DEPOSITION OBLIGATIONS

Upon receipt of the Rule 30(b)(6) notice for its corporate deposition, Frontier's attorneys

declared that Frontier would not present representatives to testify on certain of the enumerated

subject matter areas listed in the notice. Notably, Frontier never moved for a protective order, despite

being informed by Plaintiffs' counsel that the Federal Rules of Civil Procedure require it to do so. It

has been Frontier's position since receiving the Rule 30(b)(6) notice, as announced by its counsel,

that it can simply refuse to designate persons to testify on subjects that it finds objectionable. *See*

emails attached as Exhibit A. Its position flies in the face of the procedure established by the Federal

Rules. *See,* 8A Wright, Miller & Marcus, *Federal Practice and Procedure* § 2035, at 151-52 (3d ed.

2010) ("At least with regard to depositions, the [protective] order should ordinarily be obtained

before the date set for the discovery, and failure to move at that time has been held to preclude

objection later [.]"); *see also, Searcy v. Esurance Ins. Co.,* Case No. 2:15-cv-00047-APG-NJK (D.

Nev., Dec. 16, 2015); *Spencer-Ross v. Home Depot U.S.A., Inc.,* 2:13-cv-00185-JCM-VCF (D. Nev.,

Aug. 29, 2013); *Koninklike Philips Elec. N.V. v. KXD Tech., Inc.,* 2007 WL 3101248 (D. Nev., Oct.

16, 2007).

The first subject matter area on which Frontier refuses to present a witness is No. 17 in the Amended Notice, which is Frontier's current net worth.[5] "A defendant's financial condition is relevant to the pursuit of punitive damages." *Allstate Ins. Co. v. Nassiri*, 2011 WL 318101, *3 (D. Nev., Jan. 21, 2011) (*quoting United States v. Autumn Ridge Condominium Assoc.*, 265 F.R.D. 323, 327 (N.D. Ind. 2009)); *see also, Searcy, Momot, Nassiri and Bartech, supra.* Frontier has asserted no legal basis for refusing to provide testimony on this subject, but its defense counsel had declared that it will not do so absent a Court order to do so, because it is a privately owned, rather than publicly traded, entity. Plaintiffs respectfully move for such an order here.

The second subject matter area objected to is No. 19, "All information known to employee Matthew Anderson, Customer Relations Advocate, concerning the events on Frontier Flight 2067 between KRDU and KLAS on March 28, 2019 involving Plaintiffs." Documents produced by Frontier indicate that Mr. Anderson investigated the circumstances aboard the flight, and possibly interviewed witnesses. One of the reasons given by Frontier for refusing to present testimony on his research is that Mr. Anderson is no longer employed by Frontier. His current employment status is irrelevant, if Frontier possesses information about the results of his research. Frontier should be ordered to produce a representative to testify on any information obtained by Mr. Anderson in his investigation of the facts (Mr. Anderson is identified in the documents as a Customer Relations Advocate, not an attorney or claims investigator, and the documents indicate that his research was conducted in the normal course of business, within a few days of the events).

Frontier also refuses to provide testimony on Nos. 23 and 24, which seek any information known to Frontier that supports Plaintiffs' allegations that Flight Attendant (and now Defendant)

---

[5] The precise language on the Amended Notice is: "Pursuant to Fed. R. Civ. P. 30(b)(6), the deponent party (hereinafter "Frontier") must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf, to testify on the following list of subjects. The persons designated must testify about information known to or reasonably available to the organization. SUBJECT LIST [:] . . . 17.  Frontier's current net worth."

Scott Warren struck Peter DelVecchia and sexually assaulted A.D.[6] Frontier refuses to provide anyone to testify on these subjects because it takes the position that Warren did neither. Plaintiffs should be able to examine Frontier under oath concerning the factual bases for its position and what investigation into those alleged facts it conducted.

Frontier refuses to provide testimony on Nos. 25 and 26, which seek testimony on: "All facts known to Frontier about Frontier's creation and publication of 'Inflight Must Read' Number 19-13 dated March 15, 2019 on the subject of 'Sexual Misconduct,'" and "All facts known to Frontier about Frontier's creation and publication of Revision 63 to Frontier's FAM dated 04/01/19 titled '20.50 Human Trafficking,'" respectively. Those documents are highly relevant to the information provided to Frontier's employees about sexual misconduct and human trafficking, which, as noted above, are being cited by the Defendants to defend their actions on the flight. How those documents came to be created and disseminated to Frontier's employees, and why they were created without any race neutral guidelines for implementation, are relevant to the claims asserted by Plaintiffs.

Frontier also refuses to provide any testimony on the following subject matter areas:

**27.    All facts known to Frontier about any and all incidents occurring between January 1, 2009 and the date of the deposition, in which human trafficking aboard a Frontier flight was alleged or witnessed by anyone.**

As illustrated by the deposition testimony quoted above, at least some of Frontier's employees are defending their actions toward Plaintiffs by claiming that they need to be vigilant for cases of human trafficking aboard Frontier flights. This area of inquiry is relevant to determine just how prevalent that alleged problem is, and the steps that are normally taken when anyone claims to see an instance of it.

---

[6] "23. Any and all information obtained by Frontier or its agents that confirms or supports Plaintiffs' allegation that Flight Attendant Scott Warren struck Plaintiff Peter DelVecchia.

"24. Any and all information obtained by Frontier or its agents that confirms or supports Plaintiffs' allegation that Flight Attendant Scott Warren sexually assaulted Plaintiff A. D."

**28.     All facts known to Frontier about any and all incidents occurring between January 1, 2009 and the date of the deposition, in which sex trafficking aboard a Frontier flight was alleged or witnessed by anyone.**

It is unknown exactly how "human" and "sex" trafficking differ, if indeed they do, but Frontier's employees have claimed both at different times as reasons to defend their actions toward Plaintiffs. Again, the issue is relevant to determine just how prevalent that alleged problem is, and the steps that are normally taken when anyone claims to see an instance of it.

**29.     All facts known to Frontier about any and all incidents occurring between January 1, 2009 and the date of the deposition, in which sexual misconduct by a passenger against another passenger aboard a Frontier flight was alleged or witnessed by anyone.**

Defendant Warren claims to have separated A. D. from Peter on grounds of observed sexual misconduct. It is a relevant inquiry, therefore, to see how other instances of similar alleged behavior were dealt with by the airline's employees, and whether Warren's actions followed established protocols or were out of line with such protocols. The evidence is also relevant to whether Warren's claimed reason for his actions was a pretext to mask acts of racial discrimination.

**30.     All facts known to Frontier about any and all incidents occurring between January 1, 2009 and the date of the deposition, in which child abuse and/or child molestation by a passenger against another passenger aboard a Frontier flight was alleged or witnessed by anyone.**

Again, the details of how incidents of actual abuse or molestation have been handled by the airline are relevant to showing how Warren's claim is pretextual.

**31.     All facts known to Frontier about any and all incidents occurring between January 1, 2009 and the date of the deposition, in which racial discrimination or racial profiling aboard a Frontier flight was alleged or witnessed by anyone.**

This is a case about, *inter alia,* racial discrimination including racial profiling. As discussed above, a highly relevant inquiry is Frontier's response to other alleged cases of racial discrimination and/or racial profiling: did it investigate the allegations thoroughly? Did it apply any anti-discrimination

policy in its analysis? Did it discipline those involved and/or require additional training for them? These inquiries are relevant to the issue whether Frontier condones discrimination, permits it to occur unchecked, or even has a policy against it.

> **32.     All facts known to Frontier about any and all incidents occurring between January 1, 2009 and the date of the deposition, in which a passenger aboard a Frontier flight was classified by any Flight Attendant or Pilot as a Threat Level One or a Threat Level Two, and the procedures followed in such events.**

Defendant Shupe, the Captain on the flight, ordered A. D. to be separated from Peter, his father, without even checking to see if they are related or consulting Frontier's written protocols, according to his deposition testimony, excerpts of which are attached hereto as **Exhibit E**. However, he testified that he consulted the Flight Operations Manual's text on Threat Levels *after* issuing the order, and claimed that his order was justified as an improvised response to a Threat Level Two, even though his order did not follow the written protocol for a Threat Level Two based on his testimony. *See id.*[7] The inquiry is relevant to the issue whether Captain Shupe's order followed required protocols for Threat Level assessment and restraint, and whether similar "improvisations" have been allowed. This will be relevant to determining whether Captain Shupe's order to separate A. D. from his father was a justifiable use of the protocols or was simply a pretext used in support of the flight attendants' discriminatory treatment of Plaintiffs, a mixed-race family.

> **33.     All facts known to Frontier about any and all incidents occurring between January 1, 2009 and the date of the deposition, in which any Frontier employee physically struck a passenger or another Frontier employee aboard a Frontier flight, and any and all responses by Frontier's management to such incidents.**

Defendant Warren has testified that Frontier has not disciplined him for his actions aboard the subject flight, and is "fine" with what he did. Peter and A. D. have testified that Warren struck Peter on the

---

[7] The actual text containing the protocols for the various Threat Levels has not been produced because it has been marked as Sensitive Security Information (SSI). Magistrate Judge Albregts's April 1, 2020 Order (ECF No. 76) permits the production, but counsel are currently awaiting word from TSA as to whether a background check will be required by it.

head while Peter was sleeping. This inquiry is relevant to whether Frontier fosters an environment in which its employees believe that it is acceptable to strike passengers and are not dissuaded by disciplinary measures from doing so. Other instances where employees have struck passengers is highly relevant to this inquiry.

In sum, all of the subject areas on which Frontier refuses to present witnesses are valid areas of inquiry given the facts alleged and the testimony of Frontier's own employees. It has not established through the proper Rule 26 procedure any justifiable basis for refusing to present such testimony. It should be ordered to testify on the subjects listed above, as well as those for which no objection has been asserted.

<u>CONCLUSION</u>

For all of the reasons set forth above, Plaintiffs respectfully request an Order requiring Frontier to respond to the discovery requests detailed above. Plaintiffs respectfully request that Frontier be ordered to respond to the Requests for Production and Interrogatories prior to its corporate deposition. In addition, Plaintiffs respectfully request an award of their attorneys' fees incurred in seeking the Order compelling discovery, as permitted by Fed. R. Civ. P. 37.

DATED this 8th day of April, 2020.

     /s/ John D. McKay
John D. McKay (admitted *pro hac vice*)
PARK AVENUE LAW LLC
127 W. Fairbanks Ave., No. 519
Winter Park, FL 32789
johndmckayatty@gmail.com
(800) 391-3654

Timothy R. Titolo (Nev. Bar. No. 3617)
TITOLO LAW OFFICE
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 869-5100
tim@titololaw.com

***Attorneys for Plaintiffs Peter DelVecchia
And A.D., a Minor***