Timothy R. Titolo, Esq.
Nevada Bar No. 003617
TITOLO LAW OFFICE
9950 West Cheyenne Ave.
Las Vegas, Nevada 89129
(702) 869-5100
tim@titololaw.com

John D. McKay, Esq.
*Admitted pro hac vice*
PARK AVENUE LAW LLC
127 W. Fairbanks Ave. No. 519
Winter Park, Florida 32789
(800) 391-3654
johndmckayatty@gmail.com

**Attorneys for Plaintiffs**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| PETER DELVECCHIA, *et al.*, | ) | **Case No: 2:19-CV-01322-KJD-DJA** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| vs. | ) | **DECLARATION OF JOHN McKAY** |
| | ) | **IN SUPPORT OF MOTION FOR** |
| | ) | **RELIEF FROM PAGE LIMIT** |
| FRONTIER AIRLINES, INC., *et al.*, | ) | |
| Defendants. | ) | |
| | ) | |

I, John McKay, make the following Declaration pursuant to 28 U.S.C. §1746:

1. I am lead counsel for Plaintiffs in this action. I drafted and filed Plaintiffs' Second Amended Motion to Compel (ECF No. 77) which is the subject of the Motion for Relief From Page Limit. I make this Declaration solely to explain my actions, not to excuse my error in misreading the Local Rules of this District.

2. I am admitted in this action *pro hac vice*, and I am working with local counsel who is located in Las Vegas. As such, I have a duty to be familiar with the Local Rules of the District of Nevada and I did read them in their entirety as part of the *pro hac vice* admission process. I have consulted them throughout this litigation, but never previously had a specific reason to consult them on the issue of page limits for motions.

3. My practice is focused entirely on aviation-related matters. As such, it tends to be national and international in nature. At any given time, I typically have cases pending in multiple federal districts, each having its own set of local rules. At the present time, I have cases pending in the Northern District of California, the Eastern District of New York, the Middle District of Florida, and the state court systems of New York and Texas (the latter by *pro hac vice* admission), as well as in this District. I have also recently concluded cases in the Southern District of Florida, the Central District of California, the Southern District of California, and the Northern District of Texas. Thus, I am frequently dealing with a different set of local rules for every case, and those local rules are not always organized in manners that are consistent with one another.

4. On April 8, 2020, as I was completing the Second Amended Motion to Compel, I noticed that the motion draft ended up being 30 pages in length, and I became concerned about a page limit. I consulted this Court's Local Rules, but unfortunately I looked in the wrong places. I looked at the local rules for the form of filed papers generally and for the content of discovery motions, but I failed to observe that there is a distinct rule for "Page Limits." (Unfortunately, had I consulted the "Motions" rule, LR 7-2, instead of the "Discovery Motions" rule, LR 26-7, I would have seen a reference to "the page limits in LR 7-3"). In retrospect, I should have consulted the Local Rules index more carefully. This was entirely my error, and I apologize to

the Court for making it. At the time, I did not think the apparent lack of a page limit was unusual, because some local rules do not impose page limits. For example, the Local Rules of the Eastern District of New York do not impose page limits on motions (although many of the Judges in that District have Individual Practice Rules that do).

5.  I did not realize that the motion exceeded the page limit of Local Rule 7-3 until I received Defendant Frontier's response to the motion yesterday, April 22nd.

6.  The Factual Background section of the Second Amended Motion to Compel notes that Defendant Frontier has been refusing to respond to several discovery requests made by Plaintiffs for five months. Over that period of time, the number of properly served discovery requests that it has refused to answer or otherwise respond to has grown significantly. The Second Amended Motion to Compel discussed 23 such requests, inclusive of Requests for Production (two sets), Interrogatories and subject matters listed in a Rule 30(b)(6) deposition notice. The motion also argues that Plaintiffs should not have had to include the Rule 30(b)(6) subject areas in a motion to compel, since it was Defendant's obligation under the Federal Rules of Civil Procedure and the established precedent of this Court to file a motion for protective order if it felt that it should not have to produce testimony on certain listed subjects. Instead, Frontier's attorneys forced Plaintiffs to include the deposition subjects in their motion to compel because the attorneys simply declared that if Plaintiffs' counsel showed up in Denver and attempted to conduct the deposition, Frontier would not produce anyone to testify on the disputed subject matters.

7.  Plaintiffs' Second Amended Motion to Compel exceeded the Local Rules page limit by a total of six pages. As illustrated by **Exhibit A** to this Declaration, the process of setting out the multiple requests that Frontier refused responses to, and its frequently verbose objections, as

required by LR 26-7(b) took up more than seven pages of the motion. Exhibit A consists of the text of Plaintiffs' motion with the case caption, signature blocks and all arguments and requests for relief removed. It spans eight pages.

8.  While that fact does not excuse my error regarding the page limit for motions, it demonstrates that Plaintiffs' actual arguments and requests for relief from Defendant Frontier's refusals to comply with normal discovery obligations fall within the 24-page limit.

9.  Plaintiffs are requesting an additional six pages for their Second Amended Motion to Compel, to cover the additional pages necessary to set out the 23 disputed discovery requests and Frontier's objections to them.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 23, 2020.



_____

John D. McKay

**Exhibit A**

## I.      REQUESTS FOR PRODUCTION

**First RFP No. 45:**     All Documents/ESI containing and/or describing any training or education on the subject of preventing racial discrimination in dealings with passengers or customers that was given to any member(s) of the flight crew or cabin crew of *Flight 2067* on or before the date of *Flight 2067*, including, without limitation, the content of such training, attendance and/or online viewing confirmation records, dates given or otherwise provided to the crew members, quiz and/or test results, and the name(s) and address(es) of persons providing such training or education.

**Frontier's Response:** Frontier continues its investigation for responsive materials.

**First RFP No. 45:**     All Documents/ESI containing and/or describing any complaint(s) received by Frontier since January 1, 2009 that allege any act of discrimination on the basis of race conducted or condoned by a Frontier employee, including, without limitation, a copy of each complaint and any Documents/ESI containing or describing actions taken by Frontier's management in response to each complaint.

**Frontier's Response:** Frontier objects to Request for Production No. 47 on the grounds that it is overly broad and seeks information that is not relevant to any party's claim or defense and/or not proportional to the needs of the case.

**Second RFP No. 2:**    All Documents/ESI consisting of, or containing reports of, or describing in any way, every instance from January 1, 1999 to the Present in which Frontier suspected a passenger to be involved as a perpetrator in Human Trafficking and/or Sex Trafficking.

**Frontier's Response:**  Frontier objects to Plaintiffs' Second Request for Production No. 2 on the grounds that it seeks information that is not relevant to any party's claim or defense

and/or not proportional to the needs of the case. Specifically, there are no facts suggesting that Frontier employees suspected Plaintiff was involved in human trafficking and/or sex trafficking. Additionally, the information sought has no relevance to the unique facts of this case.

**Second RFP No. 3**: All Documents/ESI that identify each passenger accused or suspected by Frontier of being involved in human trafficking and/or sex trafficking between January 1, 1999 and the Present, including, without limitation, the PNR for each such passenger.

**Frontier's Response**:  Frontier objects to Plaintiffs' Second Request for Production No. 3 on the grounds that it seeks information that is not relevant to any party's claim or defense and/or not proportional to the needs of the case. Specifically, there are no facts suggesting that Frontier employees suspected Plaintiff was involved in human trafficking and/or sex trafficking. Additionally, the information sought has no relevance to the unique facts of this case.

**Second RFP No. 4**: All Documents/ESI that identify each passenger accused or suspected by Frontier of being a victim of human trafficking and/or sex trafficking between January 1, 1999 and the Present, including, without limitation, the PNR for each such passenger.

**Frontier's Response**:  Frontier objects to Plaintiffs' Second Request for Production No. 4 on the grounds that it seeks information that is not relevant to any party's claim or defense and/or not proportional to the needs of the case. Specifically, there are no facts suggesting that Frontier employees suspected Plaintiff was involved in human trafficking and/or sex

trafficking. Additionally, the information sought has no relevance to the unique facts of this case.

**Second RFP No. 5**: All Documents/ESI that state the race and/or ethnicity (including, without limitation, any opinions about race or ethnicity) of each passenger accused or suspected by Frontier of being involved as a perpetrator in Human Trafficking and/or Sex Trafficking between January 1, 1999 and the Present.

**Frontier's Response:**  Frontier objects to Plaintiffs' Second Request for Production No. 5 on the grounds that it seeks information that is not relevant to any party's claim or defense and/or not proportional to the needs of the case. Specifically, there are no facts suggesting that Frontier employees suspected Plaintiff was involved in human trafficking and/or sex trafficking. Additionally, the information sought has no relevance to the unique facts of this case.

**Second RFP No. 6**: All Documents/ESI that state the race and/or ethnicity (including, without limitation, any opinions about race or ethnicity) of each passenger accused or suspected by Frontier of being a victim of human trafficking and/or sex trafficking between January 1, 1999 and the Present.

**Frontier's Response:**  Frontier objects to Plaintiffs' Second Request for Production No. 6 on the grounds that it seeks information that is not relevant to any party's claim or defense and/or not proportional to the needs of the case. Specifically, there are no facts suggesting that Frontier employees suspected Plaintiff was involved in human trafficking and/or sex trafficking. Additionally, the information sought has no relevance to the unique facts of this case.

**Second RFP No. 7**: All Documents/ESI that describe any complaint filed with Frontier, the Federal Aviation Administration, the United States Department of Transportation, or with any other regulatory agency, that alleges racial profiling by Frontier at any time between January 1, 1999 and the Present.

**Frontier's Response:** Frontier objects to Plaintiffs' Second Request for Production No. 7 on the grounds that it seeks information that is not relevant to any party's claim or defense and/or not proportional to the needs of the case. Specifically, there are no claims or evidence that Frontier racially profiled Plaintiffs in this case. Additionally, the information sought has no relevance to the unique facts of this case.

**Int. No. 5**: Does Frontier consider it appropriate for one of its Flight Attendants to strike a passenger, and if so, under what circumstance(s)?

**Frontier's Response:** Frontier objects to Interrogatory No. 5 because it is overly broad and not proportional to the needs of the case. Subject to and without waiving such objection, as relevant to the events alleged in Plaintiffs' Complaint and Demand for Jury Trial (ECF No. 1), Frontier trains its flight attendants to defuse situations using conflict management techniques, to use separation techniques, to use necessary resources to protect passengers, and to use Able Bodied Passengers ("ABPs") as appropriate. Further answering, Frontier trains its flight attendants to treat passengers with dignity and respect, and to handle events with discretion.

**Int. No. 6**:     How does Frontier convey its position on striking (or not striking) passengers to its Flight Attendants?

**Frontier's Response:** Frontier objects to Interrogatory No. 6 because it is overly broad and not proportional to the needs of the case. Subject to and without waiving such objection, as relevant to the events alleged in Plaintiffs' Complaint and Demand for Jury Trial (ECF No. 1),

Frontier trains its flight attendants to defuse situations using conflict management techniques, to use separation techniques, to use necessary resources to protect passengers, and to use Able Bodied Passengers ("ABPs") as appropriate. Further answering, Frontier trains its flight attendants to treat passengers with dignity and respect, and to handle events with discretion.

**Int. No. 7:**     Does Frontier consider it appropriate for one of its Flight Attendants to forcibly separate a minor child from his or her parent during a flight, after the child and parent have been seated together, and if so, under what circumstances?

**Frontier's Response:** Frontier objects to Interrogatory No. 7 because it is overly broad and not proportional to the needs of the case. Subject to and without waiving such objection, as relevant to the events alleged in Plaintiffs' Complaint and Demand for Jury Trial (ECF No. 1), Frontier trains its flight attendants to defuse situations using conflict management techniques, to use separation techniques, to use necessary resources to protect passengers, and to use Able Bodied Passengers ("ABPs") as appropriate. Further answering, Frontier trains its flight attendants to treat passengers with dignity and respect, and to handle events with discretion.

**Int. No. 8:**     How does Frontier convey its position on separating (or not separating) children from parents to its Flight Attendants?

**Frontier's Response:** Frontier objects to Interrogatory No. 8 because it is overly broad and not proportional to the needs of the case. Subject to and without waiving such objection, as relevant to the events alleged in Plaintiffs' Complaint and Demand for Jury Trial (ECF No. 1), Frontier trains its flight attendants to defuse situations using conflict management techniques, to use separation techniques, to use necessary resources to protect passengers, and to use Able Bodied Passengers ("ABPs") as appropriate. Further answering, Frontier trains its flight attendants to treat passengers with dignity and respect, and to handle events with discretion.

to touch a minor child in the vicinity of his or her genitalia, and if so, under what circumstances?

**Frontier's Response:** Frontier objects to Interrogatory No. 9 because it is overly broad and not proportional to the needs of the case. Subject to and without waiving such objection, as relevant to the events alleged in Plaintiffs' Complaint and Demand for Jury Trial (ECF No. 1), Frontier trains its flight attendants to defuse situations using conflict management techniques, to use separation techniques, to use necessary resources to protect passengers, and to use Able Bodied Passengers ("ABPs") as appropriate. Further answering, Frontier trains its flight attendants to treat passengers with dignity and respect, and to handle events with discretion.

**Int. No. 10:** How does Frontier convey its position on touching minor children in the vicinity of their genitalia to its Flight Attendants?

**Frontier's Response:** Frontier objects to Interrogatory No. 10 because it is overly broad and not proportional to the needs of the case. Subject to and without waiving such objection, as relevant to the events alleged in Plaintiffs' Complaint and Demand for Jury Trial (ECF No. 1), Frontier trains its flight attendants to defuse situations using conflict management techniques, to use separation techniques, to use necessary resources to protect passengers, and to use Able Bodied Passengers ("ABPs") as appropriate. Further answering, Frontier trains its flight attendants to treat passengers with dignity and respect, and to handle events with discretion.

**Int. No. 14:** What is Frontier's net worth as of the most recently closed accounting period?

**Frontier's Response:** Frontier objects to Interrogatory No. 14 because it is overly broad, seeks information that is not relevant to any party's claim or defense, and is not proportional to the needs of the case. Specifically, Frontier's net worth is not relevant to whether Frontier

properly responded to a perceived threat to the safety of one of its passengers, or whether Frontier could satisfy any potential judgment.

**Int. No. 16:**    Has Frontier had any conversations with any person at any time regarding the manner in which the incidents alleged in Plaintiffs' Complaint and Demand for Jury Trial occurred? If yes, state the date(s) on which such conversation(s) occurred, the place where the conversation(s) occurred, all persons present for the conversation(s), the matters and things stated by each person present for the conversation(s), whether the conversation was oral, written, or recorded, and who has possession of the writing or recording if written or recorded.

**Frontier's Response:** Frontier objects to Interrogatory No. 16 to the extent it seeks information protected by the attorney-client privilege or work-product doctrine. Subject to and without waiving such objection, see 19AZF0229 DELVECCHIA FRONTIER 0085-0099 and 0104-0105, the November 18, 2019 depositions of Gayle DelVecchia and Amanda DelVecchia, and the November 19, 2019 deposition of Plaintiff Peter DelVecchia to the extent they contain responsive information.

### III.    FRONTIER'S RULE 30(b)(6) DEPOSITION OBLIGATIONS

27.    All facts known to Frontier about any and all incidents occurring between January 1, 2009 and the date of the deposition, in which human trafficking aboard a Frontier flight was alleged or witnessed by anyone.

28.    All facts known to Frontier about any and all incidents occurring between January 1, 2009 and the date of the deposition, in which sex trafficking aboard a Frontier flight was alleged or witnessed by anyone.

29.    All facts known to Frontier about any and all incidents occurring between January 1, 2009 and the date of the deposition, in which sexual misconduct by a passenger against another passenger aboard a Frontier flight was alleged or witnessed by anyone.

30.    All facts known to Frontier about any and all incidents occurring between January 1, 2009 and the date of the deposition, in which child abuse and/or child

molestation by a passenger against another passenger aboard a Frontier flight was alleged or witnessed by anyone.

31.    All facts known to Frontier about any and all incidents occurring between January 1, 2009 and the date of the deposition, in which racial discrimination or racial profiling aboard a Frontier flight was alleged or witnessed by anyone.

32.    All facts known to Frontier about any and all incidents occurring between January 1, 2009 and the date of the deposition, in which a passenger aboard a Frontier flight was classified by any Flight Attendant or Pilot as a Threat Level One or a Threat Level Two, and the procedures followed in such events.

33.    All facts known to Frontier about any and all incidents occurring between January 1, 2009 and the date of the deposition, in which any Frontier employee physically struck a passenger or another Frontier employee aboard a Frontier flight, and any and all responses by Frontier's management to such incidents.