Timothy R. Titolo, Esq.
Nevada Bar No. 003617
TITOLO LAW OFFICE
9950 West Cheyenne Ave.
Las Vegas, Nevada 89129
(702) 869-5100
tim@titololaw.com

John D. McKay, Esq.
*Admitted pro hac vice*
PARK AVENUE LAW LLC
127 W. Fairbanks Ave. No. 519
Winter Park, Florida 32789
(800) 391-3654
johndmckayatty@gmail.com

**Attorneys for Plaintiffs**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| PETER DELVECCHIA, et al., | ) | **Case No: 2:19-CV-01322-KJD-DJA** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | **PLAINTIFFS' OBJECTIONS TO** |
| vs. | ) | **MAGISTRATE JUDGE ALBREGTS'** |
| | ) | **ORDER DATED MAY 8, 2020** |
| | ) | **(ECF No. 83)** |
| FRONTIER AIRLINES, INC., et al., | ) | |
| Defendants. | ) | Fed. R. Civ. P. 72(a); LR IB 3-1 |
| | ) | |

Plaintiffs, Peter DelVecchia ("Peter") individually and as next friend of A. D., a minor, by

counsel, hereby file pursuant to Federal Rule of Civil Procedure 72(a) and Local Rule IB 3-1 these

specific objections to the Order on Plaintiff's Second Amended Motion to Compel entered on the

record on May 8, 2020 by Magistrate Judge Albregts (ECF No. 83). For the reasons set forth herein,

the rulings that are the subject of these specific objections should be reversed because they are clearly

erroneous and/or contrary to law.

### Background and Rulings Objected To

This is a civil case alleging racist, tortious, malicious, offensive and permanently harmful conduct that Defendant Frontier Airlines, Inc. ("Frontier") and six of its employees inflicted upon Plaintiffs, who were ticketed passengers aboard Frontier's Flight 2067 on the evening of March 28, 2019. Peter is white and his adopted son, who was 12 years old at the time, is African-American. From almost the moment Peter and his son boarded the flight, the flight attendants labeled them a "situation" based solely on their appearance, which the flight attendants said was "unusual" and made them feel "uncomfortable." By joint agreement among themselves, the flight attendants subjected Peter and his son to constant surveillance during the flight, and reported Plaintiffs' interactions to the Captain as "inappropriate" and as making them feel uncomfortable. Initially, the reported interactions were a couple of instances in which Peter was said to have touched his son's face affectionately. The Captain interviewed each of the flight attendants either by intercom or in person, and he and the First Officer were informed by them of the disparity in their races.[1] The Captain and the First Officer consulted their Frontier-issued Flight Operations Manual ("FOM")[2], contained on electronic tablets, for guidance, and found the only relevant sections to be those which describe certain "Threat Levels" applicable to passengers. *See,* **Exhibit A** at 5, **Exhibit C** at 2-3. According to the First Officer, he and the Captain formulated a "game plan" between themselves of "what would cause it in our interpretation to move into" one of the defined Threat Levels. **Exhibit C** at 4-5. "It" in that quotation was "the situation" reported by the flight attendants. "The situation" was that Peter and his son

---

[1] Captain Shupe denied in his deposition knowing the race disparity until after the flight had landed, but First Officer Shawn Mullin testified that the description of Plaintiffs' different races was given to both him and Captain Shupe by one of the flight attendants in the cockpit during the flight, before the decision was made to separate Plaintiffs from each other. **Exhibit C** at 7-8.

[2] The FOM is sometimes referred to in the deposition transcripts as the "FLM." That is one of several typographical errors (others include "Nichol" for Nickel, "Shoop" for Shupe, "high jacking" for hijacking) in the transcripts. None of the deponents filed errata sheets within the permitted time period.

looked "unusual," and that made them "uncomfortable." The pilots discussed what would be necessary to indicate "an increasing level of threat" concerning Peter and his 12-year-old son. *Id.,* at 5. The pilots informed the flight attendants that what they had reported concerning Peter and his son was not sufficient for them to take any action, and that additional information was needed before such actions as separating the passengers and contacting law enforcement officers at the flight's destination could occur. *Id.,* at 8. The flight attendants agreed to provide additional information. *Id.,* at 6, 9-10. Notably, both Peter and his son were asleep in their seats at that point. *See,* **Exhibit E**, at 2-3. After the discussions with the pilots had occurred, one of the flight attendants, an African-American male named Scott Warren, stated that he had an "idea" to "help the situation," and he walked to the rear of the plane and back to the front, ostensibly conducting a trash collection. *See,* **Exhibit E**, at 2-3. When he returned to the front, he entered the cockpit and claimed that he had seen Peter's hand on his son's crotch. *See id.; see also* **Exhibit E**, at 4-5. He never divulged to the pilots that Peter and his son were asleep at the time. Upon receiving that information, Captain Shupe ordered that Plaintiffs be physically separated from each other for the remainder of the flight, and he and First Officer Mullin alerted law enforcement authorities in Las Vegas to meet the plane and detain the two passengers upon landing. **Exhibit A,** at 2-6; **Exhibit B,** at 3-4. They left the details of how to separate Peter from his son up to the flight attendants, and Warren took control of the plans and implementation. **Exhibit E,** at 6-7. Warren called for the lights to be turned up to full brightness, *id.* at 7-8, and he then struck Peter violently on the back of his head and neck, **Exhibit G** at 2-4, giving him a concussion and waking him up, *id.* at 11, and ordered his son to the back row of the plane where he imprisoned him under the guard of a large male passenger, without his shoes, cold and crying, for the remainder of the flight. *Id.,* at 5-7. Warren then sexually assaulted the son while claiming to demonstrate what he had falsely accused Peter of doing to him, **Exhibit H** at 2-3, and

loudly berated Peter in front of the other passengers, suggesting that Peter had committed criminal acts with his son. **Exhibit G,** at 8-10. Plaintiffs have sued Frontier and its employees for discrimination under the Civil Rights Act of 1866, codified at 42 U.S.C. §1981, as well as under state laws for intentional infliction of emotional distress, false imprisonment/unlawful detention, battery, sexual assault, and defamation. The Court's March 24, 2020 Order granted Defendant Frontier's partial motion to dismiss Plaintiffs' claims for false light invasion of privacy and negligent infliction of emotional distress (NIED). ECF No. 67. The NIED claim was dismissed with leave to amend granted. *See id.,* at 5. Plaintiffs intend to file a Second Amended Complaint that reasserts the NIED claim with additional supporting allegations.

Plaintiffs filed their Second Amended Motion to Compel on April 8, 2020 (ECF No. 77), detailing Frontier's extraordinary number of boilerplate objections and nonresponsive answers to Plaintiffs' discovery requests throughout the discovery phase of this case. The motion to compel also noted that, after being properly served with a Rule 30(b)(6) notice for its corporate deposition containing a list of topics to be covered in the deposition, Frontier did not file a motion for protective order, but simply announced through its counsel that if the deposition were to proceed, it would not produce any corporate witnesses to testify on several of the enumerated topics. Those topics were added to the motion to compel and Plaintiffs suspended the deposition pending a ruling on whether Frontier had to produce witnesses on those topics in accordance with the requirements of Rule 30(b)(6).[3]

Magistrate Judge Albregts issued a prompt and detailed Order on the motion to compel on May 8, 2020, ECF No. 83, for which Plaintiffs are appreciative. The Order, however, contains the

---

[3] That deposition and others have also been suspended due to travel restrictions imposed in response to the Covid-19 pandemic and the inadvisability of interstate travel during the pandemic. The deposition was noticed to take place in Denver, Colorado, the location of Frontier's corporate headquarters, and Frontier did not object to that location.

following specific rulings to which Plaintiffs partially object (the portions of the rulings to which

Plaintiffs object are shown below in bold text):

- Plaintiffs seek a response to First RFP No. 47 asking for documents related to prior complaints of racial discrimination over the past decade. Again, Plaintiffs appear to seek some more statements on how Defendant responds to complaints of race discrimination, beyond the policy documentation provided. However, that is more appropriately required via an interrogatory request or deposition testimony. Further, if they seek any complaints that resulted in litigation, that information is publicly available. Nevertheless, the Court finds that prior complaints of race discrimination are relevant to Plaintiff's Section 1981 claim and will narrow the request to be proportional to the needs of the case as follows: Defendant shall provide a supplemental response of any race discrimination complaints filed by passengers, not employees, **over the past 5 years only, and limited geographically to the continental United States**. Therefore, the Court grants in part and denies in part this portion of the Motion.

(ECF No. 83 at 4)

- Plaintiffs seek a response to Second RFP No. 2-7 asking for documents related to reports of a passenger being involved as a perpetrator, victim, or otherwise accused or suspected of being involved in human trafficking or sex trafficking or racial profiling. Plaintiffs contend that a Passenger Incident Report was filled out in this case by a managerial employee. The Court finds it relevant and proportional to compel a supplemental response of Passenger Incidents Reports only that are related to human or sex trafficking or racial profiling, **that involved a parent-child relationship, for the past 5 years in the continental United States**. Plaintiffs are correct that Defendant failed to articulate an undue burden in responding to these requests, but rather, generically claim they cannot search their records for incidents. The Court is not persuaded with Defendant's argument that there is no relevance to the human or sex trafficking prior incidents given the deposition testimony cited by Plaintiffs that indicates Defendants' employees believed trafficking may be an issue, **but it imposes the limitation of a parental relationship being involved**. Further, the Court will permit that to the extent that Defendant can adequately explain its inability to search for Passenger Incident Reports and it seeks to compromise on the scope of production of these prior incidents as limited by the Court above, it shall meet and confer with Plaintiffs' counsel. Therefore, the Court grants in part and denies in part this portion of the Motion.

(*Id.*, at 4-5)

- Plaintiffs seek the ability to move forward with Rule 30(b)(6) Depo Topic Nos. 27-33 regarding whether the reasons stated by Defendant's employees for their actions are pretextual in nature as related to the Section 1981 race discrimination claim. They argue that Defendant has not moved for a protective order and the burden falls to it to do so if it refuses to present a Rule 30(b)(6) deponent on these topics. **The**

**Court does not find these topics to be relevant and proportional to the needs of the case. The temporal, geographic, and subject matter scope is overly broad. As explained above, the Court will impose the same limitations as those for the RFPs and Rogs noted above.** Questioning may be about race discrimination complaints filed by passengers, not employees, **over the past 5 years only**, **and limited geographically to the continental United States**. It will also permit questioning about Passenger Incidents Reports only that are related to human or sex trafficking or racial profiling for the past 5 years **in the continental United States, that involved a parental relationship**. Plaintiffs may also explore questioning on striking passengers and Defendant's policy on such. However, Plaintiffs are cautioned to be aware of the limits that the Court has communicated on these topics and streamline the questioning. **Finally, the Court will not permit Topic 32 to go forward regarding a threat level classification as it is not relevant and proportional to the needs of this case. Therefore, the Court grants in part and denies in part this portion of the Motion.**

(*Id.*, at 7-8).

## Legal Authority

Federal Rule 72(a) states, in relevant part, "[a] party may serve and file objections to the [Magistrate Judge's] order within 14 days after being served with a copy. . . . The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Local Rule IB 3-1 states, in relevant part:

A district judge may reconsider any pretrial matter referred to a magistrate judge in a civil or criminal case under LR IB 1-3, when it has been shown that the magistrate judge's order is clearly erroneous or contrary to law. . . . The district judge may affirm, reverse, or modify, in whole or in part, the magistrate judge's order. The district judge may also remand the matter to the magistrate judge with instructions.

LR IB 3-1(a) and (b). A magistrate judge's order is "clearly erroneous" if the court has "a definite and firm conviction that a mistake has been committed." *See United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *Burdick v. Comm'r IRS*, 979 F.2d 1369, 1370 (9th Cir. 1992). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *UnitedHealth Grp., Inc. v. United Healthcare, Inc.*, No. 2:14-cv-00224-RCJ, 2014 WL 4635882, at *1 (D. Nev. Sept. 16, 2014). As discussed below, the specific rulings cited in these Objections are both clearly erroneous and contrary to law under those definitions.

The relevant rules of procedure state that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "[T]he scope of permissible discovery under Rule 26 is 'broad.'" *Republic of Ecuador v. Mackay*, 742 F.3d 860, 866 (9th Cir. 2014) (quoting *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993)). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). As Magistrate Judge Koppe noted recently, the established case law in this District holds that the party opposing discovery bears the burden of establishing with specificity and "articulated reasoning" why the requested discovery should not be had:

> The party seeking to avoid discovery bears the burden of showing why that discovery should not be permitted. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); *see also Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 469 (N.D. Tex. 2015) (addressing burdens following 2015 amendments to discovery rules). **The party resisting discovery must specifically detail the reasons why each request is irrelevant or otherwise objectionable, and may not rely on boilerplate, generalized, conclusory, or speculative arguments.** *F.T.C. v. AMG Servs., Inc.*, 291 F.R.D. 544, 553 (D. Nev. 2013). Arguments against discovery must be supported by "specific examples and articulated reasoning." *U.S. E.E.O.C. v. Caesars Ent.*, 237 F.R.D. 428, 432 (D. Nev. 2006).

*Reno v. Western Cab Co.*, Case No.: 2:18-cv-00840-APG-NJK, slip. op. at 2 (D. Nev., Nov. 25, 2019)(emphasis added). Plaintiffs' burden on a motion to compel discovery is to "show that the [sought] information is [both] relevant to the subject matter of the lawsuit and [] necessary to prepare the case for trial." *Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 681 (C.D. Cal. 2009) (quoting *In re Remington Arms Co., Inc.*, 952 F.2d 1029, 1032 (8th Cir. 1991)).

## ARGUMENT

### I.    The ruling prohibiting inquiry into threat level classification is clearly erroneous and contrary to law

Magistrate Judge Albregts' conclusion that deposition testimony on the subject of threat level classification "is not relevant and proportional to the needs of this case," *see* ECF No. 83 at 8, is

mistaken and even inconsistent with Frontier's arguments in response to the motion to compel. In the interests of justice and allowing Plaintiffs an adequate opportunity to prepare their case for trial, the ruling that the Court will not permit questioning on Topic 32 should be reversed.

The topic and Plaintiffs' arguments in support of its relevance and importance to their case preparation were set out in the Second Amended Motion to Compel as follows:

> **32.    All facts known to Frontier about any and all incidents occurring between January 1, 2009 and the date of the deposition, in which a passenger aboard a Frontier flight was classified by any Flight Attendant or Pilot as a Threat Level One or a Threat Level Two, and the procedures followed in such events.**
>
> Defendant Shupe, the Captain on the flight, ordered A. D. to be separated from Peter, his father, without even checking to see if they are related or consulting Frontier's written protocols, according to his deposition testimony, excerpts of which are attached hereto as Exhibit E. However, he testified that he consulted the Flight Operations Manual's text on Threat Levels *after* issuing the order, and claimed that his order was justified as an improvised response to a Threat Level Two, even though his order did not follow the written protocol for a Threat Level Two based on his testimony. *See id.* The inquiry is relevant to the issue whether Captain Shupe's order followed required protocols for Threat Level assessment and restraint, and whether similar "improvisations" have been allowed. This will be relevant to determining whether Captain Shupe's order to separate A. D. from his father was a justifiable use of the protocols or was simply a pretext used in support of the flight attendants' discriminatory treatment of Plaintiffs, a mixed-race family.

*Second Amended Motion to Compel*, ECF No. 77, at 29 (footnote omitted explaining that the exact text of the Threat Levels has yet to be released to Plaintiffs by the TSA, which is still the case).

Frontier's arguments against producing a witness on Topic 32 at the corporate deposition were the following:

> The pertinent line of inquiry is whether the flight crew's actions corresponded with Frontier's policies and procedures. Each member of the flight crew already sat for a deposition. In addition, Frontier has produced provisions of its policies and procedures. **It will produce further relevant documents, including the portions on threat levels, upon TSA approval, or another method of production as authorized by TSA. Plaintiffs may then question Frontier's representatives on how the actions of the flight crew corresponded with the policies.** Any information regarding prior incidents of the type sought by Plaintiffs are not relevant to the actions taken by the flight crew and not relevant to any party's claim or defense. On this basis, Frontier requests the

Court exclude Topics 27-33 from the list in the Frontier corporate representative deposition notices.

*Opposition,* ECF No. 79, at 14-15 (emphasis added). Plaintiffs' reply dealt with Topics 26 through 33 collectively, and noted that Supreme Court precedent requires Plaintiffs to produce evidence showing that Frontier's claims of "legitimate" bases for its employees' treatment of Plaintiffs are pretexts being employed to cover up discriminatory treatment:

> As stated in the motion, all of the information sought in Topics 27-33 goes to the heart of the inquiry into whether the reasons stated by Frontier's employees for their actions (policing sex and human trafficking, responding to "Threat Levels," addressing complaints of sexual molestation) are pretextual in nature, an inquiry required under Section 1981 by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), where proof of intent is made by indirect evidence. Denying Plaintiffs an opportunity to inquire into how other similar incidents were dealt with by Frontier and its employees, and to expose how the flight attendants are merely cloaking discriminatory acts in the garb of legitimate activities, fundamentally prejudices Plaintiffs' ability to prove their case. Plaintiffs should be permitted to inquire about those subjects at the Rule 30(b)(6) deposition, and Frontier should be ordered to present witnesses on those topics in compliance with its duties under the Rule.

*Reply,* ECF No. 81, at 12. The Supreme Court's holding in *McDonnell Douglas* underscores the relevance of looking beyond just the plaintiff's experience, to how the defendant has dealt with others, to establish whether its proferred reasons are pretextual:

> Other evidence that may be relevant to any showing of pretext includes facts as to the petitioner's treatment of respondent during his prior term of employment; petitioner's reaction, if any, to respondent's legitimate civil rights activities; **and petitioner's general policy and practice with respect to minority employment.** On the latter point, **statistics as to petitioner's employment policy and practice** may be helpful to a determination of whether petitioner's refusal to rehire respondent in this case conformed to a general pattern of discrimination against blacks. *Jones v. Lee Way Motor Freight, Inc.*, 431 F.2d 245 (CA10 1970); Blumrosen, Strangers in Paradise: Griggs v. Duke Power Co., and the Concept of Employment Discrimination, 71 Mich.L.Rev. 59, 91—94 (1972). **In short, on the retrial respondent must be given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for his rejection were in fact a coverup for a racially discriminatory decision.**

411 U.S., at 804-05 (footnotes omitted)(emphasis added). The *McDonnell Douglas* procedure applies

in a case brought under 42 U.S.C. §1981 when racial discrimination is based on indirect evidence.

*Patterson v. McLean Credit Union,* 491 U.S. 164, 186 (1989), *superseded by statute on other*

*grounds,* Civil Rights Act of 1991, Pub.L. No. 102-166, 105 Stat. 1071; *Lindsey v. SLT Los Angeles,*

*LLC,* 447 F.3d 1138, 1144-45 (9th Cir. 2005). Proof by circumstantial evidence is more common in

race discrimination cases than proof by direct evidence, because direct evidence of discriminatory

intent is rare. *See, Hampton v. Dillard Dept. Stores*, 247 F.3d 1091, 1107-08 (10th Cir. 2001), *cert.*

*denied*, 534 U.S. 1131 (2002)("the issue of intent is one that is often not susceptible to direct proof");

*Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220, 1225 (10th Cir. 2000)(same); *Harrington v.*

*Harris,* 108 F.3d 598, 606 (5th Cir. 1997)(same); *Madison v. Courtney,* 365 F.Supp.3d 768, 771 (N.D.

Tex. 2019)(applying *McDonnell Douglas* process to §1981 claim brought by airline passenger).

Defendants rarely admit being motivated by racial bias, and frequently claim other,

nondiscriminatory, reasons for their actions and decisions. *Madison.* "'A plaintiff may establish

pretext either through evidence of disparate treatment or by showing that the [defendant's] proffered

explanation is false or 'unworthy of credence.'" 365 F.Supp.3d, at 771. The holding in *McDonnell*

*Douglas* guarantees Plaintiffs a "full and fair opportunity" to make that showing through "competent

evidence." 411 U.S., at 805. In order to be able to do so, they must be allowed to conduct meaningful

discovery into Frontier's policies and practices in other situations where the "Threat Levels" of the

FOM were applied to passengers.

    In this case, Plaintiffs were subjected to disparate, offensive and harmful conduct by the crew

of the flight based solely on their looks—a white middle-aged man traveling with a 12-year-old black

male child. Flight attendants Bond and Bright/Sakurada[4] initially defended the disparate treatment by

---

[4] Bright/Sakurada's colleagues and Frontier's internal documents refer to her by her maiden name, Bright, while her
deposition identifies her by her married name, Sakurada. "Bright/Sakurada" is used herein to avoid confusion.

claiming that their "discomfort" arose from suspicions of human trafficking. With additional input from flight attendants Warren and Nickel, in what First Officer Mullin aptly described as "definitely playing telephone," the "situation" then morphed into allegations of sexual misconduct. While Peter and his son were sound asleep, Warren's added claim of having observed Peter's hand on his son's crotch escalated the "situation" into something the pilots, particularly Captain Shupe, claimed they could classify as an escalation to "Threat Level Two," justifying in their estimation the separation of the passengers and contacting of law enforcement on the ground. Captain Shupe testified that he had never been called upon to make such a decision before, and that he improvised in applying the FOM procedures applicable to a Threat Level Two situation in this case.[5] He agreed that he is not permitted to improvise in applying any other checklists contained in the FOM, and he could not explain why improvisation was permitted in this instance.

Magistrate Judge Albregts agreed with Plaintiffs' arguments that Frontier's application on other flights of its human trafficking and sexual misconduct procedures were both relevant and proportional to the needs of this case, *see,* ECF No. 83 at 4-5, but his ruling inexplicably singled out the Threat Levels classification as "not relevant and proportional to the needs of this case." *Id.,* at 8. In fact, that ruling leaves in question whether Frontier will have to provide a witness on the Threat Levels at all in its deposition, in spite of its assertion in its opposition to the motion to compel that it was willing to do so, *see* ECF No. 79, at 14-15. Moreover, the breadth of the ruling creates concerns that it will be used to support a relevance objection to introduction of the Threat Levels at other stages of this litigation, especially at trial, despite the Threat Levels having played a central role—in the characterizations by Captain Shupe and First Officer Mullin—in their decision to order the

---

[5] Discussing the specific details of his improvisation would necessarily expose the content of the Threat Levels, which have been marked as Sensitive Security Information ("SSI"). The relevant excerpts of Captain Shupe's deposition where he discusses the improvisation, and of First Officer Mullin's deposition where he states the details of Threat Levels One and Two, are filed herewith as sealed exhibits. *See,* **Exhibits B and D**.

separation of Peter from his son. Plaintiffs have valid reasons to anticipate that Frontier will seek to use the Threat Levels One and Two (One being an escalation of Two) to defend against Plaintiffs' claims of racial discrimination, which would set up Plaintiffs' need to establish that their use in this case is a pretext to cover up discrimination under the *McDonnell Douglas* process. Frontier's assertion in its opposition that "Plaintiffs may . . . question Frontier's representatives on how the actions of the flight crew corresponded with the [Threat Levels]" clearly confirms their relevance to the case, as does the deposition testimony cited in the motion and reply and contained in the exhibits to these Objections. Topic 32 seeks to question Frontier at its corporate deposition on how it has handled other Threat Level One and Two classifications during the past ten years (the length of the period being justified by the reasonable assumption that such classifications of specific passengers are exceedingly rare) in order to obtain evidence that Captain Shupe's improvised application of Threat Level Two was pretextual. Frontier's sole argument objecting to Topic 32 was its unsupported declaration that, "[a]ny information regarding prior incidents of the type sought by Plaintiffs are not relevant to the actions taken by the flight crew and not relevant to any party's claim or defense." ECF No. 79, at 14-15. The holdings of *McDonnell Douglas, Patterson* and *Lindsey* make those prior incidents relevant, however, and Frontier provided absolutely no argument or specific examples to the contrary. Magistrate Judge Albregts' acceptance of Frontier's unsupported argument misapplied the settled law of this District that "'[t]he party resisting discovery must specifically detail the reasons why each request is irrelevant or otherwise objectionable, and may not rely on boilerplate, generalized, conclusory, or speculative arguments,'" *Reno v. Western Cab Co., supra* (quoting *F.T.C. v. AMG Servs., Inc.*, 291 F.R.D. 544, 553 (D. Nev. 2013)), and its arguments against discovery "must be supported by 'specific examples and articulated reasoning,'" *id.* (quoting *U.S. E.E.O.C. v. Caesars Ent.*, 237 F.R.D. 428, 432 (D. Nev. 2006)). It is therefore "contrary to law" within the meaning of

Rule 72(a), LR IB 3-1, and *UnitedHealth Grp., Inc. v. United Healthcare, Inc.*, *supra*. Moreover, it is clearly erroneous since *McDonnell Douglas, Patterson* and *Lindsey* establish that Plaintiffs have a right to develop evidence based on Frontier's regular practices to establish that the application of a Threat Level Two classification (as an "escalation" of a Threat Level One that was never declared) to two sleeping passengers was pretextual in nature. Magistrate Judge Albregts' ruling as to Topic 32 should therefore be reversed and Plaintiffs should be permitted to question Frontier at its Rule 30(b)(6) deposition not only on the application of the Threat Levels to Plaintiffs, but also how Threat Levels One and Two have been applied to other passengers during the past ten years.

## II.   The geographical, temporal and parental relationship limitations are clearly erroneous and contrary to law

Magistrate Judge Albregts' imposition of a geographical limitation of "the continental United States," and a five-year temporal limitation to First RFP No. 47, Second RFP Nos. 2-7 and Deposition Topics 27-31 and 33, and a requirement of a parent-child relationship applicable to Second RFP Nos. 2-7 and the aforesaid Deposition Topics, apparently derived solely from the vague arguments by Frontier that the requests are "overbroad," "not relevant" and "not proportional." Frontier did not provide any substantive reasoning or examples to support those conclusory objections.[6] Notably, Frontier never asked for the discovery to be limited to the continental United States (it simply cited a case, *Sattari v. Citi Mortgage*, Case No. 2:09-cv-00769-RLH-GWF, 2010 U.S. Dist. LEXIS 125687 at * 8 (D. Nev. Nov. 17, 2010), *see* ECF No. 79 at 3-4, holding that asking a bank with hundreds of branch offices to state the number of cases filed against it in a four-year

---

[6] In fact, as Plaintiffs pointed out in their Reply, *see* ECF No. 81 at 5, Frontier's arguments in its opposition did not even mirror the objections that it had asserted to Second RFP Nos. 2-6, which primarily relied on a false claim that human or sex trafficking had never been asserted as a reason for its employees' actions. That claim was debunked by showing that its own employee, Bright/Sakurada, had testified to claimed suspicions of trafficking that were shared with a different employee on the flight. *See* ECF No. 77 at 10-11. Faced with that evidence, Frontier simply abandoned the original basis for its objections and created wholly new arguments in its opposition to the motion to compel.

period arising out of mortgage foreclosures was "unduly burdensome" without a geographic limitation), it never asked for a specific time limitation different than ten years or provided reasons why a shorter period of time would make the request more proportional to the needs of the case (again, it simply cited *Sattari's* holding that four years was "unduly burdensome" as applied to an interrogatory to a bank about the total number of certain types of lawsuits, *see id.,* at 3), and it never specifically asked for a "parent-child relationship" to define its search for records (it merely argued, without factual or legal support of any kind, that "[o]nly substantially similar incidents have any potential relevance and Plaintiffs' request is not sufficiently narrow to seek only substantially similar events." *Id.*, at 4. Neither *McDonnell Douglas* nor *Lindsey* imposes any "substantially similar" limitation to the presentation of evidence tending to show pretext). Frontier's relevance arguments centered solely on what happened to Plaintiffs, and ignored altogether Plaintiffs' right to present evidence showing that Frontier's policy-based explanations for what its employees did to Plaintiffs are pretextual in nature because its employees' actions toward Plaintiffs did not conform to how the same policies have been applied to other passengers on other flights. It simply argued, again without a shred of factual or legal support, that "[t]he history of such other incidents has absolutely no relevance to the actions taken by Frontier flight attendants on Flight 2067 on March 28, 2019." *See* ECF No. 79, at 5. Its reliance on *Allen v. Zavaras*, Case No. 08-cv-02506-ZLW-BNB, 2010 U.S. Dist. LEXIS 42614, at *15 (D. Colo. March 30, 2010), a District Court opinion dealing with an interrogatory served in a prisoner's case alleging violation of his Eighth Amendment rights, provided no support for its conclusory arguments. Frontier did not even attempt to demonstrate how the Eighth Amendment case dealing with an interrogatory objection, where *McDonnell Douglas* did not apply, provided a basis for the Court to uphold a relevance objection to a document request in a case based on 42 U.S.C. §1981, where *McDonnell Douglas* does apply.

Frontier's objections to Second RFP Nos. 2-7, which were incorporated by reference into its objections to Deposition Topics 27-33, consisted of cut-and-paste, nearly identical objections based on relevance and proportionality, the only specific content of which was a false claim that "there are no facts suggesting that Frontier employees suspected Plaintiff [*sic*] was involved in human trafficking and/or sex trafficking." *See* ECF No. 77 at 10, 13-17. It changed the phrase, "employees suspected Plaintiff was involved in human trafficking and/or sex trafficking," to "racially profiled" in its objection to No. 7, *see id.* at 17, which was equally false because there is indeed evidence that its employees racially profiled Plaintiffs: prior to Warren's fabricated claim that Peter was groping his son while both of them were sound asleep, the only thing Plaintiffs had done to warrant being labeled "a situation" by the flight attendants was to be white and black, respectively. Its sole argument as to why it should not be required to respond to No. 7 was based on the premise that Plaintiffs must be "confuse[d]" about a racial motivation to its employees' actions because all of the employees denied such motivations. *See* ECF No. 79 at 6. Denials of racially-motivated actions by defendants are the norm in Section 1981 litigation, which is why proof by indirect evidence is routinely required, *see Hampton.* The denials by Frontier's employees on this critical factual issue do not define relevance for purposes of Rule 26(b)(1)—the content of their Section 1981 allegations and the holdings of *McDonnell Douglas, Patterson* and *Lindsey* do.

Simply put, Frontier never asked for the specific limitations that Magistrate Judge Albregts imposed in his Order, and his *sua sponte* imposition of them unfairly hinders Plaintiffs' ability to prove their case. The geographical limitation to the continental United States unreasonably overlooks the fact that Frontier flies domestic as well as international flights. According to its website, Frontier operates flights to Canada, Mexico, Dominican Republic, El Salvador, Guatemala, Jamaica and, strangely, the "country" of Puerto Rico. *See,* https://flights.flyfrontier.com/en/sitemap/country-to-

country-flights/page-1 (last accessed May 21, 2020). Frontier has not established, nor even argued, that searching for records of reports or complaints of human trafficking, sex trafficking or racial profiling would be any more difficult or expensive if flights to international destinations were included in the search. Nor has it argued or established that there is any basis on which to conclude that such matters occur with greater or less frequency on international flights than on domestic flights. Moreover, from the standpoint of practical application of Magistrate Judge Albregts' limitation, it may be impossible to determine whether an incident occurred within "the continental United States" if it happened during a flight originating in the U.S. and destined for an airport in another country, or coming into the U.S. from a foreign airport, because some significant portion of those flights necessarily occurred in airspace that is technically and legally within the continental United States. Incident reports made by flight attendants do not typically indicate where on the flight route the airliner was located at the time of the incident (and flight attendants normally do not possess those details). Thus, the limitation not only restricts the search for documents that would assist Plaintiffs with proof of pretext needed under *McDonnell Douglas* and *Lindsey*, it also would lead to difficulties—if not impossibilities—in application. Since the limitation was never requested by Frontier on the basis of "specific examples and articulated reasoning," *see Reno v. Western Cab Co.,* it is contrary to law and clearly erroneous and should be reversed.

The limitation to five years, also never specifically requested by Frontier nor supported by any examples or reasoning, overlooks the fact that complaints of sex trafficking, human trafficking and racial profiling occur (one would hope) rarely. Limiting the inquiry to a five-year period might not provide enough data points for anyone to establish Frontier's "general policy and practice" with respect to such matters. *See McDonnell Douglas,* 411 U.S., at 804-05. Frontier certainly did not provide the Court with any information on which it could make such a determination, so the *sua*

*sponte* imposition of a five-year period runs a significant risk of curtailing Plaintiffs' access to needed evidence for no supported reason. That would be unfair to Plaintiffs and would not follow the legal requirement of objections being based on "specific examples and articulated reasoning." The temporal limitation should therefore be reversed as contrary to law and clearly erroneous.

Finally, the parent-child relationship limitation **severely** restricts Plaintiffs' access to needed evidence. Once again, it was never specifically requested by Frontier. It presumably is based on Frontier's unsubstantiated arguments that the facts of this case are "unique" and that "[o]nly substantially similar incidents have any potential relevance," *see* ECF No. 79, at 4.[7] But the *McDonnell Douglas* process is not limited to "substantially similar incidents." Nothing in the Supreme Court's original decision, or in any of its progeny, suggests anything of the sort. The process explained by the Supreme Court is that a plaintiff makes out a *prima facie* case of racial discrimination based on indirect evidence, the defendant is permitted to offer non-discriminatory reasons to explain its actions, and the plaintiff is then permitted to introduce evidence to show that the defendant's explanation is "in fact a coverup" for acts of race discrimination. 411 U.S., at 804-05. The inquiry is not how the defendant has acted in "substantially similar incidents," but instead how evidence of its "general policy and practice" illustrates that the explanation is a sham. *Id.* Limiting Frontier's responses to instances in which a parent-child relationship was involved in complaints of suspected trafficking or racial profiling is not likely to provide a representative illustration, or any illustration at all, of how Frontier's general policies and practices normally address situations of suspected trafficking or racial profiling. Frontier has not provided any basis on which the Court could conclude that it would, and general experience suggests that it would not. Human/sex trafficking and racial profiling are not typically associated with a parent-child relationship. The limitation therefore

---

[7] Of those two concepts, only "unique facts" was stated in Frontier's objections to the discovery requests.

severely restricts Plaintiffs' access to evidence that could be used to prove pretext, and it was not arrived at on the basis of the type of argument that Frontier was legally obligated to make as described in *Reno v. Western Cab Co.* The limitation should therefore be reversed as contrary to law and clearly erroneous.

As Plaintiffs argued in their motion, another reason why they need access to the evidence without the limitations imposed *sua sponte* in the Order is to establish that Frontier directed and authorized its employees to act as quasi-policemen in the area of trafficking, to identify and report to law enforcement authorities suspected cases among Frontier's passengers, without providing the employees with any training on how to do so in a race-neutral manner, leading inevitably to the violation of Plaintiffs' rights protected by §1981. *See, Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012), and 784 F.3d 1254 (9th Cir. 2015). In its 2012 *Melendres* opinion, the Ninth Circuit affirmed the district court's grant of a preliminary injunction against Sheriff Joseph Arpaio and his Maricopa County (Arizona) Sheriff's Office ("MCSO") preventing the continued practice by deputies of racially profiling and "stopping Latino drivers and passengers pretextually and without individualized suspicion or cause, and of subjecting them to different, burdensome, stigmatizing and injurious treatment once stopped, under the auspices of enforcing federal immigration laws and/or Arizona state immigration-related laws." 695 F.3d, at 994. The Court's 2015 opinion reviewed the district court's subsequent permanent injunction that required, *inter alia*, deputies to attend training on racial profiling. In affirming that portion of the permanent injunction, the Court held:

> The evidence demonstrated to Judge Snow's satisfaction that MCSO gave virtually no training on racial profiling and otherwise provided erroneous training that led to constitutional violations. There is evidence that some MCSO deputies and supervisors lacked basic knowledge of constitutional requirements, and that MCSO took no steps to evaluate personnel for racial profiling or to discipline personnel who engaged in racial profiling.

784 F.3d, at 1266. Similarly, Frontier has "deputized" its employees and instructed them to take action on any suspicions of human or sex trafficking among its passengers without providing them with any training on how to do so without racial profiling, thus promoting and condoning an environment in which racial discrimination of passengers is highly likely to occur and did occur with respect to Plaintiffs. Plaintiffs should be permitted to discover evidence of other instances where Frontier's policies have resulted in discrimination, without the limitations imposed *sua sponte* by Magistrate Judge Albregts.

CONCLUSION

Plaintiffs appreciate the prompt, thoughtful and thorough resolution by Magistrate Judge Albregts of their Second Amended Motion to Compel. However, they believe that he erred in a couple of instances, as addressed above. For all of the reasons set forth above, Plaintiffs respectfully request an Order from the District Judge reversing the rulings discussed above as clearly erroneous and contrary to law, pursuant to Fed. R. Civ. P. 72(a) and LR IB 3-1.

DATED this 22nd day of May, 2020.

_____/s/ John D. McKay_____
John D. McKay (admitted *pro hac vice*)
PARK AVENUE LAW LLC
127 W. Fairbanks Ave., No. 519
Winter Park, FL 32789
johndmckayatty@gmail.com
(800) 391-3654

Timothy R. Titolo (Nev. Bar. No. 3617)
TITOLO LAW OFFICE
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 869-5100
tim@titololaw.com

***Attorneys for Plaintiffs Peter DelVecchia
And A.D., a Minor***