# EXHIBIT A

**Excerpts from deposition of Defendant Rex T. Shupe (Captain)**

```
 1                UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF NEVADA

 3                           -oOo-

 4

 5  PETER DELVECCHIA, et al.,    )
                                 )  Civil No.:
 6         Plaintiff,            )  2:19-CV-01322-KJD-NJK
                                 )
 7  v.                           )
                                 )
 8  FRONTIER AIRLINES, INC.,     )
    et al.,                      )
 9                               )
           Defendants.           )
10  _____)

11

12

13

14      VIDEOTAPED DEPOSITION OF CAPTAIN REX SHUPE

15           Taken on December 4, 2109

16                at 8:29 a.m.

17

18

19         ADVANCED REPORTING SOLUTIONS
                159 West Broadway
20         Broadway Lofts, Suite 100
           Salt Lake City, Utah 84101
21

22

23

24  REPORTED BY:  Michelle Mallonee, RPR, CSR

25
```



```
 1  four of you in the cockpit?                                 08:44:51
 2      A.   Correct.                                           08:44:52
 3      Q.   Was First Officer Mullin involved in these         08:44:52
 4  conversations at all?                                       08:44:55
 5      A.   Yes.                                               08:44:56
 6      Q.   He was?                                            08:44:56
 7      A.   Yeah.                                              08:44:56
 8      Q.   Okay.  And what did he add to the conversation?    08:44:56
 9      A.   Well, I can't remember if he added or not.  But    08:44:59
10  it was through the course of the discussion that we came   08:45:01
11  to our decision to separate the two, the adult and the     08:45:04
12  minor.                                                     08:45:08
13      Q.   Okay.  So before you left the cockpit, the four   08:45:08
14  of you had decided to separate the adult from the minor?   08:45:11
15      A.   Before I left the cockpit?  That, I can't         08:45:16
16  remember.                                                  08:45:19
17      Q.   Okay.                                             08:45:19
18      A.   Because to be honest with you, I can't remember   08:45:19
19  if I left the cockpit or not to use the bathroom.          08:45:21
20      Q.   Okay.  All right.  But at some point, you recall  08:45:24
21  that the group of you made a decision, jointly, that       08:45:27
22  there should be separation of the two passengers?          08:45:31
23      A.   Correct.                                          08:45:35
24      Q.   Okay.  And that was based on what information?    08:45:36
25      A.   On the information from the Chelsie and Scott.    08:45:40
```



```
 1      Q.   Well, let me put it this way.  If somebody is        08:48:03
 2  sound asleep, their actions would be involuntary,             08:48:06
 3  correct?                                                      08:48:10
 4      A.   Correct.  Yeah.                                      08:48:10
 5      Q.   Okay.  So you wouldn't consider that somebody is     08:48:10
 6  sexually molesting someone in their sleep?                    08:48:14
 7      A.   Correct.                                             08:48:19
 8      Q.   Okay.  So if Scott had told you that these two       08:48:19
 9  people were asleep, presumably you would have said, well,     08:48:22
10  it's probably not an active action if the person is           08:48:27
11  asleep, right?                                                08:48:32
12      A.   Right.                                               08:48:33
13      Q.   Okay.  And -- and if the other person is -- is       08:48:34
14  asleep as well, if two people are asleep, there's             08:48:38
15  probably not a -- a -- a sexual molestation situation         08:48:41
16  going on, right?                                              08:48:46
17      A.   That sounds right.                                   08:48:47
18      Q.   Okay.  So it's important that Scott left out the    08:48:49
19  fact that the two people were asleep?                         08:48:52
20      A.   If that's what was happening, yes.                   08:49:00
21      Q.   Okay.  So now, at this point, you've received        08:49:03
22  information from Chelsie that she didn't agree with the       08:49:07
23  stroking of the face, and you've received information         08:49:13
24  from Scott that there was a hand near the crotch.  And        08:49:16
25  based on that information, you and First Officer Mullin,      08:49:24
```



```
 1  jointly with the flight attendants, made a decision to        08:49:29
 2  separate the child from the adult?                            08:49:34
 3      A.   Correct.                                             08:49:36
 4      Q.   Okay.  Had you ever made a decision like that        08:49:37
 5  before?                                                       08:49:41
 6      A.   No.  And let me add to that, that it wasn't just     08:49:42
 7  those two.                                                    08:49:46
 8      Q.   Okay.                                                08:49:46
 9      A.   For us to -- to take action with a passenger, we     08:49:47
10  don't take that lightly.  And so I also called back the       08:49:52
11  third flight attendant and the fourth one and talked to       08:49:56
12  them individually on the phone.                               08:49:59
13      Q.   Okay.                                                08:50:01
14      A.   "What did you see?"                                  08:50:01
15      Q.   Okay.  So let me just make sure we get the names     08:50:03
16  here.                                                         08:50:06
17           So that's Amanda Nichol and Anna Bond, correct?      08:50:06
18      A.   Correct.                                             08:50:10
19      Q.   Okay. And what -- and -- and did you have them       08:50:11
20  both on the phone at the same time?                           08:50:13
21      A.   No.                                                  08:50:15
22      Q.   No.  Okay.                                           08:50:15
23           So who did you speak with first?                     08:50:17
24      A.   The third, the C flight attendant.                   08:50:20
25      Q.   The C flight attendant is Bond?                      08:50:22
```



```
 1            Is there any other guidance that you consulted
 2   in the FOM concerning this situation?
 3        A.   No.
 4        Q.   Okay.  So let's just go through the threat
 5   levels.
 6            You did not have any information that Peter or
 7   A.D. had                    REDACTED
 8                   ?
 9        A.   Correct.
10        Q.   You did not have any information that Peter or
11   A.D. had                    REDACTED
12                ?
13        A.   Correct.
14        Q.   You did not have any information that Peter or
15   A.D. had                REDACTED                        ?
16        A.   Correct.
17        Q.   And you did not have any information that Peter
18   or A.D. had              REDACTED               ?
19        A.   Correct.
20        Q.   Okay.  So nothing that was brought to your
21   attention fit any of the threat levels?
22        A.   Well, on Threat Level 2 is -- there is a
23   section -- there is an articulation of    REDACTED
24    REDACTED .
25        Q.   Okay.  So Threat Level 2, which I don't have
```



5

```
 1  available to me, and apparently you don't either at the
 2  moment, Threat Level 2, you say, has something in it
 3  about          REDACTED          ?
 4      A.   Correct.
 5      Q.   All right.  Now, can you tell me whether that is
 6         REDACTED         of another passenger or
 7         REDACTED         of a crew member?
 8      A.   No, it doesn't -- I'd have to go read that to
 9  see the articulation again.
10      Q.   All right.  Well, for our purposes today, did
11  you determine that the information provided to you met
12  Threat Level 2?
13      A.   Yes -- restate that question one more time.
14      Q.   Did you determine when you looked at the FOM and
15  the threat levels that the information that the flight
16  attendants had provided to you met the criteria of a
17  Threat Level 2?
18      A.   Yes.
19      Q.   Okay.  And what is the required action of the
20  captain upon determining that a Threat Level 2 exists?
21      A.   There is an articulation in there that has us to
22                       REDACTED
23         REDACTED         .
24      Q.   Okay.  So if -- if I understand you correctly,
25  the required action of a captain upon determining that a
```



6

```
 1  passenger meets Threat Level 2 is, first, to  REDACTED
 2   REDACTED ; second, to            REDACTED
 3                 REDACTED               ?
 4       A.   Correct.
 5       Q.   Okay.  And you had determined that a Threat
 6  Level 2 existed with respect to Peter Delvecchia?
 7       A.   Correct.
 8       Q.   And you had determined this based on a statement
 9  by Scott Warren that he had seen Peter Delvecchia's hand
10  near the groin of the child next to him?
11       A.   Correct.
12       Q.   Okay.  Now, you did not  REDACTED  Peter
13  Delvecchia, did you?
14       A.   No.  Not -- not   REDACTED    as far as
15  with -- with  REDACTED .  What do we have, the -- anything
16  like that.  The  REDACTED  came -- to    REDACTED
17   REDACTED  .
18       Q.   Well, under Threat Level 2 in the FOM, it says
19  to  REDACTED , correct?
20       A.   Correct.
21       Q.   And you have equipment on board the aircraft to
22      REDACTED    , correct?
23       A.   Correct.
24       Q.   But you did not  REDACTED  Peter Delvecchia with
25  that equipment?
```

