CHARLES A. MICHALEK, ESQ.
Nevada Bar No. 5721
ROGERS, MASTRANGELO, CARVALHO & MITCHELL
700 South Third Street
Las Vegas, Nevada 89101
Phone: (702) 383-3400
Email: cmichalek@rmcmlaw.com

BRIAN T. MAYE (admitted *pro hac vice*)
TARA SHELKE (admitted *pro hac vice*)
MATTHEW D. MARTIN (admitted *pro hac vice*)
ADLER MURPHY & McQUILLEN LLP
20 South Clark Street, Suite 2500
Chicago, Illinois 60603
Phone: (312) 345-0700
Email: bmaye@amm-law.com
　　　　tshelke@amm-law.com
　　　　mmartin@amm-law.com

***Attorneys for Defendants F*RONTIER A*IRLINES*, I*NC*.,
S*COTT* W*ARREN*, and R*EX* S*HUPE***

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| PETER DELVECCHIA, individually and as next friend of A.D., a Minor, <br><br>　　　　　　*Plaintiffs*, <br><br>v. <br><br>FRONTIER AIRLINES, INC., SCOTT WARREN, CHELSIE BRIGHT SAKURADA, ANNA BOND, AMANDA NICKEL, REX SHUPE and SHAWN MULLIN, <br><br>　　　　　　*Defendants*. | Case No.: 2:19-cv-01322-KJD-DJA <br><br>**FRONTIER AIRLINES, INC.'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE ALBREGTS' ORDER DATED MAY 8, 2020 (ECF No. 83)** |

**DEFENDANT FRONTIER AIRLINES, INC.'S RESPONSE TO
PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE ALBREGTS'
ORDER DATED MAY 8, 2020 (ECF No. 83)**

- 1 -

Defendant FRONTIER AIRLINES, INC. ("Frontier"), by its undersigned counsel, and for its Response to Plaintiffs' Objections to Judge Albregts' Order Dated May 8, 2020 (ECF No. 83), states as follows:

## I.   INTRODUCTION

Frontier hereby responds to Plaintiffs' objections to Judge Albregts' May 8, 2020 Order relating to Plaintiffs' Second Amended Motion to Compel ("Motion to Compel"). (ECF No. 83). Under the applicable law cited herein, and as applied to the evidence discussed herein, it is plain that Judge Albregts' ruling was not clearly erroneous or contrary to the law. *See* Fed. R. Civ. P. 72. Therefore, Judge Albregts' ruling should not be disturbed.

## II.   FACTS AT ISSUE

Plaintiffs' distortion of the facts in the record is disconcerting. There is no evidence whatsoever that the flight attendants coordinated a racially discriminatory response to Plaintiffs' presence on the flight. A fair reading of the record reveals that Plaintiffs' own actions led Frontier's flight crew to take measures to protect A.D. from a perceived safety threat. Frontier will provide additional facts from the record to explain the history behind the discovery issues at bar and Judge Albregts' May 8, 2020 Order.

On March 28, 2019, Plaintiffs were passengers aboard Frontier's Flight 2067 from Raleigh, North Carolina to Las Vegas, Nevada. (ECF No. 68 at ¶ 10.) The flight crew for Flight 2067 included four flight attendants, a pilot, and a first officer. Flight Attendant ("FA") Anna Bond recalled the first time the cabin crew noticed, and had interaction with, Plaintiffs, who were seated in an exit row. (*See* Ex. A, Anna Bond dep. at 36:18-38:25). During her briefing to the passengers seated in the exit rows, FA Bond asked A.D. his age to ensure that he met the age requirement (15 years old) for sitting in the exit row. *Id.* FA Bond testified that A.D. looked at Peter, as if he were looking for permission to speak, and then answered after Peter nodded to A.D. *Id.* FA Bond thought that A.D.'s demeanor and his deference to Peter were unusual.

(*See* Ex. A, Anna Bond dep. at 36:18-38:25, 43:3-52:24).  When A.D. stated that he was 12 years old, she re-seated Plaintiffs to non-exit row seats. *Id.*

The first time FA Chelsie Bright noticed Plaintiffs was when she observed FA Bond reseating Plaintiffs to a non-exit row. *(See* Ex. B, Chelsie Bright dep. at 37:7-38:4). FA Bond told FA Bright of her experience with Plaintiffs, which caused FA Bright to be "more aware" and made her "keep an eye out, especially when it's a kid's safety." (*Id.* at 60:5-9; 65:1-7). As FA Bright noted, her job is to "protect everyone on the plane." (*Id.* at 66:7-9).

Later, FA Amanda Nickel encountered Peter and A.D. while performing her beverage service duties. When she offered A.D. a beverage, he glanced at his father, and then rapidly shook his head no, without speaking. FA Nickel stated, "it was [A.D.'s] body movement of very anxiously shaking his head no, like he didn't want to speak to me anymore" that caused her to feel uneasy.  (*See* Ex. C, Amanda Nickel dep. at 65:13-68:24).

Further into the subject flight, FA Bright observed Peter stroking A.D.'s face up and down in a way that appeared very inappropriate and unusual to FA Bright. (*See* Ex. B, Chelsie Bright dep. at 45:10-51:21).  She told the other flight attendants of her observation, which prompted FA Bond to relay the earlier interaction she had with Plaintiffs while briefing passengers in the exit rows. At this point, three of the four flight attendants had witnessed behaviors and actions of Plaintiffs that they believed justified notifying the Captain. Importantly, the flight attendants who witnessed this behavior testified that Plaintiffs' races were not a factor in their observations. (Ex. B, Chelsie Bright. at 48:4-18; Ex. A, Anna Bond dep. at 44:12-18; Ex. C, Amanda Nickel dep. at 131:21-134:2).

After FA Bright observed what she perceived as inappropriate touching, she notified the Captain, Rex Shupe, pursuant to Frontier policy. (*See* Ex. B, Chelsie Bright dep. at 68:7-72:17).  Captain Shupe and First Officer ("FO") Shawn Mullin consulted their Flight Operations Manual ("FOM") for guidance

on how to respond to the situation. (*See* Ex. E Shawn Mullin dep. at 38:20-41:2). FO Mullin testified that he reviewed the threat resolution procedures (threat levels 1-4) in his FOM. *Id.* Captain Shupe instructed the flight attendants to monitor the situation. (See Ex. C, Amanda Nickel dep. at 84:9-15).

Up until this point, the fourth and final flight attendant, Scott Warren (an African American), had not interacted with Plaintiffs and had not witnessed any of Plaintiffs' behavior. However, FA Warren was apprised of the FA Bright's observations regarding inappropriate touching. (*See* Ex. F, Scott Warren dep. at 58:12-59:7). After speaking with all the flight attendants, Captain Shupe asked FA Warren to conduct a walk-through of the cabin, monitor Plaintiffs, and report back to him. (*Id.* at 62:10-16). FA Warren proceeded to walk through the cabin for the purpose of checking on A.D. While walking past Plaintiffs' twice, FA Warren observed Peter's hand located on A.D.'s genital area. *Id.* He observed Peter's right hand "grabbing" A.D.'s genital area, "his fingers were down in there and everything." (*Id.* at 63:14-64:9). Peter and A.D. appeared to be sleeping, although FA Warren could not be certain. *Id.* Consistent with Frontier policy, FA Warren reported what he observed to Captain Shupe. *Id.*

Based on the information received from all four flight attendants, Captain Shupe then determined that A.D.'s safety was potentially at risk and directed the flight attendants to move A.D. to the last row for the remainder of the flight. (*See* Ex. D, Rex Shupe dep. at 47:13-49:13). Captain Shupe made the decision to separate Peter and A.D. based on observations and reports from separate flight attendants that Peter had inappropriately touched A.D. (*See* Ex. D, Rex Shupe dep. at 21:7-24:3). When Captain Shupe made the decision to separate A.D. from Peter, he did not know the race of Peter or A.D. (*See* Ex. D, Rex Shupe dep. at 72:23-74:5). Also, contrary to Plaintiffs' assertion in their Rule 72 Objections, FO Mullin never testified that he knew the races of Peter and A.D. prior to the decision by the Captain to move A.D. (*See* Ex. E, Shawn Mullin dep. at 82:23-83:5). FO Mullin testified that someone may have mentioned to him the race of A.D., but it did not play a part in the decision to separate Plaintiffs. *Id.*

### III. STANDARD OF REVIEW

Fed. R. Civ. P. 72(a) allows a district court judge to "consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." The district judge "must affirm the magistrate judge unless it is left with the 'definite and firm conviction that a mistake has been committed.'" *Premiere Digital Access, Inc. v. Cent. Tel. Co.*, 360 F. Supp. 2d 1168, 1172 (D. Nev. 2005) (quoting *Burdick v. Commissioner*, 979 F.2d 1369, 1370 (9th Cir. 1992)). The reviewing court may not simply substitute its judgment for that of the deciding court. *Id.* (citing *Grimes v. City & County of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991)).

A finding is clearly erroneous "'when although there is evidence to support it, the reviewing body on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. Nev. Dep't of Corr.*, Case No. 3:16-cv-00056-RCJ-VPC, 2018 U.S. Dist. LEXIS 124490, at *4 (D. Nev. July 24, 2018) (quoting *Concrete Pipe & Prods. Of Cal. Inc. v. Constr. Laborers Pension Tr. For S. Cal.*, 508 U.S. 602, 622 (1993)). A decision is contrary to law "if it applies an incorrect legal standard or fails to consider an element of the applicable standard." *Id.* at *4-5 (citing *Conant v. McCaffrey*, No. C 97-0139 FMS, 1998 U.S. Dist. LEXIS 22837, at * 2 (N.D. Cal. Mar. 16, 1998) (internal citation omitted)). Rule 72(a) institutes "an abuse-of-discretion-type standard of review, under which the reviewing court must give significant deference to the initial decision…" *Id.* at *5.

### IV. POINTS AND AUTHORITIES

Plaintiffs objected to four aspects of Judge Albregts' ruling: (1) not allowing the testimony requested in Deposition Topic 32 regarding Threat Levels found in Frontier's manuals; (2) the five-year temporal limitation on complaints and other information; (3) the geographic limitation on those complaints and information; and (4) the limitation of discovery to parent-child situations. For reasons fully explained below, each of Judge Albregts' rulings were proper and should be affirmed.

### A.  Deposition Testimony Regarding All Prior Passengers Classified as a Threat Level One or Threat Level Two Is Not Relevant or Proportional to the Instant Case.

Fed. R. Civ. P. 26 gives a court "broad discretion to 'tailor discovery narrowly and dictate the sequence of discovery.'" *Caballero v. Bodega Latina Corp.*, Case No. 2:17-cv-00236-JAD-VCF, 2017 U.S. Dist. LEXIS 116869, at *8 (D. Nev. July 25, 2017) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 599 (1998)). In *Reno v. Western Cab Co.*, Case No.: 2:18-cv-00840-APG-NJK, 2019 U.S. Dist. LEXIS 205346, at * 2 (D. Nev. Nov. 25, 2019), cited numerous times by Plaintiffs in their Opposition, Judge Koppe also noted that "broad discretion is vested in the trial court to permit or deny discovery." *Id.* (quoting *Hallett v. Morgan*, 96 F.3d 732, 751 (9th Cir. 2002)).

Here, Judge Albregts ruled that discovery is permissible regarding complaints received by Frontier that allege any act of discrimination on the basis of race conducted or condoned by a Frontier employee (RFP No. 47), all documents containing information and reports of instances in which Frontier suspected a passenger to be involved in human trafficking and/or sex trafficking (Second RFP Nos. 2-6), and all documents describing any complaints of racial profiling filed with Frontier, the Federal Aviation Administration, the United States Department of Transportation, or with any other regulatory agency (Second RFP No. 7). However, as discussed below, Judge Albregts ruled that inquiries into any and all incidents in which a Frontier passenger "was classified by any Flight Attendant or Pilot as a Threat Level One or a Threat Level Two, and the procedures followed in such events" would not be relevant or proportional to the needs of this case. (ECF No. 83 at 8).

Asking Frontier to produce information on all incidents where flight attendants utilized their threat level training to respond to a potential safety threat would encompass million of circumstances, and none would have any relevance whatsoever to this case.  Every single day flight attendants deal with loud passengers, rude passengers, aggressive passengers, threatening passengers, intoxicated passengers,

hostile passengers, confrontational passengers, and passengers who do not comply with their directives. Flight attendants also deal with physical altercations between passengers and passengers damaging property. Flight attendants are trained to respond to these situations in a way that ensures the safety of the passengers and the flight. It is unfathomable how a flight attendant's efforts to calm an overly intoxicated passenger who is demanding to be served more alcohol has any relevance to this case.

The other deposition topics allowed, in limited inquiry, by Judge Albregts all relate to the circumstances allegedly at issue in this case (Topic 27 - human trafficking; Topic 28 – sex trafficking; Topic 29 – sexual misconduct; Topic 30 – child abuse and/or child molestation; Topic 31 – racial discrimination or racial profiling; Topic 33 – striking of passenger by Frontier employee). Judge Albregts' ruling is reasonable and proportional; it allows Plaintiffs to discover documents related to the types of claims in Topics 27-31 and Topic 33 and to elicit deposition testimony regarding the incidents.

As to Plaintiffs' representation that the Court's ruling "leaves in question whether Frontier will have to provide a witness on the Threat Levels at all in its deposition," it is clear from the Court's ruling that this is not an issue. *See* ECF No. 88 at 11. Frontier has not objected to, and has produced information about, its threat level policies. Further, Frontier has always maintained that Plaintiffs could inquire into its threat level policies, and their application to this case. Indeed, Deposition Topics 14 and 15 seek testimony regarding the contents of Frontier's policies on the subject of "(g) the classification of passengers as Threat Levels One and/or Two, and procedures to be followed upon making such classification(s)." *See* Exhibit G at 4. Frontier did not object to these requests, so Plaintiffs' argument that Frontier will not provide a witness on the Threat Levels is misplaced. Judge Albregts properly limited the scope of deposition testimony on threat levels so that Frontier deponents are not testifying regarding incidents that bear no relation to the instant case. His decision should be affirmed.

## B. A Five-Year Temporal Limitation Is Consistent with the Law.

Plaintiffs object to the Court's ruling limiting the temporal scope of certain discovery requests to five years, whereas Plaintiffs seek a ten-year period. In its Opposition to Plaintiffs' Motion to Compel, Frontier argued that Plaintiffs were not entitled to discrimination complaints for any time period whatsoever; but rather, that limitation was needed. (ECF No. 79). The Court, in its discretion, allowed Plaintiffs to discover prior complaints of racial discrimination and associated incident reports and passenger records over a five-year period, which is in line with limitations placed on discovery by other courts.

In *Razo v. Timec Co.*, Case No. 15-cv-03414-MEJ, 2016 U.S. Dist. 53777, at *6 (N.D. Cal. April 21, 2016), the parties disagreed as to the time period for the plaintiffs' request for prior discrimination complaints against the defendant company so he could prove his discrimination complaint. The defendant wanted to limit production to 14 months, the plaintiff sought five years. *Id.* The court noted that discovery is limited to a "reasonable time" from the alleged discrimination. *Id.* It provided the following string of cases that limited the temporal scope of a discovery request for prior complaints or incidents:

> See, e.g., *Tumbling v. Merced Irr. Dist.*, 262 F.R.D. 509, 515 (E.D. Cal. 2009) (limiting discovery of prior complaints to period beginning **two years** prior to earliest alleged incident, where request covered period beginning approximately ten years before); *Sallis v. Univ. of Minn.*, 408 F.3d 470, 478 (8th Cir. 2005) (affirming limitation on discovery in discrimination action to complaints filed in department in which plaintiff worked **no more than one year before the actions at issue**); *Manning v. General Motors*, 247 F.R.D. 646, 652-53 (D. Kan. 2007) (limiting temporal scope of discovery in employment discrimination lawsuit **to three years prior and two years after October 2005 liability period**; citing additional cases limiting temporal scope to two and a half or three years prior to discriminatory conduct); *Raddatz v. Standard Register Co.*, 177 F.R.D. 446, 448 (D. Minn. 1997) (finding **ten year period of discovery to be unwarranted and excessive** and restricting the time parameters of discovery to include a period beginning **two years prior to plaintiff's termination and two years after his separation from employment**). Accordingly, considering the

factors bearing on proportionality, the Court finds it appropriate to **limit Razo's request to two years before his layoff**.

*Razo v. Timec Co.*, Case No. 15-cv-03414-MEJ, 2016 U.S. Dist. LEXIS 53777, at *6-7 (emphasis added). Both *Razo* and the cases cited therein establish that Judge Albregts' ruling was neither clearly erroneous nor contrary to law. In fact, Judge Albregts' ruling allowed a slightly broader scope than has been allowed by other courts. Therefore, Judge Albregts' ruling as to the five-year temporal limitation should not be set aside.

      **C.**      **The Court's Geographic Limitation Is Appropriate.**

In *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649 (D. Kan. 2004), the court recognized the limitation on the geographic scope of discovery in a non-class action employment discrimination case. In such a case, "the standard for determining the geographic scope of discovery focuses on 'the source of the complained discrimination - - the employing unit or work unit.'" (quoting *Mackey v. IBP, Inc.*, 167 F.R.D. 186, 195 (D. Kan. 1996)). While the instant case is not an employment discrimination case, it is one that alleges racial discrimination. Judge Albregts has allowed Plaintiffs to conduct discovery on all racial discrimination complaints and associated records in the entire continental United States.

    Plaintiffs objected, stating that Frontier flies international flights in additional to domestic flights. However, the subject flight was a domestic flight (Raleigh, North Carolina to Las Vegas, Nevada), so it is reasonable to limit complaints of discrimination to flights within the continental United States (Frontier does not fly to Alaska or Hawaii). Plaintiffs do not provide any case law to support their assertion that the geographic limitation is improper. Rather, they fall back on their argument that "Frontier never asked for the discovery to be limited to the continental United States." ECF No. 88 at 13. As *Owens* shows, courts have applied geographic limitations to cases alleging discrimination. Judge Albregts is vested with the power to set limits on discovery *sua sponte*, even if not requested by a party. *See* Fed. R. Civ. P. 26(b)(1).

For these reasons, Judge Albregts' ruling was neither clearly erroneous nor contrary to law, and therefore should be affirmed.

**D.    The Parent-Child Limitation Is a Proper, Relevant, and Proportional Limit on Discovery.**

To be discoverable under Fed. R. Civ. P. 26(b)(1), information must be "relevant to any party's claim or defense and proportional to the needs of the case..." Plaintiffs are correct that Frontier did not request that the Court limit discovery to those involving a parent-child relationship. However, it is within the power of the Court to *sua sponte* set boundaries on the relevancy and proportionality of discovery requests, and Plaintiffs have not provided any case law to the contrary. Fed. R. Civ. P. 26 gives a court "broad discretion to 'tailor discovery narrowly and dictate the sequence of discovery.'" *Caballero*, Case No. 2:17-cv-00236-JAD-VCF, 2017 U.S. Dist. LEXIS 116869, at *8 (quoting *Crawford-El*, 523 U.S. at 599). In fact, courts have a "duty to pare down overbroad discovery requests under Rule 26(b)(2)." *Id.* (quoting *Rowlin v. Alabama Dep't. of Pub. Safety*, 200 F.R.D. 459, 461 (M.D. Ala. 2001)).

As noted above, this case involves the actions taken by Frontier's flight crew based on their personal observations of the behavior and conduct of Plaintiffs, who are father and son. Plaintiffs allege that Frontier's flight crew was motivated by their belief that a white adult should not be traveling with an African American child.  In his answers to Frontier's Interrogatories, Peter stated that "it is obvious that their behavior is based on animosity toward a white adult traveling in the company of a black child." (*See* Ex. H., Peter DelVecchia's Answer to Frontier's Interrogatory No. 15). Peter went on to state that "A.D. and I have previously encountered behavior that has been verbally abusive because of the color difference and in most cases it has been perpetrated by black people who have expressed racist comments and sometimes threats. Mr. [Warren]'s conclusions appear racist, and it would be helpful to know how many same colored father/son travelers he has assaulted or had arrested." *Id.*  Additionally, in Peter's deposition,

he testified that "it was a black steward who was pissed off and filed the claim." *See* Ex. I, Peter DelVecchia dep. at 178:14-180:21. According to Peter, FA Warren was "pissed off about the fact that a white gentleman had adopted a black child." *Id.*

Based on Plaintiffs' claims and the facts revealed in the record, Judge Albregts' ruling limiting the scope of discovery to the parent-child relationship is not clearly erroneous or contrary to the law.

WHEREFORE, Defendant, Frontier Airlines, Inc. requests that this Court affirm Judge Albregts' May 8, 2020 Ruling (ECF No. 83) in its entirety.

DATED this 5th day of June 2020                    Respectfully submitted,

**FRONTIER AIRLINES, INC.**

*/s/Matthew D. Martin*

Brian T. Maye *(*admitted *pro hac vice*)
Tara Shelke (admitted *pro hac vice*)
Matthew D. Martin (admitted *pro hac vice*)
ADLER MURPHY & McQUILLEN LLP
20 South Clark Street, Suite 2500
Chicago, Illinois 60603
Phone: (312) 345-0700
Email: bmaye@amm-law.com
           tshelke@amm-law.com
           mmartin@amm-law.com

Charles A. Michalek (Nevada Bar No. 5721)
ROGERS, MASTRANGELO, CARVALHO & MITCHEL
700 South Third Street
Las Vegas, Nevada 89101
Phone: (702) 383-3400
Email: cmichalek@rmcmlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2020, I caused the foregoing to be electronically filed with the United States District Court for the District of Nevada using the CM/ECF system.

/s/Matthew D. Martin

Brian T. Maye *(*admitted *pro hac vice*)
Tara Shelke (admitted *pro hac vice*)
Matthew D. Martin (admitted *pro hac vice*)
ADLER MURPHY & McQUILLEN LLP
20 South Clark Street, Suite 2500
Chicago, Illinois 60603
Phone: (312) 345-0700
Email: bmaye@amm-law.com
tshelke@amm-law.com
mmartin@amm-law.com

Charles A. Michalek (Nevada Bar No. 5721)
ROGERS, MASTRANGELO, CARVALHO & MITCHEL
700 South Third Street
Las Vegas, Nevada 89101
Phone: (702) 383-3400
Email: cmichalek@rmcmlaw.com