Timothy R. Titolo, Esq.
Nevada Bar No. 003617
TITOLO LAW OFFICE
9950 West Cheyenne Ave.
Las Vegas, Nevada 89129
(702) 869-5100
tim@titololaw.com

John D. McKay, Esq.
*Admitted pro hac vice*
PARK AVENUE LAW LLC
127 W. Fairbanks Ave. No. 519
Winter Park, Florida 32789
(800) 391-3654
johndmckayatty@gmail.com

**Attorneys for Plaintiffs**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| PETER DELVECCHIA, individually and as next friend of A.D., a Minor, <br><br> Plaintiffs, <br><br> vs. <br><br> FRONTIER AIRLINES, INC., SCOTT WARREN, and REX SHUPE, <br> Defendants. | Case No: 2:19-CV-01322-KJD-DJA <br><br> **SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

For their Second Amended Complaint against Defendants, FRONTIER AIRLINES, INC. ("Frontier"), SCOTT WARREN ("Warren"), and REX SHUPE ("Shupe"), Plaintiffs, PETER DELVECCHIA and A.D. (a minor suing by and through his next friend, Peter DelVecchia), allege the following:

## Jurisdiction

This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. §1331 because it arises under a statute of the United States, specifically 42 U.S.C. §1981, which forbids racial discrimination against any person in the "making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

Plaintiffs further invoke this Court's diversity jurisdiction pursuant to 28 U.S.C. §1332, and/or its supplemental jurisdiction pursuant to 28 U.S.C. §1367(a), over all state law claims also set forth herein, as the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different states, and the state law claims derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally-based claims and causes of action.

This Court has both special and general personal jurisdiction over Frontier because Frontier operates an airline that makes daily scheduled flights into and out of McCarran International Airport in this District, employs hundreds of employees within this District, routinely advertises its services to the citizens of Nevada through a variety of media, owns or leases property within Nevada, has sued and been sued in Nevada courts without contesting personal jurisdiction, and maintains offices and a Registered Agent within Nevada. Moreover, the claims set forth herein all arise out of a scheduled flight operated by Frontier from Raleigh-Durham International Airport in North Carolina to McCarran International Airport in Nevada, on which both Plaintiffs were passengers after contracting for carriage to Nevada with Frontier.

This Court has both special and general personal jurisdiction over the individual Defendants because Defendant Warren resides in Las Vegas, Nevada and is based by

Frontier at McCarran International Airport in Las Vegas, and Shupe is also based by Frontier at McCarran Airport, even though he is a resident of Utah, and because their actions complained of herein were undertaken at least partially within Nevada.

Venue

Venue is proper in this District pursuant to 28 U.S.C. §1391, subsections (b)(1), (b)(2), and (c)(2) because the individual Defendants reside in, or are based by Frontier in, Nevada, because Frontier is subject to this Court's personal jurisdiction and is deemed by Section 1391(c)(2) to reside in any judicial district in which it is subject to the Court's personal jurisdiction with respect to this civil action, and because a substantial part of the events or omissions giving rise to the claims occurred in this District, at the McCarran International Airport in Las Vegas, Nevada and *en route* thereto over land contained in this District.

The Parties

1.     Plaintiff Peter DelVecchia ("Peter") is an individual citizen of Hillsborough, North Carolina. He is a widower and a single parent. At the time of the events described herein, Peter was 55 years old. His race is Caucasian.

2.     Plaintiff A.D. ("A.D.") is also an individual citizen of Hillsborough, North Carolina. He is the adopted son of Peter, and has lived with Peter and Peter's late wife for most of his life. At the time of the events described herein, A.D. was 12 years old. His race is African-American.

3.     Frontier is a Colorado corporation that has its principal place of business in Denver, Colorado. Frontier operates a low-cost airline that, according to its website, conducts scheduled passenger flights between several cities in the United States, as well as

to and from the countries of Canada, Mexico, Dominican Republic and Jamaica. *See,* https://flights.flyfrontier.com/en/sitemap/country-to-country-flights/page-1.[1]

4.     Defendant Warren is a male individual who was, at the time of the events described herein, employed as a flight attendant by Frontier. He worked as a Flight Attendant on the flight that is the subject of this Second Amended Complaint. He falsely identified himself to Plaintiffs only as "Kevin," refusing to provide his surname to them. He has never been known as Kevin; his given name is Scott. He is a resident of Las Vegas, Nevada.

5.     Defendant Shupe is a male individual who was, at the time of the events described herein, employed as a pilot by Frontier. He worked as the Captain on the flight that is the subject of this Second Amended Complaint. He is based by Frontier in Las Vegas, Nevada. He is a resident of Kaysville, Utah.

<u>Particulars of the Claims</u>

6.     On March 28, 2019, Plaintiffs were passengers aboard Frontier's Flight 2067 from Raleigh-Durham International Airport in North Carolina to McCarran International Airport in Las Vegas, Nevada. Peter had purchased the tickets for both Plaintiffs from Frontier, for the purpose of taking A.D. on a hiking trip in Death Valley National Park during A.D.'s spring break from school. Plaintiffs were seated in adjacent seats on the aircraft. A.D. removed his shoes, and proceeded to fall asleep.

7.     During the nearly 4.5-hour flight, Peter fell asleep with his head resting on the back of the seat in the row ahead of his. He was abruptly awakened when Warren punched, shoved and/or hit him violently at the base of his skull and on the back of his neck.

---

[1] Frontier's website also lists Puerto Rico as a "country" that the airline flies to and from. The Commonwealth of Puerto Rico has been a territory of the United States since the Treaty of Paris came into effect on April 11, 1899.

The blow by Warren was, or the blows were, so forceful as to cause Peter to suffer a concussion. A witness to the event stated that Warren was "on a specific mission to come to our seats to move A.D. . . . that seemed rather unprompted." The same witness stated that Warren pushed him out of the way "aggressively" to get to Peter and A.D.

8.      Warren then made false accusations against Peter including accusations that Peter was engaging in illegal human trafficking and illegal sexual assault. The aforesaid physical violence and accusations were based on Warren's belief that Peter, who is white, should not be traveling with A.D., who is black. Upon information and belief, Warren had discussed such beliefs previously with the other Flight Attendants (*i.e.,* Anna Bond, Chelsie Bright Sakurada and Amanda Nickel) and also with Shupe and the flight's co-pilot, Shawn Mullin, and all of them concurred in Warren's belief that Peter traveling with A.D. and showing parental affection toward A.D. constituted an improper "situation" that made them all "feel uncomfortable" and needed to be addressed by them with certain actions that included, without limitation, placing the two passengers under constant surveillance, taking A.D. out of his seat and moving him to the rear of the aircraft, effectively jailing him there, and calling ahead to have police and the FBI detain Peter and A.D. upon their arrival in Las Vegas.

9.      Warren forced A.D. to leave his seat and the company of his father, without permitting him to put his shoes back on, and took him against his will to the rear of the aircraft, where he forced him to sit in a seat in the back row of the aircraft without his shoes and refused to allow him to return to his father for the remainder of the flight, effectively jailing A.D. in the rear of the aircraft for the remaining several hours of the flight. A.D. asked repeatedly to be allowed to return to the seat beside his father, but Warren, acting in concert with, and with the knowledge and approval of, the other Frontier employees, including,

without limitation, Shupe, would not allow A.D. to leave the seat in which Warren had placed him. In fact, Warren, acting in concert with, and with the knowledge and approval of the other Frontier employees, including, without limitation, Shupe, all of whom were acting in the course of their employment by Frontier, arranged for a large male "able-bodied passenger" to occupy the aisle seat between A.D. and the aisle of the aircraft, effectively blocking A.D's ability to leave the seat in which Warren had placed him for the duration of the flight. Warren also blocked Peter from walking to the rear of the aircraft to speak with A.D., and laughed mockingly at his inability to reach his son. Warren made statements loud enough for other passengers to hear that accused Peter of molesting A.D. After the flight landed, Defendants continued to detain A.D. and would not allow him to return to his father. Defendants ensured that A.D. was the last passenger to exit the aircraft, after they had made certain that Peter had been placed into police custody and escorted away from the aircraft. They did not return A.D.'s shoes to him until after he exited the aircraft, forcing him to walk off the aircraft in his socks.

10.    Defendants' detention of A.D. in the last row of the aircraft, without his shoes and separated from his father, was intentional, or, in the alternative, was negligent and done with reckless disregard for Plaintiffs' rights. In addition, it was not consented to by A.D. or Peter, but was instead against their wills, was unlawful, and was without any legitimate basis in aircraft safety or any other purpose recognized in the Federal Aviation Regulations. It amounted to false imprisonment of A.D. for several hours.

11.    Upon information and belief, Shupe, the Captain on the flight, also participated in the unlawful removal of A.D. from his father and his unlawful detention in the rear of the aircraft, by suggesting, authorizing and arranging for those actions to be carried out by Warren, and designating Peter as a "Threat Level" based on what Warren had

told him and without conducting any investigation to see whether Warren's and the other Flight Attendants' accusations concerning Peter were correct, such as questioning Peter and A.D. At all times, Shupe was acting within the scope of his employment with Frontier, and Frontier's management knew about and sanctioned Shupe's conduct. Although Shupe and the co-pilot did ask Frontier's management for information about Peter and A.D., Frontier's management negligently failed to provide Peter and A.D.'s names to the pilots, which would have shown that they are related, and further condoned the separation of A.D. from Peter and the arrangements for law enforcement officers to meet the plane and detain them. Frontier's management did these things while knowing that no reasonable investigation had been done by its employees into the allegations of misconduct, or with reckless disregard of whether or not a reasonable investigation had been conducted by its employees.

12.     While he and the other Frontier employees were in the course of detaining A.D., Warren intentionally and/or negligently or recklessly sexually assaulted A.D. without A.D.'s or Peter's consent in an offensive manner, by placing his hand over A.D.'s body in the close vicinity of A.D.'s genital area, either touching that area or hovering just above it and leading A.D. to believe that he was going to touch him, causing A.D. (and later, Peter, when he discovered what had occurred) to suffer great fear, anxiety, mental anguish and embarrassment which has continued beyond the date of the occurrence.

13.     Defendants and the other Frontier employees aboard the flight collaboratively decided that their false accusations needed to be relayed to law enforcement officials in Las Vegas, including the Las Vegas Metropolitan Police Department ("LVMPD") and the Federal Bureau of Investigation ("FBI"). As a group, Defendants had no basis on which to suggest that Peter was engaging in human trafficking or unlawful sexual activities other than their shared belief that Peter, a white adult man, should not be traveling in the company of

A.D., a black male child, because it was "unusual" and made them "feel uncomfortable." They refused to acknowledge that Peter and A.D. are father and son, despite being told so by both Peter and A.D. after they were separated from each other. They took no action to confirm what Peter's and A.D.'s surname is, despite the fact that could have easily been determined by simply asking to see their boarding passes and/or identification. Despite conducting no investigation and simply relying on Warren's baseless assertions, Shupe, with the assistance of other employees of Frontier, arranged for representatives of the LVMPD and the FBI to meet the flight at its arrival gate at McCarran Airport, in full view of other passengers of the flight and other persons inside the airport terminal. The false accusations of criminal behavior, manifested by the apprehension of Peter and A.D. by law enforcement personnel at the gate area where others could see, which had been arranged by Defendants, were made intentionally or, in the alternative, were made negligently and with reckless disregard for Peter and A.D.'s rights and reputations. Defendant Warren made the false accusations aloud on the aircraft, in the presence of other passengers, and the arrangements made by all of the Frontier employees to have Peter and A.D. detained in the airport by law enforcement officers within sight of other passengers in the airport terminal also defamed Peter and A.D. by falsely suggesting that they had committed, or had been parties to, despicable and criminal acts.

14.     As Peter was deplaning, Warren said to him in a loud voice and mocking tone, within the earshot of several other passengers who were also deplaning at the time, to "Go on outside, the FBI is waiting for your ass." That comment was meant to suggest, and did falsely suggest, that Peter had committed a federal crime onboard the flight and that A.D. had been either a willing or unwilling participant in such a crime. Warren had previously yelled on the crowded plane, also within earshot of other passengers, that Peter had touched

A.D. inappropriately, to which Peter had responded that he (Peter) had been asleep and could not have done so. Warren had responded, in a voice loud enough for other passengers to hear, "Well, we're going to have to let the police sort that out." That comment, together with Warren's physical separation of Peter from A.D., strongly suggested to the rest of the passengers in the cabin that Peter had committed a despicable crime in which A.D. had been a participant. Warren also laughed mockingly at Peter, also in the plain view and earshot of other passengers, causing distress to Peter during an already highly stressful situation caused by Defendants. In addition, Warren told A.D. that Peter had sexually molested him, which was false and was known by Warren to be false when he said it. Warren's actions were intentional, or in the alternative, were negligent, and were done with malice and reckless disregard for Peter and A.D.'s rights and reputations.

15.    All of the actions by the individual Defendants and the other Flight Attendants and co-pilot described herein were conducted by them while they were under the control of Frontier and in the scope of their employment by Frontier, and Frontier's managerial staff sanctioned and ratified their actions, both during the flight and afterward. To date, Frontier has not disciplined or reprimanded its employees in any manner whatsoever, and those employees have testified that they understand Frontier approves of their conduct during the flight. Frontier is liable for the acts of its employees under the doctrine of *respondeat superior*.

16.    In addition, prior to the flight, Frontier's management made decisions to require or suggest that Frontier's employees, including its Flight Attendants and pilots, look for and report instances of suspected human trafficking and sexual misconduct among Frontier's customers, and management provided those employees with lists of certain factors to look for as being evidence of human trafficking and sexual misconduct, both in certain

"Must Read" documents published to the employees and in materials incorporated into Frontier's official Flight Attendant Manual and Flight Operations Manuals. Those documents and materials instructed employees to report suspicions of conduct meeting the criteria of the documents and materials to law enforcement officers. However, Frontier failed to provide any training to its employees on how to apply those criteria in a racially-neutral manner so as to avoid making false accusations of trafficking and/or sexual misconduct that were based on employees' racially-biased decisions that certain passengers traveling together did not look like they should be together, did not look like members of the same family, and/or looked "unusual." Upon information and belief, Frontier made the decisions not to provide such training to its employees intentionally, knowing that it was likely to result in discrimination when applied to groups of passengers of diverse racial and ethnic backgrounds. In the alternative, it acted negligently by failing to provide the training, despite the fact that it was reasonably foreseeable that employees would act on the instructions given to them by Frontier in ways that were not racially neutral and would violate the protected civil rights of, and otherwise cause harm to, Frontier passengers, including Plaintiffs. In either event, Frontier acted maliciously and recklessly in fostering a situation that encouraged its employees to single out passengers such as Plaintiffs and discriminate against them, preventing them from the enjoyment of all benefits, privileges, terms, and conditions of their contractual relationship with Frontier, based on their races or the color of their skins.

17.     In addition, Frontier provided its Flight Attendants and pilots with certain information concerning "Threat Levels" to be applied to certain passenger conduct, and instructions on how to react to conduct that they designated as being within the criteria for the "Threat Levels." Again, Frontier failed to provide training to its employees on how to apply the criteria for the "Threat Levels" in a racially-neutral manner so as to avoid singling

out passengers such as Plaintiffs for discriminatory treatment and falsely accusing them of acting in ways that the employees feel constitute the "Threat Levels" based on the passengers' races or the color of their skins. Upon information and belief, Frontier made the decisions not to provide such training to its employees intentionally. In the alternative, it acted negligently by failing to provide the training, despite the fact that it was foreseeable that employees would act on the instructions given to them by Frontier in ways that were not racially neutral and would violate the protected civil rights of, and cause other harm to, its passengers, including Plaintiffs. In either event, Frontier acted maliciously and recklessly in fostering a situation that encouraged its employees to single out passengers such as Plaintiffs and discriminate against them based on their races and/or the color of their skins.

18.     Defendants' actions described herein amounted to willful and wanton and malicious conduct sufficient to impose punitive damages on all Defendants, jointly and severally, under the standards applicable to federal law. In addition, Defendants' actions described herein were based on oppression, fraud and/or malice and reckless indifference to Plaintiffs' legal rights sufficient to impose punitive damages on all Defendants, jointly and severally, under the standards applicable to state law.

19.     As the result of all Defendants' actions, Plaintiffs suffered serious physical and mental injuries including, but not limited to, a concussion, other violations of the person such as Warren's placing his hand on or almost on A.D.'s crotch, invasions of their privacy, mental anguish and anxiety, extreme emotional distress, cognitive loss, and damage to their reputations. In particular, Peter has suffered from heightened anxiety, stress, headaches and memory loss since the flight, as well as experiencing nausea and dizziness for several days immediately after the flight. A.D. has suffered from post-traumatic stress disorder (PTSD), sleeplessness, nightmares, nausea and difficulties at school since the flight, and both Peter

and A.D. have experienced heightened sensitivity and nervousness when they are together in public, as a result of what occurred to them on Flight 2067. All of those harms were foreseeable consequences of Defendants' actions.

## COUNT I: COMPENSATORY AND PUNITIVE DAMAGES
## AND ATTORNEYS' FEES PURSUANT TO 42 U.S.C. §1981

20.     Plaintiffs repeat, reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 19 of this Second Amended Complaint as though such allegations were fully set forth herein.

21.     Plaintiffs have the right under 42 U.S.C. §1981 to be free from discrimination based on their races in the "making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship," including their contractual relationship with Frontier as passengers aboard its Flight 2067 on March 28, 2019.

22.     The individual Defendants and Frontier (through its employees) acted out of racial animus in concluding that Plaintiffs should not be travelling together, in deciding that their appearance was "unusual" and made them feel uncomfortable, in concluding that their joint travel and father-son expressions of affection must be evidence of human trafficking or sexual deviance, in striking Peter and detaining and assaulting or committing battery on A.D., in making false accusations against them, and in otherwise denying Plaintiffs their federally-protected right to enjoy the benefits and privileges of their contractual relationship with Frontier during the flight. Frontier also violated Plaintiffs' civil rights by failing to provide its employees training on how to implement Frontier's policies in a racially neutral manner and fostering an environment in which discrimination by its employees based on its customers' races is permitted and condoned. Their discriminatory and humiliating treatment of Plaintiffs was utterly unacceptable in civilized society and was an affront to the values

that society expects in the equal treatment of all persons, especially those who travel aboard common carriers that are licensed by the United States government and that enjoy the privileges of operating commercial flights in federal airspace.

23.     Defendants are liable to Plaintiffs, jointly and severally, for compensatory damages under 42 U.S.C. §1981 for their intentional acts and omissions that discriminated against Plaintiffs based on their races and caused Plaintiffs to sustain and endure severe emotional distress, serious physical injuries, shock, embarrassment and utter humiliation.

24.     Defendants are also liable to Plaintiffs, jointly and severally, for punitive damages under 42 U.S.C. §1981 because their discriminatory conduct was based on malice toward Plaintiffs and/or reckless indifference to Plaintiffs' legal rights.

25.     Defendants' conduct as described hereinabove has caused Plaintiffs to incur attorneys' fees and costs, and will continue to cause them to incur such fees and costs until this action has been resolved, and Plaintiffs are entitled to recover those attorneys' fees and costs in accordance with applicable federal laws and rules of procedure following a judgment on the merits.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages in an amount to be determined by the jury at trial, for punitive damages in an amount to be determined by the jury at trial, and for their attorneys' fees, costs, pre-judgment and post-judgment interest and such other and further relief as the Court shall deem just and proper.

## COUNT II: COMPENSATORY AND PUNITIVE DAMAGES
## PURSUANT TO STATE LAW FOR INTENTIONAL
## INFLICTION OF EMOTIONAL DISTRESS

26.     Plaintiffs repeat, reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 19 of this Second Amended Complaint as though such allegations were fully set forth herein.

27.     The aforesaid acts and omissions of Defendants including, without limitation, placing Peter and A.D. under surveillance because they are of different races, falsely accusing Peter of human trafficking and sexual misconduct, striking Peter on the head and neck, removing A.D. from his seat and jailing him in the rear of the aircraft, touching or pretending to touch A.D. in the area of his genitals, refusing to allow A.D. to go back to his seat and Peter to speak with A.D., mocking and shouting at Peter and suggesting that he was a criminal, and arranging for police and FBI to take Peter and A.D. into custody when the plane landed, in full view of other passengers and persons in the airline terminal, were outrageous and utterly intolerable in civilized society, were malicious and/or were conducted with reckless indifference to the likelihood that emotional distress would result, and were intentional toward Plaintiffs and intended to cause them serious emotional distress. They therefore constitute the tort of intentional infliction of emotional distress.

28.     Defendants are liable to Plaintiffs, jointly and severally, for compensatory damages under applicable state laws for their intentional acts and omissions that caused Plaintiffs to sustain and endure severe emotional distress.

29.     Defendants are also liable to Plaintiffs, jointly and severally, for punitive damages under applicable state laws because their conduct was based on oppression, fraud and/or malice and reckless indifference to Plaintiffs' legal rights. Frontier is liable for punitive damages for its own conduct that was based on oppression, fraud and/or malice

and reckless indifference to Plaintiffs' legal rights, and it is also liable for punitive damages for the actions of its employees because: (i) its officers and management knew its employees were not sufficiently trained on how to apply its trafficking, sexual misconduct and Threat Levels procedures in racially-neutral manners, and it further knew that the lack of such training was likely to result in harmful conduct to passengers; (ii) its officers and management authorized and ratified its employees' conduct, by instructing them to make decisions based on its published criteria for spotting trafficking, sexual misconduct and Threat Levels, by approving of the physical separation of Plaintiffs based on insufficient evidence and no reasonable investigation, and it has not disciplined its employees for their reckless application of those procedures; and (iii) it is personally guilty of oppression, fraud and malice, express or implied, against Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages in an amount to be determined by the jury at trial, for punitive damages in an amount to be determined by the jury at trial, and for their costs, pre-judgment and post-judgment interest and such other and further relief as the Court shall deem just and proper.

### COUNT III: COMPENSATORY AND PUNITIVE DAMAGES PURSUANT TO STATE LAW FOR NEGLIGENCE

30.     Plaintiffs repeat, reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 19 of this Second Amended Complaint as though such allegations were fully set forth herein.

31.     Frontier is a common carrier and therefore is bound to use the utmost care and diligence to secure the safety of its passengers, including Plaintiffs, until they have reached a place outside the sphere of any activity of the carrier which might constitute a

hazard to them. All of the events described in this Second Amended Complaint occurred within the aforesaid "sphere of . . . activity of the carrier."

32.     Frontier's employees, including, without limitation, Warren and Shupe, were also bound to use the utmost care and diligence to secure the safety of Frontier's passengers, including Plaintiffs. In the alternative, they owed Plaintiffs a duty of reasonable care to prevent harm to them.

33.     Moreover, Shupe, as the Captain of Flight 2067 and the pilot in command, was directly responsible for, and the final authority as to, the operation of the aircraft under the Federal Aviation Regulations. Pursuant to those regulations, he had a duty not to operate the aircraft in a careless or reckless manner so as to endanger the life or property of another.

34.     The aforesaid acts and omissions of Defendants, including, without limitation, placing Peter and A.D. under surveillance because they are of different races, falsely accusing Peter of human trafficking and sexual misconduct, striking Peter on the head and neck, removing A.D. from his seat and jailing him in the rear of the aircraft, touching or pretending to touch A.D. in the area of his genitals, refusing to allow A.D. to go back to his seat and Peter to speak with A.D., mocking and shouting at Peter and suggesting that he was a criminal, and arranging for police and FBI to take Peter and A.D. into custody when the plane landed, in full view of other passengers and persons in the airline terminal, breached the aforesaid duties of care and were the proximate causes of injuries and damages to Peter and A.D., as described herein, including, without limitation, emotional damages.

35.     As direct and proximate results of Warren striking Peter in the head and neck, Warren either touching A.D. in the area of his genitals or pretending to do so, and the

serious emotional distress caused by those and the other actions detailed in Paragraph 34 and previously in this Second Amended Complaint, Peter and A.D. have suffered the physical and mental ailments described in Paragraph 19 such as Peter's heightened anxiety, stress, concussion, headaches and memory loss, and nausea and dizziness, A.D.'s post-traumatic stress disorder (PTSD), sleeplessness, nausea, nightmares, and difficulties at school since the flight, and both Plaintiffs' heightened sensitivity and nervousness when they are together in public, as a result of what occurred to them on Flight 2067.

36.    Defendants are liable to Plaintiffs, jointly and severally, for compensatory damages under applicable state laws for their negligent acts and omissions that caused Plaintiffs to sustain and endure their physical injuries and severe emotional distress.

37.    Defendants are also liable to Plaintiffs, jointly and severally, for punitive damages under applicable state laws because their conduct was based on oppression, fraud and/or malice and reckless indifference to Plaintiffs' legal rights. Frontier is liable for punitive damages for its own conduct that was based on oppression, fraud and/or malice and reckless indifference to Plaintiffs' legal rights, and it is also liable for punitive damages for the actions of its employees because: (i) its officers and management knew its employees were not sufficiently trained on how to apply its trafficking, sexual misconduct and Threat Levels procedures in racially-neutral manners, and it further knew that the lack of such training was likely to result in harmful conduct to passengers; (ii) its officers and management authorized and ratified its employees' conduct, by instructing them to make decisions based on its published criteria for spotting trafficking, sexual misconduct and Threat Levels, by approving of the physical separation of Plaintiffs based on insufficient evidence and no reasonable investigation, and it has not disciplined its employees for their

reckless application of those procedures; and (iii) it is personally guilty of oppression, fraud and malice, express or implied, against Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages in an amount to be determined by the jury at trial, for punitive damages in an amount to be determined by the jury at trial, and for their costs, pre-judgment and post-judgment interest and such other and further relief as the Court shall deem just and proper.

### COUNT IV: COMPENSATORY AND PUNITIVE DAMAGES PURSUANT TO STATE LAW FOR FALSE IMPRISONMENT/UNLAWFUL DETENTION

38.     Plaintiffs repeat, reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 19 of this Second Amended Complaint as though such allegations were fully set forth herein.

39.     The aforesaid acts of Defendants, specifically taking A.D. away from his father and forcing him to sit in the last row of the aircraft under constant guard and refusing his requests to be allowed to return to his father, constituted false imprisonment and/or unlawful detention of A.D., which caused mental anguish to both A.D. and Peter.

40.     Defendants are liable to Plaintiffs, jointly and severally, for compensatory damages under applicable state laws for their intentional acts and omissions that falsely imprisoned and unlawfully detained A.D., and that caused Plaintiffs to sustain and endure severe emotional distress.

41.     Defendants are also liable to Plaintiffs, jointly and severally, for punitive damages under applicable state laws because their conduct was based on oppression, fraud and/or malice and reckless indifference to Plaintiffs' legal rights. Frontier is liable for punitive damages for its own conduct that was based on oppression, fraud and/or malice and

reckless indifference to Plaintiffs' legal rights, and it is also liable for punitive damages for the actions of its employees because: (i) its officers and management knew its employees were not sufficiently trained on how to apply its trafficking, sexual misconduct and Threat Levels procedures in racially-neutral manners, and it further knew that the lack of such training was likely to result in harmful conduct to passengers; (ii) its officers and management authorized and ratified its employees' conduct, by instructing them to make decisions based on its published criteria for spotting trafficking, sexual misconduct and Threat Levels, by approving of the physical separation of Plaintiffs based on insufficient evidence and no reasonable investigation, and it has not disciplined its employees for their reckless application of those procedures; and (iii) it is personally guilty of oppression, fraud and malice, express or implied, against Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages in an amount to be determined by the jury at trial, for punitive damages in an amount to be determined by the jury at trial, and for their costs, pre-judgment and post-judgment interest and such other and further relief as the Court shall deem just and proper.

### COUNT V: COMPENSATORY AND PUNITIVE DAMAGES PURSUANT TO STATE LAW FOR BATTERY AND SEXUAL ASSAULT

42.     Plaintiffs repeat, reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 19 of this Second Amended Complaint as though such allegations were fully set forth herein.

43.     The aforesaid acts of Warren, including striking Peter and placing his hand on or nearly on A.D.'s crotch area, constituted the tort of battery upon Peter and battery and/or sexual assault upon A.D., were malicious and/or were conducted with reckless indifference to the likelihood that physical injury and emotional distress would result, and

Second Amended Complaint and Demand for Jury Trial

were intentional toward Plaintiffs and intended to cause them physical injury and severe emotional distress. They were done while Warren was under the control of Frontier and within the scope of Warren's employment with Frontier. Frontier hired Warren and trained him for his duties. Frontier is therefore liable for the acts of Warren under the doctrine of *respondeat superior*.

44.     Defendants Warren and Frontier are liable to Plaintiffs, jointly and severally, for compensatory damages under applicable state laws for their intentional acts and omissions that caused Plaintiffs to sustain and endure physical injuries and severe emotional distress.

45.     Defendants are also liable to Plaintiffs, jointly and severally, for punitive damages under applicable state laws because their conduct was based on oppression, fraud and/or malice and reckless indifference to Plaintiffs' legal rights. Frontier is liable for punitive damages for its own conduct that was based on oppression, fraud and/or malice and reckless indifference to Plaintiffs' legal rights, and it is also liable for punitive damages for the actions of its employees because: (i) its officers and management knew its employees were not sufficiently trained on how to apply its trafficking, sexual misconduct and Threat Levels procedures in racially-neutral manners, and it further knew that the lack of such training was likely to result in harmful conduct to passengers; (ii) its officers and management authorized and ratified its employees' conduct, by instructing them to make decisions based on its published criteria for spotting trafficking, sexual misconduct and Threat Levels, by approving of the physical separation of Plaintiffs based on insufficient evidence and no reasonable investigation, and it has not disciplined its employees for their reckless application of those procedures; and (iii) it is personally guilty of oppression, fraud and malice, express or implied, against Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment against Defendants Warren and Frontier, jointly and severally, for compensatory damages in an amount to be determined by the jury at trial, for punitive damages in an amount to be determined by the jury at trial, and for their costs, pre-judgment and post-judgment interest and such other and further relief as the Court shall deem just and proper.

### COUNT VI: COMPENSATORY AND PUNITIVE DAMAGES PURSUANT TO STATE LAW FOR DEFAMATION

46.     Plaintiffs repeat, reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 19 of this Second Amended Complaint as though such allegations were fully set forth herein.

47.     The aforesaid acts of Defendants resulted in the unauthorized publication to third parties (other passengers of the flight and persons in the airport terminal) of false and defamatory accusations that Peter had committed various crimes and unlawful sexually deviant acts, and that A.D. was a participant in, or victim of, sexual deviance, human trafficking and/or sex trafficking, with the result that they caused presumed injury to Peter's and A.D's reputations and constituted defamation *per se*. In addition, they were malicious and/or were conducted with reckless indifference to the likelihood that emotional distress and damage to reputation would result, and were intentional toward Peter and A.D. and intended to cause them severe emotional distress and damage to reputation. They were done while the individual employees, including, without limitation, Defendants Warren and Shupe, were under the control of Frontier and within the scope of their employment with Frontier. Frontier is therefore liable for their acts under the doctrine of *respondeat superior*.

48.     Defendants are liable, jointly and severally, to Peter and A.D. for compensatory damages under applicable state laws for their intentional acts and omissions

that caused Peter and A.D. to sustain and endure severe emotional distress and damage to their reputations.

49.    Defendants are also liable to Plaintiffs, jointly and severally, for punitive damages under applicable state laws because their conduct was based on oppression, fraud and/or malice and reckless indifference to Plaintiffs' legal rights. Frontier is liable for punitive damages for its own conduct that was based on oppression, fraud and/or malice and reckless indifference to Plaintiffs' legal rights, and it is also liable for punitive damages for the actions of its employees because: (i) its officers and management knew its employees were not sufficiently trained on how to apply its trafficking, sexual misconduct and Threat Levels procedures in racially-neutral manners, and it further knew that the lack of such training was likely to result in harmful conduct to passengers; (ii) its officers and management authorized and ratified its employees' conduct, by instructing them to make decisions based on its published criteria for spotting trafficking, sexual misconduct and Threat Levels, by approving of the physical separation of Plaintiffs based on insufficient evidence and no reasonable investigation, and it has not disciplined its employees for their reckless application of those procedures; and (iii) it is personally guilty of oppression, fraud and malice, express or implied, against Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment against Defendants Warren and Frontier, jointly and severally, for compensatory damages in an amount to be determined by the jury at trial, for punitive damages in an amount to be determined by the jury at trial, and for their costs, pre-judgment and post-judgment interest and such other and further relief as the Court shall deem just and proper.

## COUNT VII: COMPENSATORY AND PUNITIVE DAMAGES
## PURSUANT TO STATE LAW FOR BYSTANDER NEGLIGENT
## INFLICTION OF EMOTIONAL DISTRESS

50.     Plaintiffs repeat, reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 19 of this Second Amended Complaint as though such allegations were fully set forth herein.

51.     Defendants' actions toward Peter aboard Flight 2067 resulted in harm to Peter as detailed in the Paragraphs above.

52.     Peter's son, A.D. was in the close vicinity of Peter when those injuries occurred, and witnessed them.

53.     As a result of witnessing the injuries to Peter, A.D. suffered severe emotional distress as detailed in the Paragraphs above.

54.     Defendants' actions toward A.D. aboard Flight 2067 resulted in harm to A.D. as detailed in the Paragraphs above.

55.     A.D.'s father, Peter, was in the close vicinity of A.D. when those injuries occurred, and witnessed them.

56.     As a result of witnessing the injuries to A.D., Peter suffered severe emotional distress as detailed in the Paragraphs above.

57.     Defendants are liable, jointly and severally, to Peter and A.D. for compensatory damages under applicable state laws for negligently causing each of them to suffer severe emotional distress at witnessing the harm to a close relative.

58.     Defendants are also liable to Plaintiffs, jointly and severally, for punitive damages under applicable state laws because their conduct was based on oppression, fraud and/or malice and reckless indifference to Plaintiffs' legal rights. Frontier is liable for punitive damages for its own conduct that was based on oppression, fraud and/or malice and

reckless indifference to Plaintiffs' legal rights, and it is also liable for punitive damages for the actions of its employees because: (i) its officers and management knew its employees were not sufficiently trained on how to apply its trafficking, sexual misconduct and Threat Levels procedures in racially-neutral manners, and it further knew that the lack of such training was likely to result in harmful conduct to passengers; (ii) its officers and management authorized and ratified its employees' conduct, by instructing them to make decisions based on its published criteria for spotting trafficking, sexual misconduct and Threat Levels, by approving of the physical separation of Plaintiffs based on insufficient evidence and no reasonable investigation, and it has not disciplined its employees for their reckless application of those procedures; and (iii) it is personally guilty of oppression, fraud and malice, express or implied, against Plaintiffs.

**PLAINTIFFS DEMAND TRIAL BY JURY.**

DATED this 9th day of June, 2020.

PARK AVENUE LAW LLC

*s/ John D. McKay*
John D. McKay, Esq.
*Admitted pro hac vice*
127 W. Fairbanks Ave. No. 519
Winter Park, Florida 32789
(800) 391-3654
johndmckayatty@gmail.com

TITOLO LAW OFFICE
Timothy R. Titolo, Esq.
Nevada Bar No. 003617
9950 West Cheyenne Ave.
Las Vegas, Nevada 89129
(702) 869-5100
tim@titololaw.com

*Attorneys for Plaintiffs*