Timothy R. Titolo, Esq.
Nevada Bar No. 003617
TITOLO LAW OFFICE
9950 West Cheyenne Ave.
Las Vegas, Nevada 89129
(702) 869-5100
tim@titololaw.com

John D. McKay, Esq.
*Admitted pro hac vice*
PARK AVENUE LAW LLC
127 W. Fairbanks Ave. No. 519
Winter Park, Florida 32789
(800) 391-3654
johndmckayatty@gmail.com

***Attorneys for Plaintiffs***

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| PETER DELVECCHIA, *et al.*, | ) | **Case No: 2:19-CV-01322-KJD-DJA** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| vs. | ) | **PLAINTIFFS' OPPOSITION TO** |
| | ) | **DEFENDANTS' MOTION TO DISMISS** |
| | ) | **COUNTS III AND VII OF THE** |
| FRONTIER AIRLINES, INC., *et al.*, | ) | **SECOND AMENDED COMPLAINT** |
| Defendants. | ) | **(ECF No. 108)** |
| | ) | |

Plaintiffs, Peter DelVecchia ("Peter") individually and as next friend of A. D., a minor, by counsel, hereby file this Opposition to Defendants' Motion to Dismiss Counts III and VII of the Second Amended Complaint (ECF No. 108). For the reasons set forth below, the Motion should be denied.

ARGUMENT

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS/ 2ND AMENDED COMPLAINT
Page 1 of 15

I.      **Applicable Law on a Motion to Dismiss**

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

The Ninth Circuit has interpreted *Iqbal's* requirements as a two-step inquiry:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

II.     **Count III of the Second Amended Complaint States a Plausible Claim for Negligence**

Ironically, after filing a Motion to Strike (ECF No. 107) complaining about "10 pages" of added negligence allegations that they argue would somehow "confuse and recast prior allegations this Court has already dismissed" (*id.* at 6),[1] and claiming that the new negligence allegations would require Plaintiffs to "be re-deposed to examine the new theories espoused," (*id.* at 7), despite the fact

---

[1] The only allegations the Court dismissed were those of the false light invasion of privacy claim, which was entirely removed from the Second Amended Complaint, and the original NIED claim, which the Court explicitly dismissed "with leave to amend," *see* Order of March 24, 2020 (ECF No. 67), at 5, thus Defendants should have anticipated that those allegations would be "recast."

that the original negligent infliction of emotional distress claim was still active when Frontier took the depositions of both Plaintiffs, and its counsel (who now represent all of the Defendants) neglected to ask a single question about it to either Plaintiff—and failed to follow up when Peter DelVecchia testified in his deposition that the Captain and First Officer were both guilty of "negligence" for failing "to exercise due care"—Defendants filed the instant motion arguing that Plaintiffs have only alleged "the same alleged intentional conduct that provides the basis for the existing claims in Plaintiffs' First Amended Complaint." ECF No. 107, at 5. The invalidity of that argument is demonstrated not only by its inconsistency with Defendants' argument in their Motion to Strike, but also by the text of the allegations themselves.

The allegations of the Second Amended Complaint (ECF No. 106) describe in detail a situation where a father and son (*i.e.*, Plaintiffs) boarded Defendant Frontier's flight (*id.* at ¶ 6), sat in adjacent seats (*id.*), fell asleep (¶¶ 6-7), and were, unbeknownst to them for much of the flight, made the subjects of irrational and unfounded accusations by literally all of Frontier's employees aboard the flight, which accusations were approved of by additional Frontier employees who were monitoring the flight from the airline's ground-based operations center and destination airport. (¶¶ 8-9, 11, 13) Initially, the accusations centered on suspicion of human trafficking, based on a list of factors that Frontier had instructed its employees to watch for through earlier issuance of a "Must Read" document, but on which it had neglected to provide them with any training on how to implement the factors in a racially-neutral manner. (¶ 16) As a foreseeable result of that neglect in training, the employees acted on their own racial biases and determined that Plaintiffs were "a situation" because they looked "unusual" and looked like they should not be traveling together. (*Id.*) That determination was made because Plaintiff Peter is white and Plaintiff A.D. is black. (*Id.*) The allegations of the Second Amended Complaint describe how the flight attendants notified the Captain

and First Officer in the cockpit that Plaintiffs made them "feel uncomfortable." (¶ 13) The allegations then describe the conduct of the Captain and First Officer, who received that information from the flight attendants and then based their responses on certain written "Threat Levels" that were contained in manuals that Frontier had furnished them, again neglecting to provide any training on how to interpret the elements of such "Threat Levels" in a racially-neutral context. (¶ 17)[2] They determined that Plaintiffs met a certain "Threat Level" requiring them to be separated from each other for the duration of the flight (several hours) and apprehended by law enforcement officers when the flight landed, based on unverified reports from the flight attendants of alleged physical contact between the passengers, without conducting a shred of independent investigation, which, had it been conducted, would have informed them that Plaintiffs are father and son and that Peter was sound asleep when one of the instances of alleged physical contact was claimed to have been observed. (*See,* ¶¶ 13-14). As a direct result of Frontier's negligent deployment of its human trafficking/sexual misconduct/Threat Levels instructions to its employees, and its employees' negligent application of those instructions to Plaintiffs without adhering to racially-neutral standards or conducting any investigation into Plaintiffs' relationship or the veracity of the flight attendants' accusations, Peter and A.D. were forcibly separated from each other, Peter was struck in the head by flight attendant Scott Warren hard enough to cause a concussion, A.D. was placed into a detention situation where he was allowed to be sexually molested by Warren, and both were placed in police custody for no reason when the plane landed in Las Vegas. (¶¶ 19, 34-35) All of these acts and omissions occurred in circumstances where Frontier, a common carrier, and its employees, were bound to exercise the utmost care and diligence to secure Plaintiffs' safety, or at least were required to exercise reasonable

---

[2] The Transportation Security Administration has deemed the specific contents of the Threat Levels to be "Sensitive Security Information" and has withheld those contents from Plaintiffs, even despite this Court's April 1, 2020 Order (ECF No. 76). Plaintiffs anticipate that a hearing with a TSA representative will be necessary to resolve that issue.

care to prevent harm to them. (¶¶ 31-32; *see also, Andrews v. United Airlines, Inc.,* 24 F.3d 39, 40 (9th Cir. 1994); *Harold's Club v. Sanchez,* 275 P.2d 384, 386 (Nev. 1954); *Smith v. Odd Fellows Bldg. Ass'n,* 205 P. 796, 797 (Nev. 1922)) Moreover, Defendant Shupe, as the Captain and "pilot-in-command" of the flight, was directly responsible for the operation of the aircraft and had a duty not to operate it in a careless or reckless manner which would endanger any passenger. (¶ 33; 14 CFR §§91.3, 91.13). Despite Frontier and its employees owing those duties to Plaintiffs as passengers, both Plaintiffs were injured. Peter suffered the concussion and related nausea, dizziness, and cognitive/memory losses. (ECF No. 106, at ¶ 19) A.D. suffers from post-traumatic stress disorder (PTSD), with sleeplessness, nightmares, nausea, and difficulties at school. (*Id.*) Both suffered from invasions of their privacy and damage to their reputations, and continue to suffer from mental anguish, nervousness and severe emotional distress. (*Id.*)

The majority of the allegations of the Second Amended Complaint have been pleaded in the alternative, alleging either intentional or negligent behavior, but the facts alleged in support of the negligence alternative are sufficient to meet the standards of Fed. R. Civ. P. 8 and *Iqbal.* For example, Plaintiffs allege in Paragraph 11:

> …Shupe, the Captain on the flight, also participated in the unlawful removal of A.D. from his father and his unlawful detention in the rear of the aircraft, by suggesting, authorizing and arranging for those actions to be carried out by Warren, and designating Peter as a "Threat Level" based on what Warren had told him and without conducting any investigation to see whether Warren's and the other Flight Attendants' accusations concerning Peter were correct, such as questioning Peter and A.D. At all times, Shupe was acting within the scope of his employment with Frontier, and Frontier's management knew about and sanctioned Shupe's conduct. Although Shupe and the co-pilot did ask Frontier's management for information about Peter and A.D., Frontier's management negligently failed to provide Peter and A.D.'s names to the pilots, which would have shown that they are related, and further condoned the separation of A.D. from Peter and the arrangements for law enforcement officers to meet the plane and detain them. Frontier's management did these things while knowing that no reasonable investigation had been done by its employees into the allegations of misconduct, or with reckless disregard of whether or not a reasonable investigation had been conducted by its employees.

And at Paragraph 12, concerning flight attendant Warren:

> While he and the other Frontier employees were in the course of detaining A.D., Warren intentionally and/or negligently or recklessly sexually assaulted A.D. without A.D.'s or Peter's consent in an offensive manner, by placing his hand over A.D.'s body in the close vicinity of A.D.'s genital area, either touching that area or hovering just above it and leading A.D. to believe that he was going to touch him, causing A.D. (and later, Peter, when he discovered what had occurred) to suffer great fear, anxiety, mental anguish and embarrassment which has continued beyond the date of the occurrence.

Paragraph 13, concerning all Frontier employees, alleges how they took action on the basis of visceral reactions without conducting any reasonable investigation: "As a group, Defendants had no basis on which to suggest that Peter was engaging in human trafficking or unlawful sexual activities other than their shared belief that Peter, a white adult man, should not be traveling in the company of A.D., a black male child, because it was 'unusual' and made them 'feel uncomfortable.'"  Even more specifically, in the same Paragraph, they allege:

> They [the Frontier employees] took no action to confirm what Peter's and A.D.'s surname is, despite the fact that could have easily been determined by simply asking to see their boarding passes and/or identification. Despite conducting no investigation and simply relying on Warren's baseless assertions, Shupe, with the assistance of other employees of Frontier, arranged for representatives of the LVMPD and the FBI to meet the flight at its arrival gate at McCarran Airport, in full view of other passengers of the flight and other persons inside the airport terminal. The false accusations of criminal behavior, manifested by the apprehension of Peter and A.D. by law enforcement personnel at the gate area where others could see, which had been arranged by Defendants, were made intentionally or, in the alternative, were made negligently and with reckless disregard for Peter and A.D.'s rights and reputations.

Paragraph 16 details the factual allegations of Plaintiffs' negligence claim against Frontier's management relating to its human trafficking and sexual misconduct instructions:

> In addition, prior to the flight, Frontier's management made decisions to require or suggest that Frontier's employees, including its Flight Attendants and pilots, look for and report instances of suspected human trafficking and sexual misconduct among Frontier's customers, and management provided those employees with lists of certain factors to look for as being evidence of human trafficking and sexual misconduct, both in certain "Must Read" documents published to the employees and in materials incorporated into Frontier's official Flight Attendant Manual and Flight Operations Manuals. Those documents and materials instructed employees to report suspicions of conduct meeting the criteria of the documents and materials to law enforcement officers.

However, Frontier failed to provide any training to its employees on how to apply those criteria in a racially-neutral manner so as to avoid making false accusations of trafficking and/or sexual misconduct that were based on employees' racially-biased decisions that certain passengers traveling together did not look like they should be together, did not look like members of the same family, and/or looked "unusual." Upon information and belief, Frontier made the decisions not to provide such training to its employees intentionally, knowing that it was likely to result in discrimination when applied to groups of passengers of diverse racial and ethnic backgrounds. In the alternative, it acted negligently by failing to provide the training, despite the fact that it was reasonably foreseeable that employees would act on the instructions given to them by Frontier in ways that were not racially neutral and would violate the protected civil rights of, and otherwise cause harm to, Frontier passengers, including Plaintiffs. In either event, Frontier acted maliciously and recklessly in fostering a situation that encouraged its employees to single out passengers such as Plaintiffs and discriminate against them, preventing them from the enjoyment of all benefits, privileges, terms, and conditions of their contractual relationship with Frontier, based on their races or the color of their skins.

And Paragraph 17 details the factual allegations of Plaintiffs' negligence claim against Frontier's management relating to its Threat Levels instructions:

In addition, Frontier provided its Flight Attendants and pilots with certain information concerning "Threat Levels" to be applied to certain passenger conduct, and instructions on how to react to conduct that they designated as being within the criteria for the "Threat Levels." Again, Frontier failed to provide training to its employees on how to apply the criteria for the "Threat Levels" in a racially-neutral manner so as to avoid singling out passengers such as Plaintiffs for discriminatory treatment and falsely accusing them of acting in ways that the employees feel constitute the "Threat Levels" based on the passengers' races or the color of their skins. Upon information and belief, Frontier made the decisions not to provide such training to its employees intentionally. In the alternative, it acted negligently by failing to provide the training, despite the fact that it was foreseeable that employees would act on the instructions given to them by Frontier in ways that were not racially neutral and would violate the protected civil rights of, and cause other harm to, its passengers, including Plaintiffs. In either event, Frontier acted maliciously and recklessly in fostering a situation that encouraged its employees to single out passengers such as Plaintiffs and discriminate against them based on their races and/or the color of their skins.

These factual allegations satisfy the pleading standards of *Iqbal.* As the *Iqbal* majority held:

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

556 U.S., at 678 (quoting *Twombly*)(internal citations omitted). A Circuit Court has noted, "[a]s we understand it, the Court is saying [in *Iqbal*] that the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, NA,* 614 F.3d 400, 404 (7th Cir. 2010). The Nevada Supreme Court has defined negligence as the failure to exercise that degree of care in a given situation which a reasonable man under similar circumstances would exercise to protect others from harm. *Rocky Mountain Produce Trucking Co. v. Johnson*, 369 P.2d 198 (Nev. 1962). In order to state a claim for negligence, a plaintiff must plead: (1) the existence of a duty of care; (2) breach of that duty; (3) legal causation; and (4) damages. *Sanchez v. Wal-Mart Stores, Inc.*, 221 P.3d 1276, 1280 (Nev. 2009). As discussed above, Paragraphs 31 through 33 of the Second Amended Complaint clearly allege the existence of a duty of care owed to Plaintiffs by the Defendants, arising from both the common law and the Federal Aviation Regulations:

> 31.    Frontier is a common carrier and therefore is bound to use the utmost care and diligence to secure the safety of its passengers, including Plaintiffs, until they have reached a place outside the sphere of any activity of the carrier which might constitute a hazard to them. All of the events described in this Second Amended Complaint occurred within the aforesaid "sphere of . . . activity of the carrier."

> 32.    Frontier's employees, including, without limitation, Warren and Shupe, were also bound to use the utmost care and diligence to secure the safety of Frontier's passengers, including Plaintiffs. In the alternative, they owed Plaintiffs a duty of reasonable care to prevent harm to them.

> 33.    Moreover, Shupe, as the Captain of Flight 2067 and the pilot in command, was directly responsible for, and the final authority as to, the operation of the aircraft under the Federal Aviation Regulations. Pursuant to those regulations, he had a duty not to operate the aircraft in a careless or reckless manner so as to endanger the life or property of another.

Paragraphs 34 and 35 plead the elements of breach and proximate causation:

> 34.    The aforesaid acts and omissions of Defendants, including, without limitation, placing Peter and A.D. under surveillance because they are of different races, falsely accusing Peter of human trafficking and sexual misconduct, striking Peter on the head and neck, removing A.D. from his seat and jailing him in the rear of the aircraft, touching or pretending to touch A.D. in the area of his genitals, refusing to allow A.D.

to go back to his seat and Peter to speak with A.D., mocking and shouting at Peter and suggesting that he was a criminal, and arranging for police and FBI to take Peter and A.D. into custody when the plane landed, in full view of other passengers and persons in the airline terminal, breached the aforesaid duties of care and were the proximate causes of injuries and damages to Peter and A.D., as described herein, including, without limitation, emotional damages.

35.     As direct and proximate results of Warren striking Peter in the head and neck, Warren either touching A.D. in the area of his genitals or pretending to do so, and the serious emotional distress caused by those and the other actions detailed in Paragraph 34 and previously in this Second Amended Complaint, Peter and A.D. have suffered the physical and mental ailments described in Paragraph 19 such as Peter's heightened anxiety, stress, concussion, headaches and memory loss, and nausea and dizziness, A.D.'s post-traumatic stress disorder (PTSD), sleeplessness, nausea, nightmares, and difficulties at school since the flight, and both Plaintiffs' heightened sensitivity and nervousness when they are together in public, as a result of what occurred to them on Flight 2067.

And Paragraph 19 pleads the element of injury (as does Paragraph 35 above):

19.     As the result of all Defendants' actions, Plaintiffs suffered serious physical and mental injuries including, but not limited to, a concussion, other violations of the person such as Warren's placing his hand on or almost on A.D.'s crotch, invasions of their privacy, mental anguish and anxiety, extreme emotional distress, cognitive loss, and damage to their reputations. In particular, Peter has suffered from heightened anxiety, stress, headaches and memory loss since the flight, as well as experiencing nausea and dizziness for several days immediately after the flight. A.D. has suffered from post-traumatic stress disorder (PTSD), sleeplessness, nightmares, nausea and difficulties at school since the flight, and both Peter and A.D. have experienced heightened sensitivity and nervousness when they are together in public, as a result of what occurred to them on Flight 2067. All of those harms were foreseeable consequences of Defendants' actions.

Thus, all of the elements of a cause of action in negligence in Nevada have been pleaded, not in conclusory fashion, but with sufficient facts that, when accepted as true as required on a motion to dismiss, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 550 U.S., at 678.

None of the three arguments Defendants raise against Count III of the Second Amended Complaint rings true. They first argue that Count III is based entirely on intentional conduct, *see* ECF No. 108, at 5. That argument ignores all of the factual allegations quoted above, which detail specific

negligent failures to provide training, negligent failures to conduct investigations to determine if their accusations were well founded, and negligent application of human trafficking/sexual misconduct/Threat Level instructions. They claim that "[i]ntent and negligence are regarded as mutually exclusive grounds for liability," *see id.,* utterly ignoring the fact that Rule 8 permits pleading alternative theories of liability, *see* Fed. R. Civ. P. 8(a)(3); *see also, Tellez v. Pacific Gas and Electric Co., Inc.*, 817 F.2d 536, 539 (9th Cir.), cert. denied, 484 U.S. 908 (1987). This Court, in fact, has specifically recognized Plaintiffs' right to plead in the alternative, *see* ECF No. 67, at 5 ("While the Court appreciates that claims may be plead as alternatives, . . ."). The sole case on which Defendants rely in support of their argument, *Allen v. Clark County Detention Ctr.,* Case No. 2:10-cv-00857-RLH-GWF, 212 U.S. Dist. LEXIS 14260 (D. Nev. Feb. 6, 2012), is inapposite. That case dealt with a motion to dismiss filed against a prisoner's complaint that claimed relief on a theory of negligence after alleging only that the defendants' conduct was "deliberate, repeated, and purposeful." Slip op. at 4. That complaint was not pleaded in the alternative, and the "deliberate, repeated, and purposeful" allegations left the Court no choice but to dismiss the negligence count. The Second Amended Complaint in the instant case *is* pleaded in the alternative, with substantial factual allegations undergirding the negligence claims.

Defendants' second argument is that no breach of duty has been pleaded in the Second Amended Complaint, *see* ECF No. 108, at 6. Interestingly, they lead off this argument with an admission that Defendant Frontier has a statutory duty to provide its flight attendants with "initial and annual training regarding . . . recognizing and responding to potential human trafficking victims," *id.* (quoting 49 U.S.C. §44734(a)(4)), despite the fact that all four flight attendants who were working on the subject flight have testified in their depositions that they received no such training. That in itself is admission of a breached duty. Moreover, the Second Amended Complaint quite clearly alleges

multiple breaches of duties. It alleges in Paragraphs 31 through 33 that Frontier and its employees on the subject flight had common law and regulatory duties to keep their passengers, including Plaintiffs, safe from harm. It alleges in Paragraphs 19, 34 and 35 that Plaintiffs did, in fact, suffer harm as a direct result of Defendants' negligent acts and omissions, and alleges in Paragraph 34 that those acts and omissions constituted breaches of Defendants' duties. Defendants' argument that no breaches of duty are alleged simply ignores the allegations of the above-referenced Paragraphs. Their argument that they enjoy qualified immunity for "suspected terrorist activity or suspicious behavior" under 6 U.S.C. §1404(a) ignores the fact that qualified immunity is an affirmative defense that must be proven by them, and is not a basis for granting a motion to dismiss. *See, Moore v. Gerstein,* 107 F.3d 16 (9th Cir. 1996). It also ignores testimony by Frontier's own employee that Peter was never considered a terrorist threat, as well as the requirement that the report must be made "in good faith" and "based on objectively reasonable suspicion," which the Second Amended Complaint alleges was not present. Similarly, Defendants skip over 49 U.S.C. §44941's requirement that a complaint to authorities be "relevant to a possible violation of law or regulation relating to air piracy, a threat to aircraft or passenger safety, or terrorism" and the fact that the Second Amended Complaint is based on far more than the call to the authorities.

Defendants' third and final argument against Count III claims that it must be dismissed for failure to allege "any physical injuries." *See* ECF No. 108, at 7. Defendants' argument takes a bizarre turn at this point, because this entire section relies on the elements of a claim for negligent infliction of emotional distress, not a claim for negligence as stated in Count III. This portion of their argument was labeled as the third prong of an argument against Count III. However, it states, in its opening paragraph:

> Plaintiffs have not alleged facts that establish they suffered any physical injuries as a result of the alleged negligent conduct. As such, this claim can only survive if Plaintiffs

have pleaded the requisite facts to establish a negligent infliction of emotional distress claim.

*Id.* The remainder of the section cites a case discussing the elements of a NIED claim, and a finding by this Court concerning the allegations of the original NIED count in the original Complaint, which allegations are no longer at issue.

Despite those multiple irregularities, Plaintiffs can still respond to the bare argument that their Second Amended Complaint does not allege physical injuries by stating: (1) it does indeed, as Paragraphs 19 and 35 describe several physical ailments caused by the negligence, including concussion, nausea, sleeplessness, dizziness and headaches; and (2) "physical injuries" alone is not the fourth required element of a cause of action in negligence in Nevada, "damages" is. *See Sanchez,* 221 P.3d, at 1280. While damages can include physical injuries, they also can include non-physical harms like damage to reputations and invasions of privacy, and "loss of chance," *see Perez v. Las Vegas Medical Ctr.,* 805 P.2d 589 (Nev. 1991). Even negligently caused emotional distress, such as the anxiety, stress, nervousness, nightmares and PTSD pleaded by Plaintiffs, can be the subjects of a standard negligence claim in Nevada. *See, Mitschke v. Gosal Trucking, LDS,* Case No. 2:14-CV-1099 JCM (VCF)(D. Nev. October 16, 2014), slip at 5 ("Any claims of negligently-caused emotional distress may be pleaded in the context of plaintiff's cause of action for negligence.")

### III.   Count VII of the Second Amended Complaint States a Plausible Claim for Negligent Infliction of Emotional Distress

Defendants' arguments in support of their motion seeking the dismissal of Count VII, the restated NIED count, are based on claims that: (1) A.D. could not have witnessed Peter's injury because A.D. was asleep; (2) Peter could not have been near A.D. when he was assaulted in the rear of the plane; (3) there are no allegations that either of them experienced physical manifestations resulting from the alleged emotional distress of witnessing the other being harmed/moved; and (4)

that the allegations of the Second Amended Complaint are solely of intentional conduct. *See* ECF No.

108, at 7-10. All of those claims are false.

As a preliminary matter, Count VII incorporates all of the factual allegations of Paragraphs 1

through 19 of the Second Amended Complaint by reference, *see* ECF No. 106, at ¶ 50. Based on the

incorporation of those factual allegations, it then pleads all of the elements of a claim for NIED in

Nevada. Those elements are: (1) the plaintiff was located near the scene; (2) he was emotionally

injured by the contemporary sensory observance of the accident; and (3) he was closely related to the

victim. *Kennedy v. Carriage Cemetery Serv., Inc.,* 727 F. Supp. 2d 925, 934 (D. Nev. 2010)(quoting

*Grotts v. Zahner*, 989 P.2d 415, 416 (Nev. 1999)). With respect to Peter's claim, Count VII alleges

that Peter "was in close vicinity" to A.D. when A.D. was taken away from him, imprisoned crying

and assaulted (¶ 55, *see also* ¶¶ 8-10, 12 incorporated by reference through ¶ 50), that he witnessed

those events occurring to A.D. and suffered severe emotional distress from witnessing them,

including mental anguish and anxiety, heightened sensitivity and nervousness when he is in public

with his son (¶ 56, *see also* ¶ 19 incorporated by reference through ¶ 50), and that A.D. is his son (¶¶

52, 55). With respect to A.D.'s claim, Count VII alleges that A.D. "was in the close vicinity of Peter"

when Peter was struck on the head and neck, was physically prevented from getting to where A.D.

was imprisoned, was loudly mocked by flight attendant Warren and accused of deplorable actions

against A.D., and was placed into the custody of the police and FBI and questioned (¶¶ 51-52, *see*

*also* ¶¶ 7-10, 13-14 incorporated by reference through ¶ 50), that A.D. suffered severe emotional

distress as a result of witnessing those things happening to Peter, which includes PTSD, nightmares,

sleeplessness and trouble at school, as well as heightened sensitivity and nervousness when he is in

public with his father (¶¶ 52-53, *see also* ¶ 19 incorporated by reference through ¶ 50), and that Peter

is A.D.'s father (¶¶ 52, 55). Thus, all of the elements of a cause of action for bystander NIED in

Nevada have been pleaded, with supporting facts to make the claim plausible under the standards of *Iqbal.*

Defendants' argument that A.D. was asleep, and therefore could not have observed Peter getting hit on the head and neck, goes to the weight of evidence, not to the sufficiency of the pleadings. In fact, while the Second Amended Complaint does allege that A.D. "proceeded to fall asleep" shortly after boarding the aircraft, *see* ECF No. 106, at ¶ 6, it never alleges that he was asleep for the entire duration of the flight. Moreover, his bystander claim is based on far more than witnessing Peter being struck, so Defendants' argument would be of limited value even if it were valid as to the initial blow. Similarly, their argument that Peter could not have been near A.D. when he was sexually assaulted requires a factual determination of what is "located near the scene" in the context of an airliner, where only about 8 rows of seats separated Peter and A.D. at the time, a matter than cannot be decided on a motion to dismiss. Also, Peter was undeniably closer when Warren prevented him from getting to A.D.'s seat and possibly also when Warren was mocking Peter, when Peter was delivered into the custody of the police and FBI, and when he saw Peter being interrogated.

Defendants' final two arguments, that Plaintiffs have failed to allege physical harm (although all that is required is emotional injury, *see Kennedy*) and that Plaintiffs have alleged only intentional acts, are amply covered by the preceding section of this Opposition, since the factual allegations of Paragraphs 1 through 19 that are incorporated by reference into Count III are precisely the same factual allegations that are incorporated by reference into Count VII. For the sake of brevity, Plaintiffs respectfully refer the Court to the arguments contained in Section II and state that a great amount of both physical and emotional injury is pleaded, as well as numerous allegations of negligence.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>CONCLUSION</u>

For all of the reasons set forth above, Plaintiffs respectfully submit that Defendants' Motion to Dismiss Counts III and VII of the Second Amended Complaint should be denied. If, for any reason, the Court should find any of Plaintiffs' allegations to be insufficient, Plaintiffs respectfully request leave to amend.

DATED this 7th day of July, 2020.

_____/s/ John D. McKay_____
***Attorney for Plaintiffs Peter DelVecchia
And A.D., a Minor***