UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| PETER DELVECCHIA, individually and as next friend of A.D., a Minor,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>FRONTIER AIRLINES, INC., *et al.*,<br><br>　　　　　　　Defendants. | Case No. 2:19-cv-01322-KJD-DJA<br><br>ORDER |

　　　　Presently before the Court is Defendants' Motion to Strike the Second Amended Complaint (#107) and Motion to Dismiss Counts III and VII of the Second Amended Complaint (#108). Plaintiffs filed responses in opposition (#109/110) to which Defendants replied (#111/112).

I. Procedural and Factual Background

　　　　On August 1, 2019, Plaintiffs filed their Complaint against Frontier and John Does 1 through 5. On August 29, 2019, Frontier filed a Partial Motion to Dismiss and Partial Motion to Strike Plaintiffs' Complaint. On November 20, 2019, Plaintiffs filed a Motion for Leave to Amend the Complaint seeking leave to name the flight crew (two pilots and four flight attendants) as individual defendants to the lawsuit. Plaintiffs attached their proposed Amended Complaint to their motion.

　　　　On December 4, 2019, Frontier filed its Opposition to Plaintiffs' Motion for Leave to Amend the Complaint. On December 5, 2019, Plaintiffs filed their Reply in Support of Motion for Leave to Amend. On March 24, 2020, this Court ruled on Frontier's Partial Motions to Dismiss and Strike and Plaintiffs' Motion for Leave to Amend, granting Frontier's Motion to Dismiss Plaintiffs' NIED and false light invasion of privacy claims, and granting Plaintiffs'

Motion for Leave to Amend the Complaint to name the Doe defendants who were previously unknown to Plaintiffs. The Court also granted Plaintiffs leave to amend their NIED claim.

Acting on the Court's order granting the motion for leave to amend, Plaintiffs filed their First Amended Complaint on March 30, 2020, which added Scott Warren, Chelsie Bright Sakurada, Anna Bond, Amanda Nickel, Rex Shupe, and Shawn Mullin as defendants. In their 14-page, five-count First Amended Complaint, Plaintiffs sought compensatory and punitive damages for an alleged violation of 42 U.S.C. §1981(Count I), intentional infliction of emotional distress (Count II), false imprisonment/unlawful detention (Count III), battery and sexual assault (Count IV), and defamation (Count V). However, Plaintiffs did not include an amended NIED claim, though the Court's order had authorized it. Eventually, Plaintiffs voluntarily dismissed all the individual defendants, except Shupe and Warren.

On April 3, 2020, Frontier filed its answer to the First Amended Complaint. On May 28, 2020, Captain Shupe and FA Warren each filed their Answers to Plaintiffs' First Amended Complaint. On June 9, 2020, without seeking leave of this Court, Plaintiffs filed their Second Amended Complaint, which pleads entirely new and/or significantly expanded factual allegations, their first ever negligence claim in this case, and a new NIED claim.

The Second Amended Complaint alleges, in much greater detail than the first amended complaint, that Plaintiffs Peter DelVecchia ("Peter") and his twelve-year old son, A.D., contracted with Defendant Frontier Airlines to fly from North Carolina to Las Vegas on or about March 28, 2019.[1] Plaintiff Peter is Caucasian and A.D. is African-American. Plaintiffs were seated next to each other on the flight. Peter fell asleep with his head resting on the back of the seat in front of him. He was abruptly awakened when Defendant Warren, an employee of Frontier airlines, violently struck him at the base of his neck. The blow was forceful enough to cause a concussion. Defendant Warren then falsely accused Peter of engaging in illegal human trafficking and sexual assault. Based upon the allegations of the complaint, the assault and the accusations were based on Warren's belief a white man should not be traveling with a black

---

[1] The Court considers the allegations of the complaint as true, as it must when resolving a motion to dismiss under Rule 12(b)(6).

- 2 -

child. The flight crew believed that Peter showed inappropriate affection to A.D.

Warren then forced A.D. to leave his seat and father. He was forced to sit in the rear of the plane where an adult male sat between A.D. and the aisle. The father and the son were not allowed to reunite for the duration of the flight. The captain on the flight, Defendant Shupe, and first officer, Mullin, condoned and authorized the separation of the Plaintiffs and authorized the calling of the police and FBI to meet the plane when it landed in Las Vegas. In the presence of other passengers that were deplaning, Warren said loudly to Peter "Go on outside, the FBI is waiting for your ass." Previously, Warren had yelled on the plane that Peter had touched his son inappropriately. When Peter protested, Warren said, "Well we're going to have let the police sort that out."

Defendants have now moved to strike the second amended complaint, because it was filed after the deadline to amend in the Scheduling Order and because Plaintiffs failed to seek leave of the Court before it was filed. Alternatively, Defendants seek to dismiss the third claim for negligence and the seventh claim for negligent infliction of emotional distress.

## II. Motion to Strike Plaintiffs's Second Amended Complaint

Federal Rule of Civil Procedure 12(f) authorizes a court to strike from any pleading material that is redundant, immaterial, impertinent or scandalous. Additionally, the Court has inherent authority to strike any improper filing and control its docket. Atchison, Topeka & Santa Fe Ry. v. Hercules, Inc., 146 F.3d 1071, 1074 (9th Cir. 1998). Motions to strike are wholly discretionary.

Generally, a party may amend their pleadings once "as a matter of course" before a responsive pleading has been served. Fed. R. Civ. Pr. 15(a). After that, a party may amend their pleadings "only by leave of the court...[which] leave shall be freely given when justice so requires." Id. In such instances, the Court would balance the strong policy towards permitting amendment versus "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." See Schlacter-Jones v. General Telephone, 936 F.2d 435, 443 (9th Cir. 1991) (quoting Foman v. Davis, 371 U.S. 178,

182 (1962)).

However, where the Court has filed a pretrial scheduling order that has established a timetable or deadline for amending the pleadings, the Court will consider proposed amendments under Federal Rule of Civil Procedure 16(b). That rule requires the schedule for amending pleadings not be modified without a showing of good cause for failure to amend within the time specified in the scheduling order. See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir. 2000). This standard "primarily considers the diligence of the party seeking the amendment." See Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 608 (9th Cir. 1992). A scheduling order (#33) was issued in this case that set November 26, 2019 as the deadline for amending the pleadings.

Therefore, the Court will review the Plaintiffs' motion to amend under Rule 16's good cause standard, because the motion was filed well past the deadline set in the discovery scheduling order. Here, the only excuse offered by Plaintiffs was that the Court had authorized the filing of the amended complaint. However, the Court had only authorized the filing of the complaint that was attached to the initial motion to amend with the caveat that Plaintiff could amend its claim for negligent infliction of emotional distress if Plaintiff felt that he could cure the deficiencies identified by the Court.

Instead, Plaintiff filed the attached complaint without amendment on March 30, 2020. Plaintiff then filed a Second Amended Complaint ("the operative complaint") on June 9, 2020 without seeking leave of the Court pursuant to the Federal Rules of Civil Procedure. The operative complaint contained a new claim for negligence in addition to amending the claim for negligent infliction of emotional distress. Plaintiff has entirely failed to demonstrate good cause for failing to amend within the time allowed in the scheduling order. However, given the amount of discovery effort and briefing the parties have put into the operative complaint, judicial economy would be ill-served by striking the second amended complaint entirely which would likely spawn a new round of motion practice that would forestall the efficient trial of this action.

Instead, the Court dismisses the claim for negligence and negligent infliction of emotional distress in the operative complaint for failure to show good cause for failing to meet

the deadline in the discovery order and for failure to seek leave of the Court to file a second amended complaint. Alternatively, the Court dismisses each claim on the merits for failing to state a claim under Rule 12(b)(6).

III. Motion to Dismiss

A. Legal Standard

The Court may dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, the complaint must provide enough facts to state a plausible claim for relief on its face. Id. at 678. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. Id. at 678. Further, where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged–but it has not show[n]–that the pleader is entitled to relief." Id. at 679 (internal quotation marks omitted).

B. Negligence

To bring a negligence claim in Nevada, a plaintiff must show that (1) defendant owed a duty of care to plaintiff; (2) defendant breached that duty; (3) defendant's breach was the actual and proximate cause of the plaintiff's injuries; and (4) plaintiff was injured." Larson v. Homecomings Fin., LLC, 680 F. Supp. 2d 1230, 1235 (D. Nev. 2009) (citing Scialabba v. Brandise Constr. Co., Inc., 112 Nev. 965, 968 (1996)). Here, Plaintiffs allege that "Frontier is a common carrier and therefore [was] bound to use the utmost care and diligence," that FA Warren and Captain Shupe "were also bound to use the utmost care and diligence," or in the alternative, owed them a duty of reasonable care, and that Captain Shupe was "the pilot in command" and "had a duty not to operate the aircraft in a careless or reckless manner so as to endanger the life or property of another." Plaintiffs then assert that Defendants breached these duties by allegedly

placing Peter and A.D. under surveillance, accusing Peter of human trafficking and sexual misconduct, striking Peter, re-seating A.D., mocking and shouting at Peter, and arranging for police and FBI to meet the aircraft upon arrival in Las Vegas.

However, under Nevada law these allegations do not meet the standard for negligence, because they are centered around Defendants' alleged intentional conduct. The conduct described in this cause of action is not negligent conduct; it is intentional conduct. Plaintiffs base their § 1981, IIED, battery, defamation, and false imprisonment claims on the same intentional conduct. However, "[a]ny given act may be intentional or it may be negligent, but it cannot be both. Intent and negligence are regarded as mutually exclusive grounds for liability." Allen v. Clark Cty. Det. Ctr., No. 2:10-cv-00857-RLH-GWF, 2012 U.S. Dist. LEXIS 14260, at *7-8 (D. Nev. Feb. 6, 2012) (citing Dan B. Dobbs, The Law of Torts, §26).

The analysis does not change merely because Plaintiff alleges the claim in the alternative. See Dineen v. Stramka, 228 F.Supp.2d 447, 454 (S.D.N.Y. 2002) (stating that when a plaintiff asserts claims "which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie"). Plaintiffs allege that Frontier's negligence resulted in flight attendants conducting their duties in ways that were not racially neutral. However, a cause of action for negligent racial discrimination does not exist. See Cummings v. Vill. of Port Chester, No. 08 Civ. 6940 (LMS), 2013 U.S. Dist. LEXIS 202987, at *31 n. 17 (S.D.N.Y. July 3, 2013) (stating that "[t]o the extent that Plaintiff's allegation implies a state law claim for negligent discrimination, the Court knows of no legal support for such a claim")). Rather, it is a discrimination claim, which Plaintiffs have asserted in their § 1981 cause of action.

Further, even if the Court allowed a negligence claim to go forward, Plaintiffs' other grouping of allegations relates to Frontier's alleged negligence in failing to train its employees on a range of topics, including human trafficking, sex trafficking, and Threat Level instructions. However, Plaintiffs' negligence count is premised on the doctrine of *respondeat superior*, which is inconsistent with direct claims against employers for negligent training. A court in this district found that, "Nevada would adopt the majority rule such that, in situations in which a motor

carrier admits vicarious liability for the conduct of a driver, direct claims of negligent entrustment or negligent training and supervision against a motor carrier would be disallowed where those claims are rendered superfluous by the admission of vicarious liability." Adele v. Dunn, No. 2:12-cv-00597-LDG (PAL), 2013 U.S. Dist. LEXIS 44602, at *6 (D. Nev. Mar. 27, 2013).

Finally, Defendants make arguments that they may be immune from liability under the Aviation and Transportation Security Act, 49 U.S.C. § 44941. See Air Wis. Airlines Corp. v. Hoeper, 571 U.S. 237, 241 (2014) (to ensure that the TSA would be informed of potential threats, Congress gave airlines and their employees immunity against civil liability for reporting suspicious behavior). However, that immunity would apply to true statements made by defendants who would not be protected from materially false statements. Id. at 248-49. The Supreme Court has not determined whether immunity is a question of law for the court to decide before trial, or whether it requires issues of material fact to be determined by a jury at trial. Id. at 252-53. Therefore, the Court cannot dismiss the claims based on immunity at this juncture.

### C. Negligent Infliction of Emotional Distress

Further, even if the Court allowed amendment of this claim, it would dismiss it because Plaintiff has still failed to sufficiently state a claim. In Nevada, the law clearly requires that the witness-plaintiff prove that he or she (1) was located near the scene; (2) was emotionally injured by the contemporaneous sensory observance of the accident; and (3) was closely related to the victim." Kennedy v. Carriage Cemetery Servs., Inc., 727 F. Supp. 2d 925, 934 (D. Nev. 2010). "To recover for negligent infliction of emotional distress under Nevada law, [the plaintiff] must ... establish that he/she either suffered a physical impact or serious emotional distress causing physical injury or illness." Alexander v. Falk, No. 2:16-cv-02268-MMD-GWF, 2019 U.S. Dist. LEXIS 132201, at *27 (D. Nev. Aug. 7, 2019). Even with the amended claims, Plaintiffs have still failed to state a claim. First, A.D. did not witness his father being struck, because he was asleep. Further the Court will not allow a third try at amending this claim, because A.D. admitted during his deposition, that he did not see his father struck. Therefore, amending the complaint would be futile. Finally, there is no allegation that A.D. was injured so as to be the "victim" of an

"accident," as required by Nevada law, when the FA Warren asked A.D. to change seats. Kennedy, 727 F. Supp. 2d at 934. Accordingly, Plaintiffs' Second Amended Complaint does not state a cause of action for NIED.

IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendants' Motion to Strike the Second Amended Complaint (#107) and Motion to Dismiss Counts III and VII of the Second Amended Complaint (#108) are **GRANTED in part and DENIED in part**;

IT IS FURTHER ORDERED that the Motion to Strike and Motion to Dismiss are granted to the extent that Claim III for negligence and Claim VII for negligent infliction of emotional distress are **DISMISSED**.

Dated this 30th day of March, 2021.

_____
Kent J. Dawson
United States District Judge