**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA**

| | | |
|---|---|---|
| PETER DELVECCHIA, *et al.*, | ) | Case No: 2:19-CV-01322-KJD-DJA |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **PLAINTIFFS' MOTION FOR** |
| | ) | **SANCTIONS AGAINST** |
| vs. | ) | **DEFENDANT FRONTIER** |
| | ) | **AIRLINES, INC.** |
| | ) | |
| FRONTIER AIRLINES, INC., *et al.*, | ) | **EXHIBIT B** |
| | **)** | |
| Defendants. | ) | |
| | ) | |

**Department of Transportation
January 13, 2017 Press Release and
Guidance Document for Airline Employees
On Anti-discrimination Statutes**

2017 WL 127996 (D.O.T.)

U.S. Department of Transportation (D.O.T.)

(NEWS RELEASE)

DOT ISSUES GUIDANCE DOCUMENTS TO PREVENT AIRLINE DISCRIMINATION

January 13, 2017

WASHINGTON - The U.S. Department of Transportation (DOT) today issued two guidance documents emphasizing that federal law guarantees all passengers the right to fly free from discrimination. The documents supersede prior non-discrimination guidance issued by the Department and were developed in collaboration with representatives of airlines and civil rights organizations.

The first document, *Guidance for Airline Personnel on Nondiscrimination in Air Travel*, contains example scenarios to help airline employees and contractors understand their legal obligation not to discriminate on the basis of race, color, national origin, religion, sex, or ancestry in air travel. The second document, *Passengers' Right to Fly Free from Discrimination*, uses a question-and-answer format to assist the flying public understand their rights when flying on commercial airlines.

"DOT is committed to protecting the civil rights of all passengers, regardless of race, color, national origin, religion, sex, or ancestry," said U.S. Transportation Secretary Anthony Foxx. "These guidance documents will help passengers understand their rights and help airline employees avoid behavior that violates the law."

"The goal of ensuring the security of our national air transportation system is consistent with our nation's longstanding civil rights laws," said Acting General Counsel Molly Moran. "These guidance documents seek to ensure equal treatment of all air travelers by educating air travelers and providing airline employees the necessary tools to make fact-based decisions about what constitutes threatening or suspicious behavior in compliance with the law."

In November 2016, the Department began reporting more detailed information about discrimination complaints that it receives in its monthly *Air Travel Consumer Report*. The report now specifically identifies the numbers of complaints by protected class: race, color, national origin, religion, sex, or ancestry/ethnicity. Prior reports listed only the total number of discrimination-related complaints sent to the Department. The enhanced reporting is intended to provide more transparency regarding the number of complaints that the Department receives in each of the protected classes.

DOT's Office of General Counsel's investigates all complaints alleging discriminatory treatment by airline personnel and pursues enforcement cases against airlines for unlawful discrimination. Members of the public who feel they have been the subject of discriminatory actions or treatment by airlines may file a complaint with the Department at http://airconsumer.dot.gov/escomplaint/ConsumerForm.cfm.

The *Guidance for Airline Personnel on Nondiscrimination in Air Travel* and *Passengers' Right to Fly Free from Discrimination* are available at https://www.transportation.gov/airconsumer/latest-news.

Media Contact: Caitlin Harvey
Office of Public Affairs
1200 New Jersey Ave, SE
Washington, DC 20590
United States

UNITED STATES OF AMERICA
DEPARTMENT OF TRANSPORTATION
OFFICE OF THE GENERAL COUNSEL
OFFICE OF AVIATION ENFORCEMENT AND PROCEEDINGS
WASHINGTON, D.C.

**Passengers' Right to Fly Free from Discrimination**

Federal law guarantees all passengers the right to fly free from all forms of unlawful discrimination. Likewise, the Department of Transportation (the Department or "DOT") is committed to protecting the civil rights of all passengers, irrespective of race, color, national origin, religion, sex or ancestry. The Department is committed to ensuring that a passenger's right to fly free from unlawful discrimination is not compromised while also balancing important safety and security concerns. This fact sheet is intended to assist the flying public in understanding their right to fly on commercial airlines free from discrimination.

**Question 1:** What role does the Department play in aviation safety and civil rights?

The Department is tasked with the role of ensuring a safe flying experience while ensuring the protection of civil rights for all passengers. The Federal Aviation Administration (FAA) (a sub-agency within the Department) and the Department's Office of Aviation Enforcement and Proceedings (OAEP), which is located in the Office of the Secretary of Transportation's Office of the General Counsel, each play a key role in carrying out this function.

The FAA is charged with the responsibility of regulating airline safety, and OAEP is responsible for enforcing the statutes that prohibit unlawful discrimination by airlines against air travelers because of their race, color, national origin, religion, sex, or ancestry.[1] OAEP works with the Department's Aviation Consumer Protection Division (ACPD), which processes and investigates consumer and civil rights complaints.

**Question 2:** Which federal agency is responsible for aviation security?

DOT does not have jurisdiction over aviation security. Rather, the Transportation Security Administration (TSA), which is part of the U.S. Department of Homeland Security, has responsibility over civil aviation security, including the screening of passengers and property at airports and deployment of Federal Air Marshals on designated foreign and domestic flights. TSA imposes various requirements upon travelers and the aviation industry to ensure a secure aviation environment. This fact sheet document pertains solely to activities and authorities under the purview of the Department of Transportation. Additional information on TSA aviation security activities is available here: https://www.tsa.gov/travel/frequently-asked-questions.

---

[1] *See* 49 U.S.C. § 40127. The Department has also interpreted 49 U.S.C. §§ 41310(a), 41712, and 41702 as prohibiting discrimination against air travelers.

1

**Question 3:** What are my rights when I fly on a commercial airline?

All passengers have the right to fly free from all forms of unlawful discrimination. In particular, you are entitled to the following protections:

- Individuals may not be denied boarding or removed from a commercial airline because they appear to be Muslim, Arab, Sikh, and/or South Asian; because they speak Arabic, Farsi, or another foreign language; or because they speak with an accent that may lead another person to believe they are Muslim, Arab, Sikh, or South Asian. Likewise, a person may not be removed from a commercial airline because they are reading materials that are in Arabic, Farsi, or any other foreign language.
- Individuals may not be denied boarding or removed from a commercial airline based on their appearance or mode of dress that is associated with a particular national origin or religion. For example, removal of a woman because her hair is covered or because she is wearing a veil is unlawful discrimination. Similarly, removal of a man from a commercial airline because he has a long beard or hair covering is unlawful discrimination. Likewise, preventing a man from boarding a commercial airline because he is wearing a turban is unlawful discrimination.
- Individuals who are, or may be perceived to be, Muslim, Arab, Sikh, and/or South Asian have the right to be treated with the same respect and dignity as persons of other races, colors, national origins, and religions, and all persons should be treated in a polite, respectful, and friendly manner.

**Question 4:** Can I be denied boarding or removed from a flight by a commercial airline?

Yes, under certain circumstances. Federal law allows U.S. and foreign airlines to refuse to transport a passenger if the airline determines that the passenger is, or might be, a threat to safety or security.[2] This determination may be made by the pilot in command of the flight (or other airline personnel such as a Ground Security Coordinator). Decisions cannot be arbitrary. The Department's OAEP will look at whether the denial of boarding or removal was justified based on specific facts and circumstances known at the time. The pilot bears the ultimate responsibility of ensuring the safety of the aircraft.

Before making a determination to deny a passenger boarding or remove a passenger from a flight based on safety or security reasons, the airline has the responsibility to conduct a reasonable inquiry into the facts supporting such action. Note, however, that the airline's discretion is not unfettered. Federal law guarantees all passengers the right to fly free from all forms of unlawful discrimination. A passenger's race, color, national origin, religion, sex, or ancestry may not be the determinative factor in a commercial airline's decision to deny boarding or remove a passenger from a flight.

---

[2] Passengers may also be denied boarding for business reasons, such as the flight being oversold, because of drunkenness or other bad behavior, or for other reasons consistent with the airline's contract of carriage.

**Question 5:** What happens if a commercial airline refuses to allow me to board or asks me to leave the aircraft because of security or safety concerns?

You should cooperate with all airline requests or instructions, such as moving to the loading bridge for a private conversation. If a commercial airline denies you boarding or removes you from a flight for safety or security reasons, airline personnel may contact the appropriate authorities to determine if additional screening is necessary. Additional screening may involve TSA, the Federal Bureau of Investigation (FBI), and/or other federal, state, or local law enforcement agencies, depending on the level of screening deemed necessary under the circumstances.

If you believe that a commercial airline has denied you boarding or removed you from a flight on the basis of your race, color, national origin, religion, sex, or ancestry, you should contact the DOT to file a complaint.[3]

**Question 6:** What is a reasonable basis for airline personnel to remove a passenger from a flight?

There are many circumstances that could result in airline personnel determining that a passenger should be removed from a flight because he or she may pose a threat to safety or security, or is disruptive. However, a passenger's race, color, national origin, religion, sex, or ancestry may not be the determinative basis for the decision to remove him or her from the flight. While the pilot in command has broad discretion when it comes to the safety and security of the aircraft, the airline does not have a license to unlawfully discriminate.

The determination of whether or not an airline's decision to remove a passenger from a flight is lawful is driven by the facts and circumstances known to the pilot or airline personnel at the time of the incident. DOT suggests that airline personnel conduct a comprehensive evaluation of the facts known at the time, considering the totality of the circumstances. Such an evaluation should include whether a passenger's race, color, national origin, religion, sex or ancestry is the sole or determinative factor causing concern. DOT suggests that airline personnel, in the course of their evaluation, ask themselves, *"But for this person's perceived race, color, national origin, religion, sex, or ancestry, would I believe there is a need to remove this passenger from the flight?"* If the answer is "no," then removing the passenger would likely be considered unlawful discrimination against the passenger.

**Question 7:** How should I respond if I am asked to deplane?

Even if you do not like an airline's actions, a failure to comply with airline personnel instructions is a ground for denying you boarding or removing you from a flight. Therefore, all passengers should cooperate fully with airline personnel. In the event that you believe that you have been unlawfully discriminated against, you may file a complaint with the airline and the Department of Transportation and an investigation will be conducted. You may also contact or retain an attorney to assist you with the filing of such a complaint.

---

[3] *See* http://airconsumer.dot.gov/escomplaint/ConsumerForm.cfm.

3

**Question 8:**  How do I deal with a passenger who feels "uncomfortable" with my presence?

If you are faced with a situation where another passenger expresses discomfort with your presence and/or exhibits hostile behavior toward you, do not engage with the passenger.  Rather, you should report any unlawful or harassing behavior by another passenger to airline personnel immediately.

**Question 9:**  What are my rights after I have been denied boarding or removed from a flight, completed additional screening, and been cleared to fly by appropriate authorities?

If you have been removed from a plane and have been cleared to fly by appropriate authorities, you should be allowed to re-board the flight if it has not yet departed and the airline does not have any business or other legitimate reason for refusing to carry you on that flight.  However, an airline is not required to delay departure of a flight in order to allow time for additional security screening and resolution of any safety or security concerns.  In the event that your original flight has departed, you should be rebooked on the next available flight.  Airlines are advised that passengers should be treated with respect and dignity at all times.

**Question 10:** Who should I contact if I believe that my rights have been violated?

If you feel that you have been the subject of discriminatory actions or treatment by a commercial airline, you may file a complaint with the specific airline and DOT's Aviation Consumer Protection Division.[4]  Complaints to DOT may be filed using our web form, available at: http://airconsumer.dot.gov/escomplaint/ConsumerForm.cfm.  Complaints may also be mailed to the following address:

>   Aviation Consumer Protection Division (C-75)
>   U.S. Department of Transportation
>   1200 New Jersey Ave. S.E.
>   Washington, DC 20590

---

[4] You may file a complaint yourself or retain an attorney to assist you.

4

UNITED STATES OF AMERICA
DEPARTMENT OF TRANSPORTATION
OFFICE OF THE GENERAL COUNSEL
OFFICE OF AVIATION ENFORCEMENT AND PROCEEDINGS
WASHINGTON, DC

**Guidance for Airline Personnel on Non-discrimination in Air Travel**

This guidance is intended to assist airline employees and contractors ("airline personnel") understand their legal obligation under 49 U.S.C. § 40127(a), and other Federal anti-discrimination statutes,[1] not to discriminate on the basis of race, color, national origin, religion, sex or ancestry in air travel. The Department of Transportation ("Department") recognizes the very important and difficult job of the airlines to provide a safe and secure travel environment. At the same time, it is important that this function be carried out in a non-discriminatory manner.

This guidance supersedes prior guidance that the Department has issued in the area of non-discrimination in air travel. It is intended to address particular situations where passengers may be denied boarding or removed from aircraft before take-off. The Department recognizes that once the aircraft is airborne, decisions based on safety and security considerations may have to be made very quickly and with limited information.

The guidance provides practical and useful decision-making techniques for airline employees and contractors to use when distinguishing between situations where a legitimate safety or security concern exists and situations in which concerns are based on assumptions and stereotypes related to a passenger's race, color, national origin, religion, sex, or ancestry. This guidance also demonstrates the application of these techniques and tools to promote appropriate non-discriminatory responses to possible safety or security concerns through illustrative scenarios.

It is our understanding that <u>most</u> airlines already have training on non-discrimination against passengers in air travel. The Department encourages <u>all</u> airlines to implement comprehensive anti-bias training to help prevent and reduce incidents of unlawful discrimination. We also encourage airlines to incorporate this guidance into their training programs as an additional tool. Last, this guidance is not prescriptive, and there may be alternative measures, techniques, or procedures that can be effective for preventing unlawful discrimination against air travelers.

This guidance document pertains solely to the activities and authorities under the purview of the U.S. Department of Transportation and does not address aviation security requirements or procedures under the jurisdiction of the Transportation Security Administration, U. S. Department of Homeland Security.

---

[1] The Department has also interpreted 49 U.S.C. §§ 41310(a), 41712, and 41702 as prohibiting discrimination against air travelers.

1

**Airline Personnel Decision-Making Process**

To ensure compliance with the law, airline personnel should:

1. **Be Comprehensive:** Before taking any action, airline personnel should conduct a comprehensive evaluation of the facts known at the time, considering the totality of the circumstances.  A comprehensive evaluation should include whether a passenger's appearance is the determinative factor causing concern.  In other words, airline personnel should ask themselves - but for the passenger's perceived race, color, national origin, religion, sex, or ancestry, would I be concerned that his or her behavior rises to the level of a potential threat to security or safety?
2. **Ensure Effective Communication:** Communicate by actively participating in information exchange with the passenger, co-workers, and other air travelers (if appropriate and applicable) to clarify and confirm the facts and details involved in the situation.
3. **Follow Airline Protocol and Decision-Making Process:**  In conducting an inquiry, airline personnel should follow their company's protocol and decision-making processes, and relevant government agencies' directives, to resolve the situation appropriately.
4. **Assess Each Situation Individually:** Focus on the specific facts and details to ensure that any basis for taking action based on perceived suspicious behavior is reasonable.  A passenger's perceived race, color, national origin, religion, sex or ancestry alone is not a reasonable basis.  All passengers have the right to fly free from all forms of unlawful discrimination.
5. **Inquire about the Potential Threat:** Ask yourself if you appropriately carried out the airline's obligation to inquire.  For example:
    - Did you speak to the passenger;
    - Have you consulted your co-workers about your concern;
    - Did you follow company policy and utilize your training; and
    - Have you intentionally or inadvertently considered any stereotypes in your inquiry?
6. **Resolve and Remedy the Situation:**   Airlines should include conflict resolution techniques in their procedures and protocols, *e.g.*, active listening, self-awareness, validating frustrations, anti-bias and anti-discrimination techniques, and honest communication.  Airline personnel should employ the suggested techniques and attempt to resolve the situation by taking the appropriate action in compliance with the law and established airline policy.  Explain your decision to persons involved, including co-workers and, when appropriate, to passengers.

Taken together, these principles are summarized by the acronym, **BE FAIR**:
**B**e Comprehensive
**E**nsure Effective Communication
**F**ollow Airline Protocol and Decision Making Process
**A**ssess each situation individually, considering cultural awareness factors
**I**nquire about the potential threat
**R**esolve and remedy the situation.

2

P000760

**Illustrative Scenarios**

The Department understands that complex scenarios may arise quickly and require airline personnel to respond promptly, sometimes under tight timeframes and stressful conditions. These situations may require additional questioning, screening, searches, or requests for support from appropriate authorities for safety or security reasons. We have provided the following examples to illustrate possible ways to resolve a situation effectively while respecting all passengers' rights.

**Scenario 1:** Two men are seated together onboard the aircraft before take-off, and are whispering in a foreign language. One of the men is also holding a book that appears to be written in Arabic. A third passenger seated nearby overhears their conversation and informs airline personnel that he feels "uncomfortable" with the two individuals. The third passenger believes they are of Arab or South Asian descent, that they are speaking in a foreign language, which he thinks is Arabic, and holding a book in a foreign language, which he thinks may be the Quran. The third passenger notifies the flight attendant.

**Action:** Airline personnel have an obligation to conduct an objective and comprehensive inquiry considering the totality of the circumstances before taking action. Crew members should follow airline protocol for these situations and rely on their training to accomplish an objective inquiry. The pilot, who has ultimate authority for the safety of the flight, may rely on the cabin crew to make an accurate fact-based assessment of the situation. A decision is proper if based on an analysis of the facts known at the time before acting.

Before taking action, you should consider whether these passengers' behavior would concern you but for their appearance, *i.e.*, would you be concerned if they did not appear to be of Arab descent, speak in a foreign language, or hold a book written in Arabic that appears to be the Quran? You should ask yourself: "If I had observed this exact behavior in non-Arab men speaking English, would you still be concerned?" If the answer is no, and if there is no other information possibly indicating a potential threat to security or safety, you may be discriminating against the passengers on the basis of their religion or national origin if you remove them from the airplane.

Your inquiry might also include observing the passengers in question and, if necessary, speaking directly with them. You should also consider conferring with your colleagues and be sure to relay your factual observations rather than just feelings, beliefs or opinions. It is important to ensure that your inquiry is not based on cultural stereotypes and is focused on first-hand observable behaviors that support a reasonable and rational evaluation of the facts leading to the security concerns. In this scenario, it is not permissible to remove the passengers on the basis that they are speaking Arabic, they appear to be of South Asian descent, and are holding a book written in Arabic or another foreign language. It is also impermissible to remove the passenger simply because he is holding a book that appears to be the Quran.

If, while conducting an objective fact-based inquiry considering the BE FAIR analysis, you become aware of additional facts or information indicating that the passengers may pose a safety or security risk to the flight, you should take appropriate action in compliance with the law and established airline policy. If that results in removal of a passenger, it is important that the removal

3

be conducted respectfully and as discreetly as possible.  Alternatively, if you conclude that the passengers in question do not pose a security risk, consider offering to move the third passenger to another seat or offering to rebook him on another flight, if that passenger remains uncomfortable with the other passengers' presence.

**Scenario 2**: A bearded male passenger with a tan complexion boards the aircraft.  Prior to take off, the passenger goes to the aircraft lavatory and remains for an extended period of time.  Upon returning to his seat, the passenger begins making hand gestures and whispering under his breath.  A flight attendant, perceiving the passenger to be nervous, becomes concerned with his behavior and advises the pilot in command of his observations.  The pilot then asks that the passenger be removed from the aircraft for questioning.  The passenger is not provided any explanation for his removal, except that a flight attendant says he was acting suspiciously and nervously.  The airline rebooks the passenger on another flight without first contacting authorities to determine if additional security screening is appropriate.

**Action:** In Scenario 2, there are two distinct issues to consider.  First, was the passenger removed for discriminatory reasons, and second, should the airline have contacted appropriate authorities to determine if additional screening of the passenger after being removed was appropriate?

Airline personnel should first conduct a comprehensive evaluation of the facts known at the time, considering the totality of the circumstances.  In this comprehensive analysis, airline personnel should ask themselves - but for the passenger's appearance, would we be concerned that his behavior may indicate a possible threat to security or safety?  If you had observed this exact behavior in an individual who did not have physical characteristics similar to this passenger, would you still be concerned?  If the answer is no, then taking action with respect to the passenger without first attempting to learn more information would likely be considered unlawful discrimination based on the passenger's religion or national origin.

In this scenario, a tactful conversation with the passenger, in question, may provide a reasonable explanation.  You should speak directly with the passenger in question to make your own fact-based assessment of his behavior.  For example, you may wish to inquire as to the passenger's health to make sure that he was not ill or required any assistance.  Alternatively, the passenger may have been preparing for prayer as some religious communities do.  His hand gestures and whispering under his breath after he returned to his seat may also be consistent with prayer.  The simple task of active listening and communication may lead to a resolution of the situation in a non-confrontational and respectful manner.

If, while conducting an objective fact-based inquiry considering the BE FAIR analysis, you become aware of additional facts or information indicating that the passenger may pose a security or safety risk, take appropriate action in compliance with the law and established airline policy.  Appropriate action may include removing the passenger from the aircraft to further investigate the potential security concern.  If removal of the passenger is deemed necessary, it should be done in a respectful and discreet manner.  For example, airline personnel may approach the passenger to request that he step onto the jet way to discuss the matter instead of questioning him in his seat, within earshot of other passengers.  Removal by law enforcement generally should be reserved for

situations where the passenger will not comply with instructions or is disruptive.  Flight attendants should try to use neutral language, so as not to raise concern among other passengers.

If the passenger is removed from the flight, airline personnel generally should contact the appropriate authorities and request that they follow their relevant security procedures, which may include additional screening of the passenger.  A failure to contact the appropriate authorities in connection with removing a passenger from a flight may suggest that the decision to remove the passenger from the flight was motivated by unlawful discrimination rather than reasonable concern for the safety and security of the flight.

**Scenario 3:**  A Sikh man wearing a traditional turban is removed from a commercial airline .  His removal was prompted by specific facts and circumstances unrelated to his appearance, perceived race, national origin, religion or ancestry/ethnicity.  The passenger is then subjected to additional screening and cleared to fly by the appropriate authorities.  However, the pilot refuses to allow the passenger to re-board even though there is time to do so.  The passenger is then rebooked on another flight.

**Action:**  At the outset, airline personnel should focus on a comprehensive evaluation of the situation based on the totality of the circumstances.  Here, the passenger has completed additional security screening and has been cleared to fly by the appropriate authorities.  As such, the carrier should allow that individual to re-board the same aircraft so long as the aircraft has not yet departed and there is no other legitimate reason for refusing to carry the passenger.  If a pilot continues to refuse to allow the passenger on board after he has been cleared to fly by the appropriate authorities, the Department would likely consider the pilot's decision to be unlawful discrimination and an unfair practice absent additional facts and information.

**Scenario 4:**  A woman wearing a headscarf boards the aircraft with her two children.  She is one of the last passengers to board and finds that she and her children are seated separately.  The passenger begins to negotiate her seating arrangement with other passengers so that she may sit with her children.  The flight is running late and the flight attendant advises her repeatedly to take her assigned seat without attempting to resolve the seating situation.  The woman becomes upset, refuses to sit down despite repeated requests, and insists on sitting with her children. The pilot is informed about the problem, and he advised the flight attendant to have the passenger removed from the flight.

**Action:**  Airline personnel should consider the totality of the circumstances.  In other words, ask yourself - but for the passenger's appearance, would I be concerned that her behavior may indicate a safety or security threat?  If you had observed this exact behavior in an individual who did not wear a head scarf, would you still be concerned?  If the answer is no, taking action with respect to the passenger without first attempting to learn more information would likely be considered unlawful discrimination against the passenger based on her religion or national origin.

Communicate with the passenger and attempt to understand the passenger's concerns.  Time permitting, employ creative techniques that may help resolve the problem in a less confrontational manner (*e.g.*, incentivize passengers to change their seats with vouchers or miles) as allowed under airline policy.  In this scenario, the passenger and her children are the last to board and the flight is

5

running late, which may reduce the amount of time that a flight attendant may spend to resolve the matter.

If, while conducting an objective fact-based investigation using the BE FAIR analysis, you determine that the passenger's failure to comply with repeated instructions from the flight crew may pose a safety or security risk, take appropriate action in compliance with the law and established airline policy. A passenger's failure to comply with airline personnel instructions is grounds for denial of boarding or removal from a flight.[2] We recommend clearly explaining the pilot's decision to the passenger and ensuring that the passenger is treated with dignity and respect.

**Summary:** A passenger's race, color, national origin, religion, sex, or ancestry may not be the determinative factor in finding that a passenger may present a security or safety risk. Airlines should instead undertake a comprehensive analysis considering the totality of the circumstances. Airline personnel should take steps to conduct an objective, fact-based inquiry to ensure that a decision is reasonable and rational and follows company policy. If you conclude, after a fact-based inquiry, that a passenger may pose a safety or security threat and should be removed from a flight, it is important that the removal be conducted respectfully and with discretion. Always consider whether any situation may be resolved in a non-confrontational manner to avoid escalation. At all times, airline personnel should comply with the law and the airline's applicable policies and protocols.

---

[2] *See* 14 C.F.R. §§ 91.3(a), 121.533(e), and 121.580.

P000764