Timothy R. Titolo, Esq.
Nevada Bar No. 003617
TITOLO LAW OFFICE
9950 West Cheyenne Ave.
Las Vegas, Nevada 89129
(702) 869-5100
tim@titololaw.com

John D. McKay, Esq.
*Admitted pro hac vice*
PARK AVENUE LAW LLC
127 W. Fairbanks Ave. No. 519
Winter Park, Florida 32789
(434) 531-9569
johndmckayatty@gmail.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| PETER DELVECCHIA, *et al.*,<br><br>        Plaintiffs,<br><br>vs.<br><br>FRONTIER AIRLINES, INC., *et al.*,<br>        Defendants. | Case No: 2:19-CV-01322-KJD-DJA<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS AGAINST DEFENDANT FRONTIER AIRLINES, INC.** |

    Plaintiffs, Peter DelVecchia individually and as next friend of A. D., a minor, by counsel, respectfully submit this Reply in support of their Motion for Sanctions pursuant to Fed. R. Civ. P. 37(b)(2)(A) and/or the Court's inherent sanction authority against Defendant Frontier Airlines, Inc. ("Frontier")(ECF No. 128) for its dilatory and obstructionist discovery tactics relating to its

noncompliance with this Court's Orders. For the reasons set forth herein and in the Motion, the Court should grant the Motion.[1]

## I. Frontier admits its continuing dilatory and obstructionist conduct, and attempts to blame others for it.

Frontier unabashedly concedes that it has engaged in the precise conduct that forms the basis for Plaintiffs' Motion. First, it admits that it did not produce the first of 128 responsive documents until July 16, 2021, which was more than 14 months after Judge Albregts' May 8, 2020 Order compelling production of those documents (ECF No. 83), and at least 19 months after they should have been produced in response to Plaintiffs' October 7, 2019 and November 15, 2019 requests for production. *See,* Defendant Frontier Airlines, Inc.'s Response to Plaintiffs' Motion for Sanctions (ECF No. 134)("Resp."), at 4. Incredibly, after all of that inexcusable delay, Frontier describes its recent production as an "ongoing effort" in which it supposedly "continues to search" for responsive documents in some opaque manner and "anticipate[s] that more documents will be produced" at some undisclosed point in the future, further delaying Plaintiffs' ability to take its Rule 30(b)(6) deposition with a full set of responsive documents or finalize their experts' opinions. *See,* Resp. at 13. Frontier had 30 days to respond to the requests under Fed. R. Civ. P. 34(b)(2)(A), just like every other civil litigant. It has unilaterally decided to take more than 579 days just to *begin* its "ongoing effort" at responding, first by asserting baseless boilerplate objections similar to the ones it has asserted against more than three-fourths of Plaintiffs' legitimate discovery requests, then by successfully deflecting two prior motions to compel on procedural grounds, and then by blatantly ignoring the Order to compel signed by Judge Albregts (ECF No. 83) and the Order by Judge

---

[1] Frontier correctly notes that Plaintiffs' Motion did not mention the delay in its introductory sentences, even though delay is the central point of the first numbered argument in the Motion. Plaintiffs' counsel apologizes to the Court for the oversight; the grounds for the Motion expanded as it was being researched and written, and counsel neglected to circle back to the introductory language. Plaintiffs rely on both the delay and the redactions as bases for the sanctions requested.

Dawson affirming that Order to compel with one minor modification (ECF No. 120). Frontier's own explanation, in which it claims to "humbly acknowledge[ ] that this approach was not advisable absent a formal stay of discovery," Resp. at 12-13, actually acknowledges—without any humility whatsoever—that, upon being served with the original discovery requests, it did absolutely nothing to locate responsive documents and continued to do absolutely nothing until sometime after entry of Judge Dawson's Order more than 16 months later, when it merely *began* an undefined process of searching for documents, producing the first responsive documents four months after entry of that Order.[2] Moreover, Frontier provides no hint of when its unusually drawn out process of responding to Plaintiffs' discovery requests will be completed.

Second, Frontier admits that it redacted from the documents it has produced so far all information concerning the identities of the witnesses to the incidents described in the documents, without basing such redactions on any known legal privilege, any sustained objection made by it, or any authorization from the Court. *See,* Resp. at 10-12. As discussed in the Motion and more fully below, its dilatory and obstructionist conduct has prejudiced Plaintiffs and warrants the imposition of sanctions.

But even in the face of those admissions, Frontier refuses to take any responsibility for its dilatory and evidence-hiding actions. Instead, it shamelessly attempts to cast the blame onto Plaintiffs and the two federal Judges that have ordered it to produce the documents.

Despite the fact that "blame-the-victim" strategies never fare well in federal court, *see, e.g., Pavon v. Swift Transportation Co., Inc.,* 192 F.3d 902, 909 (9th Cir. 1999)(blame-the-victim mentality cited as justifiable basis for imposition of punitive damages); *U.S. v. O'Neal,* 969 F.2d 512, 515 (7th Cir. 1992)(blaming the victim cited as basis for denial of downward departure from recommended

---

[2] That statement is also an admission that Frontier had never obtained an agreement from Plaintiffs to delay the production until after Judge Dawson's ruling, contradicting its false claims elsewhere in its Response.

PLAINTIFFS' REPLY ON MOTION FOR SANCTIONS AGAINST DEFENDANT FRONTIER
Page 3 of 12

sentence), Frontier makes the blatantly false claim that Plaintiffs "acquiesced to the postponement of Frontier's document production until after Judge Dawson's ruling," Resp. at 14, even though the record in this case reflects no stipulations extending the time for Frontier's production of documents.[3] It bases its false claim of "acquiesce[nce]" solely on language contained in the parties' several stipulations to extend the pretrial deadlines, that merely stated that discovery is ongoing and that a full set of the documents requested by Plaintiffs would be needed before Plaintiffs could proceed with the Rule 30(b)(6) deposition of Frontier. Nothing in the language of those stipulations supports Frontier's false claim that Plaintiffs "acquiesced to the postponement of Frontier's document production until after Judge Dawson's ruling." In fact, the sole mention of the Rule 72(a) objections before Judge Dawson was in the Fourth and Fifth Stipulations (ECF Nos. 114 and 115), where the parties simply noted that the objections were pending, not that they had agreed to stall the production ordered by Judge Albregts until Judge Dawson had ruled on them. The only mention of an agreed delay in those filings pertained to the scheduling of certain depositions, not the production of documents. As noted in Plaintiffs' Motion, *see* ECF No. 128 at 4, the only possible result of a favorable ruling on the objections would have been the *expansion* of the scope of documents to be produced, so there would not have been any logical reason for allowing Frontier to delay the production while the objections were pending.[4]

   Moreover, Frontier's attempt to use the language of those Stipulations to cast blame on Plaintiffs for not expressing disapproval of Frontier's dilatory tactics is intentionally misleading. The sole purpose of the Stipulations was to extend the pretrial deadlines—most notably the deadlines for

---

[3] Frontier also fails to explain why, even if such an agreement had existed, it waited nearly four months after the entry of Judge Dawson's March 29, 2021 Order to begin looking for and producing responsive documents.

[4] Frontier claims on page 12 of its Response that it "understood" the parties would wait for Judge Dawson to rule on the objections, a unilateral understanding conveniently tailored to its desire to do nothing to uncover responsive documents. It cites no support from Plaintiffs for such an understanding.

the completion of discovery and disclosure of expert witness opinions—because discovery was unable to be completed by the deadlines and experts could not finalize their reports without having certain information from Frontier that Plaintiffs had requested in discovery and had not yet received. As noted in the Motion, there were multiple reasons why the extensions were necessary, including travel restrictions caused by the Covid-19 pandemic and the Transportation Security Administration's refusal to authorize the release of certain documents containing Sensitive Security Information ("SSI") even despite the Court's April 1, 2020 Order concerning SSI (ECF No. 76). Frontier's dilatory tactics relating to the documents at issue in this Motion certainly were an additional reason why the extensions were needed, but inserting language on that subject into a document containing language agreed upon by both sides proved impossible, and was not necessary to achieve the desired goal of extending the deadline dates. In fact, Frontier insisted on controlling the language contained in the Stipulations, and actually deleted from a redlined draft of the Sixth Stipulation language that Plaintiffs had added stating "Plaintiffs have issues with the time it has taken to produce responsive documents and the redaction of certain information from the documents produced." A screenshot of the relevant page of the redline is attached hereto as **Exhibit A**, and the language that Frontier deleted appears struck through at lines 19 and 20.[5] Frontier's counsel argued at the time that the issues concerning its delayed and redacted document production did not need to be raised in the Stipulation because they were being covered in Plaintiffs' Motion for Sanctions that would be filed on the following day. After Plaintiffs agreed to the deletion in order to get the Stipulation filed and the dates extended, and then filed their Motion for Sanctions, Frontier has the audacity to argue in response to the Motion that Plaintiffs "acquiesced" to the production delay because they never complained about it in the Stipulations, including the Sixth Stipulation. *See,* Resp. at 5. That argument should justify the

---

[5] Frontier's counsel supplied the initial draft of the Stipulation. Changes that Plaintiffs' counsel requested appear in light blue, and those that Frontier rejected appear in light blue strikethrough.

imposition of sanctions in and of itself. *See, e.g., Roberts v. American Energy Resources, Inc.*, 942 F.2d 793 (9th Cir. 1991)(sanctions upheld for "deliberately misleading the district court").

Frontier does not stop at attempting to lay the blame for its own actions at Plaintiffs' feet, as it also faults the contents of the Orders entered by Judges Albregts and Dawson. It attempts to justify a substantial portion of its more than 579 days of inaction on the fact that Judge Albregts' May 8, 2020 Order "included no deadlines for the production of documents," *see* Resp. at 3, and "Judge Dawson's modifying Order included no deadlines for the production of documents," *id.* at 4, as though in Frontier's view, a party can take an infinite amount of time to comply with a court order if its author does not include a specific deadline. That same claim of fault in the Judges' drafting of their Orders also appears to underlie Frontier's claim that "there has been no intentional delay." *See id.* at 2. Frontier appears to want the Court to believe that those 579+ days of inaction were the result of a mere attention lapse, primarily caused by the Judges' failure to specify a date certain for its compliance.

Similarly, Frontier lays the blame for its unauthorized redactions of relevant information from the documents on the grounds that the Orders did not specifically compel it to include that information: "However, Frontier was not ordered to produce personal identifying information involved in the complaints and reports to be produced, nor should it have been as such information is not relevant." *Id.* at 10. Frontier's logic in that assertion is as twisted as it is improper. It was ordered to produce documents that contain complaints and reports concerning discrimination and accusations of trafficking. The documents logically contain information that identifies the passengers who were discriminated against or accused of trafficking, just as a police or other investigative report would logically identify the persons involved, and Frontier never asserted any objection to producing the documents based on their inclusion of that personal identifying information. For it to claim that it can

*sua sponte* scrub that information from the documents it produces because the order compelling production did not specifically *order the inclusion* of that information stands all discovery law on its head and would allow any party to sanitize harmful information from documents on the same grounds. The mission of the Rules of Civil Procedure to ensure that discovery results in revealing the truth so that a "just" resolution can be obtained cannot countenance Frontier's position. *See, Conn. General Life Ins. Co. v. New Images of Beverly Hills,* 482 F.3d 1091, 1095-96 (9th Cir. 2007)("*New Images*")("These responses . . . amounted to avoidance, not compliance, with discovery obligations."); *see also Valley Engineers, Inc. v. Electrical Engineering Co.,* 158 F.3d 1051, 1058 (9th Cir. 1998)("There is no point to a lawsuit if it merely applies law to lies.").

Frontier's general arrogance and antipathy toward the process of discovery and its truth-seeking ends is illustrated by the following quotation from its Response:

> Plaintiffs claim in their Motion for Sanctions that the documents as received (with redactions) meet this purpose: "the Court can see that the redacted documents do, in fact, establish a pattern of racial profiling and false trafficking accusations by flight attendants assisted by Frontier pilots." ECF 128, p. 8. While Frontier vigorously disagrees with Plaintiffs' argument regarding those documents, to the extent Plaintiffs seek to establish that these instances were condoned or unaddressed by Frontier as a corporate employer, that information can only come ***from Frontier***, not the individual passengers involved in the occurrences described.

Resp. at 10-11 (bold, italics and underlining in original). In other words, Frontier seeks to usurp the right to decide what constitutes evidence in this case, and any opinions and/or observations that do not come from within its zone of control are deemed by it to be irrelevant. *See, New Images,* 482 F.3d at 1095 ("The practical effect, as any lawyer would anticipate, was to frustrate effective discovery that would expose fraudulent billing by preventing the insurance companies from finding employees who could testify to it.") Notably, Frontier labels the passengers involved in the complaints and reports as "perpetrators" and "potential victims," *see* Resp. at 2, even though none of the documents indicate that the accusations leveled by its employees against the passengers were well founded, and

several of them indicate that the law enforcement authorities called to detain passengers by its employees reported back that they found no evidence of criminal behavior whatsoever.[6] The fact that Frontier wishes to characterize law-abiding passengers as "perpetrators" and "potential victims" and expresses outrage at the suggestion that Plaintiffs would seek to contact them for their side of the story "in violation of this Court's Protective Order," *see id.*,[7] casts considerable doubt on the veracity of its claims that it redacted the identities of the passengers out of concerns for their privacy. Clearly, Frontier recognizes that the produced documents do, in fact, establish patterns of racial profiling and false accusations of human trafficking—many of which were based on observations of mixed race groups—and wishes to keep Plaintiffs from obtaining further proof of those facts from live witnesses. Its obstructionist conduct is well deserving of severe sanctions. *See, Merchant v. Corizon Health, Inc.,* 993 F.3d 733 (9th Cir. 2021) ("This case demonstrates that flouting generally applicable procedural rules—the rules of the game that all parties are entitled to rely upon and expect courts to enforce—has consequences. Sometimes even case-ending consequences.")

    **2.    Frontier is incorrect that Plaintiffs have requested "case dispositive" sanctions, but its conduct supports them.**

A case-dispositive sanction is, by definition, one that ends the case. *See, Von Brimer v. Whirlpool Corp.,* 536 F.2d 838, 844 (9th Cir. 1976); *see also* Fed. R. Civ. P. 72(a). Even if a particular sanction would set wheels in motion toward that result, it is not case-dispositive. *Id.* Plaintiffs have requested that Frontier be found in contempt of Court under Rule 37(b)(2)(A)(vii), a finding of established fact directly related to the discovery they sought, under (b)(2)(A)(i), and an

---

[6] *See, e.g.,* Exhibit A to the Motion at FRONTIER 0710-0715, 0718, 0736-37 (no indication that law enforcement officers found any wrongdoing by the passengers); FRONTIER 0716, 0738, 0743-44 (law enforcement officers interviewed the passengers and specifically found that no human trafficking was involved).

[7] Plaintiffs gave notice that they challenged Frontier's designation of the documents as "Confidential" under the Protective Order simultaneously with the filing of the Motion, *see* ECF No. 130, a fact conveniently omitted by Frontier. Frontier bears the burden of establishing that they are confidential and that contacting the witnesses would be forbidden under the terms of the Protective Order. See ECF No. 37, at ¶ 3.

Order prohibiting Frontier from introducing evidence to contradict that finding of fact, under (b)(2)(A)(ii). Those are less severe sanctions than the entry of a default judgment against Frontier under (b)(2)(A)(vi). Plaintiffs specifically chose those sanctions because the prejudicial effects of Frontier's conduct (such as being unable to analyze the effects of prior similar acts of discrimination and discuss them with potential witnesses, the inability to amend the Complaint to allege the pattern of conduct exposed by those prior acts, having to keep deposition plans on hold for numerous months, having to keep experts on hold, *etc.*), did exist in parallel to some extent with other delays that were not within Frontier's control, such as the Covid-19-related travel restrictions and the delays caused by TSA's failure to authorize the release of SSI documents. Had those other reasons for delay not existed, Plaintiffs would certainly have asked for a default judgment against Frontier for its conduct. But it is important to note that travel is now possible, and TSA has authorized the release of the SSI documents (at least to Plaintiff Peter DelVecchia and counsel John McKay; efforts are underway to get clearance to have them reviewed by Plaintiffs' experts), yet Frontier is still withholding the complete, unredacted set of the documents Plaintiffs requested back in 2019 and the Court ordered produced in 2020 and early 2021, and the resulting prejudicial effects on Plaintiffs' ability to prepare their case, conduct depositions, and finalize expert opinions are still being felt and are still delaying the progress of this case. Plaintiffs should be allowed to prove an established pattern by Frontier of allowing its employees to discriminate against passengers in violation of federal laws without any repercussions or remedial/preventative training on the avoidance of race, national origin and ethnicity discrimination, in order to obtain a just result on their claims brought under 42 U.S.C. § 1981. The requested sanctions would resolve the prejudicial effects of Frontier's conduct.

The sanction of default, like dismissal, would normally require a finding of willfulness, bad faith or fault, as well as application of the Ninth Circuit's 5-factor test to determine whether imposing

a case-terminating sanction is just. *Jorgensen v. Cassiday,* 320 F.3d 906, 912 (9th Cir. 2003); *New Images,* 482 F.3d at 1096. However, "'[d]isobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith or fault.'" *Jorgensen,* 320 F.3d at 912 (*quoting Hyde & Drath v. Baker,* 24 F.3d 1162, 1166 (9th Cir. 1994)). The burden rests on Frontier to show that its conduct resulted from circumstances beyond its ability to control, *see id.; see also Lestari v. Darmawan,* 131 F.3d 147 (9th Cir. 1997), and it has failed to do so. In fact, it proudly states that its conduct was pursuant to an "approach" of its own design, exacerbated by its own staffing and assignment decisions, *see* Resp. at 12-13. Frontier's conduct indisputably meets the 9th Circuit's standard for willfulness, bad faith and fault.

    **3.**    **No meet and confer was required.**

Frontier argues that the Motion should be denied because of what it claims is an insufficient meet and confer certification. Resp. at 6. Its argument is invalid, however, because no meet and confer session or certification is required for a Rule 37 motion. *See, Hoffman v. Construction Protective Svcs. Inc.,* 541 F.3d 1175, 1179 (9th Cir. 2008); *Cardoza v. Bloomin' Brands, Inc.,* Case No. 2:13-cv-01820-JAD-NJK (D. Nev. Nov. 12, 2015), at n.1; *Hester v. Vision Airlines, Inc.,* Case No. 2:09-cv-00117-RLH-NJK (D. Nev. Jan. 30, 2014); *Allstate Ins. Co. v. Nassiri*, 2010 WL 5248111, *3 (D. Nev. Dec. 16, 2011).

    **4.**    **Plaintiffs' Motion does not violate LR IC 2-2(b).**

Frontier's argument that the Motion violates LR IC 2-2(b) is similarly unavailing. The Motion seeks one type of relief: sanctions, under the authority of Rule 37 and/or the Court's inherent authority. The fact that the sanctions can take different forms does not make the Motion one that needed to be filed under different events in ECF. Rule 37(b)(2)(A) itself lists at least 7 different types of sanctions available under it, and the Court's inherent sanction powers arguably encompass even

more. *See, Primus Automotive Fin. Svcs., Inc. v. Batarse,* 115 F.3d 644, 648 (9th Cir. 1997). Pointing out that Frontier relies on demonstrably bad law to support its redactions is certainly appropriate in discussing its sanctionable conduct, and does not require the filing of a "separate motion" as Frontier argues, *see* Resp. at 7. Nor does asking the Court to require Frontier to produce unredacted documents under its inherent authority require a "standalone" motion to compel—Plaintiffs already won a motion to compel concerning the documents.[8]

### 5.   **Frontier did violate the Court's two Orders and did not "follow federal law".**

Frontier claims that it cannot be found to have violated the Court's two Orders. That could only be true in a world where taking more than a full year to produce a single document after being ordered to produce documents constitutes "obeying" an order, and *sua sponte* redacting information without any supporting objection being upheld and no privilege applying to the information also constitutes "obeying" an order. That is not this world. The Ninth Circuit upheld severe sanctions for similar conduct in *New Images, Valley Engineering, and Hester, supra.* It also upheld terminating sanctions against a dilatory party in *Fatima v. Stern (in re Fatima),* BAP No. CC-17-1235-LSKu, Adv. No. 8:16-ap-01175-MW (9th Cir. BAP May 29, 2018) where it noted:

> the [district] court found that its docket would be "hopelessly overburdened" if all litigants behaved as Ms. Fatima had behaved in the adversary proceeding, noting that Ms. Fatima's conduct had "significantly impeded resolution of this action, caused delay and [had] adversely impacted the Court's ability to adhere to a trial schedule. . . ."

Frontier also attempts to hide behind the contention that it was merely "complying with valid law," which it refers to as "*stare decisis.*" Resp. at 3 and 7. It relies on *Anders v. United Airlines, Inc.,* No. CV 19-5809-GW (KS), 2020 U.S. Dist. LEXIS 250250 (E.D. Cal., Dec. 18, 2020), in support of its "*stare decisis*" argument, urging this Court to follow "[a]nother district court in this Circuit [that]

---

[8] However, that request should have been made in the alternative, as the granting of the sanction establishing the history of incidents and lack of training would likely make contacting the witnesses named in the documents unnecessary.

recently condoned the exact position taken by Frontier." In doing so, it violates the cardinal rule that decisions from other district courts are not binding precedent. *See, Scott v. Gier,* 29 F.3d 634, n. 1 (9th Cir. 1994)(*citing U.S. v. 45/194 Kg. Drums of Pure Veg. Oil,* 961 F.2d 808, 812 n. 3 (9th Cir.), *cert. denied,* 113 S. Ct. 375 (1992)). The Local Rules of this Court forbid even using decisions by other Judges in this Court as precedent. LR IA 7-3(f). But more importantly, *Anders* and the other cases cited in Plaintiffs' Motion are cases where Judges interpreted the language of a federal regulation—poorly. *See,* Motion at 10-20. The applicable federal law is the regulation itself, because its language is unambiguous and requires no interpretation. "It is a fundamental canon that where the statutory text is plain and unambiguous, a court must apply the statute according to its terms." *Salisbury v. City of Santa Monica,* 994 F.3d 1056, 1062 (9th Cir. 2021)(internal citations omitted). Under the holding of *Salisbury,* courts are unauthorized to engage in interpretation beyond such language. *Id.* at 1062-63. By its plain language, 14 C.F.R. Part 243 applies only to "covered" international flights (which the flight at issue was not), and its confidentiality requirement applies only to the non-passenger emergency contact information that a passenger might or might not supply to the airline (which is not what Frontier redacted from the documents). Frontier's argument is spurious, and sanctions should be imposed as requested.

DATED this 10th day of September, 2021.

                /s/ John D. McKay
John D. McKay (admitted *pro hac vice*)
PARK AVENUE LAW LLC
127 W. Fairbanks Ave., No. 519
Winter Park, FL 32789
johndmckayatty@gmail.com
(434) 531-9569

Timothy R. Titolo (Nev. Bar. No. 3617)
TITOLO LAW OFFICE
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 869-5100
tim@titololaw.com
***Attorneys for Plaintiffs***

PLAINTIFFS' REPLY ON MOTION FOR SANCTIONS AGAINST DEFENDANT FRONTIER
Page 12 of 12