1  Timothy R. Titolo, Esq.
   Nevada Bar No. 003617
2  TITOLO LAW OFFICE
   9950 West Cheyenne Ave.
3  Las Vegas, Nevada 89129
   (702) 869-5100
4  tim@titololaw.com

5
   John D. McKay, Esq.
6  *Admitted pro hac vice*
   PARK AVENUE LAW LLC
7  127 W. Fairbanks Ave. No. 519
   Winter Park, Florida 32789
8  (434) 531-9569
   johndmckayatty@gmail.com
9

10 ***Attorneys for Plaintiffs***

11

12                  UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEVADA
13

14 PETER DELVECCHIA, *et al.*,          )      **Case No: 2:19-CV-01322-KJD-DJA**
15                                       )
                    Plaintiffs,          )
16                                       )      **PLAINTIFFS' REPLY IN**
                                         )      **SUPPORT OF SECOND**
17 vs.                                   )      **MOTION FOR LEAVE TO**
                                         )      **AMEND THE COMPLAINT**
18                                       )
                                         )
19 FRONTIER AIRLINES, INC., *et al.*,    )
                    Defendants.          )
20 _____)

21

22      Plaintiffs, Peter DelVecchia individually and as next friend of A. D., a minor, by counsel,

23 respectfully submit this Reply in support of their Second Motion for Leave to Amend the Complaint

24 (ECF No. 132). For the reasons set forth herein and in the Motion, the Court should grant the Motion.

25      **I.      Defendants have fabricated a citation to authority.**

26      Defendants begin their Opposition on an ignominious note, citing to a quotation from a Ninth

27 Circuit case that they have doctored to support their arguments. In footnote 1 to their Opposition,

28

1   Defendants cite the following as a direct quotation from *Miller v. Rykoff-Sexton, Inc.,* 845 F.2d 209,

2   214 (9th Cir. 1988): "A 'motion for leave to amend may be denied if it appears to be futile or legally

3   insufficient. In considering futility, the Court applies an analysis identical to that used for Rule

4   12(b)(6) motions.'" Opposition at 2, n.1. The *actual* language of the opinion is the following:

5

6       The plaintiff argues that amendment would have been futile because the settlement
        never occurred. A motion for leave to amend may be denied if it appears to be futile or
7       legally insufficient. *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th
        Cir.1986). However, a proposed amendment is futile only if no set of facts can be proved
8       under the amendment to the pleadings that would constitute a valid and sufficient claim
        or defense. *Baker v. Pacific Far East Lines, Inc.*, 451 F.Supp. 84, 89 (N.D.Cal.1978);
9       *see generally* 3 J. Moore, Moore's Federal Practice p 15.08 (2d ed. 1974) (proper test to
        be applied when determining the legal sufficiency of a proposed amendment is identical
10      to the one used when considering the sufficiency of a pleading challenged under Rule
        12(b)(6)).
11

12  Defendants have deliberately manipulated the Court's language, omitting the qualifying sentence

13  reading, "However, a proposed amendment is futile only if no set of facts can be proved under the

14  amendment to the pleadings that would constitute a valid and sufficient claim or defense," and adding

15  to the alleged quotation a sentence wholly of their own creation: "In considering futility, the Court

16  applies an analysis identical to that used for Rule 12(b)(6) motions." That sentence was created  using

17  some of the language in the Court's "*see generally*" citation to Moore's Federal Practice, but it is

18  falsely represented to be part of the Court's holding and is taken entirely out of the context in which

19  the Court used that citation. *Cf. Price v. Stossel,* 620 F.3d 992, 995 (9th Cir. 2010)("Where the

20  published quotation contains a material alteration of the meaning conveyed by the speaker, the

21  published quotation is false.") The Court in *Miller* actually reversed the district court on abuse of

22  discretion grounds for denying a motion to amend that was made ten months prior to trial. *See,* 845

23  F.2d at 211. It held that the amendment was not futile, because it raised significant issues of fact that

24  the district court should have considered, and therefore it was an abuse of discretion to deny the

25  motion to amend. *Id.,* at 214.

1

2

Defendant's misrepresentation of authority sets the stage from the outset for a brief that is

long on hyperbole and short on substance.

3

### 2.     Defendant's Rule 8 argument lacks merit.

4

5

6

Defendants' first argument is the product of cutting and pasting essentially verbatim the 9th

Circuit's discussion in *Cal. Coalition for Families and Children v. San Diego Cty. Bar Ass'n,* 657 F.

7

App'x 675 (9th Cir. 2016), a decision that involved a 251-page complaint containing 1,397 additional

8

pages of exhibits. Defendants fail to present any argument tending to compare that complaint to

9

Plaintiffs' proposed Third Amended Complaint. In fact, after citing the case-specific conclusions of

10

six more decisions in other cases (half of which are not precedential because they are district court

11

12

decisions, *see NASD Dispute Resolution, Inc. v. Jud. Council of Cal.,* 488 F.3d 1065, 1069 (9th Cir.

13

2007)), Defendants wholly abandon any attempt at demonstrating that the same or similar

14

conclusions should apply to the allegations of the Third Amended Complaint. If their goal was to

15

show that the amendment would somehow be futile, they have failed to take even a first step in its

16

direction.

17

18

Defendants' sole argument under Rule 8 appears to be that "what started as a 15-page

19

Complaint has ballooned into Plaintiffs' proposed 39-page Third Amended Complaint." *See*

20

Opposition at 4. While they readily concede, as they must, that the length of a proposed amended

21

complaint is not determinative of whether or not the movant should be permitted to amend, *see id.*,

22

23

they do not offer any examples of how the allegations of the Third Amended Complaint are somehow

24

redundant, irrelevant, confusing or conclusory so as to support a violation of Rule 8(a). All they offer

25

is a claim that a "background section[ ]" that does not exist in the Third Amended Complaint and an

26

introduction section that does exist "contain information that is immaterial, incorrect and/or

27

argumentative and would make answering an unnecessarily difficult task for Defendants." *Id.* at 4-5.

28

If anyone is guilty of being conclusory, it is Defendants, as they offer no specific examples of

PLAINTIFFS' REPLY ON SECOND MOTION TO AMEND
Page 3 of 10

information in the Third Amended Complaint that is "immaterial, incorrect and/or argumentative," or how exactly responding to the Third Amended Complaint would be "an unnecessarily difficult task for Defendants." Plaintiffs respectfully disagree with those unsupported contentions. The expanded allegations of the proposed Third Amended Complaint are the natural result of Plaintiffs obtaining additional factual information in discovery (which has been an unnecessarily drawn out process due to Defendant Frontier's dilatory conduct, *see* Plaintiffs' Motion for Sanctions, ECF No. 128) that provide additional legal support for Plaintiffs' five counts. For example, Plaintiffs are now able to allege that Frontier was previously specifically reminded by the U.S. Department of Transportation of its obligations under federal law to avoid having its employees discriminate against passengers based on their race, color or ethnicity, yet Frontier took no steps to train or educate its employees about those obligations and in fact condoned numerous instances where its employees made unfounded accusations against passengers who were persons of color and multiracial couples or groups, similar to those that it made against Plaintiffs, a mixed-race family. The materials that Plaintiffs have obtained in discovery—and are still receiving from Frontier on a piecemeal basis despite two orders compelling their production many months ago—permit Plaintiffs to allege that Frontier has endorsed a pattern of racially discriminatory behavior that supports Plaintiffs' claims for compensatory and punitive damages to a greater degree than what they were previously able to allege. In addition, knowledge obtained recently through discovery has disclosed to Plaintiffs the expansive use throughout Frontier's business enterprise of its "Navitaire" reservations software, and how the defamatory statements its employees and agents entered into that system concerning Plaintiffs is able to be viewed by numerous other employees and agents, thus adding additional foundation to the publication element of Plaintiffs' defamation claims. Plaintiffs should be permitted to allege those foundational facts that Frontier withheld from them for nearly two years.

1

2       The Ninth Circuit's decision in *Hearns v. San Bernardino Police Dept.*, 530 F.3d 1124 (9th

3   Cir. 2008), is instructive here. In that case, the plaintiff originally filed an 81-page complaint alleging

4   civil rights violations by her employer. 530 F.3d at 1127. The district court granted the defendants'

5   motion to dismiss on the ground that the complaint violated Rule 8(a), with leave to file an amended

6   complaint. *Id.* The plaintiff filed a 68-page amended complaint, with the majority of the 13-page

7   reduction resulting from "narrowing the margins." *Id.* The district court granted a second motion to

8   dismiss, this time with prejudice. The Ninth Circuit reversed the dismissal, noting:

9
> On appeal, Defendants do not attempt to identify particular allegations as immaterial or
10  > unnecessary. They do not assert that the complaint fails to set forth cognizable causes
    > of action, that the legal theories are incoherent, or that they cannot tell which causes of
11  > action are alleged against which Defendants. They simply object that the complaint
    > provides too much factual detail. The part that has been attacked as prolix is the Factual
12  > Background section, reciting Plaintiff's education, military service, training, promotion
    > and demotion history, and discrimination incidents. We reject Defendants' argument and
13  > conclude that neither complaint violated Rule 8(a).

14
*Id.* at 1130. The Court also noted that "'a dismissal for a violation under Rule 8(a)(2), is usually
15
confined to instances in which the complaint is so verbose, confused and redundant that its true
16
substance, if any, is well disguised.'" *Id.* at 1131 (*quoting Gillibeau v. City of Richmond,* 417 F.2d
17
426, 431-32 (9th Cir.1969), internal quotation marks omitted). It distinguished several of the same
18
cases that Defendants have cited in their Opposition:
19

20
> By contrast, the complaint at issue here was not "replete with redundancy and largely
21  > irrelevant." *Cf. McHenry [v. Renne]*, 84 F.3d [1172,] 1177 [(9th Cir. 1996)]. It set out
    > more factual detail than necessary, but the overview was relevant to Plaintiff's causes of
22  > action for employment discrimination. Nor was it "confusing and conclusory." *Cf.*
    > *Nevijel [v. North Coast Life Ins. Co.]*, 651 F.2d [671,] 674 [(9th Cir. 1981)]. The
23  > complaint is logically organized, divided into a description of the parties, a
    > chronological factual background, and a presentation of enumerated legal claims, each
24  > of which lists the liable Defendants and legal basis therefor. The [First Amended
    > Complaint] and the original complaint contain excessive detail, but are intelligible and
25  > clearly delineate the claims and the Defendants against whom the claims are made.
    > These facts distinguish this complaint from the ones that concern the dissent. Here, the
26  > Defendants should have no difficulty in responding to the claims with an answer and/or
    > with a Rule 12(b)(6) motion to dismiss.
27

28

PLAINTIFFS' REPLY ON SECOND MOTION TO AMEND
Page 5 of 10

530 F.3d at 1132 (bracketed material supplied). Similarly, the Third Amended Complaint contains an expanded Introduction section, necessary to describe the complex factual situation that underlies Plaintiffs' civil rights and state court tort claims—how they were subjected to unwarranted surveillance on the flight by the flight attendants based solely on their appearance as a mixed-race family, how that surveillance rapidly evolved into false accusations of human trafficking, how the pilots' involvement encouraged the flight attendants to find more "evidence" of wrongdoing to support calling the police on Plaintiffs, how the flight attendants engineered a false claim of sexual molestation, how one of them attacked Plaintiff Peter DelVecchia, striking him on the head and neck, leading to the false imprisonment of Plaintiff A.D. in the rear of the aircraft, and how the flight attendants and other employees and agents of Frontier spread the entirely false accusations of sexual crimes among the other passengers of the flight and throughout Frontier's entire business enterprise, through text messages to its base and through entries in its Navitaire software system that any employee or agent of the company can access. The presentation of the complex facts in summary fashion in the Introduction lends context to the numbered allegations that follow it. While perhaps not strictly necessary, the Introduction aids the reader by providing an overview of the events. As in *Hearns*, "the overview [i]s relevant to Plaintiffs['] causes of action for […] discrimination." Moreover, "Defendants should have no difficulty in responding to the claims with an answer and/or with a Rule 12(b)(6) motion to dismiss." 530 F.3d at 1132.

**3.     Plaintiffs have shown good cause for leave to amend.**

The overarching purpose of Rule 16 is "to get cases decided on the merits of issues that are truly meritorious and in dispute," and the District Court has broad discretion to manage its pretrial docket to achieve that end. *In re Phenylpropanolamine (Ppa) Products*, 460 F.3d 1217, 1227 (9th

Cir. 2006). Under normal circumstances, prompt and appropriate responses by the Defendants to discovery would have led to prompt amendments to include additional relevant factual bases for Plaintiffs' claims. However, these were not normal circumstances. Beyond the discovery delays imposed by the Covid-19 pandemic, there were additional delays caused by the TSA's refusal to allow certain relevant documents to be disclosed by Frontier to Plaintiffs, and, most importantly, Frontier's own outrageous conduct resulting in delays (to this day) in producing relevant documents that were requested by Plaintiffs in October of 2019, well before the deadline for amendments. *See* Plaintiffs' Motion for Sanctions, ECF No. 128. Based on Frontier's meager initial disclosures, Plaintiffs rushed to get an amendment naming the Doe Defendants on record prior to that deadline, but they had no idea at that time that Frontier would begin to disclose documents *two years later* that would reveal a years-long pattern of discriminatory behavior that is highly relevant to Plaintiffs' claims for compensatory and punitive damages under 42 U.S.C. § 1981. That alone should constitute good cause and excusable neglect sufficient to grant the Motion.

It is unconscionable that Defendants should seek to prevent on timeliness grounds an amendment that incorporates information obtained in discovery, when the lead Defendant, Frontier, has been intentionally frustrating and delaying Plaintiffs' legitimate efforts to obtain that information pursuant to the rules of discovery. In fact, had Frontier followed those rules and responded in good faith to the document requests thirty days after they were initially served in October of 2019, rather than asserting baseless boilerplate objections to them and then frustrating Plaintiffs' several attempts to have a motion to compel heard by the Court, Plaintiffs would have been in possession of much of the information needed to do this amendment in time to meet the amendment deadline of November 26, 2019. Instead, Plaintiffs have been receiving relevant documents piecemeal and as recently as four days ago, September 17, 2021, when Frontier dumped an additional 450-page set of documents

on them. Defendants cannot have it both ways, purposely delaying Plaintiffs' receipt of discovery responses and then arguing that Plaintiffs should have moved to amend sooner based on the information contained in those responses.

Moreover, Defendants have not identified any prejudice whatsoever in their Opposition. As noted in Plaintiff's Motion, every fact pleaded in the Proposed Third Amended Complaint is a fact that has been known to Frontier since the inception of this action, but unknown to Plaintiffs until recently due to Frontier's dilatory conduct. As pointed out in Plaintiffs' recent Motion for Rule 37 Sanctions, Frontier has been guilty of withholding those facts from Plaintiffs in discovery, dribbling them out over a period of years in blatant violation of this Court's Orders compelling production. As noted above, its most recent substantive production of documents pursuant to the Court's May 8, 2020 and March 29, 2021 Orders occurred only four days ago, when it produced a new 450-page set of documents that respond to Plaintiffs' discovery requests served on Frontier in October and November of 2019. Plaintiffs have no knowledge of when Frontier's rolling production of documents will be complete; they have attempted to deal in good faith with the fact that documents responsive to those 2019 document requests have been trickling in over a period of two years, without any indication from Frontier as to when the next documents will arrive or when the production will be complete. Plaintiffs certainly hope that this requested amendment will be the last, but unfortunately they have no idea what Frontier is still withholding (and they have not yet had an opportunity to review the 450 pages of documents that Frontier released four days ago). If the Court were to deny Plaintiffs the ability to amend based on new information that Frontier is only just disclosing, two years after it was requested in a proper discovery request, then it would be essentially rewarding Frontier for its conduct aimed at denying Plaintiffs a fair opportunity to present their claims.

Although Defendants assert that Plaintiffs should have moved to amend sooner, the real questions are: When will Frontier complete its response to the 2019 discovery requests that the Court ordered it to provide in May of 2020 and March of 2021? When will Plaintiffs finally have a complete and true picture of Frontier's past and ongoing discriminatory conduct toward its passengers, that is highly relevant to Plaintiffs' § 1981 claims for compensatory and punitive damages? Frontier produced 200 pages of responsive documents in July of 2021, 79 pages in August, and 450 pages in September thus far. It claims that its "search for responsive documents is continuing," despite the fact that the requests were served two years ago. Under the argument presented in its Opposition to the Motion, Plaintiffs would be required to file a new motion to amend every month. Some common sense and basic fairness must be applied to the situation caused by Frontier's own conduct. Plaintiffs certainly hope that this requested amendment will be the last one that is necessary, but only Frontier knows what it has yet to disclose.

### 4.      Plaintiffs have not disclosed any proprietary information.

Finally, Defendants' claim that the Third Amended Complaint contains confidential information is baseless. There are no trade secrets or other proprietary information of Frontier revealed in the allegations of the proposed pleading. The pleading merely recites facts relevant to Frontier's conduct concerning Plaintiffs, which Frontier cannot shield from view by claiming that those facts are somehow "confidential" ones. Moreover, Defendants have not exercised good faith in bringing their claim, since Plaintiffs' counsel provided the proposed Third Amended Complaint to defense counsel on August 18, 2021, two days before Plaintiffs filed their Motion to Amend and almost a full month before Defendants filed their Opposition. Defense counsel never notified Plaintiffs' counsel of any objection to its contents. If Defendants truly believed that the proposed pleading contains confidential information, their counsel should have brought that belief to the

attention of Plaintiffs' counsel upon receipt of the draft pleading, rather than waiting to "sandbag" Plaintiffs in a Court filing.

### Conclusion

Given the abnormal delays that have occurred in this case, most notably the ones that were entirely under Defendant Frontier's control and deliberately engineered by it (a situation that continues to the present day), Plaintiffs have been diligent in moving to amend in response to the influx of new information from Frontier, and their Motion satisfies the good cause and excusable neglect standards needed for granting the Motion. For all of the reasons set forth above and in the Motion itself, Plaintiffs respectfully request that the Court grant the Motion for Leave to Amend.

DATED this 21st day of September, 2021.

_____/s/ John D. McKay_____
John D. McKay (admitted *pro hac vice*)
PARK AVENUE LAW LLC
127 W. Fairbanks Ave., No. 519
Winter Park, FL 32789
johndmckayatty@gmail.com
(434) 531-9569

Timothy R. Titolo (Nev. Bar. No. 3617)
TITOLO LAW OFFICE
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 869-5100
tim@titololaw.com
***Attorneys for Plaintiffs***