Timothy R. Titolo, Esq.
Nevada Bar No. 003617
TITOLO LAW OFFICE
9950 West Cheyenne Ave.
Las Vegas, Nevada 89129
(702) 869-5100
tim@titololaw.com

John D. McKay, Esq.
*Admitted pro hac vice*
PARK AVENUE LAW LLC
127 W. Fairbanks Ave. No. 519
Winter Park, Florida 32789
(434) 531-9569
johndmckayatty@gmail.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| PETER DELVECCHIA, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> FRONTIER AIRLINES, INC., *et al.*, <br> Defendants. | Case No: 2:19-CV-01322-KJD-DJA <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT FRONTIER'S MOTION FOR PROTECTIVE ORDER (ECF No. 137)** |

  Plaintiffs, Peter DelVecchia ("Peter") individually and as next friend of A. D., a minor, by counsel, hereby file this Opposition to Defendant Frontier Airlines, Inc.'s ("Frontier's") Motion for a Protective Order (ECF No. 137) regarding Exhibit A to Plaintiffs' Motion for Sanctions (ECF No. 128), which exhibit was filed under seal for the sole reason that Defendants had designated its contents as "CONFIDENTIAL" under the parties' Agreed Protective Order entered in this case on October 10, 2019 (ECF No. 37). For the reasons set forth below, including Frontier's failure to follow

PLAINTIFFS' OPPOSITION TO FRONTIER'S MOTION FOR PROTECTIVE ORDER
Page 1 of 10

the required procedure and failure to meet the Ninth Circuit's legal standards required for sealing documents, the Motion should be denied.

## ARGUMENT

### I. Frontier has not followed the procedure mandated by the Court's October 10, 2019 separate Order (ECF No. 38), so the documents should be unsealed.

When this Court approved the Agreed Protective Order that Frontier had insisted on having entered in this case, it entered a separate Order on the same date, October 10, 2019, reminding counsel of the presumption in favor of public access to judicial records outlined in the Ninth Circuit's opinion in *Kamakana v. City and County of Honolulu,* 447 F.3d 1172 (9th Cir. 2006), and clarifying that the entry of the parties' Agreed Protective Order did not, in and of itself, establish the confidentiality of any document designated under it:

> The Court has approved the blanket protective order to facilitate discovery exchanges. But **there has been no showing, and the Court has not found, that any specific documents are secret or confidential**. The parties have not provided specific facts supported by declarations or concrete examples to establish that a protective order is required to protect any specific trade secret or other confidential information pursuant to Rule 26(c) or that disclosure would cause an identifiable and significant harm.

ECF No. 38, at 1-2 (emphasis in original). The Court also instructed the parties to follow a specific procedure in cases where the motion to seal is based solely on the fact that another party has designated a document as confidential, which is precisely the situation in the instant Motion:

> If the sole ground for a motion to seal is that the opposing party (or non-party) has designated a document as confidential, the designator shall file (within seven days of the filing of the motion to seal) either (1) a declaration establishing sufficient justification for sealing each document at issue or (2) a notice of withdrawal of the designation(s) and consent to unsealing. If neither filing is made, the Court may order the document(s) unsealed without further notice.

> **IT IS ORDERED** that counsel shall comply with the requirements of Local Rule IA 10-5, the Ninth Circuit's decision in *Kamakana,* 447 F.3d 1172, and the procedures outlined above, with respect to any documents filed under seal. To the extent any aspect of the stipulated protective order may conflict with this order or Local Rule IA 10-5, that aspect of the stipulated protective order is hereby superseded with this order.

*Id.,* at 2 (underlining in original). Frontier has not complied with that procedure, even though Plaintiffs' Motion to Seal (ECF No. 130) concerning Exhibit A to their Motion for Sanctions explicitly stated that "The sole reason for Plaintiffs seeking leave to file the documents under seal is that Frontier produced them stamped "CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER" indicating designation under the Protective Order entered in this action on October 10, 2019 (ECF No. 37)." ECF No. 130, at 1-2. Frontier, as the "designator," was required to file either "a declaration establishing sufficient justification for sealing each document at issue," or "a notice of withdrawal of the designation(s) and consent to unsealing." ECF No. 38, at 2. It has filed neither. The deadline for doing so was seven days after Plaintiffs' filing of the Motion to Seal on August 20, 2021, which was August 27.[1] As the Court's Order clearly indicates, failure to make either filing means "the Court may order the document(s) unsealed without further notice." *Id.* Frontier's failure to follow the Court's specifically mandated procedure therefore justifies unsealing the documents and denying its Motion.

II. **Frontier's Motion does not meet the *Kamakana* standards for establishing that the documents need to be kept under seal.**

The Court notified the parties in no uncertain terms that the standards discussed in *Kamakana* would control the resolution of any dispute concerning whether or not the contents of any document justified filing the document under seal. *See* ECF No. 38 at 1-2. The *Kamakana* Court held:

> Unless a particular court record is one traditionally kept secret, a strong presumption in favor of access is the starting point. A party seeking to seal a judicial record then bears the burden of overcoming this strong presumption by meeting the "compelling reasons" standard. That is, the party must articulate compelling reasons supported by specific

---

[1] Paragraph 3 of the parties' Agreed Protective Order (ECF No. 37) states that a designator has 30 days after being notified of a challenge to a particular document's designation to file "a specific Motion for Protective Order with respect to such material." That is apparently the procedure Frontier has followed, *see* Motion at 3. However, that procedure is not for responding to a Motion to Seal, and the Court's Order (ECF No. 38) for such circumstances specifically provides, in underlined text, that its terms supersede any conflicting terms in the parties' stipulated protective order. *See* ECF No. 38 at 2.

factual findings, that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process.

447 F.3d, at 1178-79 (internal citations and quotation marks omitted). The Court went on to enunciate a specific standard for what constitutes "compelling reasons":

> In general, "compelling reasons" sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such court files might have become a vehicle for improper purposes, such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets. The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records.

*Id.,* at 1179 (internal citations and quotation marks omitted). Although the *Kamakana* Court carved out an exception to the "compelling reasons" requirement for documents filed with "non-dispositive motions," requiring only good cause to be shown for sealing such documents, *see id.* at 1179-80, the Ninth Circuit revisited that exception a decade later in *Center for Auto Safety v. Chrysler Grp., LLC,* 809 F.3d 1092 (9th Cir. 2016)("*CAS*"), to align with other Circuits that "reject[ ] a mechanistic rule to determine when the presumption of public access applies." 809 F.3d, at 1099. Instead of applying a purely literal distinction between "dispositive" and "non-dispositive" motions, as had been suggested in *Kamakana*, the *CAS* Court held that the distinction between applying the "compelling reasons" test or the "good cause" test should rest with how the subject motion relates to the merits of the case:

> Consistent with our precedent, we make clear that public access to filed motions and their attachments does not merely depend on whether the motion is technically "dispositive." Rather, public access will turn on whether the motion is more than tangentially related to the merits of a case. While many technically nondispositive motions will fail this test, some will pass. Our reading of the public access cases is consistent with our own case law, and more importantly, comports with the old tradition of ensuring public access which "antedates the Constitution and ... is now beyond dispute."

809 F.3d, at 1101 (*quoting Leucadia, Inc. v. Applied Extrusion Tech., Inc.,* 998 F.2d 157, 161 (3d Cir. 1993)).

Applying the *Kamakana* standards and the *CAS* clarification, it is clear that the "compelling reasons" test applies to the Motion for Sanctions and its Exhibit A, rather than the "good cause" test—although Frontier's Motion fails to meet the standards of either test.

Plaintiffs' Motion for Rule 37 Sanctions (ECF No. 128) is far more than "tangentially" related to the merits of Plaintiffs' claims under 42 U.S.C. §1981. It pertains to a years-long history of Frontier condoning racial and ethnic stereotyping and discriminating against its passengers of color by its employees, including flight attendants, pilots and other managerial staff, and falsely accusing mixed race groups of passengers of human trafficking for sexual purposes, forcing many of them to undergo the humiliation of being turned over to law enforcement authorities at the end of flights, often in full view of the other passengers. The documents attached to the Motion describe numerous instances of such incidents and their condonation by fellow employees and managerial staff, even though none of the reports indicate that the accusations were well-founded in truth, and some even reveal that the law enforcement authorities investigated the accusations and reported back to Frontier that they found no wrongdoing by the passengers at all. Those documents, as well as hundreds of others produced by Frontier after the Motion was filed—which will be the subject of a supplemental motion for sanctions due to their improper redactions—reveal that Frontier's customer service personnel routinely responded to customer complaints of discrimination with a boilerplate assertion that the company does not condone discrimination, while taking no steps whatsoever to investigate the complaints, discipline employees, or even train employees in the avoidance of passenger discrimination despite being specifically informed by the Department of Transportation of the federal statutes prohibiting discrimination and the need for specific training.[2] Plaintiffs were just some of the

---

[2] In fact, the constant repetition of customer complaints and Frontier's boilerplate vacuous responses over a five-year period strongly suggests that the pattern has probably continued for decades, although the Court limited Plaintiffs' discovery to only five years prior to their own incidents, *see* ECF No. 83.

more recent victims of Frontier's pattern of discrimination, and their §1981 claims stem from this repeated and reprehensible pattern. Their Motion for Sanctions addresses Frontier's deliberate conduct to prevent disclosure of the pattern in discovery, by asserting baseless boilerplate objections to discovery requests and delaying production of relevant documents even after two Court Orders compelling production. Moreover, it addresses the fact that Frontier has, wholly without valid legal authority or Court authorization, redacted from the documents it has produced all identifying information about the complaining passengers and the accused passengers, and even some of the identifying information about the Frontier employees involved (such as employee numbers), with the obvious aim of preventing Plaintiffs from obtaining statements and other evidence from the persons most knowledgeable about this pattern of discrimination.[3] The subject matter, a longstanding pattern of racial and ethnic discrimination and false charges of human sex trafficking that Frontier has attempted to sweep under the rug, is central to the merits of Plaintiffs' §1981 claims, and therefore warrants the application of the "compelling reasons" test under *Kamakana* and *CAS*.

Frontier's Motion for Protective Order does not provide declarations or specific findings of fact to support any claim that the incident reports and customer complaints might, if unsealed, "become a vehicle for improper purposes, such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana,* 447 F.3d, at 1179. It has not demonstrated that the information contained in those records is of a type "traditionally kept secret," *id.* at 1178, but only claims that it is information that "*Frontier* maintains in strict confidence," Motion at 4, which is an altogether different and self-serving standard. Where the central issue is one of the public's historical expectation of access to judicial records, the alleged habits of a single corporation are not the "tradition" to which the Ninth Circuit referred. Frontier's

---

[3] It is even possible that Frontier has obliterated additional types of information in its numerous redactions, because it has failed to provide Plaintiffs with any type of redaction log.

stated concern that public disclosure of prior complaints of discrimination and false accusations of criminal behavior levied at mixed race passenger groups "could also result in unwarranted and unnecessary negative commercial repercussions to Frontier," *see id.* at 6, is precisely the kind of non-determinative assertion that the Ninth Circuit referenced in stating, "[t]he mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana,* 447 F.3d, at 1179. Its claim that disclosure of the records would demonstrate "how Frontier addressed those situations in accordance with their [*sic*] internal policies and procedures," Motion at 6, is equally unpersuasive since examination of the records reveals that it did not deal with the customer complaints or discipline its employees for making false accusations at all. That is the point discussed in Plaintiffs' Motion for Sanctions.

Remarkably, Frontier's Motion never mentions the controlling Ninth Circuit precedent. Instead, it bases its entire argument that "federal case law supports Frontier's request that the confidentiality of such documents be maintained," *see* Motion at 4-5, on several non-precedential district court opinions from other Circuits. Examination of those district court opinions reveals few if any similarities to the instant situation. For example, the plaintiffs in *Dozier v. Waffle House, Inc.,* 2005 U.S. Dist. LEXIS 40245 (N.D. Ga. May 4, 2005), were not seeking evidence to support a pattern of longstanding discrimination against people of color or mixed race groups; the district court determined that the plaintiffs were merely interested in "sharing information with other Waffle House litigants." Case No. 1:03-cv-03093-ODE (N.D. Ga. May 4, 2005), slip op. at 31-32. *Abreu v. New Jersey,* 2015 U.S. Dist. LEXIS 172621 (D.N.J. Dec. 29, 2015), *Gillum v. ICF Emergency Mgmt. Servs., L.L.C.,* No. 08-314-C-M2, 2009 U.S. Dist. LEXIS 60693 (M.D. La. July 16, 2009), and *McKenna v. City of Philadelphia,* 2000 U.S. Dist. LEXIS 15735 (E.D. Pa. Sept. 29, 2000), all were

decisions on motions to compel discovery, not motions to seal documents, and the district court's accompanying Order to its Memorandum Opinion in *Rosenblit v. City of Philadelphia,* No 20-3121-KSM, 2021 U.S. Dist. LEXIS 16042 (E.D. Pa. January 28, 2021), specifically stated: "Nothing in this opinion authorizes the filing of any document under seal." *See* Order, January 28, 2021, at 2 ¶ 5 (copy attached hereto as **Exhibit A**). Thus, besides being non-precedential, the decisions cited by Frontier are inapposite. Nothing in Frontier's Motion establishes that compelling reasons exist requiring the specific documents attached to Plaintiffs' Motion for Rule 37 Sanctions as Exhibit A to be kept under seal.

### III.    Frontier fails to identify any specific harm that would result from unsealing the documents.

Even under the lesser standard of "good cause" borrowed from Rule 26(c), Frontier was required to identify specific harm that would result from unsealing the particular documents that are included in Exhibit A to the Motion for Sanctions. In the context of a motion for protective order, the Ninth Circuit has made it clear that "'[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.'" *Beckman Industries, Inc. v. International Ins. Co.,* 966 F.2d 470, 476 (9th Cir. 1992)(*quoting Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3rd Cir.1986)). Yet, that is all that Frontier offers. In the two short paragraphs of its 8-page Motion that discuss the specific documents in question, Frontier makes one blanket claim concerning all of the exhibit's contents, claiming that unsealing them "could result in undue and wholly unnecessary hardship to those individuals" identified in the documents, without specifying how exactly that might occur, what hardships they might incur, or at whose hands. Motion at 6. It also states without basis that it would be harmed by "demonstrating how Frontier addressed those situations in accordance with their [*sic*] internal policies and procedures," although an examination of the documents reveals that Frontier did not investigate the incidents at all and the

reports do not disclose any internal procedures. That is a far cry from the situation in *Republic Servs. v. Liberty Mut. Ins. Cos.*, No. 03-494-KSF, 2006 U.S. Dist. LEXIS 38752, at *22 (E.D. Ky. June 9, 2006), also cited by Frontier, where the moving party identified numerous specific documents for *in camera* review that outlined its proprietary claims-handling procedures, and provided specific details of how it would sustain identifiable financial loss from the disclosure of such policies to its competitors.

Frontier's broad and unsubstantiated claims of harm from unsealing the documents do not amount to the "facts supported by declarations or concrete examples to establish that a protective order is required to protect any specific trade secret or other confidential information pursuant to Rule 26(c) or that disclosure would cause an identifiable and significant harm" that this Court specifically put it on notice would be required in its Order entered on the docket nearly three years ago. ECF No. 38, at 1-2.

Finally, Frontier makes the outrageous claim that unsealing the documents in Exhibit A to the Motion for Sanctions would identify the passengers who complained of discriminatory treatment, while acknowledging at the same time that it has (inappropriately) redacted all passenger-identifying information. *See* Motion at 6. Clearly, unsealing Exhibit A to the Motion for Sanctions could not have the effect of identifying persons whose details have been redacted.

**IV.     Frontier's Motion for Protective Order contains no specific terms for such an Order.**

Frontier's Motion should also be denied because it does not specify any terms for the Order it seeks, only that it "seeks a specific protective order with respect to the challenged documents," Motion at 3, and that the Court should "enter a protective order maintaining the confidentiality of the documents . . . and . . . such further relief as this Court deems just and reasonable." *Id.* at 8. The Motion fails to request any specific terms, such as how the documents can be used in depositions or

PLAINTIFFS' OPPOSITION TO FRONTIER'S MOTION FOR PROTECTIVE ORDER
Page 9 of 10

at trial, or other important terms such as who may view them. Simply ordering that the documents are "confidential" would create unnecessary confusion as to whether, for example, Plaintiffs' experts may view the documents in order to form opinions concerning Frontier's pattern of discriminatory behavior. That would result in unfair restrictions on Plaintiffs' ability to prove their §1981 claims.

### V. Plaintiffs' counsel did not decline to participate in a meet-and-confer session.

The certification at the beginning of Frontier's Motion could be read as suggesting that Plaintiff's counsel declined to participate in a meet-and-confer session that Frontier's counsel was trying to arrange. That was not the case. Mr. Maye's voicemail message and follow-up email, which were received by Plaintiffs' counsel in Europe late in the evening and past midnight, respectively,[4] did not ask for participation in a meet-and-confer session. Instead, each asked a solitary question: whether Plaintiffs continued to maintain that the documents contained in Exhibit A were inappropriately designated as "CONFIDENTIAL" under the Agreed Protective Order (ECF No. 37). In light of the fact that counsel were separated at the time by seven time zones, Plaintiffs' counsel deemed it to be most expedient to answer that single question in the affirmative by an email sent to Mr. Maye at the beginning of the next business day. During the nearly three years that this litigation has been active, Plaintiffs' counsel has never declined to participate in a meet-and-confer session when one was requested as such (nor have defense counsel).

### CONCLUSION

For all of the reasons set forth above, Plaintiffs respectfully submit that Frontier's Motion for Protective Order should be denied.

DATED this 28th day of September, 2021.

          /s/ John D. McKay
          ***Attorney for Plaintiffs Peter DelVecchia***
          ***And A.D., a Minor***

---

[4] Plaintiffs' counsel was asleep when both communications were received, and listened to/viewed them the following day, which was a Saturday.