Timothy R. Titolo, Esq.
Nevada Bar No. 003617
TITOLO LAW OFFICE
9950 West Cheyenne Ave.
Las Vegas, Nevada 89129
(702) 869-5100
tim@titololaw.com

John D. McKay, Esq.
*Admitted pro hac vice*
PARK AVENUE LAW LLC
127 W. Fairbanks Ave. No. 519
Winter Park, Florida 32789
(434) 531-9569
johndmckayatty@gmail.com

**Attorneys for Plaintiffs**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| PETER DELVECCHIA, *et al.*, | ) | **Case No: 2:19-CV-01322-KJD-DJA** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **PLAINTIFFS' SUPPLEMENTAL** |
| vs. | ) | **MOTION FOR SANCTIONS** |
| | ) | **AGAINST DEFENDANT** |
| | ) | **FRONTIER AIRLINES, INC.** |
| | ) | |
| FRONTIER AIRLINES, INC., *et al.*, | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiffs, Peter DelVecchia individually and as next friend of A. D., a minor, by counsel,

hereby bring this Supplemental Motion for Sanctions pursuant to Fed. R. Civ. P. 37(b)(2)(A) and/or

the Court's inherent sanction authority against Defendant Frontier Airlines, Inc. ("Frontier") for

Frontier's failure to comply with the Court's May 8, 2020 Order (ECF No. 83) compelling Frontier to

produce certain documents and the Court's March 29, 2021 Order (ECF No. 120) that affirmed the

May 8, 2020 Order and compelled Frontier to produce additional documents. Frontier did not fully

complied with those Orders because it delayed producing the documents for numerous months, has not confirmed that it is finished producing relevant documents, and has produced heavily redacted responsive documents without having ever sought or obtained leave of Court permitting it to make the redactions. The Orders themselves did not authorize redaction of any information, and the vast majority of the redacted information does not fit within any recognized privilege or other law authorizing redaction of information. The redactions seriously hinder Plaintiffs' ability to make use of the produced documents, which is clearly the result that Frontier intended.

Since August 20, 2021, the date Plaintiffs filed their first Motion for Sanctions (ECF No. 128), Frontier has produced an additional 441 pages of heavily redacted accounts of passenger discrimination complaints and instances where its employees accused passengers of being involved in illegal human trafficking. The documents at issue, which comprise **Exhibit A** to this Motion, are being filed under seal solely because Frontier has designated them "Confidential" under the Protective Order entered in this case on October 10, 2019 (ECF No. 37). They and the previously-produced documents confirm no less than 40 formal complaints made by passengers to the Department of Transportation alleging discrimination by Frontier's flight attendants and other employees based on race or ethnicity, plus dozens of similar complaints to Frontier where no filings were made with the DOT, plus dozens more descriptions of instances where Frontier's flight attendants and pilots reported passengers to law enforcement personnel for suspicion of human trafficking based on the passengers' appearance (none of those descriptions indicate that actual human trafficking was found to exist). And that is only for the five years prior to Plaintiffs' flight, and limited to Frontier's domestic flights—Frontier also conducts numerous international flights that were not included in the Court's production Orders. However, the redactions render it impossible for Plaintiffs' counsel to obtain more information about the specifics of the situations described by

contacting the persons involved. In several instances, the complainants describe being discriminated against but do not identify the particular legally-protected class to which they belong, which could easily be determined by contacting them for more details. Many of Frontier's responses to the complaints claim that it will be conducting investigations, but the documents do not indicate any follow-up by Frontier. Again, contacting the persons involved would be necessary to determine whether Frontier ever reached out to them for more information or informed them that an investigation was actually conducted. Frontier's unauthorized redactions make such inquiries impossible by eliminating all names and contact details from the documents. The redactions also hinder Plaintiffs' ability to set up depositions of the Frontier personnel involved, by redacting employee numbers, email addresses and telephone numbers, which would indicate where the personnel are located and whether they are direct employees of the airline or are agents working for outside companies that Frontier contracts with for the performance of certain functions. In addition, Frontier's most recent production includes 22 pages of documents (Bates stamped "FRONTIER 2091-2112" in Exhibit A hereto) in which nearly all of the content has been redacted. Although Frontier also served a Privilege Log on October 29, 2021 asserting that the redacted information consists of "[c]ommunications related to preparing responses and compiling documents in response to Plaintiffs' Discovery Requests," *see* **Exhibit B** hereto, that assertion is highly suspect when it is clear from the context that the redacted matter also includes lists of attachments. The titles of attachments are unlikely to contain information protected by attorney-client privilege or work product immunity.

### Procedural History

The relevant procedural history that existed prior to the latest production is detailed in Plaintiffs' first Motion for Sanctions (ECF No. 128), and that history is incorporated herein by

reference. However, Plaintiffs believe that a short recap of a few basic procedural points would be helpful to the Court's understanding of the basis for this Supplemental Motion for Sanctions:

1.      The documents at issue were requested by Plaintiffs in Request No. 47 of their first RFP to Frontier, which was served Frontier's counsel on October 7, 2019 and sought passenger complaints of prior discriminatory treatment, and in Requests Nos. 2-7 of Plaintiffs' Second RFP to Frontier, which were served on November 15, 2019 and sought documents pertaining to prior instances of suspected human trafficking.

2.      Frontier asserted boilerplate objections to those requests, but it never asserted any objections that were based on a claim that the responses would include information it deemed to be confidential.

3.      Magistrate Judge Albregts overruled Frontier's objections and ordered it to produce the requested documents in an Order on Plaintiff's Second Amended Motion to Compel that was entered on May 8, 2020 (ECF No. 83). As of that date, Frontier had not sought or obtained any permission to redact any information from the documents.

4.      Judge Dawson signed an Order on Plaintiffs' Rule 72(a) objections on March 29, 2021 (ECF No. 120), that slightly expanded the scope of Judge Albregts' Order. Again, Frontier had not sought or obtained any permission during the briefing of the objections to redact the documents.

5.      Frontier refused to produce any of the documents that Judge Albregts had ordered produced during the entire *10-month* period that the Rule 72(a) objections were pending before Judge Dawson, despite the fact that it had not

moved for a stay of that Order, nor had it obtained any stipulation from Plaintiffs to delay the production. In its response to the Motion for Sanctions, it presented to the Court an utterly false claim that Plaintiffs had "acquiesced to the postponement of Frontier's document production until after Judge Dawson's ruling," ECF No. 134 at 14, and blamed its delay on the Judges' failure to set a "timeframe for the production" in their Orders, *see id.* at 10.

6.      Frontier refused to produce any of the Court-ordered documents for an *additional four months* after the entry of Judge Dawson's Order, at which point it declared—falsely, as it turns out—that it had just *begun* locating and producing responsive documents. It offered no explanation for why it had taken 579 days to produce the first of the requested documents. In fact, the claim that it had just begun looking for the documents is shown to be untrue by the text of its own Privilege Log served on October 29, 2021 (Exhibit B to this Motion), which reveals that it was discussing the production with its counsel as far back as November 19, 2019 (and even earlier, if its representations on that document are to be believed, including dates which predate the filing of the initial Complaint). Frontier's own Privilege Log illustrates a concerted effort by it and its counsel to delay the production of relevant documents by more than 579 days.

7.      When Frontier did begin producing the requested documents in late 2021, it did so in heavily redacted form, without a shred of authorization for the redactions having been sought or obtained by it.[1] Its redactions, which

---

[1] Plaintiffs of course acknowledge that the redaction of information covered by attorney-client privilege and work product immunity is inherently authorized, but that authorization would apply only to the 22 pages out of 441 for which Frontier served a privilege log—and only to the extent that the information actually contains communications or mental impressions protected by the privilege or immunity. Plaintiffs contest the assertion that the titles of attachments could

likely contributed to the substantial delay in production, were a unilateral action taken in complete defiance of the Court's production Orders. Among other things, Frontier redacted the names of all of the individuals making the discrimination complaints, their telephone numbers, addresses and email addresses, the names and contact information of witnesses, identifying information about the employees who responded to the complaints, such as their email addresses, phone numbers and employee numbers, and generally whatever other data Frontier and its attorneys decided Plaintiffs and their attorneys did not need to know. In the descriptions of the instances of trafficking, it redacted the names of the individuals who were subjected to its employees' accusations, the names of witnesses, employee data other than names, and again, generally whatever information it and its counsel deemed Plaintiffs did not need to know. In its response to Plaintiff's Motion for Sanctions, Frontier attempted to justify its unauthorized redactions on the Judges "not order[ing] [Frontier] to produce personal identifying information for the passengers involved in the complaints and reports to be produced" (which it claimed was justification for scrubbing all such information—and more—from the documents themselves), ECF No. 134 at 10, it claimed that Plaintiffs should not be permitted to contact any witnesses to Frontier's past transgressions of law because explanations for its conduct should come solely from Frontier itself, *see id.* at 11, and it claimed that federal law authorized its redactions, citing as support for that proposition a district court opinion that

---

qualify for redaction, and the fact that the titles were redacted calls into serious question the legitimacy of all redactions on those 22 pages.

anyone capable of reading a regulation in the English language could see was erroneously decided.

The 441 pages of documents that are the subject of this Supplemental Motion were produced by Frontier on September 24, 2021 and October 29, 2021, nearly two full years after Plaintiffs requested them under Rule 34. As noted above and visible in Exhibit A, Frontier has redacted a significant amount of information from them.[2]

## ARGUMENT

### 1.    Frontier is willfully abusing the discovery process.

From the beginning of this litigation—and apparently even before it was filed, according to its recently-served Privilege Log—Frontier has willfully engineered a plan to ensure that Plaintiffs do not receive the discovery to which they are entitled under the Federal Rules of Civil Procedure. First, it asserted boilerplate objections to more than three-fourths of Plaintiffs' legitimate discovery requests, claiming without any specificity that the requests were "overly broad," lacked relevance or proportionality, or were "vague," *see, e.g.,* Plaintiffs' Second Amended Motion to Compel (ECF No. 77 at 6-24). "Objections which state that a discovery request is 'vague, overly broad, or unduly burdensome' are, by themselves, meaningless and are deemed without merit by this Court." *Milinazzo v. State Farm Ins. Co.,* 2007 WL 4350865 at *2 (S.D. Fla. 2007)(citing *Josephs v. Harris Corp.,* 677 F.2d 985, 992 (3d Cir. 1982)). Frontier shamelessly based several of its objections to the requests for documents relating to prior incidents of trafficking on its assertion that no accusation of trafficking had been made against Plaintiffs, when it knew that one of its flight attendants had specifically testified in her deposition that she "absolutely" felt that she was enforcing Frontier's

---

[2] Prior leave of Court is normally required before redacting information from a document in litigation, *see, e.g., Bartech Int'l, Inc. v. Mobile Simple Solutions, Inc.,* Case No. 2:15-cv-02422-MMD-NJK (D. Nev., April 27, 2016); *Terry v. Register Tapes Unlimited, Inc.,* Case No. 2:16-cv-00806-WBS-AC (E.D. Cal., June 29, 2018).

human trafficking policies against Plaintiffs, *see* ECF No. 77 at 10-12. Those baseless objections initiated its nearly 600-day shirking of its production responsibilities, which has had the additional effect of delaying its Rule 30(b)(6) deposition by withholding relevant documents and giving no indication of when all of the responsive documents have been or will be produced.

Frontier further thwarted the deposition process in responding to Plaintiffs' Rule 30(b)(6) Notice of Deposition by having its counsel declare—without ever filing a motion for protective order—that Frontier simply was not going to present any designated witnesses on topics listed in the Notice that it did not like. *See* ECF No. 77 at 25; ECF No. 83 at 6-7 ("Plaintiffs are correct that the burden falls on Defendant to move for a protective order if it seeks to challenge the depo notice and it did not do so here.") Plaintiffs served a new Rule 30(b)(6) Notice of Deposition on Frontier on October 4, 2021 for its deposition to occur on December 6-10, 2021(hoping that Frontier's rolling production of documents might be finished by then), and Frontier's counsel this time responded by declaring that the two designees that it wishes to present at the deposition—its In-Flight Manager and its Chief Pilot—are not available for that entire week.[3] As of this writing, nearly a *full month* after service of the Notice, it has yet to provide any definite alternative dates that do meet with its approval, despite repeated requests from Plaintiffs' counsel (one of Frontier's counsel recently responded to one of those requests with the query, "Are you saying that you want to take the deposition in a single week?")

The redacted documents that it has finally produced illustrate numerous complaints of discrimination, numerous inquiries from the Department of Transportation that required production of documents to that Department pursuant to federal regulations, letters of representation from

---

[3] It is highly unlikely that the manager of in-flight services (*i.e.,* flight attendants) and the Chief Pilot would be knowledgeable about all 35 of the enumerated topics, including the net worth of the corporation. Frontier's counsel's assertion that they plan to present only those two designees strongly suggests that Frontier is once again planning to ignore certain topics that it does not care to respond to.

attorneys indicating an intent to file suit, and the likelihood that several suits have, in fact, been filed against it. In short, Frontier is no stranger to litigation on the subject of discrimination based on race and ethnicity, and its multiple claims that the delays in producing documents have been due to a lack of familiarity with how to retrieve them and that it "continues its investigation for responsive materials," *see* ECF No. 77 at 6, are simply not worthy of belief. It clearly knows how to assimilate documents pertaining to its past complaints of discrimination, and it likely has had to produce those same documents to several other parties, including the DOT. Its discussions with its counsel dating back to April 18, 2019 (20 days after Plaintiffs' flight)[4] strongly suggest a planned and entirely willful strategy of withholding relevant documents, strategically dribbling them out in piecemeal fashion after several depositions of its flight attendants and pilots have already occurred, and redacting from them any information that would help Plaintiffs prove their case. There is no way to characterize its conduct other than as willful obstructionism and abuse of the discovery process to hide the truth.

    The Ninth Circuit has held that willfulness is demonstrated in this context by disobedient conduct that is not shown to be outside the party's control. *Jorgensen v. Cassiday,* 320 F.3d 906, 912 (9th Cir. 2003). The party accused of willful misconduct bears the sole burden of showing how the disobedient conduct resulted from circumstances outside of its control. *Id.; see also Lestari v. Darmawan*, 131 F.3d 147 (9th Cir. 1997). Frontier cannot avail itself of any argument that its nearly two-year delay in producing responsive documents, and then redacting relevant information from them without leave of Court, came from circumstances beyond its control—its recently-produced Privilege Log demonstrates that it was conferring with its counsel about document production 20 days after Plaintiffs' flight and again at the time when the requests were served in late 2019, yet it did

---

[4] See Exhibit B, bottom row.

not produce the first document until nearly 600 days later, and it delayed production of the latest batch of documents for an additional 50 days beyond that. Even in light of the Covid-19 pandemic, which did not yet exist for the first several months after the document requests were served, no reasonable party intent on complying with its discovery obligations could have faced circumstances beyond its control that would have delayed production of documents for that long. Frontier's actions have been the result of willful disobedience of its obligations. That fact is further evidenced by its unauthorized redactions of information on most of the documents it has produced.

"'Courts need not tolerate flagrant abuses of the discovery process.'" *O'Neal v. Las Vegas Metro. Police Dep't*, Case No. 2:17-cv-02765-APG-EJY (D. Nev. Aug. 10, 2020)(quoting *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980)). *See also, Conn. General Life Ins. Co. v. New Images of Beverly Hills,* 482 F.3d 1091, 1095-96 (9th Cir. 2007)("These responses . . . amounted to avoidance, not compliance, with discovery obligations."); *Valley Engineers, Inc. v. Electrical Engineering Co.,* 158 F.3d 1051, 1058 (9th Cir. 1998)("There is no point to a lawsuit if it merely applies law to lies.") This Court should not tolerate Frontier's abusive conduct in this litigation.

## II.     Terminating sanctions are warranted.

In light of the new disclosures, including evidence that Frontier has been discussing its production strategy with counsel for the entire two years, and the considerable evidence of multiple discrimination complaints and interactions with the Department of Transportation about them, it is now clear that Plaintiffs' first Motion for Sanctions seeks too mild a sanction. Plaintiffs gave Frontier some benefit of the doubt in light of the pandemic, but it is now clear that Frontier's strategy predated the pandemic, and clearer still that Frontier has used the disruption caused by the pandemic to its improper advantage.

District Courts have the discretion to issue terminating sanctions pursuant to Rule 37 to target "non-compliance . . . due to willfulness, fault, or bad faith." *Fjelstad v. Am. Honda Motor Co.* 762 F.2d 1334, 1337 (9th Cir. 1985). In addition, they possess inherent powers to terminate a party's case "'when [the] party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice.'" *Id.* at 1338 (quoting *Wyle v. R.J. Reynolds Industries, Inc.*, 709 F.2d 585, 589 (9th Cir.1983)); *see also, America Unites for Kids v. Rousseau*, 985 F.3d 1075, 1085 and 1088 (9th Cir. 2021). The Ninth Circuit recently upheld a District Court's dismissal of a plaintiff's case under Fed.R.Civ.P. 37(b)(2)(A)(v), noting, "[v]iewing the record as a whole, Harkey's bad faith attempts to block discovery demonstrate an unwillingness to have this matter decided on the merits." *Harkey v. Beutler*, 817 Fed. Appx 389, 393 (9th Cir. 2020). The same can be said of Frontier's abusive conduct in the instant case, and a similar sanction, albeit one appropriate for a defendant, is therefore warranted.

Rule 37(b)(2)(A) states, in relevant part:

> If a party . . . fails to obey an order to provide or permit discovery, including an order under Rule . . . 37(a), the court where the action is pending may issue further just orders. They may include the following:
>
> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Striking Frontier's Answers relating to Plaintiffs' Section 1981 Count and rendering a partial default judgment against Frontier as to that Count is therefore explicitly authorized by subparts (iii) and (vi),

and it meets the requirement noted in *Fjelstad* that a Rule 37(b)(2) sanction "'must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." 762 F.2d at 1342. The bulk of Frontier's abusive conduct has been directed at preventing Plaintiffs' discovery of its past pattern of discriminatory practices, so therefore the sanction would be "specifically related" to Plaintiffs' discrimination claims. Striking a party's answer and awarding a default judgment has been held to be an appropriate sanction for discovery misconduct in circumstances such as these. *Stars' Desert Inn Hotel & Country Club, Inc. v. Hwang,* 105 F.3d 521 (9th Cir. 1997).

The Ninth Circuit's opinion in *In re Exxon Valdez*, 102 F.3d 429 (9th Cir. 1996) also supports such a sanction. That was another case where the Court recognized that "[t]he history of these proceedings reflects a virtually total refusal by appellants over a period of more than two years to comply with discovery obligations and orders." *Id.* at 432. The District Court in that case dismissed several plaintiffs' cases under Rule 37(b)(2), and the Ninth Circuit affirmed. The Ninth Circuit noted that the severity of a dismissal sanction requires examination of five factors:

> A district court must consider five factors in determining whether the circumstances warrant dismissal:
>
> > (1) the public's interest in expeditious resolution of litigation;
> >
> > (2) the court's need to manage its docket;
> >
> > (3) the risk of prejudice to the [party seeking sanctions];
> >
> > (4) the public policy favoring disposition of cases on their merits; and
> >
> > (5) the availability of less drastic sanctions.

102 F.3d at 433. The Court cited as the source of the five-factor test *Thompson v. Housing Auth. of City of Los Angeles,* 782 F.2d 829, 831 (9th Cir.), *cert. denied,* 479 U.S. 829 (1986), another case where terminating sanctions were affirmed based on a party's "history of inexcusable delay and neglect." 782 F.2d at 832. The Court in *Hwang* expressly recognized that the same five-factor

analysis applies to the use of a default judgment as a sanction. 105 F.3d at 524. Quoting *Wanderer v. Johnston,* 910 F.2d 652, 656 (9th Cir. 1990), at page 524 of its *Hwang* opinion, it noted that "[t]he first two of these factors favor the imposition of sanctions in most cases, while the fourth cuts against a default or dismissal sanction. Thus the key factors are prejudice and availability of lesser sanctions." Both of those factors favor a default judgment in the instant case.

### (a) Plaintiffs have been severely prejudiced by Frontier's discovery abuses.

For two full years of this litigation, Plaintiffs have been unable to see evidence of a pattern of prior complaints by Frontier's passengers of racial and ethnic discrimination such as that which Plaintiffs encountered, and similar instances where Frontier's flight attendants and pilots have accused passengers of being involved in human trafficking and had them turned over to law enforcement officers at the end of their flights because their appearance—often as mixed-race families and groups—made Frontier employees "uneasy." Plaintiffs have been kept in the dark about the fact that at least 40 passengers have complained to the Department of Transportation about racial and ethnic discrimination on Frontier's flights. And even now that Frontier has produced a substantial number of documents, 600 days after they were due, Plaintiffs remain unable to verify the details of such events and to obtain testifying witnesses because Frontier and its attorneys have redacted all contact information from the documents, wholly without authorization.  That evidence is critical to Plaintiffs' ability to prove that the discriminatory conduct of Frontier's employees toward Plaintiffs was condoned and actually fostered by Frontier's management, which is relevant to proof of Frontier's corporate responsibility and its liability for punitive damages under §1981. Plaintiffs have also been unable to conduct a deposition of Frontier pursuant to Rule 30(b)(6) because of Frontier's abusive conduct—for multiple reasons, including Frontier's lengthy withholding of documents, Frontier's refusal to designate representatives to testify, its redaction of substantial information from

the documents, and now its refusal to appear on the December dates noticed and its refusal to provide definite alternative dates. That is significant and substantial prejudice, and it has all been because Frontier refuses to abide by the discovery rules and this Court's Orders. It is abundantly clear that the delays, willful disobedience of the Court's Orders, scrubbing of documents and refusal to agree on deposition dates have all been part of an intentional plan by Frontier to subvert Plaintiffs' ability to prosecute their claims, and that it began even before the suit was filed, according to the recently-served Privilege Log.

"[F]louting generally applicable procedural rules—the rules of the game that all parties are entitled to rely upon and expect courts to enforce—has consequences. Sometimes even case-ending consequences." *Merchant v. Corizon Health, Inc.,* 993 F.3d 733, 736 (9th Cir. 2021)(decided under Fed.R.Civ.P. 37(c)(1)). Frontier and its counsel have forced Plaintiffs to navigate a "sorry obstacle course" similar to that observed in *Wanderer, see* 910 F.2d at 654, and even to this day, Frontier's flagrant bad faith has resulted in Plaintiffs receiving only heavily redacted and essentially useless documents. Meanwhile, Frontier casts the blame for its abusive conduct onto Plaintiffs with its false and nonsensical claim that they "acquiesced" in a 10-month delay in production (which was inexplicably followed by an additional four months of no production), onto the Court with its childish claims that its delay was warranted because the Judges failed to establish a "timeframe" for the production they ordered and that its redactions are justified because the Judges neglected to order the production of the "personal identifying information" that was present on the documents, and onto "federal law" with its objectively baseless claim that 14 C.F.R. §243.9(c), a regulation whose plain language states that it applies only to international flights and emergency contact names and numbers, somehow renders the names of passengers aboard domestic flights and their telephone numbers and

email addresses confidential. To conclude from these facts that Frontier lacks all semblance of shame would be an understatement. Its conduct is reprehensible and should be sanctioned appropriately.

As was the situation in *Wanderer,* Frontier's conduct is more than just delay, and more than just failing to respect a deposition notice. It is pervasive and compound, and affects every aspect of Plaintiffs' attempts to litigate their case. As the Ninth Circuit stated in *Wanderer*, the prejudice is "palpable":

> Here, however, the failures of the defendants to appear at their depositions, which were compounded by repeated noncompliance with court orders to produce documents constituted a clear interference with the plaintiffs' ability to prove the claims and to obtain a decision in the case. The existence of prejudice is palpable.

910 F.2d at 656.

### (c) <u>Lesser sanctions would be unavailing</u>.

Plaintiffs' first Motion for Sanctions (ECF No. 128) requested lesser sanctions: a ruling that Frontier is in contempt of Court, a specific finding of fact, and an Order that Frontier cannot introduce evidence to challenge that fact. Those specific lesser sanctions under Rule 37(a)(2) were based, in part, on Frontier's unauthorized redactions from the documents that it eventually produced. Frontier responded to the filing of that Motion by producing an additional 441 pages of heavily redacted documents, essentially declaring that the possibility of incurring those sanctions as a result of the pending motion means absolutely nothing to it. On top of that, Frontier is a large corporation with significant net worth, and it just completed a successful Initial Public Offering of its stock. It is unlikely to alter its behavior based on monetary sanctions of the type typically awarded in discovery disputes. That behavior is pervasive across all aspects of the discovery process: Frontier has objected to no less than 75% of Plaintiffs' interrogatories, document requests and requests for admissions, typically with meaningless boilerplate objections. Its responses to deposition notices are to state that it is not available on the noticed dates, it is not going to present designees to testify on subjects that

are not to its liking, and it cannot seem to find any alternative dates that would work. When it is forced by Court Order to produce documents, it ignores the Orders for 14 months and then produces documents from which it has scrubbed all useful information. This is not a party who will correct course upon being handed a bill or a contempt sanction.

## **CONCLUSION**

For all of the reasons set forth above, Plaintiffs respectfully move for sanctions to be imposed on Defendant Frontier Airlines, Inc., pursuant to the Court's authority under Fed.R.Civ.P. 37 and/or the Court's inherent sanctions authority, that include striking Frontier's Answers to Plaintiffs' 42 U.S.C. §1981 Count, and awarding a partial default judgment on that Count in Plaintiffs' favor. In the alternative, Plaintiffs request that the Court find Frontier in contempt of Court, enter the finding of fact described in Plaintiffs' first Motion for Sanctions, and an Order that Frontier cannot introduce any evidence or argument tending to oppose or negate the finding of fact, a substantial monetary sanction, and such other and further relief as the Court deems just under the circumstances.


DATED this 2nd day of November, 2021.


    /s/ John D. McKay
John D. McKay (admitted *pro hac vice*)
PARK AVENUE LAW LLC
127 W. Fairbanks Ave., No. 519
Winter Park, FL 32789
johndmckayatty@gmail.com
(434) 531-9569

Timothy R. Titolo (Nev. Bar. No. 3617)
TITOLO LAW OFFICE
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 869-5100
tim@titololaw.com

***Attorneys for Plaintiffs Peter DelVecchia
And A.D., a Minor***

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28