CHARLES A. MICHALEK, ESQ.
Nevada Bar No. 5721
ROGERS, MASTRANGELO, CARVALHO & MITCHELL
700 South Third Street
Las Vegas, Nevada 89101
Phone: (702) 383-3400
Email: cmichalek@rmcmlaw.com

Brian T. Maye *(admitted pro hac vice)*
Matthew D. Martin (admitted *pro hac vice*)
ADLER MURPHY & McQUILLEN LLP
20 South Clark Street, Suite 2500
Chicago, Illinois 60603
Phone: (312) 345-0700
Email:  bmaye@amm-law.com
             mmartin@amm-law.com

*Attorneys for Defendants Frontier Airlines, Inc.,
Scott Warren, and Rex Shupe*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| PETER DELVECCHIA, individually and as next friend of A.D., a Minor,<br><br>            Plaintiffs,<br><br>v.<br><br>FRONTIER AIRLINES, INC., et al.,<br><br>            Defendants. | Case No.: 2:19-cv-01322-KJD-DJA<br><br>**Defendant's Response to Plaintiffs' Supplemental Motion for Sanctions** |

**DEFENDANT FRONTIER AIRLINES, INC.'S RESPONSE
TO PLAINTIFFS' SUPPLEMENTAL MOTION FOR SANCTIONS**

Defendant FRONTIER AIRLINES, INC. ("Frontier"), by its undersigned counsel, submits this Response to Plaintiffs' Supplemental Motion for Sanctions (ECF No. 141). Frontier's Response is based upon the attached Memorandum of Points and Authorities, the pleadings on file, and any oral argument the Court may permit.

# FRONTIER'S MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs' exaggerated accusations of malfeasance are wildly inappropriate. Frontier was ordered to compile and produce extensive records from unrelated flights involving allegations of discrimination and suspected trafficking crimes. Frontier has complied with this Order and its production is nearly complete. However, federal courts applying a federal regulation establish that airlines must protect the identities of passengers absent an order expressly prohibiting redactions. No such order has been entered in this case. Thus, to maintain compliance with this Court's Order and also with federal law, in producing its responsive documents, Frontier has redacted personal information identifying the individuals involved with the unrelated flights.

Rather than responding constructively, Plaintiffs opted to challenge Frontier's redactions with frivolous motions seeking case-dispositive sanctions. The instant Motion is duplicative and full of malicious insults unbecoming of this tribunal. Plaintiffs accuse Frontier of orchestrating a strategic delay in reliance on a judicial opinion that, in Plaintiffs' words, *"anyone capable of reading a regulation in the English language could see was bad law."* ECF 141, p. 7. With their proclivity for hyperbole on full display, Plaintiffs bloviate and proclaim, *"[t]o conclude from these facts that Frontier lacks all semblance of shame would be an understatement." Id*. at p. 15.

The Court previously noted that "uncivil accusations" would not be tolerated and cautioned the parties to "keep their interactions and discussions in filings with the Court professional and civil." ECF 83, p. 2. Frontier has tried in earnest to stay above the fray and ignore Plaintiffs' vicious barbs, but the instant Motion crosses the line. It is devoid of any thoughtful legal analysis and seems intended only to attack the character of Frontier's counsel. At the very least, the Motion should be denied. Frontier will not burden the Court with its own motion for sanctions but notes it will be compelled to seek them in the future if Plaintiffs' conduct persists.

## II.   BACKGROUND AND LEGAL STANDARDS

In their initial Motion for Sanctions, Plaintiffs asked the Court to enter factual findings that Frontier: (1) instructed its flight attendants to look for suspected human and sex traffickers and report the same to the pilots; (2) received multiple notices of flight attendants and pilots racially profiling passengers and falsely suspecting perpetrators of trafficking crimes based at least in part on race; and (3) never provided its flight attendants or pilots with any training on the avoidance of discrimination toward passengers based on their race, national origin, or ethnicity. ECF 128, p. 6.

Plaintiffs now ask the Court to award them a default judgment on their claim under 42 U.S.C. § 1981. They maintain their pending request for the above factual findings in the alternative. ECF 141, p. 16. As they did in their initial Motion, Plaintiffs assert that severe and drastic sanctions are warranted under Federal Rule of Civil Procedure 37(b)(2)(A) and/or the Court's inherent sanction authority. ECF 141, p. 11; ECF 128, p. 1.

In the interest of brevity, Frontier incorporates the Background section from its Response to Plaintiffs' Motion for Sanctions as if fully stated herein. *See* ECF 134, pp. 3-6. Frontier further incorporates its prior recitation of the Legal Standards governing the imposition of discovery sanctions. *See Id.* at pp. 8-9. These standards are well known to the Court and need not be repeated. Frontier will supplement its discussion of the facts and legal standards in the course of responding to Plaintiffs' arguments.

## III.   ARGUMENT

Absent a Court Order expressly prohibiting redactions, legitimate privacy concerns and compliance with federal law support Frontier's decision to protect the identities of those involved with the unrelated incidents. Further, while there is no basis to impose even minor sanctions against Frontier, entering *case-dispositive* sanctions would violate due process, because the alleged sanctionable conduct has not interfered with the "rightful decision of the case." *See Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995).

3

At issue is an air carrier's in-flight decision to separate an adult from a minor child and notify law enforcement of the crew's concerns over inappropriate touching. The rightful decision in this case turns on whether Plaintiffs can show a specific intent to discriminate. Plaintiffs allege Frontier's concerns were contrived and pretextual, and their crewmembers acted purely out of racial animus toward a Caucasian male traveling with an African American child. To prevail on their § 1981 claim, Plaintiffs must prove Defendants would not have reported any concerns of inappropriate touching but for their alleged racial animus. *See Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. _, 140 S. Ct. 1009, 1019 (2020).

The specific intent to discriminate goes hand-in-hand with the issue of federal immunity. For good reason, Congress has granted immunity to air carriers and their employees when they report suspicious behavior to law enforcement. 49 U.S.C. § 44941(b). To pierce Frontier's immunity in this case, Plaintiffs must make a heightened showing that Frontier's reports to law enforcement were materially false and made with actual malice. *See Air Wis. Airlines Corp. v. Hoeper*, 571 U.S. 237, 248 (2014).

With these standards in mind, it is baffling that Plaintiffs would seek the sanction of default judgment based on the record before the Court. The parties have litigated numerous pleadings and discovery issues. Not once has Frontier been found in violation of a Court order, discovery related or otherwise. Frontier reiterates that Plaintiffs expressed no concerns or allegations of unwarranted delay until after the parties filed their fifth stipulated motion to extend discovery deadlines. The issue of delay did not arise until after Frontier began producing its redacted documents in response to Judge Dawson's discovery ruling. ECF 120.

These points notwithstanding, Plaintiffs rely on a line of cases involving flagrant and repeated discovery violations – the type of egregious and contumacious behavior that causes undeniable and irreparable prejudice to the opposing party. Plaintiffs quote self-serving snippets

from other cases and assert they are comparable to this case without providing any meaningful analysis. A closer look at the cases relied upon underscores the frivolity of the instant Motion.

### A.     Cases Awarding the Sanction of Default Judgment

Plaintiffs first look to *Harkey v. Beutler*, 817 Fed. Appx 389, 392 (9th Cir. 2020), where the court cited the plaintiff's "bad faith attempts to block discovery" and "unwillingness to have the case decided on the merits." Providing no discussion whatsoever of the actual facts in *Harkey*, Plaintiffs blindly assert "the same can be said of Frontier's abusive conduct in the instant case, and a similar sanction, albeit one appropriate for a defendant, is therefore warranted." ECF 141, p. 11.

Seven years into his lawsuit, the plaintiff in *Harkey* had not responded to a single discovery request. He also failed to serve initial disclosures, failed to appear at his deposition, made misrepresentations to the court, and strategically delayed the litigation through multiple substitutions of counsel. *Harkey*, 817 Fed. Appx at 391. In affirming the sanction of dismissal, the *Harkey* court observed that the plaintiff's disobedience persisted despite several warnings that his continued, contumacious behavior could result in the sanction of dismissal. *Id*. at 392.

In stark contrast to the plaintiff in *Harkey*, Frontier's discovery efforts in this case have been extensive. Since Plaintiffs filed their original complaint in August 2019, they have issued 28 interrogatories, 84 requests for production, and 37 requests for admission. In addition to serving answers and responses, including numerous supplemental responses, Frontier has produced over 2,100 pages of documents. This has required a considerable amount of assistance from several individuals within Frontier. Documents marked "Sensitive Security Information" (SSI) were identified and provided to the Transportation Security Administration (TSA) for clearance, and the parties worked with the TSA to prepare a protective order governing the production and use of the SSI in this matter. Frontier has also issued requests for information and records to the FBI, Las Vegas Metropolitan Police Department, C.W. Stanford Middle School, four medical providers of

Peter DelVecchia, and five medical providers of A.D. The documents produced in response have aided both parties in furtherance of this litigation.

Undeterred by reality, Plaintiffs advance a false narrative that Frontier has spent the last two years scheming to delay and obstruct discovery. In furtherance of their conspiracy theory, Plaintiffs quote the following holding from one of the Exxon Valdez cases: "The history of these proceedings reflects a virtually total refusal by appellants over a period of more than two years to comply with discovery obligations and orders." *Allen v. Exxon Corp. (In re Exxon Valdez)*, 102 F.3d 429, 433 (9th Cir. 1996). Plaintiffs argue this case is similar to *Exxon Corp.* and the holding supports the sanction of default judgment against Frontier. ECF 141, p. 12.

Of course, Plaintiffs neglect to mention that the appellants in *Exxon Corp.* never even responded to interrogatories requesting identification of witnesses and documents, never responded to damages interrogatories, and never provided a required discovery plan. *Exxon Corp.,* 102 F.3d at 432. In affirming the drastic sanction of default judgment, the Ninth Circuit noted the appellants were repeatedly warned that continued non-compliance could result in dismissal. [Cite.] "When appellants continued to refuse to comply, the master … found that though they had been repeatedly warned, their continued noncompliance invited dismissal since appellants had *provided either no discovery or so little as to be tantamount to no discovery at all*." *Id*. (Emphasis added.)

It is inconceivable to suggest Frontier has provided no discovery or so little as to be tantamount to nothing. In fact, Frontier has provided Plaintiffs with voluminous discovery and its ongoing production efforts are nearly complete.

This case also has nothing in common with *Stars' Desert Inn Hotel & Country Club, Inc. v. Hwang,* 105 F.3d 521 (9th Cir. 1997), which Plaintiffs erroneously cite for the proposition that "[s]triking a party's answer and awarding a default judgment has been held to be an appropriate sanction for discovery misconduct in circumstances such as these." ECF 141, p. 12. After the defendant in *Hwang* failed to appear for his deposition, the district court warned him of severe

sanctions, including a default judgment, if he failed to appear again. After the defendant missed his second deposition date, the court issued an order setting a third and final deposition deadline. At that point the court also imposed a monetary sanction and warned the defendant's counsel that another violation would likely result in a default judgment. It was not until the defendant failed to pay the monetary sanction and blew the final deposition deadline that the court entered the default judgment. *Hwang,* 105 F.3d at 524-25. "On these facts," the Ninth Circuit held, "Hwang should not have been surprised at the sanction of default for his failure to submit to deposition by the deadline imposed by the magistrate judge." *Id*. at 525.

It is a meritless implication that the deposition failures in *Hwang* justify the sanction of default judgment in this case. Frontier has expended considerable time, effort, and resources preparing for and conducting depositions. In addition to producing *all six members of the flight crew* for their depositions, Frontier has taken the depositions of both Plaintiffs, two of their family members, and five other fact witnesses. Only one of these depositions was conducted virtually. The rest were in-person depositions that required significant travel.

Plaintiffs' wandering complaints about the upcoming Rule 30(b)(6) depositions are hard to fathom. *See* ECF 141, p. 8. Frontier has designated two Rule 30(b)(6) witnesses. These witnesses are not available December 6-10, 2021, a timeframe apparently convenient for Plaintiffs. Frontier has offered other dates of availability and will continue to work with Plaintiffs to find agreeable times. That these witnesses are unable to accommodate Plaintiffs' preferred schedule does not indicate, as Plaintiffs allege, an "intentional plan by Frontier to subvert Plaintiffs' ability to prosecute their claims" that "began even before the suit was filed, according to the recently served

Privilege Log." ECF 141, p. 14. If anything, the Privilege Log shows that Frontier has been working diligently throughout to compile and prepare its discovery responses.[1] ECF 141-2, Ex. B.

Plaintiffs lose credibility by claiming "Frontier's conduct is more than just delay, and more than just failing to respect a deposition notice. It is pervasive and compound, and affects every aspect of Plaintiffs' attempt to litigate their case." ECF 141, p. 15. Sometimes a witness cannot accommodate an attorney's schedule. It happens all the time and does not indicate sinister motives. It just means the deposition will need to take place on a different day. The parties have conducted at least 15 depositions already without the need for any Court intervention. The Rule 30(b)(6) depositions will go forward when the parties can settle on an agreeable schedule.

**B.      Plaintiffs have Suffered no Prejudice**

In considering a request for dismissal by default judgment under Rule 37, the Court must consider the following factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990). The key factors among those listed above are *prejudice* and *availability of lesser sanctions*. *Id.* As referenced *supra*, sanctions which interfere with a litigant's claim or defenses violate due process if they are imposed "merely for punishment of an infraction that did not interfere with the rightful decision of the case." *Id.* (quoting *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 591 (9th Cir. 1983)).

---

[1] Plaintiffs make much of a stray date inadvertently identified in Frontier's privilege log, claiming it shows evidence of a pre-suit scheme to obstruct. See, e.g., ECF 141, p. 14. This is absurd. The document in question does not relate to a communication between Frontier and its counsel, and this is apparent by simply reviewing the document, which was not redacted. Frontier mistakenly included the date of the document in the privilege log and will provide a corrected privilege log that does not include the pre-suit reference.

8

Plaintiffs rely on *Wanderer* to argue they have suffered irreparable prejudice. Again, without any discussion of the underlying facts, they baselessly assert they have been forced to navigate the same "sorry obstacle course" that was present in *Wanderer*. ECF 141. p. 14.

The plaintiffs in *Wanderer* claimed they were induced by a group of defendants to invest more than $20 million in a fraudulent scheme. *Wanderer*, 910 F.2d at 654. Three of the defendants missed three depositions each, in most cases providing no warning to opposing counsel. Due to the defendants' repeated non-compliance, the court entered at least nine orders compelling the production of documents. The plaintiffs' second request for documents yielded no response whatsoever, and the defendants continued to withhold documents under claims of privilege despite the court's ruling that they waived all objections. The various defendants also failed to answer the plaintiffs' first set of interrogatories, and when they finally did, they provided an improper "joint answer" rendering the plaintiffs unable to determine the position of each defendant. *Id*. at 655.

Here, in arguing they have suffered prejudice comparable to that experienced by the plaintiffs in *Wanderer*, Plaintiffs complain that they are "unable to see evidence of a pattern of prior complaints by Frontier's passengers of racial and ethnic discrimination such as that which Plaintiffs encountered and similar instances where Frontier's flight attendants and pilots have accused passengers of being involved in human trafficking and had them turned over to law enforcement officers at the end of their flights because their appearance—often as mixed-race families and groups—made Frontier employees 'uneasy.' " ECF 141, p. 13.

This airing of grievances is misplaced. Plaintiffs have not been prejudiced by Frontier's redactions, because they do not need the redacted information to determine whether the documents reflect a pattern of similar incidents. Plaintiffs walked into this argument in their initial Motion for Sanctions, when they took a contrary position and argued, "the Court can see that the redacted documents do, in fact, establish a pattern of racial profiling and false trafficking accusations by flight attendants assisted by Frontier pilots." ECF 128, p. 8.

Plaintiffs' back-and-forth on what can be gleaned from the redacted documents provides a perfect segue to the obvious: Frontier's redacted documents speak for themselves. The Court can review the documents filed under seal to determine whether there is any utility in allowing Plaintiffs to view the redacted information. Thus, even if the Court orders Frontier to produce unredacted documents, it cannot be said that the redactions have prejudiced Plaintiffs to the point of interfering with the rightful adjudication of their § 1981 claim. *See Wanderer*, 910 F.2d at 656.

### C.     14 C.F.R. § 243.9

Frontier's reliance on this statute is what sent Plaintiffs into hysterics. Frontier was hopeful that, if Plaintiffs felt the production of unredacted documents was required, they would simply file a motion to compel them, which would have prompted the efficient litigation of this important issue. Instead, Plaintiffs filed their initial Motion for Sanctions and dedicated the better portion of it to a preemptive argument that no less than eight courts have erroneously interpreted 14 C.F.R. § 243.9. ECF 128, pp. 9-21. In short, Plaintiffs ask this Court to go against all the other decisions applying this statute to Plaintiffs' disliking, and then sanction Frontier for relying on *"a district court opinion that anyone capable of reading the English language could see was erroneously decided."* ECF 141, p. 7.

This inappropriate and unprofessional swipe references *Anders v. United Airlines, Inc.*, No. CV 19-5809-GW (KS), 2020 U.S. Dist. LEXIS 250250 (C.D. Cal. 2020), a case Frontier relied on in its response to Plaintiffs' initial Motion for Sanctions. *See* ECF 134, p. 11. It is difficult to envision a case more on point than *Anders*, a recent district court decision from within this Circuit involving a discovery request for unrelated customer complaints involving other incidents of inflight sexual assault and battery. *Id.* at *4. The defendant airline in *Anders* argued the plaintiff must show a compelling need for information identifying possible sex assault victims and disclosing the information could violate the airline's obligations under 14 C.F.R. § 243.9. After

balancing the need for the identifying information against the privacy rights of the unknown passengers, the Court ruled as follows, with emphasis added in bold:

> [The plaintiff] seeks not only information about prior passenger complaints to assess organizational knowledge about sexual assaults; it also seeks information to enable Plaintiff to identify and contact other victims of sexual assault on United planes—despite the absence of class allegations in the Complaint. Further, as noted above, **passenger contact information is highly protected under federal law and the information Plaintiff seeks may encompass the contact information for minors, which is entitled to heightened privacy protections**. In light of the foregoing, Plaintiff has not established a "sufficient showing of need" for the full names and contact information for every United airlines passenger who has complained of inflight sexual assault in the last 5-10 years, regardless of their age or the factual similarity of the assault reported.
>
> Accordingly, the Motion is GRANTED in part and DENIED in part with respect to Interrogatory No. 23, and **although Defendant is required to produce a list of sexual assault complaints during the relevant time period, to protect the privacy interests of the passengers involved, Defendant United is instructed to redact the last names and contact information for the passengers involved**. The Court finds that any remaining concerns for the privacy interests of Defendant's passengers is mitigated by the parties' robust protective order. *Id*. at *16-17 (Emphasis added.)

Plaintiffs can bemoan the ruling in *Anders* all they want, but the case is directly on point and unquestionably "good law." That is not to say *Anders* is binding on this Court, but it is certainly persuasive – not only in support of Frontier's redactions, but also on the issue of sanctions. Frontier cannot be sanctioned for its reliance on *Anders* or the line of similar cases that Plaintiffs criticized in their initial Motion for Sanctions.

**D.     Plaintiffs Have Not Shown a Need to Discover the Redacted Information**

The most important takeaway from *Anders* is the court's recognition of the general rule that privacy objections – whether under 14 C.F.R. § 243.9 or otherwise – require courts to balance the need for particular information against the privacy rights asserted. No. CV 19-5809-GW (KS), 2020 U.S. Dist. LEXIS 250250, at *14.

As explained *supra*, this case turns on the specific intent of the Frontier crewmembers who were involved with separating Plaintiffs during their flight and reporting concerns of inappropriate

touching to law enforcement. Because this is a non-class action claim involving discrete allegations of discrimination, assuming it is even admissible, pattern-or-practice evidence is only collaterally relevant, if at all. *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, at *19 (W.D. Wash. Mar. 28, 2012). Consequently, "evidence of systemic discrimination may be discoverable in <u>limited circumstances</u> if a plaintiff can make some showing to <u>connect</u> the alleged pattern or practice to his or her claims." *Id.* (Emphasis added).

The parties have been unable to reach a resolution regarding the redacted information in this case because Plaintiffs have failed to show any connection between their allegations and the unrelated flights such that would warrant contacting the individuals involved[2]. For example, Plaintiffs consistently argue that contacting the unknown passengers is "necessary to determine whether Frontier ever reached out to them for more information or informed them that an investigation was actually conducted." *See, e.g.*, ECF 141, p. 3. However, even if Plaintiffs could show a relevant connection with the unrelated incidents, Magistrate Judge Albregts has already ruled that evidence of how Frontier responds to complaints of race discrimination "is more appropriately required via interrogatory request or deposition testimony." ECF 83, p. 4. Judge Albregts added that Plaintiffs can determine from public information whether any of the unrelated complaints resulted in litigation. *Id*.

Plaintiffs next complain that Frontier's redactions have hindered their ability to "set up depositions of the Frontier personnel involved" and determine "whether they are direct employees of the airline or are agents working for outside companies that Frontier contracts with for the performance of certain functions." ECF 141, p. 3. This alone justifies Frontier's concerns that providing the personal information for its employees would risk unauthorized contact by Plaintiffs.

---

[2] Frontier notes that it produced to Plaintiffs the names and contact information for all passengers on the subject flight in the event any were possible percipient witnesses to the subject incident. *See Raub v. US Airways, Inc*., No. 16-1975, 2017 U.S. Dist. LEXIS 94018, at *4-5 (E.D. Pa. June 19, 2017).

Even if Plaintiffs could show that a particular incident has some relevant connection with this case, any communication with Frontier's employees must be conducted through counsel.

As the Court can see for itself, the redacted information is a Pandora's Box that should not be opened lightly. In previously denying Plaintiffs' requests for discovery of other incidents involving threat level classifications, the Court noted that Plaintiffs were already granted "broad avenues of relevant discovery on all the topics at issue in this case." ECF 120, p. 3. Granting Plaintiffs carte blanche to again broaden their investigation and start contacting unsuspecting and potentially vulnerable individuals with no connection to this case would fundamentally alter the scope of this litigation. Such an important decision calls for the exercise of careful discretion. Respectfully, Frontier submits that Plaintiffs should not be permitted to view the redacted information without first making a threshold showing of some connection between the incidents described in the redacted documents and the allegations at bar.

### E. Availability of Less Drastic Sanctions

Frontier has given the Court no reason to be concerned about non-compliance and respectfully maintains that even minor sanctions would not be warranted. Nonetheless, if the Court sees fit to impose sanctions against Frontier, then the availability of less drastic sanctions weighs most heavily among the five factors set out in *Wanderer v. Johnston*, 910 F.2d at 656.

### F. Plaintiffs' Conduct Must Stop

Regarding Plaintiffs' attack on the *Anders* decision as "a district court opinion that anyone capable of reading the English language could see was erroneously decided," (ECF 141, p. 7), it should be noted that this is not the first time Plaintiffs have disrespected a court. When Magistrate Judge Koppe previously denied their motion to compel for failing to provide legal citations, Plaintiffs sniped back that "*some of these concepts are so basic as to defy any effort to find citations on point*." ECF 50, p. 7, note 4. Plaintiffs' counsel later complained that he had "*spent*

13

*hours reading Judge Koppe's decisions on motions to compel attempting to discern a formula that would ensure a decision on the merits, without any success.*" ECF 81, pp. 3 and 4, note 2.

Plaintiffs' counsel is clearly prone to lashing out at lawyers and judges with whom he disagrees. Frontier recognizes that motions for sanctions are not favored and will not burden the Court another such motion. Frontier submits only that Plaintiffs' accusations are neither professional nor civil, and the instant duplicative Motion has only impeded the productive resolution of this discovery dispute.

## V.   CONCLUSION

For the foregoing reasons, FRONTIER AIRLINES, INC. respectfully requests that the Court deny Plaintiffs' Supplemental Motion for Sanctions, and for such further relief as this Court deems just and reasonable.

Date: November 16, 2021                                  Respectfully submitted,

**FRONTIER AIRLINES, INC.**

*/s/ Brian T. Maye*
Brian T. Maye *(*admitted *pro hac vice*)
Matthew D. Martin (admitted *pro hac vice*)
ADLER MURPHY & McQUILLEN LLP
20 South Clark Street, Suite 2500
Chicago, Illinois 60603
Phone: (312) 345-0700
Email: bmaye@amm-law.com
          mmartin@amm-law.com

Charles A. Michalek (Nevada Bar No. 5721)
ROGERS, MASTRANGELO, CARVALHO & MITCHEL
700 South Third Street
Las Vegas, Nevada 89101
Phone: (702) 383-3400
Email: cmichalek@rmcmlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 16, 2021, I caused the foregoing to be electronically filed with the United States District Court for the District of Nevada using the CM/ECF system.

By: */s/ Brian T. Maye*