Timothy R. Titolo, Esq.
Nevada Bar No. 003617
TITOLO LAW OFFICE
9950 West Cheyenne Ave.
Las Vegas, Nevada 89129
(702) 869-5100
tim@titololaw.com

John D. McKay, Esq.
*Admitted pro hac vice*
PARK AVENUE LAW LLC
127 W. Fairbanks Ave. No. 519
Winter Park, Florida 32789
(434) 531-9569
johndmckayatty@gmail.com
***Attorneys for Plaintiffs***

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| PETER DELVECCHIA, *et al.*, | Case No: 2:19-CV-01322-KJD-DJA |
| Plaintiffs, | |
| vs. | **PLAINTIFFS' REPLY IN SUPPORT OF SUPPLEMENTAL MOTION FOR SANCTIONS AGAINST DEFENDANT FRONTIER AIRLINES, INC. (ECF No. 141)** |
| FRONTIER AIRLINES, INC., *et al.*, | |
| Defendants. | |

Plaintiffs, Peter DelVecchia individually and as next friend of A. D., a minor, by counsel,

respectfully submit this Reply in support of their Supplemental Motion for Sanctions pursuant to Fed.

R. Civ. P. 37(b)(2)(A) and/or the Court's inherent sanction authority against Defendant Frontier

Airlines, Inc. ("Frontier")(ECF No. 141), for Frontier's dilatory and obstructionist discovery tactics

relating to its disobedience of this Court's Orders. For the reasons set forth herein and in the Motion,

the Court should grant the Motion and award Plaintiffs judgment by default on Count One of their

Second Amended Complaint.

    **I.**      **Frontier attempts to redirect the focus away from its disobedience.**

This Motion for Sanctions is about the responsibility that Frontier must face for its repeated, flagrant and still continuing abuses of the discovery process in this case during the past two years, not about whether Plaintiffs' counsel has impugned the character of Frontier's counsel. However, for the record (and as clearly evident *in* the record), Plaintiffs' counsel has never once assailed in any manner the professionalism or character of the attorneys representing Frontier. Sadly, Frontier's Response provides abundant evidence that a reciprocal observation cannot now be made about its counsel. With its Response, Frontier moves from an ineffective strategy of "blame the victims," *see* ECF No. 135 at 3-4, to an equally ineffective strategy of "attack the victims and their attorney." Its counsel use two valid observations about *Frontier's* choice of authorities and its behaviors in response to Plaintiffs' discovery requests as a springboard to launch an unrestrained and unprecedented attack on both Plaintiffs and their counsel:

| Plaintiffs' Motion (ECF No. 141) | Frontier's Response (ECF No. 145) |
|---|---|
| "[Frontier] claimed that federal law authorized its redactions, citing as support for that proposition a district court opinion that anyone capable of reading a regulation in the English language could see was erroneously decided." Motion p. 6-7<br><br>"To conclude from these facts that Frontier lacks all semblance of shame would be an understatement." *Id.,* at 15 | "exaggerated," Response p. 2<br><br>"wildly inappropriate," *id.*<br><br>"frivolous," *id.*<br><br>"full of malicious insults unbecoming of this tribunal," *id.*<br><br>"proclivity for hyperbole on full display," *id.*<br><br>"Plaintiffs bloviate," *id.*<br><br>"'uncivil accusations,'" *id.*<br><br>"vicious barbs," *id.*<br><br>"crosses the line," *id.*<br><br>"devoid of any thoughtful legal analysis and seems intended only to attack the character of Frontier's counsel," *id.*<br><br>"frivolity," *id.* at 5<br><br>"Undeterred by reality," *id.* at 6<br><br>"false narrative," *id.* |

| | "conspiracy theory," *id.* |
|---|---|
| | "wandering complaints . . . [that] are hard to fathom," *id.* at 7 |
| | "absurd," *id.* at 8, n.1 |
| | "hysterics," *Id.* at 10 |
| | "inappropriate and unprofessional swipe," *id.* |
| | "Plaintiffs . . . bemoan," *id.* at 11 |
| | "not the first time Plaintiffs have disrespected a court," *id.* at 13 |
| | "sniped," *id.* |
| | "Plaintiffs' counsel is clearly prone to lashing out at lawyers and judges with whom he disagrees," *id.* at 14 |
| | "neither professional nor civil," *id.* |

To borrow a line from Shakespeare, "The lady doth protest too much, methinks."[1] Underneath its unsupportable attacks, Frontier admits that it has not yet fully complied with a document production that the Court ordered it to make on May 8, 2020, over 16 months ago, and ordered again in a slightly expanded form on March 29, 2021, nearly 8 months ago. *See,* Resp. at 2 ("production is *nearly* complete." Emphasis added). It also concedes that the documents it has produced to date have been truncated by redactions that the Court did not authorize it to make. In response to this Motion, Frontier needed to provide the Court with some legitimate legal explanation for its disobedience of the Court's Orders that was beyond its ability to control, but it utterly failed to provide any such explanation. Attacking Plaintiffs and their attorney does not provide a valid substitute for the explanation that it bore the burden of providing. *See, Jorgensen v. Cassiday,* 320 F.3d 906, 912 (9th Cir. 2003)(party accused of willful misconduct bears the sole burden of showing how the disobedient conduct resulted from circumstances outside of its control).

---

[1] *Hamlet,* Act III, Scene II.

**II.     Frontier has deliberately chosen to subvert the normal discovery process, and it has not even attempted to provide the Court with justification for its conduct.**

Frontier produced the first redacted set of records of discrimination complaints responsive to Request No. 47 of Plaintiffs' First Request for Production on July 30, 2021, which was well over a year and a half past the date the responses should have been due pursuant to Fed. R. Civ. P. 34(b)(2)(A), and 14 months after the Court ordered production of responsive documents.[2] But that turned out to be just the beginning of a slow drip of responsive documents that Frontier has now stretched out over four more months, with production always timed for a Friday release date, and which it asserts is not yet complete ("its ongoing production efforts are nearly complete," Resp. at 6). Plus, it has redacted identifying and contact information from all of the documents that it has produced, despite the fact that the Court's Orders contained no authorization to redact information from them.  As noted in Plaintiffs' Motion, prior leave of Court is normally required before redacting information from a document in litigation, *see, e.g., Bartech Int'l, Inc. v. Mobile Simple Solutions, Inc.,* Case No. 2:15-cv-02422-MMD-NJK (D. Nev., April 27, 2016); *Terry v. Register Tapes Unlimited, Inc.,* Case No. 2:16-cv-00806-WBS-AC (E.D. Cal., June 29, 2018). Without the names and contact information, Plaintiffs are unable to obtain details of the complainants' sides of the relevant facts (many of the reports have been written by the Frontier employees who received the complaints and/or contain only the flight attendants' versions of what happened), or even what protected class several of the complainants belong to (many reports state that the passenger felt he or

---

[2] Plaintiffs served their First Request for Production on Frontier on October 7, 2019, and it produced no documents in response. The Court granted Plaintiffs' Motion to Compel on May 8, 2020. Frontier produced its first set of responsive documents in heavily redacted form on Friday, July 16, 2021. It produced the next set, also heavily redacted, on Friday, September 17, 2021, exactly seven weeks later. It produced the third set of heavily redacted documents the following Friday, September 24, 2021. It delayed the next production until Friday, November 12, 2021, precisely seven weeks after the previous production. It recently claimed to be "nearly" finished with this obviously scheduled release of responsive documents. Its reasons for the delayed releases, the Friday release dates, what remains to be produced and when the dribbling production will end, remain entirely opaque. It is impossible to conclude that this conduct is benign or based on a good faith willingness to comply with the Court's production Orders.

she was discriminated against due to "race" but fail to identify what race). Frontier's unauthorized redactions render the documents nearly useless.[3]

In the face of this clear record of its obviously calculated obstruction of the discovery process, defiance of the Court's Orders and unilateral decisions to redact information on "privacy" grounds that it never even raised in its objections, Frontier offers *zero* factual explanation to justify its conduct. Instead, it: (1) makes the wholly unsupported claim that "there is no basis to impose even minor sanctions" against it, Resp. at 3; (2) falsely argues that the requested sanctions are "*case-dispositive*" (italics in original) and would therefore violate due process, *id.*;[4] (3) makes irrelevant arguments concerning the merits of the case, *id.* at 4; (4) reasserts a demonstrably false claim that "Plaintiffs expressed no concerns or allegations of unwarranted delay until after the parties filed their fifth stipulated motion to extend discovery deadlines," knowing that its counsel deleted an expression of that very concern from that document prior to filing it, *see* Reply on Motion for Sanctions, ECF No. 135 at 4-6 and Exhibit A, ECF 135-1; (5) argues the number of pages of documents that it has produced (without explaining why the production of those relating to prior claims of human trafficking and discrimination complaints against it was delayed for more than a year after the Court ordered it to produce them, or providing a valid basis for redacting the names and contact information of all of the passengers involved), *id.* at 5; (6) makes irrelevant references to documents that have nothing to do with Orders to compel at issue, *id.*;[5] (7) claims that its conduct in defiance of the

---

[3] Frontier makes a misleading claim that Plaintiffs "took a contrary position" in their prior Motion for Sanctions, *see* Response at 9. They did not—some of the reports of suspected human trafficking do reveal a pattern of racial profiling and false reports, as Plaintiffs said in that Motion, but several other reports contain incomplete descriptions of the facts. The complaints of race and ethnicity discrimination are even more incomplete. Further investigation, through contacting the complaining parties, is necessary to determine all of the relevant facts.

[4] The requested default sanction would be dispositive of only one of seven counts of the currently operative Second Amended Complaint.

[5] The documents at issue concern prior complaints of racial and ethnic discrimination and reported instances of suspected human trafficking, which are evidence of Frontier fostering an environment leading up to the date of Plaintiffs' flight in which its flight attendants were commended for making baseless allegations of human trafficking against passengers based on their looks and in which complaints of racial and ethnic discrimination were routinely swept under the rug year after year. That evidence is relevant and fundamental to Plaintiffs' allegations that Frontier had corporate complicity in

Court's Orders could have been even worse, *id.* at 5-7; (8) claims that Plaintiffs have suffered no prejudice by the delays and redactions because they "do not need the redacted information," *id.* at 9; (9) continues to tout the significance of district court decisions that were obviously made in error because they go against the plain language of the regulation that they claim to be upholding (Frontier avoids any comparison of the holdings to the actual language of the regulation, despite the inescapable axiom that the plain language of a regulation is the best evidence of its meaning, *see Inland Empire Public Lands Council v. U.S. Forest Service,* 88 F.3d 754, 761 (9th Cir. 1996) and *Idaho First Nat'l Bank v. Commissioner of Internal Revenue*, 997 F.2d 1285, 1289 (9th Cir.1993)), Resp. at 10-13; (10) presents a blatantly false claim that "[t]he parties have been unable to reach a resolution regarding the redacted information in this case because Plaintiffs have failed to show any connection between their allegations and the unrelated flights such that would warrant contacting the individuals involved," *id.* at 12 (no such discussion has ever occurred); (11) makes a factually unsupported—and unsupportable—argument that less drastic sanctions could suffice, *id.* at 13; and (12) invents nonexistent rules of federal law to support its conduct, as noted below, *see id.* at 2-3. The obvious conclusion from those arguments in Frontier's response is that it has no interest in explaining or attempting to justify its conduct based on circumstances beyond its control. Again, Ninth Circuit jurisprudence places the burden of identifying such circumstances squarely on Frontier's shoulders. As the Ninth Circuit stated in *Jorgensen*:

> Where the sanction results in default, the sanctioned party's violations must be due to the "willfulness, bad faith, or fault" of the party. *Hyde & Drath v. Baker*, 24 F.3d 1162, 1167 (9th Cir.1994) (citing *Fjelstad v. Am. Honda Motor Co*., 762 F.2d 1334, 1341 (9th Cir.1985)). "Disobedient conduct not shown to be outside the control of the litigant is

---

conduct that violates §1981. The Court ordered Frontier to produce those documents. Plaintiffs' Motion does not concern documents designated as SSI, FBI investigative documents, LVMPD investigative documents, Plaintiff A.D.'s middle school records, or Plaintiffs' medical records. None of those documents were the subject of the Court's production Orders. Frontier's arguments concerning the latter types of documents amount to nothing more than a red herring intended to deflect the Court's focus from the actual issue of its disobedience of the Court's Orders.

sufficient to demonstrate willfulness, bad faith, or fault." *Hyde & Drath*, 24 F.3d at 1166.

320 F.3d, at 912. Thus, by failing to identify any reason why failing to produce the documents immediately after the Court's production Order and redacting information that the Order did not authorize it to remove was somehow due to factors outside of its control, Frontier has demonstrated the "willfulness, bad faith, or fault" necessary to impose the sanction of default on Count One. *Id.*

### III. **Frontier fails to address the central legal argument concerning 14 C.F.R. §243.9, preferring instead to invent a rule of law that does not exist.**

In its weak attempt to support its redaction decisions with legal precedent, Frontier demonstrates anew its penchant for inventing rules of law to support its violations of the Court's Orders. It claims in its Response:

> However, federal courts applying a federal regulation establish that airlines must protect the identities of passengers absent an order expressly prohibiting redactions. No such order has been entered in this case. Thus, to maintain compliance with this Court's Order and also with federal law, in producing its responsive documents, Frontier has redacted personal information identifying the individuals involved with the unrelated flights.

*Id.* at 2. It cites no case authority for that proposition, because there is no case holding that "airlines must protect the identities of passengers absent an order expressly prohibiting redactions." It repeats that invalid claim again on the following page, again without any citation to authority: "Absent a Court Order expressly prohibiting redactions, legitimate privacy concerns and compliance with federal law support Frontier's decision to protect the identities of those involved with the unrelated incidents." *Id.,* at 3. In doing so, Frontier audaciously invents from whole cloth a federal rule of law that redaction of passengers' names is considered the norm by federal courts, unless forbidden by "an order expressly prohibiting redactions." Not even the wrongly decided district court opinion in *Wallman v. Tower Air Inc.*, 189 F.R.D. 566 (N.D. Cal. 1999), and its progeny of equally erroneous decisions from other district courts and one state appellate court, *see* discussion in Plaintiffs' original Motion for Sanctions, ECF No. 128 at 16-20 (herein incorporated by reference), contain any language

remotely similar to the "rule" claimed by Frontier. Frontier simply made it up. That is a clear example of Frontier purposefully misleading the Court, which is an additional ground for the imposition of sanctions. *See, e.g., Roberts v. American Energy Resources, Inc.,* 942 F.2d 793 (9th Cir. 1991); *Montgomery v. City of Ardmore,* 365 F.3d 926, 943 (10th Cir. 2004); *United States v. King,* 478 F.2d 494, 504 (9th Cir. 1973)("We cannot describe as 'good faith' an apparently deliberate attempt to mislead the court.").

Frontier wholly avoids the central and obvious issue concerning 14 C.F.R. §243.9, which is whether the language of the regulation supports its redactions. As noted in the discussion in Plaintiffs' prior Motion for Sanctions, Part 243 of Title 14 of the Code of Federal Regulations as a whole applies only to "covered flight segments," *see* §243.1, and a "covered flight segment" is defined in §243.3 as: "a passenger-carrying flight segment operating to or from the United States . . . [which] does not include a flight segment in which both the point of departure and point of arrival are in the United States." In other words, Part 243 applies only to international, rather than domestic, flights, for the reasons explained in detail in Plaintiffs' previously filed Motion for Sanctions (ECF No. 128). *Wallman* concerned a domestic flight—from JFK to SFO—and therefore the Northern District [of California] Court's application of Part 243 to the flight's passengers was erroneous from the outset. Moreover, the only confidentiality provision in Part 243 is §243.9(c), which by its plain language applies solely to "the contact information collected pursuant to section 243.7(a)(2)." The latter subsection authorizes the solicitation of emergency contact information from passengers, which they are not required by law to provide to the airlines. Section 243.3 defines such a contact as "a person not on the covered flight or an entity that should be contacted in case of an aviation disaster." The flights depicted in the documents produced by Frontier are all domestic flights, because the Court's Order of May 8, 2020 limited production to flights in "the continental United States," *see*

ECF No. 83 at 4. The names and contact information that Frontier has redacted from the documents are those of passengers aboard the flights in question, so they could not be the "contacts" protected by the confidentiality provision of §243.9(c) even if the flights had been international ones. A person cannot logically be a "passenger" (defined by §243.3 as a "person aboard a covered flight segment") and, at the same time, a "contact" (defined by §243.3 as a "person not on the covered flight"). A simple reading of the plain language of Part 243 establishes that it applies to neither the flights described in the documents produced by Frontier nor to the names of the passengers and their contact information.  "It is a fundamental canon that where the statutory text is plain and unambiguous, a court must apply the statute according to its terms." *Salisbury v. City of Santa Monica,* 994 F.3d 1056, 1062 (9th Cir. 2021)(internal citations omitted). Under the holding of *Salisbury,* courts are *unauthorized* to engage in interpretation beyond such language. *Id.* at 1062-63.

There can be little doubt that the airlines have appreciated the benefit of the erroneous decision in *Wallman,* and they and their defense counsel have continued to cite it when doing so serves their interests. They have succeeded in convincing six more district judges and a state appellate court panel to follow it. But as shown above and in Plaintiffs' previous Motion for Sanctions, their holdings fly in the face of the regulation's plain language and therefore should not be followed. It is worth noting that Frontier primarily relies on a case in which United Airlines convinced a district judge in the Central District of California to follow the *Wallman* decision, *Anders v. United Airlines, Inc.,* 2020 U.S. Dist. LEXIS 250250 (C.D. Cal., December 18, 2020),[6] while another large airline, American Airlines, had no qualms about voluntarily providing 1.2 million of its former passengers' names and contact information to a third-party vendor in the circumstances

---

[6] Although the decision did not cite *Wallman* as support for the court's holding, *Wallman* was the sole case that United cited in support of its objections to producing the documents, as reflected in a stipulated motion filed with the court, *see* Case No. CV 19-5809-GW (KS) (C.D. Calif.) at ECF No. 52, pp. 5-6 (excerpt attached as **Exhibit A** hereto).

litigated in *In re American Airlines Privacy Litigation,* 370 F. Supp. 2d 552 (N.D. Tex. 2005). The district court in the Texas multidistrict litigation found absolutely no legal basis to hold American liable for releasing the passengers' information without their consent, and the court made no mention of 14 C.F.R. §243.9, the regulation cited by Frontier in the instant case, despite the fact that the regulation had been on the books for several years prior to American's disclosure of the names and contact information.

It is also worth noting that Frontier avoids any discussion of the actual language of Part 243 in its responses to this Motion and the previous Motion for Sanctions, which leads inescapably to the conclusion that it is fully cognizant of the mismatch between the language of the regulation and the erroneous holding of *Anders* (which can be traced back to the erroneous holding of *Wallman*, *see* n.6 below). This also amounts to willful misleading of the Court on a critical issue.

Finally as to this issue, Frontier states on page 10 of its Response: "Frontier was hopeful that, if Plaintiffs felt the production of unredacted documents was required, they would simply file a motion to compel them . . ." Plaintiffs *did* file, and *won*, a motion to compel production of the prior complaints and descriptions of prior instances of human trafficking accusations. Frontier never raised any objections in its response to the requests for production or its briefing of that motion to the production based on its alleged privacy concerns on behalf of "unsuspecting and potentially vulnerable individuals," *see id.* at 13, thus waiving any such objections entirely. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992); *see also Haddad v. Interstate Management Co., LLC*, 2012 WL 398764, * 1 (D. Nev. 2012) (same); 7 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE, § 33.174[2], at 33-106, §34.13[2][a], at 34-56 to 34-56.1 (3d ed. 2012). This Court ordered it to produce the documents, and included no authorization for redactions. Frontier delayed production for more than a year, in disobedience of that Order, and then scrubbed

the documents of certain pertinent information, in further disobedience of the Order. Plaintiffs should not have to file yet another motion to compel. Instead, Frontier should bear the consequences of its willful disobedience of the Court's Orders by the entry of its default on Count One.

### IV.    Frontier's allegation that Plaintiffs' counsel has "disrespected the Court" is baseless.

Frontier's suggestion that Plaintiffs' lead counsel (McKay) has disrespected the Court is baseless. It appears to be based entirely on his previously noting, truthfully, that he had spent hours trying to determine what the former Magistrate Judge assigned to this case found wanting in Plaintiffs' first two motions to compel. His statements on that subject conveyed no disrespect; they simply inquired why a format for a motion to compel that had successfully reached decisions on the merits in several other federal courts was being rejected in this one. He has the utmost respect for state and federal judges. He previously served two terms on a disciplinary committee of the Virginia State Bar, and on the Professionalism Committee of the Charlottesville-Albemarle (Virginia) Bar Association, both of which heard and decided complaints of attorney misconduct and/or lapses in professionalism. He was one of the original founders, along with a sitting federal judge, of the Thomas Jefferson Inn of Court, originally organized under the auspices of the American Inns of Court Foundation, the purpose of which was to teach professionalism to young litigators. Frontier's claim that he is "clearly prone to lashing out at lawyers and judges with whom he disagrees," Resp. at 14,  is unfounded and not well received. There is a tangible connection between the increasing sharpness of Frontier's rhetoric and its facing possible consequences for subverting the discovery process for its own ends. But that is entirely the point—the Rules of Civil Procedure and the Court control the pace and progress of litigation, and the content of what is produced, not Frontier.

### V.    Default sanctions are justified by Frontier's conduct.

Plaintiffs initially thought that a finding of fact and/or an Order requiring Frontier to remove the redactions might sufficiently address the consequences of its misconduct. It is now clear, however, that such sanctions—or any other sanctions less severe than a default as to Count One—cannot adequately and properly address the severe prejudice caused by Frontier's disobedience. Plaintiffs *still* cannot conduct depositions with a full set of documents. Plaintiffs *still* cannot discover the full facts behind the prior discrimination complaints. Plaintiffs *still* do not know when Frontier will complete the production it was ordered to complete over a year ago. Frontier *still* has not provided alternative dates for its deposition after declaring that it refuses to appear on the dates noticed. The clock is ticking on the discovery period, and Frontier knows that. Its conduct is designed to run out that clock. At this point, there is little possibility that Plaintiffs could contact the prior discrimination complainants and schedule depositions in the time left. Expert reports are due in late March, and Plaintiffs' expert on race discrimination could not possibly prepare opinions based on the details of the past complaints between some unknown future date when Frontier finally discloses those details and late March. Frontier's misconduct has resulted in the loss of more than 16 months during which meaningful discovery could have been conducted if it had not disobeyed the production Orders. It must now face the consequences of its prejudicial conduct.

DATED this 23rd day of September, 2021.

_____/s/ John D. McKay_____

John D. McKay (admitted *pro hac vice*)
PARK AVENUE LAW LLC
127 W. Fairbanks Ave., No. 519
Winter Park, FL 32789
johndmckayatty@gmail.com
(434) 531-9569

Timothy R. Titolo (Nev. Bar. No. 3617)
TITOLO LAW OFFICE
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 869-5100
tim@titololaw.com
***Attorneys for Plaintiffs***