Timothy R. Titolo, Esq.
Nevada Bar No. 003617
TITOLO LAW OFFICE
9950 West Cheyenne Ave.
Las Vegas, Nevada 89129
(702) 869-5100
tim@titololaw.com

John D. McKay, Esq.
*Admitted pro hac vice*
PARK AVENUE LAW LLC
127 W. Fairbanks Ave. No. 519
Winter Park, Florida 32789
(434) 531-9569
johndmckayatty@gmail.com

**Attorneys for Plaintiffs**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

PETER DELVECCHIA, *et al.*,     )     **Case No: 2:19-CV-01322-KJD-DJA**
                )
          Plaintiffs,   )
                )     **PLAINTIFFS' FOURTH MOTION**
                )     **MOTION TO COMPEL**
vs.                  )
                )
FRONTIER AIRLINES, INC., *et al.*,  )
         Defendants.  )
_____)

      When Plaintiffs, Peter DelVecchia and his adopted twelve-year-old son, boarded Defendant Frontier Airlines' Flight 2067 to Las Vegas on the evening of March 28, 2019 in Raleigh, North Carolina, they simply wanted to be treated by the airline's employees just like all of the other passengers on that flight, without any judgment based on the coincidental disparities in the colors of their skin or their ethnicities. Unfortunately, as they describe in the allegations of their Third Amended Complaint (ECF No. 153), that expected equality of treatment did not occur. Now that they

are before this Honorable Court, they have a similarly reasonable desire for their case to proceed on an equal basis with all others, in accordance with the text and intent of the applicable statutory and regulatory laws, and the Rules of Civil Procedure, so that they have a fair opportunity to prepare their case for their eventual day in court. As citizens of the United States and litigants before this Court, they are entitled to nothing less. This Motion, brought under the authority of Fed.R.Civ.P. 37(a), asks the Court to fairly apply Plaintiffs' rights to discovery under Rules 26 and 34, to fairly interpret the language of 14 C.F.R. §243.9(c) which Defendant Frontier has argued throughout this case authorizes it to redact passenger-identifying information from all of the documents that the Court has previously ordered it to produce in response to Plaintiffs' Rule 34 request served in October, 2019, and to order Frontier to remove those redactions to cure its previous responses that were incomplete because of the redactions. *See,* Fed.R.Civ.P. 34(a)(3)(A) and (4) (incomplete response to be treated as a failure to respond for purposes of applying Rule 34(a)).

Importantly, this Motion does *not* request the removal of redactions from documents describing prior allegations by Frontier employees of human trafficking by passengers, which the Court ordered produced pursuant to Plaintiffs' November 15, 2019 Second RFP, Requests 2-7 (*see,* May 8, 2020 Order, ECF No. 83, at 4-5), due to the Court's concerns about those documents involving minors and Frontier's wholly unsupported claim that some of them might not know that a "complaint" was made containing such allegations (*see,* Nov. 30, 2021 Order, ECF No. 150, at 5 n.2). Those trafficking documents (none of which are complaints) are only a miniscule percentage of the total documents produced pursuant to the May 8, 2020 Order. Rather, Plaintiffs request that an order compelling removal of the redactions apply instead to the documents that pertain to actual passenger complaints of racial and ethnic discrimination, which the Court ordered produced pursuant to Plaintiffs' October 7, 2019 First RFP, Request 47 (*see* ECF No. 83, at 4). None of those complaints

were filed by minors, and every passenger who filed such a complaint with Frontier had to have

known that it was filed.[1]

### Declaration of Pre-Filing Conference

Lead counsel for Plaintiffs, John McKay, has met on several occasions with counsel for

Frontier to discuss the non-applicability of 14 C.F.R. §243.9(c) to the identification of passengers

aboard domestic U.S. flights, and to attempt to find a resolution to that issue which is at the heart of

this Motion. He has also discussed with defense counsel the impropriety of redacting employee

information from the documents. Those meetings have been with Tara Shelke, Esquire, Matthew

Martin, Esquire, and Brian Maye, Esquire, and they have occurred both in person and by telephone.

The most recent such meeting occurred on the afternoon of March 1, 2022, by telephone, between

John McKay, representing Plaintiffs, and Brian Maye and Richard Harris, representing Defendants. It

lasted approximately 35 minutes. No resolution has ever been reached, as both sides have held

steadfastly to their positions and "agreed to disagree."

### Procedural History Relevant to the Instant Motion

A few procedural points are necessary to a full understanding of the issues central to the

instant Motion. First, as noted above, the Court ordered the discrimination complaints produced

pursuant to Plaintiffs' First RFP, Request 47, served on October 7, 2019 and responded to by Frontier

on November 18, 2019. The full text of that request and Frontier's response to it are as follows:

> **RFP No. 47: All Documents/ESI containing and/or describing any
> complaint(s) received by Frontier since January 1, 2009 that allege any act of
> discrimination on the basis of race conducted or condoned by a Frontier employee,**

---

[1] For ease of reference, the documents subject to this Motion will be referred to herein simply as the "discrimination complaints," even though they comprise more than just the complaints themselves—they also include processing notes by Frontier's Customer Relations Department, Passenger Name Record details including additional notes and itinerary information, correspondence with the Department of Transportation concerning the complaints, witness statements from crew members, and other related documents. Frontier has produced all of them in redacted form, having removed from them most references that identify a passenger by name, provide that passenger's mailing address, email address, or phone number, and also the email addresses and employee numbers of its employees and other persons contributing to the written records. (Frontier has never claimed *any* legal authority for the latter redactions.)

**including, without limitation, a copy of each complaint and any Documents/ESI containing or describing actions taken by Frontier's management in response to each complaint.**

**Frontier's Response:** **Frontier objects to Request for Production No. 47 on the grounds that it is overly broad and seeks information that is not relevant to any party's claim or defense and/or not proportional to the needs of the case.**

The Court's two Orders, ECF No. 83 and ECF No. 120, overruled Frontier's objections but limited the response to the 5 years predating the DelVecchias' flight and to flights within the continental United States, *see* ECF No. 120 at 2, para. 1. Notably, although Frontier now relies on a confidentiality term contained in 14 C.F.R. §243.9(c) as legal support for its redactions of passenger information, it never raised the alleged applicability of §243.9(c), confidentiality, or any type of privacy concerns in the objection that it served to the request pursuant to Rule 34(b)(2)(C), which is set out in full above. It only objected to the request on the bases of breadth, relevance and proportionality. Frontier's counsel never raised §243.9(c) in relation to the discrimination complaints until after Plaintiffs' counsel complained about the redactions that appeared on the documents that Frontier began producing on July 16, 2021.

Even so, this marks the sixth time that Plaintiffs have raised the non-applicability of §243.9(c)'s confidentiality provision to the identity of passengers aboard domestic flights in motions filed with this Court, yet the Court has never ruled on which party's interpretation of §243.9(c) is the correct one. Plaintiffs first raised it in their first Motion to Compel (ECF No. 45) filed December 2, 2019, because Frontier had raised the regulation (as well as the equally inapplicable Privacy Act of 1974, a claim it has since abandoned) to support its refusal to provide Plaintiffs with the names of other passengers aboard Plaintiffs' flight.[2] The Court denied that motion without prejudice on the ground that it did not contain a sufficient number of citations to authority, *see* ECF No. 47. Plaintiffs

---

[2] It has subsequently relented and produced those passenger names, albeit under a "confidential" designation pursuant to the Protective Order entered October 10, 2019 (ECF No. 37).

raised it again in their Amended Motion to Compel (ECF No. 50) filed December 5, 2019, which the Court again denied without prejudice for not having "well-developed arguments" or "appropriate" authorities, and also because it found (at Frontier's urging) a violation of Local Rule IC 2-2(b) since Plaintiffs had asked the Court to rule that passenger names are not entitled to the privacy protections of the initial Protective Order, *see* ECF No. 57. Plaintiffs raised it again in their Second Amended Motion to Compel (ECF No. 77) filed April 8, 2020, *see id.* at 15, but Frontier did not respond to the §243.9(c) argument and the Court never mentioned the regulation in its Order, *see* ECF No. 83. None of those instances involved the redactions at issue, because the documents in which they appear had not been produced yet. But Plaintiffs also raised, and fully briefed, the issue in their Motion for Sanctions (ECF No. 128) filed August 20, 2021, and in their Supplemental Motion for Sanctions (ECF No. 141) filed November 2, 2021, specifically pertaining to the redactions at issue in the instant Motion, and still the Court declined to rule on it, *see* ECF No. 150, at 6. As a consequence, documents that Plaintiffs properly requested in discovery back in October, 2019 and that the Court ordered produced (without any mention of redactions) have been missing information that Frontier redacted from them that Plaintiffs believe is necessary and relevant to the presentation of their case at trial.

## ARGUMENT

**I.**     **Frontier waived its objections based on §243.9(c) confidentiality and privacy concerns by not including them in its Rule 34 response served on November 18, 2019.**

It is axiomatic in federal practice that objections not asserted in a timely fashion are waived. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection"); *see also Haddad v. Interstate Management Co., LLC*, 2012 WL 398764, * 1 (D.

Nev. 2012) (same); 7 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE, § 33.174[2], at 33-106, §34.13[2][a], at 34-56 to 34-56.1 (3d ed. 2012)(same). As noted above, Frontier responded to Request 47 with objections based on breadth, relevance and proportionality, all of which the Court overruled. It never asserted any objections based on §243.9(c) or passengers' (or employees') privacy rights at the time that Rule 34(b) required it to serve its objections to the request. Thus, it is inconsistent with the authorities cited above to allow Frontier to keep information redacted and hidden from Plaintiffs' view based on a legal argument it never raised in a timely manner (and, concerning the redaction of employee numbers and emails, based on no legal argument whatsoever). Moreover, Frontier allowed all three of Plaintiffs' prior Motions to Compel (*i.e.,* ECF Nos. 45, 50, and 77), in which its response to Request 47 was a central issue, to be briefed and ruled upon over the course of 17 months without ever raising the §243.9(c) argument in connection with Request 47. If it is fair for the Court to deny Plaintiffs any relief for Frontier's decision to delay production of the discrimination complaints for 14 months past entry of the Order requiring their production, on the ground that Plaintiffs failed to lodge formal notice of their objection to the delay during that period, *see* November 30, 2021 Order (ECF No. 150) at 2, 6, 9, when neither the Rules of Civil Procedure nor any case law required Plaintiffs to lodge any such notice, then certainly the same principle of fairness demands that Frontier should not be permitted to benefit from an objection that it failed to assert during an even longer period of time, when the Rules of Civil Procedure and the case law *did* require a timely assertion of the objection. The Court should hold that Frontier waived any objections based on §243.9(c) or any other privacy laws or concerns because it failed to assert such objections in its Rule 34 response served on November 18, 2019. Since it waived the objections, the redactions based on them must be removed from the discrimination complaints.

## II.    Neither the Court nor the case law authorized Frontier to make the redactions.

The Court entered two Orders that required Frontier to produce the prior discrimination complaints: Magistrate Judge Albregts' May 8, 2020 Order (ECF No. 83) and Judge Dawson's March 29, 2021 Order on Rule 72(a) objections (ECF No. 120). Neither Order mentioned any right of Frontier to redact information from the documents, which is not surprising given that Frontier never raised any confidentiality or privacy issues concerning them. Frontier therefore cannot claim any pre-authorization by the Court for its redactions. It has, however, claimed that federal case law grants it an absolute right to redact information that identifies airline passengers *absent* a specific court order prohibiting such redactions. In its Response to Plaintiffs' Supplemental Motion for Sanctions (ECF No. 145), at page 2, it argued this as an established rule of law:

> federal courts applying a federal regulation establish that airlines must protect the identities of passengers absent an order expressly prohibiting redactions. No such order has been entered in this case. Thus, to maintain compliance with this Court's Order and also with federal law, in producing its responsive documents, Frontier has redacted personal information identifying the individuals involved with the unrelated flights.

The federal regulation alluded to by Frontier is §243.9(c)—that is the only regulation that Frontier has ever cited in the relevant context.[3] That regulation does not require the protection of "the identities of passengers," as discussed below. As also discussed in more detail below, there are 7 federal district court decisions that interpret it, and 6 of them never should have interpreted the regulation in the first place, because the flights at issue in those cases were domestic flights and Part 243 applies by its terms only to international flights. *See,* 14 C.F.R. §§243.3, 243.5 (Part applies only to "covered flight segments," which are defined to <u>exclude</u> flights "in which both the point of departure and the point of arrival are in the United States"). Only one of the cases, *Anders v. United*

---

[3] As noted above, it also briefly cited a federal *statute*, 5 U.S.C. §552a (part of the Privacy Act of 1974), as support for its refusal to divulge the names of other passengers on Flight 2067, but it abandoned that argument after Plaintiffs pointed out that the statute applies only to certain government agencies that are named in §552(f)(1). *See* §552a(a)(1)(note that "552(e)" referenced in 552a(a)(1) was redesignated 552(f) by section 1802(b) of Pub. L. 99-570).

*Airlines, Inc.,* CV 19-5809-GW (KS), 2020 US Dist. LEXIS 250250 (C.D. Cal., Dec. 18, 2020) (which is one of the 6 that involved a domestic flight to which §243.9(c) is not applicable) contained any instruction to redact passenger names. Even it, however, did not "establish that airlines must protect the identities of passengers absent an order expressly prohibiting redactions." That language cited by Frontier as a supposed rule of law does not appear in the *Anders* opinion or in any of the other federal cases interpreting §243.9(c), and it is noteworthy that Frontier never cited to any authority for its assertion that "airlines must protect the identities of passengers absent an order expressly prohibiting redactions." That "rule" simply does not exist. Cases should be governed by settled law, not by *ad hoc* "rules" created by litigants to serve their own interests.

## A.   <u>Redactions normally require Court authorization</u>.

Although court decisions on redaction as it applies to documents produced in discovery are admittedly scant, those that Plaintiffs have been able to find strongly suggest that Courts in this Circuit expect that a party will seek leave of Court prior to redacting any information from a document ordered produced in discovery, with the exception of the types of information that are listed in Fed.R.Civ.P 5.2(a)(1)-(4), or information protected from disclosure by the attorney-client privilege or work-product immunity. For example, in *Terry v. Register Tapes Unlimited, Inc.,* Case No. 2:16-cv-00806-WBS-AC (E.D. Cal., June 29, 2018), the Eastern District of California Court had granted a motion to compel the production of certain documents by the defendant, and the defendant then produced the documents with information redacted. The plaintiff moved for sanctions on the grounds, *inter alia*, that the defendant had redacted the information without prior permission from the Court. The Court agreed that prior permission was necessary, and granted monetary sanctions:

> The documents that defendant produced to plaintiff pursuant to this court's previous orders, . . . were heavily redacted. The court never authorized redaction. Defendant's unauthorized redaction of material including key financial information and dates constitutes sanctionable discovery misconduct.

Slip op. at 5 (internal record citations omitted). Similarly, a Magistrate Judge in the Northern District of California ordered the plaintiff to produce certain emails and Facebook communications concerning certain protest activities. When the plaintiff produced the documents, he redacted from them "all identifying information, including names and email addresses." *Cuviello v. Feld Entertainment, Inc.,* Case No. 5:13-cv-03135-LHK (N.D. Cal., February 27, 2015), slip op. at 5. The Court found that the redactions violated its order to produce the documents, noting, "[t]he court never permitted Cuviello to redact any information in documents produced." *Id.* It granted monetary sanctions against the plaintiff and recommended that he be held in civil contempt for his disobedience of the Court's discovery order. *Id.,* at 7-8.

In the instant case, the Court ordered Frontier to produce the discrimination complaints. Nothing in Judge Albregt's original Order or Judge Dawson's subsequent Order ever mentioned redacting any information, let alone granted authorization to make redactions. In that regard, the situation in the instant case is indistinguishable from the situations discussed in the two cases discussed above. Plaintiffs are not seeking sanctions in this Motion (the Court previously denied their two Motions for Sanctions, finding that "Plaintiffs have brought the wrong motion," and should have filed a motion to compel, *see* ECF No. 150, at 5 and n.2). Plaintiffs are now bringing a Motion to Compel to obtain the removal of the redactions.

**B.**     **Section 243.9(c) does not authorize the redactions.**

**(i).     The regulation has no application to the flights at issue**

First and foremost, §243.9(c) has no application to any of the airline flights at issue in this Motion, because the Part of the Federal Aviation Regulations (FARs) in which it is contained only applies, by its plain language (and its promulgation history) to international flights. The principal flight at issue in this case, Frontier Flight 2067, was a domestic flight from Raleigh, North Carolina,

to Las Vegas, Nevada. The flights that were involved in the discrimination complaints are also necessarily domestic flights, because the Court's Order requiring Frontier to produce the discrimination complaints limited the scope of the production to flights within the continental United States, *see* ECF No. 83, at 4.

Part 243 of the FARs begins with "Purpose," "Definitions," and "Applicability" sections, that are critical to understanding its limited scope. Section 243.1, "Purpose," states: "The purpose of this part is to ensure that the U.S. government has prompt and adequate information in case of an aviation disaster on covered flight segments." A "covered flight segment" is specifically defined in Section 243.3, "Definitions," as follows:

> *Covered flight segment* means a passenger-carrying flight segment operating to or from the United States (*i.e.*, the flight segment where the last point of departure or the first point of arrival is in the United States). **A covered flight segment does not include a flight segment in which both the point of departure and point of arrival are in the United States.**

(Emphasis added). Section 243.5, "Applicability," makes it absolutely clear that the definition of "covered flight segment" limits the regulation's scope: "This part applies to covered flight segments operated by covered airlines."[4]  Thus, the plain language of the regulation limits its application to international flights, and it has no application to the domestic flights at issue.

Well-established Ninth Circuit precedent holds that the plain language of a regulation or statute is the first step in judicial interpretation, and is also the last step if that language is unambiguous. *See, e.g., Inland Empire Public Lands Council v. U.S. Forest Service,* 88 F.3d 754, 761 (9th Cir. 1996)("We start, as we must, with the plain language of the Regulation."); *Idaho First Nat'l Bank v. Commissioner of Internal Revenue*, 997 F.2d 1285, 1289 (9th Cir.1993) ("If the language [of

---

[4] There is no question that Frontier qualifies as a "covered airline" under the definition language of §243.5.

1

2

the regulation] is unambiguous, and its literal application does not conflict with the intentions of its

drafters, the plain meaning should prevail"). As the Court recently summarized:

> Where, as here, the plain meaning of a statute indicates a particular result, "the judicial inquiry is complete." *Barnhart v. Sigmond Coal Co.,* 534 U.S. 438, 462, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002)(quoting *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)); *see also CVS Health Corp. v. Vividus, LLC,* 878 F.3d 703, 706 (9th Cir. 2017)("If the language has a plain meaning or is unambiguous, the statutory interpretation inquiry ends there." (citing *Hartpence [v. Kinetic Concepts, Inc.],* 792 F.3d [1121], 1128 [(9th Cir. 2015)(en banc)]).

*Salisbury v. City of Santa Monica,* 994 F.3d 1056, 1063 (9th Cir. 2021). There is nothing ambiguous

in the language of Part 243. No reasonable reader could read the language of Sections 243.1 and

243.5, and the definition of "covered flight segment" in Section 243.3, and come away with the

conclusion that Part 243 applies to domestic flights. Yet, airlines and their counsel have been pitching

such an argument to courts for years, because the confidentiality term in Section 243.9(c) (as

improperly interpreted by them, see below) suits their interests.

　　　　The promulgation history of Part 243 also confirms that it was never intended by its drafters

to have any application to domestic flights or their passengers. Part 243 was added to the FARs in

1998 pursuant to the authority of the Aviation Security Improvement Act of 1990, codified at 49

U.S.C. § 44909. *See* 63 F.R. 8258 (February 18, 1998). That legislation was enacted following the air

disaster over Lockerbie, Scotland in 1988, which involved the bombing of an international Pan Am

flight that killed 190 American citizens, including 35 Syracuse University students who were

returning home for the holidays. The Department of Transportation explained the impetus for the

legislation as follows:

> During the immediate aftermath of the tragic bombing of Pan American Flight 103 over Lockerbie, Scotland on December 21, 1988, the Department of State experienced difficulties in securing complete and accurate passenger manifest information and in notifying the families of the Pan American 103 victims. The Department of State did not receive the information for ''more than seven hours after the tragedy'' (Report of the President's Commission on Aviation Security and Terrorism, p. 100). When the

Department of State did acquire the passenger manifest information from Pan American, in accordance with airline practice, it included only the passengers' surnames and first initials, which did not permit the Department of State to carry out their legal responsibility of notifying the family members in a timely fashion.

*Id.* The first subsection of Section 44909 confirms its application only to *international* flights:

a) Air Carrier Requirements.—(1) Not later than March 16, 1991, the Secretary of Transportation shall require each air carrier to provide a passenger manifest for a flight to an appropriate representative of the Secretary of State—

(A) not later than one hour after that carrier is notified **of an aviation disaster outside the United States involving that flight**; or

(B) if it is not technologically feasible or reasonable to comply with clause (A) of this paragraph, then as expeditiously as possible, but not later than 3 hours after the carrier is so notified.

49 U.S.C. §44909(a)(1)(emphasis added). In fact, knowledge that the regulation promulgated under §44909 (that would later become Part 243) would apply only to international flights spurred a movement to create a *different* regulation, under a *different* piece of enabling legislation, that would apply to *domestic* flights. However, that effort was abandoned prior to the creation of any such regulation. Its enabling legislation, the Aviation Disaster Family Assistance Act of 1996, was passed in response to the crash of TWA Flight 800, a flight from New York to Paris that never made it beyond U.S. territorial waters, on July 17, 1996, and the prior crash in the Everglades of ValuJet Flight 592, a domestic flight, on May 11, 1996. Acting pursuant to that law, the Department of Transportation issued an Advance Notice of Proposed Rulemaking ("ANPRM") seeking comments on the establishment of similar flight manifest rules for domestic flights, *see,* 61 F.R. 11789 (March 13, 1997). After receiving numerous comments, however, the Department withdrew that ANPRM in 2004 and never created any regulations concerning flight manifest information for domestic flights. *See,* 69 F.R. 43540 (July 21, 2004). Part 243 therefore has remained the sole regulation concerning flight manifest and passenger emergency contact information, and it has remained applicable only to

"covered flight segments" which it defines as being limited to flights that depart or arrive on foreign soil.

### (ii)   Section 243.9(c) does not apply to "passenger contact information."

The term "passenger contact information" was coined by a Magistrate Judge in the Eastern District of Pennsylvania, in the case of *Raub v. US Airways, Inc.,* No. 16-1975, 2017 U.S. Dist. LEXIS 94018, 2017 WL 2633430 (E.D. Pa., 2017). The term does not exist in Part 243. It is an erroneous conflation of two terms that do appear in Part 243: "passenger" and "contact," which are given mutually exclusive definitions in Section 243.3. "Passenger" is defined in that section as one would expect: someone who occupies a seat on a "covered flight segment" but is not a member of the flight crew. "Contact," on the other hand, is defined as "a person **who is not on the covered flight** or an entity that should be contacted in case of an aviation disaster." §243.3 (emphasis added). In other words, a "contact" for purposes of Part 243 is what most people would call an "emergency contact." Indeed, that was the exact term originally proposed by the DOT for use in Part 243, but it was shortened to "contact" after DOT received comments from airlines suggesting that asking passengers for "emergency contact" information could be disturbing to some passengers who are already anxious about flying. 63 F.R. 8258, 8272 (February 18, 1998). Section 243.3 emphasizes the separateness of "passengers" and their "contacts" by stating that, not only is a "contact" not a person on the flight, but such a person or entity also "need not have any particular relationship to a passenger."

The conflated term, "passenger contact information," has been used deceptively by the airlines to claim that §243.9(c) renders *passenger* names, email addresses, telephone numbers, and physical addresses confidential. The plain language of Part 243 belies that subterfuge, however. Before examining that language, the Court should consider why the airlines are motivated to perpetuate the myth that §243.9(c) makes their passengers' details confidential. First, it permits them

to control plaintiffs' access to important witnesses in personal injury and discrimination litigation. If plaintiffs cannot contact other passengers on a flight to corroborate their claims, the airlines stand a chance of defeating the claims. In most cases, the airlines are in the unique position of having the only information about who else was aboard a particular flight. Second, it prevents plaintiffs' attorneys from acquiring additional clients with claims against the airline, such as in cases where multiple passengers on a flight have been injured by the aircraft's encounter with severe turbulence.[5] Airlines and their insurers are frequently concerned that an attorney representing one claimant from such a flight will learn of other injured passengers and sign them up, thus increasing the insurers' potential liability exposure for a flight.[6] Those are not valid goals, however, because litigants' access to witnesses is critical to the fair adjudication of claims, and injured persons' access to attorneys and courts is also a protected right. Nevertheless, the airlines do not want an opinion to circulate that pulls the curtain back and exposes their deceptive arguments.

In the instant case, Frontier is interested in ensuring that Plaintiffs can see only the basic complaints of discrimination and Frontier's dispositions of them, without being able to obtain from the complainants themselves their version of the facts.[7] In all cases represented by the hundreds of discrimination complaints produced, Frontier has denied that any act of discrimination took place, based solely on its own employees' versions of the facts. A member of the "Denver Team" that responds to all discrimination complaints for the company testified in a deposition on March 17, 2022 that she and others on the Denver Team have been instructed by the executive management of

---

[5] Severe turbulence encounters are typically considered "accidents" for purposes of applying the Montreal Convention, so passengers traveling on international itineraries who are injured are not required to prove that the airline was negligent in entering the area of turbulent air. They are entitled to the "virtual strict liability" afforded by the international treaty. *See, e.g., Hosaka v. United Airlines, Inc.,* 305 F.3d 989 (9th Cir. 2002); *Magan v. Lufthansa German Airlines,* 339 F.3d 158, 161, 166 (2d Cir. 2003).

[6] Undersigned Plaintiffs' counsel previously served as an in-house Claims Attorney and Assistant Vice President of a major airline insurer (it did not insure Frontier).

[7] In rare instances where other passengers are named in the complaints, Frontier has also redacted their information.

Frontier to follow "the process" in responding to such complaints, and "the process" forbids obtaining any details from passengers beyond what the complainant chooses to include in the initial complaint. *See* **Exhibit A** (excerpt from Zimmerman deposition transcript). She also confirmed that Frontier always disputes that discrimination has occurred. Thus, for every discrimination complaint produced, the available information is currently limited to the basic elements of the complaint and Frontier's machinations to refute it as being evidence of discrimination. Moreover, without being able to see the complaining passengers' names or contact them, it is impossible to discern in many of the discrimination complaints what legally protected class the complaining passengers belong to. The complaints frequently contain only a vague statement such as "This was discrimination!" or "I was discriminated against." Fair use of any of the past discrimination complaints in the instant case as evidence of a pattern by Frontier of sweeping legitimate discrimination complaints under the rug requires Plaintiffs to determine whether or not the passenger was complaining about actual legally-protected discrimination or something else. Undersigned counsel has received dozens of phone calls and emails in the past two years from people who feel they were "discriminated against" because they were removed from airline flights for refusing to wear a mask. Counsel has had to educate them that being (frequently belligerent) COVID-19 deniers and "anti-maskers" does not qualify them for legal protection because Congress has not made people with their views a legally protected class. That experience illustrates that laypeople often have a lack of understanding of exactly what the nation's discrimination laws protect, and proper due diligence in this case demands that Plaintiffs determine which of the produced discrimination complaints relate to legally-protected classes and which do not. Frontier's redactions make such a determination impossible.

To see why §243.9(c) does not make "passenger contact information" (meaning a passenger's own name, email address, telephone number, *etc.*) confidential, it is helpful to begin with an

understanding of what information is collected pursuant to Part 243 and which of it is covered by §243.9(c). The section of the regulation preceding §243.9, §243.7 (there is no §243.8), informs airlines what information must be collected, and what information need only be "solicited" on a voluntary basis:

> **§ 243.7 Information collection requirements.**
>
> **(a)** For covered flight segments, each covered airline shall:
>
> **(1)** Collect, or cause to be collected, the full name for each passenger who is a U.S. citizen. U.S.-citizen passengers for whom this information is not obtained shall not be boarded;
>
> **(2)** Solicit, or cause to be solicited, a name and telephone number of a contact from each passenger who is a U.S. citizen; and
>
> **(3)** Maintain a record of the information collected pursuant to this section.
>
> **(b)** The covered airline operating the flight segment shall be responsible for ensuring compliance with paragraph (a) of this section.

That section makes it mandatory to collect a full name for each U.S.-citizen passenger before that person may be permitted to board the flight. That requirement addresses the problem faced by the Department of State following the Lockerbie disaster, noted above, when its efforts to notify the next of kin of passengers was hindered by having only first initials and surnames. Subsection 243.7(a)(2) requires only that that airline "solicit" an emergency contact name and phone number from each passenger. The DOT explained in its NPRM for Part 243 that the passenger does not have to provide an emergency contact: "Airlines should not pressure the passenger; the government requirement is only to ask for the information . . . an airline cannot deny boarding under the authority of this rule if a passenger chooses not to provide a contact." 63 F.R., at 8273.

Section 243.9 provides rules for collecting and maintaining the information, and it includes the sole confidentiality provision in Part 243:

**§ 243.9 Procedures for collecting and maintaining the information.**

Covered airlines may use any method or procedure to collect, store and transmit the required information, subject to the following conditions:

**(a)** Information on individual passengers shall be collected before each passenger boards the aircraft on a covered flight segment.

**(b)** The information shall be kept until all passengers have disembarked from the covered flight segment.

**(c)** The contact information collected pursuant to section 243.7(a)(2) of this part shall be kept confidential and released only to the U.S. Department of State, the National Transportation Safety Board (upon NTSB's request), and the U.S. Department of Transportation pursuant to oversight of this part. This paragraph does not preempt other governments or governmental agencies that have an independent, legal right to obtain this information.

**(d)** The contact information collected pursuant to section 243.7(a)(2) of this part shall only be used by covered airlines for notification of family members or listed contacts following an aviation disaster. The information shall not be used for commercial or marketing purposes.

The plain language of the regulation states that subsection (c), the confidentiality provision, and subsection (d), the marketing use prohibition, apply only to "the contact information collected pursuant to section 243.7(a)(2) of this part," which means whatever emergency contact information the passengers voluntarily choose to provide to the airline. Thus, the "contact information" means information pertaining to "contacts" as they are defined in §243.3, who are emergency contacts that are "not on the covered flight" (and therefore cannot be passengers), and who "need not have any particular relationship to a passenger." For airlines to argue that §243.9(c) makes "passenger contact information" (*i.e.,* passengers' own names and personal contact details) confidential is highly misleading and flies in the face of the plain language of the regulation.

**(iii)      The cases interpreting §243.9(c) have been wrongly decided.**

Yet, the airlines have been making that fallacious argument ever since Part 243 was first promulgated, and they have succeeded in convincing 7 federal judges and one state appellate panel to misread the regulation's confidentiality provision. This Court should not make the same error.

The earliest of the opinions is *Wallman v. Tower Air Inc.,* 189 F.R.D. 566 (N.D. Cal. 1999), in which the Magistrate Judge gave a mostly accurate recitation of the history behind Part 243 (albeit misidentifying Pan Am Flight 103 as "TWA 103"), but then stated, "The **passenger list and contact information** may not be released, except to the family of a passenger, the State Department, or the NTSB." 189 F.R.D., at 568 (emphasis added). As noted above, § 243.9(c) has no application to the "passenger list"; it applies only to the [emergency] contact information. Moreover, Part 243 had no application to the flight at issue, because the opinion states that it was Tower Air Flight 23 on January 17, 1999 between JFK and SFO, a domestic flight. Ironically, in spite of the misapplication of Part 243, the opinion concludes with an accurate holding: "The Aviation Security Improvement Act of 1990 does not require a special privilege beyond the protection afforded by the rules of civil procedure for a passenger list." *Id.,* at 569. The court ordered the list of passenger names, addresses and telephone numbers to be produced under a protective order. *Id.*[8]

The second case is *Delta Airlines v. Cook,* 816 N.E.2d 448 (Ind. App. 2004), in which the state Court of Appeals reviewed the denial of partial summary judgment to defendant Atlantic Coast Airlines (ACA), the operator of the Delta flight at issue. Again, the flight was a domestic flight—from Indianapolis to New York City—so Part 243 did not apply to it. Nevertheless, the Court stated, "ACA is correct that pursuant to 14 C.F.R. § 243.9, the passenger list may not be released, except to the family of a passenger, the State Department, or the NTSB." 816 F.R.D., at 461. It cited *Wallman*

---

[8] In truth, the Rules of Civil Procedure contain no specific protections for airline passenger lists. The court required the protective order due to the erroneous belief that §243.9(c) makes the information confidential.

for that incorrect reading of §243.9. *Id.* Also following *Wallman's* lead, however, it upheld the lower court's order compelling production of the passenger list, finding "adequate justification" under the rules of civil procedure since "the other passengers on [plaintiff's] flight are all potential witnesses in this case." *Id.*

Four years later, a Judge in the District of the Virgin Islands also followed *Wallman's* incorrect holding regarding confidentiality. In *Nathaniel v. American Airlines,* No. 07-cv-00033-RLF-GWC, 2008 WL 5046848 (D. V. I., Nov. 20, 2008), the flight at issue was from St. Croix to Miami. Given the U.S.V.I.'s longstanding status as a territory of the United States, the flight was not a "covered flight segment" entitled to application of Part 243 because "both the point of departure and point of arrival are in the United States." §243.3. Nevertheless, American Airlines redacted the entire passenger manifest from documents it produced with its Rule 26(a)(1) disclosures, arguing, as Frontier has in this case, that failing to do so would violate §243.9(c). The Court accurately quoted the language of Part 243 in ruling on the issue, but seemingly missed the points that the flight was not a "covered flight segment" to which Part 243 would apply, and that the confidential "contact information" does not apply to the passengers. Citing to both *Wallman* and *Cook,* it held that there was "adequate justification" for producing the passenger list under a protective order "despite the confidentiality provisions of the statute [*sic*]" because "[t]hese passengers on Plaintiff's flight are potential witnesses in this case and are likely to have discoverable information." 2008 WL 5046848 at *6.

In another case involving American Airlines, a Magistrate Judge in the Southern District of Florida made a similar ruling, also relying on *Wallman* and *Cook. Jakobot v. American Airlines*, No. 10-CV-61576-LENARD/Turnoff, 2011 WL 13214326 (S.D. Fla., May 23, 2011). The flight at issue in *Jakobot* was also a domestic flight, from Fort Lauderdale, Florida to Texas. The plaintiff passenger

sought an order compelling American to produce the names and addresses of the other passengers on the flight, arguing that they were potential witnesses. Despite the inapplicability of Part 243 by its plain language, the Court recited its terms, *see* 2011 WL 13214326 at *2, cited *Wallman* and *Cook*, and ruled that the names and addresses could be produced pursuant to a protective order under *Wallman*. It did so "while recognizing the protection provided by federal law to the release of information contained in Defendant's passenger manifest. . . ." *Id*. There is no such "protection provided by federal law."

From that foundation of four erroneous rulings built upon the *Wallman* court's initial mistaken application of § 243.9(c), subsequent decisions compounded the error. As noted above, in *Raub,* a Magistrate Judge ruling on a motion to compel production of a passenger manifest coined the term "passenger contact information" that would proceed to take on a life of its own, wholly unsupported by the underlying regulation. At least, Part 243 *did* apply to the flight at issue in *Raub*, which was from Cancun, Mexico to Philadelphia. But the plaintiff was seeking a list of passengers aboard the flight, not the emergency contact names and telephone numbers to which § 243.9(c) applies. The Court, however, incorrectly merged the passenger list discussed in § 243.7(a)(1) with the emergency contact information discussed in § 243.7(a)(2), creating a new concept of "passenger contact information" that distorts the purpose of Part 243:

> Federal law prohibits airlines from releasing **passenger contact information**. *See* 14 C.F.R. §§ 243.7(a), 243.9. Plaintiff has not made a sufficient showing of need for this information to justify this court overriding this **important privacy policy**.

2017 WL 2633430, *2 (emphasis added). Of course, as discussed above, there has never been a privacy policy applicable to passenger names, important or otherwise.

Six months later, a Magistrate Judge in the Eastern District of California picked up on the erroneous concept of "passenger contact information" as being protected by §243.9(c), in *Phan v. JetBlue Airways Corp.,* No. 2:16-cv-2328 WBS DB, 2017 U.S. Dist. LEXIS 212832 (E.D. Cal., Dec.

27, 2017). The plaintiff in that case sought an order compelling production of the flight manifest, and JetBlue asked for a "protocol" that would permit passengers named on the manifest "an opportunity to object to the production of their identities." Slip at 2. Despite the inapplicability of Part 243 to the flight,[9] the Court adopted JetBlue's argument that "14 C.F.R. §243.9(c) . . . provides that passenger contact information . . . shall be kept confidential and may be released only to certain governmental agencies." *Id.* Citing the holdings of *Wallman, Nathaniel, Jakobot* and *Raub,* the Court ruled that a portion of the passenger manifest could be produced to the plaintiff under a protective order.

A Judge in the Western District of Washington, ruling on a motion to compel in a case arising from a domestic flight from New York to Seattle, repeated the holding of *Raub* down to the erroneous declaration of an "important privacy policy":

> Federal law prohibits airline carriers from releasing **passenger contact information**. *See* 14 C.F.R. §§ 243.7(a), 243.9. For that reason, a party seeking to compel disclosure must sufficiently justify to the court its reasons to override this important privacy policy. *See Raub v. US Airways, Inc.*, No. CV 16-1975, 2017 WL 2633430, at *2 (E.D. Pa. June 19, 2017).

*Karrani v. JetBlue Airways Corp.,* No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 89031 (W.D. Wash., May 28, 2019)(emphasis added). Again, the Department of Transportation expressed no such privacy policy concerning passenger names in drafting Part 243, nor is "passenger contact information" a term recognized by that regulation, and the regulation is not applicable to domestic flights.

Also relying on *Raub,* a Magistrate Judge in the Central District of California erroneously applied Part 243 to a domestic flight between Denver and Los Angeles in *Anders v. United Airlines, Inc.,* No. CV 19-5809-GW (KS), 2020 U.S. Dist. LEXIS 250250 (E.D. Cal., Dec. 18, 2020), and also erroneously held that § 243.9(c) applies to "passenger contact information," meaning names, addresses and telephone numbers/email addresses of passengers.

---

[9] The opinion does not contain details of the flight, but the Complaint filed in the case identifies it as a domestic flight from Boston to Sacramento.

Certainly, no Judge would take pleasure in pointing out that his brethren in other courts have misread the law. But deference to other courts' holdings must take a backseat to an accurate and just application of the law (especially in situations where the other holdings are not binding precedent in this Court). "[Where] jurisprudence is not supported by history or by sound legal reasoning[,] it is simply bad law." *Papasan v. Allain,* 478 U.S. 265, 293 (1986)(Brennan, J., concurring in part and dissenting in part).  The DelVecchia family's right to fairness in this proceeding should not continue to be hindered by Frontier's application of bad law.

C.   <u>Frontier has not cited any authority for its redactions of employee-identifying information</u>.

Frontier has also redacted employee numbers and employee email addresses from the discrimination complaints, without citing any legal authorization whatsoever. These redactions make it impossible for Plaintiffs to determine whether the "employee" is an actual employee of Frontier, or is one of the hundreds (or possibly thousands) of employees of third party entities with whom Frontier has contracted for the provision of certain services on its behalf. According to deposition testimony given in this case, Frontier outsourced the staffing of all of its "stations" (*i.e.,* airports) to third party vendors starting around 2008. Plaintiffs have already experienced considerable delays in scheduling depositions of important witnesses because of confusion over whether the witnesses were employed by Frontier or a third party. There is no justification for its redaction of these pieces of information that would identify who employs or employed certain contributors of information to the discrimination complaints. Those redactions should also be removed from the documents.

III.   **Plaintiffs have a legitimate need for the unredacted information.**

In addition to the due diligence reasons discussed above, Plaintiffs also need to obtain more information from passengers who have complained of racial and ethnic discrimination by Frontier's employees in the past because their historical complaints, and the manner in which they were

routinely avoided and denied by Frontier's management, are evidence of Frontier's systematic denial of its legal responsibilities to its passengers to ensure a travel environment that is free from racial and ethnic discrimination. That denial has fostered an environment in which its employees, especially flight attendants, feel empowered to consciously disregard passengers' protected civil rights, and that environment is directly responsible for the conscious disregard of Plaintiffs' civil rights as members of a protected classes (mixed race family, African American, and Ethiopian ethnicity). The flight attendants on the DelVecchias' flight have all testified that they do not recall ever receiving any anti-discrimination training from Frontier, and their training history documents bear that out. Frontier's historical treatment of discrimination complaints explains why—Frontier has chosen to ignore the subject altogether. The significance of the prior complaints is that hundreds of similarly situated passengers have complained to Frontier about discrimination by its flight attendants and other employees, and Frontier has employed a "process" that ensures their complaints will not be acted on with any remedial measures—there will be no discipline of employees who discriminate against passengers, nor will there be any anti-bias or anti-discrimination training despite the fact that it is strongly recommended by DOT and has been implemented at other U.S. airlines. Frontier is an airline that chooses to ignore its legal responsibilities in this important area, and the DelVecchias have a legal right to hold it accountable for its decisions.

## **CONCLUSION**

For all of the reasons set forth above, Plaintiffs respectfully move this Honorable Court for an Order pursuant to Rule 37(a)(1) requiring Frontier to remove its unauthorized redactions from the discrimination complaints, for an award of their expenses including attorneys' fees pursuant to Rule 37(a)(5)(A), and for such other and further relief as the Court deems just.

1

DATED this 31st day of March, 2022.

2

/s/ John D. McKay

3

John D. McKay (admitted *pro hac vice*)
PARK AVENUE LAW LLC

4

127 W. Fairbanks Ave., No. 519
Winter Park, FL 32789

5

johndmckayatty@gmail.com
(434) 531-9569

6

7

Timothy R. Titolo (Nev. Bar. No. 3617)
TITOLO LAW OFFICE

8

9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 869-5100

9

tim@titololaw.com

10

***Attorneys for Plaintiffs Peter DelVecchia
And A.D., a Minor***

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28