UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

PETER DELVECCHIA, individually
and as next friend of A.D., a Minor,

Plaintiffs,

v.

FRONTIER AIRLINES, INC., et al.,

Defendants.

Case No.: 2:19-cv-01322-KJD-DJA

**Defendant's Response to Plaintiffs' Fourth Motion to Compel**

**DEFENDANT FRONTIER AIRLINES, INC.'S**
**RESPONSE TO PLAINTIFFS' FOURTH MOTION TO COMPEL**

Defendant FRONTIER AIRLINES, INC. ("Frontier"), by its undersigned counsel, submits this Response to Plaintiffs' Fourth Motion to Compel. ECF No. 164. Frontier's Response is based upon the attached Memorandum of Points and Authorities, the pleadings on file, and any oral argument the Court may permit.

Date: April 15, 2022

Respectfully submitted,

**FRONTIER AIRLINES, INC.**

*/s Brian T. Maye*
Brian T. Maye *(*admitted *pro hac vice*)
Matthew D. Martin (admitted *pro hac vice*)
ADLER MURPHY & McQUILLEN LLP
20 South Clark Street, Suite 2500
Chicago, Illinois 60603
Phone: (312) 345-0700
Email: bmaye@amm-law.com
       mmartin@amm-law.com

Charles A. Michalek (Nevada Bar No. 5721)
ROGERS, MASTRANGELO, CARVALHO
700 South Third Street
Las Vegas, Nevada 89101
Phone: (702) 383-3400
Email: cmichalek@rmcmlaw.com

**FRONTIER'S MEMORANDUM OF POINTS AND AUTHORITIES**

I.  INTRODUCTION

This Court has already reviewed the arguments raised in Plaintiffs' Fourth Motion to Compel and noted Plaintiffs' failure to explain the relevance of the redacted passenger information from the prior discrimination complaints. The Court admonished Plaintiffs that their "intent to learn more" about the unrelated passengers and their prior unrelated complaints "does not make the information relevant or proportional." ECF 150, p. 5, n. 2. Undeterred, Plaintiffs have recycled the same arguments from their last flurry of discovery motions without attempting to draw any connections between the prior complaints and their own allegations.

Plaintiffs are open in their desire to conduct minitrials (maybe hundreds of them) on the merits of the unrelated passenger complaints so they can "determine whether or not the passenger[s] [were] complaining about actual legally protected discrimination or something else." ECF 164, pg. 15. Plaintiffs' goal is to show "evidence of a pattern by Frontier of sweeping legitimate discrimination complaints under the rug." *Id*. In other words, rather than focusing on the allegations in their own lawsuit, Plaintiffs want to investigate the merits of unrelated complaints that did not result in the filing of any lawsuits.

Discrimination is not a magic word that opens the door for Plaintiffs to argue the existence of patterns or practices. This case is not a referendum on how Frontier investigated and resolved previous unrelated passenger complaints. This case is about Plaintiffs' detailed allegations of intentional discrimination by flight-crew members who reported concerns to law enforcement of inappropriate touching involving an adult and a minor. To prevail under 42 U.S.C. § 1981, Plaintiffs must prove the crewmembers used inappropriate touching as pretext for intentional discrimination based on what Plaintiffs describe as their "biracial characteristic."

Frontier submits that Plaintiffs cannot prove their isolated § 1981 claim through the use of pattern-and-practice evidence. Moreover, to the extent that Frontier's investigations into unrelated

passenger complaints have any relevance, Plaintiffs already have what they need from the redacted materials to argue Frontier's purported pattern. Because Plaintiffs seek cumulative and collateral evidence that would do nothing to establish purposeful and intentional discrimination, this Court should deny Plaintiffs' Fourth Motion to Compel.

## II. BACKGROUND

### A. Plaintiffs' Third Amended Complaint

A quick summary of Plaintiffs' recently (third) amended complaint provides context for Frontier's arguments below. Plaintiffs claim the occurrence of a discrete episode in which one multi-racial group (the flight crew) allegedly discriminated against another (Plaintiffs). Acting under immunities afforded by Congress, Frontier's crewmembers reported their in-flight concerns of inappropriate touching to law enforcement. Plaintiffs claim these reports were baseless and contrived as part of a plan to discriminate against them based on the "biracial characteristic" of their family unit. ECF. 153, Third Amended Complaint, pp. 2-3.

The discrimination allegedly began when, in accordance with federal regulations, Plaintiffs were asked whether A.D. (a Black child) was old enough to sit in an exit row. He was not. After the flight attendants helped Plaintiffs relocate to different seats, one of them (a White woman) reported observing Peter Delvecchia (a White man) stroking A.D.'s face in a manner she found concerning. Plaintiffs characterize Peter's contact with A.D. as a "common gesture that did not suggest any improper conduct or immorality." *Id*. at pp. 8-11. Plaintiffs argue the flight attendants were not truly concerned with how Peter was interacting with A.D., and their talk of inappropriate touching was just a ruse perpetuated to justify their intentional discrimination. *Id*. at pp. 2-3.

Plaintiffs then claim that Defendant Warren, a Black male flight attendant, fueled a racist plan by fabricating an allegation that Peter's hand was near A.D.'s crotch while Peter and A.D. were sleeping. Warren was allegedly motived by his belief that it was "wrong and immoral for Peter (a White man) to have adopted an African child," and Warren "resented A.D.'s being adopted

3

into a White family." *Id*. at 3, 23. Plaintiffs allege Warren and Defendant Shupe (the pilot, a White man) carried out a plan to assault Peter and separate him from A.D. until they were met by law enforcement on the ground in Las Vegas. *Id*. at 21-22.

### B. The Court's Recent Rulings on the Same Issues Raised Herein

The Court ordered Frontier to produce prior passenger complaints of racial discrimination made within the continental United States during the five years preceding the events alleged by Plaintiffs. ECF 83, p. 4. In a subsequent Order denying Plaintiffs' requests for the discovery of other incidents involving threat level classifications, the Court noted that Plaintiffs were already granted "broad avenues of relevant discovery on all the topics at issue in this case." ECF 120, p. 3. More recently, the Court denied Plaintiffs' back-to-back motions for sanctions that were based on the very same redactions at issue here. ECF 150.

In their initial motion for sanctions, Plaintiffs argued that Frontier waived its privacy-based objections by failing to raise them sooner. They claimed Frontier objected to producing the prior passenger complaints only on grounds that they were irrelevant, but never specifically objected to producing the passenger information on privacy grounds. Thus, Plaintiffs argued, once the Court ordered Frontier to produce documents related to the prior complaints, Frontier had no right to redact the passenger information. ECF 128, p. 9. Plaintiffs also argued extensively that 14 C.F.R. § 243.9(c) does not prevent Frontier from releasing the names of passengers from unrelated flights, and that the many courts holding otherwise have created bad law. ECF 128, pp. 10-20.

In their reply brief in support of their initial motion for sanctions, Plaintiffs argued they "should be allowed to prove an established pattern by Frontier of allowing its employees to discriminate against passengers… without any repercussions or remedial/preventative training on the avoidance of race, national origin, and ethnicity discrimination." ECF 135, p. 9. After Frontier produced another set of prior unrelated complaints with redacted passenger information, Plaintiffs renewed their arguments in a second, supplemental motion seeking "terminating sanctions" based

4

on Frontier's production of "heavily redacted documents" aimed at "preventing Plaintiffs' discovery of [Frontier's] past pattern of discriminatory practices." ECF 141, pp. 12, 15.

This Court denied both of Plaintiffs' motions for sanctions and downplayed the significance of the redacted information, holding that what Plaintiffs repeatedly characterized as "heavy redactions" were "only redactions of the names and contact information of passengers." Moreover, "Plaintiffs point[ed] to no language of the Court's order that Frontier has violated, and the Court's order did not entitle Plaintiffs to this information." ECF 150, pg. 6.

Importantly, the Court also addressed Plaintiffs' extensive arguments regarding the applicability of 14 C.F.R. § 243.9(c). Though the Court did not take up the issue in full, it did state the following:

> Plaintiffs should have employed a motion to compel to request the redacted information. *However, given their current approach, even that would likely have been unsuccessful. Even if Plaintiffs were correct that 14 C.F.R. § 243.9(c) did not protect the information Frontier redacted, Plaintiffs have not adequately explained why this information is relevant to their case. While they argue that they intend to contact these individuals to learn more about the alleged discrimination and trafficking, their intent to learn more does not make the information relevant or proportional.* This is particularly concerning considering the sensitive information Plaintiffs seek. Even if 14 C.F.R. § 243.9(c) did not operate to protect this information, Frontier has represented that many of these passengers do not even know that these complaints exist. Many of these passengers are also minors. And each of these instances involve sensitive topics of discrimination and trafficking. (Emphasis added) ECF 150, pg. 5, at note 2.

Plaintiffs have ignored the emphasized language above and focused instead on the latter portion of the Court's footnote. Plaintiffs assert that, because they are only seeking unredacted documents for adult complaints involving racial discrimination, there is no longer a concern over the identification of minors or other individuals who might be unaware of any concerns regarding

human trafficking. ECF 164, p. 2. Unlike Plaintiffs, however, Frontier did not view the Court's comments above as an invitation for Plaintiffs to relitigate the propriety of the redactions as they pertain only to adults. Frontier believes the Fourth Motion to Compel is needlessly duplicative and redundant, because Plaintiffs have again failed to adequately explain why the redacted passenger information is relevant to this case.

### III. APPLICABLE LEGAL STANDARDS

A trial court's ruling on a motion to compel discovery is reviewed for an abuse of discretion. A trial court's decision to deny discovery will not be disturbed except upon the "clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." *Branch v. Umphenour*, 936 F.3d 994, 1005 (9th Cir. 2019).

A successful § 1981 claim requires proving purposeful and intentional discrimination. *Stones v. Los Angeles Community College District*, 796 F.2d 270, 272 (9th Cir. 1986). A plaintiff must typically prove the defendant's nondiscriminatory explanation for its actions was really a pretextual justification for intentional discrimination. A plaintiff who lacks direct evidence of intentional discrimination (as here) can establish pretext based on circumstantial evidence of the defendant's intent. Circumstantial evidence of intentional discrimination must be "specific and substantial" to create an arguable question of fact to survive summary judgment on a § 1981 claim. *Cornwell v. Electra Central Credit Union*, 439 F.3d 1018, 1029 (9th Cir. 2006).

Notably, in *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. __ 140 S. Ct. 1009 (2020), the Supreme Court raised the bar on the standard of proof required under § 1981. A plaintiff in the Ninth Circuit could previously assert a plausible § 1981 claim by showing that race was one of multiple "motivating factors" for an alleged contractual impairment – but *Comcast Corp.* did away with the "motivating factor" standard. Regardless of jurisdiction, Plaintiffs asserting § 1981 claims must now satisfy a heightened standard and show that, but for their race, they would not have suffered the loss of a protected right. *Seyed Mohsen Sharifi Takieh v. Banner*

*Health*, 515 F. Supp. 3d 1026, 1035 (D. Ariz. 2021); *Rajasundaram v. Maricopa County Community College District,* No. CV-20-01544-PHX-SPL, 2021 U.S. Dist. LEXIS 56195, at *22 (D. Ariz. Mar. 24, 2021). Therefore, to prevail on their § 1981 claim in this case, Plaintiffs must prove that Frontier and the individual Defendants would not have reported any concerns of inappropriate touching to law enforcement but for their alleged racial animus. *See Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. __, 140 S. Ct. 1009, 1019 (2020).

## IV.   ARGUMENT

This prolonged discovery dispute arises from the parties' conflicting interpretations of Judge Albrecht's ruling that "prior complaints of race discrimination are relevant to Plaintiffs' Section 1981 claim…" ECF 83, p. 4. Frontier did not interpret this statement to mean that any and all details of the prior complaints are relevant. Rather, Frontier interpreted Judge Albrecht's ruling to mean the substantive allegations of discrimination contained in the prior unrelated complaints are collaterally relevant and could reasonably lead to the discovery of relevant evidence. The threshold for allowing Plaintiffs to expand the scope of their discovery efforts is whether they can show some connection between the other complaints and this lawsuit. Frontier's interpretation of Judge Albrecht's ruling is consistent with rulings from other district courts in the Ninth Circuit.

### A. Collateral Relevance

A 2019 case from the Western District of Washington is on point. In *Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944 (W.D. Wash. July 31, 2019), a Somalian-born US citizen brought a § 1981 claim alleging wrongful removal from a flight. The plaintiff (Mr. Karrani) had a dispute with a flight attendant (Ms. Pancerman) over the use of a lavatory while the plane was descending for an unrelated emergency stop. The dispute escalated to a minor physical altercation. Mr. Karrani and Ms. Pancerman gave conflicting factual accounts. Though the facts were unclear, the captain requested assistance from law enforcement on the ground. The investigating airport police officer decided against charging Mr. Karrani with assault,

7

but the captain still did not allow Mr. Karrani to reboard the flight, thus forcing him to stay the night in a Montana hotel room and purchase a new flight the next day. *Id*. at **2-4.

The *Karrani* court applied the well-known *McDonnel Douglass* framework for evaluating circumstantial evidence of intentional discrimination. See *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817 (1973). After Mr. Karrani established a *prima facie* case of discrimination, the burden shifted to the defendant airline to demonstrate a legitimate, non-discriminatory reason for the adverse action. The airline relied on § 44902 of the Federal Aviation Act, which provides that an air carrier "may refuse to transport a passenger or property the carrier decides is, or might be, inimical to safety." 49 U.S.C. § 44902. Because the airline offered a legitimate, non-discriminatory reason for the removal, the burden shifted back to Mr. Karrani to prove the airline's proffered reason for the adverse action was merely pretext for discrimination. *Karrani*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at *12.

To show pretext, Mr. Karrani sought the discovery of unredacted passenger complaints against the *same flight attendant*, Ms. Pancerman, to prove a pattern of discriminatory removals. The *Karrani* court allowed the discovery, but in doing so explained the limited (or collateral) relevance of the prior complaints:

> "While courts typically view past complaints by others within a protected class as only 'collaterally relevant' to private, non-class action discrimination lawsuits, such evidence may be relevant 'in *limited circumstances* where a plaintiff can make some showing to connect it to his or her claims.' " *Id*. at *20 (quoting *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *7 (W.D. Wash. Mar. 28, 2012) (emphasis in original)).

The defendant airline in *Karrani* disclosed a total of seven previous passenger complaints against Ms. Pancerman. Mr. Karrani focused on a single incident in which a Black female passenger (Fatima Wachuku) accused Ms. Pancerman of racial discrimination following her removal from a flight. Importantly, the *Karrani* court ruled it was irrelevant that a second Black

female made a discrimination complaint after she was removed from the same flight, because "the removal of the second woman had no clear connection to Ms. Pancerman." *Id*. at **21-22. Therefore, having evidence of only one prior complainant with a relevant connection to his claim (that being the involvement of the same flight attendant), Mr. Karrani was unable to prove a larger pattern such that a jury could infer Ms. Pancerman acted with discriminatory intent during their in-flight dispute regarding the lavatory. *Id*.

The *Karrani* court's treatment of collateral evidence should guide this Court's decision to deny Plaintiffs' Fourth Motion to Compel. Mr. Karrani correctly attempted to identify the incidents he believed showed a connection to his case. It is telling that two Black women complained of racism after being removed from one of Ms. Pancerman's previous flights, but only one of those complaints (Wachuku) was potentially relevant to Mr. Karrani's claim, as there was nothing to connect Ms. Pancerman to the second passenger removal. This ruling undermines Plaintiffs' arguments in this case that all prior complaints are relevant to show Frontier "fostered an environment" in which its flight attendants feel empowered to discriminate. ECF 164. p. 23. In light of *Karrani*, it is difficult to envision how any relevant connection could be drawn between Plaintiffs' discrete allegations of discrimination in this case and the unrelated passenger complaints.

Although the *Karrani* court permitted the discovery of *unredacted* passenger complaints, it cannot be overlooked that the defendant airline's production was limited to only seven complaints involving the *same flight attendant* – Ms. Pancerman. In this case, Frontier has produced thousands of documents relating to more than 300 unrelated passenger complaints (160 against Frontier and 178 against gate agents not employed by Frontier). The problem is that Plaintiffs want *all* of the complaints and related materials in unredacted form. Unlike Mr. Karrani, Plaintiffs have no interest in attempting to identify any category of potentially relevant complaints having a connection to

their claims. Rather than attempting to narrow the scope of the litigation, Plaintiffs want to blow it wide open.

*Karrani* teaches that, in keeping with their burden proving pretext through circumstantial evidence of intentional discrimination, Plaintiffs must now identify some connection to the prior complaints that warrants accessing unredacted passenger information. To create an arguable question of fact to survive summary judgment, the circumstantial evidence of intentional discrimination must be "specific and substantial." *Cornwell v. Electra Central Credit Union*, 439 F.3d 1018, 1029 (9th Cir. 2006). The problem with Plaintiffs' blanket approach to the unrelated complaints is that their § 1981 claim turns on their allegation that Defendant Warren, a Black man, believed it was "wrong and immoral for Peter (a White man) to have adopted an African child," and that Warren "resented A.D.'s being adopted into a White family." *Id*. at 3, 23. Speculating that Frontier fosters an environment which empowers its flight attendants to discriminate generally is a far stretch from proving that Defendant Warren was motivated by his specific racial animus toward Black children who are adopted by White adults.

Another case from the Western District of Washington, *Acton v. Target Corp.*, No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436 (W.D. Wash. Oct. 16, 2009), helps illustrate the flaw in Plaintiffs' sweeping approach to all discrimination complaints against Frontier.

Mr. Acton filed a lawsuit claiming discrimination and wrongful termination from his employment at a Target retail store after he invoked the Family Medical Leave Act to accommodate for his disability. *Id*. at *1-3. He sought production of so-called "pattern and practice" evidence from every Target store throughout the State of Washington. The court noted, however, that Mr. Acton was not attempting to prove a pattern-or-practice claim. The court stated: *"Pattern-or-practice evidence, moreover, is discoverable only where a plaintiff can make some showing to connect it to his claims."* (Emphasis added) *Id*. at *5-6. The court cited cases holding that a pattern or practice of discrimination is, at most, collaterally relevant to an individual

discrimination claim. *Id*. at *8. But while other discrimination complaints against Target could potentially be relevant, Mr. Acton failed to offer any "factual predicate" to support extending discovery on a statewide basis. *Id*. at *8. The *Acton* court concluded in relevant part: *"To extend discovery into other stores spread across an entire state, however, a plaintiff cannot rely solely on repeated cries of a pattern or practice of discrimination."* (Emphasis added) *Id*.

Though *Acton* is an employment discrimination case, its treatment of pattern-and-practice evidence is applicable here. A pattern-and-practice claim is based on allegations of widespread and routine discriminatory conduct, whereas discrete claims (such as Plaintiffs') are based on "sporadic discriminatory acts." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977); *Cherosky v. Henderson*, 330 F.3d 1243, 1247 (9th Cir. 2003). Similar to Mr. Acton's failure, Plaintiffs have failed to make any showing to connect the prior passenger complaints to their own claims. Plaintiffs cannot simply rely on their repeated cries of a pattern of discrimination without offering a factual predicate to support removing the disputed redactions and extending discovery to include hundreds of individuals who made informal complaints to Frontier over the past five years.

Following *Karrani* and *Acton*, and the controlling authorities cited therein, this Court should hold that Frontier's redacted passenger complaints are only collaterally relevant and do not open the door to the discovery of any and all details. Because Plaintiffs have failed to show any connections between their discrete claims of discrimination and the prior complaints against Frontier, this Court should deny Plaintiffs' Fourth Motion to Compel and reject their repeated request for the unredacted passenger information.

### B. 14 C.F.R. § 243.9(c) and Third-Party Privacy

Plaintiffs are unwavering in their crusade to prove that courts across the country have misapplied 14 C.F.R. § 243.9(c). By their own admission, "this marks the sixth time that Plaintiffs have raised the non-applicability of 14 C.F.R. § 243.9(c)'s confidentiality provision to the identity

of passengers aboard domestic flights." ECF 164, p. 4. Unfortunately for Plaintiffs, even if they are correct about 14 C.F.R. § 243.9(c), the regulation has little impact on this case.

Frontier stands on its arguments raised previously as to the application of 14 C.F.R. § 243.9(c), and relies primarily on *Anders v. United Airlines, Inc.*, No. CV 19-5809-GW (KS), 2020 U.S. Dist. LEXIS 250250 (C.D. Cal. 2020). See ECF 145, pp. 10-11. Assuming *arguendo* that Plaintiffs are correct regarding the mistaken application of 14 C.F.R. § 243.9(c) by the *Anders* court and many others, Plaintiffs overlook that *Anders* was based on multiple factors.

*Anders* involved allegations of an in-flight sexual assault and a discovery dispute over the relevance of the defendant airline's prior unrelated incidents. In conjunction with § 243.9(c), the *Anders* court relied on the basic rules of discovery stated in Fed. R. Civ. P. 26, as well as the general rule that the resolution of an ordinary privacy objection requires balancing the need for the particular interest against the privacy right asserted – the same balancing test called for under 14 C.F.R. § 243.9. *Id*. at *14; see also *Joseph v. Las Vegas Metropolitan Police Department*, No. 2:09-cv-00966-HDM-LRL, 2010 U.S. Dist. LEXIS 135111, at *14 (D. Nev. Dec. 10, 2010) ("Though federal courts recognize a general right to privacy, the resolution of a privacy objection requires a balancing of the need for the particular information against the privacy right asserted.").

One of the discovery disputes in *Anders* concerned the plaintiff's request for production of all documents from the defendant airline relating to complaints of in-flight sexual assaults dating back to 2009. The *Anders* court held that, while the prior complaints "could have some bearing" on the plaintiff's own claim of an in-flight sexual assault, her request was overbroad and not appropriately limited in scope. Accordingly, the *Anders* court ordered the defendant airline to produce documents dating back only to 2012, but with redactions of all passenger contact information. *Anders*, No. CV 19-5809-GW (KS) at *25.

A similar approach was applied in the *Karrani* case discussed *supra*, one of the many cases assailed by Plaintiffs for its improper application of 14 C.F.R. § 243.9(c). See ECF 164, p. 21. Mr.

12

Karrani sought the names and contact information for all passengers aboard the subject flight on the basis that they potentially witnessed his altercation with Ms. Pancerman. *See Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 89031 (W.D. Wash. May 28, 2019). Though the *Karrani* court based its decision, in part, on 14 C.F.R. § 243.9(c), it also looked to Fed. R. Civ. P. 26(b)(1) and ruled that Mr. Karrani's request was not proportional to the needs of his case. The *Karrani* court explained:

> Plaintiff has failed to show that disclosure of the full passenger manifest—the names and contact information of all passengers on Flight 263—is proportional to the needs of this case. [Citation.] JetBlue produced the available contact information for all passengers seated in Rows 1 through 3, the rows closest to the front lavatory, as well as those passengers mentioned in the Incident Reports related to the flight in Seats 4A, 5C, and 17B. Dkt. [Citation.] Of the disclosed passengers, three submitted statements to law enforcement or JetBlue regarding the incident between Ms. Pancerman and Mr. Karrani. [Citation.] Plaintiff has not made a sufficient showing of need for the remaining passengers' contact information to justify the Court compelling production of the full passenger manifest. For that reason, Plaintiff's Motion to Compel is denied as to these requests. *Id*. at *6-7.

Here, Plaintiffs gloss over the fact that Frontier has already produced the passenger information for all passengers aboard the subject flight. See ECF 164, p. 4, note 2. Notably, Frontier has also produced the personnel files for all crewmembers who were aboard the subject flight, including Defendants' Warren and Shupe. However, as explained above, Plaintiffs are less concerned with the percipient witnesses from the subject flight – and more concerned with contacting people who have no knowledge about anything in this case.

Focusing only on 14 C.F.R. § 243.9(c), Plaintiffs forget that the scope and limits of discovery are governed by Fed. R. Civ. P. 26(b)(1). Parties may obtain discovery regarding any nonprivileged matter that is (1) relevant to any party's claim or defense and (2) proportional to the needs of the case. *Id*. Along with citing 14 C.F.R. § 243.9(c) and ordinary privacy interests,

Frontier has consistently argued that compelling Frontier to disclose the identities and contact information for passengers involved with unrelated incidents is neither relevant nor proportional to the needs of this case. See, e.g., ECF 134, p. 12; ECF 145, p. 13. Plaintiffs have repeatedly failed to establish otherwise. For these and the other reasons discussed above, Plaintiffs' Fourth Motion to Compel should be denied.

### C. Waiver

Plaintiffs' waiver argument is misplaced and meritless. Frontier has not waived any objections based on "§243.9(c) confidentiality and privacy concerns." See ECF 164, p. 5. District courts have broad discretion in supervising the pretrial phase of litigation, including all matters relating to discovery, and the court's decisions will not be disturbed unless they evidence a clear abuse of discretion. When a party raises a waiver argument in the discovery context, courts generally consider the following factors: (1) the length of delay, (2) the reason for delay, (3) the existence of bad faith, (4) the prejudice to the party seeking waiver, (5) the nature of the request, and (6) the harshness of imposing sanctions. *Barlow v. Herman*, No. 2:13-cv-00033-JAD-CWH, 2014 U.S. Dist. LEXIS 1548, at *9 (D. Nev. Jan. 6, 2014).

There is nothing in the record before the Court to support a ruling that Frontier waived any objections as to the redacted passenger information based on "§243.9(c) confidentiality and privacy concerns." Plaintiffs acknowledge that Frontier objected to producing the prior passenger complaints based on overbreadth, relevance, and proportionality. ECF 164, p. 6. Frontier ultimately produced the documents – as ordered by the Court – in redacted form. When Plaintiffs challenged the redactions, Frontier cited their "§243.9(c) confidentiality and privacy concerns." There has been no delay, there has been no bad faith, and there has been no prejudice. Plaintiffs can hardly argue otherwise having challenged the same regulation six times.

//

//

## V. CONCLUSION

For the foregoing reasons, FRONTIER AIRLINES, INC. respectfully requests that the Court deny Plaintiffs' Fourth Motion to Compel.

Date: April 15, 2022

Respectfully submitted,

**FRONTIER AIRLINES, INC.**

*/s/ Brian T. Maye*
Brian T. Maye *(*admitted *pro hac vice*)
Matthew D. Martin (admitted *pro hac vice*)
ADLER MURPHY & McQUILLEN LLP
20 South Clark Street, Suite 2500
Chicago, Illinois 60603
Phone: (312) 345-0700
Email: bmaye@amm-law.com
           mmartin@amm-law.com

Charles A. Michalek (Nevada Bar No. 5721)
ROGERS, MASTRANGELO, CARVALHO & MITCHEL
700 South Third Street
Las Vegas, Nevada 89101
Phone: (702) 383-3400
Email: cmichalek@rmcmlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 15, 2022, I caused the foregoing to be electronically filed with the United States District Court for the District of Nevada using the CM/ECF system.

By: */s/ Brian T. Maye*