Timothy R. Titolo, Esq.
Nevada Bar No. 003617
TITOLO LAW OFFICE
9812 Guiding Light Ave.
Las Vegas, Nevada 89149
(702) 869-5100
tim@titololaw.com

John D. McKay, Esq.
*Admitted pro hac vice*
PARK AVENUE LAW LLC
127 W. Fairbanks Ave. No. 519
Winter Park, Florida 32789
(434) 531-9569
johndmckayatty@gmail.com
**Attorneys for Plaintiffs**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| PETER DELVECCHIA, *et al.*, | **Case No: 2:19-CV-01322-KJD-DJA** |
| Plaintiffs, | **PLAINTIFFS' FIFTH MOTION TO COMPEL AGAINST DEFENDANT FRONTIER AIRLINES, INC.** |
| vs. | |
| FRONTIER AIRLINES, INC., *et al.*, | **Fed.R.Civ.P. 36(a)(6), 37(a)** |
| Defendants. | |

Plaintiffs, Peter DelVecchia and his minor son, A.D., by counsel, pursuant to the authority of Fed.R.Civ.P. 36(a)(6) and 37(a), respectfully file this Fifth Motion to Compel against Defendant Frontier Airlines, Inc. ("Frontier"), seeking an Order deeming all of Plaintiffs' Fourth Requests for Admissions propounded to Frontier admitted, or, in the alternative, compelling answers to those Requests; compelling Frontier to respond to their Seventh Requests for Production; and compelling Frontier to answer Plaintiffs' Fourth Interrogatories. In addition, as authorized by Rule 37(a)(5)(A), Plaintiffs seek an award of their reasonable expenses and attorney fees for bringing this Fifth Motion to Compel.

**Certification Pursuant to Fed.R.Civ.P. 37(a)(1) and LR 26-6(c)**

Lead counsel for Plaintiffs, John McKay, held a meet and confer session by telephone with counsel for Defendants, Brian Maye and Lawrence Gosewisch, on March 31, 2022. The session lasted for 45 minutes and all the requests that are the subject of this Motion were discussed. Counsel were unable to reach agreement on any of the 51 requests that would make this Motion to Compel unnecessary. Mr. Gosewisch requested additional time, until April 8, 2022, to reconsider Frontier's objections to the four requests seeking admissions that certain listed documents are business records. By email on April 8, he indicated that Frontier would stand on its objections to those requests. The parties were therefore unable to resolve any of the objections.

**Background**

Plaintiffs' Third Amended Complaint (ECF No. 153) contains five counts seeking damages for the outrageous treatment that they received and injuries they sustained on Frontier's Flight 2067 from Raleigh, North Carolina to Las Vegas on March 28, 2019. Count I seeks compensatory and punitive damages, as well as statutory attorneys' fees, for a violation of Plaintiffs' civil rights under 42 U.S.C. §1981. By Order dated May 8, 2020 (ECF No. 83), the Court granted Plaintiffs' Second Amended Motion to Compel (ECF No. 77), ordering production of documents relating to complaints of race discrimination made by other Frontier passengers in the five years preceding Plaintiffs' flight, and documents relating to allegations by Frontier's employees during that same five-year period that passengers were engaging in human trafficking. On March 29, 2021, Judge Dawson entered an Order pursuant to Rule 72(a) that slightly modified the previous Order, but otherwise affirmed it as entered. ECF No. 120. Nearly four months after entry of Judge Dawson's Order, Frontier began producing the requested documents. Over the next five months, it eventually produced six tranches of responsive documents from which it had redacted all identifying information about the passengers who complained and their witnesses plus the employee

numbers and email addresses of its workers with knowledge of the events.[1] Those documents total 2,422 pages, of which 2,405 pages relate to 338 complaints of race discrimination that were received by Frontier during the 60-month period (for its flights within the continental United States only)[2], and 17 pages describing approximately 20 allegations by its employees of human trafficking by passengers. According to defense counsel, all the documents were produced from Frontier's own files.

During a meet-and-confer conference call held on February 18, 2022 concerning other discovery issues, Frontier's attorney Brian Maye revealed that Frontier had intentionally disposed of a database fifteen months earlier (*i.e.,* approximately mid-November, 2020) that was the only means of determining which of its flight attendants and pilots had been assigned to specific flights prior to November, 2020. According to him, even if someone knew the date, flight number, departure airport and arrival airport of a particular flight prior to that date, the disposal of the database in question meant that there was no longer any way to obtain the duty roster for that flight. The disposal occurred seven months *after* Magistrate Judge Albregts had ordered Frontier to respond to Plaintiffs' RFP 47 (and 13 months after that request was served on Frontier). Request for Production 47 read (as modified by the Court's Orders in brackets):

> All Documents/ESI containing and/or describing any complaint(s) received by Frontier [in the 5 years predating Plaintiffs' flight, within the continental United States only] that allege any act of discrimination on the basis of race conducted or condoned by a Frontier employee, including, without limitation, a copy of each complaint and **any Documents/ESI containing or describing actions taken by Frontier's management in response to each complaint.**

(emphasis added). According to the deposition testimony of several current and former Frontier employees tasked with responsibility for responding to discrimination complaints, there is no way to know whether a particular employee received discipline resulting from a discrimination complaint without looking in that employee's Human Resources file. That would require knowing the employee's name. The vast

---

[1] The redactions are the subject of a separate Motion to Compel, *see* ECF No. 164.
[2] The drop-down menu of destinations at www.flyfrontier.com currently lists a total of 119 destinations, 22 of which are outside of the continental United States.

majority of the discrimination complaint documents produced do not name the employees involved, but they do identify the flights by number, date, departure airport and arrival airport. According to Mr. Maye, Frontier's disposal of the database means there is no longer any way to identify the employees who were on the subject flights. Therefore, there is no way of knowing whether Frontier administered any discipline to them. Moreover, it is now impossible, due to Frontier's disposal of the database, to determine whether any of the unnamed employees involved in the prior complaints of race discrimination were the same employees who were involved in the acts alleged by Plaintiffs. If they were the same employees, that destroyed evidence would have been relevant to Plaintiffs' §1981 claim in demonstrating both racial animus and Frontier's past condonation of racially discriminatory conduct by them (since their employee files, which Frontier has produced, reveal no discipline for discriminatory behavior). If they were different employees, the lost evidence would still have been relevant to proving Frontier's corporate hostility to protected racial groups, and reckless indifference toward their civil rights, as discussed below, because it would confirm beyond doubt that Frontier has never disciplined any employee for racially discriminatory behavior toward a passenger.[3]

On February 22, 2022, Plaintiffs served on Frontier Peter DelVecchia's Seventh Request for Production, consisting of 34 requests, and Plaintiffs' Fourth Requests for Admissions, consisting of 16 requests. The next day, Plaintiffs served their Fourth Interrogatories on Frontier, consisting of a single interrogatory asking for the name(s) of any flight attendant(s) that Frontier can identify as having been disciplined in connection with a complaint of race discrimination, and the details of the discipline, if Frontier denied RFAs 5 and/or 6. On March 24, 2022, Frontier served boilerplate objections to all 51

---

[3] Plaintiffs will be filing a spoliation motion based on this intentional destruction of relevant evidence. *See, United States v. Kitsap Physicians Serv.,* 314 F.3d 995, 1001 (9th Cir. 2002)*; In re Napster, Inc. Copyright Litig.,* 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006). They served RFAs 6-16 and RFP 34 specifically to support that motion.

requests. As indicated on **Exhibit A** hereto, Plaintiffs have served a total of 201 discovery requests in this case, and Frontier has objected to 151 of them, or 75 percent, typically with boilerplate objections.

**Text of requests and objections and Argument**

### I.    FOURTH REQUESTS FOR ADMISSIONS

**Introductory Note:**  RFAs 1-4 referred to an Exhibit A that was attached to the requests. That exhibit, which consisted of a list of Bates numbers of documents and other media files produced by Frontier, is attached as **Exhibit B** hereto. The documents and other media themselves are attached for the Court's inspection as **Exhibit C** hereto, most of which must be filed under seal with an accompanying Motion to Seal as prescribed by the Local Rules, because Frontier has designated all of them "Confidential" under the general Protective Order entered in this case (ECF No. 37). (The Motion to Seal is unopposed, and applies to Part C(2) of the exhibit).

<u>**RFA No. 1:**</u> Admit that the documents produced by Defendant Frontier Airlines, Inc. in the above-captioned civil action and listed on Exhibit A attached hereto are genuine documents.

**ANSWER:** Frontier objects to Request No. 1 on the grounds that it is irrelevant, overly broad, unduly burdensome, and not proportionate to the needs of this case. Exhibit A references over 2,000 pages of documents of varying types and categories, some of which were not created, prepared, or authored by Frontier. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in the text of the prior complaints that have been produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at *20 (W.D. Wash. July 31, 2019); *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009); *Schwartz v. New Castle Corp.*, No. 96-17178, 1997 U.S. App. LEXIS 33701, at *5 (9th Cir. Nov. 26, 1997).

<u>**Argument:**</u>    RFA 1 is a routine RFA that seeks an admission that the specifically referenced documents produced by Frontier are genuine, to streamline their eventual use as evidence without requiring them to be authenticated by a custodian, which would require expansion of the scope of the Rule 30(b)(6) corporate deposition of Frontier and/or lengthen trial time unnecessarily. In fact, Plaintiffs' goal

in serving RFAs 1-4 was to streamline the scope of the Rule 30(b)(6) deposition so that it would not need to include the various custodians. As a result of Frontier's objections, the scheduling of that deposition, which has already been delayed for over a year due to Frontier's refusal to respond (and delays in responding) to document discovery, has been further delayed, pending resolution of this Motion to Compel. The first listed documents, FRONTIER 1590-1600, are excerpts from one of Frontier's *own employee manuals* that describe standards of conduct that the employees on Plaintiffs' flight are alleged to have violated. The excerpts were produced previously with Bates numbers that overlapped numbers already given to other documents, so Frontier re-produced them with the new numbers 1590-1600. Notably, Frontier admitted that they were business records under the former, erroneous, numbers, and Plaintiffs are simply asking them to do the same for the renumbered versions. Documents 1601-2112 are also excerpts from Frontier's manuals and training materials, dealing with the very issues of threat levels, human trafficking guidelines and sexual molestation guidelines that Frontier has raised as alleged non-discriminatory explanations for its employees' actions toward Plaintiffs. They also include some relevant FAA publications produced by Frontier, and investigative notes and emails concerning Plaintiffs themselves. They are relevant to the issues in the case because they describe the steps the employees should have followed if they were truly following the guidelines as they claim, and also describe their investigation into the events of the flight. Documents 2113-18 are more training materials (videos) produced by Frontier and policies written by Frontier, that are relevant for the same reasons as the prior group. Documents 2119-2639 and 2641-3951 are documents that Frontier produced from its files consisting of passenger race discrimination complaints (they are summaries of those complaints that were entered into a database by its own employees based on phone conversations or online inputs that were not also produced), the employees' processing notes, details from Frontier's own software programs about the passengers' reservations, some emailed witness statements written by its flight attendants, and occasional

photographs, letters or other supporting information apparently provided by the complainants and included with the file materials. This Court has already held that these documents are relevant and proportional, overruling Frontier's earlier objections. *See* ECF No. 83, at 4-5. Moreover, evidence of past discrimination complaints is relevant to prove an entity's general hostility toward protected groups, *see Fuller v. Idaho Dep't of Corr.,* 865 F.3d 1154, 1162 & n.8 (9th Cir. 2017); *Heyne v. Caruso,* 69 F.3d 1475, 1479–81 (9th Cir. 1995)(probative value of other acts evidence is "especially high" because of "the inherent difficulty of proving state of mind"). Documents 2640 and 3952 are apparently videos made by passengers in support of their complaints. Document 3953 is an audio file of a complaint made to the DOT by telephone. Documents 3954-56 are the reservation documents from Frontier's reservations software identifying the passengers who agreed to move to the exit row of Plaintiffs' flight after Plaintiffs learned that A.D. was not old enough to sit in that row.[4] Documents 3957-60 are additional discrimination complaint documents. Documents 690-701 are excerpts from Frontier's own employee handbook that it produced, including a discrimination policy, and an FAA publication it produced that pertains to the "Common Strategy" (threat levels).[5] These are unquestionably relevant to the issues in the case, for possible eyewitness accounts (*i.e.,* from the passengers who moved to the exit row, who saw that Plaintiffs were compliant with flight attendant instructions), for proof of Frontier's hostility toward protected racial groups (*i.e.,* the discrimination complaints showing Frontier's false conclusion in all of them that no race discrimination had occurred, and its equally false assurances to the complainants that investigations of the employees involved would be conducted), for proof of pretext (*e.g.,* non-applicability of the threat level the Captain

---

[4] Frontier ironically argues that it is forbidden by federal law from disclosing the names of passengers contained in the discrimination complaints, and therefore it has redacted them, yet it has produced the names of passengers aboard Plaintiffs' flight merely under the protection of the Protective Order (the same Protective Order it has applied to the redacted discrimination complaints). If the Protective Order is good for some, it should be good for all.

[5] Although the content of the FAA publication overlaps information that Frontier has designated as SSI, the full publication is publicly available on the Internet, and it has not been labeled SSI (or confidential) by Frontier.

applied to Plaintiffs), and for proof that Frontier has a discrimination policy on paper only, but never enforces it.

Frontier's "overly broad, unduly burdensome, and not proportionate [*sic*] to the needs of this case" objection (as well as the "irrelevant" portion discussed above) is improper boilerplate. *See, Caballero v. Bodega Latina Corp.,* Case No. 2:17-cv-00236-JAD-VCF, 2017 US Dist. LEXIS 116869, at *13 (D. Nev. July 25, 2017)("'over[broad] and unduly burdensome' . . . objections are improper unless based on particularized facts"); *Gurshin v. Bank of America, N.A.,* Case No. 2:15-cv-00323-GMN-VCF (D. Nev., Sept. 25, 2017)(same); *see also Sallah v. Worldwide Clearing LLC,* 855 F.Supp.2d 1364, 1376 (S.D. Fla. 2012)(objections such as "overly broad" and "unduly burdensome" are "meaningless" absent a factual explanation accompanying the objection that explains why the request is too broad or too burdensome to respond to). It is unclear whether the next sentence of the objection, mentioning "over 2,000 pages of documents of varying types and categories, some of which were not created, prepared or authored by Frontier," is meant to be factual support for that boilerplate, or a separate objection. Regardless, it is of no consequence: the documents were all produced by Frontier, *from its own files*. It knew when it produced them that they consisted of 2,378 pages of documents plus four videos and an audio file, and it should have been prepared to authenticate them. And if they are not genuine copies of its business records, it is hard to fathom what they are. Frontier can certainly determine that they are genuine by reference to the originals in its files. In fact, it should have done so prior to stamping Bates numbers on copies of them and producing them. Regarding its assertion that "some" of them "were not created, prepared or authored by Frontier" (presumably referring to the few FAA publications and some of the supporting information accompanying passenger race discrimination complaints, supporting documents that comprise a miniscule portion of the total pages cited in the exhibit), there are two responses: First, to the extent Frontier somehow cannot fairly say that they are genuine copies of what is contained in its files—even though it

produced them—that situation is explicitly covered by Fed.R.Civ.P. 36(a)(4): "when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." In other words, a wholesale refusal to respond is never a permissible option. Second, courts have recognized that there are circumstances where documents prepared by others but kept in the responding party's own files can be business records. *See, e.g., MRT Const. Inc. v. Hardrives, Inc.,* 158 F.3d 478, 483 (9th Cir. 1998)( "This circuit has held that records a business receives from others are admissible under Federal Rule of Evidence 803(6) when those records are kept in the regular course of that business, relied upon by that business, and where that business has a substantial interest in the accuracy of the records"); *United States v. Childs,* 5 F.3d 1328, 1333-34, 1334 n.3 (9th Cir. 1993)(same); *United States v. Parker,* 749 F.2d 628, 633 (11th Cir. 1984)(same); *United States v. Ullrich,* 580 F.2d 765, 772 (5th Cir. 1978)(same). It should be beyond cavil that Frontier has a substantial interest in the accuracy of documents published by the FAA, the agency that regulates it. As for the few examples of documents or videos supplied by complaining passengers in support of their race discrimination complaints, the issue in this case is not whether they can be relied upon as 100 percent accurate, but instead why Frontier took no steps to determine their accuracy, beyond asking its own employees whether they had been guilty of race discrimination (inquiries that unsurprisingly drew negative answers in every instance). The remainder of the boilerplate objection, which Frontier has fully or partially asserted as to 49 of Plaintiffs' 51 discovery requests, claims a bizarre "rule" of immunity from discovery that is ostensibly based on the holdings of three district court decisions from the Western District of Washington and one unpublished Ninth Circuit opinion from 1978 that current Ninth Circuit Rules forbid any party to cite to Courts in this Circuit except in limited circumstances that do not apply here. *See,* Circuit Rule 36-3(c). Notably, none of the cases supports the existence of such a rule. *Karrani v. JetBlue Airways Corp.,* No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944 (W.D. Wash. July 31, 2019), is a summary judgment decision that merely

refers to a previous discovery ruling in the same case, but in doing so, it supports the relevance of past complaints of discrimination within the framework of Rule 26(b)(1), because even if, *arguendo,* evidence of prior discrimination complaints is relevant for summary judgment only in "limited circumstances," *see* slip op. at 14, it cannot be said that it "has no bearing on the claims and defenses of the parties." *Guerra v. Dematic Corp.*, Case No. 3:18-cv-00376-LRH-CLB (D. Nev. April 15, 2022), slip op. at 5; *see also, Republic of Ecuador v. Mackay,* 742 F.3d 860, 866 (9th Cir. 2014)("the scope of permissible discovery under Rule 26 is broad"). In fact, the *Karrani* court allowed discovery of past complaints, as has this Court.[6] *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068 (W.D. Wash. Mar. 28, 2012) and *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436 (W.D. Wash. Oct. 16, 2009), are at least opinions on discovery motions, but they do not establish the rule of immunity that Frontier claims. Both describe "collateral relevance" (which is, it should be noted, a term that describes some relevance rather than no relevance) and a limited scope of admissibility of "pattern and practice" evidence on the merits, which appears to be at odds with the Ninth Circuit's holdings in favor of admissibility in *Fuller* and *Heyne*.[7] In *Walech*, the district court permitted the discovery after limiting the geographical scope of the request. In *Acton,* after it noted, "[t]o be sure, there is no categorical bar on the pursuit of such evidence," *see* slip op. at 5 (citing *Lowery v. Circuit City Stores, Inc.,* 158 F.3d 742, 761 (4th Cir. 1998)), the court exercised its discretion on "this skimpy record," *id.* at 2, to deny the discovery because there was "virtually no evidence or allegation to suggest that [the plaintiff's] claims require discovery into other stores' employees." *Id.* at 4. But the Court in the instant case has already evaluated Frontier's relevance and proportionality arguments concerning the past

---

[6] The *Karrani* court limited the discovery to complaints about the flight attendant who interacted with the plaintiff, a limitation that would be impossible in the instant case since Frontier destroyed, after the requests were served and the Court ordered them produced, the sole database that enabled linking flight attendants' names to the vast majority of the complaints produced. *See* n. 3, *supra*. (Plaintiffs do not agree that such a limitation would be proper in the instant case).

[7] Even if, *arguendo,* admissibility is limited, that is not a valid reason to object to discovery of the information: "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed.R.Civ.P. 26(b)(1).

discrimination complaints, and it overruled them. ECF No. 83, at 4-5. To that extent, *Acton* is inapposite. Frontier's boilerplate objection, however, appears to claim that Plaintiffs may look at the discrimination complaints that it produced in redacted form, but may not pursue any further questions about them, including asking Frontier to admit that they are genuine copies of its business records. Nothing in *Karrani*, *Walech*, or *Acton* supports such an extreme proposition. *Schwartz*, which cannot be cited under 9th Cir. R. 36-3(c), is not precedent for anything. Even if it were, it does not contain anything remotely close to the "rule" that Frontier is attempting to enforce.

In sum, Frontier's objection is improper boilerplate. Boilerplate objections waive any legitimate objections the responding party may have had. *Mancia v. Mayflower Textile Servs. Co.,* 253 F.R.D. 354, 364 (D. Md. 2008)(cited with approval in *Gurshin,* slip op. at 4). The Court has the authority to deem the Request admitted, *see id.* and Fed.R.Civ.P. 36(a)(6), and should do so. In the alternative, it should order Frontier to serve an amended answer without the objection. *Id.* In the event it does the latter, given Frontier's argument in response to Plaintiffs' Motions for Sanctions that the lack of a specified date in an order compelling production means that Frontier can comply whenever it chooses to, Plaintiffs respectfully request that the Court set a specific deadline for Frontier's compliance in the Order.

**RFA No. 2:** Admit that the documents listed on Exhibit A attached hereto are business records of Frontier Airlines, Inc. that have been kept in the course of its regularly conducted business activities.

**ANSWER:** Frontier objects to Request No. 2 on the grounds that it is irrelevant, overly broad, unduly burdensome, and not proportionate to the needs of this case. Exhibit A references over 2,000 pages of documents of varying types and categories, some of which were not created, prepared, or authored by Frontier. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in the text of the prior complaints that have been produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at *20 (W.D. Wash. July 31, 2019); *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009

U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009); *Schwartz v. New Castle Corp.*, No. 96-17178, 1997 U.S. App. LEXIS 33701, at *5 (9th Cir. Nov. 26, 1997).

**Argument:** RFA 2 is also a routine RFA, intended to establish that the documents produced by Frontier from its own files fit within the business records exception of Fed.R.Evid. 803(6), *see Childs.* The arguments asserted above for RFA 1 apply with equal force to RFA 2. Frontier's boilerplate objection (*see* Argument for RFA 1, which applies here as well since the boilerplate is identical) is improper, and the Court should deem the RFA admitted or, in the alternative, should order an amended answer that does not contain the objection.

**RFA No. 3:** Admit that the making of the business records listed on Exhibit A attached hereto was a regular practice of the business activities of Frontier Airlines, Inc.

**ANSWER:** Frontier objects to Request No. 3 on the grounds that it is irrelevant, overly broad, unduly burdensome, and not proportionate to the needs of this case. Exhibit A references over 2,000 pages of documents of varying types and categories, some of which were not created, prepared, or authored by Frontier. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in the text of the prior complaints that have been produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at *20 (W.D. Wash. July 31, 2019); *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009); *Schwartz v. New Castle Corp.*, No. 96-17178, 1997 U.S. App. LEXIS 33701, at *5 (9th Cir. Nov. 26, 1997).

**Argument:** Again, the language of RFA 3 merely tracks the language of Rule 803(6). The arguments asserted above for RFA 1 apply with equal force to RFA 3. Frontier's boilerplate objection (*see* Argument for RFA 1, which applies here as well since the boilerplate is identical) is improper, and the Court should deem the RFA admitted or, in the alternative, should order an amended answer that does not contain the objection.

**RFA No. 4:** Admit that the business records listed on Exhibit A attached hereto were made at or near the time of the matters described in them by someone with knowledge of those matters, or from information transmitted by someone with knowledge of those matters.

**ANSWER:** Frontier objects to Request No. 4 on the grounds that it is irrelevant, overly broad, unduly burdensome, and not proportionate to the needs of this case. Exhibit A references over 2,000 pages of documents of varying types and categories, some of which were not created, prepared, or authored by Frontier. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in the text of the prior complaints that have been produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at *20 (W.D. Wash. July 31, 2019); *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009); *Schwartz v. New Castle Corp.*, No. 96-17178, 1997 U.S. App. LEXIS 33701, at *5 (9th Cir. Nov. 26, 1997).

**Argument:** As with RFA 3, RFA 4 tracks the language of Rule 803(6). To the extent Frontier has concerns with documents created by the FAA or some of the race discrimination complainants, they qualify as "information transmitted by someone with knowledge of those matters." Again, the arguments asserted above for RFA 1 apply with equal force to RFA 4. Frontier's boilerplate objection (*see* Argument for RFA 1) is improper, and the Court should deem the RFA admitted or, in the alternative, should order an amended answer that does not contain the objection.

**RFA No. 5:** Admit that Defendant Frontier Airlines, Inc. cannot truthfully state that it has disciplined any flight attendant for that flight attendant's actions directed at a passenger that were the subject of a complaint of racial discrimination described in documents produced in discovery in the civil action styled *DelVecchia v. Frontier Airlines, Inc.,* Case Number 2:19-CV-01322-KJD-DJA.

**ANSWER:** Frontier objects to Request No. 5 because it is overbroad, unduly burdensome, and not proportional to the needs of this case. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in the text of the prior complaints that have been produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at *20 (W.D. Wash. July 31, 2019); *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009); *Schwartz v. New Castle Corp.*, No. 96-17178, 1997 U.S. App. LEXIS 33701, at *5 (9th Cir. Nov. 26, 1997).

**Argument:** RFA 5 aims at the heart of an issue that is central to Plaintiffs' §1981 claim: that although Frontier claims to have an anti-discrimination policy in effect, and routinely tells race discrimination complainants in boilerplate "template" responses that it has no tolerance for race discrimination, the truth appears to be that it has never disciplined any of its thousands of flight attendants and pilots for violating its policy, thus fostering an environment where its employees know that they have free rein to discriminate against passengers of color without suffering any consequences and in which Frontier is fully complicit in all occurrences of illegal race discrimination against its passengers. There is nothing improper about asking Frontier to admit that it cannot truthfully state that it has disciplined a flight attendant for any actions that resulted in one of the race discrimination complaints that it has produced. That would be a fact for which a request for admission is fully authorized by Rule 36, and the admission would eliminate an important issue for trial.[8] Of the thirteen employees, agents, former employees and former agents of Frontier who have given deposition testimony in this case, none has been able to recall a single instance in which a colleague has been disciplined for violating the anti-discrimination policy contained in Frontier's Employee Handbook, which is not even taught in its employee training sessions, or the far more vague "discrimination" policy that is included in initial training sessions, which essentially states that Frontier will sell a ticket to anyone. Elizabeth Zimmerman, a current employee whose "Denver Team" is specifically tasked with responding to passenger complaints of discrimination, and responds to all such complaints with a statement that Frontier does not believe that racial discrimination was involved (through a cut-and-paste template available for use in all responses), testified that it is not part of her job to see whether the company investigates or disciplines flight attendants for their actions and inactions described in the complaints that she handles—even though she and her colleagues routinely assure complainants

---

[8] "Rule 36 serves two vital purposes, both of which are designed to reduce trial time. Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be." Adv. Comm. Note to 1970 amendment to Rule 36.

that an internal investigation will be handled to conclusion (with another cut-and-paste template). In truth, as she testified, she and they have no idea whether an investigation will occur or not. She testified that one would need to inquire of the department that manages the flight attendants and/or Human Resources, but that cannot be done if the employees' names are not known, and Frontier's recent destruction of the only database that could provide that information relative to the complaints it has produced renders such an inquiry impossible. Therefore, Frontier itself is in the best position to state whether it can identify any flight attendant who has been disciplined by it for actions or inactions described in one of the 300+ discrimination complaints it has produced, and if it cannot, it should admit that it cannot, rather than expanding the trial with useless "maybe they have, maybe they haven't, I just don't know" evidence. Its boilerplate objection (*see* Argument for RFA 1, which applies here as well since the boilerplate is nearly identical) is improper, and the Court should deem the RFA admitted or, in the alternative, should order an amended answer that does not contain the objection.

**RFA No. 6:** Admit that Defendant Frontier Airlines, Inc. is unable to confirm whether it disciplined any flight attendant whose actions directed at a passenger were the subject of a complaint of racial discrimination described in documents produced in discovery in the civil action styled *DelVecchia v. Frontier Airlines, Inc.,* Case Number 2:19-CV-01322-KJD-DJA, if the flight attendant was not identified by surname and/or by employee number in the text of the produced documents.

**ANSWER:** Frontier objects to Request No. 6 because it is overbroad, unduly burdensome, and not proportional to the needs of this case. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in the text of the prior complaints that have been produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at *20 (W.D. Wash. July 31, 2019); *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009); *Schwartz v. New Castle Corp.*, No. 96-17178, 1997 U.S. App. LEXIS 33701, at *5 (9th Cir. Nov. 26, 1997).

**Argument:** RFA 6 is necessary to lay the factual foundation for Plaintiffs' spoliation motion, and is also relevant and necessary to prove that Frontier has not disciplined any flight attendants for their actions

or inactions that were brought to Frontier's attention by the race discrimination complaints it has produced. Only a minority of the produced race discrimination complaints that involved flight attendants identify them by name or employee number. Without that information, Frontier is no longer able to identify any of the flight attendants involved in the prior complaints of race discrimination (who might have been the same flight attendants aboard Plaintiffs' flight), because Frontier destroyed its only database that contained that information (hereinafter the "duty roster database") during the pendency of this action. Mr. Maye, its lead defense attorney, has stated that the destruction of that database has made it impossible to pull up a duty roster for any flight prior to November, 2020, and therefore it is impossible to link unnamed flight attendants described in the produced race discrimination complaints to duty rosters for the identified flights in which the acts of discrimination were said to have occurred. Assuming his statement to be true (and Plaintiffs do), Frontier should admit that fact for the record. Frontier fails to describe any facts that make the RFA "overly broad, unduly burdensome, and not proportional to the needs of this case," which makes that objection improper boilerplate under *Gurshin*. The remainder of its objection is the boilerplate language claiming an immunity to discovery based on the unsupportive Western District of Washington trial court decisions and the improperly cited (and equally unsupportive) Ninth Circuit unpublished decision. The boilerplate objection (*see* Argument for RFA 1) is improper, and the Court should deem the RFA admitted or, in the alternative, should order an amended answer that does not contain the objection.

**RFA No. 7:** Admit that the employees of Defendant Frontier Airlines, Inc. who investigated and responded to the passenger complaints of racial discrimination by flight attendants that are described in documents produced in the civil action styled *DelVecchia v. Frontier Airlines, Inc.,* Case Number 2:19-CV-01322-KJD-DJA, were able to identify, by dates and flight numbers, the Frontier Airlines flights on which the flight attendants were working when the actions described in the complaints were claimed to have occurred.

**ANSWER:** Frontier objects to Request No. 7 because it is overbroad, unduly burdensome, and not proportional to the needs of this case. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in

the text of the prior complaints that have been produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at *20 (W.D. Wash. July 31, 2019); *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.*, No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009); *Schwartz v. New Castle Corp.*, No. 96-17178, 1997 U.S. App. LEXIS 33701, at *5 (9th Cir. Nov. 26, 1997).

**Argument:** RFA 7 is similar to RFAs 5 and 6, although it focuses more narrowly on the fact that Frontier's employees *did* identify, for each of the race discrimination complaints it produced in this action, the flight numbers and dates of the flights on which the events occurred that formed the basis for the complaints. That fact is relevant because the flight attendants were not identified by name in the majority of the race discrimination complaints. The complainants describe several instances of flight attendants hiding or not wearing their identification badges, refusing to provide their names when asked (in violation of a Frontier policy), or refusing to provide the names of their co-workers to passengers. If the flight number and date of flight are known, it would have been an easy exercise to retrieve the duty roster for that flight, which would have narrowed the possible names down to two or three, before Frontier destroyed the duty roster database. This RFA seeks to lay the factual foundation for Plaintiffs' spoliation motion. It is not "overly broad, unduly burdensome, and not proportional to the needs of this case" because, as Frontier has pointed out in a filing on another motion, there are only 160 produced race discrimination complaints that involve its employed flight attendants. *See* ECF No. 166, at 9 ("160 against Frontier and 178 against gate agents not employed by Frontier").[9] Frontier's boilerplate objection citing those reasons is therefore not only improperly unsupported by facts, the available facts show it to be false. The remainder of its objection is also boilerplate. The boilerplate objection (*see* Argument for RFA 1) is improper, and the Court should deem the RFA admitted or, in the alternative, should order an amended answer that does not contain the objection.

_____

[9] According to the deposition testimony of a manager of the gate agents, they wear Frontier's uniforms, stand in front of Frontier signage, use Frontier's software programs, and have their duty times and procedures dictated by Frontier. Frontier management can even get them fired by their employers. The passengers are normally unaware that they do not work for Frontier.

**RFA No. 8:** Admit that the employees of Defendant Frontier Airlines, Inc. who investigated and responded to the passenger complaints of racial discrimination by flight attendants that are described in documents produced in the civil action styled *DelVecchia v. Frontier Airlines, Inc.,* Case Number 2:19-CV-01322-KJD-DJA, made notes and/or attached other records to their database entries that identified the flight numbers and dates of the flights on which the alleged acts of racial discrimination were claimed to have occurred.

**ANSWER:** Frontier objects to Request No. 8 because it is overbroad, unduly burdensome, and not proportional to the needs of this case. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in the text of the prior complaints that have been produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at *20 (W.D. Wash. July 31, 2019); *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009); *Schwartz v. New Castle Corp.*, No. 96-17178, 1997 U.S. App. LEXIS 33701, at *5 (9th Cir. Nov. 26, 1997).

**Argument:** RFA 8 simply asks the same question as RFA 7 in a different way, showing that even if the employees responding to the complaints did not expressly identify the flight numbers and dates involved, their collection of information and documents facilitated such a determination. It is necessary for the same reasons as RFA 7, and the objections are improper for the same reasons as discussed in connection with RFA 7. The Court should deem the RFA admitted or, in the alternative, should order an amended answer that does not contain the objection.

**RFA No. 9:** Admit that Defendant Frontier Airlines, Inc.'s inability to identify the flight attendants who are the subject of complaints of racial discrimination described in documents produced by it in the civil action styled *DelVecchia v. Frontier Airlines, Inc.,* Case Number 2:19-CV-01322-KJD-DJA, results from a software change that it made intentionally after May 8, 2020 in which it chose not to retain the ability to identify which of its flight attendants had worked on any of the flights on which the alleged acts of racial discrimination were claimed to have occurred.

**ANSWER:** Frontier objects to Request No. 9 because it is overbroad, unduly burdensome, and not proportional to the needs of this case. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in the text of the prior complaints that have been produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at *20 (W.D. Wash. July

31, 2019); *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009); *Schwartz v. New Castle Corp.*, No. 96-17178, 1997 U.S. App. LEXIS 33701, at *5 (9ᵗʰ Cir. Nov. 26, 1997).

**Argument:** RFA 9 asks Frontier to admit the truth of what Mr. Maye told Plaintiffs' counsel in the February meet and confer telephone conference. The identification of flight attendants involved in prior complaints of race discrimination is relevant because they might have been the same flight attendants involved in the actions aboard Plaintiffs' flight, and also to show Frontier's hostility toward persons of color and race discrimination complaints in general, to the extent it has never disciplined any flight attendant for violating its supposed anti-discrimination policy.  It is also relevant to the factual support for Plaintiffs' spoliation motion, for the reasons discussed above. The objections are improper boilerplate, for all the reasons discussed above. The Court should deem the RFA admitted or, in the alternative, should order an amended answer that does not contain the objection.

**RFA No. 10:** Admit that, at the time it made the software change described in Request Number 8, Defendant Frontier Airlines, Inc. knew that it had been ordered by the Court in the civil action styled *DelVecchia v. Frontier Airlines, Inc.,* Case Number 2:19-CV-01322-KJD-DJA, in an Order entered on the case docket on May 8, 2020, to produce "any race discrimination complaints filed by passengers, not employees, over the past five years only, and limited geographically to the continental United States."

**ANSWER:** Frontier objects to Request No. 10 because it is overbroad, unduly burdensome, and not proportional to the needs of this case. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in the text of the prior complaints that have been produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at *20 (W.D. Wash. July 31, 2019); *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009); *Schwartz v. New Castle Corp.*, No. 96-17178, 1997 U.S. App. LEXIS 33701, at *5 (9th Cir. Nov. 26, 1997).

**Argument:** RFA 10 asks Frontier to admit that it had knowledge of the Court's May 8, 2020 Order requiring it to produce the race discrimination complaints when it made the decision to destroy the duty

roster database. While that Order did not directly order the production of the database, only Frontier knew at that time that it would be necessary to compare the flight numbers and dates contained in the race discrimination complaints with the duty roster database to identify the flight attendants whose conduct was the subject of the race discrimination complaints. Certainly, Frontier should have known that Plaintiffs would ask it to identify those flight attendants once their counsel received the race discrimination complaints and saw that most of them did not name the subject flight attendants. Its decision to destroy the only means of identifying the flight attendants is relevant to Plaintiffs' spoliation motion. The objections are improper boilerplate, for all the reasons discussed above. The Court should deem the RFA admitted or, in the alternative, should order an amended answer that does not contain the objection.

**RFA No. 11:** Admit that, at the time it made the software change described in Request Number 8, Defendant Frontier Airlines, Inc. knew that many of the race discrimination complaints that it had been ordered to produce did not identify by name or surname the flight attendants involved, but the complaints were matched to date and flight number information that would have enabled it to identify which flight attendants were working on the subject flights if it had retained the capacity to search crew member records for those flights.

**ANSWER:** Frontier objects to Request No. 11 because it is overbroad, unduly burdensome, and not proportional to the needs of this case. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in the text of the prior complaints that have been produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at *20 (W.D. Wash. July 31, 2019); *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp., No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009); Schwartz v. New Castle Corp., No. 96-17178, 1997 U.S. App. LEXIS 33701, at *5 (9th Cir. Nov. 26, 1997).*

**Argument:** RFA 11 seeks admission of another fact necessary for Plaintiffs' spoliation motion, which is that the flight number and date information would have enabled identification of the crew members assigned to the flights that are the subject of the race discrimination complaints, had Frontier not decided to destroy the duty roster database. Frontier has asserted the same boilerplate objection to answering this request, which is improper under the cases such as *Gurshin* discussed in the argument for RFA 1, above.

The Court should deem the RFA admitted or, in the alternative, should order an amended answer that does not contain the objection.

> **RFA No. 12:** Admit that, at the time it made the software change described in Request Number 8 above, Defendant Frontier Airlines, Inc. knew that Plaintiffs in the civil case styled *DelVecchia v. Frontier Airlines, Inc.,* Case Number 2:19-CV-01322-KJD-DJA, had raised as an issue in the case a claim that Defendant Frontier's fostered a work environment in which its employees were not disciplined for acts of racial or ethnic discrimination.

**ANSWER:** Frontier objects to Request No. 12 because it is argumentative, overbroad, unduly burdensome, and not proportional to the needs of this case. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in the text of the prior complaints that have been produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at *20 (W.D. Wash. July 31, 2019); *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009); *Schwartz v. New Castle Corp.*, No. 96-17178, 1997 U.S. App. LEXIS 33701, at *5 (9th Cir. Nov. 26, 1997).

**Argument:**   RFA 12 is relevant to prove the elements of spoliation. "Spoliation of evidence includes the failure to preserve property for another's use as evidence in a pending or reasonably foreseeable litigation." *Sanchez v. Albertson's, LLC,* Case No. 2:19-cv-2017-JAD-DJA (D. Nev., March 3, 2022), slip op. at 16 (citing *Kitsap Physicians Serv.,* 314 F.3d, at 1001). The principles that apply to tangible property should apply equally to electronic data such as the duty roster database. The RFA seeks an admission that Frontier knew at the time it destroyed that database that Plaintiffs had raised an issue concerning whether flight attendants identified in the race discrimination complaints were ever disciplined. As all current and former employees of Frontier's Customer Relations Department have testified, one would have to examine a particular flight attendant's HR file to make a determination whether he or she was disciplined for conduct that was the subject of a discrimination complaint, since the "Denver Team" does not follow up with other departments to document any discipline, and since most flight attendants are not identified by name in the race discrimination complaints, it is a simple matter of "connecting the dots" to understand

that reference to the duty roster database would be required in order to identify them. "A party's duty to preserve evidence begins [when] the party reasonably should have known that the evidence is relevant to anticipated litigation*." Id.* (citing *Asfaw v. Wal-Mart Stores, Inc.,* No. 2:19-cv-01292-GMN-NJK, 2021 WL 2006283, at *1 (D. Nev. May 19, 2021). Although one of the elements of a claim of spoliation is a culpable mind at the time of destruction, *see id.,* "[m]any courts in the Ninth Circuit have held that a 'culpable mind includes negligence.'" RFA 12 addresses that element. It is not "overbroad, unduly burdensome, and not proportional to the needs of this case." Moreover, Frontier has failed to provide any factual explanation for why it claims that it is, which renders its objections meaningless and improper boilerplate for the reasons cited in the Argument for RFA 1. That applies to the remainder of the objection, as well. The Court should deem the RFA admitted or, in the alternative, should order an amended answer that does not contain the objection.

**RFA No. 13:** Admit that, at the time it made the software change described in Request Number 8 above, Defendant Frontier Airlines, Inc. knew that one of the reasons Plaintiffs had requested production of the documents relating to prior complaints of race discrimination was to determine whether the flight attendants who were the subject of those complaints had received any discipline for discriminating against passengers.

**ANSWER:** Frontier objects to Request No. 13 because it is overbroad, unduly burdensome, and not proportional to the needs of this case. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in the text of the prior complaints that have been produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at *20 (W.D. Wash. July 31, 2019); *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009); *Schwartz v. New Castle Corp.*, No. 96-17178, 1997 U.S. App. LEXIS 33701, at *5 (9th Cir. Nov. 26, 1997).

**Argument:** RFA 13 focuses more narrowly on the same subject matter as RFA 12, and is relevant for the same reasons. Frontier's objections are improper for the same reasons. The Court should deem the RFA admitted or, in the alternative, should order an amended answer that does not contain the objections.

**RFA No. 14:** Admit that Defendant Frontier Airlines, Inc. knew that it would be necessary to identify the cabin crews (*i.e.,* flight attendants) who worked on the specific flights about which race discrimination complaints pertained in order to determine whether any of the flight attendants had been disciplined for the discrimination complained of in those complaints.

**ANSWER:** Frontier objects to Request No. 14 because it is overbroad, unduly burdensome, and not proportional to the needs of this case. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in the text of the prior complaints that have been produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at *20 (W.D. Wash. July 31, 2019); *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009); *Schwartz v. New Castle Corp.*, No. 96-17178, 1997 U.S. App. LEXIS 33701, at *5 (9th Cir. Nov. 26, 1997).

**Argument:** RFA 14 again focuses more narrowly on the same subject matter as RFA 12, and is relevant for the same reasons. Frontier's objections are improper for the same reasons. The Court should deem the RFA admitted or, in the alternative, should order an amended answer that does not contain the objections.

**RFA No. 15:** Admit that Defendant Frontier Airlines, Inc. knew that the identities of the flight attendants who worked on the flights that were the subject of past race discrimination complaints that it was ordered to produce are relevant to the issue of whether it maintained a practice of disciplining flight attendants who were found to have discriminated against passengers because of their races or ethnicities.

**ANSWER:** Frontier objects to Request No. 15 because it is overbroad, unduly burdensome, and not proportional to the needs of this case. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in the text of the prior complaints that have been produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at *20 (W.D. Wash. July 31, 2019); *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009); *Schwartz v. New Castle Corp.*, No. 96-17178, 1997 U.S. App. LEXIS 33701, at *5 (9th Cir. Nov. 26, 1997).

**Argument:** RFA 15 again focuses more narrowly on the same subject matter as RFA 12, and is relevant for the same reasons. This RFA focuses directly on the elements of relevance and culpable state

of mind. Frontier's objections are improper for the same reasons as discussed above. The Court should deem the RFA admitted or, in the alternative, should order an amended answer that does not contain the objections.

**RFA No. 16:** Admit that Defendant Frontier Airlines, Inc. had possession of records that could have been used to identify the flight attendants who worked on the flights that were the subject of past race discrimination complaints that it was ordered to produce, but it intentionally made those records impossible to retrieve when it changed its software subsequent to May 8, 2020.

**ANSWER:** Frontier objects to Request No. 16 because it is overbroad, unduly burdensome, and not proportional to the needs of this case. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in the text of the prior complaints that have been produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at *20 (W.D. Wash. July 31, 2019); *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.*, No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009); *Schwartz v. New Castle Corp.*, No. 96-17178, 1997 U.S. App. LEXIS 33701, at *5 (9th Cir. Nov. 26, 1997).

**Argument:** RFA 16 again focuses more narrowly on the same subject matter as RFA 12, and is relevant for the same reasons. This RFA focuses directly on the element of culpable state of mind, including Frontier's intentional act of destruction. Frontier's objections are improper for the same reasons as discussed above. The Court should deem the RFA admitted or, in the alternative, should order an amended answer that does not contain the objections.

## II.    PETER DELVECCHIA'S SEVENTH RFPs

**Introductory Note:**  The RFPs are based on bolded terms that are defined in the Definitions preceding the individual requests. For the Court's reference, those definitions are set forth in **Exhibit D** hereto.

**RFP No. 1:** Frontier's employee Captain Rex Shupe signed on December 27, 2021 a set of Second Supplemental Answers to Plaintiff Peter DelVecchia's Interrogatories that contained the following statements by him: "Frontier has a policy prohibiting discrimination based on race, color, national origin, sex, disability, religion, sexual orientation, and age. I received training on that policy prior to March 28, 2019. Other than the information relayed in such training regarding Frontier's policy prohibiting discrimination based on race, color, national origin, sex, disability, religion, sexual orientation, and age, I did not hear, or see in writing, any person who held a

management role at Frontier express any concern that a flight attendant or pilot working for Frontier might discriminate against a passenger based on the passenger's race, ethnicity or color of skin." Please produce all **Documents/ESI** that describe or contain the exact content of the "training on that policy" and "information relayed in such training" that Captain Shupe claimed in that interrogatory answer to have received from Frontier prior to March 28, 2019. Please also produce all **Documents/ESI** that memorialize any confirmation that such training had been provided to Captain Shupe by Frontier as of a specific date.

**RESPONSE:** Frontier objects to this request to the extent it seeks information from another party in this litigation based on the written discovery responses of that party. Subject to and without waiving its objections, Frontier refers Plaintiff to documents previously produced regarding its policy on discrimination and the training materials and to the document previously produced specifically listing the training provided by Frontier to Captain Shupe.

**Argument:** RFP 1 refers to an interrogatory answer by Defendant Shupe, who is a full-time employee of Frontier and who specifically referenced Frontier's policies and training he claimed to have received from Frontier. The original interrogatory did not ask about policies or training; it asked instead the following: "Prior to March 28, 2019, did you ever hear, or see in writing, any person who held a management role at Frontier express any concern that a flight attendant or pilot working for Frontier might discriminate against a passenger based on the passenger's race, ethnicity or color of skin? If so, please identify the person who expressed the concern, their role with Frontier, the date the concern was expressed, in what form or media it was expressed, and what specifically was expressed." Shupe's response, which is recited verbatim in RFP 1, was obviously written by defense counsel, who wrote an absolutely identical answer for Defendant Warren to respond to the same interrogatory served on him.[10] Shupe's answer gratuitously claimed that Shupe "received training on that policy prior to March 28, 2019," without identifying which policy he is referring to, or what the content was of the training he claims to have received. RFP 1 validly asks for documentary proof of the training to be produced by Frontier. The request is relevant because it refers to an issue that has been raised by a Defendant (and common defense counsel), and which is relevant to Shupe's handling of the treatment of Plaintiffs and the issue of Frontier's training

---

[10] As the Court is aware, all Defendants in this case are represented by the same counsel.

of its employees. Notably, no anti-discrimination training was identified in Shupe's training record summary produced by Frontier in advance of Shupe's deposition. *See* training record attached hereto as **Exhibit E**. Now that Shupe is claiming to have received training that is not shown on that record, Plaintiffs should be entitled to conduct discovery about its details, and to verify the claim. Frontier's objection that it should not have to respond to discovery about another Defendant is baseless; Frontier is Shupe's employer, and Shupe referred specifically to *Frontier's* policy and training that he claims he received *from Frontier.* The RFP requests *Frontier's* documents concerning those claims. The two Defendants are represented by the same counsel. The information requested is clearly within the "responding party's possession, custody, or control." *See Caballero,* at *12 (quoting Rule 34(a)). Moreover, the fact that Frontier objected and then provided a response "subject to" the objection should result in the objection being waived, as many courts have held. *See, e.g., Sewell v. D'Alessandro & Woodyard, Inc.*, 2011WL 1232347 at *2 (M.D. Fla. Mar. 30, 2011) (noting that courts deem an objection waived when it is accompanied by a response); *Riley v. United Air Lines, Inc.*, 32 F.R.D. 230, 234 (S.D.N.Y. 1962); *Meese v. Eaton Mfg. Co.*, 35 F.R.D. 162, 166 (N.D. Ohio 1964). But the response Frontier gave is insufficient, as it does not provide the specificity requested—the "document" referred to in the response concerning Shupe's training is Exhibit C, which does not indicate any such training; the "training materials" Frontier has produced to date refer solely to *flight attendant* training, and Shupe is a pilot; and Frontier has two different discrimination policies: one with the detail referenced in Shupe's counsel-drafted answer that Frontier does *not* discuss in its employee training and does not enforce, and another that it does discuss in training that simply declares that anyone can buy a ticket for flight on the airline. Frontier should be compelled to provide the specifics that RFP 1 requests.

**RFP No. 2:**   Please produce all **Documents/ESI** that contain, describe, or refer to communications between **Frontier Executive Management** and **Frontier Customer Relations Department** on the subject of the volume and/or frequency of **Discrimination Complaints** that **Frontier** has received or is receiving.

**RESPONSE:** Frontier objects to Request No. 2 because it is overbroad, unduly burdensome, not relevant or proportional to the needs of this case, and not limited temporally. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in the text of the prior complaints that have been produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at *20 (W.D. Wash. July 31, 2019); *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009); *Schwartz v. New Castle Corp.*, No. 96-17178, 1997 U.S. App. LEXIS 33701, at *5 (9th Cir. Nov. 26, 1997).

**Argument:** As noted above, the documents produced by Frontier reveal that the airline received no less than 5.6 complaints per month of race discrimination by its employees during the relevant five-year period, from its domestic flights alone. Whether that alarming frequency was discussed at all between the Customer Relations Department, which was tasked with responding to the complaints, and Frontier's Executive Management, is a valid inquiry that is relevant to Frontier's corporate attitude toward passengers subjected to race discrimination. That, in turn, is relevant to the subjects of corporate responsibility, hostility toward protected groups, and punitive damages liability. *See, Costa v. Desert Palace, Inc.,* 299 F.3d 838, 865 (9th Cir. 2002), *aff'd,* 539 U.S. 90 (2003)(discussing the "reckless indifference toward federally protected rights" standard for punitive damages award). RFP 1 requests any documents or ESI that memorialize any such discussions. Here, Frontier returns to its boilerplate objection strategy, which is improper for all the reasons discussed in the argument for RFA 1, above. Frontier should be ordered to provide a complete response.

**RFP No. 3:** Please produce all **Documents/ESI** that contain, describe, or refer to communications between **Frontier Executive Management** and **Frontier Customer Relations Department** about how **Frontier Customer Relations Department** should respond to **Discrimination Complaints**.

**RESPONSE:** Frontier objects to Request No. 3 because it is overbroad, unduly burdensome, not relevant or proportional to the needs of this case, and not limited temporally. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination

complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in the text of the prior complaints that have been produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at \*20 (W.D. Wash. July 31, 2019); *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at \*19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at \*8-9 (W.D. Wash. Oct. 16, 2009); *Schwartz v. New Castle Corp.*, No. 96-17178, 1997 U.S. App. LEXIS 33701, at \*5 (9th Cir. Nov. 26, 1997).

**Argument:** RFP 3 states a simple request for any documents (or ESI) in which the subject of how Customer Relations should respond to complaints of race discrimination is discussed between that department and Frontier's Executive Management. The documents Frontier has already produced show that in every case, Customer Relations responds by stating that Frontier does not believe any discrimination occurred, no matter what circumstances are described in the complaint. It is reasonable to assume that such a homogenous and broad-based response must emanate from a company policy, and that it has been discussed between Customer Relations and management. "Denver Team" member Elizabeth Zimmerman recently testified in a deposition that the investigation of race discrimination complaints is limited by "the process," consisting of instructions received from upper management that forbid any inquiry beyond Frontier's own employees. *See* ECF No. 164, Exh. A; *see also* **Exhibit F** hereto (excerpt of deposition testimony of former Denver Team employee Matthew Anderson on "the process"). The request is relevant in that it seeks documents supporting Plaintiffs' allegation that Frontier as a corporation is uninterested in, and hostile to, complaints of race discrimination caused by its employees. Frontier's objection is improper boilerplate. It consists the boilerplate objection repeated for nearly all the requests, with the addition of similarly unexplained assertions of lack of relevance and lack of temporal limitation. It was obligated to provide some particularized factual support for the objections, to keep them from being improper boilerplate. *See Caballero,* at \*13. It did not, for example, state that a temporal limitation is needed because of any great volume of such discussions over a long period of years. In all probability, such discussions would have occurred between December, 2013, the date Inigo Partners

bought Frontier, and March 28, 2019, the date of Plaintiffs' flight. Frontier should be ordered to respond to RFP 3.

**RFP No. 4:** Please produce all **Documents/ESI** that contain, describe, or refer to communications between **Frontier Executive Management** and **Frontier Customer Relations Department** about how **Frontier Customer Relations Department** should categorize, collect, internally file, or describe **Discrimination Complaints**.

**RESPONSE:** Frontier objects to Request No. 4 because it is overbroad, unduly burdensome, not proportional to the needs of this case, and not limited temporally. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in the text of the prior complaints that have been produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at *20 (W.D. Wash. July 31, 2019); *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009); *Schwartz v. New Castle Corp.*, No. 96-17178, 1997 U.S. App. LEXIS 33701, at *5 (9th Cir. Nov. 26, 1997).

**Argument:** RFP 4 requests any documents that establish any instructions from senior management about how the Customer Relations Department should characterize and file complaints alleging race discrimination. The database printouts that Frontier has produced show tracking tags that were assigned to complaints, but the employees who have testified in depositions have been unable to fully explain their use. For example, they were unable to explain why a particular complaint would be assigned a tag of "DOT Tracked" or "DOT Discrimination" when no complaint had been filed with the DOT and that Department presumably knew nothing about it. Documents directing certain categorizations of discrimination complaints, especially any that emanate from senior management, are relevant to the issues of hostility and reckless indifference. Frontier ignores the fact that race discrimination by its employees is a recurring theme, week after week. It appears that Frontier is not only uninterested in getting to the bottom of why such complaints recur with great frequency; it has affirmatively instructed its Denver Team to restrict its investigation of such complaints only to asking its own employees whether they think they

discriminated (*i.e.,* 'the process"), to deny with boilerplate responses that any discrimination ever occurs, and to encourage complainants to go away with offers of low value coupons against future travel costs on Frontier. That evidences hostility toward groups protected by §1981 and also reckless indifference to their protected rights. Frontier's boilerplate objection is improper for the reasons discussed above, *see Caballero,* at *13, and it should be ordered to respond to the request by a certain deadline.

**RFP No. 5:** Please produce all **Documents/ESI** that contain, describe, or refer to communications between **Frontier Executive Management** and **Frontier Customer Relations Department** on the subject of what actions **Frontier Customer Relations Department** should or should not take to investigate or follow up on any **Discrimination Complaints** beyond, or in addition to, communicating with the persons making the **Discrimination Complaints** and/or offering such persons coupons to be applied to the costs of future travel.

**RESPONSE:** Frontier objects to Request No. 5 because it is overbroad, unduly burdensome, not proportional to the needs of this case, and not limited temporally. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in the text of the prior complaints that have been produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at *20 (W.D. Wash. July 31, 2019); *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009); *Schwartz v. New Castle Corp.*, No. 96-17178, 1997 U.S. App. LEXIS 33701, at *5 (9th Cir. Nov. 26, 1997).

**Argument:** RFP 5 focuses on the critical issue of whether there are any documents that evidence whether Frontier's senior management take race discrimination complaints seriously, or whether they instruct the Customer Relations Department to sweep them under the rug and/or make them go away cheaply by offering complainants low value coupons. The testimony of the current and former employees establishes that coupons for future travel on Frontier, in amounts no greater than $200, are the sole compensation offered by the company to passengers alleging race discrimination. Testimony from the same employees confirms the existence of "the process" by which investigations are forbidden to go beyond the input of Frontier's employees in evaluating complaints. Documents that reveal the genesis of

such policies are relevant to the issues of hostility toward protected groups, hostility toward complaints of race discrimination, and reckless indifference to federally protected rights. Frontier's objections are improper boilerplate for the reasons discussed above, *see Caballero,* at *13, and Frontier should be ordered to respond to the request by a certain deadline.

**RFP No. 6:** Please produce all **Documents/ESI** that contain, describe, or refer to communications between **Frontier Executive Management** and **Frontier Customer Relations Department** about how **Frontier** could reduce the number and/or frequency of **Discrimination Complaints** that **Frontier** receives.

**RESPONSE:** Frontier objects to Request No. 6 because it is overbroad, unduly burdensome, not proportional to the needs of this case, and not limited temporally. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in the text of the prior complaints that have been produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at *20 (W.D. Wash. July 31, 2019); *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009); *Schwartz v. New Castle Corp.*, No. 96-17178, 1997 U.S. App. LEXIS 33701, at *5 (9th Cir. Nov. 26, 1997).

**Argument:** RFP 6 is relevant to the issues of Frontier's corporate hostility toward race discrimination complainants. It seeks any documents/ESI addressing communications between senior management and the Customer Relations Department describing any ways that the company could reduce the frequency of race discrimination complaints, such as employee anti-bias training or disciplining employees who are found to have discriminated against passengers. Frontier's objection is improper boilerplate for the reasons discussed above, *see Caballero,* at *13, and it should be ordered to respond to the request by a certain deadline.

**RFP No. 7:** Please produce all **Documents/ESI** that contain, describe, or refer to communications between **Frontier Executive Management** and **Frontier Customer Relations Department** about any federal law or laws that prohibit discrimination against passengers or customers on account of, *inter alia,* their races or ethnicities.

**RESPONSE:** Frontier objects to Request No. 7 because it is overbroad, unduly burdensome, not relevant or proportional to the needs of this case, and not limited temporally. *See Walech v.*

*Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009).

**Argument:** 42 U.S.C. §1981 is a federal law that prohibits discrimination by an airline against its passengers based on their races or ethnicities. *See, e.g., Brackett v. Am. Airlines Grp., Inc.,* Case No. 21-cv-02681-HSG (N.D. Cal., Jan. 21, 2022), slip op. at 5-6. Other federal statutes specifically directed at airlines' treatment of passengers, such as 49 U.S.C. §40127, contain broader proscriptions against discrimination that overlap with §1981 in part. For example, §40127 proscribes discrimination against passengers for "race, color, national origin, religion, sex or ancestry." To the extent that an airline enforces policies that prevent discrimination for "race, color [and] national origin," those policies also prevent discrimination under §1981. Thus, communications between Frontier's senior management and the employees handling race discrimination complaints that emphasize (or de-emphasize) the importance of those federal laws are relevant to the issues of Frontier's corporate hostility toward passengers subjected to race discrimination and its reckless disregard of federally protected rights. Frontier's objections contain no factual support and are therefore improper boilerplate. *See Caballero,* at *13. Its citation of *Walech* and *Acton*, presumably for their "collateral relevance" discussions, are inapposite for the reasons discussed above. Frontier should be ordered to respond to the request by a certain deadline.

> **RFP No. 8:** Please produce all **Documents/ESI** that contain, describe, or refer to communications between **Frontier Executive Management** and **Frontier Customer Relations Department** about the "Guidance for Airline Personnel on Non-discrimination in Air Travel" and related documents released by **DOT** on or about January 13, 2017, which have been marked in this civil action with Bates numbers P000748 through P000764.
>
> **RESPONSE:** Frontier objects to Request No. 8 because it is overbroad, unduly burdensome, not relevant or proportional to the needs of this case, and not limited temporally. *See Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009).

**Argument:** The guidance document referenced was published by the DOT, the Cabinet Department that oversees the FAA, for the benefit of all airline personnel. It reminded them that while their duties to

ensure the safety of airline flights are important, they must not be carried out with a blind eye toward passengers' federally protected civil rights. The publication specifically referenced 49 U.S.C. §40127 as well as three other statutes that the DOT has interpreted as prohibiting discrimination against passengers. As discussed above, §40127 overlaps with §1981. Although the guidance document was non-binding, the same cannot be said of §1981. The guidance document suggested that airlines conduct anti-bias training, and it also suggested methods that flight attendants and others could employ to make certain they were not basing decisions on illegal bias. All indications are that Frontier ignored the DOT's advice. This RFP seeks any documents/ESI that contain any discussions between senior management and the Customer Relations Department concerning the DOT's advice. Frontier's boilerplate objection is improper for the reasons discussed above. *See Caballero,* at *13. It should be ordered to respond to the request by a certain deadline.

> **RFP No. 9:** Please produce Please produce all **Documents/ESI** that contain, describe, or refer to communications between **Frontier Executive Management** and **Frontier Customer Relations Department** about any disciplinary measures or additional training that might apply to employees of **Frontier** who are the subject of **Discrimination Complaints**.

> **RESPONSE:** Frontier objects to Request No. 9 because it is overbroad, unduly burdensome, not proportional to the needs of this case, and not limited temporally. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in the text of the prior complaints that have been produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at *20 (W.D. Wash. July 31, 2019); *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009); *Schwartz v. New Castle Corp.*, No. 96-17178, 1997 U.S. App. LEXIS 33701, at *5 (9th Cir. Nov. 26, 1997).

 **Argument:**   One of the issues in this litigation is whether Frontier disciplines its employees who are found to have discriminated against passengers, or if it even subjects them to additional anti-discrimination training. The issue is relevant both to Frontier's treatment of discrimination complaints and whether it

fosters an environment in which flight attendants such as those on Plaintiffs' flight feel unrestrained in taking actions that violate passengers' civil rights. Frontier's response to date has been that one would have to look in specific employees' HR files to determine whether any discipline or training has occurred, an exercise that it rendered impossible by destroying the duty roster database shortly before producing the discrimination complaints. In an effort to get around that roadblock, Plaintiffs served RFP 9 seeking documents that memorialize any discussions between senior management and the Customer Relations Department concerning what discipline and/or training could be implemented (the next two RFPs ask the same question in relation to the Inflight Management Department, which manages the flight attendants). Frontier's objection, which states no facts to explain its broad allegations, is improper boilerplate. *See Caballero,* at *13. Frontier should be ordered to respond to the request by a certain deadline.

**RFP No. 10:** Please produce all **Documents/ESI** that contain, describe, or refer to communications between **Frontier Executive Management** and **Frontier Inflight Management** about any disciplinary measures or additional training that might apply to employees of **Frontier** who are the subject of **Discrimination Complaints**.

**RESPONSE:** Frontier objects to Request No. 10 because it is overbroad, unduly burdensome, not proportional to the needs of this case, and not limited temporally. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in the text of the prior complaints that have been produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at *20 (W.D. Wash. July 31, 2019); *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009); *Schwartz v. New Castle Corp.*, No. 96-17178, 1997 U.S. App. LEXIS 33701, at *5 (9th Cir. Nov. 26, 1997).

**Argument:** RFP 10 seeks the same type of documents/ESI as RFP 9, except reflecting communications between senior management and Inflight Management on the same subjects. Frontier's objection, which states no facts to explain its broad allegations, is improper boilerplate. *See Caballero,* at *13. Frontier should be ordered to respond to the request by a certain deadline.

**RFP No. 11:** Please produce all **Documents/ESI** that contain, describe, or refer to communications between **Frontier Customer Relations Department** and **Frontier Inflight Management** about any disciplinary measures or additional training that might apply to employees of **Frontier** who are the subject of **Discrimination Complaints**.

**RESPONSE:** Frontier objects to Request No. 11 because it is overbroad, unduly burdensome, not proportional to the needs of this case, and not limited temporally. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in the text of the prior complaints that have been produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at *20 (W.D. Wash. July 31, 2019); *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009); *Schwartz v. New Castle Corp.*, No. 96-17178, 1997 U.S. App. LEXIS 33701, at *5 (9th Cir. Nov. 26, 1997).

**Argument:** RFP 11 requests documents/ESI on the same subject as RFPs 9 and 10, only between the Customer Relations Department and Inflight Management. Such documents are relevant on the issue of whether the exclusive handling of race discrimination complaints by the Denver Team of the Customer Relations Department results in any attempts to solve the problem of recurrent race discrimination complaints by disciplining flight attendants and/or giving them anti-bias training, or whether the Denver Team simply sweeps the complaints under the rug, year after year. Frontier's objection, which states no facts to explain its broad allegations, is improper boilerplate. *See Caballero,* at *13. Frontier should be ordered to respond to the request by a certain deadline.

**RFP No. 12:** Please produce all **Documents/ESI** that contain, describe, or refer to communications between **Frontier Customer Relations Department** and **Frontier Inflight Management** about the volume and/or frequency of **Discrimination Complaints** that **Frontier** has received or is receiving.

**RESPONSE:** Frontier objects to Request No. 12 because it is overbroad, unduly burdensome, not proportional to the needs of this case, and not limited temporally. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in the text of the prior complaints that have been produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at

*20 (W.D. Wash. July 31, 2019); *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.*, No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009); *Schwartz v. New Castle Corp.*, No. 96-17178, 1997 U.S. App. LEXIS 33701, at *5 (9th Cir. Nov. 26, 1997).

**Argument**: RFP 12 seeks documents similar to those requested in RFP 2, except from Inflight Management, the department that directly manages the flight attendants. It is relevant because the majority of the race discrimination complaints involve allegations of discrimination by flight attendants, and senior management's response to the volume of such complaints is relevant to the issues of hostility and reckless indifference, as discussed above. Frontier's objection, which states no facts to explain its broad allegations, is improper boilerplate. *See Caballero,* at *13. Frontier should be ordered to respond to the request by a certain deadline.

**RFP No. 13:** Please produce all **Documents/ESI** that contain, describe, or refer to communications between **Frontier Customer Relations Department** and **Frontier Inflight Management** about how **Frontier Customer Relations Department** should respond to **Discrimination Complaints**.

**RESPONSE:** Frontier objects to Request No. 13 because it is overbroad, unduly burdensome, not proportional to the needs of this case, and not limited temporally. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in the text of the prior complaints that have been produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at *20 (W.D. Wash. July 31, 2019); *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.*, No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009); *Schwartz v. New Castle Corp.*, No. 96-17178, 1997 U.S. App. LEXIS 33701, at *5 (9th Cir. Nov. 26, 1997).

**Argument**: RFP 13 asks for any documents that show whether Customer Relations and Inflight Management discussed the large number of flight attendant-involved race discrimination complaints and what could be done about them. It is relevant to corporate hostility and reckless indifference as discussed

above. Frontier's objection, which states no facts to explain its broad allegations, is improper boilerplate.

*See Caballero,* at *13. Frontier should be ordered to respond to the request by a certain deadline.

**RFP No. 14:** Please produce all **Documents/ESI** that contain, describe, or refer to communications between **Frontier Customer Relations Department** and **Frontier Inflight Management** about how **Frontier Customer Relations Department** should categorize, collect, internally file, or describe **Discrimination Complaints**.

**RESPONSE:** Frontier objects to Request No. 14 because it is overbroad, unduly burdensome, not proportional to the needs of this case, and not limited temporally. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in the text of the prior complaints that have been produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.,* No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at *20 (W.D. Wash. July 31, 2019); *Walech v. Target Corp., No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); Acton v. Target Corp., No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009); Schwartz v. New Castle Corp., No. 96-17178, 1997 U.S. App. LEXIS 33701, at *5 (9th Cir. Nov. 26, 1997).*

**Argument:** RFP 14 is relevant because it seeks any documents that might demonstrate that Inflight Management was involved in instructing Customer Relations to use misleading descriptions in race discrimination complaints. Again, it is relevant to the issues of corporate hostility and reckless indifference discussed above. Frontier's objection, which states no facts to explain its broad allegations, is improper boilerplate. *See Caballero,* at *13. Frontier should be ordered to respond to the request by a certain deadline.

**RFP No. 15:** Please produce all **Documents/ESI** that contain, describe, or refer to communications between **Frontier Customer Relations Department** and **Frontier Inflight Management** about any federal law or laws that prohibit discrimination against passengers or customers on account of, *inter alia,* their races or ethnicities.

**RESPONSE:** Frontier objects to Request No. 15 because it is overbroad, unduly burdensome, not relevant or proportional to the needs of this case, and not limited temporally. *See Walech v. Target Corp.,* No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009).

**Argument:** RFP 15 is relevant to obtain any documents showing communications that would reveal awareness of the federal discrimination laws in the department that process race discrimination complaints

and the department that manages flight attendants, and to see if the two departments discussed how to factor those laws into their respective duties. It is relevant to corporate hostility and reckless indifference as discussed above. Frontier's objection, which states no facts to explain its broad allegations, is improper boilerplate. *See Caballero,* at *13. Frontier should be ordered to respond to the request by a certain deadline.

**RFP No. 16:** Please produce all **Documents/ESI** that contain, describe, or refer to communications between **Frontier Customer Relations Department** and **Frontier Inflight Management** on the subject of what actions **Frontier Customer Relations Department** should or should not take to investigate or follow up on any **Discrimination Complaints** beyond, or in addition to, communicating with the persons making the **Discrimination Complaints** and/or offering such persons coupons to be applied to the costs of future travel.

**RESPONSE:** Frontier objects to Request No. 16 because it is overbroad, unduly burdensome, not relevant or proportional to the needs of this case, and not limited temporally. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in the text of the prior complaints that have been produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at *20 (W.D. Wash. July 31, 2019); *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009); *Schwartz v. New Castle Corp.*, No. 96-17178, 1997 U.S. App. LEXIS 33701, at *5 (9th Cir. Nov. 26, 1997).

**Argument:** RFP 16 seeks documents that would establish Inflight Management's role in dictating "the process" that restricts investigations of race discrimination complaints to Frontier's own employees, and also the policy of dissuading complainants from taking further action by offering them low value coupons for future travel. It is relevant to corporate hostility and reckless indifference as discussed above. Frontier's objection, which states no facts to explain its broad allegations, is improper boilerplate. *See Caballero,* at *13. Frontier should be ordered to respond to the request by a certain deadline.

**RFP No. 17:** Please produce all **Documents/ESI** that contain, describe, or refer to communications between **Frontier Executive Management** and **Frontier Inflight Management** about the volume and/or frequency of **Discrimination Complaints** that **Frontier** has received or is receiving.

**RESPONSE:** Frontier objects to Request No. 17 because it is overbroad, unduly burdensome, not relevant or proportional to the needs of this case, and not limited temporally. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in the text of the prior complaints that have been produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at *20 (W.D. Wash. July 31, 2019); *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009); *Schwartz v. New Castle Corp.*, No. 96-17178, 1997 U.S. App. LEXIS 33701, at *5 (9th Cir. Nov. 26, 1997).

**Argument:** In recognition of the fact that a significant portion of the race discrimination complaints involve flight attendants, RFP 17 seeks any documents evidencing communications between Frontier's senior management and Inflight Services about the frequency and volume of such complaints. It is relevant to corporate hostility and reckless indifference as discussed above. Frontier's objection, which states no facts to explain its broad allegations, is improper boilerplate. *See Caballero,* at *13. Frontier should be ordered to respond to the request by a certain deadline.

**RFP No. 18:** Please produce all **Documents/ESI** that contain, describe, or refer to communications between **Frontier Executive Management** and **Frontier Inflight Management** about how **Frontier** could reduce the number and/or frequency of **Discrimination Complaints** that **Frontier** receives.

**RESPONSE:** Frontier objects to Request No. 18 because it is overbroad, unduly burdensome, not relevant or proportional to the needs of this case, and not limited temporally. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in the text of the prior complaints that have been produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at *20 (W.D. Wash. July 31, 2019); *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009); *Schwartz v. New Castle Corp.*, No. 96-17178, 1997 U.S. App. LEXIS 33701, at *5 (9th Cir. Nov. 26, 1997).

**Argument:** Again, this RFP is relevant to corporate hostility and reckless indifference as discussed above. Frontier's objection, which states no facts to explain its broad allegations, is improper boilerplate. *See Caballero,* at *13. Frontier should be ordered to respond to the request by a certain deadline.

**RFP No. 19:** Please produce all **Documents/ESI** that contain, describe, or refer to communications between **Frontier Executive Management** and **Frontier Inflight Management** about any federal law or laws that prohibit discrimination against passengers or customers on account of, *inter alia,* their races or ethnicities.

**RESPONSE:** Frontier objects to Request No. 19 because it is overbroad, unduly burdensome, not relevant or proportional to the needs of this case, and not limited temporally. *See Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009).

**Argument:** RFP 19 seeks documents that would show that Frontier's senior management and Inflight Services were aware of the legal implications of discrimination by flight attendants, but chose not to do anything to stop continued discrimination. It is relevant to corporate hostility and reckless indifference as discussed above. Frontier's objection, which states no facts to explain its broad allegations, is improper boilerplate. *See Caballero,* at *13. Frontier should be ordered to respond to the request by a certain deadline.

**RFP No. 20:** Please produce all **Documents/ESI** that contain, describe, or refer to communications between **Frontier Executive Management** and **Frontier Inflight Management** about the "Guidance for Airline Personnel on Non-discrimination in Air Travel" and related documents released by **DOT** on or about January 13, 2017, which have been marked in this civil action with Bates numbers P000748 through P000764.

**RESPONSE:** Frontier objects to Request No. 20 because it is overbroad, unduly burdensome, not relevant or proportional to the needs of this case, and not limited temporally. *See Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009).

**Argument:** RFP 20 is more specific than RFP 19, seeking documents that would show how senior management and Inflight Management chose to respond to the DOT's guidance document reminding airlines and their employees of their legal duty to protect passenger's civil rights.  It is relevant to corporate hostility and reckless indifference as discussed above. Frontier's objection, which states no facts to explain

its broad allegations, is improper boilerplate. *See Caballero,* at *13. Frontier should be ordered to respond to the request by a certain deadline.

**RFP No. 21:** Please produce all **Documents/ESI** that contain, describe, or refer to communications between **Frontier Executive Management** and **Frontier Inflight Management** about the "Blue Lightning Initiative."

**RESPONSE:** Frontier objects to Request No. 21 because it is overbroad, unduly burdensome, not relevant or proportional to the needs of this case, and not limited temporally. *See Walech v. Target Corp.,* No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009).

**Argument:** The Blue Lightning Initiative ("BLI") is a federal program that trains aviation personnel to spot suspected human trafficking victims. At the time of the events alleged in the Third Amended Complaint, upon information and belief, Frontier was not an active participant in BLI, although it now is. Documents discussing BLI are relevant because they may shed light on the reasons for Frontier's decision to provide different instructions on trafficking to its flight attendants, that omitted any anti-discrimination factors. The flight attendants who labeled Plaintiffs "the situation" initially claimed to be following Frontier's instructions. Frontier's objection, which states no facts to explain its broad allegations, is improper boilerplate. *See Caballero,* at *13. Frontier should be ordered to respond to the request by a certain deadline.

**RFP No. 22:** Please produce all **Documents/ESI** that contain, describe, or refer to communications between **Frontier Executive Management** and **Frontier Board of Directors** about **Discrimination Complaints**.

**RESPONSE:** Frontier objects to Request No. 22 because it is overbroad, unduly burdensome, not relevant or proportional to the needs of this case, and not limited temporally. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in the text of the prior complaints that have been produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.,* No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at *20 (W.D. Wash. July 31, 2019); *Walech v. Target Corp.,* No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash.

Oct. 16, 2009); *Schwartz v. New Castle Corp.*, No. 96-17178, 1997 U.S. App. LEXIS 33701, at *5 (9th Cir. Nov. 26, 1997).

**Argument:** Documents containing discussions about race discrimination complaints at the highest levels of Frontier's corporate governance are relevant to the issues of hostility and reckless disregard discussed above, as they are likely to reveal Frontier's corporate state of mind on the subject. To the extent the Court requires any temporal restriction, it should include the period of current ownership that began in December, 2013. Frontier's objection, which states no facts to explain its broad allegations, is improper boilerplate. *See Caballero,* at *13. Its "collateral relevance" argument is invalid as discussed above. Frontier should be ordered to respond to the request by a certain deadline.

> **RFP No. 23:** Please produce all **Documents/ESI** that contain, describe, or refer to communications between **Frontier Executive Management** and **Frontier Board of Directors** about discrimination against passengers or other customers on the basis of, *inter alia*, race or ethnicity.

> **RESPONSE:** Frontier objects to Request No. 23 because it is overbroad, unduly burdensome, not relevant or proportional to the needs of this case, and not limited temporally. *See Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009).

**Argument:** RFP 23 expands the relevant inquiry of RFP 22 beyond just complaints to the subject of race and ethnicity discrimination in general. It is also relevant to hostility and reckless disregard. Frontier's objection, which states no facts to explain its broad allegations, is improper boilerplate. *See Caballero,* at *13. Frontier should be ordered to respond to the request by a certain deadline.

> **RFP No. 24:** Please produce all **Documents/ESI** that contain, describe, or refer to communications between **Frontier Executive Management** and **Frontier Board of Directors** about how **Frontier** could reduce the number and/or frequency of **Discrimination Complaints**.

> **RESPONSE:** Frontier objects to Request No. 24 because it is overbroad, unduly burdensome, not relevant or proportional to the needs of this case, and not limited temporally. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in the text of the prior complaints that have been produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S.

Dist. LEXIS 127944, at *20 (W.D. Wash. July 31, 2019); *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009); *Schwartz v. New Castle Corp.*, No. 96-17178, 1997 U.S. App. LEXIS 33701, at *5 (9th Cir. Nov. 26, 1997).

**Argument:** RFP 24 focuses on any documents that contain discussions at the highest level of ways the company could reduce its high number of discrimination complaints. Again, it is relevant to hostility and reckless indifference. Frontier's objection, which states no facts to explain its broad allegations, is improper boilerplate. *See Caballero,* at *13. Its "collateral relevance" argument is invalid as discussed above. Frontier should be ordered to respond to the request by a certain deadline.

**RFP No. 25:** Please produce all **Documents/ESI** that contain, describe, or refer to communications between **Frontier Executive Management** and **Frontier Board of Directors** about any federal law or laws that prohibit discrimination against passengers or customers on account of, *inter alia*, their races or ethnicities.

**RESPONSE:** Frontier objects to Request No. 25 because it is overbroad, unduly burdensome, not relevant or proportional to the needs of this case, and not limited temporally. *See Walech v. Target Corp.*, No. C11- 254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009).

**Argument:** RFP 25 seeks documents that show that Frontiers' upper level of governance was aware of the federal laws protecting certain groups, which is relevant to hostility and reckless indifference. Frontier's objection, which states no facts to explain its broad allegations, is improper boilerplate. *See Caballero,* at *13. Frontier should be ordered to respond to the request by a certain deadline.

**RFP No. 26:** Please produce all **Documents/ESI** that contain, describe, or refer to communications between **Frontier Executive Management** and **Frontier Board of Directors** about the "Guidance for Airline Personnel on Non-discrimination in Air Travel" and related documents released by **DOT** on or about January 13, 2017, which have been marked in this civil action with Bates numbers P000748 through P000764.

**RESPONSE:** Frontier objects to Request No. 26 because it is overbroad, unduly burdensome, not relevant or proportional to the needs of this case, and not limited temporally. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in the text of the prior complaints that have been

produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at *20 (W.D. Wash. July 31, 2019); *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009); *Schwartz v. New Castle Corp.*, No. 96-17178, 1997 U.S. App. LEXIS 33701, at *5 (9th Cir. Nov. 26, 1997).

**Argument:** Similar to RFP 25, RFP 26 seeks documents showing the reaction of Frontier's upper levels of corporate governance to the DOT's specific guidance publication that reminded airlines and their employees of their legal obligation to protect passengers' civil rights. It is relevant to hostility and reckless indifference. Frontier's objection, which states no facts to explain its broad allegations, is improper boilerplate. *See Caballero,* at *13. Its "collateral relevance" argument is invalid as discussed above. Frontier should be ordered to respond to the request by a certain deadline.

> **RFP No. 27:** Please produce all **Documents/ESI** that contain, describe, or refer to communications between **NAACP** and **Frontier Executive Management** about discrimination against passengers or other customers on the basis of, *inter alia*, race or ethnicity.

> **RESPONSE:** Frontier objects to Request No. 27 because it is overbroad, unduly burdensome, not relevant or proportional to the needs of this case, and not limited temporally. *See Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009).

**Argument:** The NAACP has been active in issuing advisories to persons of color to avoid certain travel, including on specific airlines. *See,* "N.A.A.C.P. Advisory on American Airlines Warns Black Travelers to Steer Clear," The New York Times, October 25, 2017, https://www.nytimes.com/2017/10/25/travel/naacp-american-airlines.html (last visited May 3, 2022). Given its high profile activity on this specific subject, this request seeks any documents containing communications between that organization and Frontier's senior management on the subject. This is relevant to hostility and reckless indifference. Frontier's objection, which states no facts to explain its broad allegations, is improper boilerplate. *See Caballero,* at *13. Frontier should be ordered to respond to the request by a certain deadline.

**RFP No. 28:** Please produce all **Documents/ESI** that contain, describe, or refer to communications between **NAACP** and **Frontier Board of Directors** about discrimination against passengers or other customers on the basis of, *inter alia*, race or ethnicity.

**RESPONSE:** Frontier objects to Request No. 28 because it is overbroad, unduly burdensome, not relevant or proportional to the needs of this case, and not limited temporally. *See Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009).

**Argument:** RFP 28 is identical to RFP 27, except it is directed at documents showing communications with the Board of Directors. It is relevant for the same reasons. Frontier's objection, which states no facts to explain its broad allegations, is improper boilerplate. *See Caballero,* at *13. Frontier should be ordered to respond to the request by a certain deadline.

**RFP No. 29:** Please produce all **Documents/ESI** that contain, describe, or refer to communications between **DOT** and **Frontier Executive Management** about discrimination against passengers or other customers on the basis of, *inter alia*, race or ethnicity.

**RESPONSE:** Frontier objects to Request No. 29 because it is overbroad, unduly burdensome, not relevant or proportional to the needs of this case, and not limited temporally. *See Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009).

**Argument:** The DOT receives complaints from passengers aggrieved by race discrimination, and, in fact, many of the complaints produced by Frontier were initially filed with the DOT. Frontier did not include with its production any of its corporate communications with DOT on the subject, aside from reproducing in its notes the content of standard cover letters from the DOT forwarding the complaints. This RFP seeks documents containing additional communications with the DOT, which are relevant to hostility and reckless indifference. Frontier's objection, which states no facts to explain its broad allegations, is improper boilerplate. *See Caballero,* at *13. Frontier should be ordered to respond to the request by a certain deadline.

**RFP No. 30:** Please produce all **Documents/ESI** that contain, describe, or refer to communications between **DOT** and **Frontier Board of Directors** about discrimination against passengers or other customers on the basis of, *inter alia*, race or ethnicity.

**RESPONSE:** Frontier objects to Request No. 30 because it is overbroad, unduly burdensome, not relevant or proportional to the needs of this case, and not limited temporally. *See Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009).

**Argument:** RFP 30 seeks the same type of documents as RFP 29, except between DOT and Frontier's Board of Directors. The relevance is the same as RFP 29. Frontier's objection, which states no facts to explain its broad allegations, is improper boilerplate. *See Caballero,* at *13. Frontier should be ordered to respond to the request by a certain deadline.

**RFP No. 31:** Please produce all **Customer Relations Templates** that are within **Frontier**'s care, custody or control.

**RESPONSE:** Frontier objects to Request No. 31 because it is overbroad, unduly burdensome, not relevant or proportional to the needs of this case, and not limited temporally. *See Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009).

**Argument:** Current and former members of the Denver Team have testified in depositions that they are/were instructed to respond to race discrimination complaints using "templates" of canned text. The one most frequently used informs the passenger, based on scant or even no investigation of the passenger's complaint, that Frontier does not believe any discrimination occurred. Plaintiffs are seeking all of the templates principally to see whether any exist that *do* acknowledge the possibility of actual discrimination. That is relevant to hostility and reckless indifference. Plaintiffs' counsel specifically asked a member of the Denver Team, Elizabeth Zimmerman, what language should be used in requesting the full set of templates, and she testified "the customer relations templates." Frontier's objection, which states no facts to explain its broad allegations, is improper boilerplate. *See Caballero,* at *13. Frontier should be ordered to respond to the request by a certain deadline.

**RFP No. 32:** Please produce all **Documents/ESI** that contain, describe, or refer to instructions on the use of **Customer Relations Templates** by **Frontier Customer Relations Department**.

**RESPONSE:** Frontier objects to Request No. 32 because it is overbroad, unduly burdensome, not relevant or proportional to the needs of this case, and not limited temporally. *See Walech v.*

*Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at \*19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at \*8-9 (W.D. Wash. Oct. 16, 2009).

**Argument:** RFP 32 seeks documents containing instructions on when certain templates should be used. For example, when should the template denying that any discrimination occurred be employed in a response to a complaint, and on what evidence? This is relevant to hostility and reckless indifference. Frontier's objection, which states no facts to explain its broad allegations, is improper boilerplate. *See Caballero,* at \*13. Frontier should be ordered to respond to the request by a certain deadline.

> **RFP No. 33:** Please produce all **Documents/ESI** that contain, describe, or refer to any evidence obtained by **Frontier** or any agent of **Frontier** that relates to Plaintiff Peter DelVecchia's allegation that Defendant Scott Warren hit, shoved or otherwise made physical contact with Peter DelVecchia aboard **Flight 2067**.

> **RESPONSE:** Frontier objects to Request No. 33 to the extent it seeks information protected by the attorney-client privilege or work-product doctrine. Subject to and without waiving such objection, *see* the November 11, 2019 deposition of Christopher Campbell, the December 13, 2019 deposition of Scott Warren, the December 3, 2019 deposition of Chelsie Sakurada, and the June 17, 2021 deposition of Christopher Higgins to the extent they contain responsive information.

**Argument:** Peter DelVecchia was hit so hard that he suffered a concussion. Upon information and belief, the local police interviewed other passengers who confirmed that Defendant Warren hit him repeatedly as he was sleeping in his seat. Warren has denied the attack, which is not surprising, but Frontier might be in possession of evidence that disputes Warren's account. If so, it has a duty to reveal it in discovery. Although it objects based on attorney-client privilege and work produce immunity, it utterly fails to meet its obligations to describe withheld documents under Fed.R.Civ.P. 26(b)(5), nor did it produce a privilege log or move for a protective order. Its objection should therefore be deemed waived. *See Cross v. Jaeger,* Case No. 3:13-cv-00433-MMD-WGC (D. Nev., Mar. 27, 2015), slip op. at 4-5. Since it also provided a response, the objection should be deemed waived under the cases cited in the Argument to RFP 1. The deposition testimony cited is a subterfuge: with the exception of Warren and Campbell, none of the others was in a position to have seen the attack. Campbell testified that he was folded over at the

time, with Warren leaning across his back, and did not see anything. Frontier's objection based on privilege and work product suggests that it possesses more evidence that the referenced testimony.

**RFP No. 34:** Please produce all **Documents/ESI** that contain, describe, or refer to any effect that the change in software described by Attorney Brian Maye during the parties' Meet and Confer telephone conference held on February 18, 2022, which he described as occurring approximately 15 months prior to the date of the telephone conference, would have or did have on **Frontier**'s ability to identify the employees involved in the complaints of discrimination that **Frontier** has produced in discovery in this action, EXCLUDING any such **Documents/ESI** that were created on or after February 18, 2022.

**RESPONSE:** Frontier objects to Request No. 34 because it is overbroad, unduly burdensome, not relevant or proportional to the needs of this case, and not limited temporally. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in the text of the prior complaints that have been produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at *20 (W.D. Wash. July 31, 2019); *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.*, No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009); *Schwartz v. New Castle Corp.*, No. 96-17178, 1997 U.S. App. LEXIS 33701, at *5 (9th Cir. Nov. 26, 1997).

**Argument:** RFP 34 seeks documents that would reveal Frontier's knowledge that destruction of the duty roster database would thwart Plaintiffs' efforts to determine whether any flight attendants or pilots were ever disciplined for violating the anti-discrimination policies that Frontier claims to enforce. That information is relevant to the elements of Plaintiffs' spoliation motion that they intend to file once they have conducted appropriate discovery of the details. Frontier's objection, which states no facts to explain its broad allegations, is improper boilerplate. *See Caballero,* at *13. Frontier should be ordered to respond to the request by a certain deadline.

## II.    PETER DELVECCHIA'S FOURTH INTERROGATORIES

1. If **Frontier** denies Request Number 5 and/or Request Number 6 of Plaintiffs' Fourth Requests for Admissions to Defendant Frontier Airlines, Inc. that were served on February 22, 2022, please identify by full name and employee number each and every flight attendant disciplined by **Frontier** because of a complaint by a passenger claiming racial discrimination by the flight

attendant, and for each such flight attendant, please provide the specific details of the disciplinary action(s) imposed and the date(s) of its (or their) imposition.

**ANSWER:** Frontier objects to Interrogatory No. 1 because it is overbroad, unduly burdensome, and not proportional to the needs of this case. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in the text of the prior complaints that have been produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at *20 (W.D. Wash. July 31, 2019); *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.*, No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009); *Schwartz v. New Castle Corp.*, No. 96-17178, 1997 U.S. App. LEXIS 33701, at *5 (9th Cir. Nov. 26, 1997).

**Argument:**   This interrogatory simply asks Frontier to identify which employees were disciplined for complaints of race discrimination, and how, if Frontier denies RFAs 5 and/or 6, above. It is relevant to whether Frontier enforces its anti-discrimination policies, whether it fosters an environment in which discrimination is not punished, which resulted in Plaintiffs being discriminated against, and also to the issues of hostility and reckless indifference. Frontier's objection, which states no facts to explain its broad allegations, is improper boilerplate. *See Caballero,* at *13. Frontier should be ordered to respond to the request by a certain deadline.

## CONCLUSION

For all the reasons set forth above, Frontier should be ordered to respond to the 51 discovery requests by a certain deadline, and Plaintiffs should be awarded their expenses of making this Motion to Compel, including attorneys' fees.

DATED this 5th day of May, 2022.

/s/ John D. McKay
**Attorney for Plaintiffs Peter DelVecchia**
**And A.D., a Minor**
