## **EXHIBIT D**

**Definitions for Peter DelVecchia's Seventh
Requests for Production to Frontier**

# **DEFINITIONS**

1. "**Frontier**" shall mean Defendant Frontier Airlines, Inc., and/or its parent entities known as Frontier Airlines Holdings, Inc. and Frontier Group Holdings, Inc., including any officers, directors, employees and/or agents thereof acting on behalf of any of those entities.

2. "**Documents/ESI**" shall mean any collection or compilation of words and/or data, in any form or format whatsoever, including, without limitation, photographic images, electronic recordings, handwritten documents, typed documents, electronic video recordings, text messages, Tweets, emails, letters (regardless of the method of transmission), inter-office memoranda, intra-office memoranda, and/or computer-generated data compilations within **Frontier**'s care, custody or control. For purposes of these Seventh Requests for Production, the definition of "**Documents/ESI**" shall not include any such items that were created prior to January 1, 2014 (unless the training materials requested in Request No. 1 were created prior to that date, in which event the training materials shall be considered "**Documents/ESI**" solely for purposes of responding to Request No. 1).

3. "**Frontier Executive Management**" shall mean **Frontier**'s Chief Executive Officer (who is currently identified on **Frontier**'s website as being Barry L. Biffle, but also including any of his predecessors or successors in that office, as to their times in office), Executive Vice President and Chief Financial Officer (who is currently identified on **Frontier**'s website as being James G. Dempsey, but also including any of his predecessors or successors in that office as to their times in office), Senior Vice President and Chief Counsel (who is currently identified on **Frontier**'s website as being Howard M. Diamond, but also including any of his predecessors or successors in that office as to their times in office), Senior Vice President, Customers (who is currently identified on **Frontier**'s website as being Jake F. Filene, but also including any of his predecessors or successors in that office as to their times in office), Senior Vice President, Commercial (who is currently identified on **Frontier**'s website as being Daniel M. Shurz, but also including any of his predecessors or successors in that office as to their times in office), Senior Vice President, Operations (who is currently identified on **Frontier**'s website as being Trevor J. Stedke, but also including any of his predecessors or successors in that office as to their times in office), Chief Accounting Officer (who is currently identified on **Frontier**'s website as being Mark C. Mitchell, but also including any of his predecessors or successors in that office as to their times in office), and Chief Information Officer (who is currently identified on **Frontier**'s website as being Craig R. Maccubbin, but also including any of his predecessors or successors in that office as to their times in office), collectively or individually. "**Frontier Executive Management**" shall also mean any Personal Assistant or other agent who receives (or received at any time in the past) or generates (or generated at any time in the past) communications on behalf of any of the office holders identified in the preceding sentence.

4. "**Frontier Board of Directors**" shall mean the Chairman of the Board and individual Directors who comprise the current Board of Directors of **Frontier** as identified on

**Frontier**'s website, as well as any former Chairman of the Board or former individual Directors who previously served on **Frontier**'s Board of Directors, as to their times in office. "**Frontier Board of Directors**" shall also mean any Personal Assistant or other agent who receives (or received at any time in the past) or generates (or generated at any time in the past) communications on behalf of any of the persons identified in the preceding sentence.

5. "**Frontier Customer Relations Department**" shall mean the division or department of **Frontier** that is responsible for responding to, *inter alia*, complaints by customers or passengers of **Frontier** claiming racial or ethnic discrimination, and including, without limitation, **Frontier**'s current and former Directors of Customer Relations, current and former employees who were assigned to work under any Director of Customer Relations, and current and former members of the "Denver Team" described in the depositions of Elizabeth Zimmerman and Matthew Anderson taken in this civil action, collectively or individually. "**Frontier Customer Relations Department**" shall also mean any Personal Assistant or other agent who receives (or received at any time in the past) or generates (or generated at any time in the past) communications on behalf of any of the persons identified in the preceding sentence.

6. "**Customer Relations Templates**" shall mean any standardized collection of words or phrases formulated for use by the **Frontier Customer Relations Department** as "cut-and-paste" insertions into responses to customer or passenger complaints, including, without limitation, the templates described in the depositions of Elizabeth Zimmerman and Matthew Anderson taken in this civil action that are or were available for use in the "CRM" and "RightNow Technology" software used by the **Frontier Customer Relations Department**.

7. "**Frontier Inflight Management**" shall mean the managerial employees of the division or department of **Frontier** that is responsible for managing and training flight attendants and base supervisors, including, without limitation, **Frontier**'s current and former holders of the titles, "Director, Inflight," "Manager, Inflight," "Manager, Inflight Policies & Procedures," and "Manager, Inflight Training" (former holders of those offices are included only as to their times in those offices), collectively or individually. "**Frontier Inflight Management**" shall also mean any Personal Assistant or other agent who receives (or received at any time in the past) or generates (or generated at any time in the past) communications on behalf of any of the persons identified in the preceding sentence.

8. "**DOT**" shall mean the United States Department of Transportation including, without limitation, its Office of the Secretary of Transportation, its Office of General Counsel, its Office of the Director of Aviation Consumer Protection, its Office of Aviation Enforcement and Proceedings, and any current or former employees of that Department and those offices.

9. "**NAACP**" shall mean the National Association for the Advancement of Colored People, including any of its current or former employees, attorneys, and/or agents.

10. "**Discrimination Complaints**" shall mean any complaints made to **Frontier** by any passengers or other customers of **Frontier** that describe or refer to discrimination, racial profiling, or disparate treatment of the passengers or other customers on the basis of their

races, ethnicities, or any other characteristics that are protected under the Civil Rights laws of the United States.

11. "**Flight 2067**" shall mean the flight designated as Frontier Airlines Flight 2067 that commenced on March 28, 2019 (Eastern Time) at Raleigh-Durham International Airport (RDU) in North Carolina and landed later that same date (Pacific Time) at McCarran International Airport (LAS) in Nevada.