1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CHARLES A. MICHALEK, ESQ.
Nevada Bar No. 5721
ROGERS, MASTRANGELO, CARVALHO & MITCHELL
700 South Third Street
Las Vegas, Nevada 89101
Phone: (702) 383-3400
Email: cmichalek@rmcmlaw.com

Lawrence S. Gosewisch (admitted *pro hac vice*)
Brian T. Maye (admitted *pro hac vice*)
Matthew D. Martin (admitted *pro hac vice*)
ADLER MURPHY & McQUILLEN LLP
20 South Clark Street, Suite 2500
Chicago, Illinois 60603
Phone: (312) 345-0700
Email: lgosewisch@amm-law.com
         bmaye@amm-law.com
         mmartin@amm-law.com

***Attorneys for Defendants Frontier Airlines, Inc.,
Scott Warren, and Rex Shupe***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| PETER DELVECCHIA, individually and as next friend of A.D., a Minor,<br><br>            Plaintiffs,<br><br>v.<br><br>FRONTIER AIRLINES, INC., et al.,<br><br>            Defendants. | Case No.: 2:19-cv-01322-KJD-DJA<br><br>**Defendant's Response to Plaintiffs' Fifth Motion to Compel** |

**DEFENDANT FRONTIER AIRLINES, INC.'S**
**RESPONSE TO PLAINTIFFS' FIFTH MOTION TO COMPEL**

Defendant FRONTIER AIRLINES, INC. ("Frontier"), by its undersigned counsel, submits this Response to Plaintiffs' Fifth Motion to Compel (ECF No. 170). Frontier's Response is based upon the attached Memorandum of Points and Authorities, the pleadings on file, and any oral argument the Court may permit.

1   Date: May 19, 2022                              Respectfully submitted,

2                                                   **FRONTIER AIRLINES, INC.**

3                                                   */s/Matthew D. Martin*

4                                                   Lawrence S. Gosewisch (*admitted pro hac vice*)
                                                    Brian T. Maye (admitted *pro hac vice*)

5                                                   Matthew D. Martin (admitted *pro hac vice*)
                                                    ADLER MURPHY & McQUILLEN LLP

6                                                   20 South Clark Street, Suite 2500
                                                    Chicago, Illinois 60603

7                                                   Phone: (312) 345-0700
                                                    Email: lgosewisch@amm-law.com

8                                                           bmaye@amm-law.com

9                                                           mmartin@amm-law.com

10                                                  Charles A. Michalek (Nevada Bar No. 5721)
                                                    ROGERS, MASTRANGELO, CARVALHO &

11                                                  MITCHELL
                                                    700 South Third Street

12                                                  Las Vegas, Nevada 89101
                                                    Phone: (702) 383-3400

13                                                  Email: cmichalek@rmcmlaw.com

14

15                    **FRONTIER'S MEMORANDUM OF POINTS AND AUTHORITIES**

16  **I.      Introduction**

17          Plaintiffs continue to focus their disproportional discovery efforts on learning the details of

18  Frontier's investigations into unrelated passenger complaints that are only collaterally relevant to

19  the issues in this case. Frontier has complied with the Court's previous rulings and has undertaken

20  extensive efforts to gather and produce thousands of pages of records. Plaintiffs insist they need

21  more but offer no valid justification for expanding the scope of their already broad investigation.

22

23          This case is about Plaintiffs' specific allegations that Frontier's crewmembers carried out a

24  plan to discriminate against them based on the crewmembers' racial animus toward "biracial family

25  units." ECF 152, pp. 19-21. The Court ordered Frontier to produce records for unrelated "passenger

26  discrimination complaints," but – paramount for present purposes – denied Plaintiffs' request to

27  compel the production of **"any Documents/ESI containing or describing actions taken by**

28  **Frontier's management in response to each complaint."** ECF 77, p. 7; ECF 83, p. 4. Thereafter,

in denying Plaintiffs' back-to-back motions for sanctions, the Court stated that Plaintiffs had failed to adequately explain how contacting other passengers who complained of discrimination could reveal evidence relevant to the allegations at bar. ECF 150, p. 5, n. 2.

Plaintiffs now claim Frontier's counsel admitted to the spoliation of "relevant evidence" that would identify the specific crewmembers who worked each flight associated with the unrelated passenger complaints. Plaintiffs' allegations of spoliation sparked their latest round of discovery requests, and the instant Fifth Motion to Compel argues that Frontier has wrongly refused to admit facts and provide the documents Plaintiffs need to support their forthcoming spoliation motion.

Frontier will respond to the 51 disputed discovery requests without seeking leave to exceed the Court's page limit. Much of this ground has already been tread. In the interest of brevity, Frontier will build on its prior briefs and incorporate specific legal arguments already raised. Based on its prior arguments and those raised below, Frontier asks the Court to enter an order denying Plaintiffs' Fourth and Fifth Motions to Compel.

## II.    Plaintiffs Misstate the Court's Key Ruling

The first step in unraveling Plaintiffs' misguided arguments is to clarify the Court's key ruling at the crux of the Fifth Motion to Compel. Previously, in their Second Amended Motion to Compel (ECF 77, p 7), Plaintiffs sought production of the following:

> **No. 47**[1]: All Documents/ESI containing and/or describing any complaint(s) received by Frontier since January 1, 2009 that allege any act of discrimination on the basis of race conducted or condoned by a Frontier employee, including, without limitation, **a copy of each complaint and any Documents/ESI containing or describing actions taken by Frontier's management in response to each complaint. (Emphasis added)**

The Court granted Plaintiffs' RFP No. 47 in part, but also expressly denied it in part. ECF 83, p. 4. The portion expressly denied is what matters here. Plaintiffs misstate the Court's ruling,

---

[1] At ECF 77, p. 7, Plaintiffs mislabeled their request as RFP No. 45. In fact, it was RFP No. 47.

suggesting the Court simply "ordered Frontier to respond to Plaintiffs' RFP 47." ECF 170, p. 3.

Plaintiffs' implication is that Frontier was ordered to produce each of the documents requested in

RFP No. 47, including "any Documents/ESI containing or describing actions taken by Frontier's

management in response to each complaint." In fact, the Court ruled as follows:

> "Plaintiffs seek a response to First RFP No. 47 asking for documents related to prior complaints of racial discrimination over the past decade. **Again, Plaintiffs appear to seek some more statements on how Defendant responds to complaints of race discrimination, beyond the policy documentation provided. However, that is more appropriately required via an interrogatory request or deposition testimony. Further, if they seek any complaints that resulted in litigation, that information is publicly available**. Nevertheless, the Court finds that prior complaints of race discrimination are relevant to Plaintiff's Section 1981 claim and will narrow the request to be proportional to the needs of the case as follows: Defendant shall provide a supplemental response of any race discrimination complaints filed by passengers, not employees, over the past 5 years only, and limited geographically to the continental United States. **Therefore, the Court grants in part and denies in part this portion of the Motion**." (Emphasis added) ECF 83, p. 4.

In the emphasized language above, the Court unambiguously denied the portion of RFP No.

47 that requested "any Documents/ESI containing or describing actions taken by Frontier's

management in response to each complaint." See ECF 170, p. 3. RFP No. 47 includes a broad

request for evidence of discrimination complaints during a 10-year period, but RFP No. 47 also

includes two narrow requests for distinct categories of evidence: (1) "a copy of each complaint"

and (2) "any Documents/ESI containing or describing actions taken by Frontier's management in

response to each complaint."

The Court was clear in articulating its differing treatment of Plaintiffs' distinct requests.

RFP No. 47 was granted in part and denied in part. The part that was granted was granted narrowly,

compelling only Frontier's production of "any race discrimination complaints" filed by other

passengers during a five-year span within the continental United States. Everything else included in

RFP No. 47 was denied. Namely, the Court was clear in ruling that Plaintiffs could seek more

information about how Frontier responds to complaints of race discrimination via interrogatory

request or deposition testimony, and Plaintiffs could further access any such information made publicly available via complaints that resulted in litigation.

Plaintiffs' recent rash of discovery motions all relate back to their belief that the inches granted by the Court are actually miles. Frontier submits that upon reviewing the record, the Court will see that Plaintiffs' Fifth Motion to Compel rests on the false premise that in addition to producing copies of the unrelated passenger complaints, Frontier was also ordered to produce "any Documents/ESI containing or describing actions taken by Frontier's management in response to each complaint." See ECF 170, p. 3.

## III.    Frontier Has Complied with the Court's Order Regarding Deposition Testimony

In compliance with the Court's ruling discussed above, Frontier has now produced five employees to provide deposition testimony regarding the "actions taken by Frontier's management in response to each complaint." The employees work in customer service positions and were identified in Frontier's records related to the discrimination complaints. Plaintiffs questioned these employees extensively regarding Frontier's corresponding investigations and responses. In their recent Fourth Motion to Compel, Plaintiffs relied on five pages of deposition testimony provided by one such employee, Elizabeth Zimmerman. ECF 164, p. 15. In providing a larger portion of Ms. Zimmerman's testimony, Frontier hopes to elucidate for the court the direction this case has taken.

Ms. Zimmerman's deposition was conducted over two separate days. The five-page portion of the transcript cited by Plaintiffs was taken from the second day. To maintain compliance with the Court's limits on the size of exhibits, Frontier attaches **Exhibit A**, which includes a larger portion of Ms. Zimmerman's testimony, beginning on the second day and continuing up to the section cited by Plaintiffs at ECF 164, p. 15. Due to the confidential information referenced and contained in Exhibit A, Frontier has moved to file the documents under seal and will not discuss them in detail herein. However, a general discussion of the first complaint highlighted by Plaintiffs' counsel provides a helpful illustration of Plaintiffs' litigation strategy. Note that Exhibit A includes

**Exhibit A-1**, which follows the transcript of Ms. Zimmerman's testimony and contains copies of the complaints discussed therein.

The first passenger complaint highlighted by Plaintiffs' counsel involved allegations made to the Department of Transportation. The complainant generally alleges racial discrimination regarding Frontier's enforcement of a policy requiring payment for the use of overhead bins. See Ex. A-1, Bates 1261-1264. Plaintiffs' counsel questioned Ms. Zimmerman about Frontier's response to this complaint at Ex. A, p. 103-116. As the Court can see, counsel focused his questions on establishing that Frontier did not investigate to determine whether the overhead bin policy was enforced equally for minority and white travelers. In other words, Plaintiffs imply that to properly investigate the incident alleged at Ex. A-1, Bates 1261-1264, Frontier should have contacted passengers from the complainant's flight to question them about their race and whether they purchased a ticket that allowed for carry-on stowage in an overhead bin. It is difficult to envision how it would be appropriate for anyone to call a Frontier customer and ask them to identify their race, and there is no connection whatsoever between Plaintiffs' allegations in this case and the complaint alleged at Ex. A-1, Bates 1261-1264.

The exchange referenced in Ms. Zimmerman's testimony demonstrates the parties' fundamental disagreements as to the scope of discoverable evidence in this case. Plaintiffs made their intentions clear in the Fourth Motion to Compel, arguing that "[f]air use of any of the past discrimination complaints in the instant case as evidence of a pattern by Frontier of sweeping legitimate discrimination complaints under the rug requires Plaintiffs to determine whether or not the passenger was complaining about actual legally protected discrimination or something else." ECF 164, p. 15. This is Plaintiffs' long way of saying they want to conduct hundreds of mini-trials to identify valid claims of racial discrimination. According to Plaintiffs, many of the prior passenger complaints are vague and must be investigated to determine whether they are relevant to

Plaintiffs' claims at bar. Frontier disagrees and believes Plaintiffs must provide a valid justification to expand the scope of their investigation.

Frontier respectfully submits that upon examining Exhibit A, the Court will have a better sense of whether Plaintiffs are entitled to the additional discovery they seek in their Fourth and Fifth Motions to Compel. Frontier's intent by discussing Exhibit A in general terms is to help explain the bases of Frontier's objections to Plaintiffs' 51 discovery requests. In further support of those same objections, Frontier hereby incorporates and restates its prior arguments, as though fully stated herein, regarding the standards for proving a claim for intentional racial discrimination under 42 U.S.C. § 1981 (see ECF 140, p. 6-7; 145, p. 4), and also its arguments regarding the limited value of collaterally relevant evidence (see ECF 145, p. 12; ECF 166, p. 6-11).

## IV.  Plaintiffs Fail to Rebut Frontier's Arguments Regarding Collateral Evidence

Another critical aspect of the Fifth Motion to Compel involves the limited value of collaterally relevant evidence. Frontier made its arguments clear in response to Plaintiffs' Fourth Motion to Compel, relying on *Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, (W.D. Wash. July 31, 2019); *Acton v. Target Corp.,* No. C08-1149RAJ, (W.D. Wash. Oct. 16, 2009); and *Walech v. Target Corp.*, No. C11-254 RAJ, (W.D. Wash. Mar. 28, 2012). These cases are on point and Frontier restates its incorporation of prior arguments. See ECF 166, p. 6-11. Plaintiffs attempt to challenge Frontier's position vis-à-vis collateral evidence by pointing to *Fuller v. Idaho Dep't of Corr.,* 865 F.3d 1154 (9th Cir. 2017) and *Heyne v. Caruso,* 69 F.3d 1475 (9th Cir. 1995).

*Caruso* involved a waitress who sued the owner of a restaurant claiming she was fired because she refused his sexual advances. The district court excluded testimony regarding the owner's alleged harassment of other female employees, reasoning that although the testimony was relevant to a hostile work environment claim, it was more prejudicial than probative. *Id*. at 1478. The appellate court reversed, holding there would be no unfair prejudice if the jury were to believe

7

the restaurant owner's sexual harassment of other female employees made it more likely than not that he fired the plaintiff because she refused his sexual advances. *Id*. at 1481.

*Fuller* involved a female probation officer's report that she was raped by a fellow probation officer. The plaintiff argued that her employer's response was to effectively punish her for making the report, but to provide support to the alleged rapist, thus creating a hostile work environment. *Fuller,* 865 F.3d at 1162. In a footnote, the *Fuller* court observed that the employer's knowledge of prior sexual harassment complaints against the alleged rapist was relevant and probative of whether the employer showed a general attitude of disrespect toward its female employees. *Id*. at n. 8.

Plaintiffs curiously argue that the cases cited by Frontier discussing collateral relevance are somehow "at odds" with *Caruso* and *Fuller*. ECF 170. p. 10. Neither *Caruso* nor *Fuller* involves the use of collaterally relevant evidence to support a claim of racial discrimination. Whether an employee bringing a hostile work environment claim alleging sexual misconduct can rely on similar allegations against the same person has no bearing on whether an airline's customer bringing a § 1981 claim against specific crewmembers can rely on complaints of racial discrimination made by other passengers against different crewmembers. The differing claims involve different scenarios, different legal standards, and completely different considerations.

The rule stated in *Karrani*, *Acton*, and *Walech* is simple: § 1981 requires a plaintiff to show intentional discrimination on account of race. A plaintiff who lacks direct evidence of intentional discrimination (as here) can establish pretext based on circumstantial evidence of the defendant's intent. Circumstantial evidence of intentional discrimination must be "specific and substantial" to create an arguable question of fact to survive summary judgment on a § 1981 claim. Evidence of a pattern or practice is only collaterally relevant to private complainants alleging discrete acts of discrimination, meaning the evidence is useful only in limited circumstances when a plaintiff can make a showing to connect a pattern or practice to his or her claims. See ECF 166, p. 6-11.

Frontier submits that the Court allowed Plaintiffs the discovery of collaterally relevant evidence so they could attempt to show some particular pattern or practice that they believe is relevant or somehow connected to their specific claims in this case. Because Plaintiffs have repeatedly failed to make any such showing, there is nothing that warrants their discovery of additional evidence. Plaintiffs' reliance on *Caruso* and *Fuller* is misplaced and does nothing to undermine the sound and practical approach employed by the Courts in *Karrani*, *Acton*, and *Walech*. This Court should follow the cases cited by Frontier.

**V.   Statements Allegedly Made by Frontier's Counsel**

Plaintiffs' Fifth Motion to Compel is based largely on statements allegedly made by Frontier's counsel (Mr. Maye) during a meet-and-confer conference with Plaintiffs' counsel on February 18, 2022. See ECF 170, p. 3. Plaintiffs have forecasted their intent to file a spoliation motion based on Frontier's "intentional destruction of relevant evidence." *Id*. at 4, n. 3.

It is noteworthy that Plaintiffs complain about the spoliation of evidence identifying the particular crewmembers of particular flights even though Plaintiffs have not issued any specific discovery requests for the allegedly spoliated evidence. Nonetheless, Frontier denies the allegation that it intentionally destroyed any evidence, let alone any relevant evidence. Moreover, even assuming that Plaintiffs have accurately conveyed Mr. Maye's comments, it is unclear how those comments are properly before the Court to support an order granting a motion to compel. Frontier again maintains that further discovery into the unrelated prior flights is irrelevant, overburdensome, and not proportional to the needs in this case.

Notwithstanding the points raised above, Frontier asserts the following with regard to Plaintiffs' allegations of spoliation. During the meet-and-confer conference on February 18, 2022, the salient point asserted by Frontier's counsel was that Plaintiffs are not entitled to discover the identities of the flight attendants and pilots associated with the unrelated passenger complaints unless Plaintiffs can first show some type of relevant connections with this case that would warrant

1    further discovery. In that context, Mr. Maye stated his understanding that Frontier's operating
2    software would only support going back 14 months (November 2020) to retrieve information
3    regarding flight crew assignments. Mr. Maye has since followed up with Frontier's management
4    and confirmed that if Frontier is ordered to identify the crewmembers associated with any specific
5    flights, Frontier could (and certainly would) pursue other avenues, however burdensome, and make
6
7    all possible attempts to obtain the information.

8    **VI.    Department of Transportation Statistics**

9        Plaintiffs assert that Frontier's document production reveals 338 race discrimination
10   complaints during a five-year period, which equates to an average of 5.6 complaints per month.
11   ECF 170, p. 3, 27. Without providing any support, Plaintiffs claim this average amounts to an
12   "alarming frequency." ECF 170, p. 27. Plaintiffs also rely on a New York Times article in asserting
13   that that "[t]he NAACP has been active in issuing advisories to persons of color to avoid certain
14   travel, including on specific airlines." *Id.* at p. 44. Plaintiffs argue that Frontier's "high profile
15
16   activity on this specific subject" supports entering an order compelling Frontier to reveal any
17   communications between its senior management and the NAACP. *Id.*

18       A copy of the New York Times article cited by Plaintiffs is attached hereto as **Exhibit B**.
19   The article discusses the NAACP's warning that African Americans should "exercise caution when
20   travelling on American Airlines…" Although the article says nothing about Frontier, Frontier
21   actually agrees with Plaintiffs that the frequency of racial discrimination complaints against other
22
23   airlines has some relevance in this case. To wit, Frontier asks the Court to take judicial notice of
24   two government reports. See *Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S.
25   Dist. LEXIS 127944, at *4-5 (W.D. Wash. July 31, 2019) (taking judicial notice of DOT
26   publications under Fed. R. Evid. 201 and 902(5)).

27       A copy of the DOT's Air Travel Consumer Report for 2018 is attached hereto as **Exhibit C**.
28   The Report includes compilations and statistics for racial discrimination complaints made against

US air carriers. Relevant here, the report shows that in 2018 (the year of the alleged incident in this case), the DOT received only 3 racial discrimination complaints made against Frontier. By comparison, there were 14 such complaints against American Airlines, 10 such complaints against Delta Airlines, 8 such complaints against both Southwest Airlines and United Airlines, and 4 such complaints against Alaskan Airlines. See chart at Ex. C, p. 63.

The Court might understandably question the number of complaints against Frontier made through the DOT as compared to the number made directly to Frontier. In 2019, the US Government Accountability Office prepared a report titled: "Airline Consumer Protections: Information on Selected Airlines' Non-Discrimination Training Programs." A copy of the GAO's report is attached hereto as **Exhibit D**. While Frontier was not one of the airlines selected for analysis by the GAO (see Ex. D, p. 2, n. 7), the report states that DOT officials estimate for every DOT passenger complaint made against an airline, the airline receives about 50 additional complaints internally. Ex. D, p. 5, n. 23.

Frontier does not rely on the reports contained in Exhibits C or D for any reasons other than to rebut Plaintiffs' assertion that Frontier passengers complain of race discrimination with "alarming frequency." In fact, the chart cited in the DOT report shows that in 2018, Frontier compared favorably with other major US air carriers in terms of total race discrimination complaints, and the footnote cited in the GAO report provides the needed context for considering the rate of complaints that Frontier receives internally. Plaintiffs opened the door to this evidence by making unsubstantiated claims about the frequency of Frontier's complaints and citing a New York Times article about the NAACP and American Airlines that has nothing to do with Frontier.

## VII.   Plaintiffs' Discovery Requests

The arguments raised and incorporated above provide the foundation for Frontier's objections to the 51 discovery requests argued in Plaintiffs' Fifth Motion to Compel.

**A. Plaintiffs' Fourth Requests for Admissions**

**RFA Nos. 1-4.** These RFAs involve the admissibility of hearsay evidence and should be reserved for consideration at trial. Moreover, the fundamental problem with each RFA is that Plaintiffs sweep thousands of documents containing multiple layers of hearsay statements into a single broad request. See, *e.g., Parker v. Orthofix Inc.*, No. 3:17-cv-248-SI at *11 (D. Or. Feb. 14, 2019) (analyzing the different hearsay exceptions needed to admit a doctor's records into evidence). This problem is demonstrated by RFA No. 4, which seeks an admission that Frontier "made" business records **"at or near the time of the matters described in them by someone with knowledge of those matters..."** When a Frontier employee fields a passenger complaint and memorializes the passenger's allegations as part of a Frontier business record, the employee cannot attest that the business record was "made" at or near the time of the matters described by the passenger. To do so would effectively admit that the passenger made a contemporaneous and valid report of discrimination.

Plaintiffs also wrongly allege that Frontier's objections to RFA Nos 1-4 have delayed the scheduling of a Rule 30(b)(6) deposition. ECF 170, p. 6. Plaintiffs have simply decided to hold off on noticing a Rule 30(b)(6) deposition until after they receive rulings on their Fourth and Fifth Motions to Compel. Frontier is more than willing to work with Plaintiffs on stipulations to certain business records in advance of any Rule 30(b)(6) deposition. However, based on the wholesale requests contained in RFA Nos. 1-4, Frontier risks being prejudiced at trial by prematurely admitting that over 2,000 pages of documents are business records.

**RFAs No. 5-16.** These RFAs demonstrate Plaintiffs' flawed strategy of working backwards to prove their theory of intentional discrimination. In the Fourth Motion to Compel, Plaintiffs stated their desire to start contacting individual complainants so they can work backwards and prove the validity of the other complaints. Likewise, the Fifth Motion to Compel demonstrates Plaintiffs' desire to contact Frontier crewmembers for the same purpose. The Fourth and Fifth Motions to

Compel should both be denied, because Plaintiffs have not identified any complaints that they believe have relevant connections with this case to justify the discovery of more information.

Hundreds of min-trials are undoubtedly in store if Plaintiffs get their way, to take place either during the course of discovery or during the actual trial in this case. To demonstrate, RFA's No. 5-16 are designed to support an argument that Frontier did not discipline any flight attendants in relation to any of the prior unrelated passenger complaints. But even assuming *arguendo* that this is true, if Plaintiffs are allowed to make such an argument to a jury, then Frontier must be permitted in rebuttal to walk the jury through every single complaint and argue that discipline was not warranted. This is exactly why Courts hold that prior unrelated discrimination complaints are only collaterally relevant to private claims involving discrete episodes of discrimination – to avoid holding hundreds of mini-trials.

### B. Plaintiffs' Seventh Requests for Production

**RFPs 1-34.** Plaintiffs' RFPs seek the same type of information they sought when the Court denied their earlier motion to compel "any Documents/ESI containing or describing actions taken by Frontier's management in response to each complaint." ECF 83, p. 4. Since Frontier produced its documents relating to the prior unrelated passenger complaints, Plaintiffs have been singularly focused on their crusade to turn this lawsuit into a referendum on how Frontier responded to the unrelated complaints. Consequently, this case is currently focused on every other passenger complaint instead of the complaint at bar.

However, Plaintiffs have obtained the employee files for each crewmember aboard the subject flight and have questioned the crewmembers with interrogatories and during depositions about their prior involvement with any flights involving passenger complaints of racial discrimination. Plaintiffs have shown no need to identify additional information relating to particular crewmembers associated with unrelated flights. The Court addressed a similar situation when it previously rejected Plaintiff's plea for information identifying the individual claimants:

> Plaintiffs have not adequately explained why [the redacted passenger information] is relevant to their case. While they argue that they intend to contact these individuals to learn more about the alleged discrimination and trafficking, their intent to learn more does not make the information relevant or proportional. ECF 150, p. 5, n. 2.

Frontier submits that Plaintiffs' requests for the identifications of its crewmembers associated with the unrelated passenger complaints fail for the same reasons the Court stated that Plaintiffs cannot identify and contact the individual claimants: they have not adequately explained why the information is relevant to their case, and their intent to learn more does not make the information relevant or proportional.

## VIII.   Plaintiffs' Fourth Interrogatories

Plaintiffs' interrogatory suffers from the same deficiencies discussed above. It asks for the identification of each flight attendant that was ever disciplined by Frontier for racial discrimination. There is no basis to grant this request. It fails for the same reasons that the other 50 requests fail: it is irrelevant, overbroad, unduly burdensome, and not proportional to the needs of this case.

## IX.     CONCLUSION

For the foregoing reasons, FRONTIER AIRLINES, INC. respectfully requests that the Court deny Plaintiffs' Fifth Motion to Compel and for such further relief as this Court deems just and reasonable.

Date: May 19, 2022                              Respectfully submitted,

                                                **FRONTIER AIRLINES, INC.**

                                                */s/Matthew D. Martin*

                                                Lawrence S. Gosewisch *(admitted pro hac vice)*
                                                Brian T. Maye *(*admitted *pro hac vice*)
                                                Matthew D. Martin (admitted *pro hac vice*)
                                                ADLER MURPHY & McQUILLEN LLP
                                                20 South Clark Street, Suite 2500
                                                Chicago, Illinois 60603
                                                Phone: (312) 345-0700
                                                Email: bmaye@amm-law.com
                                                         mmartin@amm-law.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Charles A. Michalek (Nevada Bar No. 5721)
ROGERS, MASTRANGELO, CARVALHO &
MITCHEL
700 South Third Street
Las Vegas, Nevada 89101
Phone: (702) 383-3400
Email: cmichalek@rmcmlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on May 19, 2022, I caused the foregoing to be electronically filed with the United States District Court for the District of Nevada using the CM/ECF system.

By: */s/Matthew D. Martin*