Timothy R. Titolo, Esq.
Nevada Bar No. 003617
TITOLO LAW OFFICE
9812 Guiding Light Ave.
Las Vegas, Nevada 89149
(702) 869-5100
tim@titololaw.com

John D. McKay, Esq.
*Admitted pro hac vice*
PARK AVENUE LAW LLC
127 W. Fairbanks Ave. No. 519
Winter Park, Florida 32789
(434) 531-9569
johndmckayatty@gmail.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| PETER DELVECCHIA, *et al.*, | Case No: 2:19-CV-01322-KJD-DJA |
| Plaintiffs, | **PLAINTIFFS' REPLY IN SUPPORT OF FIFTH MOTION TO COMPEL AGAINST DEFENDANT FRONTIER AIRLINES, INC.** |
| vs. | |
| FRONTIER AIRLINES, INC., *et al.*, | |
| Defendants. | |

Plaintiffs, Peter DelVecchia and his minor son, A.D., by counsel, pursuant to the authority of Fed.R.Civ.P. 36(a)(6) and 37(a), respectfully file this Reply in support of their Fifth Motion to Compel against Defendant Frontier Airlines, Inc. ("Frontier"). For the reasons stated herein and in the Motion itself, their Motion should be granted with an award of expenses, including attorneys' fees.

**ARGUMENT**

**I.     Frontier has not rebutted Plaintiffs' arguments and therefore should be deemed to have consented to the granting of Plaintiffs' Motion to Compel in full.**

Frontier's Opposition (ECF No. 174), assists the Court in granting Plaintiffs' Motion in its entirety, because Frontier does not rebut, or even attempt to challenge, Plaintiffs' arguments in support of the Motion. Notably:

- In the face of cited decisions by this Court and others establishing that its objections on grounds asserting that the discovery requests are "overly broad [and] unduly burdensome" are improper boilerplate since they are unsupported by any "particularized facts" explaining how and why the requests are too broad or burdensome, *see, e.g.,* ECF No. 170, at 8 (including *Caballero v. Bodega Latina Corp.,* Case No. 2:17-cv-00236-JAD-VCF, 2017 US Dist. LEXIS 116869, at *13 (D. Nev. July 25, 2017), *Gurshin v. Bank of America, N.A.,* Case No. 2:15-cv-00323-GMN-VCF (D. Nev., Sept. 25, 2017), and *Sallah v. Worldwide Clearing LLC,* 855 F.Supp.2d 1364, 1376 (S.D. Fla. 2012)), Frontier has not argued that the reasoning of those decisions should not be followed or pointed to any such particularized facts.[1] The unchallenged holdings of those cases apply to all of Frontier's "overly broad [and] unduly burdensome" objections, and thus the Court should find that they are improper boilerplate and overrule them.

- Frontier similarly fails to challenge Plaintiffs' arguments, supported by appropriate citations, that improper boilerplate objections waive any legitimate objections the asserting party may have had, and that the Court has the power under Rule 36(a)(6) to deem all of the Requests for Admissions admitted, *see id.,* at 11 (citing *Mancia v. Mayflower Textile Servs. Co.,* 253 F.R.D. 354, 364 (D. Md. 2008), which was cited with approval in *Gurshin,* slip op. at 4). The Court should therefore deem all objections waived and deem all of Plaintiffs' RFAs admitted.

---

[1] In fact, Frontier doubles down on its refusal to heed the rule followed in *Caballero* and *Gurshin* by declaring, without any supporting facts, that the sole interrogatory at issue in Plaintiffs' Motion "fails for the same reasons that the other 50 requests fail: it is irrelevant, overbroad, unduly burdensome, and not proportional to the needs of this case." ECF No. 174, at 14. That type of fact-free objection is simply not allowed.

- Frontier does not rebut Plaintiffs' arguments that business records may include content created by third parties that the holder has received and incorporated into its records, or attempt to distinguish any of the cases from the Ninth and other Circuits cited by Plaintiffs in support of that argument, *see id.* at 9 (citing *MRT Const. Inc. v. Hardrives, Inc.,* 158 F.3d 478, 483 (9th Cir. 1998), *United States v. Childs,* 5 F.3d 1328, 1333-34, 1334 n.3 (9th Cir. 1993), *United States v. Parker,* 749 F.2d 628, 633 (11th Cir. 1984), and *United States v. Ullrich,* 580 F.2d 765, 772 (5th Cir. 1978)). Nor does it challenge Plaintiffs' assertion that it already admitted that several of the subject documents were its business records, *see id.* at 6, or Plaintiffs' argument that a blanket refusal to respond to an RFA is impermissible under Rule 36 where the responding party objects to only a portion of the request, *see id.* at 9. In fact, Frontier's sole argument as to RFAs 1-4 in its Opposition is that "they involve the admissibility of hearsay evidence," *see* ECF No. 174 at 12. Hearsay is a rule of admissibility, not a proper discovery objection. *See, Crisp v. Nissan Motor Corp.,* Case No. SA-20-cv-00220-XR (W.D. Tex., Oct. 20, 2020), slip op. at 3 n.1 ("Hearsay is not a proper objection to a discovery request"); *see also* Fed.R.Civ.P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable"). The RFAs are discovery requests. The Court should follow the cases cited by Plaintiffs and should deem the RFAs admitted.
- Frontier fails to rebut Plaintiffs' argument that the cases it cites in its boilerplate objections in support of its multiple refusals to respond to the subject discovery requests do not actually support its refusal to respond (because two of the four cited cases granted discovery of other complaints, one denied discovery on facts limited to that case but specifically recognized that "there is no categorical bar on the pursuit of such evidence," and the fourth was cited in violation of Ninth Circuit Rules but even so did not provide any support for the objection, *see* ECF No. 170 at 9-11. Frontier instead merely urges the Court to follow *Karrani, Acton* and *Walech* for their "sound and

practical approach," *see* ECF No. 174 at 9, (which would result in granting the discovery sought by Plaintiffs, since none of those cases held that such discovery is not permissible, *see* ECF No. 170 at 9-11).[2]

- Frontier does not challenge Plaintiffs' argument that the holding of *Sanchez v. Albertson's, LLC,* Case No. 2:19-cv-2017-JAD-DJA (D. Nev., March 3, 2022), slip op. at 16, that "[s]poliation of evidence includes the failure to preserve property for another's use as evidence in a pending or reasonably foreseeable litigation," should apply with equal force to the computer program that its counsel has said it destroyed in November of 2020, *see* ECF No. 170, at 21. The Court should therefore hold that it does.

- Similarly, Frontier does not challenge Plaintiffs' argument, based on the holdings of *Sanchez* and *Asfaw v. Wal-Mart Stores, Inc.,* No. 2:19-cv-01292-GMN-NJK, 2021 WL 2006283, at *1 (D. Nev. May 19, 2021), that its duty to preserve evidence began when it reasonably should have known that the evidence is relevant to pending litigation, *see* ECF No. 170, at 22. The Court should therefore so hold.

- Frontier does not challenge Plaintiffs' argument that the documents requested in RFP 1 of Peter DelVecchia's Seventh Requests for Production are within Frontier's possession, custody or control, *see id.* at 26, so the Court should order it to produce the documents by a certain deadline.

- Frontier does not challenge Plaintiffs' argument based on the holdings of *Sewell v. D'Alessandro & Woodyard, Inc.*, 2011WL 1232347 at *2 (M.D. Fla. Mar. 30, 2011), *Riley v. United Air Lines, Inc.*, 32 F.R.D. 230, 234 (S.D.N.Y. 1962), and *Meese v. Eaton Mfg. Co.*, 35 F.R.D. 162, 166 (N.D.

---

[2] Frontier also misleadingly claims that all three of those cases support the proposition that "[c]ircumstantial evidence of intentional discrimination must be 'specific and substantial' to create an arguable question of fact to survive summary judgment on a §1981 claim," *see* ECF No. 174 at 8, a proposition that: (a) is irrelevant to this Motion to Compel; (b) was mentioned in only one of the three cases; and (c) has been interpreted by the Ninth Circuit to have no particular meaning that would require "more, or better evidence" than a plaintiff relying on direct evidence, *Cornwell v. Electra Central Credit Union,* 439 F.3d 1018, 1029-30 (9th Cir. 2006).

Ohio 1964), that providing a response "subject to" a preceding objection waives the objection, or their argument that the response Frontier provided is insufficient to meet the scope of the request because the referenced documents do not show the training Captain Shupe claims to have received and the training documents referenced apply only to flight attendants, *see* ECF No. 170, at 25-26, therefore the Court should follow the reasoning of those decisions and hold that the objections are waived, and order Frontier to provide a more complete response by a certain deadline.

- Frontier fails to challenge Plaintiffs' arguments that the documents requested in the other RFPs are relevant to its corporate hostility toward race discrimination complaints and passengers who complain of race discrimination by its employees, and that the hostility is relevant to the standard of reckless indifference toward federally protected civil rights, which is the standard applicable to Plaintiffs' claim for punitive damages under 42 U.S.C. §1981, *see Costa v. Desert Palace, Inc.,* 299 F.3d 838, 865 (9th Cir. 2002), *aff'd,* 539 U.S. 90 (2003). The Court should therefore hold that the documents requested in RFPs 2-34 are relevant to that standard and should be produced by a certain deadline.

- Frontier also fails to challenge Plaintiffs' argument that the anti-discrimination provisions of the federal statutes prohibiting discrimination by airlines against their passengers, such as 49 U.S.C. § 40127, overlap with §1981 in the areas of race and ethnicity, *see* ECF No. 170, at 32. The Court should hold that they do, and that communications concerning such statutes are relevant to the corporate hostility and reckless indifference to federally-protected civil rights issues discussed above.

- Frontier fails to challenge Plaintiffs' argument that the majority of the race discrimination complaints involve allegations of discrimination by flight attendants, and senior management's

response to the volume of such complaints is relevant to the issues of hostility and reckless indifference, as discussed above, *see id.* at 36. The Court should find that this is accurate.

- Frontier also does not challenge Plaintiffs' argument that it failed to produce any of its correspondence with the DOT concerning race discrimination complaints, other than the text of cover letters forwarding complaints that its employees reproduced in their notes, *see id.* at 45-46. The Court should order it to produce such correspondence in response to RFPs 29 and 30, by a specific deadline.

- Frontier fails to challenge any of Plaintiffs' arguments concerning RFP 33, including arguments that it failed to meet its obligations under Fed.R.Civ.P. 26(b)(5), that it failed to provide a privilege log covering documents withheld from production that were responsive to the RFP, and that it failed to move for a protective order. It fails to challenge the argument that its attorney-client privilege and work product arguments should therefore be deemed waived as the Court held in *Cross v. Jaeger,* Case No. 3:13-cv-00433-MMD-WGC (D. Nev., Mar. 27, 2015), slip op. at 4-5. It fails to challenge Plaintiffs' arguments that none of the deponents other than Warren and Campbell were in a position to see Warren's attack, and that Campbell testified that he was bent over and did not see what Warren did to Peter DelVecchia. Its objections should therefore be deemed waived and it should be ordered to produce all of the requested documents by a specific date.

It is axiomatic that a responding party's failure to challenge the moving party's arguments amounts to consenting to the granting of the motion. *See, e.g., Prator v. Cox,* Case No. 2:12-cv-0081-GMN-VCF (D. Nev., Aug. 22, 2013), slip op. at 4; *Youlin Wang v. Kahn*, Case No. 20-cv-08033-LHK (N.D. Cal., Jan. 3, 2022), slip op. at 40; *WSOU Investments LLC v. Juniper Networks Inc.,* Case No. 21-cv-07557-BLF (N.D. Cal., Jan. 3, 2022), slip op. at 13; *Reality Kats, LLC v. Mirsyl, Inc.,* Case No. 16-cv-06957-

CW (N.D. Cal., Mar. 29, 2018), slip op. at 10-11. That axiom forms the basis of this Court's Local Rule 7-2(d), which provides, in relevant part, that the failure of an opposing party to file points and authorities opposing a motion constitutes consent to the granting of the motion. *See, Mortensen v. Neven,* 2:11-cv-00266-KJD-CWH (D. Nev., Jan. 28, 2013), slip op. at 15 & n.6. Although Frontier did file an Opposition, it chose to focus on issues other than those raised in Plaintiffs' Motion and made no effort to rebut Plaintiffs' arguments, *see id.* The Court should therefore hold that it has consented to the granting of Plaintiffs' Motion to Compel in full.

**II.     The arguments that Frontier does make are baseless as well as irrelevant to the Motion.**

Frontier appears willing to discuss any subject *other* than why it responded with improper boilerplate objections to every one of Plaintiffs' 51 discovery requests that are the subject of this Motion. It boldly suggests that the Court should simply deem Plaintiffs not "entitled" to utilize the discovery rules in their case to obtain evidence supporting their claims, *see* ECF No. 174, at 7. It devotes nearly three pages of its Opposition to the discussion of a deposition, when there is no deposition testimony at issue in the Motion, *see* ECF No. 174, at 5-7.[3] It spends another two pages engaging in revisionist history concerning a prior ruling by the Court on a *different* motion to compel, in which Frontier willfully ignores the obvious connection between the Court's "denies in part" language and the temporal and geographical limitations that it applied *sua sponte* to Plaintiffs' original document request, *see* ECF No. 83 at 4 ("the Court . . . will narrow the request to be proportional to the needs of the case as follows: Defendant shall provide a supplemental response of any race discrimination complaints filed by passengers, not employees, over the past 5 years only, and limited geographically to the continental

---

[3] In the course of that irrelevant discussion, Frontier attempts to create the misleading impression that one of its employees was subjected to two full days of deposition testimony by Plaintiffs. In truth, after approximately 80 minutes of testimony in a Zoom deposition, counsel requested a 10-minute break, from which counsel returned but the deponent did not. Defense counsel reported later that the deponent's neighborhood had suffered a power outage during the break. Her deposition was reconvened by agreement of counsel on a date 7 weeks later, and was completed within the requirements of Fed.R.Civ.P. 30(d)(1).

United States"), and instead claims that "denies in part" applied to the Court's *dictum* that preceded its specific ruling. Frontier claims that this *dictum* was a "key ruling" that forbade Plaintiffs from obtaining any documents that referenced how Frontier dealt with passenger complaints of race discrimination and restricted Frontier's production merely to the complaints themselves. ECF No. 174, at 3-4. But if Frontier truly believed that the Court made that "key ruling" in its Order, then why did it produce hundreds of pages of the very documents the "key ruling" would have forbidden Plaintiffs from obtaining? Even a cursory examination of the documents produced by Frontier in the months following that Order (which have been filed with the Court under seal as Exhibit A to ECF No. 128 and Exhibit A to ECF No. 141) reveals that Frontier produced its employees' notes detailing how they responded to the race discrimination complaints. Thus, Frontier's own actions in response to that prior Order belie the revisionist history argument it is attempting to foist upon the Court in its Opposition. Frontier's argument is baseless, as well as irrelevant to the instant Motion.

Frontier attempts to fortify its irrelevant arguments with the scare tactic of forecasting that "hundreds of min-trials [*sic*] are undoubtedly in store if Plaintiffs get their way [*i.e.,* are allowed to obtain the contact information for the passengers who made the previous complaints of race discrimination]," *see* ECF No. 174, at 6, 13. Not only does that hyperbolic argument not apply to any of the issues raised in the instant Motion, but Frontier fails to explain how calling those complainants and asking them what protected group(s) they belong to would amount to "hundreds of mini-trials." To the extent Frontier claims that Plaintiffs are not "entitled" to conduct discovery on prior complaints of discrimination because then it would be forced to explain why it decided not to discipline any of its employees who committed the discrimination, that is the point: its basis for deeming discipline that would prevent future occurrences of discrimination unnecessary is relevant to its corporate hostility toward the subject of complaints reporting race discrimination by its employees against passengers and its reckless disregard

for those passengers' federally-protected civil rights, which is in turn relevant to Plaintiffs' claims for punitive damages on their §1981 claim, *see Costa.* Moreover, any argument that discovery should not be permitted because the evidence obtained might be inadmissible at trial flies in the face of Fed.R.Civ.P. 26(b)(1)'s statement that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Frontier's multiple arguments that Plaintiffs simply should not be permitted to conduct any discovery concerning its handling (or sweeping under the rug, to be more accurate) of hundreds of prior discrimination complaints could be aptly summarized by the statement, "There's nothing to see here, folks." But the documents it has already produced pursuant to the Court's prior Order reveal that statement to be wrong—there is plenty more to see, and it amounts to illegal and company-sanctioned racial discrimination against Frontier's "ultra low cost" air transportation customer base, that is repeated on a weekly basis and never punished or even addressed. That history is directly relevant to what happened to Plaintiffs, as they were simply the next victims of a shameful company-wide practice that has occurred for numerous years and will continue to occur until addressed by a jury verdict awarding punitive damages. It is directly relevant to Plaintiffs' claims for punitive damages.

 Frontier reads far too much into the language of a footnote in the Court's ruling on other prior motions, and the concept of "collateral relevance."[4] As Plaintiffs pointed out in their original Motion, collateral relevance is some relevance, and the standard of relevance to be applied to discovery requests is whether the information sought "has no bearing on the claims and defenses of the parties." *Guerra v. Dematic Corp.*, Case No. 3:18-cv-00376-LRH-CLB (D. Nev. April 15, 2022), slip op. at 5; *see also,*

---

[4] Footnote 1 to the Court's Order of November 30, 2021 (ECF No. 150) stated, in *dicta* on a ruling on motions for sanctions, that "Plaintiffs have not adequately explained why this information [*i.e.,* the identity and contact information for prior complainants] is relevant to their case." Although Frontier claims that Plaintiffs still have not done so, the record is clear that Plaintiffs have explained that many of the prior complaints do not identify what protected classes the complainants belong to, which is relevant to whether the complaints do, in fact, allege race or ethnicity discrimination covered by §1981. Plaintiffs need to contact the complainants to obtain that information. The complaints themselves, and what Frontier did (or did not do) in response to them, is relevant to the corporate Defendant's condonation of discrimination by its employees and its hostility toward such complaints and reckless indifference toward passengers' federally-protected civil rights, which is relevant to Plaintiffs' claims for punitive damages on their §1981 count.

*Republic of Ecuador v. Mackay,* 742 F.3d 860, 866 (9th Cir. 2014)("the scope of permissible discovery under Rule 26 is broad"). Moreover, there is a substantial question whether evidence of past complaints of discrimination may be properly called "collaterally relevant" after the Ninth Circuit's opinions in *Heyne v. Caruso,* 69 F.3d 1475 (9th Cir. 1995) and *Fuller v. Idaho Dep't of Corr.*, 865 F.3d 1154 (9th Cir. 2017), which found such evidence fully relevant to the defendant's intent, motivation and hostility toward a member of a protected class. Frontier does not directly address that argument, but instead proffers the absurd argument that both *Heyne* (which it calls *Caruso*) and *Fuller* are distinguishable because they were Title VII cases and address "different legal standards," *see* ECF No. 174, at 8. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), was a Title VII case, too, and its legal standard forms the entire basis upon which Frontier mounts its "collateral relevance" argument. Courts frequently apply Title VII jurisprudence to §1981 cases, *see, e.g., Bains LLC v. ARCO Products Co.,* 405 F.3d 764, 774 (9th Cir. 2005). But it appears Frontier would rather the Court look to district court opinions from other districts than to Ninth Circuit or Supreme Court precedent.

For example, Frontier has cited *Karrani v. JetBlue Airways Corp.,* No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944 (W.D. Wash. July 31, 2019) dozens of times in this litigation, in its discovery objections as well as Court filings, as though that decision were authoritative precedent for numerous aspects of Plaintiffs' case. There is no basis for such a claim, however. First of all, *Karrani* is a trial court decision on a summary judgment motion from another district. It cannot be binding precedent for anything in this Court. Second, the *Karrani* case is highly distinguishable from the facts of the instant case. The plaintiff, Mr. Karrani, made a supremely ill-advised decision to insist on using the forward lavatory of the aircraft when the evidence showed that the aft lavatories were equally available. His insistence on using the forward lavatory was problematic because the crew of the aircraft were engaged in dealing with a medical emergency just a few feet away from that lavatory, in the first row of the

aircraft.[5] That medical emergency was severe enough to warrant the Captain's decision to make an unscheduled emergency landing at a nearby airport. Under those circumstances, the flight attendant's allegedly curt response to Mr. Karrani's demand was understandable, and his filing of a §1981 claim alleging racial discrimination by her reeked of "playing the race card" for invalid reasons. The district court was unable to determine whether he had even established a *prima facie* case of discrimination on circumstantial evidence, but held that any *prima facie* case would be easily rebutted by the airline's evidence of non-discriminatory bases for the flight attendant's actions. Granted, *Karrani* involved a §1981 claim against an airline, as does the instant case. But that is where any similarities end. Plaintiffs in the instant case were sound asleep, and not insisting on anything, when they were physically attacked by a Frontier flight attendant.[6] That attack followed nearly 45 minutes of surveillance and false accusations by the entire team of flight attendants that had begun with an observation by two of them (the attacker and a White female co-worker) that "something [was] off about those two" based solely on their appearance as a White father with a Black son. Plaintiff Peter DelVecchia was struck so hard by the attacker that he sustained a diagnosed concussion, and Plaintiff A.D. was imprisoned by the attacker, using an off-duty policeman, in the rear of the aircraft for the remaining hours of the flight. In addition, the attacker assaulted A.D. in a sexual manner in the rear of the aircraft, and he and his co-workers, along with other employees and agents of Frontier, made false statements about Peter and A.D. that amounted to defamation *per se.* Nothing of the sort occurred in *Karrani*, and there is no basis for relying on that decision in the instant case.

---

[5] JetBlue operates only single-aisle aircraft, so accessing the forward lavatory would necessarily have meant walking past the seat(s) where the medical emergency was in progress.

[6] That particular flight attendant was a Black male, but deposition testimony from all of the flight attendants and pilots establishes that his actions were encouraged and sanctioned by the rest of the crew members, who were all White, and by Frontier's management on the ground. Moreover, Plaintiffs will be presenting testimony from an eminent sociologist in their case in chief that Caucasians do not hold a monopoly in the field of race discrimination, especially where transracial adoption is concerned.

The remainder of Frontier's arguments are equally irrelevant and baseless. It challenges the veracity of Plaintiffs' statements regarding what Mr. Maye said, which Plaintiffs address with the Declaration of John McKay attached hereto as **Exhibit A**. It makes the irrelevant observation that the DOT received fewer complaints of discrimination about Frontier in 2018, "the year of the alleged incident in this case," *See* ECF No. 174 at 11 (the events alleged in the Third Amended Complaint happened on March 28 of **2019**, *see* ECF No. 153 at 2) than about American Airlines, without noting that American Airlines is one of the world's two largest airlines and Frontier does not even rank in anyone's top 10. It submits an article about American Airlines and a NAACP warning that does nothing to challenge Plaintiffs' argument that if NAACP was concerned about treatment of Blacks by AAL, it might also have communicated with Frontier concerning discrimination complaint numbers. It offers to "work with Plaintiff on stipulations" concerning business records, *see* ECF No. 174 at 12, without revealing that it has made several similar "promises" to stipulate that have not resulted in actual stipulations.

## CONCLUSION

For all the reasons set forth above and in their original Motion, the Requests for Admissions should be deemed admitted, Frontier should be ordered to respond to the RFPs and Interrogatory by a certain deadline, and Plaintiffs should be awarded their expenses of making this Motion to Compel, including attorneys' fees.

DATED this 26th day of May, 2022.

                                                                /s/ John D. McKay
                                           ***Attorney for Plaintiffs Peter DelVecchia***
                                           ***And A.D., a Minor***