Timothy R. Titolo, Esq.
Nevada Bar No. 003617
TITOLO LAW OFFICE
9812 Guiding Light Ave.
Las Vegas, Nevada 89149
(702) 869-5100
tim@titololaw.com

John D. McKay, Esq.
*Admitted pro hac vice*
PARK AVENUE LAW LLC
201 Spear Street, Suite 1100
San Francisco, CA 94105
(434) 531-9569
johndmckayatty@gmail.com
***Attorneys for Plaintiffs***

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| PETER DELVECCHIA, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> FRONTIER AIRLINES, INC., *et al.*, <br> Defendants. | Case No: 2:19-CV-01322-KJD-DJA <br><br> **PLAINTIFFS' MOTION FOR LEAVE TO FILE SURREPLY TO DEFENDANTS' MOTION FOR RULE 35 MENTAL EXAMINATION** |

Plaintiffs, Peter DelVecchia ("Peter") individually and as next friend of A. D., a minor ("A.D."), by counsel, respectfully move this Honorable Court for leave to file a Surreply to the Reply (ECF No. 183) filed by Defendant Frontier in support of Defendants' Motion for Rule 35 Mental Examination (ECF No. 180).[1] Plaintiffs are well aware of the fact that the Court disfavors motions of this type, as indicated in LR 7-2(b), and they beg the Court's indulgence in this particular instance to

---

[1] The Rule 35 Motion was filed by all three Defendants, yet only Frontier filed the Reply.

grant them leave because Frontier deliberately included new matter in its Reply knowing that Plaintiffs would not be able to respond to it, and it also included an intentional slur of Plaintiffs in the Reply by mischaracterizing certain testimony. This is the latest offense in a long series of deliberate mischaracterizations of facts that Frontier has made on the record in this case in efforts to influence the Court improperly (several of which have been successful in misleading the Court, to Plaintiffs' detriment). The Court should allow Plaintiffs to respond to the additional matter and mischaracterizations, as justice can only be obtained in this case on the basis of a fair and accurate record, not one that has been deliberately distorted and mischaracterized by Defendants.

## ARGUMENT

**I.     Fairness dictates that Plaintiffs should be granted an opportunity to respond to the new matter raised in Frontier's Reply.**

Defendants' Motion and Frontier's Reply deliberately and unfairly presented Plaintiffs with a moving target. The original Motion presented one proposed examination protocol, which Plaintiffs challenged in their Opposition, and the Reply asserted a completely different protocol for the first time, asking the Court to grant the Rule 35 request "in accordance with Dr. Holland's *revised* proposed protocol set forth above." ECF No. 183, at 7 (emphasis added). Under standard briefing procedures, Plaintiffs would have no opportunity to comment on that "revised proposed protocol." Granted, some of the changes made in the newer protocol are beneficial to Plaintiffs, but others are not. For instance, the newer protocol suggests an examination of up to six hours of interviews and testing to be completed in a single day, with no indication of what type of break is to be afforded between sessions, or whether *any* breaks would be provided during the sessions. It also seeks to impose a requirement that A.D. can only see his father for support with Dr. Holland present, which seems like a surreptitious way for Dr. Holland to interview Peter (or at least observe his interactions with A.D.) despite Frontier's claim that she will not interview Peter. There was no requirement that

the examiner be present with the plaintiff and her parents during breaks in the *Doe v. Equipo Academy* case cited by Plaintiffs, and the Court in that case ordered that the examination take place over two days, specifically stating: "This is not two full 8 hour days, but rather, the two day format is to make it easier on the minor child." *Doe v. Equipo Academy,* Case No. 2:20-cv-01490-KJD-DJA (D. Nev. April 26, 2021), slip op. at 4. The Court noted that the minor in that case was 14, which is only one year younger than A.D. *See id.* Presumably, the minor in *Doe* went home with her parents for the evening between the two examination days without the examiner being present, with the Court's approval. Plaintiffs should be permitted to respond to those new items in Defendants' suggested protocol, because they raise substantial issues. Does Dr. Holland intend to allow any breaks during the two 3-hour sessions? How long of a break between sessions does she propose? Would Peter and A.D. be required to eat lunch separately, or is Dr. Holland planning to sit with them and observe them having lunch? How exactly does she think Peter would be able to influence clinical interviews or the results of standardized testing from outside of the room, even if he wanted to?

  Moreover, the newer protocol presents another *non-exclusive* list of tests, without any indication of what additional testing Dr. Holland would subject A.D. to if she determines that "additional tests [are] necessary based on results of tests listed." *See* ECF No. 183, at 4. That again makes the newly proposed examination no different from the one the Court rejected in *Adele v. Dunn,* Case No. 2:12-cv-00597-LDG-PAL (D. Nev. Nov. 26, 2012), slip. op. at 5. Regarding the tests that are listed in the newer protocol, Frontier includes an entire section of argument on what the tests are and why they are needed, *see id.* at 4-5, despite the fact that Plaintiffs noted in their Opposition that Defendants' Motion failed to identify them at all or state why Dr. Holland deems them necessary, and Plaintiffs cited Ninth Circuit precedent holding that Defendants may not introduce such material for the first time in a reply. *See* ECF No. 182, at 4 & n.1.

Even though surreplies are strictly limited for good reasons, there are circumstances in which basic notions of fairness support permitting them. Magistrate Judge Koppe granted a party leave to file one in *Hickman v. Mead,* Case No. 2:18-cv-00404-GMN-NJK (D. Nev. March 12, 2019), slip op. at 1-2, where she noted:

> "A party is generally prohibited from raising new issues for the first time in its reply brief" because the opposing party is not afforded an opportunity to respond. *Queensridge Towers LLC v. Allianz Global Risk US Ins. Co.,* 2015 WL 1403479 at *3 (D. Nev. Mar. 26, 2015) (citing *Eberle v. City of Anahiem,* 901 F.2d 814, 818 (9th Cir. 1990)). Therefore,"[w]here the moving party presents new matters for the first time in a reply brief, the Court may either refuse to consider the new matters or allow the opposing party an opportunity to respond." *Steven Cohen Prods. Ltd. v. Lucky Star, Inc.,* 2015 WL 3555384 at *3 (D. Nev. June 5, 2015) (citing *Zamani v. Carnes,* 491 F.3d 990, 997 (9th Cir. 2007)). The Local Rules permit the filing of a surreply only with leave of court. Local Rule 7-2(b). Further, a surreply may "only address new matters raised in a reply to which a party would otherwise be unable to respond." *Steven Cohen Prods. Ltd.*, 2015 WL 3555384 at *3.

She found that good cause for leave to file a surreply was demonstrated when the opposing party raised new material in its reply, *see id.* at 2. Similarly, the Court granted leave to file a surreply in *Mwithiga v. Uber Technologies, Inc.,* 376 F.Supp.3d 1052, 1058 (D. Nev. 2019), in which Chief Judge Navarro wrote:

> Any arguments based on this allegation should have been presented in Defendant's Motion to Compel, and not addressed for the first time in Defendant's Reply. *See, e.g. , Provenz v. Miller* , 102 F.3d 1478, 1483 (9th Cir. 1996) (providing that courts may disregard arguments first raised in a reply brief because the timing of the argument deprives the opposing party of the opportunity to respond); *USF Ins. Co. v. Smith's Food & Drug Ctr., Inc.*, 921 F.Supp.2d 1082, 1090 n.1 (D. Nev. 2013). The Court finds that considerations of fairness counsel in favor of allowing Plaintiff to address the arguments set forth in Defendant's Reply. Accordingly, for good cause appearing, the Court will consider Plaintiff's Surreply.

Good cause also exists to grant Plaintiffs leave to file a surreply in the instant case. Defendants have entirely changed the nature of the examination they are requesting in their Reply, and they have presented arguments that they did not make in their initial Motion. It is certainly possible that Frontier introduced the new protocol in its Reply strategically, hoping that Plaintiffs

would move to strike it based on the plethora of cases holding that matter introduced for the first time in a reply should not be considered. That would take things back to their original proposed protocol, ostensibly with Plaintiffs' blessing. Or, they might have proposed the original protocol as a "stalking horse," always intending to propose the second version in their Reply, affording Plaintiffs no opportunity to respond. Regardless of which improper strategy was behind Defendants' actions, they should not be rewarded for either one. If the Court is going to exercise its discretion to order the examination, despite Plaintiffs' request that it not do so, then the Order should include the more favorable provisions of the second proposed protocol, but Plaintiffs should be given a full opportunity to respond to the less favorable ones.

## II. Frontier's deliberate mischaracterization of deposition testimony and an interrogatory answer requires a response from Plaintiffs.

Frontier includes the following paragraph in its Reply, at page 6:

> Plaintiffs request that "the examination and tests shall encompass only those aspects necessary for evaluating whether A.D. suffered PTSD because of the events on March 28, 2019." *Id*. at 7. **Frontier does not agree to this request.** Plaintiffs have disclosed through their deposition testimony and answers to written interrogatories that there have been other occasions when they were questioned under similar circumstances by authorities based on concerns of inappropriate physical contact. One instance involved a movie theatre, and another involved a different airline. Dr. Holland should be permitted to question A.D. about his prior experiences, including but not limited to those referenced above, to complete her examination and assess the PTSD that he allegedly suffered because of the events on March 28, 2019.

(Emphasis in original). Frontier deliberately mischaracterizes the content of the referenced deposition testimony and the answer to a single interrogatory (not "answers") by claiming that Plaintiffs "were questioned under similar circumstances" and that the questioning was "based on concerns of inappropriate physical contact." In fact, both prior events were cited by Plaintiffs as previous instances where they had encountered *racism* in public settings, and neither one involved any "inappropriate" physical contact. One simply involved an 11-year-old boy (A.D.) watching the movie

*Black Panther* with his dad in a theater and both of them being asked to step outside by a police officer because some other patrons of the theater (who were Black) believed that a White man with a Black child constituted an objectionable and potentially illegal situation. They had apparently reported that the father and son had held hands at some point during the movie, but similar innocuous physical contact between a father and 11-year-old son of the same race would never have been questioned as "inappropriate" by any reasonable person. The testimony established that the police officer allowed them to return to the movie as soon as Peter confirmed that they are father and son. In fact, the specific interrogatory propounded by Frontier to Peter asked him to identify "all instances, from 2014 to the present, where your *relationship with A.D. has been misperceived* . . . whether law enforcement was called . . . [and] whether you were accused of human trafficking or sexual abuse in each such instance." Frontier's Interrogatories to Peter DelVecchia served October 4, 2019, Int. 20 (emphasis added). Both Plaintiffs testified in their depositions about a second event when, after disembarking from a Delta Air Lines flight in Salt Lake City, they were stopped and questioned by a law enforcement officer who told them that another passenger had asked the crew to call the police after seeing Peter give his son a hug at some point on the plane. Again, there was no indication in any of the testimony that a father giving his son a hug constituted "inappropriate physical contact"; the issue was that the other passenger felt the need to get law enforcement authorities involved upon seeing a White adult traveling with a Black child—perhaps assuming that some sort of human trafficking must be afoot. The unstated implication was that a White man cannot be the adoptive (or even the biological) father to a Black child, which was a conclusion based solely on their respective skin colors. Again, the testimony was that the officer at the Salt Lake City airport was friendly to Plaintiffs and released them to go on their way after learning that Peter is A.D.'s adoptive father.

Neither event involved any objectively reasonable allegation of "inappropriate physical contact," and Frontier's blatant suggestion of such deplorable and lascivious contexts to the testimony is clearly aimed at attempting to defame Peter and A.D. in the Court's eyes—which would be actionable in any unprivileged setting, and is entirely improper in this one. The fact that this is a gratuitous slur is further evidenced by the lack of any connection to a plausible argument by Frontier. Frontier begins the paragraph by saying that it does not agree that the examination and testing should be limited to "those aspects necessary for evaluating whether A.D. suffered PTSD because of the events of March 28, 2019," even though PTSD is the only diagnosis that Plaintiffs have put into controversy concerning A.D. It then argues that Dr. Holland "should be permitted to question A.D. about [apparently any and all of] his prior experiences, including but not limited to those referenced above, to complete her examination and assess the PTSD that he allegedly suffered because of the events on March 28, 2019." Reply at 6. That is a *non sequitur*—Plaintiffs have not alleged in this case that A.D. suffered PTSD simply because he and his father were questioned by the LVMPD and FBI following the Frontier flight on March 28, 2019; they have alleged that A.D. suffered PTSD as a result of a far more egregious set of circumstances that included, *inter alia*, the forcible separation of father and son by Frontier employees 45 minutes into the multi-hour flight, the employees' repeated refusals to accept the truth of their statements that they are father and son, A.D. being falsely imprisoned in the rear of the plane, cold and crying, for several hours by one male employee and an off-duty policeman enlisted for that purpose by the Frontier employee, A.D. watching his father being rudely shouted at by the male employee and prevented from retrieving him from the rear of the plane or even being allowed to console him, listening to the employee falsely accuse his father of sexual perversion, while the employee himself assaulted A.D. in a sexual manner from an adjacent seat, and both father and son being delivered by Frontier employees into actual physical custody by law enforcement officers, separately, which lasted over six hours in the middle of the night. *See* Third Amended Complaint, ECF No. 153, at ¶¶ 36-48, 54.

None of that constitutes "similar circumstances" to the two events where racist theater patrons and an airline passenger had police called on them because of their disparate skin colors, because in both of those prior events, the police politely allowed them to return to their activities immediately after learning that they are father and son. There is nothing in Plaintiffs' testimony that suggests that A.D. had any serious adverse psychological reactions to those prior events—there is no evidence that he suffered nightmares and flashbacks of losing his father after them, or that he awoke screaming and had to vomit. There is no legitimate reason for Frontier to have raised those prior events, and there would be no legitimate reason for the psychologist to inquire into them in a mental examination. Frontier did so solely to create the false impression that Peter had previously been investigated for abusing A.D., when in fact both occurrences were shown by the testimony to have been previous instances of racism toward a transracial family. Plaintiffs should be granted an opportunity to respond to Frontier's mischaracterization of their testimony.

    Frontier's reckless and improper mischaracterization about Plaintiffs' prior experiences with racism also introduces an argument, albeit a misguided and illogical one, that is raised for the first time in a Reply. Based on the holdings of the cases cited above, that fact alone should supply good cause for allowing Plaintiffs to respond to it.

## **CONCLUSION**

    For all the reasons set forth above, Plaintiffs respectfully request that this Honorable Court grant them leave to file a Surreply to the new matter raised by Frontier in its Reply.

DATED this 24th day of June, 2022.

                                                      /s/ John D. McKay
                                     *Attorney for Plaintiffs Peter DelVecchia*
                                     *And A.D., a Minor*