Timothy R. Titolo, Esq.
Nevada Bar No. 003617
TITOLO LAW OFFICE
9812 Guiding Light Ave.
Las Vegas, Nevada 89149
(702) 869-5100
tim@titololaw.com

John D. McKay, Esq.
*Admitted pro hac vice*
PARK AVENUE LAW LLC
201 Spear Street, Suite 1100
San Francisco, CA 94105
(434) 531-9569
johndmckayatty@gmail.com
***Attorneys for Plaintiffs***

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| PETER DELVECCHIA, *et al.*,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>FRONTIER AIRLINES, INC., *et al.*,<br>　　　　Defendants. | Case No: 2:19-CV-01322-KJD-DJA<br><br>**PLAINTIFFS' SURREPLY IN OPPOSITION TO DEFENDANTS' MOTION FOR RULE 35 MENTAL EXAMINATION (ECF No. 180)** |

  Plaintiffs, Peter DelVecchia ("Peter") individually and as next friend of A. D., a minor ("A.D."), by counsel, having been granted leave of Court to do so, respectfully file this Surreply in opposition to Defendants' "Motion for an Order for Rule 35 Mental Examination" (ECF No. 180).

  Defendants' Motion raises issues of significant concern. Granted, any motion made under Rule 35 seeking to have a mental examination conducted on a minor child who has been the subject of trauma-inducing set of circumstances raises significant and serious concerns, due to the fragility of

PLAINTIFFS' SURREPLY IN OPPOSITION TO MOTION FOR MENTAL EXAMINATION
Page 1 of 8

a child's mental health and his or her susceptibility to adult influence and manipulation. However, the instant case presents reasons for even greater circumspection. As the record in the instant case amply demonstrates:

- Frontier falsely told the Court that Plaintiffs' counsel had agreed to delay Frontier's production of documents ordered by Judge Albregts until after Judge Dawson ruled on certain objections, knowing that no such agreement had ever been made. *See* ECF No. 134, at 14, and ECF No. 135, at 3 & n.2.

- Frontier misleadingly cited the text of the parties' jointly-filed sixth request for extension of deadlines as "proof" that Plaintiffs' counsel had never objected to its lengthy delay in producing the documents the Court had ordered it to produce, without acknowledging that defense counsel had refused to include in that filing Plaintiffs' proposed language that specifically *did* object to the lengthy delay, and while knowing that Plaintiffs' counsel had complained orally about the same delay in several phone conversations with defense counsel. The Court accepted its misleading statement as true, and relied on it to deny the motions for sanctions. *See* ECF No. 135, at 4-6; ECF No. 150, at 2.

- Frontier falsely represented to the Court that a rule of federal law exists in the context of airline lawsuits requiring it to redact passenger-identifying information from documents "absent an order expressly prohibiting redactions." *See* ECF No. 134, at 2; ECF No. 164, at 7-8; ECF No. 169, at 4-5. No such rule of law exists, or ever did exist.

- Frontier misleadingly asserted to the Court that it had redacted passenger names from the produced documents because they were the names of minors and/or persons who did not know that the documents existed, knowing that such descriptions applied to less than one percent of the redacted documents (17 pages out of 2,422). The Court accepted Frontier's

misleading assertion as true, and used it as a basis for denial of Plaintiffs' motions. *See* ECF No. 169, at 1 & n.1; ECF No. 170, at 3; ECF No. 150, at 5 & n.2. The bottom-line conclusions to be drawn from Frontier's numerous false and misleading assertions are that it does not play fair where Plaintiffs' rights in this litigation are concerned, and it is not always truthful in its filings before this Court. Those established facts raise significant concerns where Frontier's pending Motion seeks to have the minor Plaintiff interrogated and tested behind closed doors by a psychologist acting completely under its direction.

## ARGUMENT

### I. The sole issue is whether A.D. sustained PTSD from the events of March 28, 2019, and any examination should be limited to that issue.

There is only one diagnosed condition pleaded in Plaintiffs' Third Amended Complaint concerning A.D., which is Post-Traumatic Stress Disorder, or PTSD. Plaintiffs allege it at Paragraph 54 of that pleading:

> 54. A.D. was also traumatized by the events on Flight 2067 described above, and he has suffered for months and years following the flight. He has suffered from fear, anxiety and apprehension, concern that his only surviving parent will be taken away from him again, terrifying nightmares, nausea and vomiting. He has been diagnosed with Post-Traumatic Stress Disorder, and he continues to be treated for that condition. Like Peter, his daily life has been affected by his symptoms, as well as by a constant apprehension that he will encounter similar abusive conduct from others and that they will separate him from his father. Like Peter, he also suffered anxiety, embarrassment, humiliation and other emotional distress as a result of Defendants' deliberate actions.

ECF No. 153, at 27-28. PTSD is the only condition that satisfies any of the conditions of *Turner v. Imperial Stores,* 161 F.R.D. 89, 95 (S.D. Cal. 1995), and therefore it is the only condition that meets the "in controversy" standard of Rule 35 to permit examination. *See also, Henry v. Ocwen Loan Servicing, Inc.,* Case No. 3:17-cv-688-JM-NLS (S.D. Cal. June 21, 2018); *Robertson v. City of San Diego,* Case No. 13CV1460 W (JLB) (S.D. Cal. Dec. 2, 2014).

With PTSD being the only diagnosis in controversy, good cause does not exist to examine any other aspect of A.D.'s mental health, his IQ, "cognitive abilities," "personality traits," "learning abilities," performance in school, other experiences he may have had in his life, or "other characteristics" that Frontier leaves wholly undefined. *See* ECF No. 183, at 5. A Rule 35 examination should not be used as a fishing expedition into all aspects of A.D.'s mind and his life experiences when the only condition in controversy is the PTSD that Plaintiffs have alleged resulted from the events of March 28, 2019. *See, Adele v. Dunn,* Case No. 2:12-cv-00597-LDG-PAL (D. Nev. Nov. 26, 2012), slip. op. at 5; *see also Haddock v. Westrock CP, LLC,* Case No. 1:19-cv-01390-SKO (E.D. Cal. Aug. 17, 2021). Frontier's claim that its examiner should be permitted to question A.D. about his "prior experiences," an argument it attempted to support by dishing up blatant mischaracterizations of deposition testimony and an interrogatory answer, *see* ECF No. 184 at 5-8, lacks authority under Rule 35 because nothing in this case even remotely suggests that A.D. had PTSD prior to the events of March 28, 2019. In fact, Plaintiffs have produced all of A.D.'s counseling records predating those events to Defendants in discovery, and Defendants have not made any assertion that those records indicate the presence of PTSD prior to the events of March 28, 2019. There is no issue about *when* A.D. suffered PTSD; the only matter in controversy is *whether* he suffered it after the events of March 28, 2019. That can be determined simply by reference to test results.

        As Plaintiffs have previously noted, A.D.'s PTSD diagnosis was the result of standardized psychological testing that was conducted nine months after the events of March 28, 2019, in December of 2019, by Plaintiff's expert. That expert is not a treating provider; she is a practitioner in a respected mental health facility in Durham, North Carolina who examined A.D. to determine the effects on him, if any, caused by the events of March 28, 2019. She made the PTSD diagnosis based on the following standardized tests: the M-PACI (Millon Pre-adolescent Child Inventory), an SCT

(Sentence Completion Test), and the BASC-3 (Behavior Assessment System for Children, 3d edition). Plaintiffs are due to disclose expert witnesses on September 30, and Plaintiffs will make the raw data of the test responses available with that disclosure. Defendants can have their expert review the data and opine whether it merits the PTSD diagnosis that was made by Plaintiffs' expert. They can also take the deposition of Plaintiffs' expert regarding her diagnosis. The very nature of a standardized psychological test is that its results should be usable by any expert, at any time. As the American Psychological Association states in its online Dictionary of Psychology, a standardized test is:

> 1. An assessment instrument whose validity and reliability have been established by thorough empirical investigation and analysis. It has clearly defined norms, such that a person's score is an indication of how well he or she did in comparison to a large group of individuals representative of the population for which the test is intended.
>
> 2. An assessment instrument administered in a predetermined manner, such that the questions, conditions of administration, scoring, and interpretation of responses are consistent from one occasion to another.

Https://dictionary.apa.org/standardized-test (last visited July 5, 2022). Particularly in light of the second part of that definition, there should be no need to administer a second bank of tests to A.D. to determine if he suffered PTSD if he has already been given such testing "in a predetermined manner." As an analogy, an MRI is a relatively stressful and time-consuming diagnostic test, that is always given under predetermined protocols. There would be no need for a Court to order a plaintiff to undergo a second MRI just because the defense asks for one, if there is already one that its expert could review. Indeed, one of the factors a Court must consider in determining whether "good cause" exists to order a Rule 35 examination is "the possibility of obtaining [the] desired information by other means." *Mailhoit v. Home Depot U.S.A., Inc.,* No. CV1103892DOCSSX, 2013 WL 12122580, at *4 (C.D. Cal. Jan. 24, 2013). Testing A.D. a second time would be stressful and time-consuming for him, and it would

cause him to relive traumatic experiences that he has spent the past three years working to put behind him, if possible. Such a stressful experience and expenditure of time is wholly unnecessary when the same data that would be obtained from the testing is already available to review.

However, if the Court does order further testing, it should limit the testing to that which would determine whether A.D. suffered PTSD as a result of the events of March 28, 2019. Those would be the same tests that resulted in the initial diagnosis, not the WASI, which measures "cognitive ability," or the PAI-A (despite Frontier's claim that it is "helpful in . . . deciphering between PTSD and depression," *see* ECF No. 183 at 4). PTSD and depression are two distinct mental conditions, and PTSD is not even listed as a depressive disorder in the *DSM-5*. Most critically, Plaintiffs have not put depression in controversy in this case, so there is no basis for ordering a Rule 35 examination to test for it, *see Turner*. Nor should the testing include the LEC-5 (Life Events Checklist for *DSM-5*) suggested in the revised protocol, *see id.,* as that test is solely based on examining the details of past life events to determine if any of them caused PTSD. As noted above, there is nothing in A.D.'s past psychological records that suggests he had PTSD prior to the events of March 28, 2019 (nor did any traumatic life events occur between those events and the testing in December, 2019). Furthermore, the testing certainly should not include "additional tests [that] may be necessary based on results of tests listed," *see id,* at 4. Permitting such an open-ended testing authority, especially when Frontier does not even indicate what such testing would include, would go far beyond the Court's discretion under Rule 35 and would amount to "an order requiring Plaintiff to submit to whatever examination Dr. [Holland] deems appropriate when [s]he sees

and hears from the Plaintiff." *Adele v. Dunn,* slip at 5 (bracketed material added). That is not appropriate. *Id.*

### II.  The Court should also not allow the three extra hours of "interviews" proposed by Dr. Holland.

If the Court does order the additional testing, which the revised protocol states will take "up to three (3) hours," *see* ECF No. 183 at 4, with Dr. Holland present administering the tests, the Court should not permit Dr. Holland to conduct an additional session "for up to 3 hours on topics including, but not limited to A.D.'s test results from the morning session." *See id.* The "including, but not limited to" clause suggests that Defendants want Dr. Holland to be free to ask about anything she wants, in spite of PTSD from the March 28, 2019 events being the only condition in controversy. As noted above, such an open-ended inquiry should not be permitted. *Adele.* Moreover, the results of standardized tests speak for themselves; Dr. Holland should not be permitted to manipulate the results of the tests by "interviewing" A.D. to elicit statements that were not part of the testing process. Dr. Holland is a trained psychologist and A.D. is a boy who just turned 15 a few months ago. There is considerable risk of overreaching and undue influence in such a situation, particularly where the "interview" would be conducted behind closed doors by Frontier's expert, with no one else present to monitor or record what is said. If the Court is going to permit another set of tests to go forward, then it should restrict Dr. Holland's interviewing of A.D. to that which is necessary to the administration of the standardized tests, and no more. In addition, there should not be any communication between Dr. Holland and defense counsel during her examination of A.D.

### III.  Rest breaks should be included in the Order, and Dr. Holland should not be permitted to be present when A.D. and Peter are together.

Preserving A.D.'s health and wellbeing should be the paramount concern. If the Court orders tests to be conducted, Plaintiffs respectfully suggest that there should be a ten-minute break each

hour, and an equal or longer break between different types of tests. A.D. should be permitted to see his father, Peter, for support during such breaks. There is no need for Dr. Holland to be present to monitor the private conversations between A.D. and Peter, and it would be improper to permit her to do so. Peter, who is a Certified Public Accountant, is not in any position to manipulate the outcome of any standardized psychological test, and he certainly would not have any idea what questions are going to be asked when A.D. returns to the testing room. The Court did not impose any such requirement in *Doe v. Equipo Academy,* Case No. 2:20-cv-01490-KJD-DJA (D. Nev. April 26, 2021), when it ordered that the minor child's parents could be present at the examination site for support. "Support" should include being able to speak freely as parent and child, and A.D. should be able to speak without fear of retribution about how Dr. Holland is treating him in the testing room. Also, allowing Dr. Holland to observe A.D. and Peter together would essentially extend her examination to Peter, despite Frontier's assertion in its Reply that Dr. Holland will not examine anyone other than A.D. *See* ECF No. 183 at 4.

## CONCLUSION

For all the reasons set forth above, Plaintiffs respectfully submit that Defendants' Motion should be denied, or, in the alternative, that the above conditions and limitations, as well as any others that the Court deems just and necessary for the well-being of the minor Plaintiff, should be included in any Order granting the examination.

DATED this 5th day of July, 2022.

        /s/ John D. McKay
        ***Attorney for Plaintiffs Peter DelVecchia***
        ***And A.D., a Minor***

PLAINTIFFS' SURREPLY IN OPPOSITION TO MOTION FOR MENTAL EXAMINATION
Page 8 of 8