CHARLES A. MICHALEK, ESQ.
Nevada Bar No. 5721
ROGERS, MASTRANGELO, CARVALHO & MITCHELL
700 South Third Street
Las Vegas, Nevada 89101
Phone: (702) 383-3400
Email: cmichalek@rmcmlaw.com

Lawrence S. Gosewisch (admitted *pro hac vice*)
Brian T. Maye (admitted *pro hac vice*)
Matthew D. Martin (admitted *pro hac vice*)
ADLER MURPHY & McQUILLEN LLP
20 South Clark Street, Suite 2500
Chicago, Illinois 60603
Phone: (312) 345-0700
Email: lgosewisch@amm-law.com
      bmaye@amm-law.com
      mmartin@amm-law.com

***Attorneys for Defendants Frontier Airlines, Inc., Scott Warren, and Rex Shupe***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| PETER DELVECCHIA, individually and as next friend of A.D., a Minor, <br><br> *Plaintiffs*, <br><br> v. <br><br> FRONTIER AIRLINES, INC., SCOTT WARREN, and REX SHUPE, <br><br> *Defendants*. | Case No.: 2:19-cv-01322-KJD-DJA <br><br> **FRONTIER'S MOTION FOR LEAVE TO RESPOND TO PLAINTIFFS' SUR-REPLY TO FRONTIER'S MOTION FOR RULE 35 MENTAL EXAMINATION** |

**DEFENDANT FRONTIER AIRLINES, INC's**
**MOTION FOR LEAVE TO RESPOND TO PLAINTIFFS' SUR-REPLY TO**
**FRONTIER'S MOTION FOR RULE 35 MENTAL EXAMINATION**

    Defendant Frontier Airlines, Inc., ("Frontier"), hereby files this Motion for Leave to Respond to Plaintiffs' Sur-Reply to Frontier's Motion for Rule 35 Mental Examination.

- 1 -

**Introduction**

1. Frontier has made every effort to ignore Plaintiffs' unfounded accusations that it deceived or somehow misled the Court into ruling against Plaintiffs on the issues of redactions and sanctions under false pretenses. See, *e.g.*, ECF 184, p. 2 (Plaintiffs asserted: "This is the latest offense in a long series of deliberate mischaracterizations of facts that Frontier has made on the record in this case in efforts to influence the Court improperly (several of which have been successful in misleading the Court, to Plaintiffs' detriment.")).

2. Frontier respectfully submits that Plaintiffs have again crossed the line and made comments that are beneath the integrity of this Court and also of Frontier's counsel. Unfortunately, Plaintiffs' recent Motion for Leave (ECF 184) and Sur-Reply (ECF 186) contain such significant and egregiously false accusations that Frontier is compelled to respond. With regret, Frontier begs the Court's indulgence.[1]

**Argument**

3. In their Response brief opposing Frontier's Motion for a Rule 35 Mental Examination of A.D., Plaintiffs raised several objections to Frontier's proposed tests and protocol and requested that several conditions be placed on the exam. See ECF 182.

4. One of the conditions requested by Plaintiffs was to limit the scope of the exam to focusing only on whether A.D.'s alleged post-traumatic stress disorder (PTSD) relates solely to the events at issue in this lawsuit, which allegedly occurred on March 28, 2019. *Id*. at p. 7.

5. Plaintiffs allege, generally, that on March 28, 2019, Frontier's crewmembers wrongfully reported concerns of inappropriate touching based on their shared racial animus toward White people who

---

[1] A copy of Frontier's proposed Response is attached hereto as **Exhibit A**.

adopt Black children. See ECF 153, p. 2; see also ECF 177, p. 11, n. 6 (claiming a Black male flight attendant's actions were "encouraged and sanctioned" by other White crewmembers).

6. In Frontier's Reply brief in support of its Rule 35 Motion, Frontier objected to Plaintiffs' proposal to limit the scope of the exam to focusing only on whether A.D.'s alleged PTSD was caused by the events on March 28, 2019. In support, Frontier noted that Plaintiffs have disclosed two prior instances – one involving a different airline and another involving a movie theatre – when they were questioned by law enforcement under similar circumstances. Frontier specifically stated:

"Plaintiffs have disclosed through their deposition testimony and answers to written interrogatories that there have been other occasions when they were questioned under similar circumstances by authorities based on concerns of inappropriate physical contact. One instance involved a movie theatre, and another involved a different airline. Dr. Holland should be permitted to question A.D. about his prior experiences, including but not limited to those referenced above, to complete her examination and assess the PTSD that he allegedly suffered because of the events on March 28, 2019." ECF 183, p. 6.

7. Plaintiffs accuse Frontier of misleading the Court by referencing "other occasions when they were questioned under similar circumstances by authorities based on concerns of inappropriate physical contact." Plaintiffs claim the quoted statement is an "intentional slur of Plaintiffs in the Reply by mischaracterizing certain testimony." ECF 184, p. 2.

8. A portion of the transcript of Peter DelVecchia's deposition is attached hereto as **Exhibit B**.

9. Peter described the prior airline incident as follows:

"I probably should say right now, A.D. is an incredibly affectionate person, and he was probably ten at the time, and he put his head on my shoulder, and he fell asleep, and I fell asleep as well. And I was informed, when I got off the plane, by the FBI, that a passenger reported it to an airline attendant, who then asked the police to question us once we landed." Ex. B, p. 81; 8-16.

10. Regarding the prior incident in the movie theatre, Peter testified that he and A.D. were asked to step outside during the film "Black Panther." Peter said A.D. was "very upset" about missing a

particular scene from the movie. Ex. A, p. 90, 15-22. Peter said that once they were outside of the theatre, the police explained the concerns reported by other movie patrons:

"[The police] said that I was holding his hand, and that my hand was resting against his leg, and that somebody called them and said that they were concerned about abuse of a minor. And he didn't say sexual abuse, but he said abuse of a minor. And then they talked to A.D. apart from me." Ex. B, p. 91; 17-23.

11. Peter's testimony quoted above supports the reasonable inference that there were "other occasions when [Peter and A.D.] were questioned under similar circumstances by authorities based on concerns of inappropriate physical contact." See ECF 183, p. 6.

12. Regarding the prior airline incident, based on Peter's testimony, a reasonable inference can be drawn that A.D.'s tendency to be "incredibly affectionate" was a contributing factor when a passenger made a report resulting in police involvement. Moreover, the prior airline incident and the current dispute both involve fact patterns where a witness reported concerns while Peter and A.D. were both asleep. See Plaintiffs' Third Amended Complaint at ECF 153, p. 3. That A.D. fell asleep during the prior airline incident with his head on Peter's shoulder further supports the inference that Peter and A.D. were questioned based on concerns of inappropriate contact.

13. Regarding the prior theatre incident, Peter unambiguously testified that police were called over concerns about the "abuse of a minor." Peter's testimony also suggests the incident may have significantly impacted A.D., who was "very upset" about having to leave during an important scene in the movie. In addition, it is relevant that Peter and A.D. were separated for questioning outside the movie theatre, as Plaintiffs claim A.D.'s daily life is affected by his "constant apprehension that he will encounter similar abusive conduct from others and that they will separate him from his father." ECF 153, at ¶54.

14. Despite Peter's testimony that A.D. is an "incredibly affectionate person," and that the prior theatre incident involved concerns about the "abuse of a minor," Plaintiffs saw fit to accuse Frontier of making a "blatant suggestion of such deplorable and lascivious contexts to the testimony is clearly aimed at attempting to defame Peter and A.D. in the Court's eyes – which would be actionable in any unprivileged setting, and is entirely improper in this one." ECF 184, p. 7.

15. Plaintiffs' comments are improper and out of line. Frontier did not defame Plaintiffs, nor did Frontier suggest anything "deplorable and lascivious" by asserting the prior incidents discussed above involved questioning by law enforcement under "similar circumstances."

16. This case is about whether Frontier's flight attendants were racially motivated to falsify reports regarding their concerns of inappropriate contact. It is highly relevant that Plaintiffs have been questioned by authorities after they slept through a prior flight and held hands in a movie theatre. A thorough Rule 35 exam must necessarily include an assessment of whether the prior incidents played a role in A.D.'s alleged PTSD diagnosis.

17. Aside from Plaintiffs' remarks about the prior airline and theatre incidents, Plaintiffs have also made questionable claims in challenging the tests proposed by Frontier as part of the protocol for A.D.'s Rule 35 exam.

18. For instance, in their Response to Frontier's Motion for a Rule 35 Mental Examination, Plaintiffs said Frontier's proposed "BASC" test "is apparently the Behavior Assessment System for Children." ECF 182, p. 4. Plaintiffs further argued that Frontier's retained psychologist, Dr. Stephanie Holland, should not be allowed to administer the "BASC" test, because "Plaintiffs have not placed A.D.'s behavior in controversy…" *Id*.

19. Yet in their Sur-Reply, Plaintiffs acknowledge that in December 2019, their own psychologist performed the **"BASC-3 (Behavior Assessment System for Children, 3d edition)."** (Emphasis added) ECF 186, pp. 4-5.

20. Plaintiffs also argued in their Response to Frontier's Motion for a Rule 35 Mental Examination that A.D. should not be subjected to a standard intelligence screening for children, asserting they have "not placed A.D.'s IQ in controversy." ECF 182, p. 4.

21. However, Plaintiffs reveal in their Sur-Reply that their own psychologist administered a **"Sentence Completion Test."** (Emphasis added) ECF 186, pp. 4-5.

22. It is incongruous that Plaintiffs would argue in the first round of briefing that A.D.'s behavior and intelligence are not conditions in controversy, only to reveal in a Sur-reply that their own psychologist administered tests for behavior and sentence completion in December 2019.

23. Dr. Holland should be permitted to administer the tests she deems necessary for her exam, even if similar tests were administered more than two-and-a-half years ago.

24. Frontier respectfully submits that out of fairness, this Court should exercise its broad discretion and grant the instant Motion allowing Frontier to file a Response to Plaintiffs' Sur-Reply.

**Conclusion**

For the reasons stated, Frontier asks this Court to grant its Motion for Leave to File the attached Response to Plaintiffs' Sur-Reply to Frontier's Motion for Rule 35 Mental Examination, and for any other relief this Court deems just and proper.

DATED this 11th day of July, 2022                  Respectfully submitted,

/s/ Brian T. Maye
Lawrence S. Gosewisch (admitted *pro hac vice*)
Brian T. Maye (admitted *pro hac vice*)
Matthew D. Martin (admitted *pro hac vice*)

ADLER MURPHY & McQUILLEN LLP
20 South Clark Street, Suite 2500
Chicago, Illinois 60603
Phone: (312) 345-0700
Email: lgosewisch@amm-law.com
       bmaye@amm-law.com
       mmartin@amm-law.com

Charles A. Michalek (Nevada Bar No. 5721)
ROGERS, MASTRANGELO, CARVALHO & MITCHELL
700 South Third Street
Las Vegas, Nevada 89101
Phone: (702) 383-3400
Email: cmichalek@rmcmlaw.com

***Attorneys for Defendants Frontier Airlines, Inc., Scott Warren & Rex Shupe***

# CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2022, I caused the foregoing to be electronically filed with the United States District Court for the District of Nevada using the CM/ECF system.

John D. McKay
PARK AVENUE LAW LLC
201 Spear Street, Suite 1100
San Francisco, CA 94105
Phone: (800) 391-3654
Email: johndmckayatty@gmail.com

Timothy R. Titolo
TITOLO LAW OFFICE
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
Phone: (702) 869-5100
Email: tim@titololaw.com

*Attorneys for Plaintiffs*

By: /s/ Brian T. Maye