# EXHIBIT A

CHARLES A. MICHALEK, ESQ.
Nevada Bar No. 5721
ROGERS, MASTRANGELO, CARVALHO & MITCHELL
700 South Third Street
Las Vegas, Nevada 89101
Phone: (702) 383-3400
Email: cmichalek@rmcmlaw.com

Lawrence S. Gosewisch (admitted *pro hac vice*)
Brian T. Maye (admitted *pro hac vice*)
Matthew D. Martin (admitted *pro hac vice*)
ADLER MURPHY & McQUILLEN LLP
20 South Clark Street, Suite 2500
Chicago, Illinois 60603
Phone: (312) 345-0700
Email: lgosewisch@amm-law.com
         bmaye@amm-law.com
         mmartin@amm-law.com

***Attorneys for Defendants Frontier Airlines, Inc.,
Scott Warren, and Rex Shupe***

**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

| | |
|---|---|
| PETER DELVECCHIA, individually and as next friend of A.D., a Minor,<br><br>*Plaintiffs*,<br><br>v.<br><br>FRONTIER AIRLINES, INC., SCOTT WARREN, and REX SHUPE,<br><br>*Defendants*. | Case No.: 2:19-cv-01322-KJD-DJA<br><br>**FRONTIER'S RESPONSE TO PLAINTIFFS' SUR-REPLY TO FRONTIER'S MOTION FOR RULE 35 MENTAL EXAMINATION** |

**DEFENDANT FRONTIER AIRLINES, INC's
RESPONSE TO PLAINTIFFS' SUR-REPLY
<u>TO FRONTIER'S MOTION FOR RULE 35 MENTAL EXAMINATION</u>**

Defendant Frontier Airlines, Inc., ("Frontier"), hereby Responds to Plaintiffs' Sur-Reply to Frontier's Motion for Rule 35 Mental Examination.

- 1 -

# INTRODUCTION

Plaintiffs provide a perfect example of why sur-replies are "highly disfavored, as they usually are a strategic effort by the nonmovant to have the last word on a matter." *Avery v. Barsky*, No. 3:12-cv-0652, 2013 WL 1663612, at *2 (D. Nev. Apr. 17, 2013).

In Response to Frontier's Rule 35 Motion, Plaintiffs challenged nearly every aspect of Frontier's proposed protocol for A.D.'s exam and argued, alternatively, that a series of additional "safeguards" should be imposed if the Court allows Dr. Stephanie Holland to examine A.D. ECF 182, p. 5. Contrary to Plaintiffs' allegations, Frontier did not raise any new arguments in its Reply brief in support of its Rule 35 Motion. Frontier simply responded to Plaintiffs' arguments and alternative requests for additional "safeguards." In addition, Frontier made significant concessions and proposed a revised protocol that eliminated several contested aspects of the exam. Frontier hoped that making these concessions would simplify the issues in dispute. However, proving that no good deed goes unpunished, Plaintiffs responded that Frontier might have "proposed the original protocol as a 'stalking horse,' always intending to propose the second version in their Reply, affording Plaintiffs no opportunity to respond." ECF 184, p. 5.

Plaintiffs are wrong to again accuse Frontier of "misleading" the Court, they are wrong to accuse Frontier of bad faith in its concessions regarding the Rule 35 protocol, and they are wrong to argue that Frontier's proposed revisions to the protocol include anything improper for examining a minor who claims to have suffered post-traumatic stress disorder ("PTSD"). Frontier respectfully requests that this Court grant Frontier's Motion for a Rule 35 Mental Examination of A.D. in accordance with the revised protocol that Frontier proposed in its Reply brief. See ECF 183, p. 4.

## I.     Frontier has not Misled the Court

Plaintiffs' Sur-Reply begins with a wholly improper and erroneous characterization of events that have nothing to do with Frontier's underlying Motion for a Rule 35 Mental Examination. Plaintiffs accuse

Frontier of making "numerous false and misleading assertions" and suggest that Frontier's counsel cannot be trusted to facilitate an appropriate Rule 35 examination. ECF 186, pp. 2-3. Plaintiffs' grievances trace back to the Court's denial of their successive motions for sanctions based on (1) the timing of Frontier's production of documents and (2) the redactions therein for sensitive passenger and employee information.

In its Response to Plaintiffs' first motion for sanctions, regarding the timing of its production, Frontier argued that Plaintiffs had entered multiple stipulations to extend discovery deadlines wherein they agreed that both parties were working diligently to complete discovery and Frontier required additional time to search for responsive documents. ECF 134, p. 5. Regarding the propriety of the redactions, Frontier asserted the following:

> Plaintiffs have not established that the identities of the passengers involved in unrelated incidents and involving unrelated crew members are relevant or proportional to the needs of the case; nor have they shown that the disclosure of the information would outweigh the privacy interests of Frontier's passengers. Disclosure of this information is particularly concerning given the sensitive nature of the underlying documents and the fact that some of these passengers may be wholly unaware that these documents even exist. Therefore, Frontier was justified in redacting the passenger's identifying information and requests the Court allow those redactions to stay in place. *Id.* at p. 12.

Plaintiffs claim the statements above misled the Court into erroneously denying their motions for case-ending sanctions. ECF 186, pp. 2-3. Plaintiffs made the same argument in support of their Fourth Motion to Compel (ECF 169, p. 2), and again in their recent Motion for Leave to File Sur-Reply (ECF 184, p. 2). Frontier will not burden the Court with a line-by-line analysis addressing Plaintiffs' many false accusations of wrongdoing. The pleadings and exhibits in the record speak for themselves, and Frontier has confidence the Court is capable of drawing its own conclusions.

Of course, Plaintiffs also maintain Frontier should have been sanctioned for arguing its redactions are supported by *Anders v. United Airlines, Inc.*, No. CV 19-5809-GW (KS), 2020 U.S. Dist. LEXIS 250250, at *9-10 (C.D. Cal. 2020). According to Plaintiffs, in relying on *Anders* and its treatment of 14

- 3 -

C.F.R. § 243.9, Frontier "falsely represented to the Court that a rule of federal law exists in the context of airline lawsuits requiring it to redact passenger-identifying information from documents." ECF 186, p. 2.

Again, Frontier will not waste the Court's time arguing the propriety of the *Anders* ruling or summarizing its reasons for redacting the disputed passenger contact information. Frontier submits only that claiming a court has been misled is a serious allegation, and one which Plaintiffs make far too lightly and far too frequently. The problem with Plaintiffs' case is not misleading defense arguments or improper judicial rulings. The problem is that Plaintiffs have set out to prove a discrete episode of intentional discrimination against bi-racial family members based on hundreds of unrelated complaints that have nothing to do with this case.

In sum, whether the Court ruled properly on the propriety of Frontier's redactions has nothing to do with Frontier's instant Rule 35 Motion, and Plaintiffs have used their Sur-Reply as a vehicle to again express their discontent over their inability to contact Frontier's former passengers who know absolutely nothing about the facts alleged in this case. The Court should disregard the arguments discussed above in their entirety and consider using its inherent sanction authority to discourage Plaintiffs from continuing to claim Frontier has misled the Court. See *Hernandez v. Franco American Baking Co.*, No. 3:20-cv-00628-LRH-WGC, 2021 U.S. Dist. LEXIS 244149, at *5 (D. Nev. Sep. 3, 2021).

**II.      Frontier has not Mischaracterized Deposition Testimony**

Frontier noted in its Reply in Support of its Motion for a Rule 35 Mental Examination of A.D.:

> "Plaintiffs have disclosed through their deposition testimony and answers to written interrogatories that there have been other occasions when they were questioned under similar circumstances by authorities based on concerns of inappropriate physical contact. One instance involved a movie theatre, and another involved a different airline. Dr. Holland should be permitted to question A.D. about his prior experiences, including but not limited to those referenced above, to complete her examination and assess the PTSD that he allegedly suffered because of the events on March 28, 2019." ECF 183, p. 6.

In their Sur-Reply, Plaintiffs claim that in the quoted language above, Frontier was "dishing up blatant mischaracterizations of deposition testimony and an interrogatory answer." ECF 186, p. 4.

As Frontier explained in its Motion for Leave to Respond to Plaintiffs' Sur-Reply, during his deposition, Peter DelVecchia described a prior incident involving a different airline as follows:

> "I probably should say right now, A.D. is an incredibly affectionate person, and he was probably ten at the time, and he put his head on my shoulder, and he fell asleep, and I fell asleep as well. And I was informed, when I got off the plane, by the FBI, that a passenger reported it to an airline attendant, who then asked the police to question us once we landed." ECF 187, p. 3.

As Frontier explained in its Motion for Leave to Respond to Plaintiffs' Sur-Reply, during his deposition, Peter DelVecchia also testified about an incident during which he and A.D. were asked to step outside during the film "Black Panther." Peter said A.D. was "very upset" about missing a particular scene from the movie. Peter said once they were outside of the theatre, the police explained the concerns reported by other movie patrons:

> "[The police] said that I was holding his hand, and that my hand was resting against his leg, and that somebody called them and said that they were concerned about abuse of a minor. And he didn't say sexual abuse, but he said abuse of a minor. And then they talked to A.D. apart from me." ECF 187, pp. 3-4.

Plaintiffs are wrong to accuse Frontier of mischaracterizing Peter DelVecchia's deposition testimony. Frontier submits that the prior episodes were accurately described by Frontier's counsel as "other occasions when [Peter and A.D.] were questioned under similar circumstances by authorities based on concerns of inappropriate physical contact." See ECF 183, p. 6.

**III.    A Thorough Rule 35 Exam Cannot be limited Solely to the Events of March 28, 2018**

Plaintiffs argue that Frontier is attempting to conduct a "fishing expedition into all aspects of A.D.s mind and his life experiences when the only condition in controversy is the PTSD that Plaintiffs have alleged resulted from the events of March 28, 2019." ECF 186, p. 4. Plaintiffs claim the prior incidents

- 5 -

with the other airline and in the theatre had nothing to do with concerns of inappropriate conduct and everything to do with racism. According to Plaintiffs, those events did not involve "similar circumstances" to those alleged in this case, "because in both of those prior events, the police politely allowed them to return to their activities immediately after learning that they are father and son." ECF 184, p. 8.

Regarding the prior airline incident, the reasonable inference can be drawn that Peter's testimony about A.D.'s tendency to be "incredible affectionate" was at least a contributing factor to the passenger report and resulting police involvement. Moreover, the prior airline incident and current dispute both involve fact patterns where a witness reported concerns while Peter and A.D. were both asleep. See Plaintiffs' Third Amended Complaint at ECF 153, p. 3.

Regarding the prior theatre incident, Peter unambiguously testified that police were called over concerns about "abuse of a minor." Peter's testimony also suggests the incident may have significantly impacted A.D., who was "very upset" about having to leave during an important scene in the movie. Frontier thus submits that the prior episodes described by Peter are relevant to this case for numerous reasons, and a thorough Rule 35 exam must necessarily include an assessment of whether the prior episodes played a role in A.D.'s alleged PTSD diagnosis.

It is also noteworthy that Plaintiffs have gone to great lengths to paint a vivid picture of the enduring harms they have suffered at the hands of racist individuals who are resentful toward bi-racial families comprised of White parents and Black children. For example, Peter DelVecchia offered the following Answer to an Interrogatory:

> 20. Identify all instances, from 2014 to the present, where your relationship with A.D. has been misperceived, including, but not limited to the date, location, whether law enforcement was called, and name of person misperceiving your relationship, if known. Also identify whether you were accused of human trafficking or sexual abuse in each such instance.

- 6 -

> **ANSWER: On the plane as noted above. I do not have dates on other incidents but they are as follows:**
>
> • **In a movie theater in Wilmington NC a black couple next to us (only people around) called the police because AD had his hand on my hand – he was 11. A few minutes of questions resolved it.**
>
> • **People in moving cars have shouted racist comment at us when bike riding, walking or playing at the park, since he has been 6 years old. Garbage has been thrown at us as well. I do not recall time and place. These were done by black people who made comments that a black child should not be in a white family and sometimes that I bought a slave.**
>
> • **We have been approached in grocery stores by people making comments that I took him as a slave.**

Notably, Plaintiffs argue the only condition in controversy is A.D.'s alleged PTSD, but they also assert A.D. suffers from fear, terrifying nightmares, nausea, vomiting, anxiety, embarrassment, humiliation, and "other emotional distress." ECF 186, p. 3. Yet, according to Plaintiffs, A.D.'s symptoms were caused exclusively by the Frontier incident, and they have nothing to do with being questioned by police after a different flight, being removed from a theatre for questioning by police, having garbage thrown at him, being called a slave, and being victimized in public since the age of 6 by complete strangers shouting racist insults.

Plaintiffs' desire to narrow the scope of A.D.'s Rule 35 exam to the events that took place on the day in question is untenable. The prior episodes described by Peter are highly relevant to this case for numerous reasons, and a thorough Rule 35 exam must necessarily include an assessment of whether the prior episodes played a role in A.D.'s alleged PTSD diagnosis.

IV.  **Plaintiffs' Arguments as to Testing are Improper**

Plaintiffs had their chance to challenge Frontier's proposed tests in their Response brief opposing Frontier's Rule 35 motion. In doing so, Plaintiffs noted Frontier's proposed "BASC" test is "apparently the Behavior Assessment System for Children." ECF 182 at p. 4. Plaintiffs further argued that Dr.

- 7 -

Stephanie Holland should not be allowed to administer the BASC test, because "Plaintiffs have not placed A.D.'s behavior in controversy…" *Id*. However, in their Sur-Reply, Plaintiffs acknowledge that in December 2019, their own psychologist already performed the **"BASC-3 (Behavior Assessment System for Children, 3d edition)."** (Emphasis added) ECF 186, pp. 4-5.

Plaintiffs also argued in their Response brief that A.D. should not be subjected to a standard intelligence screening for children because they have "not placed A.D.'s IQ in controversy." ECF 182, p. 4. However, Plaintiffs reveal in their Sur-Reply that their own psychologist administered a **"Sentence Completion Test."** (Emphasis added) ECF 186, pp. 4-5.

In other words, Plaintiffs argued during the first round of briefing that A.D.'s behavior and intelligence are not conditions in controversy, but then revealed in their Sur-Reply that their own psychologist has already administered tests for behavior and sentence completion. At the same time, Plaintiffs accuse Frontier of being underhanded in its attempts to strike a compromise on the Rule 35 protocol. Again, Frontier will resist the urge to express its frustration with Plaintiffs' actions. Frontier asserts only that Plaintiffs have made no showing of any danger or actual harm that would result from A.D.'s testing and leveling the playing field for a Rule 35 exam requires allowing Dr. Holland to administer the exam in the manner she sees fit.

**V.     Breaks**

It was Plaintiffs who raised the issue of breaks, asking the Court to order that Plaintiff Peter DelVecchia be allowed to support A.D. during breaks from the examination. *Id*. at 6. Frontier responded to Plaintiffs' request by stating its agreement that Peter could support A.D. during breaks, but with the caveat that Dr. Holland must be present due to the risk of Peter influencing A.D. ECF 183, p. 6. Frontier also acquiesced to Plaintiffs' demands that Dr. Holland would not interview Peter, either alone or with A.D. (Compare protocols at ECF 180-3 and ECF 183, p. 4).

In withdrawing its request for Dr. Holland to interview Peter and agreeing to allow Peter to support A.D. during breaks, but also requesting that Dr. Holland be present at all times, Frontier hoped to steer this dispute toward an amicable middle ground. The manner in which A.D. interacts with Peter is at the center of this case. A.D. is now 15 years old, and Plaintiffs have raised no valid concerns about Dr. Holland's credentials or professionalism. Respectfully, Dr. Holland should be trusted and permitted to conduct the exam in the manner she sees fit, even if that means she is present during breaks while A.D. interacts with Peter.

## Conclusion

For the reasons stated, Frontier respectfully submits that the Court should GRANT Frontier's Motion for Rule 35 Mental Examination, and for any other relief this Court deems just and proper.

DATED this 11th day of July, 2022         Respectfully submitted,

/s/
Lawrence S. Gosewisch (admitted *pro hac vice*)
Brian T. Maye (admitted *pro hac vice*)
Matthew D. Martin (admitted *pro hac vice*)
ADLER MURPHY & McQUILLEN LLP
20 South Clark Street, Suite 2500
Chicago, Illinois 60603
Phone: (312) 345-0700
Email: lgosewisch@amm-law.com
         bmaye@amm-law.com
         mmartin@amm-law.com

Charles A. Michalek (Nevada Bar No. 5721)
ROGERS, MASTRANGELO, CARVALHO & MITCHELL
700 South Third Street
Las Vegas, Nevada 89101
Phone: (702) 383-3400
Email: cmichalek@rmcmlaw.com

***Attorneys for Defendants Frontier Airlines, Inc., Scott Warren & Rex Shupe***

**CERTIFICATE OF SERVICE**

I hereby certify that on July 11, 2022, I caused the foregoing to be electronically filed with the United States District Court for the District of Nevada using the CM/ECF system.

John D. McKay
PARK AVENUE LAW LLC
201 Spear Street, Suite 1100
San Francisco, CA 94105
Phone: (800) 391-3654
Email: johndmckayatty@gmail.com

Timothy R. Titolo
TITOLO LAW OFFICE
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
Phone: (702) 869-5100
Email: tim@titololaw.com

***Attorneys for Plaintiffs***

By: /s/ _____