UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Peter DelVecchia, individually and as next friend of A.D., a minor,<br><br>   Plaintiff,<br><br>v.<br><br>Frontier Airlines, Inc., et al.,<br><br>   Defendants. | Case No. 2:19-cv-01322-KJD-DJA<br><br>**Order** |

This is a discrimination action arising out of Frontier's separation of Peter DelVecchia and his adopted son, A.D., during a flight for suspected human trafficking. Plaintiffs sue Defendant Frontier Airlines, Inc. for damages, claiming that the airline racially profiled them. Plaintiffs allege that A.D. was traumatized by the event; has been diagnosed with Post Traumatic Stress Disorder; and suffers from fear, anxiety, apprehension, nightmares, nausea, and vomiting. (ECF No. 153 at 27). Frontier moves the Court to order A.D. to undergo a mental exam under Federal Rule of Civil Procedure 35. (ECF No. 180). Because the Court finds that Frontier has demonstrated that A.D.'s mental wellbeing is in controversy and that Frontier has demonstrated good cause, but that certain conditions should be modified, it grants Frontier's motion in part and denies it in part. The Court finds these matters properly resolved without a hearing. LR 78-1.

**I.    Background.**

  ***A.    Frontier's motion, Plaintiffs' response, and Frontier's reply.***

In its motion, Frontier argues that Plaintiffs have placed A.D.'s mental wellbeing at issue and thus, the Court should allow its expert—Dr. Stephanie Holland—to conduct an exam of A.D. (ECF No. 180).

> Dr. Holland has proposed examining A.D. over two days. Before examining A.D., Dr. Holland would conduct a clinical interview with Peter using a HIPPA-compliant video platform, such as

> Telehealth, at a mutually agreeable time.  Thereafter, over the course of two days, her examination would consist of an in-person[1] interview with both Peter[2] and A.D., followed by further interviews and testing (including, but not limited to, WISC, BASC, BDI II, CAPS-5, LEC-5, and PAI-A) of A.D. alone.  The raw data generated from these tests would be produced to Plaintiffs.  Following the examination, Dr. Holland may conduct telephone interviews with A.D.'s siblings, teachers, social workers, therapists, and psychiatrist.

(*Id.* at 8) (internal citations omitted).

Plaintiffs respond and concede that Frontier has demonstrated that A.D.'s condition is in controversy and that good cause exists to conduct the exam.  (ECF No. 182).  But they argue that an exam will further harm A.D. and is unnecessary because the exam is "likely to be identical to the standardized testing that Plaintiffs' expert psychologist has already conducted." (*Id.* at 3).  They add that Frontier's description of the exam is not detailed enough—because it does not explain the test acronyms it suggests—and is overbroad because it involves tests unrelated to PTSD, provides that tests are "not limited" to those mentioned, and includes interviews with Peter and other individuals.  (*Id.* at 3-5).  To the extent the Court grants the exam, Plaintiffs argue it should be limited to: (1) provide reasonable travel accommodations based on their availability; (2) prevent observers or recording devices from being in the room; (3) allow Peter to be present to support A.D. during breaks; (4) prevent Dr. Holland from questioning Peter; (5) give A.D. time in advance of the exam to complete any necessary forms; (6) prevent Dr. Holland from asking about attorney-client privileged communications; (7) require Dr. Holland to conduct only those tests necessary for evaluating PTSD because of the events on the Frontier flight; (8) require Dr. Holland to conduct the exam in a non-adversarial manner; and (9) limit the exam to a total of four hours including interviews and testing.  (*Id.* at 5-7).

---

[1] Frontier initially contemplated Dr. Holland conducting her exam in Las Vegas.  (ECF No. 180 at 7).  This would have required Plaintiffs to travel because they are residents of North Carolina. (ECF No. 183 at 4).

[2] Both Plaintiffs and Frontier refer to Peter DelVecchia as "Peter."  To remain consistent with quoted portions of the briefs and to avoid confusion, the Court refers to Mr. DelVecchia as Peter as well.

Frontier replies and agrees to certain of Plaintiffs' conditions but disagrees with others. (ECF No. 180).  While Frontier offers to conduct the exam near A.D.'s home in North Carolina, it disagrees with Peter being present for breaks outside of Dr. Holland's presence, concerned that Peter will influence A.D.  (*Id.* at 4-7 6).  It adds that, while it agrees to withdraw the BD-II (depression) test and use an abbreviated WISC (intelligence) test, the other tests—WASI (intelligence), BASC-3 (behavior assessment), and PAI-A (personality assessment)—are critical to Dr. Holland's exam.  (*Id.* at 4-5).  Frontier adds that it cannot confine the tests to the incident on the Frontier flight because,

> Plaintiffs have disclosed through their deposition testimony and answers to written interrogatories that there have been other occasions when they were questioned under similar circumstances by authorities based on concerns of inappropriate physical contact.  One instance involved a movie theater, and another involved a different airline.  Dr. Holland should be permitted to question A.D. about his prior experiences…to complete her examination and assess that the PTSD that he allegedly suffered [is] because of the events on [the Frontier flight].

(*Id.* at 6).

Finally, Frontier proposes an exam up to six hours with three hours in the morning to conduct testing and three hours in the afternoon to interview A.D.  (*Id.* at 4).

### B.   *Plaintiffs' sur-reply and Frontier's response.*

Plaintiffs then filed a sur-reply after the Court granted their motion to do so.  (ECF No. 186).  In it, Plaintiffs outline misrepresentations they allege Frontier made in other motions to support their argument that Frontier cannot be trusted to "have the minor Plaintiff interrogated and tested behind closed doors by a psychologist acting completely under its direction."[3]  (*Id.* at 2-3).  Plaintiffs accuse Frontier of "dishing up blatant mischaracterizations of deposition testimony and an interrogatory answer" in describing the other instances Peter and A.D. were questioned by authorities.  (*Id.* at 4).  They add that, if the Court did allow the Rule 35 exam, it

---

[3] The Court does not discuss these other alleged misrepresentations because they are unrelated to the instant motion.  Additionally, the Court does not find that these alleged misrepresentations demonstrate Frontier's intent to manipulate the Rule 35 exam.

should limit it to only the event on the Frontier flight because A.D.'s counseling records do not indicate the presence of PTSD before the flight.[4] (*Id.*). Plaintiffs adds that that any exam should be limited to tests related directly to PTSD, that the test should be limited to only the first three hours Frontier proposes, and that Dr. Holland should not be present with Peter and A.D. during breaks. (*Id.* at 6-8).

Frontier filed a response after the Court granted its motion to respond. (ECF No. 189). It argues that Plaintiffs' accusation that it blatantly mischaracterized deposition testimony and interrogatories is false. (*Id.* at 5-7). It points out the portions of Peter's testimony and interrogatories that support its statement that there were "other occasions when [Peter and A.D.] were questioned under similar circumstances by authorities based on concerns of inappropriate physical contact." (*Id.* at 4-7). It explains that the incident on the Frontier flight was not the first time Peter and A.D. were questioned by the FBI after exiting a flight:

> I probably should say now, A.D. is an incredibly affectionate person, and he was probably ten at the time, and he put his head on my shoulder, and he fell asleep, and I fell asleep as well. And I was informed, when I got off the plane, by the FBI, that a passenger reported it to an airline attendant, who then asked the police to question us once we landed.

(ECF 187-2 at 4).

Peter and A.D. were also questioned by the police during a movie:

> [The police] said that I was holding his hand, and that my hand was resting against his leg, and that somebody called them and said that they were concerned about abuse of a minor. And he didn't say sexual abuse, but he said abuse of a minor. And then they talked to A.D. apart from me.

(*Id.* at 14).

---

[4] Plaintiffs assert that their own expert psychologist conducted the BASC-3 (Behavior Assessment for Children, 3d edition) test on A.D. as part of "standardized" testing for diagnosing A.D. with PTSD. (ECF No. 186 at 4). But Plaintiffs previously argued that the BASC-3 test was unnecessary for Frontier's expert to use because "Plaintiffs have not placed A.D.'s behavior in controversy," only his PTSD. (ECF No. 182 at 4). The argument that a test is "standard" when conducted by Plaintiffs' expert, but "unnecessary" if conducted by Frontier's is untenable.

Peter testified that A.D. was "very upset" about missing an important scene in the movie when this happened. (*Id.* at 13). Frontier adds that Peter and A.D. endured other abuse, which abuse could reasonably cause some sort of emotional distress. (ECF No. 189 at 5-6). Frontier points to one of Peter's interrogatory responses for this assertion:

> 20. Identify all instances, from 2014 to the present, where your relationship with A.D. has been misperceived, including, but not limited to the date, location, whether law enforcement was called, and the name of the person misperceiving your relationship, if known. Also identify whether you were accused of human trafficking or sexual abuse in each such instance.
>
> ANSWER: On the plane as noted above. I do not have dates on other instances but they are as follows:
> - In a movie theater in Wilmington NC a black couple next to us (only people around) called the police because AD [sic] had his hand on my hand – he was 11. A few minutes of questions resolved it.
> - People in moving cars have shouted racist comment [sic] at us when bike riding, walking or playing at the park, since he has been 6 years old. Garbage has been thrown at us as well. I do not recall the time and place. These were done by black people who made comments that a black child should not be in a white family and sometimes that I bought a slave.
> - We have been approached in grocery stores by people making comments that I took him as a slave.
>
> (*Id.* at 7).

Frontier argues that it is entitled to learn whether A.D.'s symptoms were caused exclusively by the incident on its plane or whether these other instances contributed to his PTSD. (*Id.*). Frontier concludes that asking for Dr. Holland to be present during breaks is an acceptable request. (*Id.* at 8-9).

## II.  Discussion.

The court "may order a party whose mental or physical condition—including blood group—is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). "The order [for physical or mental examination]: …may be made only on motion for good cause and on notice to all parties and the person to be examined." Fed. R. Civ. P. 35(a)(2)(A). "The decision whether to order a Rule 35 examination is

discretionary even when the 'good cause' and 'in controversy' requirements are met. *Adele v. Dunn*, No. 2:12-cv-597-LDG-PAL, 2012 WL 5944705 at* 2 (D. Nev. Nov. 26, 2012) (citing *Schlagenhauf v. Holder*, 379 U.S. 104 (1964)). The order must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it. Fed. R. Civ. P. 35(a)(1)(2)(B).

The Court grants Frontier's motion for a Rule 35 exam in part and creates modifications on the exam. Plaintiffs have conceded that Frontier has demonstrated good cause and that A.D.'s mental wellbeing[5] is in controversy. They even have their own expert prepared to opine on his mental state. But the Court is not convinced that an exam is unnecessary because Plaintiffs' own expert has already conducted one. And Plaintiffs do not assert why or how the initial exam was so traumatizing that it cannot be repeated.

While Frontier did not fully explain the tests Dr. Holland will conduct in its initial motion, it eventually provided an explanation. The Court finds no reason to conclude that these tests are unnecessary to the exam. And Plaintiffs' argument that they are unnecessary because its own expert already conducted them is unpersuasive. The Court thus finds that Dr. Holland should conduct the following psychological testing: WASI, BASC-3, CAPS-CA-5, LEC-5, and PAI-A and be permitted to follow up with additional testing, if necessary, based on the results of the tests and if time permits. This scope of testing is distinguishable from the *Adele v. Dunn* case to which Plaintiffs cite for the proposition that Dr. Holland has too much discretion in her testing. In *Adele*, the examiner provided that the scope of the exam would depend on how the plaintiff presented on the date of the exam and did not identify any specific tests that he would administer. *See Adele v. Dunn*, No. 2:12-cv-00597, 2012 WL 5944705, at *1-3 (D. Nev. Nov. 26, 2012). The court declined to order the plaintiff to submit to "whatever examination [the examiner] deems

---

[5] While Plaintiffs argue that PTSD is the only condition in controversy, this is contradicted by their complaint. Plaintiffs allege that, because of the incidents aboard and after the Frontier flight, A.D. was traumatized; has been diagnosed with Post Traumatic Stress Disorder; and suffers from fear, anxiety, apprehension, nightmares, nausea, and vomiting. (ECF No. 153 at 27). Because of these allegations, A.D.'s mental wellbeing, not just his PTSD diagnosis, is in controversy.

appropriate when he sees and hears from the [p]laintiff." *Id.* Here, Dr. Holland has indicated which specific tests she will administer. While Frontier failed to describe them initially, having reviewed their descriptions, the Court does not find them to be overbroad in scope. Additionally, while Dr. Holland asserts that additional tests might be necessary, any additional exam will be inherently limited in time and by the tests she will already be administering. The absolute discretion that the examiner proposed in *Adele* is not present here and the discretion Dr. Holland proposes is tempered by the tests she is required to administer and the time frames by which she must abide.

The Court also finds good reason not to limit the exam only to those events occurring on the Frontier flight. Frontier has pointed to portions of Peter's testimony which demonstrate that A.D. has experienced multiple events—like the one Plaintiffs allege caused his PTSD—which could reasonably be expected to result in emotional distress. Peter testified that at least one event was very upsetting to A.D. And Plaintiffs have placed A.D.'s emotional distress directly at issue, suing Frontier for causing that distress. Frontier is entitled to learn whether A.D.'s emotional distress and PTSD are attributable only to the event taking place on its flight, or whether other instances—like being shouted at or having garbage thrown at him and his father—have contributed.[6]

However, the Court places some limitations on the exam. It is not convinced by Frontier's argument that Dr. Holland must be present during breaks or else Peter will attempt to influence A.D. Breaks are intended to be just that: a break from the exam process. And any discussion about the content of the testing or interview—or having Dr. Holland present—during breaks would contravene that purpose. Peter may be present to support A.D. during breaks outside the presence of Dr. Holland. Peter and A.D. must refrain from discussing the exam and interview during the breaks. And Dr. Holland may question A.D. about whether he and Peter discussed the exam or interview during the breaks. The Court also finds that three hours—without breaks—is

---

[6] The Court is also unconvinced by Plaintiffs arguments that Frontier "blatant[ly] mischaracteriz[ed]" this testimony or "included an intentional slur of Plaintiffs." (ECF No. 184 at 2); (ECF No. 186 at 4).

too long.  The Court will thus require that A.D. have a fifteen-minute break during each three-hour period.

The below conditions shall govern the exam:

1. The exam will take place in North Carolina at a location near A.D.'s home at a time on which Peter, A.D., and Dr. Holland can all agree.

2. The exam will be limited to six hours.  Three hours in the morning (not including a fifteen-minute break at some point during the three hours) and three hours in the afternoon (not including a fifteen-minute break at some point during the three hours).

3. Peter may be present with A.D. during breaks outside of the presence of Dr. Holland.  Peter and A.D. must refrain from discussing the exam and interview during these breaks. And Dr. Holland may question A.D. about whether he discussed anything related to the exam or interview with Peter during the break.

4. Dr. Holland's exam may include the following psychological testing: WASI, BASC-3, CAPS-CA-5, LEC-5, and PAI-A.  Time permitting, additional tests may be administered depending on the results of the listed tests.

5. Dr. Holland's exam is not limited to the incident aboard Frontier's plane that forms the basis of this litigation.

6. Observers and recording devices are prohibited during the exam.

7. Dr. Holland may not question Peter or A.D.'s siblings, teachers, social workers, therapists, or psychiatrist.

8. Dr. Holland may not ask about attorney-client privileged communications.

9. The exam must proceed in a non-adversarial manner.

10. If Dr. Holland requires A.D. to complete any forms prior to the exam, Frontier's counsel shall deliver the forms to Plaintiffs' counsel at least seven days prior to the exam.  A.D. shall not be required to complete any forms or other documents (other than standardized test papers) at the exam.

**IT IS THEREFORE ORDERED** that Frontier's motion for a Rule 35 exam (ECF No. 180) is **granted in part and denied in part as outlined in this order.**

DATED: August 5, 2022

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE