CHARLES A. MICHALEK, ESQ.
Nevada Bar No. 5721
ROGERS, MASTRANGELO, CARVALHO & MITCHELL
700 South Third Street
Las Vegas, Nevada 89101
Phone: (702) 383-3400
Email: cmichalek@rmcmlaw.com

Lawrence S. Gosewisch (admitted *pro hac vice*)
Brian T. Maye (admitted *pro hac vice*)
ADLER MURPHY & McQUILLEN LLP
20 South Clark Street, Suite 2500
Chicago, Illinois 60603
Phone: (312) 345-0700
Email: lgosewisch@amm-law.com
          bmaye@amm-law.com

***Attorneys for Defendants Frontier Airlines, Inc., Scott Warren, and Rex Shupe***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

PETER DELVECCHIA, individually
and as next friend of A.D., a Minor,

     *Plaintiffs,*

v.

FRONTIER AIRLINES, INC.,
SCOTT WARREN, and REX SHUPE

     *Defendants.*

Case No.: 2:19-cv-01322-KJD-DJA

**Frontier's Response to Plaintiffs' Rule
72 Objections to the Magistrate Judge's
August 5, 2022, Order on Plaintiffs'
Fourth and Fifth Motions to Compel
Discovery (ECF No. 192).**

### DEFENDANT FRONTIER AIRLINES, INC.'S
### RESPONSE TO PLAINTIFFS' RULE 72 OBJECTIONS
### TO THE MAGISTRATE JUDGE'S AUGUST 5, 2022, ORDER ON
### PLAINTIFFS' FOURTH AND FIFTH MOTIONS TO COMPEL DISCOVERY

Defendant FRONTIER AIRLINES, INC. ("Frontier"), by its undersigned counsel, submits

this Response to Plaintiffs' Rule 72 Objections to the Magistrate Judge's August 5, 2022, Order on

Plaintiffs' Fourth and Fifth Motions to Compel Discovery. Frontier's Response is based on the

1  attached Memorandum of Points and Authorities, the pleadings on file, and any oral argument the

2  Court may permit.

3  Date: September 2, 2022                    Respectfully submitted,

4                                             **FRONTIER AIRLINES, INC.**

5
                                             */s/* Brian T. Maye
6                                             Lawrence S. Gosewisch (*admitted pro hac vice*)
                                             Brian T. Maye (admitted *pro hac vice*)
7                                             ADLER MURPHY & McQUILLEN LLP
                                             20 South Clark Street, Suite 2500
8                                             Chicago, Illinois 60603
9                                             Phone: (312) 345-0700
                                             Email: lgosewisch@amm-law.com
10                                                        bmaye@amm-law.com

11

12                                            Charles A. Michalek (Nevada Bar No. 5721)
                                             ROGERS, MASTRANGELO, CARVALHO &
13                                            MITCHELL
                                             700 South Third Street
14                                            Las Vegas, Nevada 89101
                                             Phone: (702) 383-3400
15                                            Email: cmichalek@rmcmlaw.com

16

17

18

19

20

21

22

23

24

25

26

27

28

## FRONTIER'S MEMORANDUM OF POINTS AND AUTHORITIES

**I.     Introduction & Summary of the Argument**

Plaintiffs have again amplified and exaggerated their claims of unfair treatment without discussing their specific allegations against Frontier or the controlling legal standards that govern a discrimination claim under 42 U.S.C. § 1981. Plaintiffs invoke the Civil Rights Act of 1866 and argue the Magistrate Judge's rulings have "assisted Frontier in keeping a tight lid on a situation of conscious disregard of passengers' rights…" ECF 203, pp. 3-5. Plaintiffs continue to complain about discovery rulings from 2019 and suggest Frontier received favorable treatment despite citing to fewer cases in its own pleadings. *Id*. at 5. Plaintiffs further claim the Magistrate Judge's rulings have led them to "wonder whether they have chosen a safe forum in which to seek the enforcement of their federally protected rights." *Id*. at 6, n. 2.

Plaintiffs' empty grievances are no substitutes for a cogent legal argument. The Supreme Court has long held that § 1981 reaches only intentional and "purposeful" discrimination. *General Building Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 389 (1982). A plaintiff who lacks direct evidence of intentional discrimination (as here) must rely on circumstantial evidence which, in turn, must be "specific and substantial" to establish an inference of the defendant's discriminatory intent. *See, e.g., Coghlan v. American Seafoods Co. LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005).

The Magistrate Judge correctly ruled that Plaintiffs have provided no basis to seek or rely upon "pattern-and-practice" evidence. Plaintiffs contend pattern-and-practice evidence is relevant to show Frontier's "general hostility toward certain groups." ECF 203, p. 10. However, pattern-and-practice evidence is rarely relevant to claims based on discrete acts of alleged discrimination, such as those alleged here. *See Panelli v. First American Title Insurance Co.*, 704 F. Supp. 2d 1016, 1022 n.2 (D. Nev. 2010). As reflected in the Third Amended Complaint, Plaintiffs' § 1981 claim turns on their theory that Defendant Scott Warren, the Black male flight attendant at the

center of the alleged incident, believed it was "wrong and immoral" for a White man to adopt a Black child, and Warren "resented A.D.'s being adopted into a White family." *Id*. at 23.

The problem with Plaintiffs' theory is that they have not (and cannot) identify any patterns or practices that would be relevant or connected to their specific allegations in this case. Moreover, even if Plaintiffs could establish Frontier's "general hostility toward certain groups" (they cannot), the circumstantial evidence would not be "specific and substantial" to create an inference that Defendant Warren intended to purposefully discriminate against Plaintiffs because he resented A.D. for being adopted into a biracial family.

The Magistrate Judge was, therefore, correct in denying Plaintiffs' Fourth Motion to Compel, and in further denying the bulk of the requests at issue in Plaintiffs' Fifth Motion to Compel. For the reasons argued herein, and for those argued in Frontier's recent briefs, Frontier respectfully maintains that Plaintiffs' Objections should be denied in full.

## II.     Summary of the Third Amended Complaint

The Magistrate Judge generally ruled that the discovery sought in Plaintiffs' Fourth and Fifth Motions to Compel is **neither relevant nor proportional to the needs of this case**. *See* ECF 192, pp. 12-13. The issues of relevance and proportionality necessarily require an examination of Plaintiffs' specific allegations, which Plaintiffs failed to provide in their Objections. Hence, a quick summary of the Third Amended Complaint is in order.

The discrimination allegedly began when, in accordance with federal regulations, Frontier's crewmembers asked Plaintiffs whether A.D. was old enough to sit in an exit row. He was not. After the flight attendants helped Plaintiffs relocate to different seats, one of them (a White woman) reported observing Peter "stroking" A.D.'s face in a manner she found concerning. Plaintiffs do not dispute that Peter was touching A.D.'s face but characterize the contact as a "common gesture that did not suggest any improper conduct or immorality." ECF 153, pp. 8-11. 3.

Plaintiffs next claim Defendant Warren fueled a racist plot by fabricating an allegation that Peter's hand was near A.D.'s crotch while Peter and A.D. were sleeping. As noted, Warren (who is Black) was allegedly motivated by his belief that it is "wrong and immoral" for a White person (like Peter) "to have adopted an African child," and he further "resented A.D.'s being adopted into a White family." *Id*. at 3, 23. Plaintiffs claim Warren and Defendant Shupe (Pilot in Command who is White) carried out the racially motivated plan to assault Peter and separate him from A.D. until they were met by law enforcement on the ground in Las Vegas. *Id*. at 21-22.

### III.   Legal Standards Governing Plaintiffs' § 1981 Claim

Discrimination is not a magic word that opens the door for Plaintiffs to argue the existence of patterns or practices. This case is not a referendum on how Frontier investigated prior unrelated passenger complaints; this case is about Plaintiffs' specific claims of intentional discrimination by flight-crew members who reported concerns of inappropriate touching involving an adult and a minor. Against this backdrop, it is important to remember that Congress granted immunity to air carriers and their employees to encourage reporting suspicious behavior to law enforcement. 49 U.S.C. § 44941(b). To pierce Frontier's immunity in this case, Plaintiffs must prove that Frontier's reports to law enforcement were materially false and made with actual malice. *See Air Wis. Airlines Corp. v. Hoeper*, 571 U.S. 237, 248 (2014).

If Plaintiffs can ultimately overcome Frontier's federal immunity (they cannot), they must next satisfy the heightened standard for proving a § 1981 claim under the Supreme Court's ruling in *Comcast Corp. v. National Ass'n of African American-Owned Media*, ___U.S.___ , ___, 140 S. Ct. 1009 (2020). A section 1981 plaintiff can no longer prevail upon a mere showing that race was a "motivating factor" in the defendant's challenged decision. *See id*. at 140 S. Ct. 1009, 1014. Rather, to prevail on a § 1981 claim, a plaintiff must now prove that **"but for race, it would not have suffered the loss of a legally protected right."** (Emphasis added) *Id*. at 1019. The *Comcast*

Court framed the issue of but-for causation as **determining whether the defendant would have responded the same way if the plaintiff was a White person.** *Id*. at 1015.

Whether Frontier's crewmembers were truthfully concerned about Peter inappropriately touching A.D. calls for the well-known burden-shifting test from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which is applied to adjudicate discrimination claims based on circumstantial evidence. Under the *McDonnell Douglas* test, when the defendant articulates a legitimate, non-discriminatory reason for its conduct, the burden shifts to the plaintiff to show that the defendant's justification was a mere pretext for discrimination. *Cohen-Breen v. Gray TV Group, Inc.*, 661 F. Supp. 2d 1158, 1165 (D. Nev. 2009).

Drawing from *McDonnell Douglas*, Plaintiffs have the burden of establishing through circumstantial evidence that Frontier's crewmembers were not actually concerned about an adult's inappropriate conduct with a minor, and their true motive was to discriminate against Plaintiffs based on their racial animus toward biracial families. Stated differently, pursuant to the Supreme Court's *Comcast* decision, Plaintiffs must prove through circumstantial evidence that Frontier's crewmembers would not have reported concerns of inappropriate contact if A.D. was White.

## IV.   Plaintiffs' Fourth and Fifth Motions to Compel

Plaintiffs' Fourth Motion to Compel (ECF 164) concerned their repeated efforts to obtain unredacted versions of Frontier's records from the prior passenger discrimination complaints. Plaintiffs have already challenged Frontier's redactions in two prior unsuccessful motions for severe and case-dispositive sanctions. *See* ECF. 128, 141. Plaintiffs insist they need to contact hundreds of unsuspecting Frontier passengers from prior unrelated flights so Plaintiffs' counsel can ask them to identify themselves by race and then question them as to whether they have valid legal claims. ECF 164, p. 15. In denying Plaintiffs' back-to-back motions for sanctions, the Magistrate Judge correctly noted that: **"While [Plaintiffs] argue that they intend to contact these**

**individuals to learn more about the alleged discrimination and trafficking, their intent to learn more does not make the information relevant or proportional."** ECF 150, p. 5, n. 2.

When Plaintiffs took up the redactions issue again in their Fourth Motion to Compel, Frontier defended the redactions, generally, on grounds that: (1) as held in *Karrani v. JetBlue Airways Corp.*, No. C18-1510 (W.D. Wash. July 31, 2019, and *Acton v. Target Corp.*, No. C08-1149RAJ (W.D. Wash. Oct. 16, 2009), the records from the prior passenger complaints were only collaterally relevant, and Plaintiffs are not entitled to additional evidence without first showing a relevant connection between the evidence sought and the claims at bar; and (2) redacting the passenger contact information was appropriate pursuant to 14 C.F.R. § 243.9(c), *Anders v. United Airlines, Inc.*, No. CV 19-5809-GW (KS) (C.D. Cal. 2020), and ordinary privacy concerns.

In the interests of economy, Frontier hereby adopts and reincorporates the arguments noted above, as stated in its Response to Plaintiffs' Fourth Motion to Compel, at ECF 166, pp. 7-13.

Plaintiffs' Fifth Motion to Compel involved a slew of requests in support of Plaintiffs' theory that Frontier's investigative policies were inadequate, and Frontier's failure to discipline employees for alleged racism means Frontier was "fully complicit in all occurrences of illegal race discrimination against its passengers." ECF 170, p. 14. For example, Plaintiffs want Frontier to "produce all Documents/ESI that contain, describe, or refer to communications between Frontier Executive Management and Frontier Board of Directors about discrimination against passengers or other customers on the basis of, *inter alia*, race or ethnicity." *Id*. at 42. The Fifth Motion to Compel was 49 pages long and covered 51 discovery disputes.

Again, in the interests of economy, Frontier hereby adopts and reincorporates its arguments as stated in its Response to Plaintiffs' Fifth Motion to Compel at ECF 174, pp. 3-14. Frontier additionally responds below to certain points asserted by Plaintiffs in the course of their Objections.

**A.** ***Karrani*** **and** ***Acton*** **are more persuasive than** ***Heyne*** **and** ***Fuller***

Plaintiffs are mistaken to rely on *Heyne v. Caruso,* 69 F.3d 1475 (9th Cir. 1995), and *Fuller v. Idaho Dep't of Corrections,* 865 F.3d 1154 (9th Cir. 2007), as opposed to *Karrani* and *Acton*. *See* ECF 203, p. 10. *Heyne* and *Fuller* both involved hostile work environment claims alleging sexual misconduct. In *Heyne*, a waitress who claimed she was fired for refusing her superior's sexual advances was allowed to rely on evidence of similar claims **against the same individual** by other female employees. *Heyne,* 69 F.3d at 1481. In *Fuller*, a female probation officer was allowed to rely on her employer's knowledge of prior sexual harassment complaints that were made **against the same individual** who assaulted her to argue that her employer showed a general attitude of disrespect toward female employees. *Fuller v. Idaho Dep't of Corrections,* 865 F.3d at 1162, n. 8.

*Heyne* and *Fuller* are obviously distinguishable from the present case because they both involved evidence of prior bad acts by the same individual, which is precisely the type of "specific and substantial" circumstantial evidence that can give rise to a reasonable inference of intentional conduct. *See Coghlan*, 413 F.3d at 1095. By contrast, even if Plaintiffs could show that Frontier "sweeps legitimate discrimination claims under the rug" (ECF 164, p. 15), which they cannot, it would not be specific or substantial evidence of anything concerning the intent of Defendants Warren and Shupe. Moreover, Frontier has produced the complete employment files for each of its crewmembers, and Plaintiffs were able to question the crewmembers during depositions about any prior allegations of racism. That these efforts did not reveal prior histories of discrimination complaints does not open the door for Plaintiffs to expand their search for evidence of the same.

Plaintiffs also incorrectly claim that *Heyne* and *Fuller* "stand for the proposition that 'pattern and practice' evidence is relevant to the totality of the circumstances and a § 1981 defendant's **general hostility toward certain groups**." (Emphasis added) ECF 203, p. 10. It speaks volumes to the weakness of Plaintiffs' argument that they attempt to comingle the evidentiary standards for a hostile work environment claim with those described above for a section

1981 claim. Frontier does not dispute that "general hostility" toward employees is inherently relevant to a hostile work environment claim, and Frontier further acknowledges that "the frequency of the discriminatory conduct" is a relevant consideration in determining whether a work environment is hostile. *Fuller*, 865 F.3d at 1161. However, in claiming a defendant's "general hostility toward certain groups" is relevant to a section 1981 claim, Plaintiffs attempt to manufacture a hybrid evidentiary standard out of whole cloth. *Heyne* and *Fuller* stand for absolutely nothing in the context of a section 1981 claim, and Plaintiffs are wrong to assert the relevance of "general hostility" outside the context of a hostile work environment claim.

    *Karrani* and *Acton* are much more persuasive than the cases cited by Plaintiffs because they both examined the availability of pattern-and-practice evidence to support a discrete section 1981 claim. *Acton* teaches that "individuals may not pursue [pattern-and-practice] claims on their own behalf." *Acton*, No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *5-6. "Pattern-or-practice evidence, moreover, is discoverable only where a plaintiff can make some showing to connect it to his claims." *Id*. In line with *Heyne* and *Fuller*, the *Acton* court observed that connecting individual claims to patterns or practices "is typically easy to do so where the evidence relates to other discriminatory conduct at the same workplace." *Id*. *Acton's* deference to workplace discrimination claims shows that *Acton* is in harmony with *Heyne* and *Fuller*, contrary to Plaintiffs arguments.

    Aside from being an airline case, *Karrani* is persuasive because it demonstrates the limited circumstances in which pattern-and-practice evidence can be used to support an individual section 1981 claim. The *Karrani* court recognized that "[w]hile courts typically view past complaints by others within a protected class as only 'collaterally relevant' to private, non-class action discrimination lawsuits, such evidence may be relevant 'in *limited circumstances* where a plaintiff can make some showing to connect it to his or her claims.'" (Emphasis in original) *Karrani*, No. C18-1510 RSM, at *20 (quoting *Walech v. Target Corp.*, No. C11-254 RAJ, at *7 (W.D. Wash. Mar. 28, 2012). In *Karrani*, the same defendant flight attendant was the subject of discrimination

complaints during six prior flights. Accordingly, the court compelled the production of unredacted passenger complaints – but only those against the same flight attendant – to determine whether the plaintiffs' removal from an aircraft "fit a larger pattern of [the flight attendant] mistreating and/or unfairly removing racial minorities from [the carrier's] flights." *Karrani* at *21.

The takeaway from *Karrani* is that the plaintiff was allowed to explore a small subset of an airline's prior racial discrimination complaints based on the connection with the same flight attendant. Here, Plaintiffs have repeatedly failed to draw any relevant connections between their own claims and the prior discrimination complaints, or even with any smaller subsets. For these reasons, the Magistrate Judge was correct to deny Plaintiffs access to unredacted versions of the Frontier's prior passenger complaints.

**B. Plaintiffs already have a broad scope of discovery**

Plaintiffs falsely suggest Frontier has unfairly stonewalled their discovery efforts. *See* ECF 203, p. 4. In addition to providing the names and contact information for every single passenger aboard the subject flight, Frontier has undertaken significant pandemic-era efforts to identify and produce thousands of documents relating to more than 300 passenger complaints (160 against Frontier and 178 against gate agents not employed by Frontier). In addition, Frontier has now produced five employees for depositions who testified regarding the actions taken by Frontier in response to each complaint. The employees worked in customer service positions and were identified in Frontier's records related to the prior discrimination complaints.

**C. Plaintiffs have no valid spoliation claim**

Frontier denies the allegation that it intentionally destroyed any evidence, let alone any relevant evidence, and states the following in response to Plaintiffs' allegations of spoliation. *See* ECF 203, p. 9. During the meet-and-confer conference on February 18, 2022, Frontier's counsel conveyed his understanding that Frontier's operating software would only support going back 14 months (November 2020) to retrieve information regarding specific flight crew assignments.

Counsel has since followed up with Frontier's IT team and confirmed that if Frontier were ordered to identify the crewmembers associated with any specific flights, Frontier could (and certainly would) make every attempt possible to obtain the information. However, as stated above, Plaintiffs have thus far failed to provide any basis to identify any specific flight crew assignments for any specific flights. It is further noteworthy that Plaintiffs complain about the spoliation of evidence identifying specific crewmembers from specific flights even though they have not issued any specific discovery requests for the allegedly spoliated evidence.

**D. Frontier did not waive its privacy objections**

Frontier did not violate "well-established" Ninth Circuit precedent on the subject of waiver in asserting privacy objections to support its redactions of passenger contact information. See ECF 203, p. 7. When a party raises a waiver argument in the discovery context, courts generally consider the following factors: (1) the length of delay, (2) the reason for delay, (3) the existence of bad faith, (4) the prejudice to the party seeking waiver, (5) the nature of the request, and (6) the harshness of imposing sanctions. *Barlow v. Herman*, No. 2:13-cv-00033-JAD-CWH, 2014 U.S. Dist. LEXIS 1548, at *9 (D. Nev. Jan. 6, 2014).

There is nothing in the record before the Court to support a ruling that Frontier waived any objections as to the redacted passenger information based on "§243.9(c) confidentiality and privacy concerns."[1] Plaintiffs acknowledge that Frontier objected to producing the prior passenger complaints based on overbreadth, relevance, and proportionality. ECF 164, p. 6. Frontier ultimately produced the documents – as ordered by the Court – in redacted form. When Plaintiffs challenged the redactions, Frontier cited their "§243.9(c) confidentiality and privacy concerns." There has been no delay, there has been no bad faith, and there has been no prejudice.

---

[1] Pursuant to 14 CFR Part 243, Frontier first objected to the disclosure of passenger information on November 18, 2019, in responding to Plaintiffs' First Set of Requests for Production of Documents.

**E. Frontier has not asserted boilerplate objections**

Plaintiffs' objections include at least seven incorrect assertions that Frontier has been permitted to assert "boilerplate" objections to Plaintiffs' discovery requests. A "boilerplate" objection merely states a legal basis for the objection without providing any factual basis or linking the objection to a specific discovery request. An example is a litigant failing to provide any explanation as to why a particular discovery request is "overbroad." *See Labbe v. Dometic Corp.*, No. 2:20-CV-1975-KJM-DMC, at *16 (E.D. Cal. July 29, 2022).

Here, by way of example, Plaintiff argued that Frontier asserted an "improper boilerplate" objection to their Request for Production No. 5, which Plaintiffs argue "focuses on the critical issue of whether there are any documents that evidence whether Frontier's senior management take race discrimination complaints seriously, or whether they instruct the Customer Relations Department to sweep them under the rug and/or make them go away cheaply by offering complainants low value coupons." ECF 170, p. 30. Plaintiffs' RFP No. 5 and Frontier's objection thereto are included below, with emphasis added in the original:

> **RFP No. 5:** Please produce all **Documents/ESI** that contain, describe, or refer to communications between **Frontier Executive Management** and **Frontier Customer Relations Department** on the subject of what actions **Frontier Customer Relations Department** should or should not take to investigate or follow up on any **Discrimination Complaints** beyond, or in addition to, communicating with the persons making the **Discrimination Complaints** and/or offering such persons coupons to be applied to the costs of future travel.

> **RESPONSE:** Frontier objects to Request No. 5 because it is overbroad, unduly burdensome, not proportional to the needs of this case, and not limited temporally. Further, there has been no showing of a factual predicate to establish any meaningful connections or substantial similarities between the allegations in this case and those contained in the prior discrimination complaints against Frontier. Absent such a showing, the prior discrimination complaints are only collaterally relevant to Plaintiffs' claims, which does not warrant the discovery of additional details beyond the plain language visible in the text of the prior complaints that have been produced to Plaintiffs. *See Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 127944, at *20 (W.D. Wash. July 31, 2019); *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 U.S. Dist. LEXIS 44119, 2012 WL 1068068, at *19 (W.D. Wash. Mar. 28, 2012); *Acton v. Target Corp.,* No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *8-9 (W.D. Wash. Oct. 16, 2009);

1

2

*Schwartz v. New Castle Corp.*, No. 96-17178, 1997 U.S. App. LEXIS 33701, at *5 (9th Cir. Nov. 26, 1997).

3

Fronter can hardly be accused of failing to explain the bases for its objections to RFP No. 5.

4

Frontier's objections to the discovery requests involved with Plaintiffs' Fifth Motion to Compel

5

provided substantive explanations and go so far as to outline Frontier's consistently held positions

6

regarding the strength of collateral evidence and its reliance on *Karrani*, *Walech*, and *Acton*.

7

**V.      Conclusion**

8

9

        For the foregoing reasons, FRONTIER AIRLINES, INC. respectfully requests that the

10

Court deny Plaintiffs' Fifth Motion to Compel and for such further relief as this Court deems just

11

and reasonable.

12

Date: September 2, 2022                              Respectfully submitted,

13

                                                    **FRONTIER AIRLINES, INC.**

14

                                                    */s/* Brian T. Maye

15

16

                                                    Lawrence S. Gosewisch *(admitted pro hac vice)*
                                                    Brian T. Maye *(*admitted *pro hac vice*)
                                                    ADLER MURPHY & McQUILLEN LLP

17

                                                    20 South Clark Street, Suite 2500

18

                                                    Chicago, Illinois 60603
                                                    Phone: (312) 345-0700

19

                                                    Email: lgosewisch@amm-law.com
                                                    Email: bmaye@amm-law.com

20

21

                                                    Charles A. Michalek (Nevada Bar No. 5721)
                                                    ROGERS, MASTRANGELO, CARVALHO &
                                                    MITCHEL

22

                                                    700 South Third Street

23

                                                    Las Vegas, Nevada 89101
                                                    Phone: (702) 383-3400

24

                                                    Email: cmichalek@rmcmlaw.com

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I hereby certify that on September 2, 2022, I caused the foregoing to be electronically filed with the United States District Court for the District of Nevada using the CM/ECF system.

By: */s/* Brian T. Maye _____