**<u>EXHIBIT A</u>**

**Plaintiffs' Proposed Reply**

John D. McKay, Esq.
*Admitted pro hac vice*
PARK AVENUE LAW LLC
201 Spear Street, Suite 1100
San Francisco, CA 94105
(434) 531-9569
johndmckayatty@gmail.com
**Attorneys for Plaintiffs**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| PETER DELVECCHIA, *et al*., | ) | **Case No: 2:19-CV-01322-KJD-DJA** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **PLAINTIFFS' [PROPOSED] REPLY** |
| | ) | **IN SUPPORT OF THEIR RULE 72(a)** |
| | ) | **OBJECTIONS TO ORDER BY** |
| FRONTIER AIRLINES, INC., *et al*., | ) | **MAGISTRATE JUDGE** |
| Defendants. | ) | |
| _____ | ) | |

Plaintiffs respectfully file this Reply to Defendant Frontier Airlines, Inc.'s Response (ECF No. 203) and in further support of their Objections to the Magistrate Judge's Order (ECF No. 192) on important discovery issues.

## ARGUMENT

### I.    The Magistrate Judge should have granted Plaintiffs' Fourth Motion to Compel.

On May 8, 2020, Magistrate Judge Albregts entered an Order compelling Frontier to produce five years' worth of passenger complaints of discrimination on domestic flights, finding that the complaints are relevant to Plaintiffs' §1981 claims and proportional to the needs of the case. ECF No. 83, at 3-4. On March 29, 2021, following a *de novo* review, District Judge Dawson affirmed the Magistrate Judge's Order, with one minor modification. ECF No. 120, at 2. When Frontier finally decided to start producing the compelled information nearly four months after the entry of Judge Dawson's Order, it unilaterally redacted critical information from the passenger complaints,

including the names and contact details of the complaining passengers and some passenger witnesses. When challenged about the redactions, it claimed that a section of the Federal Aviation Regulations, 14 CFR §243.9(c), required it to redact the passenger information. However, Frontier had never raised any privacy objection in its Rule 34 objections, which normally constitutes waiver under "well established" precedent. *See, Richmark Corp. v. Timber Falling Consultants,* 959 F.2d 1468, 1473 (9th Cir. 1992); *see also* 7 James Wm. Moore *et al.,* MOORE'S FEDERAL PRACTICE, § 33.174[2], at 33-106, §34.13[2][a], at 34-56 to 34-56.1 (3d ed. 2012).[1]

Frontier's unauthorized redactions have needlessly led to an entire year of litigation to get information the Court already ordered produced, wasting valuable court resources and time. Other district courts in the Ninth Circuit have held that redacting information from documents that were ordered produced constitutes sanctionable discovery misconduct, *see, e.g., Terry v. Register Tapes Unlimited, Inc.,* Case No. 2:16-cv-00806-WBS-AC (E.D. Cal. June 29, 2018), slip at 5; *Cuviello v. Feld Entertainment, Inc.,* Case No. 5:13-cv-03135-LHK (N.D. Cal. Feb. 27, 2015), so Plaintiffs filed a Motion for Sanctions (ECF No. 128), and filed a Supplemental Motion for Sanctions (ECF No. 141) after Frontier delivered another tranche of redacted documents while the first Motion was pending. Frontier responded to the Motions by claiming that its redactions were mandated by a rule of law that does not exist. It literally concocted a rule of law to justify its unauthorized redactions, citing it to the Court without any supporting case authority (because there is none). *See,* ECF No. 145, at 2. Frontier suffered no consequences for its misconduct, despite having intentionally authorized its counsel to make a false statement of law to the Court. *Cf. Avendano v. Security Consultants Grp.,* Case No. 3:13-cv-00168-HDM-VPC (D. Nev. Dec. 2, 2014), slip op. at 17-18 (counsel owe a duty of good faith and candor in dealing with the judiciary that forbids making a false

---

[1] Frontier's argument that it did not waive any privacy objection, *see* ECF No. 204 at 11, completely ignores Rule 34(b)(2)(B)'s requirement to "state with specificity the grounds for objecting to the request, including the reasons."

statement of fact or law to a tribunal or failing to correct such a statement if made). [2] To the contrary, Magistrate Judge Albregts denied both sanctions motions, instructing Plaintiffs that they had "brought the wrong motion," ECF No. 150, at 5, and "should have employed a motion to compel to request the redacted information." *Id.* at n.2. That ruling instructed Plaintiffs to file another motion to compel to obtain the same information that the Court has already twice ordered produced in response to their *previous* motion to compel. Nevertheless, Plaintiffs followed the instruction and filed their Fourth Motion to Compel. But Magistrate Judge Albregts denied it entirely, as he had forecasted he would do in the Order denying the motions for sanctions, on the grounds that Plaintiffs had not "made a threshold showing" that the information hidden by the unauthorized redactions is relevant and proportional to Plaintiffs' §1981 claims. ECF No. 192 at 1.

The Magistrate Judge returned to the "threshold" theme frequently in his Order, and Frontier now urges this Court to do the same. However, the threshold showing that a party seeking discovery must make on a motion to compel is a "relatively low threshold" requiring only a "minimum showing" of "the possibility of a nexus between the information sought and the claims or defenses of

---

[2] Frontier falsely asserted to the Court the following:

> . . .federal courts applying a federal regulation **establish** that airlines must protect the identities of passengers **absent an order expressly prohibiting redactions**. **No such order has been entered in this case.** Thus, to maintain compliance with this Court's Order and also with federal law, in producing its responsive documents, Frontier has redacted personal information identifying the individuals involved with the unrelated flights.

ECF No. 145, at 2 (emphasis added). No federal court has ever so held. Moreover, Frontier's claim that it was merely following federal law does not even jibe with its own previous conduct in this case, where it produced the names and contact details of all the other passengers on Plaintiffs' flight, simply under the protection of the same general protective order that it has applied to all the *redacted* prior complaints. Frontier's repeated reliance on a Magistrate Judge's opinion in the Central District of California, *Anders v. United Airlines, Inc.,* 2020 US Dist. LEXIS 250250 (C.D. Cal. Dec. 18, 2020) is misplaced. First, United properly preserved its objection based on §243.9(c) and the issue was decided on a motion to compel, prior to the court ordering production of the documents, *Id.* at *1-2. Second, the Magistrate Judge in *Anders* never stated a federal rule similar to the one claimed by Frontier and quoted above. Third, a side-by-side comparison of the plain language of 14 CFR Part 243 and the conclusions reached in *Anders* clearly demonstrates that the Magistrate Judge misread the language of the regulation. The confidentiality provision of §243.9(c) applies only to emergency contact names (non-passengers) supplied by passengers aboard international flights. *See* 14 CFR §243.3 (a "contact" is defined as a person not on the flight, and a "covered flight segment" is defined to exclude domestic flights); *see also* §243.4 (part applies only to "covered flight segments").

a party." *Tsatas v. Airborne Wireless Network, Inc.,* Case No. 2:20-cv-02045-RFB-BNW, 2022 WL 74003, at *2 (D. Nev. Jan. 7, 2022)(internal citations omitted). Despite the Court's 2020-21 findings, Plaintiffs included a section to meet the threshold. At Frontier's urging, however, the Magistrate Judge focused entirely on a single clause from that section, in which Plaintiffs stated that they "need to obtain more information from passengers." *See* ECF No. 164 at 22-23. Frontier falsely claimed this was all that Plaintiffs had argued about the relevance of the passenger names, and the Magistrate Judge apparently agreed. *See* ECF No. 166 at 2 and ECF No. 192 at 12.[3] The Magistrate Judge gave no weight to Plaintiffs' allegations that the discrimination they suffered was the product of Frontier's company-wide discriminatory culture, *see* ECF No. 153 at ¶58 and ECF No. 164 at 22-23, their claims for punitive damages that would appropriately focus on Frontier's knowledge that its policies violate federal law, *see Kolstad v. American Dental Ass'n,* 527 U.S. 526, 535 (1999), or their arguments that due diligence should be conducted regarding which protected groups the complaining passengers belong to, *see* ECF No. 164 at 15, all of which meet or exceed the threshold showing of "the possibility of a nexus between the information sought and the claims or defenses of a party."

Moreover, the names of the complainants are relevant under Ninth Circuit case law because they are witnesses to a discriminatory corporate culture that affects passengers. Ninth Circuit jurisprudence supports the use of past complaints of discrimination by members of a protected class, and witness testimony from those complainants, to establish an environment of discrimination against certain protected groups by corporate and individual defendants, especially in cases where it is alleged that the discrimination at issue arose out of a pervasive culture of discrimination, and also to establish that any non-discriminatory explanation for the conduct advanced in a *McDonnell Douglas* analysis on a motion for summary judgment is a pretext.

---

[3] Frontier relies on the same argument in its Response to Plaintiffs' Rule 72(a) Objections, *see* ECF No. 204 at 7.

The foundational case on the issue is *Heyne v. Caruso,* 69 F.3d 1475 (9th Cir. 1995), which Frontier significantly mischaracterizes. Frontier argues that *Heyne* "involved hostile work environment claims" and stands for the proposition that only "evidence of prior bad acts by the same individual" may be used to support a "reasonable inference of intentional [mis]conduct." ECF No. 204 at 8. The Magistrate Judge accepted Frontier's argument, adding that *Heyne* is limited to "complaints about individuals who had *personally* harassed and assaulted the plaintiffs." ECF No. 192 at 9 (italics in original). Frontier and the Magistrate Judge have misread the holding in *Heyne*. *Heyne* involved a *quid pro quo* claim of sexual discrimination, not a hostile work environment claim, and there is nothing in its holding that limits its application to prior complaints against the same individual. The following section of the opinion is instructive:

> It is clear that an employer's conduct tending to demonstrate hostility toward a certain group is both relevant and admissible where the employer's general hostility toward that group is the true reason behind firing an employee who is a member of that group. *See Spulak v. K Mart Corp.*, 894 F.2d 1150, 1156 (10th Cir. 1990)("As a general rule, the testimony of other employees about their treatment by the defendant [employer] is relevant to the issue of the employer's discriminatory intent."). Recognizing that "[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes," *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983), the Supreme Court held that evidence of the employer's discriminatory attitude in general is relevant and admissible to prove race discrimination. *See id.* at 713-14 n.2, 103 S.Ct. at 1480-81 n.2.
>
> The Eighth Circuit, in an action for wrongful termination on the basis of race, likewise found that "[e]vidence of prior acts of discrimination is relevant to an employer's motive in discharging a plaintiff, even where this evidence is not extensive enough to establish discriminatory animus by itself." *Estes v. Dick Smith Ford, Inc.,* 856 F.2d 1097, 1104 (8th Cir. 1988). Estes, who is black, alleged that his employer, Ford, terminated him on the basis of race, and Ford countered by claiming that Estes was fired for cause. *Id.* at 1100. Estes appealed the district court's evidentiary rulings which excluded a great deal of evidence tending to show a climate of racial bias at the plaintiff's place of employment. *Id.* The Eighth Circuit reversed the district court's evidentiary rulings, holding that statistical evidence tending to show that Ford discriminated against Blacks in hiring and promotion, evidence of prior acts of discrimination against black customers, and evidence of a Ford manager telling racist jokes and referring to black customers and Estes as "niggers" were relevant to proving the employer's motivation behind discharging Estes. *Id.* at 1102-04.

Similarly, we recently held that evidence of an employer's sexual harassment of female employees other than the plaintiff and evidence of the employer's disparaging remarks about women in general were relevant to a discriminatory discharge claim which alleged that the plaintiff's discharge was motivated by the employer's general feeling of hostility towards women. *EEOC v. Farmer Bros. Co.,* 31 F.3d 891, 897-98 (9th Cir. 1994).

The probative value of the employer's sexual harassment of the other female employees is especially high "because of the inherent difficulty of proving state of mind." *Cf. Mullen v. Princess Anne Volunteer Fire Co.,* 853 F.2d 1130, 1133 (4th Cir. 1988) (holding that use of racial slurs by members of a fire company is admissible to prove the company's motive in excluding black applicant from membership).

69 F.3d, at 1479-80 (all brackets in original). *Spulak* involved evidence from other K Mart employees whose experiences were not related to the plaintiff's and who worked under different K Mart managers, *see* 894 F.2d, at 1156. *Estes,* brought under the ADEA, Title VII and §1981, also involved evidence of prior acts of racial discrimination that had no direct connection to the plaintiff's own circumstances. The Eighth Circuit held that excluding evidence of the Ford Company's discriminatory acts toward other Black persons "significantly handicapped [Estes] in persuading the jury of the likelihood of discriminatory animus." 856 F.2d, at 1102. The Ninth Circuit's opinion in *Farmer Bros Co.* involved two distinct types of evidence: complaints by other female employees claiming that the plaintiff's supervisor had also harassed them, 31 F.3d 897-98, and evidence of prior disparaging remarks toward women in general that were made by the owner of the company, which the Court found relevant to the plaintiff's case. *Id.,* at 896.[4] The Fourth Circuit's decision in *Mullen* (by a panel that included former Supreme Court Justice Lewis Powell) reversed the trial court's ruling that the plaintiff could not introduce evidence that members of the fire department had

---

[4] The *Farmer Bros Co.* decision is also notable for its approval of the lower court's finding "that, while Farmer Brothers had a written policy prohibiting discrimination in employment, it had no mechanism, procedures or educational programs to ensure that the policy would be enforced." 31 F.3d, at 896. That finding is precisely what Plaintiffs are attempting to prove with respect to Frontier's written policy against discrimination against passengers, through the very evidence that the Magistrate Judge refused to compel in his rulings on Plaintiffs' Fourth and Fifth Motions to Compel. *See* ECF No. 153 (Plaintiffs' Third Amended Complaint) at ¶¶24-28, 58-59. His ruling that Plaintiffs are not entitled to such evidence, because it is not relevant or proportional to the needs of the case, is clearly contrary to law.

previously used racial slurs to describe *other* Black people in support of his race discrimination claim under §§1981, 1982 and 1983. 853 F.2d, at 1133.

Given the Ninth Circuit's lengthy explication of its reasoning in *Heyne*, Frontier's claim that the holding is limited to "prior bad acts by the same individual," which influenced the Magistrate Judge's erroneous ruling, is nearly as disingenuous as its previous citation of a fictitious rule of federal case law to attempt to justify its redaction of information from documents the Court had ordered it to produce.

Furthermore, the Magistrate Judge erred in finding that the evidence is not relevant because Plaintiffs have "not made any 'pattern and practice' claims," ECF No. 192 at 11-12, and Frontier's current arguments based on that finding are equally erroneous. The Ninth Circuit has held that "pattern and practice" (or "pattern-or-practice") is not a legal term of art, but instead carries the ordinary meaning of those terms. *Cherosky v. Henderson,* 330 F.3d 1243, 1246-47 (9th Cir. 2003). Such claims "must be based on discriminatory conduct that is widespread through a company or that is a routine and regular part of the workplace." *Id*. Plaintiffs have alleged that Frontier has, for years, ignored and condoned acts of discrimination against its passengers and has "fostered an environment" in which its employees believe they are authorized to discriminate against passengers of color and mixed-race groups. ECF No. 153, at ¶¶28, 58. Those allegations clearly meet the standard described by the Ninth Circuit in *Cherosky*. The Magistrate Judge's ruling on the Fourth Motion to Compel unfairly prevents Plaintiffs from learning the names of potential individual witnesses to such company-wide policies, even though testimony from protected class members outlining specific instances of discrimination is a normal part of the proof of a pattern and practice claim, *see Lyons v. England,* 307 F.3d 1092, 1107 n.8 (9th Cir. 2002); *see also Panelli v. First Am. Title Ins. Co.,* 704 F.Supp.2d 1016, 1022 n.2 (D. Nev. 2010). His rulings on the Fifth Motion to Compel prevents them

from obtaining further documentary evidence of Frontier's setting of such policies and its management's lack of responses to the alarming number of passenger discrimination complaints the company receives on a weekly basis. Those rulings are also contrary to law.

## II.     The Fifth Motion to Compel should have been granted.

The numerous requests that are the subject of Plaintiffs' Fifth Motion to Compel, and on which the Magistrate Judge denied relief in blanket fashion,[5] consisted of: (a) standard requests for admissions concerning Frontier's business records, to permit their use as evidence in a summary judgment motion and at trial without the need to call authenticating witnesses; (b) requests for admissions on an issue of evidence spoliation that counsel for Frontier has already admitted informally on the telephone; and (c) requests for production of documents relating to policies enacted by Frontier's management that have the effect of squelching any meaningful enforcement of the company's written anti-discrimination policy, and seeking evidence that Frontier management is aware of the frequency with which its passengers of color and mixed races complain about discrimination, but takes no action to curb the ongoing discrimination. The Ninth Circuit has found such evidence relevant to discrimination cases, *see Farmer Bros. Co.,* 31 F.3d, at 896. The Magistrate Judge found that Plaintiffs only needed the spoliated evidence to see whether the flight attendants on their flight had ever been disciplined for past discrimination complaints, concluding that such information was unnecessary because Frontier has already produced their employee files.[6] That finding is clearly erroneous on two levels. First and foremost, Plaintiffs needed the evidence from the spoliated database to determine whether Frontier ever disciplined *any* of the flight attendants or other

---

[5] The Magistrate Judge did grant relief on a few of the requests contained in the Fifth Motion to Compel, *see* ECF No. 192 at 13-14, but he did not impose any deadline for Frontier's production, even though Plaintiffs had specifically requested that he do so. The last time he did not impose a deadline, Frontier cited the lack of a specific deadline as justification for waiting *14 months* after the Order was entered to begin producing documents. *See* ECF No. 135 at 6. The discovery period ends on November 18, 2022. *See* ECF No. 163 at 2.

[6] The produced files are the sparsest employee files undersigned counsel has ever seen in 37 years of practice that included a decade of defending and prosecuting numerous federal employment discrimination suits.

employees and agents named in the hundreds of past discrimination complaints produced, and that information cannot be obtained without knowing their names, according to the testimony of the five customer service employees that Plaintiffs deposed. The spoliated database would have been able to identify the employees assigned to the flights from which the complaints emanated. Plaintiffs seek to prove that, like the defendant in *Farmer Bros Co.,* Frontier may have had a written anti-discrimination policy, but "it had no mechanism, procedures or educational programs to ensure that the policy would be enforced." 31 F.3d, at 896. Knowledge that employees would be disciplined for violating the policy would be one such "mechanism." Second, the employee files of the four flight attendants on Plaintiffs' flight are proof only that they have not been disciplined, which is useless information if Plaintiffs cannot determine whether they were involved in any of the past complaints. Frontier's boilerplate objections to those requests, that cite to non-precedential district court decisions from the Western District of Washington that do not even support the objections because they conflict with *Heyne,* should not have been approved by the Magistrate Judge. His rulings are contrary to law.

### III.    Frontier mischaracterizes Plaintiffs' allegations.

Frontier relies on an intentionally incomplete "summary" of Plaintiffs' allegations to support its arguments. It falsely argues that Plaintiffs' Section 1981 claim rests on the actions and motivations of one man, Defendant Warren, who was one of Frontier's four flight attendants on the subject flight. It also argues falsely that the claim is based solely on the flight crew notifying law enforcement authorities of a suspicion that Plaintiffs were engaged in human trafficking. *See* ECF No. 204 at 3-4, 5. While Plaintiffs have alleged that Warren's actions and motivations form important links in the chain of discriminatory acts that Plaintiffs suffered aboard the flight, for which he and Frontier certainly should be held liable, Frontier's limited focus on Warren and the reporting of an unfounded suspicion of human trafficking purposefully omits numerous other allegations of Plaintiffs' Third

Amended Complaint that frame the issues in this case.[7] The totality of Plaintiffs' allegations should

determine what the scope of discovery is under Fed. R. Civ. P. 26(b).

### IV.    Frontier's reasoning is circular.

Frontier's arguments rest on circular reasoning. Frontier posits that Plaintiffs are not entitled

to discovery because (in its myopic and self-interested view) they do not have sufficient evidence on

their §1981 claims to survive a motion for summary judgment; therefore, the Court should not permit

them to collect evidence through discovery that would assist them in surviving a motion for summary

judgment. Frontier relies heavily on *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), *see*

ECF No. 204 at 6, which created a legal proof structure that is only relevant at the summary judgment

stage of a discrimination case. *Costa v. Desert Palace, Inc.,* 299 F.3d 838, 855 (9th Cir. 2002)(*en*

*banc*), *aff'd,* 539 U.S. 90 (2003). Frontier argues improperly that the Court should apply the

*McDonnell Douglas* formula to decide whether Plaintiffs can have discovery on their §1981 claims,

at the same time arguing ironically that the Court should not apply Ninth Circuit precedent that

undercuts Frontier's arguments because it comes from Title VII cases. *McDonnell Douglas* is a Title

VII case, and the Ninth Circuit has long held that the principles of law guiding a court in a Title VII

dispute apply with equal force to cases brought under §1981, *see, El-Hakem v. BJY Inc.,* 415 F.3d

1068, 1074 n.2 (9th Cir. 2005).[8]

---

[7] Frontier also falsely claims that Plaintiffs have alleged the discrimination began when A.D. and his father were asked about A.D.'s age, *see* ECF No. 204, at 4. That is another example of Frontier bending the facts to suit its arguments, because Plaintiffs explicitly alleged that the flight attendants acted appropriately in determining A.D.'s age and moving him and his father out of the exit row due to a minimum age limitation in the Federal Aviation Regulations (which Plaintiffs had been unaware of when they selected their seats). Plaintiffs have alleged that they complied with the request to sit elsewhere without any objection. ECF No. 153 at ¶9, p. 8. They have alleged that the discrimination began when Flight Attendants Nickel and Warren observed A.D. and his father standing to be reseated, and both determined from 13 rows away that there was "something off with those two," based solely on their appearances (A.D. is Black and his adoptive father is White). *Id.* at ¶10, pp. 8-9. The flight attendants' deposition testimony admitting that they made that racist observation is direct, rather than circumstantial, evidence of discrimination. *See Dominguez-Curry v. Nevada Trans. Dep't,* 424 F.3d 1027, 1038 (9th Cir. 2005).

[8] Frontier argues that "[i]t speaks volumes to the weakness of Plaintiffs' argument that they attempt to comingle the evidentiary standards for a hostile work environment claim with those described above for a section 1981 claim," *see* ECF

**V.    *Karrani v. JetBlue Airways Inc.* is an inapt model for the instant case.**

Frontier convinced the Magistrate Judge to pigeonhole the entirety of Plaintiffs' §1981 claims into the facts and summary judgment rulings of *Karrani v. JetBlue Airways Corp.,* 2:18-cv-01510-RSM (W.D. Wash. July 31, 2019), and it attempts to do the same here. *Karrani* is not an appropriate model for the case at bar because it is distinguishable. The Black plaintiff in that case presented a remarkably weak claim under §1981, where his only "evidence" of race discrimination was the fact that a White flight attendant would not permit him to use the front lavatory during a descent to an unscheduled landing while a serious medical emergency was occurring within a few feet of that lavatory's door. *See id.*, slip at 2. There was no dispute that the plaintiff made physical contact with the flight attendant. She reported his aggression to the captain, who ordered the plaintiff to be removed from the flight after the plane landed, without permission to reboard. *Id.* at 3. The court held that the captain's actions were authorized by 49 U.S.C. §44902, and that the plaintiff had not raised a triable question of fact that the actions were motivated by race. *Id.* at 10-14. *Karrani* is distinguishable from the instant case on numerous grounds. A review of the complaint filed in *Karrani* reveals that, unlike the Plaintiffs in the instant case, the plaintiff in *Karrani* never alleged that JetBlue fostered an environment in which the corporation took no actions to dissuade its employees from discriminating against passengers on the basis of their races and ethnicities, nor that it condoned acts of discrimination by its employees, nor that it refused to provide anti-discrimination training of the type recommended by the DOT, or that it knew that its protocols would be used by its employees in ways that resulted in illegal discrimination. *See* W.D. Wash. Case No. 2:18-cv-01510-RSM, at Doc. No. 1. Plaintiffs alleged all of those matters in the instant case, *see* ECF No. 153, ¶¶24-28, 58-59. The complaint in *Karrani* focused only on the actions of one flight attendant and one

---

No. 204 at 8-9, yet the application of Title VII legal standards to a §1981 case is entirely in line with Ninth Circuit precedent. *See, El-Hakem* (a hostile work environment case).

captain relative to a single flight, whereas the allegations in the instant case focus on the actions of all six crew members of the flight, the management employees on the ground, and corporate decisions reaching back years prior to the flight that encouraged the employees' discriminatory actions. *Karrani* employs the *McDonnell Douglas* evidentiary framework which might not even be employed in this case, *see Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir.2007) (use of *McDonnell Douglas* analysis is optional).

The portion of the *Karrani* opinion that the Magistrate Judge adopted is the following:

> While courts typically view past complaints by others within a protected class as only "collaterally relevant" to private, non-class action discrimination lawsuits, such evidence may be relevant "in *limited circumstances* where a plaintiff can make some showing to connect it to his or her claims." *Walech v. Target Corp.,* No. C11-254 RAJ, 2012 WL 1068068 (W.D. Wash. Mar. 28, 2012)(emphasis added).

Slip at 14 (italics in original). The citation to *Walech*, a disability discrimination case, is notable. The complaint in *Walech,* like the complaint in *Karrani,* contains no allegation of a pattern and practice of discrimination that culminated in the harm to the plaintiff. *See* W.D. Wash. Case No. 2:11-cv-00254-RAJ, Doc. No. 1. The opinion in *Walech* cites cases that label evidence of past complaints of discrimination "collaterally relevant" and limit the use of such evidence, but significantly, *none of the cases are from the Ninth Circuit,* and there is no Ninth Circuit case that adopts a similar holding.

## <u>CONCLUSION</u>

For all the reasons set forth above, Plaintiffs respectfully request that this Honorable Court reverse the Magistrate Judge's Order and grant their Fourth and Fifth Motions to Compel.

DATED this 8th day of September, 2022.

                                                               /s/ John D. McKay
                                         *Attorney for Plaintiffs Peter DelVecchia*
                                         *And A.D., a Minor*