1  CHARLES A. MICHALEK, ESQ.
   Nevada Bar No. 5721
2  ROGERS, MASTRANGELO, CARVALHO & MITCHELL
   700 South Third Street
3  Las Vegas, Nevada 89101
   Phone: (702) 383-3400
4  Email: cmichalek@rmcmlaw.com

5  Lawrence S. Gosewisch (admitted *pro hac vice*)
6  Brian T. Maye *(*admitted *pro hac vice*)
   Richard C. Harris (admitted *pro hac vice*)
7  ADLER MURPHY & McQUILLEN LLP
   20 South Clark Street, Suite 2500
8  Chicago, Illinois 60603
   Phone: (312) 345-0700
9  Email: lgosewisch@amm-law.com
          bmaye@amm-law.com
10         rharris@amm-law.com

11

12 ***Attorneys for Defendants* FRONTIER AIRLINES, INC.*, SCOTT WARREN *and* REX SHUPE**

   **UNITED STATES DISTRICT COURT
13   DISTRICT OF NEVADA**

14 PETER DELVECCHIA, individually and as    )    Case No.: 2:19-cv-01322-KJD-DJA
   next friend of A.D., a Minor,             )
15                                            )
                                             )
16            *Plaintiffs*,                   )    **FRONTIER AIRLINES, INC.'S
                                             )    MOTION FOR PROTECTIVE ORDER
17 v.                                         )    AS TO PLAINTIFFS' FIFTH AMENDED
                                             )    RULE 30(b)(6) DEPOSITION NOTICE**
18 FRONTIER AIRLINES, INC. *et al.,*          )
                                             )
19            *Defendants.*                   )
   ─────────────────────────────────────    )

20

21      **DEFENDANT FRONTIER AIRLINES, INC.'S
        MOTION FOR PROTECTIVE ORDER**

22          Defendant FRONTIER AIRLINES, INC. ("Frontier"), by its undersigned counsel, hereby moves

23 this Court for a protective order pursuant to Fed. R. Civ. P. 26 and LR 26-6 as to certain topics identified

24 in Plaintiffs' Fifth Amended Rule 30(b)(6) Deposition Notice, and in support thereof states as follows:

25

26

27

28
                                            - 1 -

## <u>DECLARATION OF PRE-FILING CONFERENCE</u>

I, Brian T. Maye, Esq., hereby declare the following:

1. I am an attorney admitted *pro hac vice* in this matter representing Frontier. I have personal knowledge of the facts stated herein, and I am competent to testify as to the same.

2. On October 5, 2022, Plaintiffs served their Fifth Amended Rule 30(b)(6) Deposition Notice, listing 39 topics (with many additional subtopics) on which they intended to solicit testimony from Frontier's corporate representative(s). **See Exhibit 1**.

3. On October 24, 2022, and November 3, 2022, I held telephone conferences with John McKay, counsel for Plaintiffs, to discuss Frontier's objections involving 25 of the 39 proposed topics. We note that most of the proposed topics have numerous sub-topics.  During the call Frontier agreed to withdraw objections to two numbered topics.  Plaintiffs declined to withdraw any of the proposed topics.

4. The parties have communicated regularly throughout this litigation on the issues included in and related to the Rule 30(b)(6) Deposition Notice. However, despite their good-faith efforts to reach a complete agreement, the parties are unable to agree as to 23 of the proposed Rule 30(b)(6) topics.

5. I declare under penalty of perjury and under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on November 3, 2022.

/s/ Brian T. Maye
Brian T. Maye, Esq. (admitted *pro hac vice*)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.     Background

As the Court is well aware, this case involves a discrete episode of alleged discrimination under a specific fact pattern. Plaintiffs are self-described as a White man who was travelling with his adopted Black son. They claim Frontier and its crewmembers made false and malicious reports to law enforcement of inappropriate touching. The crux of their lawsuit is that Frontier acted purely out of racial animus "based on the biracial characteristic of Plaintiffs' family unit." See Plaintiffs' Third Amended Complaint at ECF No. 153, p. 2. According to Plaintiffs, the crew's reports of inappropriate touching were pretextual and made to provide cover for the flight attendants' unjustified and racist suspicions about a "White American man traveling with a Black youth who has Ethiopian ethnic characteristics." *Id*. at p. 9.

Plaintiffs accuse Frontier's crewmembers of working in concert to devise and execute a "plan" to "attack" and separate Plaintiffs for the purpose of making them uncomfortable for the rest of their flight and delivering them separately to the FBI. *Id*. at p. 21. To prevail on their claim of racial discrimination under 42 U.S.C. § 1981, Plaintiffs must prove Frontier and its crewmembers committed purposeful and intentional discrimination, which means they must prove Frontier's employees would not have reported any concerns of inappropriate touching but for their alleged racial animus. *See Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. __, 140 S. Ct. 1009, 1019 (2020).

The instant Motion was necessitated by Plaintiffs' demand to inquire into allegations of racism made by other passengers who have no connections whatsoever to this lawsuit. In rejecting Plaintiffs' recent attempts to contact the other passengers, this Court ruled: **"Plaintiffs have made no showing that 'pattern or practice' evidence is connected to their claims outside of their conclusory assertion that Frontier promotes 'corporate hostility toward persons of color and wholesale whitewashing of legitimate complaints of discrimination by Frontier employees.'"** ECF No. 192 at 12 (quoting Plaintiffs at ECF No. 169 at 11) (Emphasis added). The Court further stated that it **"does not find more**

1

2

**evidence regarding unrelated complaints and Frontier's handling of complaints in general to be relevant to Plaintiffs' case."** ECF No. 192 at 13 (Emphasis added).

3

4

5

6

7

8

9

Plaintiffs' Fifth Amended Rule 30(b)(6) Deposition Notice includes 39 topics, including numerous subtopics, many of which focus on Frontier's investigations into the other passenger complaints – in direct contravention of the rulings quoted above.  Additionally, Plaintiffs' proposed Rule 30(b)(6) topics are aimed at establishing alleged negligence with regard to investigating the unrelated passenger complaints and alleged negligence in responding to the subject incident. Plaintiffs forget that in dismissing their negligence claims as raised in their second amended complaint, Judge Dawson previously ruled as follows:

10

11

12

13

14

15

> The conduct described in this cause of action is not negligent conduct; it is intentional conduct. Plaintiffs base their § 1981, IIED, battery, defamation, and false imprisonment claims on the same intentional conduct. However, **"[a]ny given act may be intentional or it may be negligent, but it cannot be both. Intent and negligence are regarded as mutually exclusive grounds for liability."** *Allen v. Clark Cty. Det. Ctr.*, No. 2:10-cv-00857-RLH-GWF, 2012 U.S. Dist. LEXIS 14260, at *7-8 (D. Nev. Feb. 6, 2012) (citing Dan B. Dobbs, The Law of Torts, §26). … **Plaintiffs allege that Frontier's negligence resulted in flight attendants conducting their duties in ways that were not racially neutral. However, a cause of action for negligent racial discrimination does not exist.**

16

17

ECF No. 121, p. 6 (Citations included and emphasis added).

18

19

20

21

22

In their Third Amended Complaint, Plaintiffs simply repackaged their negligence allegations and attempted to plead around Judge Dawson's ruling. Plaintiffs claimed, for instance, that Frontier "foster[ed] an environment in which discrimination by its employees based on its customers' races, colors, ancestry and/or ethnic characteristics is permitted and condoned by Frontier's management **to the extent that its employees consider themselves authorized to discriminate**." ECF 153. p. 30 (Emphasis added).

23

24

25

26

27

In other words, despite Judge Dawson's ruling that "a cause of action for negligent discrimination does not exist" (ECF No. 121, p. 6), Plaintiffs still hope to prove Frontier's intent to discriminate against them based on their allegations that Frontier's officers and managers negligently handled past discrimination complaints – to the extent that its employees felt "authorized" to intentionally discriminate

28

against Plaintiffs on March 28, 2019. However, no matter how they frame the issue, Plaintiffs run into the same paradox: "[a]ny given act may be intentional or it may be negligent, but it cannot be both. Intent and negligence are regarded as mutually exclusive grounds for liability." *Allen*, No. 2:10-cv-00857, at *7-8. Thus, contrary to Plaintiffs' contentions, whether Frontier was negligent with respect to the other discrimination complaints has no relevance to Plaintiffs' claims of intentional discrimination.

Judge Dawson previously commented that Plaintiffs have already been granted "broad avenues of relevant discovery on all the topics at issue in this case." ECF. 120, p. 3. To date, Frontier has produced 3,963 pages of documents, many of which relate to 338 unrelated complaints made by passengers who complained of various customer service issues and alleged some element of racial discrimination. Notably, Frontier has presented numerous customer relations agents to testify as to their involvement in responding to the unrelated complaints. Plaintiffs now seek to depose a Frontier corporate representative regarding the same issues. Respectfully, Plaintiffs should not be permitted to continue expanding the scope of their investigation. The information currently in Plaintiffs' possession is sufficient for them to identify the specific prior incidents of alleged racial discrimination which they contend have some meaningful connection or relevance to this particular claim. Because Plaintiffs' desire for an open-ended investigation into unrelated and irrelevant allegations is not proportional to the needs of this case, Frontier requests that this Court issue a protective order regarding such matters. See *Izzo v. Wal-Mart Stores, Inc*., No. 2:15-cv-01142-JAD-NJK, 2016 U.S. Dist. LEXIS 12210, at *13 (D. Nev. Feb. 2, 2016) (Defendant provided Plaintiff with a list of prior reported slips and falls. The Court finds that Plaintiff, therefore, already has the information she seeks. Her Rule 30(b)(6) request is overbroad, unduly burdensome, and not relevant to the claims she asserts.).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.  Legal Standards Governing Entry of Protective Order

Pursuant to Fed. R. Civ. P. 26(b)(1), discovery must be relevant to a party's claim or defense and proportional to the needs of the case. The court may issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. *Id.* To obtain a protective order, the moving party bears the burden of showing "good cause" by demonstrating the harm or prejudice that will result from the discovery. The moving party must demonstrate a "particular and specific need" for the protective order. *Carreon v. Smith's Food & Drug Stores,* Case No. 2:18-cv-01933-APG-NJK, 2019 U.S. Dist. LEXIS 30026, at *4 (D. Nev. Feb. 26, 2019) (internal citations omitted). Regarding Rule 30(b)(6), Courts consistently limit the scope of discovery "where the breadth of subject and number of topics identified in a [Rule] 30(b)(6) deposition notice renders a responding party's efforts to designate a knowledgeable person unworkable." *Reno v. W. Cab Co.*, Case No. 2:18-cv-00840-APG-NJK, 2020 U.S. Dist. LEXIS 186056, at *6 (D. Nev. Aug. 31, 2020) (quoting *Luken v. Christensen Grp. Inc.*, Case No. C16-5214 RBL, 2018 WL 1994121, at *2 (W.D. Wash. Apr. 27, 2018)).

In light of the significant obligations imposed on the noticed party under Rule 30(b)(6), courts emphasize the reciprocal obligation of the party drafting the notice to heed the practical constraints on the scope of a Rule 30(b)(6) deposition. *Reno*, No. 2:18-cv-00840, at *4. A Rule 30(b)(6) deposition is not a quiz, and it is impractical to expect a Rule 30(b)(6) witness to know the intimate details of everything. Accordingly, courts do not hesitate to issue protective orders when corporations face overly broad or unfocused Rule 30(b)(6) deposition notices. *Darbeevision, Inc. v. C&A Marketing*, No. CV 18-0725 AG (SSx), 2019 U.S. Dist. LEXIS 134914, at *23-24 (C.D. Cal. Jan. 28, 2019) (collecting cases). This is "not a complex anti-trust, patent, or environmental enforcement action"—cases in which technical knowledge or expert explanation may be required, and a 30(b)(6) witness may serve a requisite function not

achievable through other discovery tools. *Wieland v. Bd. of Regents of the Nev. Sys. of Higher Educ.,* No. 3:19-cv-00724-MMD-CLB, 2021 U.S. Dist. LEXIS 185849, at *10 (D. Nev. Sep. 28, 2021).

The noticed party to a Rule 30(b)(6) deposition carries the burden of seeking a protective order for any proposed topics it considers disproportionate to the needs of the particular case. If the noticed party fails to seek a protective order and then produces a Rule 30(b)(6) designee who is not adequately prepared to testify on the designated topics, it could amount to a nonappearance warranting the imposition of sanctions. *Ballentine v. Las Vegas Metropolitan Police Department*, No. 2:14-cv-01584-APG-GWF, 2016 U.S. Dist. LEXIS 62362, at *16 (D. Nev. May 9, 2016).

## III.   Frontier's Objections to Plaintiffs' Proposed Rule 30(b)(6) Topics

**Topic (1):** The specific details of all training given by Frontier to Flight Attendants Anna Bond, Chelsie Bright (Sakurada), Amanda Nickel and/or Scott Warren (hereinafter the "Subject Flight Attendants") prior to March 28, 2019 on the topics of: (a) passengers engaged in, or suspected to be engaged in, human trafficking; (b) sexual misconduct by passengers against other passengers; (c) the prevention of racial discrimination (including, without limitation, racial profiling) in interactions with passengers; (d) conflict management, including, without limitation, the "CUS" system and use of the "Red Stop Card"; **(e) circumstances in which Frontier considers physical contact by flight attendants with adult and minor passengers is appropriate; (f) circumstances in which Frontier considers it appropriate for a flight attendant to discuss alleged sexual misconduct with a minor passenger and to place a hand on or near the minor passenger's genital area**; and any other training given by Frontier to the Subject Flight Attendants that is mentioned in Frontier's responses to discovery questions and/or documents produced by Frontier in this litigation.

**Frontier's Objection:** Frontier objects only to the bold portions emphasized in Topic 1. Frontier does not object to generalized questions about how it handles in-flight observations of inappropriate touching, but the emphasized portion of Topic 1 is argumentative, harassing, not intended to lead to the discovery of admissible evidence, and not appropriate for a 30(b)(6) topic. See *Tyler v. City of San Diego*, No. 14cv1179-GPC (JLB), at *6 (S.D. Cal. Feb. 2, 2015) (disallowing a topic that asked whether the defendant City "knew it could not sexually harass"). Here, during his deposition, Mr. Warren acknowledged that he asked A.D. whether he knew where Peter's hand was located, but he denied ever

touching Peter or A.D., and he further denied ever placing his own hand anywhere near A.D.'s crotch. [Warren Dep., pp. 82, 103-105]. Also, Plaintiffs do not allege that a flight attendant physically touched A.D.

**Topic (2)**: The reason why Frontier did not provide a manifest of passengers' names to the crew of Flight 2067, and the availability of such a manifest to members of Frontier's flight operations center during Flight 2067.

**Frontier's Objection**: Frontier objects to Topic 2 on grounds that it seeks information that is irrelevant and not proportional to the needs of this case. *Matthys v. Barrick Gold of N. Am., Inc.*, No. 3:20-CV-00034-LRH-CLB, 2021 U.S. Dist. LEXIS 152678, at *4-5 (D. Nev. Aug. 13, 2021)(The Court agrees with defendant that the 40 topics in the Rule 30(b)(6) deposition notice served in this case are excessive and unreasonable given the circumstances of this case, including the relatively straightforward nature of the claims and defenses.). Plaintiff's counsel has questioned Frontier's employees during depositions about the availability of the flight manifest, suggesting that checking the manifest would have revealed Plaintiffs share the same last name. The implication is that learning Plaintiffs shared the same last name would have alleviated the crewmembers' concerns about inappropriate behavior, which is false. In fact, Plaintiffs' § 1981 claim rests on their allegations that Defendant Warren (himself a Black man) knew Plaintiffs were related and specifically discriminated against them because of it. See ECF 153, p. 23 (alleging Defendant Warren "believed that it was wrong and immoral for Peter to have adopted an African child, and he resented A.D.'s being adopted into a White family."). Further, whether Plaintiffs shared the same last name was clearly not considered a material fact to the investigators who met Plaintiffs on the ground, as Plaintiffs claim they were "taken into custody" by police officers and FBI agents and questioned for approximately six hours. ECF 153, p. 25. Finally, even assuming *arguendo* that Frontier owed Plaintiffs a duty to determine whether they shared the last name, a breach of said duty would only

1   establish negligence, and would do nothing to establish intentional discrimination under § 1981. See Judge

2   Lawson's ruling at ECF No. 121, p. 6.

3       **Topic (3):** Frontier's knowledge of the Department of Transportation (DOT) "Guidance
4       for Airline Personnel on Non-discrimination in Air Travel" (January 2017); DOT News
        Release dated January 13, 2017; DOT "Passengers' Right to Fly Free from Discrimination"
5       (January 2017); DOT Consent Order, Docket OST 2003-15046 (Feb. 27, 2004); DOT
        Order, Docket OST-2004-17197 (Feb. 24, 2004); DOT Consent Order, Docket OST-2011-
6       0003 (Nov. 1, 2011); Consent Order, Docket OST-2012-0002 (May 2, 2012), **documents
7       Bates Stamped P000748-P000780, and any and all actions taken by Frontier relating
        to the subject matter of those documents, including the reasons for such actions (or
8       inaction).**

9       **Frontier's Objection:** Frontier objects only to the bold portion emphasized in Topic 3 on grounds

10  that it violates this Court's prior discovery rulings. Frontier's documents Bates Stamped P000748-

11  P000780 are incident reports concerning the prior passenger discrimination complaints. As the Court

12  already ruled, Plaintiffs have made no showing that any of the prior passenger complaints are connected

13  to their claims, and more evidence regarding the unrelated complaints and Frontier's handling of the

14  complaints in not relevant to Plaintiffs' case. ECF No. 192 at 12-13 (Emphasis added).

15
16      **Topic (4):** Frontier's policy against discrimination toward passengers, how it is
17      communicated to its employees, what policies and/or procedures (if any) are in place that
        could impose any consequences for an employee who fails to follow the policy (such as, for
18      example, disciplinary measures and/or retraining), **and the number of times between
        March 28, 2014 and March 28, 2019 that any employees were subjected to any such
19      consequences as a result of a finding that the employees had failed to follow the policy.
20      In addition, the facts and circumstances that led to any such consequences.**

21      **Frontier's Objection:** Frontier objects only to the bold portion emphasized in Topic 4. As noted

22  above, the Court recently ruled that it "does not find more evidence regarding unrelated complaints and

23  Frontier's handling of complaints in general to be relevant to Plaintiffs' case." ECF No. 192 at 13. Further,

24  Plaintiffs previously issued an interrogatory asking Frontier to identify all employees disciplined for

25  complaints of discrimination. In ruling on Plaintiffs' Fifth Motion Compel, the Court ordered that

26
27  Plaintiffs have not made a "threshold showing" that the documents they seek are relevant or proportional

28

to the needs of this case. ECF No. 192, at pp. 6, 12. The emphasized portion of Topic 4 is therefore inappropriate for a Rule 30(b)(6) deposition.

>    **Topic (5):** The contents of Frontier's Flight Attendant Manual ("FAM") and training materials that mention any of the following subjects: (a) human trafficking; (b) sex trafficking; (c) sexual misconduct by passengers against other passengers; (d) child abuse and/or child molestation by passengers against other passengers; (e) racial profiling as it relates to interactions with passengers; (f) racial discrimination as it relates to interactions with passengers; (g) the classification of passengers as Threat Levels One and/or Two, and procedures to be followed upon making such classification(s); **(h) the prohibitions against flight attendants all congregating in one area of the aircraft during flight, or allowing all flight attendants to become focused on a single issue during flight; and (i) the prohibition against more than one flight attendant being in the cockpit at the same time**.

**Frontier's Objection:** Frontier objects only to the bold portion emphasized in Topic 5. Whether Frontier's flight attendants congregated in one area of the aircraft, became focused on a single area during flight, or were present in the cockpit at the same time is neither relevant to the issue of intentional discrimination, nor proportional to the needs of this case. Further, even assuming *arguendo* that Plaintiffs could establish Frontier's flight attendants were negligent for the reasons stated in the bold portion emphasized in Topic 5, this Court previously ruled that "a cause of action for negligent racial discrimination does not exist." ECF No. 121, p. 6.

>    **Topic (6).** The text of the "Relationships with Customers" subsection of the "COMPETITION AND FAIR DEALING" section of Frontier's "Code of Ethics" contained within its Employee Handbook produced in this action, how that text is communicated to employees, whether employees are specifically trained and/or tested on its contents and meaning, what policies and/or procedures (if any) are in place that could impose any consequences for an employee who fails to follow the "Relationships with Customers" subsection (such as, for example, disciplinary measures and/or retraining), **and the number of times between March 28, 2014 and March 28, 2019 that any employees were subjected to any such consequences as a result of a finding that the employees had failed to follow the "Relationships with Customers" subsection. In addition, the facts and circumstances that led to any such consequences.**

**Frontier's Objection:** Frontier objects only to the bold portion emphasized in Topic 6 for the same reasons stated in Frontier's Objection to Topic 4.

**Topic (7).** Why no investigation or disciplinary action against Defendant Scott Warren resulted from Peter DelVecchia's 2019 complaint to Frontier that Warren had falsely identified himself as "Kevin," struck Peter DelVecchia on the head and physically took his child away from him during the flight.

**Frontier's Objection:** Frontier objects to Topic 7 on grounds that it is argumentative, harassing, not intended to lead to the discovery of admissible evidence, and not appropriate for a 30(b)(6) topic. See *Tyler v. City of San Diego*, No. 14cv1179-GPC (JLB), at *6 (S.D. Cal. Feb. 2, 2015). Frontier adds that Mr. Warren denied the allegations contained in Topic 7, including the allegation that he "falsely identified himself as 'Kevin'". [Warren Dep., p. 126].

**Topic (8):** The text of the "COMPLIANCE WITH LAWS AND REGULATIONS" section of Frontier's "Code of Ethics" contained within its Employee Handbook produced in this action, how that text is communicated to employees, whether employees are specifically trained and/or tested on its contents and meaning, what policies and/or procedures (if any) are in place that could impose any consequences (such as, for example, disciplinary measures and/or retraining) for an employee who fails to follow the "COMPLIANCE WITH LAWS AND REGULATIONS" section in circumstances where the laws and regulations involved were those that apply to discrimination against passengers on the basis of race or ethnicity, **and the number of times between March 28, 2014 and March 28, 2019 that any employees were subjected to any such consequences as a result of a finding that the employees had failed to follow the "COMPLIANCE WITH LAWS AND REGULATIONS" section in circumstances where the laws and regulations involved were those that apply to discrimination against passengers on the basis of race or ethnicity. In addition, the facts and circumstances that led to any such consequences**.

**Frontier's Objection:** Frontier objects to the entirety of Topic 8 on grounds that the "COMPLIANCE WITH LAWS AND REGULATIONS" section of Frontier's "Code of Ethics" contained within its Employee Handbook is irrelevant and not proportional to the needs of this case. (See Compliance with Laws and Regulations imbedded below).  Topic 8 is further vague insofar as it references violations of laws and regulations "that apply to discrimination against passengers on the base of race or ethnicity." Frontier further objects to the bold portion emphasized above for the same reasons listed in its objection to Topic 4.

- 11 -

**COMPLIANCE WITH LAWS AND REGULATIONS**

Each employee and director has an obligation to comply with all laws, rules and regulations applicable to Frontier's operations. These include, without limitation, laws covering bribery and kickbacks, the development, testing, approval, marketing and sale of our services, copyrights, trademarks and trade secrets, information privacy, insider trading, illegal political contributions, antitrust prohibitions, foreign corrupt practices, offering or receiving gratuities, environmental hazards, employment discrimination or harassment, occupational health and safety, false or misleading financial information or misuse of corporate assets. You are expected to understand and comply with all laws, rules and regulations that apply to your job position. If any doubt exists about whether a course of action is lawful, you should seek advice from your supervisor or the General Counsel.

Company employees with responsibilities in the areas governed by the FAA and other applicable laws and regulations must understand and comply with these laws and regulations. These employees are expected to have a thorough understanding of, and to comply with, the laws, regulations and other relevant standards applicable to their job positions. Frontier has developed standard operating procedures and provides regular training to aid employees in understanding and complying with the requirements of the FAA or the DOT.

Also see Frontier's "Whistleblower Policy" and "Anti-Corruption Compliance Policy."

**Topic (10)**: Instances between March 28, 2014 and March 28, 2019 in which any employee or agent of Frontier was alleged to have used the terms "nxxxxr,"[1] "you people," and/or "your kind" in communications with, or about, any non-White passenger of Frontier, and the details of Frontier's investigation of such occurrence(s) and of any discipline imposed on the employee(s) or agent(s).

**Frontier's Objection:** Frontier objects to Topic 10 for the same reasons stated in its Objection to Topics 4 and 7. Plaintiff is attempting to inject racially charged and inflammatory language into a case where none exists.

**Topic (13):** Frontier's Employee Handbook, "Standards of Conduct" Section 4, including, without limitation, policies on physical violence and dishonesty, falsification and misrepresentation.

**Frontier's Objection:** Frontier objects to Topic 13 on grounds that it is overbroad and vague, and for the same reasons stated in its Objection to Topic 4 and 7.

**Topic (17).** Why no investigation was conducted, or discipline imposed, relating to Captain Rex Shupe's and First Officer Mullin's failure to follow written procedures for a Threat Level 2 on Flight 2067 including, without limitation, failing to lock down the cockpit,

---

[1] Frontier has not included the full text included in Plaintiffs' Rule 30(b)(6) notice.

failing to notify Air Traffic Control, failing to consider diversion to a different airport, and failing to prepare for interception by DoD fighters.

**Frontier's Objection:** Frontier objects to Topic 17 because it seeks information that is irrelevant and not proportional to the needs of this case. Whether Frontier followed Threat Level 2 procedures has nothing to do with whether Defendants intentionally discriminated against Plaintiffs based on the biracial characteristic of their family unit." See ECF No. 153, p. 2. Moreover, the proposed subtopics are clearly aimed at establishing Frontier's negligence, which would do nothing to establish Frontier's intent. See ECF No. 121, p. 6. Frontier further objects to Topic 17 for the same reasons stated in its Objection to Topic 7.

**Topic (18)**. Why no investigation was conducted, or discipline imposed, relating to Captain Rex Shupe's and First Officer Mullin's failure to follow written procedures on Flight 2067 requiring that no more than one flight attendant be permitted in the cockpit at any one time.

**Frontier's Objection:** Frontier objects to Topic 18 for the same reasons it objected to Topic 17.

**Topic (27)**. Plaintiffs reserve the right to inquire into the content of any and all documents produced as of the date of the deposition by Frontier. Without limiting the foregoing, Plaintiffs intend to inquire into the content of all documents referenced in the listed topics of this Notice as well as those listed on Exhibit A.

**Frontier's Objection**: Frontier objects to Topic 27 on grounds that it is overbroad and unduly burdensome to include a topic covering "any and all" of the 3,963 pages of documents produced by Frontier to date. *See Preservation Technologies Llc v. Mindgeek United States*, No. 2:17-cv-08906-DOC-JPR, 2020 U.S. Dist. LEXIS 258315, at *14-15 (C.D. Cal. Oct. 19, 2020) ("A deposition topic lacking all metes and bounds is facially overbroad and unduly burdensome."). Further, to the extent the documents "referenced in the listed topics" and "listed on Exhibit A" reference the prior unrelated passenger complaints, this Court has already ruled that it "does not find more evidence regarding unrelated complaints and Frontier's handling of complaints in general to be relevant to Plaintiffs' case." ECF No. 192 at 13.

**Topic (30)**. The details of investigations conducted by Frontier concerning the human trafficking incident reports produced by Frontier to Plaintiffs up to the date of the deposition.

**Frontier's Objection:** Frontier objects to Topic 30 for the same reasons it objected to Topic 4.

**Topic (31)**. The details of disciplinary actions against any Frontier employee, and/or additional training provided to any Frontier employee, relating to the subject matter of the human trafficking incident reports produced by Frontier to Plaintiffs up to the date of the deposition.

**Frontier's Objection:** Frontier objects to Topic 31 for the same reasons it objected to Topic 4.

**Topic (32)**. The details of investigations conducted by Frontier concerning the passenger/customer complaints of discrimination produced by Frontier to Plaintiffs that are listed on **Exhibit A** hereto.

**Frontier's Objection:** Frontier objects to Topic 32 for the same reasons it objected to Topic 4.

**Topic (33)**. The details of disciplinary actions against any Frontier employee, and/or additional training provided to any Frontier employee, relating to the subject matter of the passenger/customer complaints of discrimination produced by Frontier to Plaintiffs that are listed on **Exhibit A** hereto.

**Frontier's Objection:** Frontier objects to Topic 33 for the same reasons it objected to Topic 4.

**Topic (34)**. The details of all communications with the Department of Transportation concerning the subject matter of the passenger/customer complaints of discrimination produced by Frontier to Plaintiffs that are listed on Exhibit A hereto.

**Frontier's Objection:** Frontier objects to Topic 34 for the same reasons it objected to Topic 4.

**Topic (35)**. The details of any instructions that any person in Frontier's management has given to any person assigned to Frontier's Customer Relations Department (regardless of whether the recipient was in a managerial position or a non-managerial position and including, without limitation, any of the Customer Relations employees working on the "Denver Team" of Customer Relations) about how the recipient or the employees working under the recipient should respond to complaints alleging racial discrimination, ethnic discrimination, or other forms of discrimination, and/or about how such persons should code, classify, or index complaints that contain allegations of discrimination.

**Frontier's Objection:** Frontier objects to Topic 35 for the same reasons it objected to Topic 4.

**Topic (36)**. The content of the "Customer Relations Templates" described by Elizabeth Zimmerman in her deposition, and instructions regarding the use of such templates to respond to passenger complaints of discrimination.

**Frontier's Objection:** Frontier objects to Topic 36 for the same reasons it objected to Topic 4.

**Topic (37).** Discussions between Frontier's senior management and Inflight management during the period between March 28, 2014 and March 28, 2019 concerning how the number and/or frequency of passenger discrimination complaints could be reduced.

**Frontier's Objection:** Frontier objects to Topic 37 for the same reasons it objected to Topic 4.

**Topic (38).** Details of the destruction in May, 2020 of the database that contained crewmember assignments for past flights, or the rendering of that database as no longer searchable.

**Frontier's Objection:** Frontier objects to Topic 38 on grounds that it seeks irrelevant information. Further, the Court recently addressed Plaintiffs' allegations of spoliation and ruled as follows:

> The Court notes that Plaintiffs argue certain of their requests are relevant to support their spoliation motion, rather than learning more about other passenger complaints and how Frontier handles complaints more broadly. However, the only reason this allegedly spoliated evidence is relevant is because it could help Plaintiffs identify whether the employees aboard their flight were involved in any past discrimination complaints. But Plaintiffs concede that they already have each employees' file, which files are devoid of any discipline for discrimination. (ECF No. 170 at 4). To the extent that Plaintiffs believe these specific employees discriminated in the past, but that Frontier never disciplined them, Plaintiffs can serve a specific interrogatory to discover that information. That interrogatory—should Plaintiffs choose to serve it—must be limited to asking whether any of the Frontier employees on Plaintiffs' flight were identified in any of the complaints Frontier previously produced. ECF No. 192, p. 13.

On August 8, 2022, Plaintiffs issued an interrogatory that went beyond the parameters stated above by the Court. Frontier objected on those grounds, but, subject to and without waiving its objections, answered that its employees on Plaintiffs' flight "were not identified in any of the complaints Frontier previously produced." See Plaintiff A.D.'s Fourth Interrogatories, and Frontier's responses thereto, attached as **Exhibit 2**.

**Topic (39).** A witness to authenticate as business records of Frontier all the documents listed on Exhibit A to Plaintiffs' Fourth Requests for Admissions to Defendant Frontier Airlines, Inc. (or, if Frontier disputes that portions are retained as its business records, to authenticate the portions of such documents that are its business records).

**Frontier's Objection**: Frontier objects to Topic 39 on grounds that it seeks irrelevant information. Further, the Court recently addressed Plaintiffs' requests for Frontier to admit that over 2,000 pages of documents were authentic business records, made in the course of business or by someone with knowledge of the matters. The Court ruled that Plaintiffs' requests were neither relevant nor proportional to the needs of this case. ECF No. 192, pp. 5, 12.

WHEREFORE, Defendant, Frontier Airlines, Inc. requests that this Court enter a protective order precluding enforcement of the notice as currently drafted and for any other relief this Court deems just and proper.

DATED this 3rd day of November 2022

Respectfully submitted,

**FRONTIER AIRLINES, INC.**

*/s/ Brian T. Maye*
Lawrence S. Gosewisch (admitted *pro hac vice*)
Brian T. Maye (admitted *pro hac vice*)
Matthew D. Martin (admitted *pro hac vice*)
ADLER MURPHY & McQUILLEN LLP
20 South Clark Street, Suite 2500
Chicago, Illinois 60603
Phone: (312) 345-0700
Email: lgosewisch@amm-law.com
            bmaye@amm-law.com
            mmartin@amm-law.com

Charles A. Michalek (Nevada Bar No. 5721)
ROGERS, MASTRANGELO, CARVALHO &
MITCHELL
700 South Third Street
Las Vegas, Nevada 89101
Phone: (702) 383-3400
Email: cmichalek@rmcmlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2022, I caused the foregoing to be electronically filed with the United States District Court for the District of Nevada using the CM/ECF system.

*/s/ Brian T. Maye*

Lawrence S. Gosewisch (admitted *pro hac vice*)
Brian T. Maye (admitted *pro hac vice*)
Matthew D. Martin (admitted *pro hac vice*)
ADLER MURPHY & McQUILLEN LLP
20 South Clark Street, Suite 2500
Chicago, Illinois 60603
Phone: (312) 345-0700
Email: lgosewisch@amm-law.com
          bmaye@amm-law.com
          mmartin@amm-law.com

Charles A. Michalek (Nevada Bar No. 5721)
ROGERS, MASTRANGELO, CARVALHO & MITCHELL
700 South Third Street
Las Vegas, Nevada 89101
Phone: (702) 383-3400
Email: cmichalek@rmcmlaw.com