John D. McKay, Esq.
*Admitted pro hac vice*
PARK AVENUE LAW LLC
127 W. Fairbanks Ave. No. 519
Winter Park, Florida 32789
(434) 531-9569
johndmckayatty@gmail.com

***Attorneys for Plaintiffs PETER DELVECCHIA and***
***A.D., a Minor***

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| PETER DELVECCHIA, *et al.*, | ) | **Case No: 2:19-CV-01322-KJD-DJA** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | **PLAINTIFFS' <u>FIFTH AMENDED</u>** |
| vs. | ) | **NOTICE OF VIDEO DEPOSITION OF** |
| | ) | **DEFENDANT FRONTIER AIRLINES, INC.** |
| | ) | **PURSUANT TO FED. R. CIV. P. 30(b)(6)** |
| | ) | |
| FRONTIER AIRLINES, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

PLEASE TAKE NOTICE that the undersigned attorney for Plaintiffs, Peter DelVecchia individually and as next friend of A.D., a minor, will take the remote videotaped deposition of Defendant Frontier Airlines, Inc., through its designated representatives, pursuant to Fed. R. Civ. P. 30(b)(6), on the dates and times specified below, upon oral examination conducted via Zoom before a Notary Public or other person authorized to administer oaths, to be recorded by stenographic and audiovisual means, for discovery and use as evidence, and for all other purposes permitted by the

Federal Rules of Civil Procedure. The deposition will continue from day to day until completed. The details are:

**Deponent:**   **FRONTIER AIRLINES, INC.**

**Dates:**   **November 14, 15, 17 and 18, 2022, although the deposition will continue from day to day until completed. See below for initial breakdown of topics by day**

**Time:**   **Beginning at 9:00 a.m. MST each day**

**Place:**   **Via Zoom teleconference, which may be recorded as a video deposition**

Pursuant to Fed. R. Civ. P. 30(b)(6), the deponent party (hereinafter "Frontier") must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf, to testify on the following list of subjects. As used in the list of subjects, "Flight 2067" means the Frontier flight operating with that flight number between RDU and LAS on the evening of March 28, 2019. The persons designated must testify about information known or reasonably available to the company, including any employees or agents of the company.

<u>SUBJECT LIST</u>

**<u>Day One (11/14/2022)</u>:**

1. The specific details of all training given by Frontier to Flight Attendants Anna Bond, Chelsie Bright (Sakurada), Amanda Nickel and/or Scott Warren (hereinafter the "Subject Flight Attendants") prior to March 28, 2019 on the topics of: (a) passengers engaged in, or suspected to be engaged in, human trafficking; (b) sexual misconduct by passengers against other passengers; (c) the prevention of racial discrimination (including, without limitation, racial profiling) in interactions with passengers; (d) conflict management, including, without limitation, the "CUS" system and use of the "Red Stop Card"; (e) circumstances in which Frontier considers physical contact by flight attendants with adult and minor passengers is

appropriate; (f) circumstances in which Frontier considers it appropriate for a flight attendant to discuss alleged sexual misconduct with a minor passenger and to place a hand on or near the minor passenger's genital area; and any other training given by Frontier to the Subject Flight Attendants that is mentioned in Frontier's responses to discovery questions and/or documents produced by Frontier in this litigation.

2. The reason why Frontier did not provide a manifest of passengers' names to the crew of Flight 2067, and the availability of such a manifest to members of Frontier's flight operations center during Flight 2067.

3. Frontier's knowledge of the Department of Transportation (DOT) "Guidance for Airline Personnel on Non-discrimination in Air Travel" (January 2017); DOT News Release dated January 13, 2017; DOT "Passengers' Right to Fly Free from Discrimination" (January 2017); DOT Consent Order, Docket OST 2003-15046 (Feb. 27, 2004); DOT Order, Docket OST-2004-17197 (Feb. 24, 2004); DOT Consent Order, Docket OST-2011-0003 (Nov. 1, 2011); Consent Order, Docket OST-2012-0002 (May 2, 2012), documents Bates Stamped P000748-P000780, and any and all actions taken by Frontier relating to the subject matter of those documents, including the reasons for such actions (or inaction).

4. Frontier's policy against discrimination toward passengers, how it is communicated to its employees, what policies and/or procedures (if any) are in place that could impose any consequences for an employee who fails to follow the policy (such as, for example, disciplinary measures and/or retraining), and the number of times between March 28, 2014 and March 28, 2019 that any employees were subjected to any such consequences as a result of a finding that the employees had failed to follow the policy. In addition, the facts and circumstances that led to any such consequences.

5. The contents of Frontier's Flight Attendant Manual ("FAM") and training materials that mention any of the following subjects: (a) human trafficking; (b) sex trafficking; (c) sexual misconduct by passengers against other passengers; (d) child abuse and/or child molestation by passengers against other passengers; (e) racial profiling as it relates to interactions with passengers; (f) racial discrimination as it relates to interactions with passengers; (g) the classification of passengers as Threat Levels One and/or Two, and procedures to be followed upon making such classification(s); (h) the prohibitions against flight attendants all congregating in one area of the aircraft during flight, or allowing all flight attendants to become focused on a single issue during flight; and (i) the prohibition against more than one flight attendant being in the cockpit at the same time.

6. The text of the "Relationships with Customers" subsection of the "COMPETITION AND FAIR DEALING" section of Frontier's "Code of Ethics" contained within its Employee Handbook produced in this action, how that text is communicated to employees, whether employees are specifically trained and/or tested on its contents and meaning, what policies and/or procedures (if any) are in place that could impose any consequences for an employee who fails to follow the "Relationships with Customers" subsection (such as, for example, disciplinary measures and/or retraining), and the number of times between March 28, 2014 and March 28, 2019 that any employees were subjected to any such consequences as a result of a finding that the employees had failed to follow the "Relationships with Customers" subsection. In addition, the facts and circumstances that led to any such consequences.

7. Why no investigation or disciplinary action against Defendant Scott Warren resulted from Peter DelVecchia's 2019 complaint to Frontier that Warren had falsely identified himself as

"Kevin," struck Peter DelVecchia on the head and physically took his child away from him during the flight.

8. The text of the "COMPLIANCE WITH LAWS AND REGULATIONS" section of Frontier's "Code of Ethics" contained within its Employee Handbook produced in this action, how that text is communicated to employees, whether employees are specifically trained and/or tested on its contents and meaning, what policies and/or procedures (if any) are in place that could impose any consequences (such as, for example, disciplinary measures and/or retraining) for an employee who fails to follow the "COMPLIANCE WITH LAWS AND REGULATIONS" section in circumstances where the laws and regulations involved were those that apply to discrimination against passengers on the basis of race or ethnicity, and the number of times between March 28, 2014 and March 28, 2019 that any employees were subjected to any such consequences as a result of a finding that the employees had failed to follow the "COMPLIANCE WITH LAWS AND REGULATIONS" section in circumstances where the laws and regulations involved were those that apply to discrimination against passengers on the basis of race or ethnicity. In addition, the facts and circumstances that led to any such consequences.

9. All information known to Frontier about the employment histories and records of the Subject Flight Attendants, regardless of whether or not documents containing such information has already been produced, and including, without limitation, the contents of their employee files labeled "Confidential/EEOC," "Confidential/Investigations," and "Recruitment/Flight Attendant Hired," as well as any information concerning disciplinary actions, demerits, warnings (including, without limitation, documented verbal warnings or DVWs), adverse

employment actions, demotions, investigations, and/or demerit points accumulated for each of the Subject Flight Attendants.

10. Instances between March 28, 2014 and March 28, 2019 in which any employee or agent of Frontier was alleged to have used the terms "nigger," "you people," and/or "your kind" in communications with, or about, any non-White passenger of Frontier, and the details of Frontier's investigation of such occurrence(s) and of any discipline imposed on the employee(s) or agent(s).

11. Frontier's creation and publication of "Inflight Must Read" Number 19-13 dated March 15, 2019 on the subject of "Sexual Misconduct."

12. Frontier's creation and publication of Revision 63 to Frontier's FAM dated 04/01/19 titled "20.50 Human Trafficking."

13. Frontier's Employee Handbook, "Standards of Conduct" Section 4, including, without limitation, policies on physical violence and dishonesty, falsification and misrepresentation.

**Day Two (11/15/2022):**

14. The authority of the Pilot in Command and Captain during a flight, and FOM provisions describing the authority.

15. Any and all training given by Frontier to pilots Rex Shupe and/or Shawn Mullin (hereinafter the "Subject Pilots") on the topics of: (a) passengers engaged in, or suspected to be engaged in, human trafficking; (b) sexual misconduct by passengers against other passengers; (c) child abuse and/or child molestation by passengers against other passengers; (d) the avoidance of racial discrimination as it relates to interactions with passengers; (e) the avoidance of racial profiling as it relates to interactions with passengers; (f) the classification of passengers as

Threat Levels One and/or Two, and procedures to be followed upon making such classification(s); (g) information gathering requirements before taking action against a passenger; and any other training given by Frontier to the Subject Pilots that is mentioned in Frontier's responses to discovery questions and/or documents produced by Frontier in this litigation.

16. The contents of Frontier's Flight Operations Manual ("FOM") that mention any of the following subjects: (a) human trafficking; (b) sex trafficking; (c) sexual misconduct by passengers against other passengers; (d) child abuse and/or child molestation by passengers against other passengers; (e) racial profiling as it relates to interactions with passengers; (f) racial discrimination as it relates to interactions with passengers; or (g) the classification of passengers as Threat Levels One and/or Two, and procedures to be followed upon making such classification(s).

17. Why no investigation was conducted, or discipline imposed, relating to Captain Rex Shupe's and First Officer Mullin's failure to follow written procedures for a Threat Level 2 on Flight 2067 including, without limitation, failing to lock down the cockpit, failing to notify Air Traffic Control, failing to consider diversion to a different airport, and failing to prepare for interception by DoD fighters.

18. Why no investigation was conducted, or discipline imposed, relating to Captain Rex Shupe's and First Officer Mullin's failure to follow written procedures on Flight 2067 requiring that no more than one flight attendant be permitted in the cockpit at any one time.

19. All facts known by Las Vegas Chief Pilot Devin Hussey concerning Plaintiffs, Flight 2067 conducted on March 28, 2019 between RDU and LAS (hereinafter "Flight 2067"), and/or any investigation conducted into the facts and circumstances of Flight 2067.

20. The contents of all Skyspeed and/or ACARS messages concerning the events on Frontier Flight 2067 between KRDU and KLAS on March 28, 2019 involving Plaintiffs, the identities of all persons who authored, received, saw and/or had access at any time to those messages, the method(s) by which such messages were stored, and the meaning of all numerical codes used in the messages, including, without limitation, "6393."

21. All information known to Frontier about the employment histories and records of the Subject Pilots, regardless of whether or not documents containing such information has already been produced, and including, without limitation, the contents of their employee files labeled "Confidential/EEOC," "Confidential/Investigations," and "Recruitment/Flight Attendant Hired," as well as any information concerning disciplinary actions, demerits, warnings (including, without limitation, documented verbal warnings or DVWs), adverse employment actions, demotions, investigations, and/or demerit points accumulated for each of the Subject Pilots.

22. All communications between the cockpit of Flight 2067 and/or Frontier's flight operations center and the Airport Communications Center of LAS concerning Plaintiffs and the request for law enforcement officers to meet the flight when it landed.

**Day Three (11/17/2022):**

23. Frontier's net worth as of the date of the deposition (or as of the most recent accounting period).

24. The factual bases for any affirmative defenses pleaded by Frontier in this action.

25. Any and all statements obtained from passengers on Flight 2067 other than Plaintiffs, relating to any of the matters alleged by Plaintiffs in this action.

26. All interrogatory answers provided as of the date of the deposition by Frontier.

27. Plaintiffs reserve the right to inquire into the content of any and all documents produced as of the date of the deposition by Frontier. Without limiting the foregoing, Plaintiffs intend to inquire into the content of all documents referenced in the listed topics of this Notice as well as those listed on Exhibit A.

28. Information obtained by Frontier or its agents, including, without limitation, its investigators and attorneys, that confirms, supports or refutes Plaintiffs' allegation that Flight Attendant Scott Warren struck Plaintiff Peter DelVecchia.

29. Information obtained by Frontier or its agents that confirms, supports or refutes Plaintiffs' allegation that Flight Attendant Scott Warren sexually assaulted Plaintiff A.D.

30. The details of investigations conducted by Frontier concerning the human trafficking incident reports produced by Frontier to Plaintiffs up to the date of the deposition.

31. The details of disciplinary actions against any Frontier employee, and/or additional training provided to any Frontier employee, relating to the subject matter of the human trafficking incident reports produced by Frontier to Plaintiffs up to the date of the deposition.

32. The details of investigations conducted by Frontier concerning the passenger/customer complaints of discrimination produced by Frontier to Plaintiffs that are listed on **Exhibit A** hereto.

33. The details of disciplinary actions against any Frontier employee, and/or additional training provided to any Frontier employee, relating to the subject matter of the passenger/customer complaints of discrimination produced by Frontier to Plaintiffs that are listed on **Exhibit A** hereto.

34. The details of all communications with the Department of Transportation concerning the subject matter of the passenger/customer complaints of discrimination produced by Frontier to Plaintiffs that are listed on Exhibit A hereto.

35. The details of any instructions that any person in Frontier's management has given to any person assigned to Frontier's Customer Relations Department (regardless of whether the recipient was in a managerial position or a non-managerial position and including, without limitation, any of the Customer Relations employees working on the "Denver Team" of Customer Relations) about how the recipient or the employees working under the recipient should respond to complaints alleging racial discrimination, ethnic discrimination, or other forms of discrimination, and/or about how such persons should code, classify, or index complaints that contain allegations of discrimination.

36. The content of the "Customer Relations Templates" described by Elizabeth Zimmerman in her deposition, and instructions regarding the use of such templates to respond to passenger complaints of discrimination.

37. Discussions between Frontier's senior management and Inflight management during the period between March 28, 2014 and March 28, 2019 concerning how the number and/or frequency of passenger discrimination complaints could be reduced.

38. Details of the destruction in May, 2020 of the database that contained crewmember assignments for past flights, or the rendering of that database as no longer searchable.

**Day Four (11/18/2022):**

39. A witness to authenticate as business records of Frontier all the documents listed on Exhibit A to Plaintiffs' Fourth Requests for Admissions to Defendant Frontier Airlines, Inc. (or, if

Frontier disputes that portions are retained as its business records, to authenticate the portions of such documents that are its business records).

DATED this 5th day of October, 2022.

_____
John D. McKay (admitted *pro hac vice*)
PARK AVENUE LAW LLC
201 Spear Street, Suite 1100
San Francisco, CA 94105
johndmckayatty@gmail.com
(434) 531-9569

**Attorney for Plaintiffs Peter DelVecchia**
**And A.D., a Minor**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 5, 2022, pursuant to prior agreement of counsel permitting electronic service by email, I served the foregoing Fourth Amended Notice of Deposition on counsel for Defendants by email addressed to the following persons:

Brian T. Maye, Esq.
Matthew D. Martin, Esq.
Lawrence S. Gosewisch, Esq.
ADLER MURPHY & McQUILLEN LLP
20 South Clark Street, Suite 2500
Chicago, Illinois 60603
Email: bmaye@amm-law.com
        mmartin@amm-law.com
        lgosewisch@amm-law.com

Charles A. Michalek, Esq.
ROGERS, MASTRANGELO, CARVALHO & MITCHELL
700 South Third Street
Las Vegas, Nevada 89101
Email: cmichalek@rmcmlaw.com

PLAINTIFFS' 5TH AMENDED NOTICE OF DEPOSITION OF DEFENDANT
FRONTIER AIRLINES, INC.

1

2

3 _____

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

**(The following list contains the Bates numbers of discrimination complaints produced by Frontier pursuant to the Court's May 8, 2020 and March 29, 2021 Orders compelling production, ECF No. 83 and 120, respectively. All of the Bates numbers are preceded by the prefix "19AZF0229 DELVECCHIA FRONTIER")**

1135
1136-37
1138-39
1140-41
1142-1143
1144-45
1146-47
1148
1149-50
1151-52
1153-54
1155-59
1160-66
1167-76
1177-78
1179-80
1181-82
1183-84
1185-90
1199-1201
1202-04
1205-06
1207-08
1217-24
1236-37
1238-39
1240-46
1254-60
1261-64
1272-78
1287-89
1293-97
1298-1303
1304-05
1328-29
1330-38

1339-44
1363-64
1365-66
1367-72
1373-76
1377-84
1387-88
1400-12
1413-19
1420-21
1442-56
1457-58
1459
1460-69
1470-77
1481-1508
1499-1500
1514-24
1525-30
1531
2125-27
2128-29
2142-44
2147-56
2161-62
2172-73
2174-84
2197-98
2251-56
2266-73
2284-93
2294-2305
2315-16
2317-26
2335
2343-48
2364-65
2366-67
2384-94
2427-41
2442-43
2446-67
2470-81
2482-90

2491
2534-37
2560-65
2566-78
2664
2702-13
2714-15
2724-31
2742-43
2744-51
2768-85
2946-53
3068-80
3092-99
3123-24
3227-34
3269-72
3296-3303
3304
3305-12
3388-3427
3454-56
3481-93
3526-36
3537-54
3555
3564-77
3613-16
3619-25
3626-38
3730-37
3738-44
3753-62
3764-72
3773-80
3866-75
3908-13