CHARLES A. MICHALEK, ESQ.
Nevada Bar No. 5721
ROGERS, MASTRANGELO, CARVALHO & MITCHELL
700 South Third Street
Las Vegas, Nevada 89101
Phone: (702) 383-3400
Email: cmichalek@rmcmlaw.com

Lawrence S. Gosewisch (admitted *pro hac vice*)
Brian T. Maye *(*admitted *pro hac vice*)
Richard C. Harris (admitted *pro hac vice*)
ADLER MURPHY & McQUILLEN LLP
20 South Clark Street, Suite 2500
Chicago, Illinois 60603
Phone: (312) 345-0700
Email: lgosewisch@amm-law.com
        bmaye@amm-law.com
        rharris@amm-law.com

*Attorneys for Defendants FRONTIER AIRLINES, INC., SCOTT WARREN and REX SHUPE*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

PETER DELVECCHIA, individually and as
next friend of A.D., a Minor,

        *Plaintiffs*,

v.

FRONTIER AIRLINES, INC., and
SCOTT WARREN, and
REX SHUPE,

        *Defendants*.

Case No.: 2:19-cv-01322-KJD-DJA

**FRONTIER AIRLINES, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER AS TO PLAINTIFFS' FIFTH AMENDED RULE 30(b)(6) DEPOSITION NOTICE**

**DEFENDANT FRONTIER AIRLINES, INC.'S**
**REPLY IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER**

Defendant FRONTIER AIRLINES, INC. ("Frontier"), by its undersigned counsel, hereby provides this Reply in Support of its Motion for Protective Order as to Plaintiffs' Fifth Amended Rule 30(b)(6) Deposition Notice, and in support thereof states as follows:

## INTRODUCTION

Plaintiffs continue to stall this litigation with their relentless and improper attempts to explore Frontier's corporate culture. This case is about whether Frontier's crewmembers expressed genuine concerns about an adult inappropriately touching a child, or whether they acted solely out of racial animus toward a bi-racial father and son. The ultimate legal issue is whether the crewmembers would have reported their concerns of inappropriate touching if Plaintiffs had shared the same race. This case has nothing to do with the number of times Frontier's employees have been disciplined for not following the "Relationships with Customers" subsection of the employee handbook during the five years preceding the alleged incident. (See Topic 6, discussed *infra*.) Nonetheless, Plaintiffs continue to seek information the Court has already ruled is neither relevant nor proportional to the needs of this case.

In rejecting Plaintiffs' arguments in their Fourth and Fifth Motions to Compel, this Court found the cases cited by Frontier to be persuasive and ruled: **"the Court does not find more evidence regarding unrelated complaints and Frontier's handling of complaints in general to be relevant to Plaintiffs' case."** ECF No. 192, p. 12 (emphasis added). This Court's ruling notwithstanding, Plaintiffs proceeded to notice a corporate deposition on topics such as Topic 32, for instance, regarding "the details of investigations conducted by Frontier" into the unrelated passenger complaints. In their Opposition to Frontier's Motion for Protective Order, Plaintiffs acknowledge the ruling quoted above but argue the Court "overlook[ed] Plaintiffs' allegations that Frontier acts with reckless indifference to the constitutionally protected rights of all of its passengers of mixed races, color and different ethnicities by turning a blind eye to acts of discrimination by its employees and refusing to train or discipline its employees concerning acts of discrimination." ECF No. 217, pp. 9-10.

Plaintiffs mistakenly insist that they are entitled to extraordinarily broad discovery based on the conclusory assertions contained in their Third Amended Complaint. The modern version of Rule 8 (Fed.

R. Civ. P. 8) ended the era of hyper-technical pleading requirements, but "it [did] not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). This Court has observed that Plaintiffs brought their claims individually, rather than for a class, and concluded that the prior passenger complaints are "unrelated to Plaintiffs' distinct allegation of discrimination." ECF No. 192, p. 12. This Court further ruled that Plaintiffs have failed to establish the relevance of the prior complaints beyond stating on their "conclusory assertion" that Frontier promotes "corporate hostility toward persons of color and wholesale whitewashing of legitimate complaints of discrimination by Frontier employees." *Id*. Thus, for the reasons already stated by the Court, and for the reasons argued by Frontier, the Court should grant Frontier's Motion for Protective Order.

## **MEET & CONFER**

It is unclear what Plaintiffs hope to gain by disputing the details of a 50 minute phone call. Plaintiffs noticed several Rule 30(b)(6) topics in direct contravention of this Court's rulings, and they did so knowing full well that they would induce Frontier to file the instant Motion for Protective Order. Plaintiffs also knew (or should have known) that Frontier would rely on the familiar line of cases from the Western District of Washington, which this Court found to be more analogous to this case "both factually and procedurally" than the cases relied upon by Plaintiffs. ECF No. 192, p. 8.

Frontier has repeatedly argued during motion practice that Plaintiffs are not entitled to additional discovery relating to the prior discrimination complaints without first making a threshold showing of a connection between the prior complaints and their individual discrimination claims. Frontier is also painfully aware of Plaintiffs' well documented arguments that the *Karrani* case from the Western District of Washington is the "non-precedential opinion of a District Court Judge on a motion for summary judgment," and that "the Judge who decided the summary judgment motion in [*Karrani*] was one of the ones who had incorrectly read 14 CFR §243.9(c) as applying to passengers." ECF No. 217, p. 3. Contrary

to Plaintiffs' suggestions, there is nothing new or novel about the ruling in the *Karrani* case or its treatment of collateral evidence. *See, e.g., Arive v. Essilor Laboratories of America, Inc.*, No. 1:04-cv-0099-DFH-WTL, 2006 U.S. Dist. LEXIS 21770, at *30-31 (S.D. Ind. Mar. 30, 2006) (observing that in an employment case alleging disparate treatment, testimony about other members of a protected class is "only collaterally relevant to evidence of specific discrimination against the plaintiff").

Unfortunately, this is not the first time Plaintiffs have taken issue with the authorities cited by Frontier. *See, e.g.,* ECF No. 141, p. 7 (arguing that Frontier cited a case which "anyone capable of reading a regulation in the English language could see was bad law"). Nor is this the first time that Plaintiffs' counsel contested Frontier's reliance on this Court's rulings during the parties' meet-and-confer efforts. *See, e.g.,* ECF No. 178-1, Ex. J-K (arguing that Frontier was wrong to rely on the Court's prior rulings in filing a deposition transcript under seal). Frontier's counsel respectfully maintains that during the 50 minute phone call with Plaintiffs' counsel on November 3, 2022, Frontier's counsel communicated directly with Plaintiffs' counsel and discussed the contested Rule 30(b)(6) topics in good faith. Although Frontier's counsel withdrew its objections to two of Plaintiffs' numbered topics, despite the parties' best efforts, they were unable to further narrow their disputes.

## **ARGUMENT**

### 1.    The "full allegations" in Plaintiffs' Third Amended Complaint have not "survived Frontier's multiple motions to dismiss"

As a preliminary matter, Plaintiffs falsely claim that the "full allegations" in their Third Amended Complaint have "survived Frontier's multiple motions to dismiss because they are claims upon which relief may be granted." ECF No. 217, p. 5. In fact, the "full allegations" in the Third Amended Complaint have not survived multiple motions to dismiss, and Plaintiffs' sweeping accusations about Frontier's corporate culture played no role the Court's ruling that Plaintiffs stated a claim under 42 U.S.C. § 1981.

1   In denying Frontier's motion to dismiss Plaintiffs' § 1981 claim, the Court ruled: "Based on the

2   allegations of the complaint, that Plaintiffs were assaulted, accused of being involved in human and/or

3   sexual trafficking, separated, and reported to the authorities based solely on their race, is enough to satisfy

4   the requirement that Plaintiffs initially plead 'that, but for race, [they] would not have suffered the loss of

5   a legally protected right.'"[1] ECF No. 67, p. 4 (quoting *Comcast Corp. v. National Ass'n of African*

6   *American-Owned Media*, ___U.S.___ , ___, 140 S. Ct. 1009, 1019 (2020)). The Court did not rule that

7   Plaintiffs' conclusory assertions about Frontier "fostering" a racist environment supported a viable claim

8   under 42 U.S.C. §1981. To the contrary, the Court focused on the specific harms allegedly suffered by

9   Plaintiffs. The scope of discovery in this case should be focused accordingly.

10

11       **2.**      **The scope of discovery is not dictated by Plaintiffs' broad and conclusory allegations**

12          Plaintiffs rely on the many conclusory assertions set forth in their Third Amended Complaint to

13   justify an aimless fishing expedition. Just because an allegation is made does not make it relevant or

14   proportional to the needs of a given case. Whereas vague and conclusory assertions in a complaint do not

15   meet the Rule 8 pleading standards, by extension, such references do not expand the scope of issues in

16   play or bring such issues within the scope of relevant discovery. *Lucas v. MGM Resorts International*,

17   No. 2:20-cv-01750-JAD-NJK, 2022 U.S. Dist. LEXIS 182862, at *5 (D. Nev. Sep. 21, 2022); *Gonzalez*

18   *v. Diamond Resorts International Marketing*, No. 2:18-cv-00979-APG-NJK, 2021 U.S. Dist. LEXIS

19   256591, at *10 (D. Nev. July 14, 2021).

20          Plaintiffs' Third Amended Complaint incorporates Department of Transportation ("DOT")

21   guidance intended to assist airline employees in understanding their obligations not to discriminate, and

22   other guidance which provides "practical and useful decision-making techniques" when assessing

---

[1] Frontier denies that its crewmembers claimed they suspected Plaintiffs of human and/or sexual trafficking. Frontier's crewmembers stated only that they were concerned about inappropriate touching.

legitimate safety concerns to avoid making race-based assumptions. ECF No. 153, pp. 13-15. Plaintiffs baselessly (and falsely) assert that Frontier failed to provide any such training, but even if this was true, it would not bridge the gap between their obvious negligence allegations and the exacting standards of intentional discrimination required under 42 U.S.C. § 1981.

The Court previously dismissed Plaintiffs' negligence counts in their Second Amended Complaint and ruled: "Plaintiffs allege that Frontier's negligence resulted in flight attendants conducting their duties in ways that were not racially neutral. However, a cause of action for negligent racial discrimination does not exist." ECF No. 121, p. 6. Stuck on their desire to manufacture a theory of intentional discrimination at the corporate level, Plaintiffs simply re-packaged their negligence allegations in the Third Amended Complaint and effectively claimed Frontier was intentionally negligent, which is untenable. As the Court explained, an act can be intentional or negligent, but it cannot be both. *Id*. Plaintiffs cannot overcome this truism by latching onto their conclusory assertions that Frontier "intentionally decided" not to provide the training and "chose to foster an environment throughout its airline in which it condoned acts of discrimination by its employees." ECF No. 217, p. 6.

### 3.     Plaintiffs' assertions regarding statements made during a deposition on November 17, 2022 are improper and should be disregarded

Plaintiffs filed their Opposition to Frontier's Motion for Protective Order on November 17, 2022. Earlier that same day, the parties appeared in-person for two passenger depositions conducted in South Carolina. After questioning the deponents about their observations during the subject flight, Plaintiffs' counsel asked them about their own experiences with Frontier. One of the deponents testified that she was recently removed from a Frontier flight after she disputed whether she could stow her bag in an overhead bin. Of course, Plaintiffs did not hesitate to rely on the deponent's hearsay statements in their Opposition to Frontier's Motion for Protective Order, claiming the deponent's accusations are, *ipso facto*, evidence

1

2   that "Frontier continues to this day to foster a discrimination-friendly environment." ECF No. 217, p. 7.

3          It is obviously improper for Plaintiffs to make assertions about hearsay statements made during a

4   deposition in support of their legal arguments on the issue of relevance. It is no surprise, however, that

5   Plaintiffs would resort to such tactics, given their desire to focus on anything and everything but the facts

6   pertaining to their own specific allegations. The Court should see through Plaintiffs' ill-advised tactics

7   and grant Frontier's Motion for Protective Order.

8          **4.      Frontier has objected to specific topics that are not within the scope of discovery**

9

10         **Topic (1):** The specific details of all training given by Frontier to Flight Attendants Anna Bond,
    Chelsie Bright (Sakurada), Amanda Nickel and/or Scott Warren (hereinafter the "Subject Flight
11   Attendants") prior to March 28, 2019 on the topics of: (a) passengers engaged in, or suspected to
    be engaged in, human trafficking; (b) sexual misconduct by passengers against other passengers;
12   (c) the prevention of racial discrimination (including, without limitation, racial profiling) in
    interactions with passengers; (d) conflict management, including, without limitation, the "CUS"
13   system and use of the "Red Stop Card"; **(e) circumstances in which Frontier considers physical
    contact by flight attendants with adult and minor passengers is appropriate; (f)**
14   **circumstances in which Frontier considers it appropriate for a flight attendant to discuss
    alleged sexual misconduct with a minor passenger and to place a hand on or near the minor**
15   **passenger's genital area**; and any other training given by Frontier to the Subject Flight Attendants
    that is mentioned in Frontier's responses to discovery questions and/or documents produced by
16   Frontier in this litigation.

17         **Frontier's Reply:** Plaintiffs argue that the bold portions of Topic 1 are relevant to establish that

18   Defendant Warren "knew or should have known that his actions were improper." ECF No. 217, p. 8.

19   Frontier disagrees and believes the bold portions of Topic 1 are argumentative and not tailored to elicit

20
    relevant evidence. Asking Frontier's corporate representative about the propriety of a flight attendant
21
    committing the conduct alleged in the case is clearly argumentative, and Warren's post-separation conduct
22
    is irrelevant to Plaintiffs' claims that he acted solely out of racial animus before the separation.
23

24         **Topic (2)**: The reason why Frontier did not provide a manifest of passengers' names to the crew
    of Flight 2067, and the availability of such a manifest to members of Frontier's flight operations
25   center during Flight 2067.

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Frontier's Reply**: Plaintiff has no answers for Frontier's arguments that: (1) Plaintiffs' § 1981 claim rests on their allegations that Defendant Warren (himself a Black man) **knew Plaintiffs were related** and specifically discriminated against them because of it; and (2) the fact that Plaintiffs shared the same last name was clearly not considered a material fact to the investigators who met Plaintiffs on the ground. Asking Frontier's corporate representative about the availability of a flight manifest has no relevance to Plaintiffs' allegations of intentional discrimination and will do nothing to advance the substantive legal issues at the center of this litigation.

> **Topic (3):** Frontier's knowledge of the Department of Transportation (DOT) "Guidance for Airline Personnel on Non-discrimination in Air Travel" (January 2017); DOT News Release dated January 13, 2017; DOT "Passengers' Right to Fly Free from Discrimination" (January 2017); DOT Consent Order, Docket OST 2003-15046 (Feb. 27, 2004); DOT Order, Docket OST-2004-17197 (Feb. 24, 2004); DOT Consent Order, Docket OST-2011-0003 (Nov. 1, 2011); Consent Order, Docket OST-2012-0002 (May 2, 2012), **documents Bates Stamped P000748-P000780, and any and all actions taken by Frontier relating to the subject matter of those documents, including the reasons for such actions (or inaction).**

**Frontier's Reply:** Frontier withdraws its objection to Topic 3 but denies Plaintiffs' allegation that Frontier did not take its meet-and-confer obligations seriously.

> **Topic (4):** Frontier's policy against discrimination toward passengers, how it is communicated to its employees, what policies and/or procedures (if any) are in place that could impose any consequences for an employee who fails to follow the policy (such as, for example, disciplinary measures and/or retraining), **and the number of times between March 28, 2014 and March 28, 2019 that any employees were subjected to any such consequences as a result of a finding that the employees had failed to follow the policy. In addition, the facts and circumstances that led to any such consequences.**

**Frontier's Reply:** Plaintiffs complain that this Court's prior ruling "undercuts [their] ability to prove reckless indifference on Frontier's part, which in turn undercuts their ability to support their claims for punitive damages." ECF No. 217, p. 9. This argument is unavailing. The bold portion above underscores Plaintiffs' inability to prove their claims of intentional discrimination. This Court's analysis of the relevance (or lack thereof) of the prior complaints is not impacted by Plaintiffs' claims for punitive

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

damages. The number of times Frontier has disciplined other employees for discrimination has no bearing on whether Frontier's crewmembers in this case expressed genuine concerns about an adult inappropriately touching a child.

> **Topic (5):** The contents of Frontier's Flight Attendant Manual ("FAM") and training materials that mention any of the following subjects: (a) human trafficking; (b) sex trafficking; (c) sexual misconduct by passengers against other passengers; (d) child abuse and/or child molestation by passengers against other passengers; (e) racial profiling as it relates to interactions with passengers; (f) racial discrimination as it relates to interactions with passengers; (g) the classification of passengers as Threat Levels One and/or Two, and procedures to be followed upon making such classification(s); **(h) the prohibitions against flight attendants all congregating in one area of the aircraft during flight, or allowing all flight attendants to become focused on a single issue during flight; and (i) the prohibition against more than one flight attendant being in the cockpit at the same time**.

**Frontier's Reply:** Plaintiffs claim Frontier's flight attendants violated company policies by congregating in one area to discuss their concerns of inappropriate touching. Frontier fails to see how asking its corporate representative about these policies is relevant to showing that the crewmembers aboard the subject flight acted solely out of racial animus toward a bi-racial father and son.

> **Topic (6).** The text of the "Relationships with Customers" subsection of the "COMPETITION AND FAIR DEALING" section of Frontier's "Code of Ethics" contained within its Employee Handbook produced in this action, how that text is communicated to employees, whether employees are specifically trained and/or tested on its contents and meaning, what policies and/or procedures (if any) are in place that could impose any consequences for an employee who fails to follow the "Relationships with Customers" subsection (such as, for example, disciplinary measures and/or retraining), **and the number of times between March 28, 2014 and March 28, 2019 that any employees were subjected to any such consequences as a result of a finding that the employees had failed to follow the "Relationships with Customers" subsection. In addition, the facts and circumstances that led to any such consequences.**

**Frontier's Reply:** Frontier stands on the arguments set forth in its Motion.

> **Topic (7).** Why no investigation or disciplinary action against Defendant Scott Warren resulted from Peter DelVecchia's 2019 complaint to Frontier that Warren had falsely identified himself as "Kevin," struck Peter DelVecchia on the head and physically took his child away from him during the flight.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Frontier's Reply:** Frontier stands on the arguments set forth in its Motion.

**Topic (8):** The text of the "COMPLIANCE WITH LAWS AND REGULATIONS" section of Frontier's "Code of Ethics" contained within its Employee Handbook produced in this action, how that text is communicated to employees, whether employees are specifically trained and/or tested on its contents and meaning, what policies and/or procedures (if any) are in place that could impose any consequences (such as, for example, disciplinary measures and/or retraining) for an employee who fails to follow the "COMPLIANCE WITH LAWS AND REGULATIONS" section in circumstances where the laws and regulations involved were those that apply to discrimination against passengers on the basis of race or ethnicity, **and the number of times between March 28, 2014 and March 28, 2019 that any employees were subjected to any such consequences as a result of a finding that the employees had failed to follow the "COMPLIANCE WITH LAWS AND REGULATIONS" section in circumstances where the laws and regulations involved were those that apply to discrimination against passengers on the basis of race or ethnicity. In addition, the facts and circumstances that led to any such consequences**.

**Frontier's Reply:** Frontier stands on the arguments set forth in its Motion.

**Topic (10)**: Instances between March 28, 2014 and March 28, 2019 in which any employee or agent of Frontier was alleged to have used the terms "nxxxxr,"[2] "you people," and/or "your kind" in communications with, or about, any non-White passenger of Frontier, and the details of Frontier's investigation of such occurrence(s) and of any discipline imposed on the employee(s) or agent(s).

**Frontier's Reply:** Plaintiffs argue: "[w]hile there is no question that those particular slurs were not used on the subject flight, a failure by Frontier to discipline an employee for using such obvious racial slurs would be highly probative of its reckless indifference toward the protected civil rights of passengers of color." ECF No. 217, p. 13. This argument is unavailing and meritless. Absent any allegations of racially charged language in this case, Plaintiffs have no basis to ask Frontier's corporate representative about the topic of racial slurs.

**Topic (13):** Frontier's Employee Handbook, "Standards of Conduct" Section 4, including, without limitation, policies on physical violence and dishonesty, falsification and misrepresentation.

---

[2] Frontier has not included the full text included in Plaintiffs' Rule 30(b)(6) notice.

**Frontier's Reply:** Frontier stands on the arguments set forth in its Motion.

**Topic (17).** Why no investigation was conducted, or discipline imposed, relating to Captain Rex Shupe's and First Officer Mullin's failure to follow written procedures for a Threat Level 2 on Flight 2067 including, without limitation, failing to lock down the cockpit, failing to notify Air Traffic Control, failing to consider diversion to a different airport, and failing to prepare for interception by DoD fighters.

**Frontier's Reply:** Frontier stands on the arguments set forth in its Motion.

**Topic (18).** Why no investigation was conducted, or discipline imposed, relating to Captain Rex Shupe's and First Officer Mullin's failure to follow written procedures on Flight 2067 requiring that no more than one flight attendant be permitted in the cockpit at any one time.

**Frontier's Reply:** Frontier stands on the arguments set forth in its Motion.

**Topic (27).** Plaintiffs reserve the right to inquire into the content of any and all documents produced as of the date of the deposition by Frontier. Without limiting the foregoing, Plaintiffs intend to inquire into the content of all documents referenced in the listed topics of this Notice as well as those listed on Exhibit A.

**Frontier's Reply**: Frontier stands on the arguments set forth in its Motion.

**Topic (30).** The details of investigations conducted by Frontier concerning the human trafficking incident reports produced by Frontier to Plaintiffs up to the date of the deposition.

**Frontier's Reply:** Frontier stands on the arguments set forth in its Motion.

**Topic (31).** The details of disciplinary actions against any Frontier employee, and/or additional training provided to any Frontier employee, relating to the subject matter of the human trafficking incident reports produced by Frontier to Plaintiffs up to the date of the deposition.

**Frontier's Reply:** Frontier stands on the arguments set forth in its Motion.

**Topic (32).** The details of investigations conducted by Frontier concerning the passenger/customer complaints of discrimination produced by Frontier to Plaintiffs that are listed on **Exhibit A** hereto.

**Frontier's Reply:** Frontier stands on the arguments set forth in its Motion.

**Topic (33).** The details of disciplinary actions against any Frontier employee, and/or additional training provided to any Frontier employee, relating to the subject matter of the passenger/customer complaints of discrimination produced by Frontier to Plaintiffs that are listed on **Exhibit A** hereto.

**Frontier's Reply:** Frontier stands on the arguments set forth in its Motion.

**Topic (34)**. The details of all communications with the Department of Transportation concerning the subject matter of the passenger/customer complaints of discrimination produced by Frontier to Plaintiffs that are listed on Exhibit A hereto.

**Frontier's Reply:** Frontier stands on the arguments set forth in its Motion.

**Topic (35)**. The details of any instructions that any person in Frontier's management has given to any person assigned to Frontier's Customer Relations Department (regardless of whether the recipient was in a managerial position or a non-managerial position and including, without limitation, any of the Customer Relations employees working on the "Denver Team" of Customer Relations) about how the recipient or the employees working under the recipient should respond to complaints alleging racial discrimination, ethnic discrimination, or other forms of discrimination, and/or about how such persons should code, classify, or index complaints that contain allegations of discrimination.

**Frontier's Reply:** Frontier stands on the arguments set forth in its Motion.

**Topic (36)**. The content of the "Customer Relations Templates" described by Elizabeth Zimmerman in her deposition, and instructions regarding the use of such templates to respond to passenger complaints of discrimination.

**Frontier's Reply:** Frontier stands on the arguments set forth in its Motion.

**Topic (37)**. Discussions between Frontier's senior management and Inflight management during the period between March 28, 2014 and March 28, 2019 concerning how the number and/or frequency of passenger discrimination complaints could be reduced.

**Frontier's Reply:** Frontier stands on the arguments set forth in its Motion.

**Topic (38)**. Details of the destruction in May, 2020 of the database that contained crewmember assignments for past flights, or the rendering of that database as no longer searchable.

**Frontier's Reply:** Frontier stands on the arguments set forth in its Motion.

**Topic (39)**. A witness to authenticate as business records of Frontier all the documents listed on Exhibit A to Plaintiffs' Fourth Requests for Admissions to Defendant Frontier Airlines, Inc. (or, if Frontier disputes that portions are retained as its business records, to authenticate the portions of such documents that are its business records).

**Frontier's Reply**: Frontier stands on the arguments set forth in its Motion.

WHEREFORE, Defendant, Frontier Airlines, Inc. requests that this Court enter a protective order precluding enforcement of the notice as currently drafted and for any other relief this Court deems just and proper.

DATED this 2nd day of December 2022

Respectfully submitted,

**FRONTIER AIRLINES, INC.**

*/s/ Brian T. Maye*
Lawrence S. Gosewisch (admitted *pro hac vice*)
Brian T. Maye (admitted *pro hac vice*)
Richard C. Harris (admitted *pro hac vice*)
ADLER MURPHY & McQUILLEN LLP
20 South Clark Street, Suite 2500
Chicago, Illinois 60603
Phone: (312) 345-0700
Email: lgosewisch@amm-law.com
         bmaye@amm-law.com
         rharris@amm-law.com

Charles A. Michalek (Nevada Bar No. 5721)
ROGERS, MASTRANGELO, CARVALHO &
MITCHELL
700 South Third Street
Las Vegas, Nevada 89101
Phone: (702) 383-3400
Email: cmichalek@rmcmlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on December 2, 2022, I caused the foregoing to be electronically filed with the United States District Court for the District of Nevada using the CM/ECF system.

*/s/ Brian T. Maye*

Lawrence S. Gosewisch (admitted *pro hac vice*)
Brian T. Maye (admitted *pro hac vice*)
Richard C. Harris (admitted *pro hac vice*)
ADLER MURPHY & McQUILLEN LLP
20 South Clark Street, Suite 2500
Chicago, Illinois 60603
Phone: (312) 345-0700
Email: lgosewisch@amm-law.com
        bmaye@amm-law.com
        rharris@amm-law.com

Charles A. Michalek (Nevada Bar No. 5721)
ROGERS, MASTRANGELO, CARVALHO &
MITCHELL
700 South Third Street
Las Vegas, Nevada 89101
Phone: (702) 383-3400
Email: cmichalek@rmcmlaw.com