TRANSCRIBED FROM DIGITAL RECORDING
2:19-cv-01322-KJD-DJA - Friday, November 4, 2022     1

1                   IN THE UNITED STATES DISTRICT COURT

2                       FOR THE DISTRICT OF NEVADA

3   PETER DELVECCHIA, individually )   CASE NO. 2:19-cv-01322-KJD-DJA
    and as next friend of D.A., a  )
4   Minor,                         )   Las Vegas, Nevada
                                   )   Friday, November 4, 2022
5               Plaintiffs,        )   Courtroom 3A
                                   )
6        vs.                       )   Recording method:  Liberty/CRD
                                   )   1:31 p.m. - 2:12 p.m.
7   FRONTIER AIRLINES, INC., SCOTT )   HEARING RE MOTION TO COMPEL
    WARREN, and REX SHUPE,         )
8                                  )   *C E R T I F I E D   C O P Y*
                Defendants.        )
9   _____)

10

11

12                     TRANSCRIPT OF PROCEEDINGS

13            BEFORE THE HONORABLE DANIEL J. ALBREGTS,
            UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

14

15   APPEARANCES:  (See next page)

16

17   Recorded by:  Jerry Ries

18   Transcribed by:    PAIGE M. CHRISTIAN, RPR, CRR, CCR #955
                        United States District Court
19                      333 Las Vegas Boulevard South
                        Las Vegas, Nevada  89101
20

21

22

23

24   Proceedings recorded by electronic sound recording.
     Transcript produced by mechanical stenography and computer.
25

1   **APPEARANCES:**

2

3   For Plaintiffs:

4        **JOHN D. McKAY, ESQ.   (*Pro Hac Vice*)**
         *PARK AVENUE LAW, LLC*
5        201 Spear Street
         Suite 1100
6        San Francisco, CA 94105
         (434) 531-9369
7        E-mail: johndmckayatty@gmail.com

8

     For Defendants:
9
         **BRIAN MAYE, ESQ.   (*Pro Hac Vice*)**
10       *ADLER MURPHY & MCQUILLEN LLP*
         20 S. Clark Street, 2500
11       Chicago, IL 60603
         (312) 422-5713
12       E-mail: bmaye@amm-law.com

13     --*AND*--

14       **CHARLES MICHALEK, ESQ.**
         *ROGERS MASTRANGELO*
15       700 South 3rd Street
         Las Vegas, NV 89101
16       (702) 383-3400
         E-mail: cmichalek@rmcmlaw.com (Inactive)
17
                         * * * * *
18

19

20

21

22

23

24

25

1          LAS VEGAS, NEVADA; FRIDAY, NOVEMBER 4, 2022; 1:31 P.M.

2                              --o0o--

3                    P R O C E E D I N G S

4              **COURTROOM ADMINISTRATOR:**  Peter DelVecchia vs.

5   Frontier Airlines, et al., 2:19-cv-01322-KJD-DJA.  This is before

6   the Court on Motion Docket 190.

7              Counsel, make your appearance for the record, please.

8              **MR. McKAY:**  John McKay for the plaintiffs.

9              **THE COURT:**  All right.  Good afternoon, Mr. McKay.

10             **MR. McKAY:**  Good afternoon, Your Honor.

11             **MR. MAYE:**  Good afternoon, Your Honor.  Brian Maye

12  for defendants.

13             **THE COURT:**  Good afternoon, Mr. Maye.

14             **MR. MICHALEK:**  Charles Michalek, local counsel, for

15  defendants.

16             **THE COURT:**  All right.  Good afternoon.

17             As my courtroom deputy indicated, we are here on No.

18  190, Frontier's motion to compel.  In that motion, Frontier's

19  first motion to compel -- well, before I begin, let me back up

20  and say, for the parties' edification, I intend to rule from the

21  bench on the motion to compel and a couple of other issues, and

22  the transcript of today's hearing will be the order.  So any

23  appeal of the decision today, you'll use the transcript at the

24  end after I hear from the parties.

25             After I give some background and some other

1  information, I will make a record as to the case law and the

2  reasons for my decision.

3          So, with that, let's talk about the motion.  It's

4  Frontier's first motion to compel.  They moved to compel

5  plaintiffs to respond, first, to their second set of

6  interrogatories to Peter DelVecchia, and second, to their second

7  set of requests for production of documents.

8          Plaintiffs responded to those interrogatories by

9  essentially copying and pasting objections that Frontier had made

10  to a motion to compel that plaintiffs had filed and cited to

11  that, saying that they weren't going to respond.

12          Plaintiffs responded to the requests for production

13  of documents, which were directed directly to Peter DelVecchia,

14  by saying that A.D., the other plaintiff in the case, did not

15  have responsive information.

16          In response to the motion to compel, plaintiffs

17  essentially argue that the Court, both this court and the prior

18  magistrate judge, have not been treating them fairly.

19          Essentially, for the interrogatories, they assert

20  that the Court accepted Frontier's objections when they objected

21  to motions to compel, even though they were boilerplate, so that

22  somehow is the basis for me to accept their objections now.

23          For the requests for production of documents, they

24  assert that they were just being literal and that nothing can be

25  wrong with answering a question that is precisely as it is

1  written, according to the response.  They again raise the case

2  law, they argue, Frontier misrepresented and say that their

3  answers are far better than claiming the federal regulations says

4  something that it clearly does not say.

5            The response, I must admit, is much in the same vein

6  as the response to the interrogatories were.

7            In reply, Frontier says that the requests that they

8  propounded are different than the ones that they responded and

9  objected to that were cited by plaintiffs because their

10 interrogatories sought relevant information, which was

11 proportional to the case, unlike the plaintiffs, at least one of

12 which sought passenger information from people that had flown on

13 domestic flights, and they complained about discrimination with

14 no limitations.

15            And so, I am here to decide whether I should grant

16 this motion to compel.  I brought the parties here today because,

17 frankly, the responses to the interrogatories are unlike anything

18 I've seen, not only in my three -- almost three and a half years

19 on the bench, but in the 30 years of practice, not a lot of which

20 was civil but enough to know what would be proper.  And I've

21 never, frankly, seen interrogatory responses like that, nor a

22 response to the motion to compel that essentially says, because

23 you denied our motions to compel, you should deny their motions

24 to compel.

25            Frankly, Frontier has not asked for sanctions, but I

1  was so taken aback initially by the responses to interrogatories,

2  the unprofessional nature of those, and the response to the

3  motion to compel that I was considering sua sponte granting

4  sanctions if I grant the motion to compel, which I'm inclined to

5  do.  I've rethought that and I haven't made a final decision on

6  that.  I recognize that I brought Mr. McKay here from out of

7  state, and so, on some levels, there's a sanction related to

8  having to travel to Las Vegas and appear in person for this

9  motion.

10          But given the history of the case and the nature of

11 this motion and the response, I felt compelled to bring the

12 parties in and to have a hearing on this in the hopes that going

13 forward, we can somehow streamline the issues that the discovery

14 disputes have continually brought and perhaps get this thing to

15 the finish line as it relates to discovery.

16          So, you know, Mr. McKay, with those comments, first,

17 how do you justify cutting and pasting objections that they made

18 to yours in response to interrogatories?

19          **MR. McKAY:**  Would Your Honor like me to stand to

20 address the Court?

21          **THE COURT:**  Well, most people do.

22          **MR. McKAY:**  Your Honor, I -- I do have to question

23 where the Court's hostility towards me comes from.

24          **THE COURT:**  Well, so why do you think I have

25 hostility because I deny motions to compel?

1          **MR. McKAY:**  Your language in your orders has treated

2    Frontier with kid gloves and plaintiffs rather harshly.  And I

3    don't know how that got started, but I would like to find a way

4    that we can find a middle ground to end it.  I'm glad we're

5    having a hearing today.  I'm glad to meet you in person after

6    three years of litigation.  I know these have been difficult

7    years with COVID and -- and all.

8          I will tell the Court, quite honestly, this is not

9    how I practice.  It's not how I long to practice.  It's not how I

10   like to practice.  It is not how I have practiced in 37 years --

11         **THE COURT:**  So why now?

12         **MR. McKAY:**  -- of litigation.

13         **THE COURT:**  Why now?

14         **MR. McKAY:**  Because of the circumstances in this

15   case, Your Honor.  I have never seen -- in my experience

16   litigating federal cases all over this country in many federal

17   courts, I have never seen such hostility from the bench.  I feel

18   that this is not --

19         **THE COURT:**  Can you cite to specific --

20         **MR. McKAY:**  Yeah.

21         **THE COURT:**  -- hostilities?  What -- this is --

22         **MR. McKAY:**  Your August -- I think it was

23   August -- 30 order, the order that came out after the two motions

24   for sanctions, first of all, informed me that in the Court's

25   opinion, I didn't know what I was doing procedurally because I

TRANSCRIBED FROM DIGITAL RECORDING
2:19-cv-01322-KJD-DJA - Friday, November 4, 2022   8

1  filed a motion for sanctions because they had redacted

2  information from documents that you, Your Honor, had ordered them

3  to produce and Judge Dawson, on appeal, also ordered them to

4  produce.

5       14 months later, they started producing documents,

6  and when they did, they redacted important information from them.

7  Under the rules of civil procedure that I've known that I follow

8  in other courts, the next step, if somebody doesn't comply with

9  an order to produce documents, is a motion under Rule 37 for

10 sanctions, which is why I filed a motion for Rule 37 sanctions.

11      Yet, the Court took great offense at the fact that I

12 had and issued the order stating that plaintiff's counsel filed

13 the wrong motion and should have filed a motion to compel.

14      **THE COURT:**  How do you interpret that I took offense

15 to that?

16      **MR. McKAY:**  Well, it didn't sound very accepting of

17 what plaintiffs had just done, even though it was entirely within

18 the bounds and, in fact, what the rules of procedure require.

19      **THE COURT:**  So if a judicial officer disagrees with

20 you or rules against you, he's suddenly hostile and -- and

21 unfavorable to you?

22      **MR. McKAY:**  No.  I wouldn't say that, Your Honor.

23      **THE COURT:**  All right.  Go ahead.

24      **MR. McKAY:**  Plaintiffs, as I pointed out in our

25 response to this motion, have filed five motions to compel and

1  have had five motions to compel at least partially denied.

2  Frontier files one motion to compel, and before I even had a

3  chance to respond to it, they have a hearing set.

4          I didn't get a hearing.  Plaintiffs didn't get a

5  hearing for any of their motions to compel, which were all

6  denied.  Some of them were -- were denied sua sponte.

7          I'm trying to figure out what's going on here.  I

8  want to know if this is a safe place for my clients to try their

9  civil rights and battery and false imprisonment and defamation

10 claims --

11         **THE COURT:**  I --

12         **MR. McKAY:**  -- I'm at a loss.

13         **THE COURT:**  And I am, too, because frankly, I'm

14 astonished by your accusations.  I mean --

15         **MR. McKAY:**  I'm not accusing you, Your Honor.

16         **THE COURT:**  I think you're accusing me of being

17 hostile and unfair and biassed toward Frontier, aren't you?

18         **MR. McKAY:**  I am questioning why we have such a

19 discrepancy between how Frontier's filings get -- get treated and

20 how plaintiffs' filings get treated.  Our 39 --

21         **THE COURT:**  So -- each one -- I'll answer that.  Each

22 one is getting reviewed on the merits of each one.  And on my

23 recollection of the motions to compel that you're referring to

24 that you filed, we found that on many occasions, they were

25 overbroad.  It was too -- it was too broad in scope.  It was too

1   onerous.  It went too far back in time and I limited that.

2          And then the idea that during COVID, as you're filing

3   your motions to compel and I'm ruling on the pleadings and then I

4   set this for a hearing, that's not because it was theirs.  That's

5   because of the history of this case, the tone of the response to

6   these interrogatories, as frustrated and angry as you might be.

7          And let me tell you, as a practitioner, I get it

8   because I used to feel that way on occasion, too, and I

9   represented some very unpopular people.  But it

10  never -- something like this in the response to interrogatories

11  would have been slept on for a night or two and then probably

12  thrown away.  And then I would have responded in -- you know, I

13  would have objected another way, but it wouldn't have been -- I

14  mean, that, to me, is unimaginable for somebody with your

15  experience and background.

16         And -- and to make the claim that, Well, you denied,

17  in part, four of ours.  You should deny theirs.  That's not the

18  law, but that's what you're saying.

19         **MR. McKAY:**  No, sir.  I'm -- you've hit the nail on

20  the head.  I'm expressing frustration on behalf of two very nice

21  people that I represent.  They are awesome people, and --

22         **THE COURT:**  And you have some valid claims given what

23  I know about the allegations of what took place on the flight

24  that day and what happened to your clients.  But it doesn't give

25  you cart blanche to go so far as you're wanting to go on some of

1    these discovery requests, and that's all I found.  That doesn't

2    mean I'm hostile to your clients or their claim.

3              **MR. McKAY:**  You have my humblest apologies.  And I

4    mean that.  Yes.  I should have slept on it.  But it was an -- it

5    was out of complete frustration at the way discovery is going in

6    this case.

7              I am trying to prove a case here.  I am trying to get

8    decent discovery for my clients who have claims for reckless

9    disregard by Frontier Airlines, not four flight attendants,

10   Frontier Airlines of passengers protected civil rights.  Yet, the

11   rulings from this Court are that I can have documents written by

12   Frontier, primarily, that -- that talk about complaints made

13   against it and in which they determine that no discrimination

14   occurred.  But I can't ask anybody else about whether

15   discrimination occurred, the circumstances under which it

16   occurred, whether Frontier is right or wrong, if it was ever

17   resolved, did they file suit, none of -- how is it that I cannot

18   ask information about a document that the Court has held is

19   relevant?

20             **THE COURT:**  Well, okay.  So that's -- and that's not

21   what we're here on today --

22             **MR. McKAY:**  I understand.

23             **THE COURT:**  -- and I know you responded to some of

24   the issues I raised.

25             But let me ask you this:  How is...

1           **MR. McKAY:**  There's nothing good in what I've

2    written, Your Honor --

3           **THE COURT:**  Well, but -- so -- I mean, how is this

4    objectionable, any person who witnessed defendant Warren commit a

5    battery on the plaintiff?

6           **MR. McKAY:**  Because such person had to have been a

7    passenger on the flight.  And so far, the rulings have been that

8    the Court will not rule on 14 CFR 243.9 subsection C, which

9    Frontier contends cloaks in absolute confidentiality the name of

10   any passenger aboard a domestic flight in the United States.

11          Now, if they can't produce the names of those people,

12   how is it that I should be required to disclose the names of

13   those people?

14          **THE COURT:**  Do you have -- you don't have to disclose

15   anything other than, do you have a witness or multiple witnesses

16   that witnessed that?

17          Either you do or you don't.

18          **MR. McKAY:**  Either we do or we don't.  Right.

19          **THE COURT:**  If you don't, you can say, We don't --

20          **MR. McKAY:**  At the moment --

21          **THE COURT:**  -- and if you do, you can say, We do, and

22   we're not giving them to you, and here's the reasons why we're

23   not.

24          And then I have a basis to -- but --

25          **MR. McKAY:**  But just require the names?

TRANSCRIBED FROM DIGITAL RECORDING
2:19-cv-01322-KJD-DJA - Friday, November 4, 2022    13

1          **THE COURT:**  Right.

2          **MR. McKAY:**  Yeah.  I can't give the names because

3    I've asked six times for the Court to rule on whether or not

4    names of domestic passengers on airline flights in the United

5    States are confidential, an issue raised by the defendant, and

6    the Court six times has declined to rule on that, and I have no

7    idea why.

8          **THE COURT:**  So that's your basis of your objection,

9    not what you objected to when you responded to the interrogatory?

10         **MR. McKAY:**  I said, you need -- response to the

11   interrogatory, that it may be requiring me to --

12         **THE COURT:**  Is that the privacy rights you're saying

13   might be violated?

14         **MR. McKAY:**  Yes.  That is exactly what they said to

15   me, and the Court endorsed that.

16              So how can I be required to provide something that

17   they were not required to?

18         **THE COURT:**  Well, my recollection of your request was

19   something much more broad than specific individuals who were on

20   that flight or might have witnessed what was on that flight.  My

21   response -- and I don't know exactly which one because, you know,

22   this is one of those dreaded cases.  When I click on it, it says,

23   Do you want the last 30 days, the last 90 days, or you really

24   want the whole case?  And so, there's a ton of stuff on the

25   docket, and so I can't sit here and tell you I know every piece

1   of order -- every order, every piece of paper on the docket.

2          **MR. McKAY:**  I understand.

3          **THE COURT:**  But, I -- you know, there's a big

4   difference from saying there is a finite number of people who

5   might have been on this flight who might have witnessed what

6   you're claiming they witnessed and are relevant witnesses.

7   That's different than saying, Give me all the names of people.

8   And so equate those two, which is what I sense you're doing.  I

9   may be wrong, but what I sense you're doing is -- is it's apples

10  and oranges.

11         **MR. McKAY:**  No.  It's not, because the only reason

12  they said they redacted the names from documents that Your Honor

13  ordered them to produce -- they, on their own, redacted the names

14  and said, because we must do so because federal law requires the

15  redaction of names of passengers on flights.

16         **THE COURT:**  But that -- that's what you're saying is

17  on flights.  We're talking -- you're asking for a broad --

18         **MR. McKAY:**  This is a flight.  Okay.  Again, Your

19  Honor, I am taking a hard line on these, and the -- and I don't

20  like to do it.  Okay?

21         I -- believe me, I have sat on professionalism

22  panels.  I have taught professionalism.  I don't like being in

23  this position.  But 75 percent of the honest and responsible

24  requests that I have served on this defendant have been responded

25  to in exactly this same way.  And that was my point in cutting

TRANSCRIBED FROM DIGITAL RECORDING
2:19-cv-01322-KJD-DJA - Friday, November 4, 2022    15

1   and pasting their objections, because those are the objections

2   that I got to 75 percent of my discovery requests.  And the Court

3   has endorsed that in this case.

4           And my point, as I said in the brief, is that if that

5   is the way it's going to be, then it has to be equal for both

6   sides.

7           **THE COURT:**  And that just sounds exactly like a

8   petulant child, because that's not the discovery rules.

9   And -- and again, I go back to on the things that I've denied

10  that you've requested.  Number one, I'm certain that I've applied

11  what I believe is the law and the rules to those requests; and

12  number two, every time I denied them, they were requests, at

13  least my recollection and impression is, they were so overbroad

14  and so beyond what would be required in discovery.

15          On some levels, it almost looked like you might be

16  looking for other plaintiffs, other class actions, things like

17  that.  That's not appropriate in discovery.  And I'm trying to

18  balance what you're entitled to, because, I'll say it again, I am

19  very mindful that these allegations and some that even appear to

20  have been conceded on some levels by Frontier are very

21  troublesome.  And I want to give you every opportunity you have

22  to litigate this, but I'm not just going to open the flood gates

23  and say that every passenger that's ever been on a flight or

24  everything back 10 or 15 years or every claim of discrimination,

25  that -- that --

PAIGE M. CHRISTIAN, RPR, CRR, CCR #955
United States District Court

 1          **MR. McKAY:**  I don't think Your Honor understands what

 2  I'm saying --

 3          **THE COURT:**  Well, apparently, I'm not nearly as

 4  intelligent as you.  I mean, I'm trying to understand it.

 5          **MR. McKAY:**  (Indiscernible).  My legal arguments are

 6  the rantings of a petulant child, and --

 7          **THE COURT:**  Go back and read the transcript.  You're

 8  basically saying it's tit for tat.  I denied yours.  I should

 9  deny theirs.

10          Isn't that what you're telling me?

11          **MR. McKAY:**  I'm saying if the objection was

12  appropriate, it was a boilerplate objection.  If it's appropriate

13  for them to send out boilerplate objections, then equanimity

14  requires that --

15          **THE COURT:**  But nonproportional -- nonproportional

16  and over duly burdensome, those are things that are always the

17  buzz words for -- for discovery and whether we're going to grant

18  a motion to compel or deny a motion to compel.  So to the extent

19  they're boilerplate, that's pretty settled law.

20          **MR. McKAY:**  That you can't do it.  Yet it's never

21  been applied to Frontier in this court.

22          **THE COURT:**  And, you know, and again, it shouldn't

23  be -- and it should be stated for the record, it's not just me

24  you're accusing of doing this.  It's Judge Koppe, who was the

25  magistrate judge before this.  And, you know, suddenly, every

1  magistrate judge or at least two out of the five in this

2  district, they're just completely unfair to you and side with

3  Frontier from what you're arguing.

4       **MR. McKAY:**  I have not accused you or Judge Koppe of

5  a thing.  I have not been petulant, in my opinion.  I would like

6  to make the argument that my clients have a claim against

7  Frontier, which alleges across the board reckless disregard for

8  passengers' rights.  I would like to be able to prove that.

9       I cited the Court to the Ninth Circuit case of

10  *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, page 1263,

11  Ninth Circuit, 2010 case, that says our adversarial system

12  depends on the principle that all sides to a dispute must be

13  given the opportunity to fully advocate their views of the issues

14  presented in a case.

15       That was a case of abuse of discretion.  And I'm not

16  accusing Your Honor of abuse of discretion.  But I will say that

17  that is a case in which the Court found an abuse of discretion

18  where the district court followed the defendant's version of the

19  facts, page 1258, in a case where the defendant engaged in

20  hardball tactics designed to avoid resolution of the merits of

21  this case, page 1263.

22       And I have to say, Your Honor, that just as Frontier

23  wants this district court decision of *Karrani v. JetBlue* to serve

24  as a model for this case, which Your Honor seemed to accept even

25  though *Karrani* is a frivolous case where JetBlue didn't do

1   anything wrong but was accused of racial discrimination because

2   it told a man that he had to use the aft lavatory instead of the

3   front one, that case has nothing to do with the facts of this

4   case.  But I would say that *Ahanchian* could serve as a model and

5   is instructive that both sides of a dispute need to be given an

6   equal set of rules.  And that's all I'm asking for.

7            These are nice people that I represent, Your Honor.

8   They deserve a fair shake.  And I don't think they've gotten it.

9   And I'm not accusing anybody of anything.  I'm just saying that

10  it certainly seems odd that we have had 75 percent of our

11  discovery requests objected to, and those objections approved by

12  the Court.  We have had motions to compel denied because they

13  didn't fit within certain local rules.  Yet, the motions

14  filed -- the motion filed by Frontier, seems to me, to make all

15  of the same violations.

16           **THE COURT:**  Are you saying that this Court and not

17  just Judge Koppe denied it because of a technicality of the local

18  rules, or was that just Judge Koppe?

19           **MR. McKAY:**  That was one of the early ones, and Judge

20  Koppe did have a secondary holding.  So I can only say that that

21  was one of the reasons that she denied it.

22           **THE COURT:**  All right.  Mr. Maye.

23           **MR. MAYE:**  Thank you, Your Honor.  I think that --

24           **THE COURT:**  Let me ask you this:  As it relates to

25  your request for the names, what about this argument now -- and

1   I -- honestly, I don't recall the specific order.  It's just not

2   possible given the nature of number of cases I have and the

3   number of documents in this case.  But there is some concern that

4   to give you the names of witnesses they might have would violate

5   some privacy act.

6           What's your position on that -- or not some privacy

7   act --

8           **MR. MAYE:**  There's no bases -- there's no bases for

9   that, Your Honor.  The statute and regulation applied to air

10  carriers who possess the information of the passengers.  Also, we

11  determined that we would be cooperative, and we gave plaintiffs

12  every single name of every passenger on flight because we wanted

13  to avoid litigation, motion practice.  Typically, Courts will

14  order a few rows behind an incident, a few rows in front --

15          **THE COURT:**  So you've given them every name of every

16  passenger on this flight?

17          **MR. MAYE:**  That's correct.

18          **THE COURT:**  And now, in your interrogatories, you're

19  asking them to identify which of the names that they already have

20  are the people that might have witnessed what it is you're

21  asking --

22          **MR. MAYE:**  That's correct, Your Honor.  There's

23  absolutely no basis for (indiscernible).

24          **THE COURT:**  You already have the names of everybody

25  on the flight?

TRANSCRIBED FROM DIGITAL RECORDING
2:19-cv-01322-KJD-DJA - Friday, November 4, 2022    20

1        **MR. McKAY:**  I do.

2        **THE COURT:**  And it's somehow to go back to counsel in

3    the context of this case on a discovery document that's not filed

4    on the docket, and it will probably only become public record if

5    the case goes forward to trial and evidence is admitted and

6    everything else.

7        You're saying that you shouldn't be -- you shouldn't

8    be required to give him the names of who you believe might have

9    witnessed these things because of this privacy issue?

10       **MR. McKAY:**  It would have been awesome to have a

11   similar discussion about the previous objections that they had,

12   but, Your Honor, if you order me to --

13       **THE COURT:**  Is that not -- is that not a tit for tat?

14   Am I being unreasonable in calling it what I called it?

15       You don't have to answer.  Just go back and read the

16   transcript.  And maybe I'm wrong, as well.  I'll read it, as

17   well.

18       All right.  Anything else, Mr. Maye?

19       **MR. MAYE:**  No, Your Honor.  You know, we've -- we've

20   done our best to cooperate with plaintiffs.  Apparently, we have

21   different views of the facts of the case.  And we've made great

22   efforts to be collegial and cooperative.  And -- and at times, we

23   have been successful.  Other times, it's been more

24   challenging --

25       **THE COURT:**  Well.

1          **MR. MAYE:**  -- in this case.  This motion, we decided

2   not to ask for sanctions because we didn't want to escalate

3   things.  We just wanted to bring the issues to the Court and get

4   them resolved.  Clearly, the responses to our discovery

5   (indiscernible).

6          **THE COURT:**  All right.

7          **MR. MAYE:**  Thank you, Your Honor.

8          **THE COURT:**  Mr. McKay, is there anything else you

9   want to tell me before I rule?

10          **MR. McKAY:**  I'm afraid that there's nothing I could

11   say that would change your mind, Your Honor.

12          **THE COURT:**  Fair enough.

13          All right.  Legal standard for motions to compel,

14   generally, if a party resists discovery, Rule 37(a) authorizes

15   the requesting party to file a motion to compel, which is what

16   Frontier Airlines has done in this case.

17          The motion must include a threshold showing that the

18   requested information is relevant and proportional.  *Tsatas v.*

19   *Airborne Wireless Network, Inc.*, that's a Westlaw case from 2022.

20   It's a District of Nevada case, January 7th, 2022.  That's

21   Westlaw 74003 at 2.

22          Also cite to Federal Rule of Civil Procedure 26(b)(1)

23   as it relates to the relevant -- or a threshold showing.

24   Relevance is a low threshold and merely requires a possibility of

25   a nexus between the information sought and the claims or defenses

1    of a party.  That's the *Tsatas* case.

2              As it relates to proportionality, that requires the

3    Court to consider the importance of the issues at stake in the

4    action and the amount in controversy, the parties' relative

5    access to relevant information, the parties' resources, the

6    importance of the discovery in resolving the issues, and whether

7    the burden or expense of the proposed discovery outweighs its

8    likely benefit.  That's Federal Rule of Civil Procedure 26(b)(1).

9    The party resisting discovery bears the burden of showing why the

10   discovery should not be permitted because -- because it is

11   irrelevant, overbroad, or unduly burdensome.  *Fosbre v. Las Vegas*

12   *Sands Corporation*.  That's a 2016 Westlaw case, 54202 at 4.  It's

13   a January 5th, 2016, case out of the District of Nevada.  And

14   citing that same case, finally, to meet this burden, the

15   objecting party must specifically detail the reasons why each

16   request is objectionable.

17             I do find in this case that the requested information

18   is relevant and proportional.  I don't find that the objections

19   from the plaintiff are warranted.  Again, I cite the one example

20   of they're simply asking for, Give us the names of people that

21   you say witnessed this.

22             You already have that list of names.  That, to me, is

23   exactly the type of thing that should be compelled, and that's

24   why I'm going to grant it.  So I'm going to grant the motion to

25   compel in its entirety.

1          Under Rule 37 sanctions, if the Court grants a motion

2    to compel, the Court must require the party whose conduct

3    necessitated the motion, the party's attorney, or both to pay the

4    movant's fees -- that's Federal Rule of Civil Procedure

5    37(a)(5)(A) -- but not if the party moved before trying in good

6    faith to obtain the discovery, the opposing party's nondisclosure

7    was substantially justified, or other circumstances make an award

8    of an expense unjust.  That's the same rule.

9          I'm going to use my discretion and say that I don't

10   want an award of sanctions under Rule 37 to be perceived as

11   unjust in this case.  It's a really close call.  I know

12   Mr. McKay's perceptions are that this Court is biassed and not

13   being fair to his clients and not giving them a fair shake.

14         Again, I'm somewhat at a loss for that.  While I

15   recognize I ruled against you on a number of -- or at least part

16   against you on a number of discovery motions, that certainly

17   doesn't indicate that this Court is somehow biassed against your

18   clients.  I look at each motion on the facts presented in the

19   motion and the law that I must apply and try to make the best

20   decision I can make.

21         I do think that in this case, the plaintiffs have

22   requested extensive discovery that, I believe, based upon my

23   prior orders, was above and beyond the relevance and

24   proportionality aspects that I'm required to consider, and that's

25   why I've denied them.  But I don't want to put any further fuel

1  on any flames by awarding fees for sanctions.  And so, under 3,

2  where an award might be unjust or considered unjust, I'm going to

3  find that that is the basis for me not to order sanctions.

4          I'll also note that the plaintiffs -- or, I'm sorry,

5  the defendants didn't ask for sanctions, which, I think, probably

6  for the same reason I'm citing and which further justifies the

7  Court's decision.

8          I'll simply say I know there's another on my docket

9  from yesterday.  I suspect there will be more.  I would hope

10 Frontier Airlines, in understanding in serving the public, that

11 they don't want the sort of allegations that occurred here.  And

12 I'm not saying I accept them as true, but I would assume

13 Frontier, as a business, says, We don't want that happening.  And

14 I would like to think Frontier would say, We want to provide

15 everything that we think is reasonable, proportional under the

16 law.  It's an open book.  Here's the stuff.  Let's resolve this

17 problem.

18         You know, I don't want Frontier hiding the ball.

19 Much probably to Mr. McKay's disbelief about my position, the one

20 thing I can't stand in discovery is people playing hide the ball.

21 I hated it when I was in private practice.  It's an abuse of the

22 system.  In this case, I've ruled in your favor on some things

23 because I didn't think they were proportional to the case.  But

24 again, I encourage you to try to be as open and work these things

25 out.

1           Mr. McKay, I apologize for your perception of the

2    Court and its belief in your case.  Again, I don't know where

3    that came from, and I certainly am cognizant of the words that I

4    write in orders and the effect that they have.  And we try to be

5    careful in what we do.  There are a lot of orders that go out.

6    We have a very large caseload, and sometimes things may go out

7    that people take the way that we didn't intend it to be taken.

8    And if that has occurred, I apologize.  I assure you that I

9    continue to be completely fair and unbiassed and give your

10   clients the fair shake that they deserve under the rules of

11   discovery, and I'll continue to do that.

12           With that, anything else, Mr. McKay?

13           **MR. McKAY:**  Your Honor, I greatly appreciate that.

14   And I am sorry if the Court felt that I was accusing you of

15   anything.  I'm not accusing you of anything.  I am simply saying

16   that as I look at what has transpired so far, it seems to me to

17   be weighted differently than it should be.  That's all I'm

18   saying.

19           **THE COURT:**  I accept your opinion, and --

20           **MR. McKAY:**  And apology.

21           **THE COURT:**  Well, and I accept your apology, as well.

22   And again, I -- you know, I assure you, having practiced for many

23   years, I understand where you're coming from.  And I'm putting it

24   aside, and I'm going to go forward and continue to try to be as I

25   was when I first was appointed to the case, and that's completely

1   unbiassed and call it as I see it.  And that's what I'll continue

2   to do.

3           MR. McKAY:  Thank you, Your Honor.  I appreciate

4   that, and especially since Mr. Maye and I want to speak with you

5   about some procedural items that we agree on in terms of how to

6   get this case best postured for trial.

7           THE COURT:  All right.  You want to do that now,

8   you're saying, or --

9           MR. McKAY:  Could we?

10          MR. MAYE:  We'd like to, Your Honor.

11          THE COURT:  Sure.

12          MR. MAYE:  We both talked about the need to extend

13  some deadlines given that this month we have about nine

14  depositions scheduled.  It's Thanksgiving and it's unlikely we

15  will be able to complete deposition of experts.  And, of course,

16  the 30(b)(6) depositions can't take place until the trial judge

17  rules on the pending motions.

18          And now we have the motion for protective order, so

19  Mr. McKay and I have discussed raising the issue with you if we

20  could extend the dates maybe until February for close of

21  discovery.  You've already granted -- well, I don't know if we

22  talked about timeline, but you've already granted extensions for

23  two of the experts until February because they're not available

24  prior to that.

25          THE COURT:  Well, probably not going to like my

1  answer from the bench, which is going to be put it -- let's put

2  it in a stipulation so that we have something.

3              What -- I can't recall.  I was looking at the docket

4  today.

5              What are we at on the stipulations, what number?  Are

6  we on the third, or are we on the tenth?

7          **MR. MAYE:**  Far too many.  I think we're at nine.

8  This will be the ninth --

9          **THE COURT:**  Well, that's --

10         **MR. MAYE:**  -- and I think that has to do with the

11 motion practice.

12         **THE COURT:**  Understood.  And again, you know, it

13 would be kind of hypocritical of me to say here a few minutes ago

14 that I want to give the people -- the parties the opportunity to

15 have some discovery and present their case and then say no, you

16 can't have more time.

17             But I would say, is there something we can come to

18 one last stipulation, again, always barring some extreme

19 unforeseen circumstance?

20             Things happen in life, but barring that, this being

21 the last one, I would be inclined to grant that if you're both in

22 agreement with it.

23         **MR. McKAY:**  I don't want the Court to get the wrong

24 impression.  Mr. Maye and I have been friends for years and we're

25 still friends.  All right?  We're just sparring over this case.

1           His client has some extreme positions on relevance.

2    We have some disagreements with that.  But this is not a

3    situation where we're going to leave this courtroom and have an

4    argument over --

5           **THE COURT:**  Well, that reminds me of something I

6    wanted to tell you, and that is that I don't take what you're

7    doing in your advocacy personally, so don't --

8           **MR. McKAY:**  Thank you.

9           **THE COURT:**  -- don't perceive that I do.

10          **MR. McKAY:**  All right.  Thank you.

11          **THE COURT:**  I learned long ago in my practice that if

12    I took what went on at work personally, I would have a much

13    shorter, unhappier life, so I try not to do that.

14          **MR. McKAY:**  So what we've got is he's just disclosed

15    three experts on Friday.  So I have to figure out, with discovery

16    ending on the 18th, where are those depositions going to occur.

17    I've -- I've got experts that he wants to depose, so we're really

18    talking about just a finite period of time to wrap up the witness

19    depositions, wrap up the expert depositions.  It shouldn't really

20    take too long at all.  We don't have a trial date, so --

21          **THE COURT:**  Yeah.  Pretrial order will come later

22    after any motion -- motions you all want to file --

23          **MR. McKAY:**  Right.  And I think that's set now for

24    January.

25          **THE COURT:**  So just paraphrase what you just said in

1   the stipulation in the section of, you know, what we need to do,

2   and we'll watch for the stipulation to come.  And as long as it's

3   just got that in there -- and you guys are usually pretty good at

4   your stipulations -- we'll give you that extra time, and

5   hopefully, that will be the last one.

6          **MR. McKAY:**  That sounds good, Your Honor.

7          One other thing, if I may.  We -- and I know you've

8   got a thousand cases, and this probably isn't going to ring a

9   bell.  But I had to take all of the depositions of the flight

10  attendants and the pilots very quickly under Judge Koppe's

11  original order because she only gave us a month to -- to amend

12  the named parties.  I started this off as Does 1 through 6.  And

13  so I had to quickly take their depositions.

14         During the captain's deposition, he said he hadn't

15  had any training on antidiscrimination, and then couple years

16  later, he answers an interrogatory saying he did.  And I have

17  been asking for discovery for that.

18         Can I take his deposition again quickly on a limited

19  basis to ask him? because Your Honor just said that there must be

20  another way to get to this information, and I've used them all.

21         **THE COURT:**  Is there another interrogatory you can

22  propound on them that asks why the discrepancy in saying that you

23  did and didn't?

24         **MR. McKAY:**  I mean, interrogatory answers are written

25  by lawyers, Your Honor.  You know that.

TRANSCRIBED FROM DIGITAL RECORDING
2:19-cv-01322-KJD-DJA - Friday, November 4, 2022    30

1          **MR. MAYE:**  Can I address that --

2          **THE COURT:**  Yes.

3          **MR. MAYE:**  -- Your Honor?

4          First, Your Honor has already ruled on this issue,

5    and so I -- it's not appropriate, this request.

6          **THE COURT:**  You know, let me just stop you there.

7    I -- this goes back -- I feel uncomfortable ruling on this from

8    the bench.  I would prefer you to, you know --

9          **MR. MAYE:**  Maybe we can work it out, and --

10         **THE COURT:**  Yeah.  I'd rather have you put something

11   in writing, and then you could respond if you can't otherwise

12   work it out.  I don't want to do that off the top of my head

13   today.

14         **MR. MAYE:**  I just wanted to say, Mr. McKay mentioned

15   that, you know, we're colleagues and friends and with my clients

16   taking an extreme position.  We do not view our clients taking an

17   extreme position.  We just aren't.  We think our client's taking

18   the right position.

19         We have a completely different view of the case,

20   so --

21         **THE COURT:**  Thus all the motions to compel and

22   everything else, so --

23         **MR. MAYE:**  -- we take issue with that, but we're

24   doing our best to cooperate and --

25         **THE COURT:**  All right.  So on the deadlines, if you

1  could get that stipulation sooner rather than later, that will

2  help.  The minute order will indicate that the motion to compel

3  has been granted as stated on the record and will serve as

4  the -- the order.

5           Now, at the risk of having another number of issues

6  brought up, is there anything else you want to bring up, Mr. --

7           **MR. McKAY:**  Will you be watching the game tomorrow?

8           **THE COURT:**  I'm not sure which one you're referring

9  to, but with any luck --

10          **MR. McKAY:**  Badgers vs. Terrapins.

11          **THE COURT:**  Ha, ha.  No.  I'll probably be on the

12  golf course and not torture myself with 2022 Wisconsin Badgers.

13          Anything else from the defense?

14          **MR. McKAY:**  No, Your Honor.

15          **THE COURT:**  All right.  Thank you.  Court's in

16  recess.  You both have a good weekend.

17          **MR. MAYE:**  Thank you, Your Honor.

18              (*Proceedings adjourned at 2:11 p.m.*)

19                       --o0o--

20      I, Paige M. Christian, a court-appointed transcriber,

21  certify that the foregoing is a correct transcript transcribed

22  from the official electronic sound recording of the proceedings

23  in the above-entitled matter.

24

25  Date:  December 30, 2022

1                           /s/ Paige M. Christian_____

2                      Paige M. Christian, RPR, CRR, CCR #955
                       Official Court Reporter
3                      United States District Court
                       District of Nevada

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25