1

2

3

4                     UNITED STATES DISTRICT COURT

5                            DISTRICT OF NEVADA

6                                  * * *

7    PETER DELVECCHIA, *et al.*,                    Case No. 2:19-cv-01322-KJD-DJA

8                                 Plaintiffs,                    ORDER

9         v.

10   FRONTIER AIRLINES, INC., *et al.*,

11                               Defendants.

12        Presently before the Court is Plaintiffs' Rule 72(a) Objection to the Magistrate Judge's

13   August 5, 2022 Order on Plaintiffs' Fourth and Fifth Motions to Compel Discovery (#203). The

14   Defendants responded in opposition (#204). Plaintiffs then filed a Motion for Leave to File a

15   Reply in Support of Rule 72(a) Objections to Order by a Magistrate Judge (#206) and attached

16   the proposed reply as an exhibit. Defendants responded in opposition. (#207). Finally before the

17   Court is Plaintiffs' Motion for Leave to File a Reply in Support of Rule 72(a) Objections to

18   Order by a Magistrate Judge (#206). Having read and considered the motion for leave to file

19   surreply, and good cause being found, it is granted.

20        I.      Factual and Procedural Background

21        This case arises from a discrimination claim based on the separation of Plaintiff Peter

22   DelVecchia ("DelVecchia") and his son, Plaintiff A.D. ("A.D.") on a Frontier flight. Plaintiffs

23   are suing Defendant, Frontier Airlines ("Frontier"), claiming the airline racially profiled

24   DelVecchia and A.D. when they forcefully separated the pair on the flight for suspected human

25   trafficking. DelVecchia is white, and is the adoptive father of A.D., who is black. Plaintiffs,

26   through their Third Amended Complaint, seek punitive damages and are alleging claims of

27   intentional infliction of emotional distress, false imprisonment, battery and assault, defamation,

28   and a violation of 42 U.S.C. § 1981. (#153).

Plaintiffs have filed numerous motions to compel throughout the litigation process. The present motion concerns Plaintiffs' Fourth and Fifth motions to compel. (#164, #170). The Court will analyze and discuss both motions and the magistrate judge's order ruling on those motions in turn.

II.   Analysis

### a.  Legal Standard

Rule 72(a), in relevant part, states that "[a] party may serve and file objections to the [magistrate judge's] order within 14 days after being served with a copy…. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."

"The clearly erroneous standard applies only to the magistrate judge's factual findings while the contrary to law standard applies to the magistrate judge's legal conclusions, which are reviewed de novo." Columbia Pictures, Inc. v. Bunnell, 245 F.R.D. 443, 446 (C.D. Cal. 2007) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)). "A magistrate judge's order is 'clearly erroneous' if the court has a 'definite and firm conviction that a mistake has been committed." United States v. Desage, 229 F. Supp. 3d 1209, 1213 (D. Nev. 2017). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." Id.

### b.  Fourth Motion to Compel

Plaintiffs move the Court to reconsider the magistrate judge's order on Plaintiffs' fourth motion to compel.

#### i.   Factual and Procedural Background

Plaintiffs originally moved the magistrate judge to compel Frontier to remove the redactions of passenger name and contact information from the discrimination complaints and passenger incident reports Frontier produced according to a court order. At issue are Plaintiffs' Request for Production Number 47:

**RFP No. 47:**

> All Documents/ESI containing and/or describing any complaint(s) received by Frontier since January 1, 2009 that allege any act of

discrimination on the basis of race conducted or condoned by a Frontier employee, including, without limitation, a copy of each complaint and any Documents/ESI containing, or describing actions taken by Frontier's management in response to each complaint.

**Frontier's Response:**

Frontier objects to Request for Production No. 47 on the ground that it is overly broad and seeks information that is not relevant to any party's claim or defense and/or not proportional to the needs of the case.

(# 164, at 3-4).

Plaintiffs moved to compel a response to this request, and the Court found that:

Prior complaints of race discrimination are relevant to Plaintiff's Section 1981 claim and [the Court] will narrow the request to be proportional to the needs of the case as follows: Defendant shall provide a supplemental response of any race discrimination complaints filed by passengers, not employees, over the past 5 years only, and limited geographically to the continental United States.

(#83, at 4).

When Frontier produced the records, it redacted the name and contact information of passengers, employee email addresses, and employee numbers (but not employee names). (#134, at 4-5). Plaintiffs contacted Frontier and objected to the redactions, and Frontier responded, arguing that case law interpreting 14 C.F.R. § 243.9(c) (governing procedures for airlines to collect and maintain information) prohibited Frontier from releasing the information. Id.

Plaintiffs then moved for sanctions, arguing that Frontier's redactions were unauthorized by the Court and that cases interpreting § 243.9(c) wrongfully concluded that the provision mandates airlines to protect passenger information. (#128, at 9-20). The magistrate judge denied the motion for sanctions, finding that a motion to compel was the proper motion. (#150, at 5). However, the order also explained that:

Even if Plaintiffs were correct that 14 C.F.R. § 243.9(c) did not protect the information Frontier redacted, Plaintiffs have not adequately explained why this information is relevant to their case. While they argue that they intend to contact these individuals to learn more about the alleged discrimination and trafficking, their intent to learn more does not make the information relevant or proportional. This is particularly concerning considering the sensitive information Plaintiffs seek.

Id.

The magistrate judge also added to the order:

> Plaintiffs point to no language of the Court's order that Frontier has violated, and the Court's order did not entitle Plaintiff's to this information. (ECF No. 83 at 3-4). Frontier also did not need to be 'authorized' to redact information it believes is protected by federal law or confidential by virtue of implicating a third party's privacy. The Court does not need to reach 14 C.F.R. § 243.9(c) to decide the motion for sanctions because Frontier has not violated a Court order or refused to respond to requests for production by redacting this information.

Id.

Plaintiffs then filed a fourth motion to compel, asserting that they only sought the names and contact information of the passengers who complained about discrimination and not trafficking. (#164, at 2-3). This way, there would be no concern of revealing minors' contact information. Id. The Plaintiffs argued again that the redactions were unauthorized and that § 243.9(c) does not protect passenger information. (#164). Plaintiffs also argued that they have a legitimate need for the information because:

> Plaintiffs also need to obtain more information from passengers who have complained of racial and ethnic discrimination by Frontier's employees in the past because their historical complaints, and the manner in which they were routinely avoided and denied by Frontier's management, are evidence of Frontier's systematic denial of its legal responsibilities to its passengers to ensure a travel environment in which its employees, especially flight attendants, feel empowered to consciously disregard passengers' protected civil rights…as members of a protected class (mixed race family, African American, and Ethiopian ethnicity).

Id. at 22-23.

Frontier responded, arguing that Plaintiffs could not show that the passenger names and contact information and employee emails and numbers were relevant or proportional to their case. (#166). Frontier argued that even if § 243.9(c) did not protect the passenger information, even if the complaints are relevant, they are only collaterally relevant and are too tenuous to establish pattern-and-practice evidence. Id. at 8-11.

Plaintiffs replied and argued that the Court already determined the information was relevant and proportional in its order responding to Plaintiffs' Second Amended Motion to Compel. (#83,

- 4 -

#169, at 9). Plaintiffs also challenged Frontier's cited case law and presented case law of their own for the proposition that "pattern-and-practice evidence" is relevant to support their claims against Frontier. (#169).

The magistrate judge filed an order on August 5, 2022, denying Plaintiffs' fourth motion to compel in its entirety. (#192). This led to Plaintiff filing a rule 72(a) objection motion, arguing that the magistrate judge's order was clearly erroneous and contrary to law. (#203, at 2). Plaintiffs argued that the ruling interfered with the ability to prosecute the § 1981 claim against Frontier and that the order ignored Ninth Circuit precedent. Id. at 3-11.

Frontier responded to the objection, stating that the redacted information is not relevant or proportional to the specific claims of intentional discrimination by flight-crew members on one singular flight. (#204, at 5). Frontier argued that it has federal immunity and even if it did not, Plaintiffs cannot satisfy the standard for proving a § 1981 claim because they cannot demonstrate that "but for race, it would not have suffered the loss of a legally protected right." Id. Frontier reinstated the arguments made in the response to Plaintiffs' fourth motion to compel, that the case law demonstrates the redacted information is only collaterally relevant. Id. at 7. Frontier also asserts that Plaintiffs already have a broad scope of discovery and that there was no waiver of objections regarding § 243.9(c). Id. at 10-11.

Plaintiffs filed a motion for leave to file a reply to Frontier's response. (#206). Plaintiffs attached the proposed reply as Exhibit A to aid the Court in expediting a decision. (#206-1). The proposed reply includes similar arguments as made previously by the Plaintiffs, including clarifications of case law, assertions that the redacted information is relevant to the claims against Frontier, and allegations that Frontier is mischaracterizing Plaintiffs' arguments. (#206-1).

Frontier replied in opposition to the motion asking for leave to file a reply, arguing that the proposed reply is only a summary of prior arguments already on record, that Plaintiffs improperly rely on allegations about Frontier's corporate culture such that seeking the redacted evidence is not appropriate for the claims at issue, and that Ninth Circuit case law makes clear this is not a pattern-or-practice case. (#207).

1    The Court notes that both parties seem to feel strongly that the other side is mischaracterizing

2    the other's argument and attempting to manipulate the court. The record pertaining to this issue

3    is extensive and comprehensive with a variety of arguments for the Court to consider.

4                           ii.    <u>Analysis</u>

5                      **1.   Application of 14 C.F.R. 243.9(c)**

6    Although the Court does not need to consider the § 243.9(c) argument for the purposes of the

7    present motion, looking at the regulation, the Court notes that § 243.9(c) cannot justify the

8    redactions.

9    Plaintiffs' chief argument in the briefing is that § 243.9(c) has no application to this case

10   because the part of the Federal Aviation Regulations ("FARs") in which it is contained only

11   applies to international flights and because the information the regulation mandates be kept

12   confidential is only for passengers' emergency contacts. (#164, at 9, 13).

13   The relevant portion of 14 C.F.R. § 243.9 for procedures for collecting and maintaining the

14   information provides:

15                  Covered airlines may use any method or procedure to collect, store
16                  and transmit the required information, subject to the following
                    conditions:

17                  (c) The contact information collected pursuant to section 243.7(a)(2)
18                  of this part shall be kept confidential and released only to the U.S.
                    Department of State, the National Transportation Safety Board
19                  (upon NT'B's request), and the U.S. Department of Transportation
                    pursuant to oversight of this part. This paragraph does not preempt
20                  other governments or governmental agencies that have an
                    independent, legal right to obtain this information.

21   Section 243.7(a)(2) provides that "[f]or covered flight segments, each covered airline shall…

22   solicit, or cause to be solicited, a name and telephone number of a contact from each passenger

23   who is a U.S. citizen[.]"

24   Part 243 of the FARs begins with "Purpose," "Definitions," and "Applicability" sections.

25   The "Purpose" section states "[t]he purpose of this part is to ensure that the U.S. government has

26   prompt and adequate information in case of an aviation disaster on covered flight segments." 14

27   C.F.R. § 243.1. "Covered flight segments" is defined as:

28                  A passenger-carrying flight segment operating to or from the United

States (i.e., the flight segment where the last point of departure or the first point of arrival is in the United States). A covered flight segment does not include a flight segment in which both the point of departure and point of arrival are in the United States.

14 C.F.R. § 243.3.

The plain language makes clear that the regulation does not protect passenger information privacy. The contact information § 243.9(c) refers to is for emergency contacts of flight passengers, and not the passenger information. Also, a covered flight segment does not include a domestic flight, like the flight at issue here, which began in North Carolina and ended in Nevada. Frontier's reliance on this regulation as a reason for redacting the information is inconsistent with the plain language of the regulation.

However, even though § 243 does not support redacting the passenger information for privacy matters, the information is still not proper for the Plaintiffs to obtain.

## 2.   Relevancy and Proportionality of Redacted Information

Ultimately, the question before the Court is whether the magistrate judge's order was clearly erroneous or contrary to law when he held that the redacted information was irrelevant and unproportional.

Fed. R. Civ. P. ("Rule") 26(b)(1) states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable that it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

The magistrate judge held that "Plaintiffs have not adequately explained why this information is relevant to their case. While they argue that they intend to contact these individuals to learn more about the alleged discrimination and trafficking, their intent to learn more does not make the information relevant or proportional." (#150, at 5).

Plaintiffs bring five claims. The first being "compensatory and punitive damages and attorneys' fees pursuant to 42 U.S.C. § 1981. Plaintiffs argue that to fully prosecute their § 1981 claims they need the redacted passenger information. (#203 at 3-5).

§ 1981 provides that,

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the fully and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C.A. § 1981.

The Supreme Court of the United States has recently held that a "§ 1981 plaintiff bears the burden of showing that the plaintiff's race was a but-for cause of its injury, and that burden remains constant over the life of the lawsuit." Comcast Corp. v. Nat'l Assoc. of African American-Owned Media, 140 S. Ct. 1009, 1011 (2020). "To prevail, a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right. Id. at 1019.

Plaintiffs state in their Third Amended Complaint, "[b]ut for the disparity in Peter and A.D.'s races, their respective skin colors, A.D.'s ethnicity, ancestry and ethnic characteristics, the acts of race and ethnic discrimination detailed in this Third Amended Complaint would not have happened." (#153, at 30). Plaintiffs also allege that the Frontier employees on the flight "knew that they were taking action solely on the basis that Plaintiffs' appearances as a White man traveling together with a Black youth with Ethiopian features made the flight attendants 'uneasy' and 'uncomfortable'" so much so that Plaintiffs were denied the benefits of the contract they made with Frontier. Id. at 17. As was held by the Court previously, Plaintiffs have sufficiently plead that but for race, they would not have suffered the harm they did on the Frontier flight. (#67, at 3-4).

Discriminatory intent is required to support a claim under § 1981. See Patterson v. McLean Credit Union, 491 U.S. 164, 186 (1989). "When analyzing § 1981 claims, we apply 'the same legal principles as those applicable in a Title VII disparate treatment case." Surrell v. California Water Serv. Co., 518 F.3d 1097, 1103 (9th Cir. 2008). Typically, the McDonnell Douglas burden shifting framework applies to Title VII and § 1981 cases. See id. at 1105. The McDonnell Douglas framework requires a plaintiff to make a prima facie case of discrimination, and then the

1   burden shifts to defendant to produce evidence of a legitimate nondiscriminatory reason for the

2   challenged action. St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1992). If the defendant

3   satisfies that burden, the plaintiff can demonstrate pretext. Texas Dept. of Cmty. Affairs v.

4   Burdine, 450 U.S. 248, 256 (1981). "The plaintiff retains the burden of persuasion" and this

5   "burden now merges with the ultimate burden of persuading the court that [the plaintiff] has been

6   the victim of intentional discrimination. Id. This can be done by either directly "persuading the

7   court that a discriminatory reason more likely motivated the employer or indirectly by showing

8   that the employer's proffered explanation is unworthy of credence." Id.

9       Because the Court has held that Plaintiffs have sufficiently plead a prima facie case of

10   discrimination under the statute, Frontier will have the opportunity to explain a legitimate and

11   nondiscriminatory reason for the challenged action. Plaintiffs can then attempt to demonstrate

12   that those stated reasons are merely pretextual. Presumably Plaintiffs seek the redacted passenger

13   information to support their circumstantial evidence argument that but for their race, they would

14   not have been treated in the manner they allege.

15       In addition to the discussion of the legal principles that underly § 1981, the Court also finds a

16   discussion of the caselaw cited in the briefing as necessary to the analysis because the parties and

17   the magistrate judge relied so heavily on it. Plaintiffs point first to Heyne v. Caruso, 69 F.3d

18   1475 (9th Cir. 1995) where the plaintiff filed suit against her former employer for sexual

19   harassment under Title VII after she was terminated. There, in line with the McDonnell Douglas

20   burden shifting analysis, the plaintiff wanted to produce evidence of other females who were also

21   allegedly sexually harassed by the employer to demonstrate that the employer's reason for the

22   termination was pretextual. Id. at 1479. The district court did not allow this evidence, and the

23   Ninth Circuit reversed, holding that "[i]t is clear that an employer's conduct tending to

24   demonstrate hostility towards a certain group is both relevant and admissible where the

25   employer's general hostility towards that group is the true reason behind firing an employee who

26   is a member of that group." Id. These other complaints were considered probative because of

27   how difficult it can be to prove state of mind. Id. at 1480. Because the evidence could assist the

28   jury to determine whether the employer fired the plaintiff for discriminatory reasons, it was

1    deemed admissible. Id. at 1482.

2        Plaintiffs also cite to Fuller v. Idaho Depart. Of Corrections, 865 F.3d 1154 (9th Cir. 2017),

3    where a woman brought a Title VII action against her employer, alleging a hostile work

4    environment based on sex discrimination. In Fuller, the Ninth Circuit reversed the district court

5    and held that evidence of the employer's knowledge of previous sexual harassment claims

6    against the male employee who assaulted the plaintiff, "while alone insufficient to create a

7    hostile work environment, is relevant and probative of [the employer's] general attitude of

8    disrespect to its female employees." Id. at 1162, n. 8.

9        The magistrate judge did not find these cases convincing enough to entitle Plaintiffs "to the

10   names and contact information of every passenger who has complained that they were

11   discriminated against…." (#192, at 9). The magistrate judge found that these cases, although

12   binding, were distinguishable because the evidence at issue here is far broader than the evidence

13   in Heyne and Fuller, and because the redacted "information Plaintiffs seek to compel lack the

14   substantive connection to their individual case that was present in Heyne and Fuller. Id. "Instead,

15   Plaintiffs' asserted connection– that the evidence will show a 'pattern and practice' of

16   discrimination– is speculative." Id.

17       The magistrate judge was, however, convinced by the two cases that Frontier points to:

18   Karrani v. JetBlue Airways Corp., No. C18-1510-RSM, 2019 U.S. Dist. LEXIS 127944 (W.D.

19   Wash. July 31, 2019), and Acton v. Target Corp., No. C08-1149-RAJ, 2009 U.S. Dist. LEXIS

20   104436 (W.D. Wash. Oct. 16, 2009). Although neither are binding, the magistrate judge found

21   them more persuasive than Heyne and Fuller.

22       In Karrani, a passenger sued an airline for racial discrimination under § 1981 after being

23   removed from a flight due to an altercation on the plane with a flight attendant. While ruling on

24   the airline's motion for summary judgment, the court explained that it had "granted Plaintiff's

25   request to compel production of unredacted passenger complaints filed against [the flight

26   attendant] in the last ten years to determine whether Mr. Karrani's removal fit a larger pattern of

27   [the flight attendant] mistreating and/or unfairly removing racial minorities from JetBlue flights."

28   Karrani, 2019 U.S. Dist. LEXIS 127944, at *6. The court also explained that "[w]hile courts

typically view past complaints by others within a protected class as only 'collaterally relevant' to private, non-class action discrimination lawsuits, such evidence may be relevant 'in *limited circumstances* where a plaintiff can make some showing to connect it to his or her claims." Id.

The magistrate judge did not believe Plaintiffs adequately connected their claims to the redacted information of passengers and employees. (#192, at 11). Also, "unlike the discovery in Karrani–the names of passengers who had complained against the flight attendant who allegedly discriminated against the plaintiff–Plaintiffs seek the identity of *any* passenger who complained against *any* Frontier employee who allegedly discriminated against anyone on a domestic flight in the last five years." Id.

Also relying on Acton, Frontier argued that pattern-and-practice evidence is discoverable so long as the plaintiff can make a connection to his claims. In Acton, a former employee sued Target for disability discrimination and then wanted broad discovery about Target employees throughout the state of Washington. Acton, 2009 U.S. Dist. LEXIS 104436, at *4. The court did not allow discovery about the employees throughout the state and noted that the plaintiff failed to allege:

> That any of the decisionmakers responsible for his termination had similar authority over employees in *any* other store, even those that are close in proximity to the Burlington store. He does not allege that Target has a statewide policy, much less that this statewide policy bears on his claims. In short, he gives the court no basis to conclude that forcing Target to provide information on employees in stores across Washington would lead to discovery of admissible evidence.

Id. at *2, #192, at 11.

The plaintiff tried to argue it was pattern-and-practice evidence, but the court determined the plaintiff was not "attempting to prove a pattern-or-practice *claim*[.]" Id. The magistrate judge here held that "Plaintiffs already have the substance of these complaints and the names of the employees involved." Id. "While the Court has already found the substance of these past complaints to be relevant, Plaintiffs have not demonstrated that interviews, surveys, or depositions of the passengers and employees involved would reveal anything more than speculatively relevant to their claims." Id. The magistrate judge likened this case to Acton,

- 11 -

1    because Plaintiffs have not asserted "that Frontier decisionmakers responsible for overseeing

2    other complaints were the same as the ones overseeing theirs" and "[t]hey do not allege– other

3    than in their briefs– that Frontier had a country-wide policy of discrimination." Id. at 12. "Nor do

4    they allege that even more information about other passengers' complaints than they already

5    have would demonstrate a nationwide practice." Id.

6        The magistrate judge ultimately decided that including the redacted information in addition

7    to what Plaintiffs already have– more than 300 passenger complaints, so that Plaintiffs can seek

8    more information about those complaints is not proportionate to the claims Plaintiffs have

9    alleged. Id.

10       This Court is tasked with determining whether the Magistrate's Order is clearly erroneous or

11   contrary to law. "A district court should overturn a magistrate judge's determination under this

12   'significantly deferential' standard only if it has 'a definite and firm conviction that a mistake [of

13   fact] has been committed' or that a relevant statute, law or rule has been omitted or misapplied."

14   Mayorga v. Ronaldo, No. 2:19-cv-00168-JAD-DJA, 2022 WL 2093723, at *10 (D. Nev. June

15   10, 2022); see Grimes v. City and Cty. of San Francisco, 951 F.2d 236, 240 (9th Cir. 1991).

16       The Court has seriously considered the Plaintiffs' arguments and agrees that Frontier's

17   justification for redacting the information *under 14 C.F.R. § 243.1* are flawed. However, the

18   Court has also seriously considered Frontier's arguments about relevancy and proportionality,

19   along with the magistrate judge's reasoning, and finds that the order is not clearly erroneous or

20   contrary to law. The Court cannot comfortably conclude that a mistake has been committed or

21   that the law has been misapplied.

22       The Court finds that Heyne and Fuller do stand for the proposition that additional

23   information regarding past complaints can be probative for proving state of mind, yet there must

24   still be a connection between the claims as in Acton. The Court agrees with the magistrate judge,

25   that Plaintiffs have not sufficiently stated that the Frontier decisionmakers were responsible for

26   the outcome on this particular flight. The Court finds it would be more reasonable for Plaintiffs

27   to inquire about previous incidents of alleged racial discrimination by Defendants Warren,

28   Shupe, or Mullin, because they were the ones directly involved. There is not enough of a basis

1  alleging that it was Frontier as a corporation that fostered an environment of racial animus, or

2  that Frontier's practices or policies were a but for cause of the injury.

3       Further, the claims at issue here are different from the employment claims in <u>Heyne</u> and

4  <u>Fuller</u> because the degrees of separation between Frontier and the employees on Flight 2067 are

5  much greater. In <u>Heyne</u>, a waitress at a motel restaurant sued the owner and operator of the

6  restaurant, not a large corporation with a few thousand employees like Frontier. In <u>Fuller</u> the

7  claims involved an individual against her immediate supervisor and against the Idaho

8  Department of Corrections under a Title VII vicarious liability standard. There is no vicarious

9  liability standard applicable in this case and the Plaintiffs are not suing their employer. <u>See</u>

10 <u>Swinton v. Potomac Corp.</u>, 270 F.3d 794, 803 (9th Cir. 2001); <u>see also</u> <u>El-Haken v. BJY Inc.</u>,

11 262 F.Supp.2d 1139 (D. Or. 2003).

12      Finally, the Third Amended Complaint alleges that:

13           Frontier intentionally chose not to provide its employees and agents
             with any anti-bias training that would have informed them how to
14           implement human trafficking, sexual misconduct and threat level
             protocols in a race-neutral manner to prevent discrimination, while
15           knowing that the failure to provide such training would foster an
             environment in which flight attendants and pilots would use those
16           protocols in ways that would cause discrimination to passengers on
             the basis of race, color, national origin, ethnic characteristics and/or
17           ancestry. Frontier had notice of multiple instances of racial profiling
             and similar conduct by its flight attendants, and repeatedly condoned
18           such activity by its employees against its passengers. Frontier's
             knowledge of, and condonation of, numerous incidents of race-
19           based and ethnicity-based discrimination by its employees against
             persons of color and mixed-race groups over many years leading up
20           to the events described herein intentionally and recklessly fostered
             an environment in which its employees, including, without
21           limitation, those working on Flight 2067, believed that they were
             authorized by their employer to discriminate against passengers of
22           color and mixed-race groups of passengers.

23      (#153, at 28-29).

24      Despite this allegation against Frontier, the Court agrees with the magistrate judge that

25 conducting a more expansive discovery effort to determine the details of what these previous

26 complaints consist of, is not relevant or proportional or to the needs of the case. The Plaintiffs

27 already have over 300 complaints, just not the personal identifying information within the

28 complaints. As the magistrate judge ruled, without showing more of a connection between the

- 13 -

1  passenger information and the § 1981 claims against Frontier, the information cannot be

2  obtained.

3              **c.   Fifth Motion to Compel**

4                    i.   Factual and Procedural Background

5      Plaintiffs also take issue with the magistrate judge's order concerning their fifth motion to

6  compel and asks the Court to consider the ruling. (#203, at 9-11). The fifth motion to compel

7  requested that the court compel Frontier to produce (a) requests for admissions concerning

8  business records; (b) requests for admissions on an issue of alleged evidence spoliation; and (c)

9  requests for production of documents concerning past discrimination complaints.

10      Plaintiffs also allege that Frontier has "intentionally disposed of a database… that was the

11  only means of determining which of its flight attendants and pilots had been assigned to specific

12  flights prior to November 2020." (#170, at 3). Plaintiffs argue that the disposal of this database

13  occurred seven months after the magistrate judge ordered Frontier to respond to request for

14  production (RFP) 47, which was a request for the past complaints against Frontier. Id. Plaintiffs

15  argue that because of the spoliation of the database, they can no longer "determine whether any

16  of the unnamed employees involved in the prior complaints of race discrimination were the same

17  employees who were involved in the acts alleged by Plaintiffs." Id. at 4.

18      Plaintiffs also served on Frontier its seventh request for production, consisting of 34 requests,

19  as well as the fourth request for admissions, consisting of 16 requests. Id. Plaintiffs also served

20  their fourth interrogatories, consisting of one single interrogatory. Id. Together, these equal out

21  to 51 requests for information, and Plaintiffs allege that in response, Frontier replied only with

22  boilerplate objections. Id. at 4-5.

23      The boilerplate objections mostly consist of challenges to the requests "on the grounds that

24  [they are] irrelevant, overly broad, unduly burdensome, and not proportionate to the needs of this

25  case." Id. at 5-49. Plaintiffs take issue with these objections because, as they argue, the

26  information they seek is not irrelevant or disproportionate. Id.

27      Plaintiffs also argue that Frontier's boilerplate objections are improper, and they rely on

28  Mancia v. Mayflower Textile Servs. Co., 253 F.R.D. 354 (D. Md. 2008). Id. at 11. The court in

this case took issue with "boilerplate, non-particularized objections" because Fed. R. Civ. P. "33(b)(4) requires that 'the grounds for objecting to an interrogatory must be stated with specificity[.]'" Id. at 365.

Plaintiffs also argue in their fifth motion to compel that because of the alleged disposal of evidence, Plaintiffs can no longer obtain employee identification information for those on previous flights that were involved with discrimination complaints, which means that Plaintiffs cannot determine whether Frontier disciplined those employees. (#170, at 4).

Frontier responded to the fifth motion to compel, arguing that Plaintiffs are seeking information that is only collaterally relevant to their claims and that they "offer no valid justification for expanding the scope of their already broad investigation." (#174, at 2). Frontier makes very similar arguments as their objections to the fourth motion to compel as explained above, mostly about irrelevancy, disproportionality, and lacking connection to Plaintiffs' claims. Id. at 2-10.

Frontier also denies the allegation that any evidence was intentionally destroyed and asserts that anything that is no longer available is not relevant to Plaintiffs' claims. Id. at 9.

Plaintiffs replied, arguing that Frontier did not sufficiently rebut Plaintiffs' arguments and thus should be declared as "consenting" to the granting of the fifth motion to compel. (#177, at 1). Plaintiffs assert that Frontier failed to debate the arguments by Plaintiffs and points to each part of their original motion that Frontier did not dispute or challenge. Id. at 1-6. Plaintiffs then assert that any arguments Frontier does address are baseless and irrelevant to the motion. Id. at 7-12.

The magistrate judge issued an order on the fifth motions to compel, granting in part and denying in part. (#192). Like the ruling on the fourth motion to compel, the magistrate judge held that Plaintiffs did not make a threshold showing that the information sought was relevant or proportional to the case. Id. at 12. The magistrate judge was not convinced that the case law cited by Plaintiffs–Heyne and Fuller–applied, and instead was convinced by the case law cited by Defendants– Karrani and Acton. Id. at 12-13.

With regard to the spoliation argument, the magistrate judge held that "the only reason this

allegedly spoliated evidence is relevant is because it could help Plaintiffs identify whether the employees aboard their flight were involved in any past discrimination complaints. Id. at 13. "But Plaintiffs concede that they already have each employee's file, which files are devoid of any discipline for discrimination." Id. The order noted that Plaintiffs could still serve a specific interrogatory on the Defendant, "limited to asking whether any of the Frontier employees on Plaintiffs' flight were identified in any of the complaints Frontier previously produced." Id.

The order also compelled a further response from Frontier concerning Captain Shupe's statement about discrimination training, so long as Frontier has additional documents. Id. The order also compelled a further response from Frontier about evidence concerning the allegation that flight attendant Warren hit DelVecchia. Id.

Plaintiffs then filed the present motion objecting to that order, arguing that the magistrate judge "rejected nearly all of Plaintiffs' arguments with a broad brush, basing his ruling on Frontier's 'collateral evidence' arguments that is supported only by two district court cases from other districts[.]" (#203, at 9). Plaintiffs also took issue with the ruling regarding spoliation, arguing that the evidence requested "was necessary to link flight numbers and dates to names of employees assigned to the flights, and only through that process could files revealing whether the employees were disciplined be pulled for examination." Id. Again, Plaintiffs are making the argument that it needs access to the information from *all* the complaints about *any* employee. *Id.*

In response to Plaintiffs' objection to the magistrate judge's order, Frontier adopted its arguments from its response to the original fifth motion to compel. (#204, at 7).

Plaintiffs' reply argued that the spoliated database is necessary to prove that Frontier had no "mechanism" to enforce its stated anti-discrimination policy. (#206-1, at 9). Plaintiffs also argue that the information they currently have, without receiving more from Frontier, is useless because they cannot determine whether the flight attendants on Plaintiffs' flight were involved in any of the past complaints. Id. Plaintiffs also point once again to Heyne and assert that the magistrate judge incorrectly dismissed the ruling of that case as it pertains to the facts here. Id.

                ii.  Analysis

The Court, after extensively reviewing the lengthy briefing and considering the arguments on

both sides, as well as the magistrate judge's reasoning, holds that Plaintiffs' motion objecting to the magistrate judge's order is denied.

As explained above, the magistrate judge's order is not clearly erroneous or contrary to law. Heyne and Fuller, although germane to proving state of mind, are not applicable enough to the facts of this case because both can be distinguished from these facts. And as reasoned above and by the magistrate judge in his order, Karrani and Action are more persuasive and pertinent to these facts. The Court agrees with the magistrate judge that, like Karrani and Acton, the Plaintiffs have not shown a sufficient connection between the information they seek and their claims against Frontier.

The Court also agrees with the magistrate judge regarding the evidence that was allegedly spoiled. Plaintiffs can serve a specific interrogatory upon Frontier for further information about whether any of the Frontier employees on Flight 2067 were identified in any of the past complaints previously produced. (#192, at 13). However, Plaintiffs admit to already having each employee's file which are devoid of any notes of discipline, so to broaden the scope of discovery would be unproportionate to the needs of the case. (#170, at 4). Plaintiffs also claim that the lost evidence regarding different employees would be relevant to their claim, but as explained, the Court finds that it is not.

As to the boilerplate objections, they are not improper because they object to the requests based on relevancy and proportionality, which as explained, are valid objections.

Ultimately, the Court agrees with the magistrate judge that "more evidence regarding unrelated complaints and Frontier's handling of complaints in general" is not relevant to the Plaintiffs' stated case. (#192, at 12). The Court has not been persuaded by Plaintiffs that this ruling is clearly erroneous or contrary to law.

III.    Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's Rule 72 Objections to the Magistrate Judge's Order (#192) is DENIED;

**IT IS FURTHER ORDERED** that the Order (#192) entered on August 5, 2022 is **AFFIRMED**;

1    **IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File a Reply in Support

2  of Rule 72(a) Objections to Order by a Magistrate Judge (#206) is **GRANTED**.

3  DATED this 13th day of February 2023.

4

5                                              Kent J. Dawson
                                               United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28