**1**

1          UNITED STATES DISTRICT COURT

2             DISTRICT OF NEVADA

3

4  PETER DELVECCHIA,                )
                                    )   Case No. 2:19-cv-01322-KJD-DJA
5        Plaintiff,                 )
                                    )   Las Vegas, Nevada
6        vs.                        )   JUNE 7, 2023
                                    )   Courtroom 3A
7  FRONTIER AIRLINES, et al.,       )
                                    )   MOTION HEARING
8        Defendants.                )
                                    )   **C E R T I F I E D   C O P Y**
9                                   )
   _____)
10

11

12           TRANSCRIPT OF PROCEEDINGS

13     BEFORE THE HONORABLE DANIEL J. ALBREGTS
           UNITED STATES MAGISTRATE JUDGE
14

15

16

17

18
   DIGITALLY RECORDED:     Liberty Court Recorder (LCR)
19                         3:28 P.M.

20 RECORDED BY:            J. RIES

21
    TRANSCRIBED BY:        Judy K. Moore, CRR, RMR
22                         Judy_Moore@nvd.uscourts.gov

23

24 Proceedings recorded by electronic sound recording; transcript
   produced by machine shorthand and computer-aided transcription.
25

```
 1  APPEARANCES:

 2  For the Plaintiff:

 3      MS. MARGARET A. MCLETCHIE, ESQ.
        MCLETCHIE LAW
 4      602 South Tenth Street
        Las Vegas, Nevada 89101
 5
        and
 6
        MR. JOHN D. MCKAY, ESQ.
 7      PARK AVENUE LAW, L.L.C.
        201 Spear Street, Suite 1100
 8      San Francisco, California 94105

 9
    For the Defendants:
10
        MR. BRIAN MAYE, ESQ.
11      HINSHAW & CULBERTSON, L.L.P.
        151 North Franklin Street, Suite 2500
12      Chicago, Illinois 60606

13

14

15

16

17                          *  *  *

18

19

20

21

22

23

24

25
```

Case 2:19-cv-01322-KJD-DJA  Document 250  Filed 06/22/23  Page 3 of 71
*Transcribed by Digital Recording  2:19-cv-1322-KJD-DJA  June 7, 2023*

**3**

 1          LAS VEGAS, NEVADA; JUNE 7, 2023; 3:28 P.M.

 2                          --oOo--

 3               P R O C E E D I N G S

 4          COURTROOM ADMINISTRATOR:  Peter DelVecchia versus

 5  Frontier Airlines, 2:19-cv-1322-KJD-DJA.  This matter is before

 6  the Court on Docket 215, motion for protective order.

 7          Counsel, make your appearance for the record,

 8  please.

 9          MS. MCLETCHIE:  Maggie McLetchie for plaintiffs.

10          MR. MCKAY:  John McKay for plaintiffs.

11          THE COURT:  Good afternoon.

12          MS. MCLETCHIE:  Good afternoon, Your Honor.

13          MR. MAYE:  Brian Maye for defendants.

14          MR. MICHALEK:  Charles Michalek, local counsel for

15  defendants.

16          THE COURT:  All right.  Good afternoon.  As my

17  courtroom administrator indicates, we are here on Number 215,

18  which is Frontier's motion for protective order.  247 was filed

19  yesterday evening as a supplement to the plaintiffs' opposition

20  to Frontier's motion for protective order.  That's a two-page

21  document.  It had a few hundred pages of depositions attached,

22  deposition transcripts, attached to that.  Additionally, I

23  intend to address Number 248, which is the stipulation

24  regarding the Rule 35 exam and related discovery that was filed

25  yesterday as well.  That is gaveled.  I intend to grant that,

Case 2:19-cv-01322-KJD-DJA   Document 250   Filed 06/22/23   Page 4 of 71
Transcribed by Digital Recording   2:19-cv-1322-KJD-DJA   June 7, 2023

4

1  but I'll address that at the end.  Just so the parties know, I

2  will be addressing that today.  So when we are finished, I am

3  hoping that we have all of the outstanding discovery issues

4  resolved and that all that is left is the Rule 30(b)(6)

5  deposition and then the Rule 35 examination.

6          As the parties know, I will give a brief background

7  as to the matters before the Court today, I will discuss the

8  legal standard, and then we will just go through topic by

9  topic.  And I will have, on some of the topics, some questions

10  for the parties.  On others, I have a pretty good idea of what

11  I'm going to do.  But I will give the parties a brief moment on

12  each topic if you want to raise something or address something.

13  And then when we conclude that, we will have -- the transcript

14  will be the order on my decision as it relates to the issues

15  raised in 215.

16          So let's begin with the background.  Frontier moves

17  for a protective order regarding certain of plaintiffs'

18  30(b)(6) topics.  Plaintiff responds that the topics are

19  relevant to its claims.  There is a question in terms of the

20  parties' position regarding the meet and confer and whether it

21  was sufficient.  I will not address that issue here today.

22  We're just going to go through and address these topics one by

23  one and be done with it.

24          In reply, Frontier says the topics were overbroad

25  and are thus not relevant to the issues of the litigation.

1   The legal standard for motions for protective orders

2   generally, as the parties know, Federal Rule of Civil Procedure

3   26(c) governing protective orders provides "The Court may, for

4   good cause, issue an order to protect a party or person from

5   annoyance, embarrassment, oppression, undue burden, or

6   expense."  And that's 26(c)(1).  "The burden is on the party

7   seeking the order to show good cause by demonstrating harm or

8   prejudice that will result from the discovery."  That's a

9   Nevada case, *Wells Fargo Bank, N.A., vs. Iny*, 2014 Westlaw case

10  1796216.  And, again, from May 6, 2014.  And Rule 26(c)

11  requires that the moving party make a particularized showing of

12  Rule 26(c)(1)'s enumerated harms.  That's a 9th Circuit case,

13  *Foltz vs. State Farm Mutual Auto Insurance Company*, 331 F.3d

14  1122, 1138 from 2003.  As it relates specifically to Rule

15  30(b)(6) depositions, once a 30(b)(6) witness satisfies the

16  minimum standard for serving as a designated witness, the scope

17  of the deposition is determined by relevance and

18  proportionality under Rule 26.  And I'm going to have to spell

19  this name, P-A-S-I-E-C-Z-N-I-K, *Pasiecznik vs. Home Depot USA*.

20  That's a Westlaw case from 2022, the District of Nevada,

21  1652367.

22          And I would remind the parties, my decision as we go

23  through this today regarding relevance as it relates to

24  discovery, obviously, is not in any way to rule on the

25  admissibility of whatever evidence might be obtained during the

**6**

1  course of this discovery.  Of course, admissibility will be for

2  another day and for Judge Dawson at the time of the trial.

3  So with that background and legal standard, I'm just

4  going to go through the topics as they were outlined one by

5  one.  And so the first topic is the specific details of all

6  training given by Frontier to flight attendants Anna Bond,

7  Chelsie Bright (Sakurada) -- I assume that's a married name or

8  something similar to that -- Amanda Nickel, and/or Scott Warren

9  prior to March 28, 2019, on the topics of, A, the circumstances

10  in which Frontier considers physical contact by flight

11  attendants with adult and minor passengers is appropriate; F,

12  circumstances in which Frontier considers it appropriate for a

13  flight attendant to discuss alleged sexual misconduct with a

14  minor passenger and to place a hand on or near the minor

15  passenger's genital area.

16  Frontier argues that this is argumentative and

17  harassing.  It is based on plaintiffs' allegation that Warren

18  asked A.D. whether he knew where Peter's hand was located and

19  that Warren hovered his hand over A.D.'s crotch to demonstrate.

20  Warren denies these allegations.

21  Plaintiff responds that the allegations about Warren

22  justify their questions about training related to the physical

23  conduct.

24  I can tell the parties, on this issue, I'm inclined

25  to deny the protective order.  I do think that some questioning

1  on those facts is relevant for discovery purposes.  But I will,

2  Mr. Maye -- or Ms. McLetchie -- I'll hear from either one of

3  you if you want to try to sway me either way, but I'm inclined

4  to deny it on this one.

5          MR. MAYE:  Just one comment, Your Honor.

6          With respect to F, the circumstances in which

7  Frontier considers it appropriate for a flight attendant to

8  discuss alleged sexual misconduct with a minor passenger and to

9  place a hand on or near the minor's genital area, plaintiffs

10 amended their complaint and they're not alleging that flight

11 attendant Warren placed his hand on A.D.'s crotch, so we think

12 that, at the very least, that should be excluded from

13 consideration.

14         THE COURT:  Well, but the way I read this is it's

15 more about the issue about the training related to the physical

16 contact and so -- or the conduct, and so I would be inclined to

17 allow some questioning on that issue because of that.  I

18 understand even though it might not be a direct allegation in

19 the complaint, I think it's relevant to the issues that they

20 raise as it relates to the training.

21         MS. MCLETCHIE:  Just to be clear, the allegations in

22 the Amended Complaint are that the flight attendant Warren

23 placed his hand near A.D.'s groin area, and that's what the

24 topic is on, not on placing it on the groin area, just to be

25 clear.

**8**

1          THE COURT:  All right.  And, again, I think with

2     that, I will allow -- I will deny the protective order as to

3     that topic and allow questioning as to that.  And, again, I

4     will trust that the parties will, you know, have the

5     appropriate questions and limit it to, you know, the issues and

6     not just rephrase question after question on the same topics.

7     But I do want to give you the chance to get into those

8     questions.

9          Topic Number 2 is the reason why Frontier did not

10    provide a manifest of passengers' names to the crew of Flight

11    2067 and the availability of such a manifest to members of

12    Frontier's flight operations center during Flight 2067.

13          Frontier argues that the plaintiffs are seeking this

14    to make the argument that, had the flight attendants checked

15    the manifest, they would have seen that Peter and A.D. shared a

16    last name.  Frontier argues that this is irrelevant because the

17    flight attendants were concerned about inappropriate behavior,

18    regardless of family relation.

19          Plaintiffs counter that this is relevant to whether

20    Frontier exacerbated the situation by not providing its

21    employees the ability to look at plaintiffs' surname.

22          Again I can tell you, on this one, I'm inclined to

23    deny the protective order.  I do think questioning on this will

24    be limited and it is relevant to their theory of the case.  But

25    again I'll hear from Frontier if you want to make any further

1   argument on that, knowing which way I'm leaning.

2          MR. MAYE:  Yes, Your Honor, just briefly.  It's not

3   clear to us the reason for Frontier not providing the manifest

4   is relevant to whether it was more likely than not that Warren

5   and Shupe were motivated by racial animus.  It appears to us

6   that any Frontier decision about whether to provide a manifest

7   to flight crews was an administrative decision and it has no

8   relevance to the issue of racial discrimination and putting

9   crews in a position where they are going to be more inclined to

10  commit racial discrimination.

11         THE COURT:  All right.

12         MS. MCLETCHIE:  To be clear, Your Honor, Frontier is

13  a defendant on the 1981 claim, Frontier Airlines itself, not

14  just the flight attendants.  Further, plaintiffs are seeking

15  punitive damages from Frontier Airlines, and so whether

16  Frontier Airlines -- whether there's a history, a pattern of

17  discrimination, a knowledge of a need to act to prevent

18  discrimination against, in this instance against this mixed

19  race family, is certainly relevant.

20         It would have been easy, for example -- there's

21  evidence in this case and certainly allegations in this case

22  that the flight crew did not think that the father and son

23  belonged together because they were of different races --

24         THE COURT:  So, Ms. McLetchie, I'm inclined to deny

25  it, and we'll allow you questioning to that as well.

1          MS. MCLETCHIE:  Thank you.

2          THE COURT:  All right.  Topic 3 was in the briefs,

3    but my understanding is it's no longer an issue and Frontier

4    withdrew its objections.  I hope that's the case because I

5    don't have anything on Topic 3.

6          MR. MAYE:  Our only concern, Your Honor, is the last

7    part, "any and all actions taken by Frontier related to the

8    subject matter of those documents, including the reasons for

9    such actions or inactions."  We're not clear what that pertains

10   to.  If it pertains to questions about pattern and practice,

11   failure to train, fostering an environment which encourages

12   discrimination, then we would object to that.

13         THE COURT:  All right.  Then I think that's more

14   appropriately handled with objections at the time of the

15   deposition.  And, specifically, if the question is unclear, if

16   it's vague, certainly those objections would be appropriate,

17   but I think as an issue related to the protective order, I

18   don't think that rises to the level of me granting the

19   protective order.  So you would be free to object at the time

20   of the deposition, but I think the topics are certainly

21   relevant and appropriate.

22         MS. MCLETCHIE:  And just to be clear, we do think

23   that they should provide a witness prepared to testify even on

24   the portion of this topic that they object to because whether a

25   defendant was aware of anti-discrimination laws and acted in

Case 2:19-cv-01322-KJD-DJA   Document 250   Filed 06/22/23   Page 11 of 71
*Transcribed by Digital Recording*   2:19-cv-1322-KJD-DJA   *June 7, 2023*

**11**

1  the fact of this awareness -- for example, we've explained that

2  the Department of Transportation, in January of 2017, I

3  believe, alerted airlines that they should take steps that when

4  they're executing their powers that are in furtherance of

5  safety and security that they do so -- that they be careful to

6  check themselves to be sure that they're not acting in bias, in

7  the exact way that we allege they've acted in this case.  And

8  so Frontier's response and actions in response to the DOT -- in

9  response to the DOT alert is certainly relevant to the 1981

10  claim, in particular the punitive damages.

11         THE COURT:  All right.  And I've ruled that you're

12  allowed to question on that, so...

13         MS. MCLETCHIE:  Thank you.

14         THE COURT:  All right.  The next topic -- and I

15  think you'll find a theme here as we go forward now with some

16  of these topics -- is not as simple.  That's Frontier's policy

17  against discrimination toward passengers.  And I can tell you

18  that the concern I have is the following language:  "Including

19  the number of times between March 28, 2014, and March 28, 2019,

20  that any employees were subjected to any such consequences as a

21  result of a finding that the employees have failed to follow

22  the policy.  In addition, the facts and circumstances that led

23  to any such consequences."

24         Frontier argues that the Court's already ruled that

25  unrelated complaints against Frontier are irrelevant.

**12**

1    Plaintiffs argue that the Court overlooked

2  plaintiffs' allegations that Frontier acts with reckless

3  indifference to the constitutionally-protected rights of all of

4  its passengers of mixed races, color, and different ethnicities

5  by turning a blind eye to acts of discrimination by its

6  employees and refusing to train or discipline its employees

7  concerning acts of discrimination.

8    I can tell you that I am inclined to grant the

9  protective order as it relates to the *other findings* and *other*

10  *acts*.  I know that the plaintiff disagrees with some of my

11  prior rulings as it relates to the discovery and some of the

12  other acts and other investigations and not allowing that in,

13  but I think this fits with those prior rulings that I have

14  found that that should be limited and not allowed to be looked

15  into during discovery.

16    But, Ms. McLetchie, I will hear from you on that

17  one, given that I'm inclined to grant that portion of the

18  protective order of that topic, and that is the March 28, 2014,

19  to March 28, 2019, *other investigations*.  So go ahead.

20    MS. MCLETCHIE:  Thank you, Your Honor.  And,

21  obviously, I'm new to this case, but I've studied the orders,

22  and my view is the previous orders were addressing prior

23  motions to compel and a prior motion for sanctions, and the

24  Court didn't hold that prior complaints were irrelevant; the

25  Court limited the number of -- the number of complaints -- the

Case 2:19-cv-01322-KJD-DJA  Document 250  Filed 06/22/23  Page 13 of 71
*Transcribed by Digital Recording  2:19-cv-1322-KJD-DJA  June 7, 2023*

**13**

1  Court limited it to the last five years, I believe, and to

2  domestic flights and allowed defendant to produce those in

3  redacted fashion.  The Court has limited that information

4  because it wasn't proportional, not because it wasn't relevant.

5  And, frankly, the Court's limitation with regard to the request

6  for production, in some of the orders, there's language that

7  plaintiffs can seek the information through the other means.

8  Well, here we are.  We're seeking the information through other

9  means.

10         And I want to point out that some of the Court's

11  prior -- that some of the Court's prior reliance, I think it's

12  worth explaining that the *Karrani* case on these issues is

13  different.  In the *Karrani* case, the question was whether the

14  flight attendant had engaged in prior discrimination.  It

15  wasn't a question of whether the corporate defendant should be

16  held liable under 1981 and whether the corporate defendant had

17  a history of reckless indifference to civil rights.  And here,

18  that is what this case is alleging with regard to Frontier.  So

19  the information isn't just relevant with regard to the specific

20  defendants, but we also have the issue where these complaints

21  don't list specific defendants' names.

22         The database, it's my understanding that information

23  is no longer available.  My understanding is we were allowed to

24  do another interrogatory but that -- the interrogatory response

25  was, "The complaints don't list the other defendants."  That

**14**

1   doesn't mean the other -- that the individual defendants

2   weren't involved, Your Honor; it means that the database

3   doesn't show their names.  And so certainly asking information

4   about these other claims is certainly relevant, in fact, could

5   be the only way that plaintiff gets access to this information.

6         Notably, the reliance -- the defendants' continued

7   reliance on the *Karrani* case is a little bit perplexing

8   because, in that case, it was a summary judgment case and the

9   plaintiff had had access, I think, to ten years of complaints

10  without the restriction with regard to the names of the

11  complainants and without regard to domestic versus

12  international flights.  So we're in a very different procedural

13  posture.  The Court determined, I think largely -- largely at

14  least initially, because of the third-party rights of the named

15  complainants, that that information should be limited, but it

16  has not specifically been before this Court whether we could

17  access -- we can ask information about complaints over the last

18  five years at a 30(b)(6) deposition, and it's my view we should

19  be able to more so because of the Court's prior rulings.

20         This case, obviously, defendants disagree and refute

21  the allegations.  Much of their motion to compel is focused on

22  the idea that, well, we deny this and defendant Warren says he

23  didn't do that.  That's not the question today.  The question

24  is, what are the allegations, and we have allegations of very

25  serious racial discrimination and that Frontier Airlines is

*Transcribed by Digital Recording* 2:19-cv-1322-KJD-DJA  *June 7, 2023*

**15**

1  responsible, that there are -- and we -- in discovery, we have

2  obtained complaints, albeit in redacted form, that show there

3  were two and a half complaints per week by passengers feeling

4  that they had suffered some form of racial discrimination.

5  That is significant.  We also have deposition testimony from

6  flight attendants showing that they did not get training

7  avoiding these issues.  These questions --

8       THE COURT:  So let me ask you, how do records of --

9  "any employees were subject to consequences as a result of a

10  finding that the employees had failed to follow the policy."

11  So how are the consequences of other employees on other flights

12  that they may have faced if failing to follow discrimination

13  policies, how are the consequences and the things that they

14  suffered from other unrelated investigations, how is that

15  relevant here again?

16       MS. MCLETCHIE:  Because whether Frontier Airlines

17  takes racial discrimination claims seriously is relevant to

18  whether it effectuated appropriate policies and training and

19  whether it should be liable for reprehensible conduct under the

20  punitive damages case law.

21       THE COURT:  So they're not taking action against

22  these employees after there are findings that show a pattern

23  and practice of Frontier just ignoring these things and --

24       MS. MCLETCHIE:  Correct.  And what we've unearthed

25  in discovery is that Frontier Airlines essentially has -- never

Case 2:19-cv-01322-KJD-DJA   Document 250   Filed 06/22/23   Page 16 of 71
Transcribed by Digital Recording   2:19-cv-1322-KJD-DJA   June 7, 2023

16

1  does a real investigation.  We have not been able -- they take

2  these complaints, but they don't -- from what we have been able

3  to unearth in discovery, they don't have a meaningful process

4  to investigate whether there is any validity to these claims

5  and Frontier Airlines does not take steps to avoid and prevent

6  discrimination.

7          THE COURT:  All right.  So, you know, I did limit

8  them in the -- you know, in the other requests, in the prior

9  hearings on discovery, and said that there were other ways that

10 they could obtain information.  You know, I mean, I -- so I

11 don't know -- I mean, I did rule that unrelated complaints were

12 irrelevant, but I also ruled that they would be able to get

13 into some of those issues through other discovery mechanisms.

14 I guess the question is, what would be wrong at a deposition

15 with your witness to just delve into this?  I mean...

16         MR. MAYE:  Your Honor, that ruling was before there

17 was extensive discovery on these prior incidents and before

18 Your Honor ruled that these were unrelated to the subject

19 incident.  That ruling was, of course, before Judge Dawson's

20 rulings, and this case -- excuse me -- this issue has been

21 thoroughly litigated by the parties.  And with respect to

22 Frontier, Judge Dawson ruled that "The Court agrees with the

23 Magistrate Judge that plaintiffs have not sufficiently stated

24 that the Frontier decision-makers were responsible for the

25 outcome on this particular flight.  The Court finds it would be

1   more reasonable for plaintiffs to inquire about previous

2   incidents of alleged racial discrimination by defendants Warren

3   and Shupe because they were the ones directly involved.

4   There's not enough of a basis alleging that it was Frontier as

5   a corporation that fostered an environment of racial animus or

6   that Frontier's practices or policies were a *but for* cause of

7   the injury."

8           Judge Dawson made clear that this case is not a

9   pattern and practice case against Frontier.  With respect to

10  prior incidents and using pattern and practice, the Court has

11  ruled that that may be relevant to the issue of the state of

12  mind of the actors involved, Shupe and Warren, but Shupe and

13  Warren were not involved in any of these prior incidents, so

14  there is absolutely no connection between the prior incidents

15  and this incident.  And this has been resolved by Judge

16  Dawson's ruling on the objections to the motions to compel, the

17  fourth and fifth motions to compel.

18          THE COURT:  And I guess, Ms. McLetchie, tell me

19  again why it's different now than when my prior ruling

20  precluded this and Judge Dawson upheld it.

21          MS. MCLETCHIE:  So with all due respect to my same

22  co-counsel, the prior orders were based on the showing in those

23  motions to compel, and I don't think and my co-counsel doesn't

24  think that we made it clear enough that we wanted this

25  information not just with regard to the state of mind of

Case 2:19-cv-01322-KJD-DJA   Document 250   Filed 06/22/23   Page 18 of 71
*Transcribed by Digital Recording*   2:19-cv-1322-KJD-DJA   *June 7, 2023*

**18**

1  specific human individual defendants but also with regard to

2  the 1981 claim against Frontier and the punitive damages

3  against Frontier.

4          Further, we have since also discovered that it's

5  unclear from the records which defendants were involved in

6  which incidents and whether anybody has ever been disciplined.

7  During depositions, that question came up, if anybody's ever

8  been disciplined for treating a passenger on a Frontier

9  Airlines flight in a racially discriminatory manner, and during

10 depositions, we were told over and over, "you'd have to ask

11 HR."  That's what you do during a 30(b)(6) deposition, you ask

12 the company.

13         So this -- I don't think the record was clear about

14 why we were seeking the information.  We're not just seeking it

15 because of the -- to figure out if the individual defendants

16 had ever been charged with racial discrimination by passengers.

17         And, by the way, I also think that there was some

18 confusion because the fact that it's not in their employee file

19 doesn't mean that there weren't complaints against them.  It

20 only actually could reflect that there were complaints against

21 them and Frontier Airlines chose not to take action, which

22 would actually be evidence of Frontier Airlines' responsibility

23 and culpability under the punitive damages reckless

24 indifference standard.  Both other complaints and against other

25 flight attendants and other flight staff, as well as against

**19**

1   these specific defendants, are ripe fodder for discovery and

2   they're very appropriate for a 30(b)(6) deposition, Your Honor.

3         THE COURT:  You know, in the context of the bigger

4   picture of Frontier's liability, you know, I don't specifically

5   remember the arguments we made at the last hearing, you know, I

6   didn't specifically go back and look at that transcript, but it

7   seems to me that when we talk about it in the context of

8   Frontier's potential liability and the way they handle these

9   and that being some sort of -- you know, creating this

10  atmosphere or, you know, where the discrimination is allowed to

11  go on, it starts having, at least in my mind, some relevance.

12        What's your response to that, especially when we're

13  talking now in a limited 30(b)(6) deposition where it's not

14  going to be, you know, your client having to get, you know,

15  thousands of records, go through, you know, hundreds of

16  thousands of pages of stuff to look for this stuff?  It's

17  something I would assume they could prepare fairly easily on.

18        MR. MAYE:  Your Honor, this issue has been

19  explicitly rejected by Your Honor and --

20        THE COURT:  Did I reject it -- remind me, did I

21  reject it in the context of Frontier's potential liability and

22  how they handled these issues?

23        MR. MAYE:  That's correct.  And Your Honor and Judge

24  Dawson ruled that, to the extent pattern and practice could

25  potentially be relevant, it would be limited to plaintiffs

**20**

1   establishing a connection between the subject incident and the

2   prior incident.  And because plaintiffs have not established a

3   connection, then those prior incidents are irrelevant and not

4   proportional to the needs of the case.

5            THE COURT:  All right.  I'm going to hold my

6   decision on Topic 4 for now.  I intend to decide before we

7   leave today, but I may take a quick break on that one.  I want

8   to go to Topic 5.

9            MS. MCLETCHIE:  Your Honor, may I just read from the

10  *Karrani* case, a snipit from that case that I know the Court

11  relied on previously?

12           THE COURT:  Not now.  I may want you to give that to

13  me when I go back, but I want to --

14           MS. MCLETCHIE:  Okay.

15           THE COURT:  All right.  Topic 5 is the contents of

16  Frontier's flight attendants manual and training materials that

17  mention any of the following subjects:  H, the prohibitions of

18  flight attendants all congregating in one area of the aircraft

19  during flight or allowing all flight attendants to become

20  focused on a single issue during flight; and, I, the

21  prohibition against more than one flight attendant being in the

22  cockpit at the same time.

23           Frontier argues that the plaintiffs are trying to

24  show that Frontier's flight attendants were negligent by

25  violating these policies on the date in question but plaintiffs

Transcribed by Digital Recording    2:19-cv-1322-KJD-DJA    June 7, 2023

1  have not alleged negligence and discrimination can only be

2  intentional.

3          Plaintiffs respond that this is relevant to show

4  that the employees were not following protocol and were

5  violating other protocols in their zeal to have plaintiffs

6  turned over to the police.

7          I can tell you, Counsel, Mr. Maye, that I'm inclined

8  on this one -- I do think it's relevant for they weren't

9  following protocols or violating other protocols in their zeal

10 to, you know, have them turned over to the police.  I'm not

11 saying I believe those facts, but I think it's relevant that

12 they be allowed to ask those questions.  So they're not saying

13 it's to show negligence; they're saying it's to show that they

14 were not following protocols and violating other protocols as a

15 result of their zeal as it relates to this issue, and I think

16 that's probably relevant to their theory as a whole, but I'm

17 all ears if you want to convince me otherwise.

18         MR. MAYE:  Our only comment would be, Your Honor,

19 that whether they were congregating in the cockpit doesn't make

20 it more likely than not that Warren and Shupe were motivated by

21 racial animus.

22         THE COURT:  But I think if they're violating

23 policies, an argument can be made that they violate policies

24 when it suits them and they don't -- you know, they follow them

25 when it suits them.  So, I mean, I can see the relevance of

1    that, even if it's for impeachment grounds, and so I -- I'm

2    going to deny the protective order as it relates to that as

3    well.

4           And so you'll be able to ask questions about that as

5    well.

6           Topic 6 is the text of the *Relationships With*

7    *Customers* subsection of the *Competition and Fair Dealing*

8    section of Frontier's Code of Ethics contained within its

9    employee handbook produced in this action and the number of

10   times between March 28, 2014, and March 28, 2019, that any

11   employees were subjected to any such consequences as a result

12   of a finding that the employees have failed to follow the

13   *Relationships With Customer*s subsection, in addition, the facts

14   and circumstances that led to any consequences.

15          Frontier again argues that the Court already ruled

16   on unrelated complaints and that they are irrelevant.

17          Plaintiffs argue that this is relevant to Frontier's

18   corporate condemnation of discrimination.

19          Ms. McLetchie, I presume the arguments in this topic

20   are similar to the arguments in Topic 4, meaning that the Court

21   misconstrued, or whatever happened at the last hearing, the

22   Court didn't understand the relevance argument and it again

23   goes to the Frontier pattern and practice of not addressing

24   things and creating this culture of allowing discrimination to

25   happen and the things and that's why it's relevant?

*Transcribed by Digital Recording   2:19-cv-1322-KJD-DJA   June 7, 2023*

1    MS. MCLETCHIE:  That's correct.  And it's also

2 relevant in a similar way to the congregating in the cockpit

3 and the other areas of the plane is relevant, because we've

4 alleged that Warren inappropriately misidentified himself as

5 Kevin, which is a violation of policy, and that they generally

6 mistreated and treated our clients differently because of race.

7    THE COURT:  Right.  So I think on this one as

8 well -- and we're going to have one more -- I'm likely to just

9 take these three under advisement for a few minutes and then

10 come back and rule on those.

11    But anything that you want to say on that?

12    MR. MAYE:  Really quickly, your Honor, I apologize,

13 going back to Topic 5, the last sentence in H, "Allowing all

14 flight attendants to become focused on a single issue during

15 flight," we believe that's very argumentative and it's not

16 clear what that means.  You know, flight attendants are not

17 trained to only focus on one issue, and I don't know how that's

18 relevant to the case, and I don't think there's any evidence

19 that the flight attendants were focused on one issue during the

20 flight.

21    THE COURT:  Well, again, I think they're -- I'm

22 going to allow them to inquire into that.

23    MR. MAYE:  Okay.

24    THE COURT:  All right.  Topic 6 I will take under

25 consideration, like I have with Topic 4, and it's likely going

Case 2:19-cv-01322-KJD-DJA   Document 250   Filed 06/22/23   Page 24 of 71
Transcribed by Digital Recording   2:19-cv-1322-KJD-DJA   June 7, 2023

**24**

1 to be the same with Topic 8, but we'll get there after we do

2 Topic 7, which is why no investigation or disciplinary action

3 against defendant Scott Warren resulted from Peter DelVecchia's

4 2019 complaints -- or complaint to Frontier that Warren had

5 falsely identified himself as Kevin, struck Peter DelVecchia on

6 the head, and physically took his child away from him during

7 the flight.

8 　　　　The defense, Frontier, argues this is argumentative

9 and harassing and Warren denies the allegations that he

10 identified himself as Kevin.

11 　　　　Plaintiffs argue that this is relevant to their

12 allegations, regardless of whether or not Warren denies them.

13 　　　　Again, I think for discovery purposes this is

14 relevant even if Warren denies it, and they can inquire as to

15 why there was no investigation or disciplinary action.  And I

16 think a 30(b)(6) witness can answer that.  But I will, before I

17 finalize that ruling, hear from counsel.

18 　　　　MR. MAYE:  Just quickly, your Honor, our position is

19 that there was an investigation.  So we're not opposed to their

20 asking about what investigation was conducted and what was the

21 result of that investigation, but to include a topic of why

22 there wasn't an investigation, why Mr. Warren wasn't

23 disciplined --

24 　　　　THE COURT:  So they asked why wasn't there an

25 investigation, and your witness says, there was an

Case 2:19-cv-01322-KJD-DJA   Document 250   Filed 06/22/23   Page 25 of 71
Transcribed by Digital Recording   2:19-cv-1322-KJD-DJA   June 7, 2023

25

1   investigation and here's what the investigation was and here's

2   what the investigation led to and here's what discipline or no

3   discipline was done.  That should be no more than ten minutes,

4   I would think, so I'm going to deny the protective order as it

5   relates to that.

6            8 again is similar to 6 and to 4 in the sense that

7   it talks about the years of 2014 to 2019, but let me read into

8   the record what Topic 8 is.  "The text of the *Compliance With*

9   *Laws and Regulations* section of Frontier's Code of Ethics

10  contained within its employee handbook produced in this action

11  and the number of times between March 28, 2014, and March 28,

12  2019, that any employees were subjected to any such

13  consequences as a result of a finding that the employees had

14  failed to follow the compliance with the *Laws and Regulations*

15  section in circumstances where the laws and regulations

16  involved were those that apply to discrimination against

17  passengers on the basis of race or ethnicity.  In addition, the

18  facts and circumstances that led to any such consequences."

19           Again Frontier argues the compliance with *Laws and*

20  *Regulations* section of their Code of Ethics is irrelevant and

21  not proportional and that the Court has already ruled that the

22  unrelated complaints against Frontier are irrelevant.

23           Plaintiffs argue that this is relevant to their

24  allegations that Frontier does not enforce its policies of

25  requiring employees to comply with applicable laws and

*Transcribed by Digital Recording   2:19-cv-1322-KJD-DJA   June 7, 2023*

**26**

1  regulations.

2          Again, Ms. McLetchie, is this the same substance of

3  argument as it relates to Topic 6 and Topic 4, that is, the

4  Court's misapprehension of the reason you needed those?

5          MS. MCLETCHIE:  Yes, Your Honor.

6          THE COURT:  All right.  So I will take that one

7  under advisement as well.  And I think those are the only three

8  that have similar issues.

9          So let's then go to 10.  Instances between March 28,

10  2014, and March 28, 2019, in which any employee or agent of

11  Frontier is alleged to have used the terms -- and it's the

12  proverbial N word -- quote, you people and your, quote -- I'm

13  sorry -- and/or, quote, your kind, end quote, in communications

14  with or about any non-White passenger of Frontier and the

15  details of Frontier's investigations of such occurrences and of

16  any discipline imposed on the employment -- on the employees or

17  agents.

18          Frontier argues that this is argumentative and

19  harassing and the Court has already ruled that unrelated

20  complaints against Frontier are irrelevant.

21          Plaintiff argues that although there are no

22  allegations that the employees at issue here used this

23  language, this is relevant to Frontier's indifference toward

24  the civil rights of passengers of color.

25          Ms. McLetchie, I can tell you I'm inclined to grant

 1   this protective order request because there's no allegations

 2   this language was used in this case, and I'm not sure that

 3   other instances of the language being used are relevant.  And I

 4   guess I understand your argument is that, if there are

 5   occurrences and Frontier doesn't do anything, that shows

 6   indifference?

 7          MS. MCLETCHIE:  If they don't take steps even when

 8   the most egregious type of conduct you can imagine is engaged

 9   in by a flight attendant, certainly that is very relevant to

10   our pattern and practice claims and our punitive damages claims

11   against Frontier Airlines.  Here, we don't need -- in order to

12   show punitive damages, we don't need to show that there's a

13   history of exactly the same kind of racial discrimination that

14   occurred here.  We need to show that Frontier Airlines acted

15   with reckless disregard for passengers' civil rights.  And

16   certainly if there are multiple instances in which this

17   occurred and Frontier Airlines did nothing, then certainly

18   that's relevant.  If they find this to be offensive and this

19   has never happened, as you said with a prior topic, it can be a

20   very short part of the deposition and they can say, there has

21   never been such a complaint.  But if Frontier Airlines even --

22          THE COURT:  But isn't that so different than this --

23   I mean, the allegations in your case are completely different

24   than that.  I mean, at some stage, I mean, is there not a

25   cutoff for how far you can get into this stuff?  I mean, every

Case 2:19-cv-01322-KJD-DJA   Document 250   Filed 06/22/23   Page 28 of 71
Transcribed by Digital Recording  2:19-cv-1322-KJD-DJA   June 7, 2023

**28**

1   remark, everything said, you know, is going to be discoverable

2   because it shows that Frontier, if they're not addressing every

3   single one, is a pattern and practice?

4            MS. MCLETCHIE:  They're not addressing any single

5   one, is what we believe to have occurred, based on our

6   discovery.

7            THE COURT:  So what in discovery do you have that

8   that sort of -- that that sort of language is occurring

9   regularly on Frontier flights and they're just ignoring it?

10           MS. MCLETCHIE:  We have several complaints with that

11  kind of language in discovery.  And even though in -- to be

12  clear, there are different actors and there are actors that

13  were employed by Frontier Airlines that are not named

14  defendants, Your Honor.  Their conduct, the other people on the

15  flight, the other flight crew, their conduct is relevant to the

16  claims against Frontier Airlines.

17           And I think defendant Frontier Airlines makes too

18  much of the fact that there are specific types of allegations

19  against the Black flight attendant, defendant Warren, and the

20  fact that he didn't like the fact that this was a -- this was a

21  White man with a Black child, but there are other people that

22  felt uncomfortable with A.D. because of how dark-skinned he

23  was.  They assumed he must speak a different language.  They

24  assumed -- they made all kinds of assumptions based on race.

25           And so if Frontier Airlines took these racial

1  discrimination complaints seriously and engaged in basic

2  training of their employees to not make assumptions based on

3  race and to avoid discriminatory conduct against Black people

4  and against mixed race families, these -- it's our allegation

5  that this type of conduct could be avoided and that punitive

6  damages, if we show this pattern and practice, are appropriate.

7          Whether a fact-finder thinks it's -- these specific

8  instances are similar enough to warrant punitive damages is for

9  the fact-finder, not -- in my view, the Court doesn't need to

10 say -- doesn't need to say, this is too dissimilar from the

11 specific allegations and just because they didn't use -- you

12 don't allege that the N word was used, other complaints against

13 either the actors at issue in this complaint or other Frontier

14 flight crew are relevant, I just don't think that that's

15 appropriate, Your Honor.  And, again, if they don't think this

16 occurred and they think this is argumentative and offensive, it

17 should be a very short portion of the deposition.  And they

18 can't show that it's somehow burdensome, harassing, and not

19 proportional if they don't think this occurred.

20         THE COURT:  Well, and they're not saying it's not

21 proportional; they're just saying it's argumentative,

22 harassing, and what else?

23         MR. MAYE:  Your Honor, Judge Dawson has thoroughly

24 rejected this approach.  He has rejected the pattern and

25 practice of Frontier.  Judge Dawson determined it's

*Transcribed by Digital Recording   2:19-cv-1322-KJD-DJA   June 7, 2023*

1  speculative, so Judge Dawson said, no, you can't go down this

2  path; there has to be a connection to this case.

3         And contrary to counsel's representation, there's

4  been no evidence that the N word was used by any flight

5  attendant in any of the prior complaints.  From my

6  recollection, the N word was used once by a passenger against

7  another passenger.  So this is way out of bounds.  It has no

8  connection to our case.

9         And, again, this is not pattern and practice.  Prior

10  complaints are only relevant, potentially relevant, to show

11  possibly the mindset of the same actor that was involved in the

12  subject incident and the prior incident.  There was no evidence

13  that any of the flight attendants here or the pilots were

14  involved in any prior incidents.  If we go down this path,

15  it's, again, trial within trial --

16         THE COURT:  All right.  I'm going to grant the

17  protective order as it relates to that.  I do think we are now

18  starting to get down rabbit holes that are just too tenuous.  I

19  understand the argument that it's a pattern and practice, but

20  that doesn't -- that's not a way to encompass everything.  So I

21  do think that one gets too far afield, and so I will use my

22  discretion and grant the protective order as it relates to

23  questions related to Topic 10.

24         Topic 13, Frontier's employee handbook *Standard of*

25  *Conduct* Section 4, including, without limitation, policies on

Case 2:19-cv-01322-KJD-DJA  Document 250  Filed 06/22/23  Page 31 of 71
Transcribed by Digital Recording  2:19-cv-1322-KJD-DJA  June 7, 2023

31

1    physical violence and dishonesty, falsification, and

2    misrepresentation.

3         Frontier argues this is overbroad and vague,

4    harassing, and argumentative, and the Court has already ruled

5    that unrelated complaints to Frontier are irrelevant.

6         Plaintiffs argue that this is relevant to the

7    specific portions of the handbook that Warren violated.

8         I will tell you, on the defense side, that I'm

9    inclined to deny this one.  I do think that this has discovery

10   relevance to their theory regarding Warren.  You know, whether

11   it's overbroad or vague, I don't think this is the appropriate

12   time for me to use a protective order on that.  There are other

13   objections that can be made.  And I don't think it's so

14   harassing and argumentative that it's a -- should be protected.

15   And, again, I think this one falls outside of the unrelated

16   complaints and so I think it goes directly to Warren, and

17   because it goes to the plaintiffs' theory regarding Warren, I'm

18   inclined to deny that, but I'll hear from counsel.

19        MR. MAYE:  Well, Your Honor, the allegation is that

20   flight attendant Warren violently struck Mr. DelVecchia twice

21   in the back of the head, but the record reveals that not one

22   person observed that, not the passenger seated right next to

23   Mr. DelVecchia, behind Mr. DelVecchia, across -- well, beyond

24   that, Your Honor...

25        THE COURT:  I mean, that will be for the

**32**

 1   trier-of-fact.

 2             MR. MAYE:  Okay.

 3             THE COURT:  We're talking about what's discoverable

 4   and what questions.

 5             MR. MAYE:  Okay.  With respect to dishonesty,

 6   falsification, and misrepresentation, permitting that

 7   discovery, you know, suggests that the crew is lying and, you

 8   know --

 9             THE COURT:  It may suggest it, but it's not a

10   finding of it.  They're going to have to lay the foundation,

11   get that evidence in at trial, and Judge Dawson may agree with

12   you at trial that it's not coming in.  But for purposes of

13   discovery, I'm inclined to allow it.  But --

14             MR. MAYE:  Just a question, Your Honor.  Will they

15   be allowed to ask about the content and how it's presented to

16   the subject crew or --

17             THE COURT:  Well, I think they're allowed to ask

18   some questions about the content and how Frontier, you know,

19   conveys that to the employees and what they talk about.  I

20   mean, they should be allowed some questions about how that

21   interacts with the training of the employees.  That's sort of

22   the reason they would be asking the questions to begin with.

23             And, again, I'm hoping that the parties -- you know,

24   you're not going to take an hour and a half on that topic

25   during the -- you know?  So I'm assuming the parties are going

Case 2:19-cv-01322-KJD-DJA   Document 250   Filed 06/22/23   Page 33 of 71
Transcribed by Digital Recording   2:19-cv-1322-KJD-DJA   June 7, 2023

33

1 to be working in good faith to ask the questions and then move

2 on to other topics.

3 Number 17, why no investigation was conducted or

4 discipline imposed relating to Captain Rex Shupe's and First

5 Officer Mullin's failure to follow written procedures for a

6 Threat Level 2 on Flight 2067, including, without limitation,

7 failing to lock down the cockpit, failing to notify air traffic

8 control, failing to consider diversion to a different airport,

9 and failing to prepare for interception by Department of

10 Defense fighters.

11 Frontier argues this is irrelevant because whether

12 Frontier followed the Threat Level 2 procedures has nothing to

13 do with whether it intentionally discriminated against

14 plaintiffs.  They argue that this is aimed at establishing

15 negligence which plaintiffs have not alleged.

16 Plaintiffs argue this is relevant to their assertion

17 that Frontier condones violations of written procedures.

18 Again I'm inclined to deny this one because I think

19 plaintiff has created enough relevance within the theory and

20 context of their allegations to make this discoverable.  But,

21 again, I'm inclined to hear from counsel as it relates to this

22 topic.

23 MR. MAYE:  Again, Your Honor, our position is,

24 whether or not Captain Shupe asked for fighter jets to escort

25 the aircraft doesn't have any bearing on his mindset and

Case 2:19-cv-01322-KJD-DJA   Document 250   Filed 06/22/23   Page 34 of 71
Transcribed by Digital Recording   2:19-cv-1322-KJD-DJA   June 7, 2023

34

1   whether or not he was motivated by racial animus.

2           Also, a point, Your Honor, Captain Shupe did not

3   know the races of the plaintiffs, so our position is it is not

4   possible for any of this material and this content to be

5   relevant to the issue of plaintiffs' 1981 claim against Captain

6   Shupe.

7           THE COURT:  Well, and so maybe a quick answer to it,

8   the reason there wasn't an investigation, is because we're not

9   going to get the Department of Defense jets out to escort a jet

10  under these circumstances, but, again, I think it is something

11  that they should be allowed to inquire into with this witness,

12  and so I'll deny the protective order as to that and allow the

13  inquiry into that topic.

14          Topic 18, why no investigation was conducted or

15  discipline imposed relating to Captain Rex Shupe's and First

16  Officer Mullin's failure to follow written procedures on Flight

17  2067 requiring that no more than one flight attendant be

18  permitted in the cockpit at any one time.

19          Frontier argues this is irrelevant because whether

20  the Captain and First Officer fail to follow written procedures

21  on this issue has nothing to do with whether Frontier

22  intentionally discriminated against plaintiffs.  This is aimed

23  at establishing negligence, again, which plaintiff has not

24  alleged.

25          Plaintiff argues that this is relevant to their

**35**

1    assertion that Frontier condones violations of written

2    procedures.

3           You know, again, to quote Bob Dylan, you don't have

4    to be a weatherman to see which way the wind blows.  And this,

5    again, I understand your arguments, but I'm inclined to allow

6    them to get into this, again, because it does fit into their

7    theory that employees didn't follow procedures and that's why

8    it led to this whole incident in the first place.  So I think

9    they're allowed some limited inquiry, but I'll let you make a

10   further record if you like.

11          All right.  I'll deny the protective order as it

12   relates to Topic 18 and, again, allow questioning as it relates

13   to that.

14          Topic 27, plaintiff reserves the right to inquire

15   into the content of any and all documents produced as of the

16   date of the deposition by Frontier.  Without limiting the

17   foregoing, plaintiffs intend to inquire into the content of all

18   documents referenced in the list of topics of this notice, as

19   well as those listed in Exhibit A.  And Exhibit A references

20   the unrelated discrimination complaints against Frontier.

21          Frontier argues that this is unbounded and overbroad

22   and, to the extent it references unrelated passenger

23   complaints, the Court has already found that these are

24   irrelevant.

25          Plaintiffs argue that the defendants are routinely

Case 2:19-cv-01322-KJD-DJA Document 250 Filed 06/22/23 Page 36 of 71
Transcribed by Digital Recording 2:19-cv-1322-KJD-DJA June 7, 2023

36

1  asked questions about documents that they produced in

2  discovery.  Plaintiffs are willing to provide a list of

3  questions ahead of the deposition so that Frontier can

4  designate a witness with knowledge about the documents that

5  plaintiff will address.

6          So, Ms. McLetchie, I'm inclined to deny this.  If

7  you provide a list of those questions, and as long as those

8  questions are not irrelevant and are proportional, I'm inclined

9  to allow it.  Are you proposing that you provide a list of

10  those questions to Frontier?

11          MS. MCLETCHIE:  We would be happy to provide a list

12  of those questions to Frontier in advance of the deposition,

13  Your Honor.

14          THE COURT:  My only concern is that will we be back

15  here in three weeks with an objection to the list of those

16  questions and...

17          MS. MCLETCHIE:  We hope not.  And we will certainly

18  engage in meaningful meet and confer efforts.

19          THE COURT:  Well, so -- and I would say this:  I

20  would hope, by the time we're done here today, you'll have an

21  idea of what the Court's position is on what you're allowed and

22  not allowed to do.  And once I make a ruling here in a few

23  minutes on whether I allow the other complaints or not, if I

24  decide that we don't, then, obviously, this would be limited by

25  those complaints.  And so to the extent I say, you don't get to

1  go into those things and I'm granting the protective order,

2  that would limit this, but you would still be allowed to ask

3  the other questions.

4          MS. MCLETCHIE:  Understood.

5          THE COURT:  Okay?  Understood, Counsel?

6          MR. MAYE:  Yes, Your Honor.

7          THE COURT:  All right.  And, again, I'll get back to

8  those other here in a minute.  We're getting there.

9          Topic 30, the details of investigations conducted by

10 Frontier concerning the human trafficking incidence reports --

11 I'm sorry -- concerning the human trafficking incident reports

12 produced by Frontier to plaintiffs up to the date of the

13 deposition.

14          Frontier argues that the Court has already ruled

15 that the unrelated reports of trafficking are irrelevant.

16          Plaintiffs argue that they're relevant to Frontier

17 condoning accusations of human trafficking without follow-up.

18          It seems to me this topic is similar to the other

19 issues, that is, unrelated investigations.  Ms. McLetchie, is

20 that -- am I reading that correctly?

21          MS. MCLETCHIE:  I would agree, but I would also

22 point out that certainly the facts and circumstances regarding

23 other human -- other instances in which Frontier believed that

24 there might be human trafficking certainly can show that this

25 case was different and that there is -- I want to be clear.

Case 2:19-cv-01322-KJD-DJA   Document 250   Filed 06/22/23   Page 38 of 71
Transcribed by Digital Recording 2:19-CV-1322-KJD-DJA  June 7, 2023

38

 1  There were flight attendants in this case that thought that

 2  there was something -- there's evidence that the flight

 3  attendants in this case thought something was awry and that

 4  they were concerned about what was going on here because of the

 5  different races and they thought there might be sex

 6  trafficking.  Certainly looking at other cases in which there

 7  were potential complaints about sex trafficking to see if

 8  there's a pattern and practice of other mixed race families --

 9  I know that there's a big news report about a similar incident

10  with a Black 21-year-old girl and a five-year-old -- a

11  five-year-old African-American child that was similar to this

12  case.  Certainly that's relevant to the punitive damages

13  against Frontier.

14          But also, if the other facts concerning sex

15  trafficking were very, very different from this case, it also

16  goes to show that there was racial -- there was racial animus

17  and discrimination here, Your Honor.

18          THE COURT:  All right.  Counsel?

19          MR. MAYE:  Your Honor, I thought I heard counsel say

20  that there's evidence that the flight attendants were concerned

21  because of the different races of the plaintiffs.  I could have

22  misheard her, but there is absolutely no evidence whatsoever

23  that that was the case.  This topic is just like the other

24  topics in which Your Honor and Judge Dawson ruled that prior

25  incidents have no connection to this case, and to rule that

1  they can ask a 30(b)(6) about the prior incidents would

2  completely unravel Judge Dawson's ruling that the prior

3  incidents are not relevant, they're not proportional.  And our

4  position is, this is the law of the case and 30(b)(6) witnesses

5  cannot be asked about the prior incidents about Frontier

6  training, investigations, why people aren't disciplined because

7  of, you know, the allegations of the prior incidents.  This has

8  all been litigated and resolved.  That's our position, and we

9  hope Your Honor agrees with us.

10  THE COURT:  Okay.  So this, then, does -- and I hear

11  what Ms. McLetchie is saying, that it's the human trafficking

12  component and it may make this a little different than the

13  other ones, but generally, it's the same because it has to do

14  with other investigations.  And so I'm going to hold off on

15  that because I think it fits into the other three.  So now we

16  have a fourth.

17  And as I look at Topic 31, we may have a fifth

18  because that is the details of disciplinary actions against any

19  Frontier employee and/or additional training provided to any

20  Frontier employees relating to the subject matter of human

21  trafficking incident reports produced by Frontier to plaintiff

22  up to the date of the deposition.

23  Frontier again argues that the Court's already ruled

24  on the unrelated reports and that they are irrelevant.

25  Plaintiffs argue it's relevant to Frontier condoning

Case 2:19-cv-01322-KJD-DJA  Document 250  Filed 06/22/23  Page 40 of 71
Transcribed by Digital Recording  2:19-cv-1322-KJD-DJA  June 7, 2023

40

1   accusations of human trafficking without follow-up.

2           Again, Ms. McLetchie, I think this falls into the

3   same category, certainly, as 30.  It has to do with human

4   trafficking and the other incidents.  I assume you have the

5   same arguments why it's relevant and I should allow that?

6           MS. MCLETCHIE:  Yes, Your Honor.

7           THE COURT:  And, defense, I assume it's the same as

8   well?

9           MR. MAYE:  Yes, Your Honor.

10          THE COURT:  So I will take 31 as well under

11  advisement here and come back in a few minutes.

12          And I think 32 fits into that as well.  Am I reading

13  that correctly?

14          MR. MAYE:  That's -- you're right.  You're right,

15  Your Honor.  I think 32, 33, 34, 35, 36, 37, 38...  I think

16  they're all --

17          THE COURT:  Well, I may have some questions on

18  those, so let's go one by one.

19          So 32, you agree, Ms. McLetchie, given the Court's

20  ruling and taking under advisement other topics that seem to be

21  similar to these issues that this is similar enough, because it

22  relates to the unrelated investigations?

23          MS. MCLETCHIE:  Yes.  Sorry.

24          THE COURT:  And it looks like 34 is -- 33 and 34 are

25  as well.  So I'm just trying to -- you know, if we get through

1  these and I'm going to be taking these under advisement, I want

2  to just get them all together so that I can do that, we can

3  take care of the rest.  Because I don't have questions on 34

4  either, and that appears to be *other complaints*.

5          MS. MCLETCHIE:  Yes.

6          THE COURT:  All right.  So 35, though, let me...

7  Right.  So let me -- 35, I do have a question, so let me read

8  that into the record and go with that.  So Topic 35 is the

9  details of any instructions that any person in Frontier's

10  management has given to any person assigned to Frontier's

11  customer relations department, regardless of whether the

12  recipient was in a managerial position or not managerial

13  position and including, without limit, any of the customer

14  relation employees working on the Denver team of customer

15  relations and about how the recipient or the employees working

16  under the recipient should respond to complaints alleging

17  racial discrimination, ethnic discrimination, or other forms of

18  discrimination and/or about how such person should code,

19  classify, or index complaints that contain allegations of

20  discrimination.

21          Again, Frontier argues that the Court's already

22  ruled on the unrelated complaints and that they are irrelevant.

23          Plaintiffs argue they're relevant to the details of

24  the special panel that Frontier has established in its

25  corporate office to receive and bury complaints of

1  discrimination.

2           And so my question would be, are there allegations

3  that Frontier's management improperly responded, coded, or

4  classified complaints related to this incident, or are you

5  seeking a lot of other incidents?  And if that's the case, then

6  it probably falls under this category of topics that talk about

7  other investigations that are the big issue here today.

8           MS. MCLETCHIE:  Both, Your Honor.  And I do want to

9  point out, both regard -- with regard to 35 and 36, I think

10  they both highlight why snowballing a prior discovery order on

11  prior specific discovery of unredacted passenger complaints, I

12  think that's exactly -- I think this shows exactly why that's

13  problematic.

14           Here, for example, we discovered that there's this

15  team in Denver that handles all complaints about racial

16  discrimination and that, essentially -- we want to ask more

17  questions about things that we have been able to discover.

18  Certainly the Court did not say any of this information -- none

19  of this information was irrelevant.  The Court allowed us to

20  get some complaints.  The Court allowed us to do discovery on

21  issues regarding complaints of this -- in this case and other

22  complaints.

23           In the process of doing that discovery, which

24  usually happens before a 30(b)(6) deposition, we want to know,

25  what are these templates that were -- for example, in Number

1  36, not to skip ahead, but that were testified to?  We want to

2  understand more about the evidence that we have gathered so

3  far.

4          But I also want to be clear, Your Honor, and that's

5  usually how discovery goes, you get information through written

6  discovery and through witness depositions and then you do the

7  30(b)(6) deposition, but I also want to be clear.  I've heard a

8  couple of times that we don't have evidence, we haven't proven

9  or established.  We don't need evidence to get evidence.  We

10  have allegations.  But we certainly have started to gather

11  evidence and information through the process of discovery that

12  then leads to appropriate 30(b)(6) topics, which I think many

13  of these are appropriate 30(b)(6) topics.  And I'm assuming

14  that we'll have some general discussion at the end about

15  whether this -- the Document 232, the last order on all of the

16  prior discovery, whether it precludes us from ever getting

17  other, for lack of a better word, pattern and practice or

18  complaint information, and I don't think it does, Your Honor.

19          MR. MAYE:  Your Honor, again, this was addressed by

20  Judge Dawson, and there's a limit.  Your Honor ruled that the

21  prior incidents were -- or you and Judge Dawson determined that

22  the prior ruling, I think Docket 83, allowing for the

23  production of prior incidents, was collaterally relevant, and

24  since we produced thousands of pages of these -- pertaining to

25  these occurrences, Your Honor and Judge Dawson determined that

Case 2:19-cv-01322-KJD-DJA   Document 250   Filed 06/22/23   Page 44 of 71
Transcribed by Digital Recording    2:19-cv-1322-KJD-DJA   June 7, 2023

44

1  plaintiffs have not established a connection between the prior

2  incidents and the subject case; therefore, no further discovery

3  is permitted.

4         Judge Dawson said that, "the information plaintiffs

5  seek to compel lacks the substantive connection to their

6  individual case."  Their assertion that the connection is that

7  the evidence will show a pattern and practice is speculative.

8  Therefore, Judge Dawson ruled, no more discovery on this stuff.

9  It's established -- or they have failed to establish a

10  connection; therefore, this stuff is not relevant, not

11  proportional.

12         THE COURT:  All right.  So I think 36 -- I do think

13  37 falls under this category, and so I'm going to -- I don't

14  need to hear any other argument on 37 either.  I think that

15  fits into the category of taking that under advisement.  And

16  I'm going to take 35 and 36 under advisement because -- well,

17  and I'll rule on those in a minute.  So that leaves us with 38

18  and 39.

19         All right.  So Topic 38, details of the destruction

20  in May of 2020 of the database that contained crew member

21  assignments for past flights or the rendering of that database

22  as no longer searchable.

23         Again Frontier argues this is unrelated complaints

24  and they are irrelevant for the reasons that they've outlined

25  at length here today.

Case 2:19-cv-01322-KJD-DJA  Document 250  Filed 06/22/23  Page 45 of 71
Transcribed by Digital Recording  2:19-cv-1322-KJD-DJA  June 7, 2023

45

1    Plaintiffs seek the details of the spoliation --

2    Frontier's spoliation of a critical database that would

3    identify the flight attendants and pilots who were working on

4    the flights on which the 338 discrimination complaints arose.

5    So, again, Ms. McLetchie, why -- on this one, why

6    wouldn't -- what is it about this request that doesn't -- or

7    that is different than the other ones talking about other

8    complaints?

9    MS. MCLETCHIE:  This is different because they --

10   essentially Frontier is making the circular argument that there

11   was no bad action taken by even any of the crew members that

12   were involved in this case because it's not in their employee

13   files.  But that's not the real question.  The question in this

14   case is whether there were complaints against them and Frontier

15   failed to take action such that -- or failed to even adequately

16   investigate such that it would be in their files.  And

17   certainly I think we should be able to probe further into the

18   facts surrounding the destruction of the database.  It

19   certainly would have allowed us to tie information regarding

20   complaints to the specific crew members in this case, and so

21   information about their failure to preserve this database in

22   the middle of -- and its destruction in the middle of this case

23   I certainly think is relevant.

24   Even besides the pattern and practice, it's relevant

25   to whether the actual crew members, the named and unnamed crew

1  members, the ones that are named defendants and the ones that

2  aren't, whether they were personally involved in other

3  complaints.  We can't -- we cannot prove that because of the

4  destruction of this database.

5         THE COURT:  What about their personnel files?

6         MS. MCLETCHIE:  This is -- this is the circular

7  issue, Your Honor.  They say, "Look, they must not have been

8  involved.  It wasn't in their personnel file."  If they didn't

9  take action against them or they didn't even investigate, if

10 instead -- and this is why we want to get at information

11 concerning how these complaints are investigated, right,

12 whether -- if Frontier never takes action and never even puts

13 it in someone's personnel file, that is certainly also relevant

14 to our claims against Frontier for punitive damages.

15        So certainly information regarding the destruction

16 of this database is, I think, really central to our claims, and

17 it's not just about other complaints regarding other crew

18 members.

19        THE COURT:  Well, so that, to me, might be the crux

20 is, are you wanting to ask questions about what was in the

21 database about other complaints, or do you want to ask

22 questions about, how could you possibly have destroyed this

23 database and would there have been information in the database

24 that wouldn't have been included in the personnel file?

25        MS. MCLETCHIE:  All of the things that you just

Case 2:19-cv-01322-KJD-DJA   Document 250   Filed 06/22/23   Page 47 of 71
*Transcribed by Digital Recording* 2:19-cv-1322-KJD-DJA   *June 7, 2023*

47

1   said, Your Honor, I think are appropriate for a 30(b)(6), and

2   we would be happy to clarify this question further, but I

3   think, in light of the issues in this case, I certainly think

4   those questions are all relevant questions for a 30(b)(6)

5   deposition.

6           THE COURT:  So I would be inclined to allow you to

7   ask questions about the destruction, about what's contained in

8   the database, what's in it versus what's in the employment

9   files.  I think the difference is, I need to decide whether I'm

10  going to let you get into the other complaints based upon the

11  arguments you made here today, and if I'm not, then I would

12  limit on this topic questions to those areas and not allow you

13  to get into questions of other complaints.  If I decide to

14  allow that, then I would probably deny it as a whole on this

15  one.  Does that make sense, Ms. McLetchie?

16          MS. MCLETCHIE:  Yes.

17          THE COURT:  Because I do think, even if I say that

18  you're not allowed to get in -- if I stick with the decision

19  that counsel says we've already made in the case and I'm not

20  going to let you get into all the other examples despite your

21  arguments today, I still would be inclined to let you get into

22  some issues about how it was destroyed, why it was destroyed,

23  what would be in there that wouldn't be in the personnel files.

24  That, I think, would be relevant.  And so to the extent that

25  that's the questions, I'm going to grant that right now.

1    To the extent that you want to get into the other

2   complaints and things that might have been destroyed, I'm going

3   to take that under advisement here and come back out and rule

4   on that.

5    MS. MCLETCHIE:  When you say "other complaints,"

6   just so we're clear when we're thinking through and preparing

7   for this deposition, Your Honor, do you mean other complaints

8   not against any crew members involved in this case?

9    THE COURT:  I just -- I mean the other complaints

10   that you guys wanted to delve into to show the pattern and

11   practice unrelated to this and the parties involved in this

12   case.

13    MS. MCLETCHIE:  Other than the parties or the crew

14   members involved in this case?

15    THE COURT:  The crew members, yes.

16    MS. MCLETCHIE:  Okay.  So other crew members -- crew

17   members not involved in this case?  So when you say "other

18   complaints," that's what you mean?

19    THE COURT:  Yes.  I mean other unrelated complaints,

20   other crew members, because the crux of my initial ruling in

21   precluding you all from doing that was it was just going too

22   far down the proverbial rabbit hole of, where's it going to

23   lead, it's too onerous on, you know, the defense, and so that

24   was the crux of that ruling.  So as it relates to this topic, I

25   would be inclined to let you ask questions about this database

1 and what was in it vis-a-vis the employment file of an

2 individual and what might -- you know, are there other things,

3 just to delve into that, but limit you -- if I decide you're

4 not going to get into the other unrelated complaints, that you

5 wouldn't be able to get in and ask, what other unrelated

6 complaints would be in that database?

7         MS. MCLETCHIE:  Understood.

8         THE COURT:  Having said that, Counsel?

9         MR. MAYE:  Your Honor, again, Your Honor and Judge

10 Dawson already ruled on this, that there can't be spoliation

11 when the information being sought is not relevant or

12 proportional.

13         Also, this information was never even asked during

14 discovery.  They're asking for Frontier to find the crew

15 assignments for every one of those flights that were related to

16 a prior unrelated incident.  And they want that information

17 because they want to interview the crew members to ask about

18 the prior incidents and --

19         THE COURT:  But I'm already saying I wouldn't let

20 her get into that.  I think she'd be limited -- unless I change

21 my -- you know, unless I reconsider the ruling and allow them

22 to get into some of these things based upon what they've

23 discovered in evidence and her arguments today, unless I change

24 that ruling, she wouldn't be allowed to get into that.  It

25 would just be specifically, how did it get destroyed, what are

**50**

1  the details of it being destroyed, what was in there, what was

2  in there that might not have been included in employment files?

3         MR. MAYE:  They're two different systems.  They have

4  received everything regarding the personnel files of the crew

5  members involved.  This other database, it wasn't destroyed.

6  It wasn't destroyed.  It -- so --

7         THE COURT:  Well, again, can't the witness, then,

8  sort of answer or flush out what happened or whether it was

9  destroyed or not destroyed?  Again, without getting into other

10 complaints, if I limit that -- and, again, I'm not sure which

11 way I'm going to go, but I'll have a decision here in a few

12 minutes.  If I limit that, then she'll be precluded -- or

13 they'll be precluded from getting into that, but they would be

14 at least able to ask limited questions about, what is this

15 database, was it destroyed, what happened, were there things in

16 the database that weren't in the employee files?  And that

17 would be essentially the extent of just getting into what

18 happened with this database, because I think that would be

19 discoverable.

20        And like I said, if I rule that they're not going to

21 be able to ask about other complaints, then she won't get to

22 ask about what other complaints are in that database.  She'll

23 be precluded from all of that.  All right?

24        MR. MAYE:  Yes.  Thank you, Your Honor.

25        THE COURT:  All right.  Last but not least, Topic

1   39, a witness to authenticate as business records of Frontier

2   all the documents listed on Exhibit 8 to Plaintiffs' Fourth

3   Request for Admissions to Defendant Frontier Airlines; or if

4   Frontier disputes that portions are retained as its business

5   records, to authenticate the portions of such documents that

6   are its business records.

7          Frontier argues this seeks irrelevant information

8   and the Court already ruled that plaintiffs' request that

9   Frontier admit that over 2,000 pages of documents were

10  authentic business records was neither relevant nor

11  proportional.

12         Plaintiffs respond that authenticating these at the

13  deposition would be laborious but far less laborious than

14  having a custodian witness at trial.

15         So I assume, then, Ms. McLetchie, these are

16  unrelated complaints that you want authenticated; is that

17  right?

18         MS. MCLETCHIE:  It's a number of records that

19  they've produced.  We've asked them to admit the authenticity,

20  and I think the issue here is that they're -- that Frontier is

21  conflating their view about what's relevant and proportional

22  with a reasonable request to authenticate business records that

23  have been produced in this case that the Court has found to be

24  relevant and proportional to the needs of the case.

25         We're not talking about getting -- this is not --

Case 2:19-cv-01322-KJD-DJA   Document 250   Filed 06/22/23   Page 52 of 71
*Transcribed by Digital Recording* 2:19-cv-1322-KJD-DJA *June 7, 2023*

**52**

1  this has nothing to do with the debates we're having today

2  about whether we're entitled to additional information; it's

3  about whether the limited information that the Court allowed us

4  to get we can even try to get authenticated, right?  And so, in

5  my view, this is information that we were permitted to get

6  that, for whatever reason, Frontier's refusing to be reasonable

7  and authenticate and that we want to be able to address

8  authentication at the 30(b)(6) deposition.

9       THE COURT:  And, again, lay out for me why.  Is it

10  also a trial thing, to just get rid of a step?

11       MS. MCLETCHIE:  Yeah.  And we want to -- and also

12  for motions for summary judgment.  We want to address -- we

13  want to address the authenticity of these records.  And it

14  would be very efficient.

15       I don't think Frontier is really, really saying that

16  they're not authentic records.  They produced them.  They

17  should just be reasonable on this, to the authenticity.

18  They're not, and so we need to be able to deal with this at the

19  30(b)(6).

20       MR. MAYE:  Again, this has already been addressed by

21  the Court.  Most of the documents are the unrelated complaints.

22  Certainly, if the case goes to trial, we will be, you know,

23  stipulating to the authenticity of relevant documents.

24  They've --

25       THE COURT:  Are there other documents -- so I get,

Case 2:19-cv-01322-KJD-DJA  Document 250  Filed 06/22/23  Page 53 of 71
Transcribed by Digital Recording 2:19-cv-1322-KJD-DJA  June 7, 2023

**53**

1 given the Court's rulings, and unless I overturn that, you

2 know, when I go back in chambers and come back out and make my

3 final ruling, I get that your position is, if it's unrelated

4 complaints, they shouldn't be authenticated and you shouldn't

5 be required to do that, but to the extent there's other

6 discovery, other business records and things that are not, are

7 these things that you're going to object to authenticating

8 them?

9          MR. MAYE:  No, Your Honor.  They've lumped together

10 2,000 pages of documents that -- you know, authenticate these,

11 this batch of documents.  If they want us to stipulate to the

12 authenticity of portions of the flight attendant manual, of

13 course we're going to do that.  This is all about prior

14 incidents.  That's what it was.  2,000 pages, admit these are

15 all authentic, you know, that these were created in the course

16 of business, we can't do that.

17          THE COURT:  All right.  So, Ms. McLetchie, to the --

18 is the vast majority of this *other complaints*, or is it other

19 documents that are just business records?

20          MS. MCLETCHIE:  It's both.  But I want to be clear.

21 The Court has never said prior complaints are not discoverable

22 in this case.  The Court -- and then this Court limited them to

23 more narrowly than the District Court judge did eventually, but

24 we were allowed to get complaints over the last five years

25 regarding racial discrimination.  So certainly -- certainly the

Case 2:19-cv-01322-KJD-DJA   Document 250   Filed 06/22/23   Page 54 of 71
Transcribed by Digital Recording 2:19-cv-1322-KJD-DJA   June 7, 2023

**54**

1   Court said further information, getting them in unredacted

2   form, isn't relevant -- or isn't proportional to the needs of

3   the case, but the Court has never said, those records are not

4   potentially discoverable or relevant.

5        I don't want to -- I think this is the issue:  We're

6   trying to take a discovery order on a limited discovery dispute

7   based on the showing that was before the Court and then try to

8   shoehorn the rest of the case and say that these -- the Court's

9   already decided that none of these complaints are relevant.  We

10  don't have to make an evidentiary showing, but the Court didn't

11  even have the complaints, obviously, before it when it

12  addressed the prior questions, but it did allow us discovery on

13  prior complaints.  And so I think that Frontier is taking an

14  absurd limiting read of this Court's prior orders.

15       MR. MAYE:  Well, I think the prior orders speak for

16  themselves, and Your Honor and Judge Dawson ruled that they

17  were produced because they were collaterally relevant.  Once

18  produced, it became clear that the substance of these

19  complaints are completely unrelated to this incident and

20  they're not relevant, not proportional, so I would disagree

21  that the interpretation is absurd.

22       And with respect to authenticity, of course we will

23  agree to stipulate to the authenticity of our documents

24  produced during discovery that relate to our policies, our

25  procedures, but these -- the vast majority of these documents

1  are related to the prior incidents, including statements

2  submitted by other people not created by us.

3          THE COURT:  Is there a way that you can split out

4  the things that you can authenticate that don't fit into these

5  other complaints and --

6          MR. MAYE:  Absolutely.

7          THE COURT:  -- other things like you just described,

8  whatever --

9          MR. MAYE:  Yes, absolutely.

10         THE COURT:  -- that you can authenticate out of

11 these 2,000?

12         MR. MAYE:  Sure.  Absolutely, yes.

13         THE COURT:  And what you're saying and what your

14 protective order seeks is a protective order over the other

15 complaints that you, again, have argued continually this

16 afternoon are already the subject of discovery orders, and

17 that's why you don't want to authenticate those?

18         MR. MAYE:  Yes, Your Honor.  I think we can do this

19 in a more efficient manner or more productive manner.  I don't

20 know why this is an issue --

21         THE COURT:  Is this something that could be

22 stipulated before trial so that you don't have to call

23 witnesses in?

24         MR. MAYE:  Absolutely.  Absolutely.

25         MS. MCLETCHIE:  Your Honor, I just want to make

Case 2:19-cv-01322-KJD-DJA   Document 250   Filed 06/22/23   Page 56 of 71
*Transcribed by Digital Recording* 2:19-CV-1322-KJD-DJA   *June 7, 2023*

56

1  clear, there's never been a ruling by this Court on at least

2  (indiscernible) the case, but it became clear that these other

3  complaints were irrelevant.  The Court has never made a ruling

4  on summary judgment.  The substance of the other complaints is

5  not -- has not been before the Court.  The Court previously

6  addressed whether we could get -- whether we could get the --

7  whether we could get the plaintiffs' names.

8        And I also want to point out that these are Frontier

9  documents.  Frontier customer representatives take calls.  The

10  only way you can make this kind of complaint is by calling in.

11  Frontier customer service representatives populate the

12  complaint, and that's the report that's created.  It is not

13  customers writing letters, "Dear Frontier Airlines:  This is

14  what happened."  These are documents.  There's a form.  And

15  that was one of the topics that we were discussing earlier.

16  There's a form and a template that Frontier uses to document

17  what the agent -- what the agent summarizes regarding these

18  complaints.  These are Frontier documents.  These are not

19  things that they're receiving.

20        MR. MAYE:  Your Honor, I think -- I think counsel

21  made a good faith argument there, but she's mistaken.  A lot of

22  the documents are documents created by customers.  They go onto

23  Frontier's website and they submitted to Frontier, so they're

24  created by the passengers, not created by Frontier.  So I think

25  this is something we should be able to work out, but certainly

Case 2:19-cv-01322-KJD-DJA   Document 250   Filed 06/22/23   Page 57 of 71
*Transcribed by Digital Recording* 2:19-cv-1322-KJD-DJA *June 7, 2023*

57

1  we object to authenticating prior unrelated complaints

2  submitted by passengers.

3       THE COURT:  All right.  So I think I've ruled on

4  everything except -- and correct me if I'm wrong, please -- 4,

5  6, 8, 30, 31, 32, 33, 34, 35, 36, 37, 38, and 39.  And now on

6  38, I've sort of alluded which way I was going depending on

7  what I'm doing with these *other complaint* issues.  Is that the

8  parties' understanding of where we're at?

9       MR. MAYE:  I'm sorry, Your Honor, could you go over

10  that again?  I apologize.

11       THE COURT:  The ones we have left -- and I will say,

12  the ones we have left, it is essentially this issue of, has

13  what's occurred since the last discovery rulings in the course

14  of discovery and the information that plaintiff has uncovered

15  change the circumstance such that my prior ruling and Judge

16  Dawson's affirmance of that ruling not allowing the plaintiffs

17  to delve into all these other complaints and the like, whether

18  I now allow with these questions of the 30(b)(6) witness the

19  plaintiff to delve into these areas.  And so the topics that

20  address that, address the *other complaint* area, are Number 4,

21  Number 6, Number 8, Number 30, 31, 32, 33, 34, 35, 36, 37, 38,

22  and 39.

23       And, again, as I've indicated, 38, I'm inclined to

24  allow some questions, but if I decide the other complaints are

25  still irrelevant and continue to follow that ruling, then you

 1  would not be allowed to question on Topic 38 as to other

 2  complaints but, rather, the destruction of the database.

 3          And then 39, again, the authentication of the

 4  records relates to the other complaints, and so I'm going to

 5  take that under advisement here and go to chambers to consider

 6  these and will come back out in a few minutes and rule on the

 7  others.

 8          Am I missing any?

 9          MR. MAYE:  No.

10          MS. MCLETCHIE:  No, Your Honor.

11          THE COURT:  And, Ms. McLetchie, do you have that

12  case available that I could take to chambers to look at it?

13          MS. MCLETCHIE:  Well, it's the case the Court relied

14  on before, and I just want -- what I want to point out about

15  that case --

16          THE COURT:  Just if I don't have to go pull it

17  again --

18          MS. MCLETCHIE:  No.  No.  It's the *Karrani* case.

19  And I know the Court relied on it in its prior decisions, and I

20  don't know that the record was clear enough in the prior

21  briefing that we are seeking -- we are -- we did name Frontier

22  as a defendant in the 1981 claim.  In *Karrani*, the airline was

23  not the defendant.  The question was whether the defendant

24  flight attendant had engaged in racial discrimination.  And

25  what happened there is the prior ten -- the plaintiff was able

1   to obtain a broad amount of discovery, ten years of prior

2   racial discrimination claims, I believe, against that crew --

3   that crew person.

4           This is different because we are alleging --

5           THE COURT:  So if it was just against the crew, you

6   should certainly get it here because it's against the whole

7   airline and it fits into your theory that the airline is

8   liable, given their pattern and practice and...

9           MS. MCLETCHIE:  Yes, and it's -- because when --

10  because we want to show that Frontier -- we should be able to

11  show -- and, in fact, we've been able to discover in discovery

12  that there are two and a half complaints a week for the last

13  five years on just the domestic airlines.  We are entitled to

14  be able to prove reckless indifference to civil rights

15  violations.

16          THE COURT:  All right.  Briefly, Counsel?

17          MR. MAYE:  Oh, yes, sir.  I think Number 27 is also

18  related to prior incidents.

19          MS. MCLETCHIE:  I believe you ruled on 27.

20          MR. MAYE:  Did you grant 27?

21          MS. MCLETCHIE:  He denied 27.

22          MR. MCKAY:  We're going to provide a list of

23  questions.

24          MS. MCLETCHIE:  We're going to provide a list of

25  questions in advance, yeah.

Case 2:19-cv-01322-KJD-DJA   Document 250   Filed 06/22/23   Page 60 of 71
Transcribed by Digital Recording   2:19-cv-1322-KJD-DJA   June 7, 2023

60

1          THE COURT:  Yes.

2          MS. MCLETCHIE:  We agreed to do that, yeah, so we

3    will do that.

4          MR. MAYE:  So, Your Honor --

5          THE COURT:  And then I said on that one that the

6    list of questions, if I say that unrelated complaints are

7    irrelevant and not proportional and I continue with that

8    ruling, then the questions wouldn't include that on that one.

9          MR. MAYE:  Okay.  We have a copy of *Karrani*, and

10   just for clarification, the *Karrani* case, the defendant was

11   JetBlue.

12         MS. MCLETCHIE:  The defendant was JetBlue, but the

13   plaintiffs -- the plaintiff was not seeking information about

14   further complaints against JetBlue.  The plaintiff sought and

15   was given further -- there were complaints against the crew

16   member defendant over the span of ten years, and the *Karrani*

17   decision said, despite the broad scope of discovery, you've

18   only been able to get one witness.  Those were unredacted

19   complaints.  It was a different issue.

20         THE COURT:  All right.  This is getting awfully

21   close to counsel sort of discussing the case and not arguing to

22   the Court.  I'm going to take a recess here for a few minutes.

23   The parties can remain at ease, and then I'll come back out and

24   rule on the rest of those matters.  So I'll be back in a

25   second.

Case 2:19-cv-01322-KJD-DJA   Document 250   Filed 06/22/23   Page 61 of 71
*Transcribed by Digital Recording* 2:19-CV-1322-KJD-DJA   *June 7, 2023*

**61**

1              (Recess from 4:45 to 5:12 p.m.)

2         THE COURT:  All right.  We are back on the record in

3    Peter DelVecchia, et al., versus Frontier Airlines.  I have

4    taken a few minutes and gone back and reviewed some of the

5    prior orders and some of the other issues related to the case,

6    and so let me tell you where I'm going with this and what my

7    thoughts are and what my decision is.

8         I do think, in reviewing my prior order, or the --

9    and Judge Dawson's order affirming my order, and in reviewing

10   those, I recall that I specifically had concerns at the time

11   with a couple issues as it related to the other complaints and

12   the identity of the individuals in those complaints.  And I

13   know specifically the two big issues that I had at the time as

14   it related to the case law and the issues I had to consider

15   were that, number one, divulging the name or the names of all

16   of those complainants could create all sorts of different

17   issues, not the least of which was privacy issues and those

18   people potentially being contacted.  And I had, you know, grave

19   concern, which is why I ruled as I did, that the names would

20   not be provided.

21        And then, secondly, the Court had grave concerns

22   that, as the rules of evidence contemplate, parol evidence rule

23   and some of the others, that we would end up in multiple mini

24   trials of these other complaints to try to see how they played

25   into this complaint and whether Frontier, you know, lets this

Case 2:19-cv-01322-KJD-DJA  Document 250  Filed 06/22/23  Page 62 of 71
Transcribed by Digital Recording  2:19-cv-1322-KJD-DJA  June 7, 2023

62

1   go on -- lets these types of acts go on and then we would just

2   have, you know, multiple mini trials about other incidents.

3   And so that's why I limited it to five years and the complaints

4   and that's what was provided.

5          When I look at that, I do think the defense is

6   overreading or at least giving an overbroad interpretation of

7   those rulings, because as I hear the plaintiff now argue

8   twofold, number one, that with more discovery, they believe

9   that they can prove that Frontier knew about this, condoned

10  this, created an atmosphere to allow this, however you want to

11  talk about it, but whatever the liability that Frontier would

12  have, the discovery the plaintiffs tell me has shown that has

13  helped with these complaints, that they have a culture of

14  allowing this to happen and that flows right into their

15  arguments for Frontier's liability and that they should

16  therefore be allowed to ask the 30(b)(6) witness questions

17  about that, questions about whether there are consequences for

18  employees not following policy and whether employees are

19  subject to consequences that Frontier's doing anything about

20  this.  And I recognize that, as Ms. McLetchie argues, that some

21  of my rulings previously, not only specifically directed them

22  to use other discovery techniques to get information, but

23  suggested there were other ways that they could get the

24  information without me granting their requests for names and

25  the scope of discovery that they wanted, and so I limited it.

1       But I certainly think at this stage that what

2   they've discovered in the course of the discovery, or

3   uncovered, what their theory is as it relates to Frontier's

4   involvement in this and just the fact that these are topics

5   that a 30(b)(6) witness would generally be able to answer, I do

6   think they should be allowed to ask questions about what

7   Frontier does with these complaints.  I think this is different

8   than getting names and going into all of the, you know, ten or

9   15-year history, which is why I limited it to five years.

10      And so as it relates to Topic 4, 6, 8, 30, 31, 32,

11  33, 34, 35, 36, 37, and 38, I will deny the request for a

12  protective order and I will allow the plaintiff to ask

13  questions regarding what Frontier does with these complaints,

14  how they handle them, if employees are disciplined, the issues

15  that they have indicated they are going to be asking.  Again,

16  you're not entitled to ask names, you know, to delve into mini

17  trials on each one of these.

18      I would note specifically that Rule 30(d)(1), when

19  it talks about these depositions or examinations, limits them

20  to one day and seven hours, and so, Ms. McLetchie, you'll have

21  to figure out what topics and what areas you want to get into

22  within the course of this order, but, again, I want to make it

23  clear that the names and specifics of those complaints, you

24  know, again, are off limits, not the specific of the complaints

25  but the names.

1    And then, really, I think I'll leave it to you,

2  Ms. McLetchie, and your counsel as to what you guys want to do

3  with your examinations, but, really, the intent of the Court is

4  to allow you to get into what Frontier does or doesn't do with

5  these complaints; whether their procedures, policies, allow

6  this culture to exist; whether they condone it, you know, those

7  sort of things so that you can develop your case as you see fit

8  against Frontier Airlines.

9    As it relates to 39, I am going to order the

10  defense, to the extent that you can authenticate the records

11  that you're comfortable authenticating, that you do that -- or

12  not do that but allow your witness to do that, or maybe before

13  the deposition you all can get those records together and do

14  that and agree on it.  And then I would say that -- ask you

15  guys to meet on the remaining records and see if agreements can

16  be reached; and if not, then we can address the authentication

17  issue once that's been narrowed down at a later time.

18    But I heard counsel tell me that there were a fair

19  amount of those records that you would agree to authenticate,

20  so I would ask that you all get together, do that, and then

21  what issues remain on the authentication if you can't agree

22  with, then I guess you'll bring them back to the Court and

23  we'll address that issue at that time.  But I think it's

24  probably easier to -- you know, to the extent you guys can

25  address that and to the extent you want to use your seven hours

Case 2:19-cv-01322-KJD-DJA   Document 250   Filed 06/22/23   Page 65 of 71
Transcribed by Digital Recording  2:19-cv-1322-KJD-DJA  June 7, 2023

65

1   on authenticating documents, I'll leave that to you as well.

2   But, again, I think that can be done in other means during the

3   course of the case before trial.

4        But I -- so I will grant the protective order to the

5   extent I will not ask the defendants to authenticate all of the

6   documents.  I will simply ask you to go and review the

7   documents that you can authenticate in good faith and not have

8   a problem with.  The ones that you object to, we can address it

9   at another time.  And I will grant the protective order as it

10  relates to the ones that you object to, and we can address that

11  if you want to raise the issue, Ms. McLetchie, later on,

12  arguing that you should be able to have access or get those

13  authenticated.

14        All right.  I think that addresses everything, but I

15  think when I went back to chambers I left the stipulation back

16  there.  So before I get to the stipulation, let's talk about

17  215.  Is there anything else that you want to raise as it

18  relates to 215?

19        MR. MAYE:  Well, Your Honor, I do want just a little

20  more clarity on what can be asked because --

21        THE COURT:  Well, I'm denying the protective order.

22  The prior discovery orders still are relevant to the case and

23  so, I mean, they're not going to be able to say, give us the

24  names of the people.

25        So, for instance, on 8, they want to ask the number

**66**

1  of times between March 28, 2014, and March 28, 2019, any

2  employees subjected to consequences as a result of -- I mean,

3  so they can ask that.  What consequences?  Was there

4  discipline?

5        MR. MAYE:  In your order, Document 192, you ruled

6  that more evidence regarding the unrelated complaints and

7  Frontier's handling of the complaints in general...  I'm sorry.

8  "As discussed more fully above, *Karrani* and *Acton* are

9  persuasive, and based on those cases, the Court does not find

10 more evidence regarding unrelated complaints and Frontier's

11 handling of the complaints to be relevant to plaintiffs' case,"

12 so it appears that your ruling contradicts that, and it's --

13        THE COURT:  Well, what page is that on of the 14 --

14        MR. MAYE:  That's Page 12 of Document 192.

15        THE COURT:  What line is this?

16        MS. MCLETCHIE:  Your Honor, if I may, I think the

17 issue is taking that out of context.  As the Court already

18 pointed out, the more evidence that we were trying to get in

19 that information was the contact information of the third-party

20 passenger complainants.  We wanted to interview them and get

21 information and get their side of the story.

22        The further -- the Court wasn't generally issuing a

23 protective order against all evidence regarding these

24 complaints; it was addressing the more evidence that was at

25 issue in those motions to compel.

1          THE COURT:  And, I mean, I'm reading that, and

2    that's what it's talking -- that was my concern.  So to ask --

3    so I'm just saying, your reading of my order is far more

4    expansive than I intended it to be at that stage, because now

5    we're at a 30(b)(6) who's going to be asking your

6    representative about what was done with these complaints, as

7    opposed to getting into interviews of -- I mean, because that

8    was my concern, as Ms. McLetchie pointed out, the fact that

9    they would go out and contact these people who don't want to be

10   contacted, reinterview these people that don't want to be

11   reinterviewed, open up all these little mini trials of all

12   these other little things, and that, to me, was just overbroad

13   and not proportional.  But now when they're simply asking a

14   30(b)(6), you know, *When you get this complaint and you had*

15   *this, what do you guys do?  Are you doing anything?  Are you*

16   *not doing anything*, that doesn't get to that point.  And so

17   that's why I think it's an overbroad reading.

18          MR. MAYE:  But there's already been a ruling by Your

19   Honor and Judge Dawson that these prior complaints are not

20   connected to the subject incident and --

21          THE COURT:  Yes, but to the extent how Frontier

22   handled them and the context of their complaints against

23   Frontier and what's come up in the discovery since then, I

24   think limited questioning of a 30(b)(6) witness in a seven-hour

25   deposition isn't disproportional or overbroad.

Case 2:19-cv-01322-KJD-DJA   Document 250   Filed 06/22/23   Page 68 of 71
Transcribed by Digital Recording   2:19-cv-1322-KJD-DJA   June 7, 2023

68

1          Now, as it relates to -- and I don't have the number

2    in front of me.  Do you all have the number on the stipulation

3    of the other examination?

4          MR. MICHALEK:  248, Your Honor.

5          THE COURT:  All right.  So as it relates to 248 --

6    thank you -- I will grant that stipulation as it relates to the

7    scope of that examination.  Now, is there anything else I need

8    to address on that?  It looks like the parties have agreed to

9    it.

10         MR. MICHALEK:  We have, Your Honor.

11         THE COURT:  Okay.  Counsel?

12         MR. MAYE:  Yes, Your Honor.

13         THE COURT:  Okay.

14         MR. MAYE:  A couple of things, Your Honor.  There

15   were, like, 320 prior complaints.  Only 160 related to Frontier

16   Airlines.  100 and, I think, if my math is right, 170-something

17   were related to third-party vendors, not Frontier.  So now we

18   just have 160, and these 160, the Court already ruled that the

19   substance of the complaints, there's no connection to the

20   subject incident.

21         And also, the Court ruled that pattern and practice

22   cannot be pursued for discreet discrimination claims.  Their

23   pattern and practice can be pursued for class actions, which is

24   not what we have here.  And Your Honor also ruled that the

25   *Karrani* Court's analysis is persuasive here and that evidence

1  of past complaints by others is only relevant in limited

2  circumstances where a plaintiff can make a showing to connect

3  them to his claims.  This is not one of those limited

4  circumstances.  And that was -- that ruling was made in the

5  context of plaintiffs' claims against Frontier.

6          The Court determined that the only relevance of

7  these prior complaints would be to potentially prove the state

8  of mind of the actors involved in this incident and it couldn't

9  be used to show pattern and practice with respect to Frontier.

10  The concern is, we have 160 complaints against Frontier, which

11  is very, very, very miniscule, 160 complaints over a five-year

12  period with, I think it was 5 million passengers, so the

13  percentage was, you know, less than -- it was, like, point

14  0000.  So we're not sure how a 30(b)(6) can take questions

15  about 160 complaints about disciplinary actions taken against

16  flight attendants when there's no evidence that these claims

17  have merit.  So we still have to do a trial within a trial.

18  We're talking -- you know, we're talking about a passenger who

19  is upset that they were charged a baggage fee and they're

20  claiming speculatively that --

21          THE COURT:  You know, if she wants to spend her

22  time, seven hours, on that, isn't that good for you?  If she

23  wants to talk about complaints like...

24          MR. MAYE:  Well, I just think that this rule has --

25  this issue has been resolved already.

Case 2:19-cv-01322-KJD-DJA   Document 250   Filed 06/22/23   Page 70 of 71
*Transcribed by Digital Recording* 2:19-cv-1322-KJD-DJA  *June 7, 2023*

**70**

1    THE COURT:  And that's -- and you've argued that a

2  number of times today, and that's what your argument was for

3  almost all of the objections, all of the requests for

4  protective order.  So I understand that --

5    MS. MCLETCHIE:  And just to be clear for the record,

6  the Court has not reviewed all of these complaints and

7  determined that they are not relevant or -- the Court hasn't

8  made a summary judgment order in this case.

9    THE COURT:  We don't need to make any more records.

10  I've already ruled.  I know one side, as always, disagrees and

11  doesn't like the ruling, and I understand that, but I've made

12  my decision, and you all can take whatever action you think is

13  appropriate.

14    And, again, I would just encourage, when this

15  deposition comes around, that, you know, you keep it relevant,

16  keep it pertinent.  Don't re-ask the questions.  You know all

17  that.  It just makes me feel better to tell you that.

18    MS. MCLETCHIE:  Of course.

19    THE COURT:  All right.  Anything else from the

20  plaintiffs, Ms. McLetchie, Counsel?

21    MS. MCLETCHIE:  No, Your Honor.

22    THE COURT:  All right.  From the defense?

23    MR. MAYE:  No, Your Honor.

24    THE COURT:  All right.  Thank you very much.  Court

25  is in recess.  Enjoy the rest of your evening.

1          (Proceedings concluded at 5:30 p.m.)

2                          --oOo--

3      I, Judy K. Moore, a court-appointed transcriber, certify

4  that the foregoing is a correct transcript transcribed from the

5  official electronic sound recording of the proceedings in the

6  above-entitled matter.

7

8  Date:  June 22, 2023

9

10                    /s/ Judy K. Moore_____

11                    Judy K. Moore, CRR, RMR
                      Official Court Reporter
12                    United States District Court
                      District of Nevada
13

14

15

16

17

18

19

20

21

22

23

24

25