MARGARET A. MCLETCHIE, Nevada Bar No. 10931
**MCLETCHIE LAW GROUP, PLLC**
602 South 10th Street
Las Vegas, NV 89101
Telephone: (702) 728-5300 / Fax: (702) 425-8220
Email: efile@nvlitigation.com

JOHN D. MCKAY, California Bar No. 220202 (*admitted pro hac vice*)
**PARK AVENUE LAW LLC**
201 Spear Street, Suite 1100
San Francisco, CA 94105
Telephone: (434) 531-9569 / Fax: (407) 264-6551
Email: johndmckayatty@gmail.com

*Counsel for Plaintiffs Peter DelVecchia and A.D., a Minor*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| PETER DELVECCHIA, *et al.*,<br><br>          Plaintiffs,<br><br>vs.<br><br>FRONTIER AIRLINES, INC., *et al.*,<br><br>          Defendants. | Case No: 2:19-CV-01322-KJD-DJA<br><br>**PLAINTIFFS' MOTION TO EXCLUDE DEFENSE EXPERT STEPHANIE HOLLAND OR, IN THE ALTERNATIVE, FOR PRODUCTION OF IMPROPERLY OBTAINED RECORDING AND EXTENSION OF DEPOSITION DEADLINE** |

Plaintiffs, Peter DelVecchia individually and Peter DelVecchia as next friend of A. D., a minor ("A.D."), by counsel, respectfully move this Honorable Court to exclude defense expert Stephanie Holland, Psy.D. ("Dr. Holland") from testifying in this case pursuant to Fed.R.Civ.P. 16(f)(1)(C), LR IA 11-8(e), and/or Fed.R.Civ.P. 37(c)(1) for the following reasons:

1. Defendants have violated the Court's Order (ECF No. 250), made on the parties' stipulation (ECF No. 248) after the Honorable Magistrate Judge Albregts required the parties to submit agreed specific dates for expert disclosures, that required Dr. Holland's expert report to be disclosed by July 31, 2023. Defendants first disclosed Dr. Holland's report to Plaintiffs' counsel on August 24, 2023, more than three weeks past the deadline.

2. Dr. Holland's report does not include her raw testing data that the Order entered by the Honorable District Judge Dawson (ECF No. 231) stated Defendants would make available to Plaintiffs.[1] Defendants have also not produced the raw testing data to Plaintiffs through any other means.

3. Dr. Holland improperly recorded A.D.'s examination on her smartphone, despite clear language in the Court's Order (ECF No. 195) imposing a condition that "Observers and recording devices are prohibited during the exam."

4. Dr. Holland further violated the Court's Order (ECF No. 195) by conducting the examination in an adversarial manner, repeatedly asserting Defendant's arguments on liability and suggesting that A.D., a minor, should agree with them. When he declined to do so, she responded with facial expressions that telegraphed displeasure with his responses.

Should the Court decide not to exclude Dr. Holland from testifying as a sanction for these violations of its Orders, Plaintiffs respectfully move in the alternative for an Order requiring Dr. Holland and Defendants to produce by a certain date the improperly obtained recording of the examination in a format that can be viewed and listened to by Plaintiffs' experts and counsel prior to Dr. Holland's deposition, plus all the raw testing data from the examination, and extending the

---

[1] That Order was based on Defendants' Motion for Rule 35 Examination (ECF No. 180), which promised that the raw data from psychological tests administered by Dr. Holland "would be produced to Plaintiffs." *Id.,* at 8.

deadline for Plaintiffs' disclosure of a rebuttal expert opinion from August 30, 2023 to a date that is three weeks from Defendant's production date, to allow Plaintiffs' experts a reasonably sufficient time to review the recording and the raw testing data before issuing the rebuttal report, and extending the deadline for taking Dr. Holland's deposition from September 29, 2023 to a date that is at least four weeks from Defendant's production date.

The grounds and legal support for this Motion are set forth more fully in the arguments incorporated below.

**Procedural and Factual Background**

1. On June 3, 2022, Defendants filed a Motion for a Rule 35 examination of A.D. to be conducted by Dr. Holland (ECF No. 180).

2. After briefing by the parties, Magistrate Judge Albregts granted the Motion on August 5, 2022 with 10 enumerated conditions for the conduct of the examination (ECF No. 195).

3. Condition Number 6 of the Court's Order stated: "Observers and recording devices are prohibited during the exam." *Id.,* at p. 8.

4. Condition Number 9 of the Court's Order stated: "The exam must proceed in a non-adversarial manner." *Id.*

5. On August 19, 2022, Plaintiffs filed timely objections to other portions of Magistrate Judge Albregts' Order pursuant to Fed.R.Civ.P. 72(a) and LR IB 3-1 (ECF No. 202). Notably, none of Plaintiffs' objections requested that the examination not proceed or that it be moved to a different state; they merely asked that the Magistrate Judge's Order be modified in a few other respects.

6. Judge Dawson affirmed the Order on February 13, 2023 with a slight modification pertaining to the types of tests to be administered by Dr. Holland (ECF No. 231). The text of his

Order noted specifically, consistent with Defendants' offer in their Motion, that "Plaintiffs would have access to the raw data generated from" the tests administered by Dr. Holland. *Id.*, at p. 3.

      7.      On September 29, 2022, while the Rule 72(a) objections were still pending before Judge Dawson, the parties filed a stipulated Motion to extend disclosure deadlines for two expert witnesses, one of whom was Dr. Holland (ECF No. 208).[2] The Court granted that Motion by Order entered on September 30, 2022 (ECF No. 210). The portions of the Stipulation and Order pertaining to Dr. Holland stated that her report was to be disclosed 30 days after the completion of her examination of A.D., that Plaintiffs could disclose a rebuttal expert report 30 days later, and that Dr. Holland's deposition could be taken on a mutually agreeable date in January or February of 2023. *Id.*

      8.      Because A.D.'s examination by Dr. Holland had to await Judge Dawson's ruling on the objections, the February 13, 2023 entry of Judge Dawson's Order rendered the stipulated schedule of a deposition "on a mutually agreeable date in January or February of 2023" impossible since Dr. Holland had to complete the examination and her report prior to her deposition. On February 28, 2023, the parties filed an additional stipulated Motion seeking an Order further extending the date of Dr. Holland's deposition to a "mutually agreeable date within 30 days following the date of disclosure of Dr. Holland's report. . . ." (ECF No. 234). The Motion also requested that the other previously stipulated and ordered schedule for disclosing reports be left in place (*i.e.,* requiring Dr. Holland's report to be disclosed 30 days after completion of the examination, and any rebuttal report to be disclosed 30 days thereafter).

      9.      However, on March 6, 2023, the Court *denied* the parties' requests for a deposition date 30 days after disclosure of the report and retention of the previously-ordered schedule, and instead ordered the parties to submit hard calendar date deadlines. The Court specifically indicated

---

[2] The other was Plaintiffs' expert psychologist Dr. Ohler, who was on maternity leave at the time and unable to sit for a deposition prior to the discovery cutoff.

that it wanted "concrete deadlines" since the discovery period had already ended and the date for filing dispositive motions is approaching. The Court noted that continuing reference to the earlier scheduling orders would cause confusion, so *"[t]his order will stand on its own."* (ECF No. 235) (emphasis added).

10. In accordance with that Order, the parties filed a stipulated Motion on June 6, 2023 that contained the following agreed concrete deadlines:

- **Dr. Holland's expert report to be disclosed by July 31, 2023;**
- **Plaintiffs to disclose any rebuttal expert report by August 30, 2023;**
- **Plaintiffs to depose Dr. Holland by September 29, 2023.**

(ECF No. 248) (boldface in original).

11. Magistrate Judge Albregts granted that stipulated Motion without alteration in open court on June 7, 2023, stating that the transcript of that hearing shall be the Court's Order. (ECF No. 249). The July 31, 2023 concrete deadline for disclosing Dr. Holland's expert report was thus made an Order of the Court.

12. The parties had previously agreed, on May 16, 2023, that the examination would take on June 29, 2023. According to Magistrate Judge Albregts' original Order, the examination was to be conducted in Raleigh, North Carolina, near Plaintiffs' hometown of Hillsborough, North Carolina. (ECF No. 195, at p. 8). The examination was delayed until June because, at the time Judge Dawson entered his February 13, 2023 ruling on the objections, Dr. Holland had still not submitted a necessary request to the regulatory body for psychologists in the State of North Carolina for authorization to examine A.D. in that state.[3] That was true even though the Court's original Order granting the examination and requiring it to take place in North Carolina had been entered over six

---

[3] Dr. Holland is not a licensed psychologist in North Carolina.

months earlier, and, as noted above, none of Plaintiffs' Rule 72(a) objections to that original Order asked that the examination not proceed, or that it not proceed in North Carolina. Because Dr. Holland had neglected to submit her request for authorization to the regulators in North Carolina for six months, the parties could not schedule an examination date until her belatedly submitted application was approved.

13. On the eve of the examination date, June 28, defense counsel Brian Maye called Plaintiffs' counsel John McKay on the telephone and reported that Dr. Holland's flight to Raleigh had been canceled by the airline and that she was attempting to get a seat on a different Raleigh flight. Mr. Maye followed up with an email several hours later stating, "Dr. Holland was unable to book another flight, so we'll have to reschedule the IME. We'll get some proposed dates and pass them along shortly." *See* Declaration of John D. McKay submitted herewith as Exhibit A, at ¶¶ 4-5 and Exh. 1.

14. By July 5, counsel had agreed on July 25 for the rescheduled examination date. *See id.* at ¶ 6. That date was six days prior to the deadline for disclosure of Dr. Holland's expert report.

15. Defendants were clearly aware that the rescheduled examination was very close to the report disclosure deadline, but they never moved for extension of the July 31, 2023 deadline for disclosing Dr. Holland's expert report.

16. A.D. has testified, in a Declaration submitted with this Motion, that Dr. Holland began recording the examination on her smartphone immediately upon his entering the examination room on July 25. He states that she asked him for his consent to record the examination and he agreed because he thought it was something his attorneys had agreed to. A.D. was unaware of the condition in Judge Albregts' Order that prohibited recording devices in the examination room. *See* Declaration

of A.D. submitted herewith as Exhibit B, at ¶ 4 (filed under seal). A.D. is a minor—he was 16 years old at the time of the examination.

17.     Defendants did not disclose Dr. Holland's expert report by the July 31, 2023 deadline. *See* Exhibit A at ¶ 10.

18.     Instead, Defendants first disclosed Dr. Holland's expert report on August 24, 2023. The report does not contain the raw testing data, nor have Defendants produced those data outside of the report. *See id.* at ¶ 11.

19.     A.D. has reviewed Dr. Holland's report and states that his responses to Dr. Holland's questions have been misrepresented by Dr. Holland throughout the report. For example, she states in her report that he "specifically denied" certain symptoms and other impacts resulting from the events on the flight, but he says he never denied them. *See,* Exhibit B at ¶ 18. He also states that Dr. Holland was argumentative with him throughout the examination, repeatedly asked him to speculate about what was on Defendants' minds during the flight, repeatedly asserted arguments that defense counsel has asserted during depositions taken in this case and responded to his answers with facial expressions that suggested disbelief of, and antagonism toward, his responses. A.D. has testified that Dr. Holland made him feel "very uncomfortable and self-conscious during the examination," and that he and his father had "done something wrong during the flight." *See id.* at ¶¶ 8-17.

20.     On September 5, 2023, Defendants filed a "Notice Regarding Rule 35 Examination" (ECF No. 251), in which they admitted that Dr. Holland was aware of the conditions imposed by Magistrate Judge Albregts' Order prior to conducting the examination, having been supplied a copy of the Order and having discussed the conditions with defense counsel in preparation for the examination (*id.,* at p. 2). They further admitted that Dr. Holland violated the condition prohibiting recording devices, but they failed to mention her other violation of the conditions, or their own

violation of the report disclosure deadline. As their proffered explanation for the violation of the prohibition of recording devices, Defendants state: "It appears that Dr. Holland was having a difficult time hearing A.D. during the exam, so she recorded parts of A.D.'s Rule 35 Exam using her cell phone." *Id.* That mirrors the explanation that defense counsel Brian Maye stated on July 28 that he had obtained directly from Dr. Holland immediately after the examination. *See* Exhibit A at ¶ 8 and Exh. 2. However, A.D. states that Dr. Holland never indicated that she had any difficulty hearing him during the examination, and in fact, she asked for his consent to record the examination as soon as he entered the examination room, before she had begun her interview. *See* Exhibit B. Moreover, Dr. Holland provided an *entirely different* explanation in her declaration supporting Defendant's "Notice." In her declaration, Dr. Holland testifies that "In this particular case, I had reviewed A.D.'s deposition just prior to the exam and was concerned about potential hearing issues. During his deposition, *he was asked several times to speak up due to the low volume of his speech*. To avoid disrupting the flow of the exam with repeated requests for A.D. to speak louder, I chose to record segments of A.D.'s Rule 35 Exam using my cell phone." (ECF No. 251-1, at p. 3) (Emphasis added). A review of A.D.'s deposition transcript, however, reveals that he was reminded on only a *single* occasion to "[k]eep your voice up," after answering a question with "Yeah."[4] Dr. Holland also claims in her Declaration that she "forgot" about Magistrate Judge Albregts' prohibition against recording devices in the 26 days between June 29 and July 25, and that her recording of the examination was "an honest mistake." (ECF 251-1, at p. 3).

---

[4] *See* Exhibit A, citing Deposition of A.D., January 28, 2020, at p. 17. The reminder was from his own attorney, and it was consistent with nearly every deposition the attorney has ever defended. The only other time A.D. was told to keep his voice up was in standard preliminary instructions to the deponent, which Mr. Maye gave before A.D. had uttered a word on the record.

# ARGUMENT

## I. The Court should exclude Dr. Holland from testifying as a sanction for the multiple violations of its Orders.

### A. Legal standards

Rule 16(f)(1)(C) grants the District Court broad discretion to sanction a party or its attorney for disobedience of a pretrial order, *see Christiana Trust v. SFR Investments Pool 1, LLC,* Case No. 2:16-cv-01603-JAD-NJK, slip op. at 1-2 (D. Nev. October 7, 2019)*; see also Wong v. Regents of Univ. of California,* 410 F.3d 1052, 1060 (9th Cir. 2005); *Official Airline Guides, Inc. v. Goss,* 6 F.3d 1385, 1397 (9th Cir. 1993).  Such sanctions may, and often do, result in the exclusion of expert evidence, *see Wong,* 410 F.3d, at 1060-62. "Preclusion of an expert witness is an appropriate sanction when the circumstances so warrant." *Cruikshank v. Olsen,* 917 F.2d 566 (9th Cir. 1990). In *Diamond X Ranch LLC v. Atlantic Richfield Company,* Case No. 3:13-cv-00570-MMD-WGC (D. Nev. May 3, 2018), Chief Judge Du affirmed a pretrial ruling by Magistrate Judge Cobb that excluded a party's expert witness from testifying as to certain opinions because the disclosure of those opinions was untimely and violated another of the Court's Orders. In *Shakespear v. Wal-Mart Stores, Inc.,* Case No. 2:12-cv-01064-MMD-PAL, 2014 WL 5106048 (D. Nev. October 10, 2014), a ruling relied upon by Judge Cobb in *Diamond X Ranch,* Chief Judge Du enforced Magistrate Judge Leen's total exclusion of two of the plaintiff's experts for untimely disclosures, by awarding monetary sanctions after the plaintiff announced an intention to call the excluded experts to testify at trial.

As Magistrate Judge Koppe noted in *Christiana Trust*, "Rule 16(f) applies regardless of whether the non-compliance with the court order was intentional." Case No. 2:16-cv-01603-JAD-NJK, slip op. at 2 (citing *Lucas Auto Eng'g, Inc. v. Bridgestone/Firestone, Inc.,* 275 F.3d 762, 769 (9th Cir. 2001)). It is also "firmly established" that sanctions under Rule 16(f) need not be predicated on a finding of bad faith. *Id.; see also Ayers v. City of Richmond,* 895 F.2d 1267, 1270 (9th Cir.

1990)(sanctioned counsel failed to appear because the date "slipped by him"); *Ikerd v. Lacy,* 852 F.2d 1256, 1258-59 (10th Cir. 1988)("Neither contumacious attitude nor chronic failure is a necessary threshold to the imposition of sanctions"); 6A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1531 (1990) ("The fact that a pretrial order was violated is sufficient to allow some sanction").

Local Rule IA 11-8(e) likewise gives the Court broad discretion to impose "any and all appropriate sanctions on an attorney or party who . . . [f]ails to comply with any order of this court." *Brown v. Zeltiq Aesthetics, Inc.,* Case No. 2:22-cv-0972-RFB-NJK (D. Nev. June 15, 2023)

Moreover, Rule 26 clearly states that "A party must make [expert witness] disclosures at the times and in the sequence that the court orders." Fed.R.Civ.P. 26(a)(2)(D). The Ninth Circuit has held that Rule 37(c)(1) "'gives teeth' to Rule 26's disclosure requirements by forbidding the use at trial of any information that is not properly disclosed." *Goodman v. Staples The Office Superstore LLC,* 644 F.3d 817, 827 (9th Cir. 2011). In *Goodman,* the Court of Appeals held that the district judge did not abuse his discretion in precluding the plaintiff's non-medical experts from testifying where the plaintiff failed to make timely disclosure of their opinions. In *Nihart v. Nat'l Park Serv. ex rel. U.S. Dep't of the Interior,* Case No. 2:12-cv-00291-APG-GWF (D. Nev. April 10, 2014), Judge Gordon excluded two of the plaintiff's treating physicians from testifying as expert witnesses at trial, after the plaintiff failed to disclose them in accordance with Rule 26. The Ninth Circuit Court of Appeals has held that Rule 37's exclusion sanction is self-executing. *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1180 (9th Cir. 2008). The party to be sanctioned has the burden of showing that the inadequate disclosure was justified or harmless, those being the only exceptions to the self-executing sanction. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101, 1107 (9th Cir. 2001). Although some additional considerations are apt when the exclusion of expert testimony would

vitiate a party's entire case, *see, R & R Sails, Inc. v. Insurance Co. of Penn.,* 673 F.3d 1240, 1247 (9th Cir. 2012), the exclusion of Dr. Holland's testimony would raise no such concerns. Her testimony is limited to an aspect of damages concerning only one party in a multi-party lawsuit involving multiple claims and defenses.

### B.   Defendants and Dr. Holland have violated multiple Orders

Defendants and their expert, Dr. Holland, have violated three separate Orders issued by this Court (including multiple subparts of one of them): (1) Defendants served Dr. Holland's report more than three weeks past the deadline established by Magistrate Judge Albregts' June 7, 2023 Order; (2) Defendants never provided the raw testing data to Plaintiffs as required by Judge Dawson's February 13, 2023 Order (and promised by Defendants in support of their Rule 35 Motion); and (3) Dr. Holland recorded the examination of A.D. on her smartphone and conducted the examination in an adversarial manner, both in violation of Magistrate Judge Albregts' August 5, 2022 Order.

Defendants' failure to disclose Dr. Holland's report by the July 31 "concrete deadline" is inexcusable. Defendants were well familiar with the date—in fact, they had agreed to it with Plaintiffs' counsel and jointly submitted it to the Court in a stipulated motion. In another case of multiple order violations primarily affecting timeliness, Magistrate Judge Koppe summarized the legal obligations of parties to comply with court-ordered deadlines:

> "Orders are not suggestions or recommendations, they are directives with which compliance is mandatory." *Gfeller v. Doyne Med. Clinic, Inc.,* Case No. 2:14-cv-01940-JCM-VCF, 2015 WL 5210392, at *8 (D. Nev. Sept. 3, 2015) (citing *Chapman v. Pacific Tel. & Tel. Co.*, 613 F.2d 193, 197 (9th Cir. 1979) and *Weddell v. Stewart*, 261 P.3d 1080, 1085 & n.9 (Nev. 2011)). Litigants have an "unflagging duty to comply with clearly communicated case-management orders." *Martin Family Trust* [*v. Heco/Nostalgia Enterprises Co.,* 186 F.R.D. 601, 604 (E.D. Cal. 1999)].

*Christiana Trust*, slip op. at 1-2. The Court added: "violations of orders setting deadlines 'involve a matter most critical to the court itself: management of its docket and avoidance of unnecessary delays in the administration of its cases.'" *Id.,* at 2 (quoting *Martin Family Trust,* 186 F.R.D. at 603, and

*Matter of Sanction of Baker,* 744 F.2d 1440, 1441 (10th Cir. 1984) (*en banc*)). This is consistent with the Ninth Circuit's view, as Magistrate Judge Koppe explained:

> As the Ninth Circuit has emphasized, a court order setting deadlines "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril. . . . Disregard of the order would undermine the court's ability to control its docket. . . and reward the indolent and cavalier."

*Id.* at 3 (quoting *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 610 (9th Cir. 1992)).

In the instant case, Magistrate Judge Albregts specifically instructed the parties in his March 6, 2023 on the need for "concrete" calendar dates for the expert disclosures because the dispositive motions deadline is approaching, *see* ECF No. 235 at 2, and he emphasized that his Order "will stand on its own" to avoid any confusion with the previously ordered timelines. *Id.* Based on that clarity, Defendants should not have had any doubt that the July 31 disclosure date they jointly submitted to the Court was a "concrete deadline." It was incumbent on them to move for relief from it if they did not want to abide by it. Failure to do so, and cavalierly acting as though the prior 30-day disclosure timeline still applied, despite the fact that Magistrate Judge Albregts' March 6 Order expressly rejected it, is a clear violation warranting sanctions.

The untimely disclosure of Dr. Holland's report, and its failure to include the raw testing data that Defendants had promised to produce and that Judge Dawson's Order indicated would be provided with her report, were neither justified nor harmless. As noted above, it clearly was not justified when Defendants were aware of the "concrete deadline[ ]" but chose not to abide by it, *see Goodman,* 644 F.3d at 827, and when they had based a portion of their Rule 35 Motion on a promise to provide the raw data, a promise that Judge Dawson incorporated into his Order. Nor is it harmless, as any remedial measures would likely require moving the deadlines for dispositive motions and submission of the final pretrial statement, which would delay the trial in a case that has already faced substantial delays due to the pandemic, and was further delayed by Dr. Holland's own failure to

submit her request for approval to conduct the examination in North Carolina to that state's regulators in a timely fashion. The sole remaining pretrial matter that does not involve Dr. Holland is the Rule 30(b)(6) deposition of Defendant Frontier Airlines, Inc., which will be completed on September 26, 2023. That means that the deadline for filing dispositive motions is October 26, 2023, and the date for filing the joint final pretrial statement is November 27, 2023. *See* ECF No. 224 at 3. Briefing of the instant Motion and a ruling by the Court, plus the remedial measures requested below in the alternative, would easily eclipse at least the dispositive motions deadline, and possibly the pretrial statement deadline, requiring them to be moved again and further delaying a trial date in this case. This is precisely the type of schedule disruption that Magistrate Judge Albregts was trying to avoid with the "concrete deadlines" required by his March 6 Order, and such a disruption would be prejudicial to Plaintiffs' case by adding a further delay to their trial date. "Expense, delay, and wear and tear on individuals and companies count toward prejudice." *Kaplan v. Rose,* 49 F.3d 1363, 1370 (9th Cir. 1995).

      Dr. Holland's unauthorized recording of the Rule 35 examination is also inexcusable. The sole excuse offered is that Dr. Holland "forgot," which she claims was "an honest mistake." That excuse is not credible. Dr. Holland is no stranger to the important legal issues that attach to recording a minor's statements. The propriety of her prior use of an illegally-obtained recording of a minor was the subject of litigation in the Nevada state courts including the Nevada Supreme Court, *see Abid v. Abid,* 406 P.3d 476 (Nev. 2017); *c.f., Pyankovska v. Abid,* No. 20-16294 (9th Cir., April 18, 2023) and Case No. 2:16-cv-02942-JCM-BKW (D. Nev.) at ECF 151 (confirming the illegality of the manner in which the recording of the minor was obtained). Although Dr. Holland was not directly a party to that litigation, and her reliance on the recording in the "bitter child custody proceeding" (9th Cir. slip op. at 5) was approved by the courts, it is unreasonable to assume that she was unaware of

the serious legal implications that attached to the recording, which she partially relied upon for her expert opinion that favored placing custody of the minor primarily with the parent who had surreptitiously placed a recording device in his child's school backpack. 406 P.3d, at 478. It is equally unreasonable to assume that she considered Magistrate Judge Albregts' clearly stated prohibition against recording A.D.'s examination to be such a trivial matter that it could be entirely forgotten during a 26-day delay.

It is also remarkable that she has advanced conflicting explanations for why she decided to record the examination. According to defense counsel Brian Maye, who spoke to her about the improper recording immediately after the examination was concluded, after he received an email from Plaintiffs' counsel informing him of it, "She said she was having a difficult time hearing [A.D.], so recorded a part of the interview in the event she needed to rely on it." *See* Exhibit A at ¶ 8 and Exh. 2. As A.D.'s Declaration points out, that story is not credible because she began the recording immediately when he entered the examination room, before he had said anything to her, and she recorded most of the examination. *See* Exhibit B at ¶¶ 4-5. In her own declaration submitted with Defendants' "Notice," she presents an entirely different story, claiming that she recorded the examination because she had reviewed A.D.'s January 28, 2020 deposition and noted that "he was asked several times to speak up due to the low volume of his speech." That story also lacks credibility because, as noted above, he was not asked several times to speak up, nor is there any mention on the deposition record of "the low volume of his speech." As indicated in the McKay Declaration, A.D.'s deposition was conducted at normal volume with no problems noted about the volume of A.D.'s speech. Exhibit A at ¶ 12. McKay did remind A.D. one time to speak up so that the court reporter could transcribe his statement correctly, a reminder he has given to nearly every client whose deposition has been taken over his 38-year litigation career. *Id.* Moreover, neither Dr. Holland nor

Defendants have explained why, even if she was encountering difficulty hearing A.D. during the examination, a recording made in violation of the Court's Order was necessary. She could have simply said "pardon me?" or asked him to repeat an answer if she had trouble hearing him. Given the obvious lack of credibility of her conflicting stories about why she recorded the examination, a material fact, her claim that she has not reviewed the recording or allowed anyone else to do so, another material fact, cannot be accepted at face value. *C.f., Enying v. Holder,* 738 F.3d 1160, 1162 (9th Cir. 2013) (discussing common law maxim "*falsus in uno, falsus in omnibus*"); *see also* Federal Rules of Evidence 607, 608, 613.

Condition Number 9 of Magistrate Judge Albregts' Order permitting the examination (ECF No. 180) stated that "The exam must proceed in a non-adversarial manner." There was no ambiguity in that directive. Magistrate Judge Albregts obviously included it in the Order because A.D. is a minor and Plaintiffs' briefs had argued against the Rule 35 examination occurring because of the deleterious effect that making A.D. recount the events on the flight might have on his psychological well-being. Dr. Holland, a professional psychologist, should have been particularly aware of such concerns. The sole purpose of the Rule 35 examination was to allow the defense an opportunity to assess A.D.'s mental state following the events on the flight alleged in the Third Amended Complaint. Dr. Holland's role was to provide expert opinion testimony on an aspect of damages. A Rule 35 examination is supposed to be a neutral examination, not an adversarial environment. *Doe v. Equipo Academy, Inc.,* Case No. 2:20-cv-01490-KJD-DJA (D. Nev. April 26, 2021); *see also Barrett v. Great Hawaiian Cruises, Inc.,* 1997 WL 862762 at *2 (D. Haw. Sept. 17, 1997) (Rule 35 examination "should be a wholly objective inquiry" without partisanship).

Yet, according to A.D., Dr. Holland injected partisanship into the examination on multiple occasions, repeatedly asking him what he thought was on the flight attendants' and pilots' minds

when they saw his father and him on the flight, and when they received information about them. When A.D. declined to speculate on those subjects, which had nothing to do with his own mental state, he said that Dr. Holland made facial expressions toward him that suggested she was displeased with his responses. She also asked him about his father touching him on his face and his back, which A.D. explained was his father's way of showing affection. Dr. Holland asked A.D. repeatedly if he thought such touching was "weird," and made facial expressions of disapproval when he said no. She told him that her husband does not touch their children's faces. She told him that a parent touching a child's face is "not affection." She asked him what he thought a flight attendant might think if the flight attendant had seen his father touching his face. She asked what he would have done if he had been the flight attendant. She asked him whether he would have separated him from his father had he been the pilot. She asked him multiple times whether he thought the flight attendants were just doing what they had been trained to do, which is Defendants' central argument on the liability issues in the case. She made disapproving facial gestures when A.D. declined to speculate on those subjects. She asked him whether his father touched his crotch on the flight as Defendant Warren claimed. She again made a disapproving face when he replied in the negative. She asked him numerous questions about racism, including whether he thought it was caused by White people, whether he preferred to be with White people, and whether he thought the incident on the flight occurred because he is Black and his father is White. In addition, she asked about his sisters' skin colors and his father's dating life. *See* Exhibit B at ¶¶ 8-17. None of those inquiries had anything to do with assessing A.D.'s current mental state in an objective manner, but they had everything to do with Dr. Holland acting as an arm of the defense team, essentially conducting a second deposition of A.D. in the guise of a Rule 35 mental examination. Coupled with the unauthorized recording, it strongly appears that she was attempting to obtain useful sound bites for the defense to use at trial. Her conduct clearly violated the

Court's specific directive to conduct the examination in a non-adversarial manner, and it further violated the spirit of the Court's Rule 35 authorization in its entirety. Rule 35 specifically states that the Court shall specify the ". . . manner, conditions and scope" of the examination, which Magistrate Judge Albregts did in ECF No. 180. Defendants and Dr. Holland completely disregarded the Court's Order, and they should be sanctioned for it.

> **II.     In the alternative, the Court should grant Plaintiffs and their experts an opportunity to review the recording and the raw data prior to preparing a rebuttal report and deposing Dr. Holland.**

Should the Court decide not to exclude Dr. Holland's testimony, then it should give Plaintiffs and their experts an appropriate opportunity to review the recording, as it is the best evidence of both the adversarial nature of her questioning and A.D.'s responses to the standardized testing that was performed orally, and the raw data from the testing that was administered in writing, prior to preparing a rebuttal report and taking Dr. Holland's deposition. Plaintiffs respectfully request at least three weeks to review the recording and the raw testing data to prepare a rebuttal report, and at least an additional week to take Dr. Holland's deposition. Defendants and Dr. Holland would need to be ordered to comply with such a schedule. Plaintiffs request this solely in the alternative, because as noted above, these remedial measures would cause significant delays to the trial schedule and would only be needed if Dr. Holland is permitted to testify.

**CONCLUSION**

For all of the reasons set forth above, Plaintiffs respectfully move this Honorable Court to exclude Dr. Holland from testifying in this action, as a sanction for the multiple and egregious violations of multiple pretrial Orders. Should the Court not exclude her testimony, Plaintiffs respectfully request the alternative remedial measures discussed in Section II above, plus such additional sanctions as the Court deems appropriate under the circumstances.

DATED this 15th day of September, 2023.

                                                    /s/ *John D. McKay*
                                                    John D. McKay

                                                    ***Attorney for Plaintiffs Peter DelVecchia and A.D., a Minor***