MARGARET A. MCLETCHIE, Nevada Bar No. 10931
**MCLETCHIE LAW GROUP, PLLC**
602 South 10th Street
Las Vegas, NV 89101
Telephone: (702) 728-5300 / Fax: (702) 425-8220
Email: efile@nvlitigation.com

JOHN D. MCKAY, California Bar No. 220202 (*admitted pro hac vice*)
**PARK AVENUE LAW LLC**
201 Spear Street, Suite 1100
San Francisco, CA 94105
Telephone: (434) 531-9569 / Fax: (407) 264-6551
Email: johndmckayatty@gmail.com
*Counsel for Plaintiffs Peter DelVecchia and A.D., a Minor*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| PETER DELVECCHIA, *et al.*,<br>           Plaintiffs,<br>vs.<br>FRONTIER AIRLINES, INC., *et al.*,<br>           Defendants. | Case No: 2:19-CV-01322-KJD-DJA)<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE DEFENSE EXPERT STEPHANIE** |

Defendants' Response (ECF 256) to Plaintiffs' Motion (ECF 254) requires a brief Reply.

Two new words have emerged in the English-speaking world in recent years, "whataboutism" and "gaslighting," that are frequently used in today's political discourse. Those terms describe the practices of diverting attention away from one's own misdeeds by raising questions about someone else's conduct and altering the true underlying factual context as a ploy for avoiding any responsibility for the misdeeds. In keeping with the pattern that Defendants have repeated throughout this lengthy litigation, their Response employs both practices.

"Whataboutism" is changing the subject to ignore the issue at hand, as recognized by the Ninth Circuit in a recent unpublished decision:

> There's actually a relatively new term for this rhetorical device of changing the subject: "In response to an accusation, the purveyor of 'whataboutism' deflects by arguing that someone else (such as the accuser) has also done something wrong. Whether the accusation holds up is irrelevant, **relentless whataboutism is a way to justify and distract, not to make a genuine case**." Caroline Mala Corbin, *The Unconstitutionality of Government Propaganda*, 81 Ohio St. L.J. 815, 827 (2020) (cleaned up). Of course, as the district court implicitly recognized in granting the government's motion in limine, whataboutism is a logical fallacy. *See* Robert Spohrer & Roger Dodd, *Spotting 10 Logical Fallacies*, 57 Trial 46, 48 (Feb. 2021) (characterizing "whataboutism" as a "fallacy [that] ignores the question and switches the subject to something else").

*U.S. v. Jones,* No. 20-10090, slip op. at 10 & n.3 (9th Cir. Dec. 16, 2021) (Baker, J. separate opinion) (bracketed and parenthetical material in original, bolding added). Defendants' whataboutism in their Response to the instant Motion begins with reference to an unconnected hearing and what comes extremely close to another *ad hominem* attack on Plaintiffs' lead counsel's professionalism, in the guise of making an argument about the propriety of imposing sanctions, *see* ECF 256 at p. 8. It echoes a similar response Defendants made to the last motion for sanctions, *see* ECF 145 at p. 2 (which contained such phrases as "rather than responding constructively," "vicious barbs," "full of malicious insults unbecoming of this tribunal," "Plaintiffs bloviate," "uncivil accusations," "devoid of any thoughtful legal analysis"). Interestingly, those hyperbolic claims in their earlier response brief all related to purely legal and factual arguments that contained no *ad hominem* or otherwise unprofessional remarks of any sort. *See* ECF 141. Moreover, Plaintiffs' arguments in that motion were well founded: as discussed below, Defendants had advanced a sham legal argument to the Court. While aiming to deflect the spotlight away from their own transgressions, the *ad hominem* nature of Defendants' remarks also carries the obvious message, "Plaintiffs' lawyer is unethical, so you should not listen to what he says." That inappropriate message, *see Searcy v. Esurance Insurance Co.,* Case No. 2:15-cv-00047-APG-NJK, slip op. at 4 (D. Nev. August 1, 2016), is bookended by a few additional disparaging comments such as, "[i]t is unfortunate that Defendants must keep responding to these types of motions, which serve only to delay the litigation . . ." (ECF 256 at p. 2),

"[i]t is also noted that Defendants did not seek sanctions for Plaintiffs' conduct" (*id.,* at p. 8), and "[t]he unsupported and inflammatory attacks on Dr. Holland for the purpose of attempting to gain an advantage is [*sic*] this litigation is [*sic*] quite eye raising [*sic*] (*id.* at p. 13).[1] Similar remarks appeared in Defendants' earlier briefs, *see, e.g.,* ECF 145 at p. 2 ("Frontier has tried in earnest to stay above the fray and ignore Plaintiffs' vicious barbs, but the instant Motion crosses the line.")[2] Plaintiffs' undersigned lead counsel has been practicing in federal courts for 38 years, in at least 13 districts. He has never claimed to be a perfect attorney, but his history of service on a state bar's disciplinary committee for two terms and for several more years on a local bar association's professionalism committee, his co-founding of an American Inn of Court in Virginia with a United States Magistrate Judge, and his receipt of a commendation from the Maine Supreme Judicial Court for his *pro bono* service in that state all suggest that the undersigned is not the reckless, unethical rogue of Defendants' portrayal. Their improper arguments should be ignored in favor of focusing on the actual subject matter of the Motion.

   Defendants' whataboutism also extends to an unrelated point about the timing of Frontier's Rule 30(b)(6) deposition, *see* ECF 256 at p. 3, ¶ F, suggesting that Plaintiffs may have violated an Order by taking it in September. However, as Defendants concede, the deposition was taken on those dates *by agreement*. They fail to mention that the September dates were the only ones ever offered by Frontier's counsel after the June 7, 2023 hearing. Moreover, Defendants neglect to mention that that their counsel tried to renege on that agreement on the eve of the deposition, attempting to move it to *October* on the grounds that Mr. Maye had been ordered to trial in the District of Rhode Island on

---

[1] The instant Motion makes no "attacks" on Dr. Holland, it merely points out in a factual manner how she and Defendants violated the Court's Orders.
[2] It bears repeating that Plaintiffs' arguments to which that comment was directed were entirely appropriate and factual, and contained no *ad hominem* remarks whatsoever, so Defendants' "vicious barbs" and "crosses the line" comments did not refer to any actual arguments that Plaintiffs had made. They were, at best, examples of whataboutism.

those same September dates.³ Having only proposed September dates for a deposition that was supposed to occur in June or July, and then having tried to delay the deposition to October under questionable pretenses, Defendants are in no position to argue that the Court should concentrate on the date of that deposition instead of their multiple violations of Orders that are the subject of this Motion.

Defendants' use of whataboutism also includes their "Background" paragraph Q, which mentions that Plaintiffs have not taken the depositions of Defendants' rebuttal experts and have not moved for an extension of the discovery deadline of February 28, 2023 to do so. *See* ECF 256 at p. 7. Plaintiffs' counsel began asking defense counsel for deposition dates for those depositions at least a month prior to the discovery deadline, and defense counsel never provided dates for the three rebuttal experts. During a telephone call on February 7, 2023, Defendants' lead counsel proposed taking the depositions by agreement in March, but then never provided any March dates when asked to do so. *See* Second Declaration of John McKay (attached hereto as Exhibit A), at ¶ 1. Plaintiffs no longer wish to take those depositions, and the issue is entirely irrelevant to the instant Motion.

"Gaslighting" is "used informally to describe someone who persistently puts forth [a] false narrative' in an effort to cause 'another person to doubt [her] own perceptions....' https:en.m.wikipedia.org. 9/19/2021." *Martinez-Gonzalez v. Elkhorn Packing Co. LLC*, 17 F.4th 875, 896 & n.3 (9th Cir. 2021) (Rawlinson, CJ, dissenting). When used in legal arguments, it amounts to a suggestion that the Court should not believe its own eyes. *See People v. Trump,* 2023 NY Slip Op 33314(U), slip op. at 22 & n.9 (NY Sup. Ct., New York County Sept. 26, 2023) ("Defendants respond that: the documents do not say what they say; that there is no such thing as "objective" value;

---

³ They backed off when Plaintiffs' counsel researched the docket of the District of Rhode Island case on PACER and found that Mr. Maye had indeed been ordered to attend the trial on those dates—in response to his own motion for an extension—*three months* before he proposed the same dates to Plaintiffs' counsel for the deposition. *See* Exhibit A, at ¶¶ 3-4.

and that, essentially, the Court should not believe its own eyes."); *see also Krauss v. Wal-Mart, Inc.,* No. 2:19-cv-00838-JAM-DB, slip op. at 21 (E.D. Cal. April 14, 2020) ("While creative, Plaintiff's textualist argument does not succeed in gaslighting the Court."); *DR Distributors, LLC v. 21 Century Smoking, Inc.,* No. 12 CV 50324, slip op. at 4 (N.D. Ill. Jan. 12, 2023) ("Defendants' response brief, which attached and relied upon Mr. Brown's second report, plainly violates this Court's January 19, 2021, order. Any attempt to argue the contrary is simply gaslighting.")

Defendants have previously taken gaslighting the Court to extremes in this litigation, claiming in several filings for more than a year that their redactions of passenger names and contact details from documents that the Court had ordered them to produce were mandated by federal law. They explicitly argued to the Court, on multiple occasions, that "federal courts applying a federal regulation establish that airlines must protect the identities of passengers absent an order expressly prohibiting redactions . . . [and] [n]o such order has been entered in this case." *See* ECF 145 at p. 2. Referring to the same alleged rule of law in an earlier brief, Defendants argued "it cannot reasonably be concluded that Frontier's adherence to that law warrants sanctions at the highest level," ECF 134 at p. 12. Never mind that Plaintiffs were not asking in that particular motion for "sanctions at the highest level" (they were merely asking the Court to order the production of the documents without the redactions, *see* ECF 128 at p. 20), there never was any such "law" mandating redaction of passenger information "absent an order expressly prohibiting redactions" in the first place. As Judge Dawson recognized in his February 13, 2023 Order in this case:

> The plain language makes clear that the regulation does not protect passenger information privacy. The contact information § 243.9(c) refers to is for emergency contacts of flight passengers, and not the passenger information. Also, a covered flight segment does not include a domestic flight, like the flight at issue here, which began in North Carolina and ended in Nevada. Frontier's reliance on this regulation as a reason for redacting the information is inconsistent with the plain language of the regulation.

ECF 232, at p. 7. Defendants did not invent the sham argument concerning 14 CFR § 243.9(c); it was the product of a gaslighting effort by the airlines and their defense bar that dated back to 1999, *see* ECF 128, pp. 16-20, and cases cited therein. Yet Defendants *did* invent from whole cloth the "absent an order expressly prohibiting redactions" add-on, and they did actively promote the sham argument in this case for over a year, reaping its benefits by limiting the information that they provided to Plaintiffs.[4] It defies all reason to assume that persons connected with an industry that depends for its daily safe operations on accurate readings of, and compliance with, the Federal Aviation Regulations, *see U.S. v. Emerson,* 927 F. Supp. 23, 25 (D. N.H. 1996), innocently failed to understand the plain language of one of them. A far more credible explanation is that the airlines intentionally foisted a false narrative on the courts to prevent passenger plaintiffs from obtaining the names and contact details of potential witnesses to the airlines' alleged torts and discriminatory practices. In other words: gaslighting.

In their Response to the instant Motion, Defendants employ gaslighting in several instances. They begin by claiming that "Defendants were forced to file a motion to compel after Plaintiffs objected to Defendants completing a Rule 35 examination of A.D." ECF 256 at p. 3. That "Background" assertion is apparently designed to make Plaintiffs appear unreasonable in the eyes of the Court, and it is unfounded. From the outset, Defendants insisted that the Rule 35 examination would be conducted only by Dr. Holland. From the outset, Plaintiffs responded that they would likely *agree* to a Rule 35 examination conducted by any other psychologist. *See* Exhibit A, at ¶ 5 & Exh. 6. The motion Defendants filed was necessitated by their own unwavering insistence on using Dr. Holland to the exclusion of every other licensed psychologist in Nevada or North Carolina.[5]

---

[4] The Court has, however, upheld their redactions on other grounds.
[5] At one point (February 27, 2022), Plaintiffs' lead counsel wrote in frustration to Defendants' lead counsel, "As I said on the telephone recently, I have been involved in personal injury litigation for

Defendants then argue that "Judge Dawson did not order the production of test data, contrary to Plaintiffs' contention." ECF 256 at p. 3 (underlining in original). As in the New York Supreme Court case cited above, that astounding assertion amounts to asking the Court to disbelieve what it can see with its own eyes. Defendants explicitly represented, in support of their motion for the Rule 35 examination, that certain tests would be administered and that "[t]he raw data generated from these tests would be produced to Plaintiffs." ECF 180, at p. 8. They cited as support for their representation Exhibit C to their motion, which was a Protocol for the proposed examination. The Protocol states: "Plaintiffs are entitled to results of tests, including raw data." ECF 180-3. Judge Dawson acknowledged that Plaintiffs would receive the raw data, *in an Order.* ECF 231, at p. 3. In other words, Defendants offered, and the Court accepted. "Any attempt to argue the contrary is simply gaslighting." *DR Distributors, LLC, supra.*

Defendants also argue that "[u]nfortunately, Plaintiffs failed to request the data, and failed to engage in a Rule 37 conference, causing this unnecessary issue to be litigated." ECF 256 at p. 10. No formal request by Plaintiffs was necessary, because Defendants represented as an integral part of their Rule 35 motion that they would provide the raw data, and the Court accepted that representation in specifying "the time, place, manner, conditions, and scope of the examination . . . ." Fed. R. Civ. P. 35(a)(2)(B). In a further example of combined whataboutism and gaslighting, Defendants then claim it is "ironic" that "[i]t was Defendants who requested the production of Plaintiffs' expert files in written discovery, subpoenaed Plaintiffs' experts' files, and then recently requested the disclosure of Plaintiffs' psychology experts' test data prior to Dr. Holland having to produce her report." ECF 256 at p. 11. That assertion omits several pertinent facts. Defendants did serve a formal request for production of Plaintiffs' expert files, but they served it on October 4, 2019, before Plaintiffs had

---

over three decades, and I cannot recall ever running into a situation like this one, that screams, 'Just propose a different doctor!'" *See id.*

retained any psychologist experts. Plaintiffs served a timely and valid objection to the request, noting among other infirmities that it was premature and violated Rule 26(b)(3) and (b)(4)(C), and Defendants never filed a motion to compel. *See* Exhibit A at ¶ 6. That request was therefore a nullity. More than three years later, Defendants issued deposition subpoenas for Plaintiffs' two psychologist experts that stated the production of each expert's "expert file" "is expected" at the deposition, without mentioning raw test data. The experts appeared at their depositions with their files. Defense counsel questioned both experts for a combined total of seven hours, and never asked them a single question about raw test data, nor asked them to display the contents of their files. *Id*. As shown in Exhibit H to Defendants' Response, their "recent[ ] request[ ]" for the experts' test data, which was the only time they specifically requested that data, was made informally in an email sent by their counsel on July 5, 2023, more than four months past the discovery cutoff. Plaintiffs were not obliged to respond to the untimely and informal request, but their counsel did, as a courtesy, point out that he was not in a position to provide it.[6] The two situations are as distinct as apples from oranges: Defendants made a representation to the Court that they would provide Holland's raw test data, which the Court memorialized in an Order, while Defendants never made a procedurally valid written request for Plaintiffs' experts' test data and neglected to ask any questions about it during seven hours of depositions, and no Order required Plaintiffs to produce it.

    In perhaps the most egregious example of gaslighting the Court in the Response, Defendants assert in "Background" paragraph I that Magistrate Judge Albregts' March 6, 2023 Order (ECF 235) left the 30-day report disclosure language of his September 30, 2022 Order (ECF 210) "in place." ECF 256 at p. 4. Their assertion totally ignores the sections of the March 6 Order that flatly rejected the framework of that 2022 Order and demanded that the parties submit "concrete deadlines"

---

[6] Beyond the procedural irregularities of Defendants' request, Plaintiffs' counsel was never in possession of the requested raw testing data. *See id.*

comprised of "calendar dates" instead of the prior "30 days thereafter" language. ECF 235 at p. 2. Moreover, Defendants then proceed to improperly weave the "'30-day thereafter' framework" back into everything that occurred subsequently. *See* ECF 256 at pp. 5-6. In doing so, they are asking the Court not only to disbelieve what it can see with its own eyes, but also what it wrote in the March 6 Order.

Defendants then proceed to reprise the "Plaintiffs'-counsel-never-said-otherwise-so-we-thought-we-had-an-agreement" argument that worked well for them on the last motion for sanctions. However, they have contrived the elements of the alleged "agreement" without any input from Plaintiffs. The wording of Paragraph N is particularly egregious on that point. Referring to emails that did nothing more than agree on the July 25 date for the rescheduled Rule 35 examination, Defendants weave an unsupported account of "what seemed to be an agreement," *see* ECF 256 at p. 6, lines 2-13. Their claim takes so many things out of context that it is necessary to break their language down into its separate elements to explain them all in their proper context. It brings to mind the Eastern District of California's comment in *Krauss, supra*: "While creative, Plaintiff's . . . argument does not succeed in gaslighting the Court." Here are the elements and their proper context:

- ***Based on the parties' counsel reaching an "agreeable date for the examination,"***

The phrase between the quotation marks comes from the Court's March 6, 2023 Order. It is out of place as used in Defendant's Response, because it was a preamble to the "concrete deadlines" that the parties were ordered to submit in a stipulation, and did submit in a stipulation that became an Order on June 7, 2023. The Court was simply instructing the parties to fix a date for the examination prior to submitting the three proposed concrete dates. As noted in this Motion, that Order set a hard calendar date of July 31, 2023 for Defendants to disclose Dr. Holland's report.

- ***the previous stipulations that Dr. Holland's report would be due 30 days after the completion of the Rule 35 examination,***

Those previous stipulations became nullities with the entry of the Court's March 6, 2023 Order, which expressly stated that no further reference should be made to them because "This order will stand on its own." Contrary to Defendants' implicit suggestion, no agreement was ever made to revive the prior stipulations, which would have been a plain violation of the Court's March 6 Order. *See* Exhibit A, at ¶ 7.

- ***and the recognition by the Court that "the parties' proposed schedule depends on the date that Dr. Holland conducts her examination," (ECF No. 235),***

This clause is also misused in the Response. Defendants use it in the Response to suggest that the Court ordered a rolling framework that was dependent on the date of the examination, which the Court explicitly rejected in its March 6 Order.

- ***it was not contemplated that Plaintiffs' counsel had a perspective that diverged from what seemed to be an agreement that the "30-day" framework applied with respect to the July 25, 2023, date for the rescheduled Rule 35 examination.***

Note Defendants' telling use of the passive tense. There is absolutely no factual basis for defense counsel to think that any agreement had been reached with Plaintiffs' counsel to violate the Court's instructions and continue using the rolling 30-day framework that the Court had explicitly rejected. Plaintiffs' counsel had only agreed to a set of concrete deadlines as the Court had ordered. Unlike Defendants' previous claim in this case of an implicit "agreement" to await Judge Dawson's ruling on objections before expecting production of the compelled documents, this time there was a "concrete deadline" on the docket. There was no possible justification for defense counsel to believe that there "seemed to be an agreement" among counsel to disregard that deadline. (Note also that Defendants have not produced any documentary evidence to substantiate the existence of such an agreement, because none exists).

- ***If counsel for the Plaintiffs did have a different perspective, it would have been at odds with his proposal to hold the Rule 35 examination later than July 31, 2023***

After the urgent call from defense counsel stating that Dr. Holland's flight had been canceled the evening before the planned June 29 examination, Plaintiffs' counsel did nothing more than provide a set of dates that A.D. and his father could potentially be available in the future, based on dates Peter DelVecchia had given him. *See* Exhibit A at ¶ 7. The first of the three "concrete deadlines" of the June 7 Order was the deadline for Defendants to disclose Dr. Holland's report by July 31, 2023. It was not incumbent on Plaintiffs' counsel to remind defense counsel that he needed to move for enlargement of that deadline if he selected a new examination date that fell outside of it. Plaintiffs could just as easily argue that they assumed Defendants planned to comply with the established deadline since their counsel chose a date that was several days in advance of it.

- ***(the date Dr. Holland's report was due based on the exam taking place on June 29, 2023)***

The characterization is inaccurate. It was the date her report was due based on the Court's June 7 Order of "concrete deadlines."

    As illustrated above, Defendants' "substantial justification" argument is entirely of their own invention. From an objective standpoint, they were not justified in ignoring the Court's Orders. They have therefore failed to carry their burden on that issue. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106-07 (9th Cir. 2001). Moreover, they lack justification for suggesting that *Plaintiffs* should likewise ignore the Court's concrete deadlines and proceed to take Dr. Holland's deposition "if and when they should choose to depose her." ECF 256 at p. 12. Plaintiffs will not violate the Court's concrete deadlines, and they were unable to take Dr. Holland's deposition prior to the September 29, 2023 deadline imposed by the June 7 Order because they could not accurately test her "credibility and methods," *see id.* at p. 12, without the raw test data that she and Defendants refused to provide. Defendants have therefore also failed to carry their burden of showing that the violations were harmless, and exclusion of the expert is appropriate. *See* 259 F.3d, at 1106-07.

Defendants' attempt to paint Dr. Hollands' violation of the Court's conditions for the Rule 35 examination as "innocuous and inconsequential," *id.* at p. 13, treats the Court's August 5, 2022 Order (ECF 195) as nothing more than "a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 610 (9th Cir. 1992). Their suggestion that a corporation that is worth at least $566 Million as of its latest SEC filing should only be fined something like $75 further supports that cavalier treatment of the Court's Orders. Their claim that some of the violations were unintentional is irrelevant since Rule 16(f) applies regardless of intent. *Lucas Auto Eng'g, Inc. v. Bridgestone/Firestone, Inc.,* 275 F.3d 762, 769 (9th Cir. 2001).[7]

Finally, their suggestion that Plaintiffs' counsel should have met and conferred with defense counsel over the violations is invalid because no meet and confer session or certification is required for a Rule 37 motion. *See, Hoffman v. Construction Protective Svcs. Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008); *Cardoza v. Bloomin' Brands, Inc.*, Case No. 2:13-cv-01820-JAD-NJK (D. Nev. Nov. 12, 2015), at n.1. It is difficult to envision what a meet and confer session might have accomplished, since the examination and the violation of the Orders had already occurred.[8]

### Conclusion

For all the reasons set forth in this Motion, and based on the legal precedent cited, the Court should exclude Dr. Holland from testifying in this case. In the alternative, it should grant the alternative relief Plaintiffs have requested.

DATED this 5th day of October, 2023.

      /s/ *John D. McKay*
John D. McKay
***Attorney for Plaintiffs Peter DelVecchia and A.D., a Minor***

---

[7] Dr. Holland's credentials, *see* ECF 256 at p. 12, are equally irrelevant to the issue of whether she violated the Court's Orders.
[8] The certification language of Rule 37 applies only to subpart (d), which is inapplicable here.