```
┌─────────TRANSCRIBED FROM DIGITAL RECORDING──────────┐
```

1                    UNITED STATES DISTRICT COURT

2                         DISTRICT OF NEVADA

3

4   PETER DELVECCHIA et al.,        )
                                    ) Case No. 2:19-cv-01322-KJD-DJA
5          Plaintiffs,              )
                                    ) Las Vegas, Nevada
6          vs.                      ) Monday, December 4, 2023
                                    ) Courtroom 3B
7   FRONTIER AIRLINES, INC., et     )
    al.,                            ) Motion Hearing
8                                   )
           Defendants.              ) **C E R T I F I E D   C O P Y**
9                                   )
                                    )
10  ─────────────────────────────────)

11

12                     TRANSCRIPT OF PROCEEDINGS

13           BEFORE THE HONORABLE DANIEL J. ALBREGTS,
                  UNITED STATES MAGISTRATE JUDGE

14

15

16

17   APPEARANCES:                See next page

18

19   DIGITALLY RECORDED:         Liberty Court Recorder (LCR)
                                 10:03 a.m. - 10:36 a.m.
20
     RECORDED BY:                J. Ries
21

22   TRANSCRIBED BY:             Samantha N. McNett
                                 Samantha_McNett@nvd.uscourts.gov
23

24

25   Proceedings recorded by electronic sound recording; transcript
     produced by machine shorthand and computer-aided transcription.

─────── TRANSCRIBED FROM DIGITAL RECORDING ───────

1   APPEARANCES:

2   For the Plaintiffs:

3          **JOHN MCKAY, ESQ.**
           PARK AVENUE LAW, LLC
4          201 Spear Street, Suite 1100
           San Francisco, California 94105
5          434-531-9569

6

    For the Defendants:

7
           **BRIAN MAYE, ESQ.**
8          HINSHAW & CULBERTSON, LLP
           151 North Franklin Street, Suite 2500
9          Chicago, Illinois 60606
           312-422-5713
10
           -AND-
11
           **CHARLES MICHALEK, ESQ.**
12         ROGERS MASTRANGELO
           700 South 3rd Street
13         Las Vegas, Nevada 89101
           702-383-3400
14
                                    *  *  *
15

16

17

18

19

20

21

22

23

24

25

─TRANSCRIBED FROM DIGITAL RECORDING─

1        LAS VEGAS, NEVADA; MONDAY, DECEMBER 4, 2023; 10:03 A.M.

2                          --oOo--

3                     P R O C E E D I N G S

4        THE COURTROOM ADMINISTRATOR:  Peter DelVecchia versus

5   Frontier Airlines, et al., 2:19-cv-1322-KJD-DJA.  This is

6   before the Court on motion docket 254.

7        Counsel, please make your appearance for the record.

8        MR. MCKAY:  John McKay for the plaintiffs, your Honor.

9        THE COURT:  Good morning, Mr. McKay.

10       MR. MCKAY:  Good morning, sir.

11       MR. MAYE:  Brian Maye and Charles Michalek for

12  defendants, your Honor.

13       THE COURT:  All right.  Good morning.

14       MR. MAYE:  Good morning.

15       THE COURT:  All right.  We are here on number 254,

16  which is plaintiff's motion for sanctions related to the

17  Rule 35 examination.

18       Additionally, at number 297, plaintiff filed a request

19  to file a reply to the motion.  Apparently, there was some

20  issues with getting that filed timely and plaintiff asks to

21  allow that reply brief to be filed and for my consideration.  I

22  will grant 297 allowing that reply.  It does appear as though

23  there was some problem with the efforts of filing it at that

24  time and so I have looked at it and I will consider that.

25       So Jerry, make sure -- that was gavelled, so make sure

—TRANSCRIBED FROM DIGITAL RECORDING—

1  that that's granted so that it is ungavelled --

2          THE COURTROOM ADMINISTRATOR:  Yes, your Honor.

3          THE COURT:  -- after today's hearing.

4          Also, as the parties know, on occasions that I've had

5  hearings on motions, the transcript today will be the order

6  resolving 254.

7          So with that, let me make my record about the context

8  of the case, the motions, the pleadings, the legal standard,

9  and then we'll talk a little bit about the motion and I want to

10  hear from -- from the parties.

11          So for context, this is a discrimination action

12  arising out of Frontier employees' separation of Peter

13  DelVecchia and his adopted son, A.D., during a flight because

14  the employees erroneously suspected human trafficking.

15  Plaintiff alleges that the employees racially profiled them.

16  Plaintiff sued defendants for compensatory and punitive damages

17  alleging claims for discrimination, a violation of Title 41

18  United States Code Section 1981, intentional infliction of

19  emotional distress, false imprisonment, battery and assault,

20  and defamation (unintelligible).

21          Plaintiff, in their motion, moves to exclude the

22  defendant's expert, Stephanie Holland, or for production of

23  recordings of examinations of plaintiff, A.D., and an extension

24  of the deposition deadline.  They argue the defendants violated

25  the Court's order by disclosing the expert report three weeks

TRANSCRIBED FROM DIGITAL RECORDING

1  after the deadline, the fact that Dr. Holland's report does not

2  contain her raw testing data, the fact that Dr. Holland

3  improperly recorded the examination and violated -- in

4  violation of my order on her cell phone, and that she conducted

5  the examination in an adversarial manner.

6        The plaintiff asks that if I do not exclude her

7  testimony, that I at least allow them to listen to the

8  recording, that it be produced along with the raw data, and

9  that I extend discovery for four weeks so that they -- from the

10 production date so that they can consider that before deposing

11 the doctor and before noticing their own expert witness or a

12 rebuttal witness.

13       Defendant responds that plaintiff never raised these

14 issues with the defense and did not attempt to meet and confer

15 with the defendant before filing the motion.  They argue the

16 untimely disclosures of the report was the result of a number

17 of circumstances including the rescheduling of the examination

18 and that, in any event, untimeliness of the disclosure is

19 harmless.

20       As to the raw data, defendants argue that the Court

21 never ordered the data to be turned over and that if plaintiff

22 would have asked for it, they would have provided it.

23       Defendant argues that Dr. Holland never conducted the

24 examination in an adversarial manner and that her recording of

25 the examination did not intentionally violate the Court's order

— TRANSCRIBED FROM DIGITAL RECORDING —

1   and was done to accurately capture A.D.'s responses and did not

2   otherwise prejudice the plaintiff.

3         The reply that I previously referenced raises issues

4   like gaslighting, what-about-ism, attacks defense counsel,

5   describes many of the plaintiff's professional accomplishments,

6   re-raises prior Court decisions which the plaintiff disagrees,

7   but as best as I can tell, plaintiff, essentially, reiterates

8   that the defendant has violated the Court's prior orders

9   regarding the examination and that sanctions are warranted for

10  the violations.

11        Now, as it relates to the legal standard, first,

12  sanctions for disobedience of a pretrial order, Federal Rule of

13  Civil Procedure 16(f)(1)(C) allows a party on motion or on its

14  own to issue "any just orders" including those authorized by

15  Federal Rule of Civil Procedure 37(b)(2)(A), sections (ii)

16  through (vii) if a party fails to obey a scheduling or other

17  pretrial order.

18        Sanctions under Rule 37(b)(2)(A)(ii) include

19  prohibiting the disobedient party from supporting or opposing

20  designated claims or defenses or from introducing designated

21  matters into evidence.  Local Rule 11-8(e)  provides that the

22  Court may, after notice and an opportunity to be heard, impose

23  any and all appropriate sanctions on a party or an attorney who

24  fails to comply with any order of the Court.

25        Now, as it relates to sanctions related to disclosing

--- TRANSCRIBED FROM DIGITAL RECORDING ---

1   witnesses, Federal Rule of Civil Procedure 26(a)(2)(D) provides

2   that a party must disclose expert witnesses at the times and in

3   the manners -- the sequence that the Court orders.  Federal

4   Rule of Civil Procedure 37 gives teeth to Rule 26 disclosure

5   requirements by forbidding the use at trial of any -- at trial

6   of any information that is not properly disclosed.  That's

7   Goodman vs. Staples the Office Super-Store, LLC, 644 F.3d 817

8   at 827.  That's a Ninth Circuit case from 2011.

9           If a party fails to identify a witness as required by

10  Federal Rule of Civil Procedure 26(a), under Rule 37(c)(1),

11  that party is not allowed to use that witness to supply

12  evidence on a motion at a hearing or at trial unless the

13  failure was substantially justified or is harmless.  In

14  connection with or instead of the sanctions of excluding the

15  witness, the Court may, on motion and after giving an

16  opportunity to be heard, order payment of the reasonable

17  expenses, including attorney's fees, caused by the failure,

18  inform the jury of the party's failure, and impose other

19  appropriate sanctions including any of the orders listed in

20  Rule 37(b)(1)(A), (i) through (vi).

21          District Courts have identified and the Ninth Circuit

22  has acknowledged several factors to guide the determination of

23  whether substantial justification and harmlessness exists

24  including prejudice or surprise to the party against whom the

25  evidence is offered, the ability of that party to cure the

—— TRANSCRIBED FROM DIGITAL RECORDING ——

1   prejudice, the likelihood of disruption of the trial, and bad

2   faith or willfulness and not timely disclosing the evidence.

3   That's Liberty Insurance Corporation vs. Brodeur, 41 F.4th 1185

4   at 1191 through 92.  And that's a Ninth Circuit case from 2022.

5           And now, as it relates to the independence of medical

6   examiners, though commonly referred to as an independent

7   medical examination, there is nothing in the rule requiring

8   that the examiner be independent or unconnected to any adverse

9   party.  That's Hernandez vs. Vanveen.  That's a 2015 District

10  Court case from this district.  It's found at LEXIS 606683.

11          Indeed, it is often although not always the case that

12  a Rule 35 examiner also serves as a Rule 26 expert.  And that's

13  the same case.  That same case also stands for the proposition

14  that a deposing party may depose a Rule 35 examiner who also

15  serves as a retained or specially employed nontestifying

16  expert.  And finally, that case stands for the proposition that

17  an examiner should conduct an exam in as non-adversarial a

18  manner as possible.

19          So with that, Mr. Maye, not withstanding my comments

20  about the reply, I think the -- the plaintiff raises a good

21  point.  You -- you did the examination in contravention of my

22  order.  And she recorded it.  Why did she record it?

23          MR. MAYE:  First, your Honor, a note of clarification.

24  The docket entry 297, that did not relate to this motion.  It

25  related to the motion for summary judgment.

───── TRANSCRIBED FROM DIGITAL RECORDING ─────

1          THE COURT:  Oh.  It did?  I'm sorry.  Was the reply

2     timely on this one then or?

3          MR. MAYE:  It was, your Honor.

4          THE COURT:  All right.  We must have missed that then.

5     Thank you for that correction.

6          Jerry, there's a lot of things on this docket.  And so

7     I was in error.  So don't do anything with 297.  I don't know

8     if that's -- that's probably gavelled for Judge Dawson.

9          So thanks for that correction.

10         MR. MAYE:  Sure, your Honor.

11         THE COURT:  Go ahead.

12         MR. MAYE:  With respect to the recording, Dr. Holland

13    is a Nevada psychologist and she does examinations often in

14    Nevada and it's pretty standard in Nevada to record

15    examinations.

16         When we advised Dr. Holland about your Honor's order,

17    the parameters, it appeared, to us, she was clear on those

18    parameters.  Ultimately, what we think happened is the IME

19    ultimately got delayed and I think she just forgot or, you

20    know, didn't -- didn't review the information that we

21    previously provided to her.

22         But, in any event, she did use a recording device.

23    And it wasn't done in bad faith.  It was, you know, an

24    inadvertent violation of this Court's order.  And ultimately,

25    our view is it didn't prejudice plaintiffs.  And we would

—TRANSCRIBED FROM DIGITAL RECORDING—

1    invite your Honor to listen to the recording.  We have not

2    listened to the recording.

3              THE COURT:  Is it the whole -- how long was the exam?

4              MR. MAYE:  The exam, I believe, was approximately four

5    hours, and it's our understanding the recording was

6    approximately 25 minutes.

7              THE COURT:  So the whole exam wasn't recorded?

8              MR. MAYE:  That's correct, your Honor.  That is what

9    has been represented to us by Dr. Holland.

10             THE COURT:  So what she -- why record some of it and

11   not others?

12             MR. MAYE:  I think what -- what she represented to us

13   was she turned the recording on at some point and the recording

14   turned itself off and she never turned it back on.  So it

15   wasn't on her mind to -- to turn it back on.

16             THE COURT:  But you're telling me the purpose of her

17   to turn -- at least if I'm reading your papers correctly, that

18   she had the recording to make sure that -- I -- you describe it

19   as a protection for A.D. so that the answers are accurate, the

20   report is accurate, and that she's hearing him correctly.

21             Isn't that what she -- why she did this?

22             MR. MAYE:  Yeah.  I think --

23             THE COURT:  So it goes off after 20 minutes and she

24   doesn't care?  That sure seems, to me -- I mean, if she needs

25   it for that purpose, then she needs it on the whole time and

—TRANSCRIBED FROM DIGITAL RECORDING—

1   she needs to make sure it's on.  That seems like a very

2   disingenuous statement that, "I recorded 20, 25 minutes of a

3   six-hour -- or four-hour interview, and, oh, I forgot it" --

4   and it -- I mean, that's not -- that's not ringing true to me.

5           MR. MAYE:  Your Honor --

6           THE COURT:  I'm not saying it for you.

7           MR. MAYE:  Yeah.

8           THE COURT:  I'm talking about your doctor.

9           MR. MAYE:  Yeah.  She represented to us that she does

10  this out of routine, and in this case, she did it out of

11  routine.  And -- and something happened that turned the

12  recording off.

13          In any event, your Honor, you know, we -- we would

14  invite you to listen to the whole recording.

15          I mean, Dr. -- Dr. Holland is a very -- very respected

16  professional in the State of Nevada.  She is -- she is -- is

17  highly-respected, very professional, and there was no bad faith

18  here.  So it -- you know, she --

19          THE COURT:  We're in a highly contentious case in

20  which the parties are disagreeing over all aspects of

21  discovery, over all aspects of things in this case.  I -- you

22  know, we're up to 300 documents filed on the docket.  And this

23  is the case where she inadvertently, in good faith, records the

24  -- the examination?

25          MR. MICHALEK:  Your Honor, (unintelligible) be heard

—TRANSCRIBED FROM DIGITAL RECORDING—

1   on the bad faith issue?

2          As the Court well knows, the -- the legislature passed

3   AB244 --

4          THE COURT:  Oh, I know.

5          MR. MICHALEK:  -- and --

6          THE COURT:  I got in a discussion Saturday night with

7   the discovery commissioner about that.  We're not in State

8   Court.  It's not a substantive -- it's a procedural -- we've

9   founded a procedural aspect so that it's -- it doesn't apply in

10  Federal Court.  Until the Ninth Circuit tells me otherwise,

11  that's -- that's the law.

12         MR. MICHALEK:  And I certainly understand that.  I

13  just want to make the point that the plaintiff's bar got that

14  statute passed specifically to overturn and overrule Rule 35

15  examinations so that -- so that AB244 applied.

16         And the -- and if you remember the prior court case

17  where the Supreme Court said, well, that was unconstitutional,

18  is because there wasn't a remedy in that statute.  Well, there

19  is now.  And so that side of the aisle -- and I'm not saying I

20  agree or disagree, but that side of the aisle is saying, no,

21  no, no, these exams did -- the statute was made to trump

22  Rule 35 exams.  That's -- that's all I want to put on the

23  record.

24         THE COURT:  Well -- all right.  And why wasn't the

25  report -- I mean, why are we three, four weeks late on the

TRANSCRIBED FROM DIGITAL RECORDING

1   report?

2          I mean, again with this case, it would seem that you

3   wouldn't want to have any issues being raised by the other side

4   not following the orders.  And it just gets -- it -- you know.

5          MR. MAYE:  Your Honor, for probably more than a year,

6   multiple orders, the -- the agreement between the parties and

7   the Court's order was that the report would be issued 30 days

8   after the completion of the examination.  Ultimately, at some

9   point, your Honor said, well, once you get that examination

10  deadline set, you want a new order to set on the record when

11  that examination was and that the report would be due 30 days

12  thereafter.  And we did that.  So we had a date for the

13  examination, and 30 days thereafter, our report was due.

14          Our doctor went to the airport.  Her flight was

15  cancelled.  She could not get to North Carolina.  And, of

16  course, we -- we offered to have this in North Carolina to

17  accommodate plaintiffs.  So she had to go to North Carolina

18  to --

19          THE COURT:  I think I ordered it in North Carolina,

20  but -- anyway.  Go ahead.

21          MR. MAYE:  And -- so contacted plaintiff's counsel,

22  said she cannot get to North Carolina to complete the

23  examination tomorrow.  So we'll have to reschedule.

24  Plaintiff's counsel said that's fine.  We agreed to a date.

25  Plaintiff's counsel didn't raise any issue.  Didn't say, wait a

——— TRANSCRIBED FROM DIGITAL RECORDING ———

1   second here, the examination would be in violation of the court

2   order because we have on the -- there's been a order entered

3   setting the date for the examination.  And the report was due

4   30 days thereafter.

5        The parties agreed to a new deadline, a new date for

6   the IME, and given that it's always been understood and always

7   an order by the Court that we get 30 days thereafter to submit

8   the report, we never thought it would be an issue.  We never

9   even thought that --

10       THE COURT:  So was the report then after the -- after

11   the act of God or whatever the problem was getting to Carolina,

12   you reset it.  Was -- did you provide them the report 30 days

13   after that date?

14       MR. MAYE:  Yes, your Honor.  Yes, your Honor.

15       And after that --

16       THE COURT:  Essentially, you thought because you moved

17   it, you were complying with it?  It was -- okay.

18       MR. MAYE:  That's right.  That's right.

19       And we never -- plaintiff's counsel never indicated to

20   us that that wasn't acceptable.  And had we known that there

21   would have been an issue with that, we would have filed a

22   motion with the Court and I assume it would not have been

23   objected to.

24       THE COURT:  I'm more inclined on that issue to agree

25   with you, then, if it was within 30 days of the time of the

─── TRANSCRIBED FROM DIGITAL RECORDING ───

1  reschedule.  Then it would have at least complied with the

2  spirit of the order given that there was a change unbeknownst

3  to me with the flight schedule and everything.  And that

4  happens.  And so that's not wholly unreasonable.

5          What about the -- I didn't see, in looking at my order

6  and Judge Dawson's order on this issue, that I ordered the raw

7  data, but it seems, from your pleadings, that you would turn

8  that over if -- if they ask for it?

9          MR. MAYE:  Of course, your Honor.  That was not an

10  issue.

11          We -- when we objected -- when we responded to

12  plaintiff's motion for protective order -- or I'm sorry --

13  maybe -- I think it was our motion -- motion to compel Rule 35

14  examination, plaintiffs objected to it.  We said, listen, we'll

15  provide the raw data.  We'll make it available.  And that's as

16  far as that went.  So that was reflected in -- I think in your

17  order and Judge Dawson's order that we would make it available.

18  We have never heard from plaintiff's counsel that, hey, where's

19  the raw data?  We want the raw data.

20          And in any event, your Honor, the raw data would have

21  to be transferred from psychologist to psychologist.  We don't

22  have the raw data.  It can't be produced to us.  It has to go

23  from our expert to their expert.  So if -- if plaintiffs asked

24  us, hey, we want the raw data, can you arrange to transfer it

25  to our psychologist, of course, we would do that.

───── TRANSCRIBED FROM DIGITAL RECORDING ─────

1          Just like we've asked for their raw data, you know.

2   They have not produced it.  We also issued a subpoena to their

3   experts for raw data.  Haven't received it.

4          So we are absolutely willing to provide --

5          THE COURT:  It --

6          MR. MAYE:  -- your Honor.

7          THE COURT:  Well -- and those last comments, that just

8   fuels the tit for tat.

9          MR. MAYE:  I know, your Honor.

10          THE COURT:  I mean, boy, this is --

11          MR. MAYE:  I apologize.

12          THE COURT:  -- a case that has a lot of tit for tat.

13          MR. MAYE:  Yes.  I apologize.  But --

14          THE COURT:  All right.

15          MR. MAYE:  -- the point is we're -- we're willing to

16   provide the raw data.

17          THE COURT:  So that's all I have.  I want to ask

18   Mr. McKay a couple things.

19          And so I guess the -- the recording, I -- I,

20   obviously, have a problem with because that's in violation of

21   my order.

22          The -- what -- but the late -- I mean, wouldn't it be

23   30 days from the date of the examination?  I mean, we wouldn't

24   keep the same date if we moved the examination three weeks.

25          MR. MCKAY:  Do you want me here or there?

TRANSCRIBED FROM DIGITAL RECORDING

1        THE COURT:  Wherever you're comfortable.

2        MR. MCKAY:  Okay.  And I -- just on that issue, I --

3   before I answer your question, I apologize.  The very first

4   time I appeared in front of you, I asked if I should stand and

5   what I meant to say was should I stand at the podium, and I

6   somehow didn't get that out.

7        THE COURT:  All right.

8        MR. MCKAY:  And I apologize sincerely about that.

9        THE COURT:  No need to apologize.  I honestly don't

10  even recall that aspect of it.  But...

11       MR. MCKAY:  So, your Honor, the -- Mr. Maye's argument

12  doesn't give any effect to the language of your March 6th

13  order.  Your March 6th order said, no, no, no, we don't want

14  anymore of this 30 days after an unknown date.  We want

15  concrete deadlines.

16       Now, I (unintelligible) to point out that the date of

17  the exam was not part of that order.  The three things that we

18  were ordered to provide were a date for the disclosure of

19  Dr. Holland's report, a date for disclosure of a rebuttal

20  expert, and a date for the deposition of Dr. Holland.  So that

21  with respect to moving the date of the exam, that didn't have

22  any effect on the order that you had -- that you ultimately

23  entered.  So as far as the 30 days go, we had been dealing with

24  that as just a pro forma.

25       But I don't know how long it takes Dr. Holland to

— TRANSCRIBED FROM DIGITAL RECORDING —

1  issue a report.  When Mr. Maye asked for dates and I gave him

2  dates and he chose one that was seven days before the deadline

3  or six days -- I forget -- before the disclosure deadline, I

4  had just assumed that if he -- if she needed more time, he

5  would move the Court.  I couldn't extend that.  I mean, that's

6  the --

7          THE COURT:  I guess I didn't foresee in my order that

8  something would come up in terms of the travel.  And I guess

9  I -- I will now, in future orders, consider whether or not

10  there might be travel issues or things that -- that come up.

11  Because I -- I would have to say, as I sit here, I mean, I

12  understand what you're saying but it would have been my intent

13  to say, look, 30 days from when it happened.  But I also recall

14  wanting to have firm dates because I didn't want to have this

15  stuff out there.

16          MR. MCKAY:  Exactly.

17          THE COURT:  All right.  So let me -- I -- I'm inclined

18  to -- I'm not inclined to take the drastic step of excluding

19  the testimony because I understand the change in the law in

20  Nevada.  And you may or may not be aware of that, but it has to

21  do with these examinations.  And if she does a lot of these

22  examinations in State Court, there might have been some

23  confusion.  And I -- I just don't have enough before me to

24  think that she willfully, you know, intentionally looked at

25  this order and said, "I'm not going to follow this.  I'm going

—————— TRANSCRIBED FROM DIGITAL RECORDING ——————

1  to do my own thing."

2          But she recorded some of it.  And I think that -- in

3  violation of that order, there has to be some sanctions, and

4  I -- and I'm inclined to grant what you've requested in the

5  alternative, which is to listen to that and they can listen to

6  it and then give you some time to -- to reopen discovery to

7  give you a limited amount of time to take that deposition and

8  do whatever you think you need to do in response to whatever

9  was recorded and why.

10          I am acutely aware that I am likely creating more

11  litigation for me as we go forward on this as it relates to the

12  depo and the like, but, again, I -- I put strict orders in this

13  because this was a very hotly contested issue, like a lot of

14  other issues in this case, and I wanted to make sure there were

15  clear parameters.  And they've been violated.

16          What other prejudice, though -- if I grant that, that

17  aspect, and don't exclude her, does that cure your prejudice?

18  Or are there other issues?  I want to give you an opportunity

19  to tell me about the prejudice you feel you and your client

20  have suffered as a result of how this examination was

21  conducted.

22          MR. MCKAY:  I would ask, your Honor, to -- to look at

23  the depo -- or the declaration of A.D.  A.D. is a very

24  well-spoken young man, but he was traumatized by this incident.

25  And he was further traumatized by the examination.  I mean,

— TRANSCRIBED FROM DIGITAL RECORDING —

1   this was really -- I get it as far as Rule 35 exams.  And I

2   think that, at some point in the future, it would be really

3   nice if the courts would come up with a better set of rules

4   for -- for Rule 35.  But I'm -- I'm always willing to agree.

5           And it has always been my experience that doctors

6   especially act very appropriately even if they're going to be

7   expert witnesses in these exams.  This was not such a case.

8           In this case, A.D. testified that he was asked about

9   his father's dating practices, the colors of his sisters'

10  skins.  He was asked why he -- he thought that white people

11  caused racism.  He was -- he was asked a number of challenging

12  questions.  He was told that his father touching his face is

13  not affection and that -- and that Dr. Holland's husband

14  doesn't touch their children's faces.  She looked at him

15  like -- like he was crazy, according to him.

16          THE COURT:  And these are all his perceptions?

17          MR. MCKAY:  These were his perceptions.

18          THE COURT:  So that leaves me with his perceptions

19  versus hers, which I'm sure are going to be diametrically

20  opposed.

21          MR. MCKAY:  Of course.

22          THE COURT:  So -- so the prejudice then is -- is the

23  retraumatization that he had with the four hours with the

24  doctor.  What else?

25          MR. MCKAY:  And then I need to deliver all this anew

─── TRANSCRIBED FROM DIGITAL RECORDING ───

1   to my expert to review so that he or she -- I have two experts

2   that had to do with one of them getting pregnant and so we --

3   we ended up with her colleague now, also retained.  So one of

4   them needs to review all of the tape, all of the raw testing

5   data and tell us what -- and the report and tell us whether the

6   report has been appropriately done or inappropriately done.

7   And we need to provide that to the Court.

8            THE COURT:  Okay.

9            MR. MCKAY:  So that's an expense for --

10           THE COURT:  So at that stage, then, you would decide

11   whether or not you need to depose --

12           MR. MCKAY:  Yes, sir.

13           THE COURT:  -- Dr. Holland?

14           MR. MCKAY:  Exactly.

15           THE COURT:  So you think that that could all be

16   accomplished within three to four weeks of receiving the raw

17   data and the -- the --

18           MR. MCKAY:  I'm speaking for people that -- you know,

19   I don't --

20           THE COURT:  That's what you put in --

21           MR. MCKAY:  I'm guessing.

22           THE COURT:  All right.  Well, you put that in your

23   pleading so -- and I was assuming --

24           MR. MCKAY:  No, I did.  I did, your Honor.  And I -- I

25   didn't do it based on contact with them.  I just assumed that

—— TRANSCRIBED FROM DIGITAL RECORDING ——

1    we could get it done.  I mean, I just made the assumption.

2           THE COURT:  Well, I assume you don't have an issue as

3    it relates to the raw data going from expert to expert as

4    opposed to going through --

5           MR. MCKAY:  No.

6           THE COURT:  -- attorneys?  Okay.

7           MR. MCKAY:  No, not at all.

8           And I would point out that they did not subpoena raw

9    data.  They subpoenaed the files.  The files showed up at the

10   depositions.  And Mr. Maye never asked about the raw data.

11          THE COURT:  Well, again, I'm not going do go down

12   that tit for tat rabbit hole.

13          All right.  Look at my notes and see if there's any

14   other questions or things I want.

15          This is what I'm going to do.  I'm going to grant in

16   part and deny in part number 254.  I'm going to deny it insofar

17   as I'm not going to exclude the testimony of Dr. Holland, but I

18   am going to order Dr. Holland to turn over whatever recording

19   she has of the examination, however long it is, the entire

20   recording.  I will order her to turn over her raw data directly

21   to the expert designated by Mr. McKay.  I presume it's one of

22   the two experts that he just referenced.

23          I will reopen discovery for the limited purpose of

24   allowing your experts to review this and consider it and advise

25   you and then you to depose Dr. Holland on these issues.

————TRANSCRIBED FROM DIGITAL RECORDING————

1          Have you already deposed her or no?

2          MR. MCKAY:  (Inaudible.)

3          THE COURT:  Okay.  Then allow you to depose

4   Dr. Holland once you've received and considered those.  But

5   I'm -- I'm going to put a four-week limit on that.  And I

6   understand we're in the holidays, but this is a very limited

7   matter.  People may need to rearrange schedules.  But we are --

8   let me find Judge Weksler's calendar.

9          The motions for summary judgment are ripe; is that

10  correct?

11         MR. MCKAY:  That's correct, fully briefed.

12         THE COURT:  And when did they become ripe?  In the

13  last month, is it?

14         MR. MCKAY:  Yes, just on the 30th.  Well, the 1st

15  because of the issue that your Honor mentioned initially about

16  the --

17         THE COURT:  The other -- the other reply?  Gotcha.

18         MR. MAYE:  Actually, the motion's not fully briefed.

19  We still have to file our -- the reply.

20         MR. MCKAY:  Oh, I apologize.

21         MR. MAYE:  Yes.  Ours was response.  Their reply is --

22         THE COURT:  All right.  And the reason I ask is four

23  weeks is literally on New Year's Day.  And as mean as this old

24  judge might be, I don't want to necessarily do that to you

25  guys.

─ TRANSCRIBED FROM DIGITAL RECORDING ─

1          MR. MAYE:  Your Honor, I'm sorry.  You said Judge
2    Weksler?
3          THE COURT:  I was just looking at her calendar because
4    we're --
5          MR. MAYE:  Judge Dawson.
6          THE COURT:  I was looking at her calendar because
7    we're in her courtroom.  That's all I referenced --
8          MR. MAYE:  Oh.  I see.
9          THE COURT:  That's all I referenced Judge Weksler for.
10         MR. MAYE:  Oh, okay.  Yes, sir.
11         THE COURT:  But as I count out the days, that puts it,
12   again, right on January 1st.
13         So I'm going to -- I'm going to give you -- I'm going
14   to open discovery until January 8th.  So that will be five
15   weeks.  Again, that takes into consideration that we're right
16   in the middle of the holidays coming up.
17         But I want that -- how long -- well, you know what,
18   I'm going to -- I mean, can you get that -- can you get that
19   over to him -- your expert get that over to them no later than
20   Friday?  Is that reasonable?
21         MR. MAYE:  I think that's reasonable, your Honor.
22         THE COURT:  Okay.  So here's what we'll do then.  I'm
23   going to order that to be turned over on December 8th, the raw
24   data, whatever the recording is.  Then what we'll do is we'll
25   go from December 8th.  That will work better.  So if I go four

———— TRANSCRIBED FROM DIGITAL RECORDING ————

1   weeks from December 8th -- I'll go five weeks and give you

2   until January 12th to address simply the issue of Dr. Holland

3   and whether you're going to depose her after your experts have

4   taken into consideration whatever it is that they consider.

5           MR. MCKAY:  And that would be the -- the actual -- so

6   the -- by the 12th, you're expecting that we would have deposed

7   her if we --

8           THE COURT:  Yes.

9           MR. MCKAY:  -- so choose?  Okay.

10          THE COURT:  Because that's the only reason I'm

11  reopening discovery and I want to make sure that that's done.

12  And the motions, you know, will be pending before Judge Dawson

13  and we'll just be waiting for a decision from him and discovery

14  will be closed.  And then once he rules on the motions for

15  summary judgement, if they're not entirely granted, we'll all

16  be back here for a settlement conference in front of me.

17          MR. MAYE:  Your Honor, one question.

18          You know, I represented that it seemed reasonable to

19  produce the raw data and the recording by Friday, but I don't

20  know how quickly Dr. Holland can do that.  I will contact her

21  immediately.

22          To extent she says, hey, she needs until -- you know,

23  she needs ten days or she's not available, you know --

24          THE COURT:  You know, it better be a -- look.  It

25  shouldn't -- I can't conceive of why she couldn't say, "You

—— TRANSCRIBED FROM DIGITAL RECORDING ——

1   know what, I'll -- I'll drop what I'm doing for an hour and

2   I'll get this raw data."  I mean, she's got to have a file on

3   it.  So, no, it's -- if there's a problem, you can raise it,

4   but I -- I am not going to look kindly on her saying, "Oh, I

5   can't get this by Friday."  It shouldn't be that much

6   information.  She should have a recording.  And she's got a

7   file on it, I'm sure.  Provide the stuff by Friday.

8           MR. MAYE:  Yeah, I --

9           THE COURT:  All right.

10          MR. MAYE:  -- agree it shouldn't be an issue.

11          THE COURT:  No, I understand.  You're -- you know, had

12  you not --

13          MR. MAYE:  (Unintelligible).

14          THE COURT:  -- of your doctor, but I can't see why

15  this would be a -- a problem providing it by Friday.  So by

16  5:00 on Friday.

17          All right.  Mr. McKay, anything else?

18          MR. MCKAY:  Nothing else, your Honor.  Thank you.

19          THE COURT:  All right.  Mr. Maye, anything else?

20          MR. MAYE:  Yes, your Honor.  One issue.

21          We've asked for the raw data from plaintiff's experts

22  related to their examination and testing of A.D.

23          THE COURT:  I presume your expert doesn't have a

24  problem shooting that raw data over to their expert in the same

25  procedure that they're doing for you?

TRANSCRIBED FROM DIGITAL RECORDING

1          MR. MCKAY:  I can make the same assumption, yeah.

2          THE COURT:  All right.  So I -- it's -- get -- get the

3    information back and forth to the experts so that's resolved.

4    All right.

5          MR. MCKAY:  By the same deadline or?

6          THE COURT:  Yeah.  Let's keep this moving.

7          MR. MCKAY:  Okay.

8          THE COURT:  All right.  Anything else?

9          MR. MAYE:  No, your Honor.

10          THE COURT:  All right.  Jerry, any questions on the

11    order?

12          THE COURTROOM ADMINISTRATOR:  No, your Honor.

13          THE COURT:  All right.  The transcript will be the

14    written order and the minute order will just reflect what we've

15    done here today.  Thank you all very much.

16          MR. MCKAY:  Thank you.

17          MR. MAYE:  Thank you.

18          THE COURT:  Have a good rest of your week.

19          (The proceedings concluded at 4:41 p.m.)

20                                    * * *

21

22

23

24

25

TRANSCRIBED FROM DIGITAL RECORDING

--o0o--

COURT REPORTER'S CERTIFICATE

     I, SAMANTHA N. MCNETT, Official Court Reporter, United States District Court, District of Nevada, Las Vegas, Nevada certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


Date:  December 7, 2023


                              /s/ Samantha N. McNett
                              Samantha McNett, RMR, CRR, CCR