CHARLES A. MICHALEK, ESQ.
Nevada Bar No. 5721
ROGERS, MASTRANGELO, CARVALHO & MITCHELL
700 South Third Street
Las Vegas, Nevada 89101
Phone: (702) 383-3400
Email: cmichalek@rmcmlaw.com

BRIAN T. MAYE, ESQ.
RICHARD C. HARRIS, ESQ.
HINSHAW & CULBERTSON LLP
151 North Franklin Street
Suite 2500
Chicago, Illinois 60606
Phone: (312) 422-5713
Email: bmaye@hinshawlaw.com
       rharris@hinshawlaw.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

PETER DELVECCHIA, individually and as next friend of A.D., a Minor,

Plaintiffs,

v.

FRONTIER AIRLINES, INC., et al.,

Defendants.

Case No.: 2:19-cv-01322-KJD-DJA

**Defendants' Motion to Seal Exhibits Attached to Plaintiffs' Response to Defendants' Motion for Summary Judgment**

**DEFENDANTS' MOTION TO SEAL EXHIBITS
ATTACHED TO PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants FRONTIER AIRLINES, INC., ("Frontier") SCOTT WARREN, and REX SHUPE (collectively "Defendants"), by their undersigned counsel, submit this Motion to Seal Exhibits Attached to Plaintiffs' Response to Defendants' Motion for Summary Judgment, and in support thereof state the following:

# INTRODUCTION

On November 30, 2023, Plaintiffs filed a Motion to File Exhibits to their Response to Defendants' Motion for Summary Judgment Under Seal. [ECF No. 280.] Therein, Plaintiffs sought to seal 13 different Exhibits (#1-2, #10, #15-16, and #22-29). On December 15, 2023, Defendants filed a Motion for Leave to File a Response to Plaintiffs' Motion. [ECF No. 305]. On January 9, 2024, the Court entered an Order [ECF No. 308] denying both Motions and directing the parties to "file a stipulation or separate motions to seal the exhibits at issue addressing the items the Court has outlined above on or before **January 30, 2024.**" (Emphasis in original.) As the parties did not agree to a stipulation on the materials to be kept under seal, Defendants bring the instant Motion and assert the following in support. Pursuant to the Court's instructions, Defendants will address Plaintiffs' Exhibit Nos. 1, 2, 6, and 10. Defendants will also address Plaintiffs' Exhibit No. 15.[1]

# ARGUMENT

As noted, the materials at issue were attached as exhibits to a dispositive motion. [ECF No. 303]. There is a "strong presumption" of granting public access to judicial records attached to dispositive motions, and those seeking to seal documents attached to dispositive motions must meet the high threshold of showing that "compelling reasons" justify maintaining secrecy. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006).

However, "access to judicial records is not absolute," as a narrow range of documents is traditionally kept secret for important policy reasons. *Id*. at 1178. Further, "compelling reasons" for maintaining confidentiality are generally shown if the disputed records might become a vehicle for improper purposes, such as gratifying private spite, promoting public scandal, circulating libelous

---

[1] Defendants have submitted their proposed redactions for the Exhibits discussed herein in accordance with LR-IA 10-4. One copy has been mailed to the Court and another copy has been mailed to Plaintiffs' counsel.

statements, or releasing trade secrets. *Id.* at 1179-80. This Court has also recognized that "information touching on business operations, proprietary information, and internal policies and procedures" can be kept under seal if there are "compelling reasons sufficient to outweigh the public's interest in disclosure of the information." *Bliss v. Corecivic, Inc.*, No. 2:18-cv-01280-JAD-EJY, 2023 U.S. Dist. LEXIS 102472, at *3 (D. Nev. June 12, 2023). "There is also an interest in keeping the information and interests of non-party employees secret." *Id.*

Most of the extensive materials at issue can generally be divided into two categories of documents: those containing Sensitive Security Information as designated by the Transportation Security Administration ("TSA") and those containing Frontier's proprietary training materials.

**A. Sensitive Security Information ("SSI")**

Defendants adopt and incorporate the assertions and authorities previously raised and cited by Plaintiffs in support of maintaining confidentiality over the materials containing and referencing SSI:

> In its special protective order governing SSI pursuant to Section 525(d) of the Department of Homeland Security Appropriations Act, 2007, Public Law No. 109-295, § 525(d), 120 Stat. 1382, 1355 (October 4, 2006) (ECF No. 126) the Court already determined that SSI should be protected from disclosure. The covered information pertains to the specifics of the "Threat Levels" created as part of the "Common Strategy" to combat acts of terrorism aboard or using airliners in the wake of the September 11, 2001 attacks. Sensitive Security Information by definition implicates important matters of national security, the disclosure of which would be detrimental to aviation security. There should be no question that such information falls within the definition of information that has "traditionally been kept secret for important policy reasons." *See Busic v. Transp. Security Admin.*, 62 F.4th 547, 550-51 (D.C. Cir. 2023) ("protecting national security is a government interest of the highest order"); *see also Corbett v. Transp. Security Admin.*, 767 F.3d 1171, 1183 (11th Cir. 2014) (denying access to SSI because the TSA determined disclosure would be detrimental to the security of transportation). [ECF No. 280, p. 2].

**B. Frontier's proprietary information contained in certain training materials**

Frontier maintains that its training materials are confidential and proprietary. Frontier takes steps to protect its training materials from public disclosure, as its training materials include

sensitive operational and competitive trade secrets. This includes Frontier's procedures developed for purposes of regulatory compliance. Frontier further strives to maintain these records as confidential due to its concerns of third parties misusing the information for purposes such as "gratifying private spite, promoting public scandal, circulating libelous statements, or releasing trade secrets. *Id*. at 1178. *Kamakana*, 447 F.3d at 1178. The risk of such misuse is Frontier's primary concern in this case. Given the history of this litigation – in which Plaintiffs have accused Defendants of condoning widespread and rampant acts of racial discrimination against its own passengers – Frontier respectfully submits that "compelling reasons" exist to maintain the privacy of its training materials discussed below.

### I.  EXHIBIT NO. 1 – PASSENGER NAME RECORDS

Exhibit 1 consists of Frontier's Passenger Name Records (PNR) for Plaintiffs. The Court stated in its Order that Plaintiffs asserted the Exhibit contains SSI, and that Defendants "[did] not address how and why the information contained in Exhibit 1 constitutes SSI such that the entire document should remain sealed." ECF No. 308, pp. 3. The Court specifically ruled as follows:

> "The Court will keep Exhibit 1 under seal and will require Defendant to file a motion or stipulation to support maintaining the document under seal to the extent Defendant asserts that it contains SSI. That motion or stipulation must explain why the document qualifies as SSI and why that information must remain under seal. That motion or stipulation must also explain why the document cannot simply be redacted to remove SSI and references to A.D.'s full name." ECF No. 308, pp. 3-4.

With all due respect to the Court, neither party asserted that Exhibit 1 contains SSI. Plaintiffs noted that Frontier has designated Exhibit 1 as confidential under the parties' "non-SSI Protective Order." [ECF No. 280, p. 4.] To be clear, Defendants do not assert that any part of Exhibit 1 contains SSI. However, Defendants do maintain that Exhibit 1 should be kept under seal because it contains trade secrets, proprietary information, and commercial or financial information, as set forth in the parties' Agreed Protective Order. ECF No. 37, p. 1.

4

In addition to disclosing Plaintiffs' dates of birth, the identity of the minor Plaintiff A.D., and Plaintiff Peter DelVecchia's email addresses, phone numbers, and credit card information, Exhibit 1 contains the names of several Frontier employees and their respective Agent Codes and Agent IDs. Exhibit 1 is also replete with "information touching on business operations, proprietary information, and internal policies and procedures." *See Bliss*, 2023 U.S. Dist. LEXIS 102472, at *3. This includes sensitive pricing information regarding the cost of airfare and Frontier's associated travel fees, including refund and voucher information, and other information showing how Frontier tracks specific flight data, such as for check-in times and departure and arrival times. Exhibit 1 also contains sensitive information reflecting the manner and outcome of Frontier's internal investigation, including summaries of exchanges between Frontier personnel and Plaintiff Peter DelVecchia, as well as statements made by Frontier personnel collected in the course of Frontier's internal investigation. As noted, there is also a significant risk that Exhibit 1 might become a vehicle for improper purposes, such as gratifying private spite, promoting public scandal, circulating libelous statements, or releasing trade secrets. *Kamakana*, 447 F.3d 1172, 1179-80. For all of these reasons, Frontier respectfully asserts that there are "compelling reasons sufficient to outweigh the public's interest in disclosure of the information" (*see Bliss*, 2023 U.S. Dist. LEXIS 102472, at *3), and requests that Exhibit 1 remains filed under seal.

## II. EXHIBIT NO. 2 – EXPERT REPORT OF VICKIE NORTON

Plaintiffs' Exhibit 2 consists of Captain Vickie Norton's Expert Report[2] and its attached exhibits. The Court denied Plaintiffs' Motion to Seal Exhibit 2 on grounds that Plaintiffs did not explain why the Sensitive Security Information ("SSI") contained therein "could not reasonably be

---

2

redacted from the document," and ordered Defendants to "explain why the document qualifies as SSI and why that information must remain under seal," and "why the document cannot simply be redacted to remove SSI." [ECF No. 308, p. 4].

In response, Frontier first notes that Captain Norton's report is inadmissible. *See Romero v. Nev. Dep't of Corr.,* No. 2:08-cv-808-JAD-VCF, 2013 U.S. Dist. LEXIS 168736, at *42-43 (D. Nev. Nov. 27, 2013) (noting that the Ninth Circuit has "routinely held that unsworn expert reports are inadmissible"). Frontier respectfully asserts that the risk of the report becoming a vehicle for improper purposes outweighs the public's need for access to it. *See Kamakana*, 447 F.3d at 1179-80. Regarding the potential for specific redactions, Exhibit 2 contains several specific references and general discussions regarding Frontier's policies and procedures relating to "Threat Levels" and the "Common Strategy." As reflected in the materials submitted for in camera review, Defendants have endeavored to identify the specific portions of Exhibit 2 in need of redaction for those reasons.

### III.     EXHIBIT NO. 6 – REPORT AND TESTIMONY OF DR. HUGHEY

Exhibit 6 consists of Dr. Matthew Hughey's deposition transcript, expert report, and its attached exhibits. Much of Dr. Hughey's expert report[3] is dedicated to discussing the specific details of the passenger discrimination complaints and human trafficking incident reports that Frontier was previously ordered to produce. The Court has already concluded that "compelling reasons" exist to maintain these records under seal. ECF No. 150, pp. 8-9.

In its Order dated January 9, 2024, the Court agreed it had "already found compelling reasons to seal the complaints and incident reports themselves because they involved third parties

---

[3] Frontier notes that, like Captain Norton's report, Dr. Hughey's report is also inadmissible, and the risk of it becoming a vehicle for improper purposes outweighs the public's need for access to it. *Romero,* No. 2:08-cv-808-JAD-VCF, 2013 U.S. Dist. LEXIS 168736, at *42-43; *Kamakana*, 447 F.3d at 1179-80.

and minors who may not realize the documents even exist." ECF No. 308, p. 5. The Court noted, however, that Frontier "[did] not assert that Dr. Hughey discusses these complaints in sufficient enough detail to raise those same concerns," and "[did] not explain why it could not redact those portions and leave the rest of the deposition and expert report available to the public." *Id*.

In response to the Court's Order, Defendants have identified Dr. Hughey's specific references to the prior incidents in the deposition transcript at pages: 45-50; 53; 67-72; and 76-77. Frontier has also identified Dr. Hughey's specific references to the prior incidents in his report at pages 10-25. In many instances, these proposed redactions cover information that was lifted directly from the prior incidents and copied into Dr. Hughey's report verbatim. For these reasons, Frontier respectfully requests that Dr. Hughey's report be maintained under seal, and that the materials made public include the redactions proposed by Frontier in its in camera submission.

**IV.   EXHIBIT 10 – RULE 30(B)(6) DEPOSITION TRANSCRIPT AND EXHIBITS**

In their Motion to Seal, Plaintiffs asserted that the bulk of Frontier's Rule 30(b)(6) deposition transcript referenced specific information designated as SSI. The Court ruled, however, that "while Plaintiffs explain that the testimony includes SSI, they do not explain why this SSI could not reasonably be redacted from the document." ECF No. 308, p. 6. The Court further ordered Frontier to "identify the portions of the document that qualify as SSI, explain why the document qualifies as SSI and why, specifically, that information must remain under seal. That motion or stipulation must also explain whether the document can be redacted to remove SSI." *Id*.

Frontier respectfully submits that Plaintiffs' Exhibit 10 requires significant redactions. There are 26 exhibits attached to the Rule 30(b)(6) deposition transcript. Frontier has identified exhibits 4-10; 12-16; 18; and 20-26 as containing information requiring redactions.[4] As noted

---

[4] In the materials submitted for in camera review, Frontier inadvertently proposed redacting exhibit 3 to Plaintiffs' Exhibit 10. Frontier does not propose that the "In-Flight Flyer" requires redacting.

below, many of the exhibits attached to Plaintiffs' Exhibit 10 include the SSI and specific Threat Level information discussed above. Frontier maintains that several other exhibits should be redacted because they contain Frontier's proprietary training information, and compelling reasons exist for the Court to maintain confidentiality over Frontier's training materials due to the risk that they will become a vehicle for improper purposes, such as "gratifying private spite, promoting public scandal, circulating libelous statements, or releasing trade secrets." *See Kamakana*, 447 F.3d 1172, 1179-80.

- Exhibit 4 includes SSI and specific Threat Level information and guidance for Frontier crewmembers on responding to potential security risks.

- Exhibit 5 contains Frontier's proprietary information and guidance on responding to potential Human Trafficking incidents.

- Exhibit 6 contains Frontier's proprietary information and guidance on responding to potential incidents involving sexual misconduct.

- Exhibit 7 contains Frontier's proprietary information and anti-discrimination policy.

- Exhibit 8 contains Frontier's proprietary information including guidance for crewmembers on responding to potential safety concerns.

- Exhibit 9 includes SSI and specific Threat Level information and guidance for Frontier crewmembers on responding to potential security risks.

- Exhibit 10 includes information pertaining to the prior passengers complaints produced in discovery, which were discussed above in reference to Dr. Hughey's deposition and report.

- Exhibit 12 includes SSI and references crewmembers' specific responsibilities to ensure cabin security during the boarding process and ensuing flight.

- Exhibit 13 consists of Plaintiffs' PNR records discussed above.

- Exhibit 14 includes Frontier's proprietary information, including the "Standards of Conduct" from its Employee Handbook.

- Exhibit 15 includes Frontier's proprietary information, including its "Code of Ethics"

- Exhibit 16 includes Volume one of Frontier's Flight Operations Manual, which includes the specific duties and responsibilities of the Captain and First Officer.

- Exhibit 18 includes another excerpt from Volume 1 of Frontier's Flight Operations Manual, including specific security awareness measures for flight attendants.

- Exhibit 20 includes SSI and specific seating figurations for Frontier flights

- Exhibits 21-22 include personal identifying information relating to Frontier internal emails; Frontier proposes only redacting the personal identifying information.

- Exhibit 23 includes Frontier's proprietary information in that it reflects a Passenger Incident Report form regarding the incident alleged in Plaintiffs' complaint.

- Exhibits 24-26 include SSI, general security procedures, employee identification requirements for crewmembers, and specific Threat Level information and guidance for Frontier crewmembers on responding to potential security risks.

As the Court will see from the materials submitted for in camera review, Defendants have gone through Frontier's Rule 30(b)(6) deposition transcript and attempted to remove only the specific references to the materials identified above.

### V.     EXHIBIT 15 – VICKIE NORTON DEPOSITION TRANSCRIPT

The Court's Order did not direct Defendants to address Plaintiffs' Exhibit 15. Regardless, Frontier has included its proposed redactions for Exhibit 15 in the materials provided for the Court's in camera review. This includes specific references to Threat Level situations at pages 201-203; 205; 231-232; 253-258; and 263. Frontier respectfully maintains that the information it has identified should be redacted for the reasons discussed above.

### CONCLUSION

For the foregoing reasons, Defendants respectfully assert that compelling reasons exist to seal the information they have identified in their documents submitted for in camera review.

Date: January 30, 2024                                        Respectfully submitted,

**FRONTIER AIRLINES, INC.**

*/s/ Richard C. Harris*

9

|   |   |
|---|---|
| 1 |   |
| 2 | Richard C. Harris (admitted *pro hac vice*) |
|   | Brian T. Maye (admitted *pro hac vice*) |
| 3 | HINSHAW & CULBERTSON |
|   | 151 North Franklin Street, Suite 2500 |
| 4 | Chicago, Illinois 60606 |
|   | Phone: (312) 422-5713 |
| 5 | Email: bmaye@hinshawlaw.com |
|   |           rharris@hinshawlaw.com |
| 6 | Charles A. Michalek (Nevada Bar No. 5721) |
| 7 | ROGERS, MASTRANGELO, CARVALHO & MITCHEL |
| 8 | 700 South Third Street |
|   | Las Vegas, Nevada 89101 |
| 9 | Phone: (702) 383-3400 |
|   | Email: cmichalek@rmcmlaw.com |

**CERTIFICATE OF SERVICE**

I hereby certify that on January 30, 2024, I caused the foregoing to be electronically filed with the United States District Court for the District of Nevada using the CM/ECF system.

By: */s/ Richard C. Harris*